**7**

**WANGER JONES HELSLEY**
Riley C. Walter #91839
Kurt F. Vote #160496
Steven K. Vote #309152
Danielle J. Bethel #315945
265 E. River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 490-0949
E-Mail:　rwalter@wjhattorneys.com
　　　　　dbethel@wjhattorneys.com

Attorneys for Debtor and Debtor in Possession, Madera Community Hospital

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

# FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>MADERA COMMUNITY HOSPITAL,<br><br>　　Debtor in Possession.<br><br>Tax ID#:　23-7429117<br>Address:　1250 E. Almond Avenue<br>　　　　　Madera, CA 93637 | Case No. 23-10457<br><br>Chapter 11<br><br>DC No.:　WJH-4<br><br>Date:　　March 16, 2023<br>Time:　　11:00 a.m.<br>Place:　　2500 Tulare Street<br>　　　　　Courtroom 11<br>　　　　　Fresno, CA 93721<br>Judge:　　Honorable René Lastreto II |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING (1) MAINTENANCE OF EXISTING BANK ACCOUNTS, (2) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, AND (3) CONTINUED USE OF BUSINESS FORMS**

TO THE HONORABLE RENÉ LASTRETO II, UNITED STATES BANKRUPTCY JUDGE, THE TWENTY LARGEST UNSECURED CREDITORS, ANY SECURED CREDITORS, PARTIES WITH A PECUNIARY INTEREST IN THE SUBJECT MATTER ADDRESSED IN THE MOTION, PARTIES REQUESTING SPECIAL NOTICE, AND THE U.S. TRUSTEE'S OFFICE:

Madera Community Hospital, the debtor and debtor in possession in the above-captioned case (the "Debtor" or "MCH" or "Hospital"), hereby submits this memorandum of points and authorities in support of its Motion for order pursuant to 11 U.S.C. §§ 363, 1107 and 1108 authorizing (1) maintenance of existing bank accounts, (2) continued use of existing cash management system, and (3) continued use of business forms ("Cash Management Motion") filed concurrently herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The general background facts pertinent to this case are set out in the declaration of Karen Paolinelli ("Paolinelli Declaration") filed concurrently herewith and are therefore not repeated herein except as needed.

As with most hospitals, MCH has a long-maintained, complicated cash management system. The Debtor currently has accounts with Bank of America ("BofA") and Edward Jones ("EJ") which it requests remain open (collectively, BofA and EJ are the "Banks"). A comprehensive list of accounts held by the Debtor at the Banks ("Accounts") is attached to the Paolinelli Declaration as Exhibit A.

The Debtor has filed this Motion because the continued, uninterrupted use of the Accounts, its cash management system, and its current business forms and checks as described in the Cash Management Motion and in the Paolinelli Declaration are essential to the Debtor's ability to maximize its post-petition operations and to adjust smoothly to being an operating debtor in possession.

The Motion is brought pursuant to 11 U.S.C. §§ 363, 1107 and 1108.

**A. The Accounts**

The primary bank is Bank of America, an authorized depository. All operating revenues, including provider fees, are electronically transferred to a depository account (2081) ("Depository Account'). From the depository account, funds go to the master account (8391) ("Master Account"). From the master account, funds are transferred to sub accounts:

        a) Payroll (2082) - used to pay employees, pay payroll taxes and 401k deposits ("Payroll Account").

      b) Accounts Payable - (2549) used to pay vendor claims, utilities, etc. ("Accounts Payable Account").

      c) Employee Benefits - (2083) used to pay self-insured claims ("Employee Benefits Account").

      d) Section 125 - (7730) used to pay Section 125 claims. The Section 125 plan was terminated as of December 31, 2022, but claims prior to that date can be submitted up until March 31, 2023 ("Section 125 Plan Account").

      e) Worker's Comp Collateral Account (-8627) ("Worker's Comp Collateral Account").

The Depository Account, Master Account, Payroll Account, Accounts Payable Account, Employee Benefits Account, Section 125 Plan Account, and Worker's Comp Collateral Account are collectively referred to hereafter as the "General Business Accounts" or the "BofA Accounts."

Last, MCH has an account at Edward Jones, which holds segregated funds on account of about 30 unknown persons who hold Bearer Bonds from a 1978 bond sale ("the Bearer Bond Account"). This is discussed more fully below.

The above accounts are hereinafter collectively referred to as the "Accounts" and the banks as "Banks."

    **B.**     **Postpetition Cash Management System**

          **i.**     **The General Business Accounts**

The Debtor requests that it be authorized to maintain the Accounts described above and to utilize them post-petition in the same manner that it utilized them pre-petition. The Debtor receives payment for its services from five primary sources: (1) direct payments from patients ("Patient Payments"), (2) payments from its patients made by credit card ("Credit Card Payments"), (3) payments from private insurance companies on behalf of patients ("Commercial Insurance Payments"), (4) payment from the State of California under the Medi-Cal program ("Medi-Cal Payments") and (5) payments form the Federal Government under the Medicare or Medi-Cal programs (together with the Medi-Cal Payments, the "Government Payments"). These payments are deposited into the Depository Account. Each night,

funds are swept from the Depository Account into the Master account. The Debtor transfers the funds from the Master Account to the other above listed accounts on an as needed basis.

Historically, the Debtor has transferred all of the funds from the Master Account to the various other accounts on a daily basis. This account is not interest bearing.

The Debtor transfers funds as available to the Payroll account so that it would contain approximately $100,000 for each pay run every other Friday. Payroll is calculated in the Debtor's Meditech accounting system, and the majority of the remaining employees are paid via direct deposit (which is processed by BofA).

Payroll taxes are remitted directly through the IRS's EFTPS system and the CA EDD system.

BofA is approved as a depository for funds of debtors in possession by the U.S. Trustee's Office so the funds in the BofA Accounts are protected as required by section 345 of the Bankruptcy Code.

### ii. The Bearer Bond Account

The Debtor issued certain Bearer Bonds in 1978, 30 of which are still held by unknown persons. Public notice will be given regarding these bonds, and after paying out all legitimate claims, which will take some time, the Debtor will take the steps necessary to close this account and transfer the balance of the funds to the General Business Accounts. However, until the Debtor is able to accomplish the resolution of all 1978 Bearer Bond issues, it requests authority to keep this account open and to utilize it as necessary and, to the extent necessary, as otherwise approved by the Court to satisfy its Bearer Bond obligations.

Far and away, the preponderance of revenues are received electronically and mostly from governmental payors. Any disruption of the system would be extremely detrimental to MCH. When checks are written by MCH, they are electronically prepared and it will take at least seventy five (75) days before the software can be reprogrammed to say "Debtor in Possession."

The Debtor is requesting that it be authorized to leave its accounts open and to utilize them as described above.

///

///

///

Memorandum of Points and Authorities in Support of Debtor's Motion to Maintain Existing Bank Accounts and Use Existing Cash Management System

4

R:\Client\10538-002\PLEADINGS\WJH-4 Motion re Maintenance of Bank Accounts\Brief.031223.docx

## II.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.

## REQUESTED RELIEF

The Debtor seeks an order of this Court: (a) authorizing the Debtor to maintain and to continue using its existing bank accounts, (b) authorizing the Debtor to continue using its electronically generated business forms without "Debtor in Possession" appearing on them for a period of seventy five (75) days until the Debtor can alter its software to include that designation and the Case number on the forms, to utilize its preprinted forms without the "Debtor in Possession" stamp until the supply is depleted, and to approve the use of a "Debtor in Possession" stamp on all checks issued until the current stock of checks is depleted and checks are reordered, (c) authorizing and directing the Banks to honor post-petition checks drawn on and transfers made from the Accounts in the ordinary course of business, (d) requiring that in the event that if any Bank refuses to honor checks drawn on the Accounts (provided there are sufficient good funds in the account to honor the checks and the checks are otherwise property payable) order the Bank to immediately turn over the deposits held in the applicable Account upon the Debtor's request, and (e) granting such other and further relief as is just and proper under the circumstances.

## IV.

## ARGUMENT

**A.**     **Maintenance of the Accounts Is in the Best Interests of the Debtor's Estate**

The U.S. Trustee Guidelines require a chapter 11 debtor in possession to open new bank accounts and close all existing accounts. The U.S. Trustee guidelines also require that new bank accounts be opened in certain financial institutions designated as authorized depositories by the U.S. Trustee.

Requiring the Debtor to close its bank accounts and to open new ones will disrupt the Debtor's operations and cash flow because the depositors (many of which are governmental payors and insurance companies) will not respond quickly to the change and will likely continue to send deposits to the

original accounts, causing confusion and delay in the Debtor's ability to utilize its funds. Further, closing accounts and opening new ones will also increase the work required of the Debtor's accounting personnel who are already dealing with the many and varied issues related to this case and would needlessly cost the Debtor time and money with no discernible benefit to its Chapter 11 estate.

The Debtor hereby seeks a waiver of the U.S. Trustee's requirements that it close the existing Accounts and open new post-petition bank accounts at depositories authorized by the U.S. Trustee. It requests instead that it be authorized to maintain the Accounts described above and to utilize them post-petition in the same manner that did pre-petition. The continued use of existing cash management systems (which includes the authority to continue using prepetition bank accounts) has, however, been approved as a routine matter in unreported orders in a number of chapter 11 cases.[1] The Debtor respectfully submits that continued use of the Accounts should be approved in this case as well.

B. **Maintenance of the Debtor's Existing Business Forms Is in the Best Interests of the Debtor's Estate**

The Debtor is also requesting authority to continue using its business forms without the designation "Debtor in Possession" on them for a limited time. Many of the Debtor's business forms are electronically printed. The Debtor seeks the authority of this Court to utilize its electronically generated forms without the "Debtor in Possession" designation for seventy five (75) days, until the Debtor can make necessary adjustments to its software so that these forms will contain the phrase "Debtor in Possession". To the extent it utilizes preprinted forms, the Debtor seeks authority to utilize these forms until its supplies of them are depleted. When the Debtor reorders any preprinted forms, if it is still a debtor in possession, it will have "Debtor in Possession" printed on them. Finally, the Debtor's checks are printed by an outside service. The Debtor seeks permission to continue using its existing checks for seventy five (75) days until the Debtor receives its new checks or reprograms its check writing software which will be pre-printed with "Debtor in Possession". In the meantime, the Debtor will hand stamp its checks with "Debtor in Possession."

---

[1] See, e.g., *In re Empire Land, LLC*, 08-14592-MJ (Bankr. C.D. Cal. 2008) (Final Order Granting Emergency Motion of Debtors for Order Pursuant to 11 U.S.C. §§ 363, 1107 and 1108 Authorizing (1) Maintenance of Existing Bank Accounts, (2) Continued Use of Existing Business Forms, and (3) Wavier of Section 345(b) Deposit and Investment Requirements); *In re People's Choice Home Loans, Inc.*, 07-10765-RK (Bankr. C.D. Cal. 2007) (Final Order (a) Authorizing the Continued Use of the Debtor's Cash Management Systems; (b) Authorizing Maintenance of the Debtor's Existing Bank Accounts and Business Forms, and (c) Extending the Debtor's Time to Comply with Section 345 of the Bankruptcy Code).

Bankruptcy courts routinely grant authority to continue using existing business instruments in chapter 11 cases. *See, e.g., In re Johnson*, 106 B.R. 623, 624 (Bankr. D. Neb. 1989) (debtor not required to obtain new checks imprinted with "Debtor in Possession" legend). Accordingly, the Court should authorize the Debtor's continued use of existing business forms as set forth above.

## V.

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that this Court enter an order:

(a) authorizing the Debtor to maintain and to continue using its existing bank accounts;

(b) authorizing the Debtor to continue using its electronically generated business forms without "Debtor in Possession" appearing on them for a period of seventy five (75) days until the Debtor can alter its software to include that designation and the Case number on the forms, to utilize its preprinted forms without the "Debtor in Possession" stamp until the supply is depleted, and to approve the use of a "Debtor in Possession" stamp on all checks issued until the current stock of checks is depleted and checks are reordered;

(c) authorizing and directing the Debtor's Banks to honor post-petition checks drawn on and transfers made from the Accounts in the ordinary course of business;

(d) requiring that in the event that if any of the Debtor's Banks refuses to honor checks drawn on the Accounts (provided there are sufficient good funds in the account to honor the checks and the checks are otherwise property payable) order said bank to immediately turn over the deposits held in the applicable Account upon the Debtor's request; and

(e) granting such other and further relief as is just and proper under the circumstances.

Dated: March 13, 2023             WANGER JONES HELSLEY

                                  By: /s/ Riley C. Walter
                                  Riley C. Walter
                                  Kurt F. Vote
                                  Steven K. Vote
                                  Danielle J. Bethel
                                  Attorneys for Debtor and Debtor in Possession, Madera Community Hospital