**11**

WANGER JONES HELSLEY
Riley C. Walter #91839
Kurt F. Vote #160496
Steven K. Vote #309152
Danielle J. Bethel #315945
265 E. River Park Circle, Suite 310
Fresno, California  93720
Telephone: (559) 490-0949
E-Mail:  rwalter@wjhattorneys.com
         dbethel@wjhattorneys.com

Attorneys for Debtor and Debtor in Possession, Madera Community Hospital

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| In re: | Case No. 23-10457 |
| MADERA COMMUNITY HOSPITAL, | DC No.:  WJH-7 |
| Debtor in Possession. | Chapter 11 |
| Tax ID#: 23-7429117<br>Address: 1250 E Almond Avenue<br>Madera, CA 93637 | Date:   March 16, 2023<br>Time:   11:00 a.m.<br>Place:  2500 Tulare Street<br>Courtroom 13<br>Fresno, CA 93721<br>Judge: Hon. René Lastreto II |

## DECLARATION OF KAREN PAOLINELLI IN SUPPORT OF MOTION FOR ORDER LIMITING SCOPE OF NOTICE FOR CHAPTER 11 CASE

I, Karen Paolinelli, hereby declare and represent as follows:

1.      I am the Chief Executive Officer of Madera Community Hospital, the above-captioned debtor and debtor in possession (the "Debtor"). I am primarily responsible for the overall management of the Debtor. I am generally familiar with the day-to-day continuing operations, assets, and financial affairs of the Debtor.

Declaration of Karen Paolinelli in Support of Motion    1    R:\Client\10538-002\PLEADINGS\WJH-7
to Limit Notice in Chapter 11 Case                         Emergency Motion for Order Limiting Scope of
                                                           Notice for C11 Case\Dec.031023.docx

2.    Unless as otherwise stated, all facts contained within this Declaration are based upon personal knowledge (my own or information gathered from others who report to me), my review of relevant documents, or my opinion based upon my experience.

3.    I submit this Declaration in support of the "first-day" relief that the Debtor has requested by the emergency motion (the "Emergency Motion") to limit notice in this Chapter 11 case. The relief sought in this Emergency Motion is intended to enable the Debtor to continue to function. I have reviewed the Emergency Motion and believe that the relief sought in it is essential to the continued functioning of the Debtor's operations.

# I.

## BACKGROUND

Madera Community Hospital is a non-profit California Corporation ("MCH" or "Hospital"). It owns a general acute care hospital in Madera, California. The hospital is licensed (in suspense) for 106 beds and currently has 31 full time employees and 4 per diem employees, most of whom are administrative personnel and physical plant maintenance persons. Since December 26, 2022, the Debtor has laid off over 700 employees. It is the only adult hospital in the county and served a population of about 160,000 people, some of whom are uninsured and many of whom are of lower income. The closest hospitals with emergency rooms are 23.5 miles away in Fresno or 35 miles away in Merced, both of which are long distances in an emergency situation.

As discussed below, in December 2022, Saint Agnes Medical Center ("SAMC"), after receiving conditions imposed by the California Attorney General, terminated negotiation of an affiliation agreement with MCH which resulted in MCH shutting down all medical services. Since January 10, 2023 no medical services have been provided at the hospital. There are no patients. All patient care has ceased. Operations, however, continue as the Debtor is pursuing collections and recoveries, preserving its facilities, and pursuing suitors.

The leadership of the hospital consists of myself, Karen Paolinelli, MSN, RN, FNP-C, PA-C, Chief Executive Officer. The CFO is Shondale Seymour on a contract basis. The Controller is Aaron Chambers, also on a contract basis.

Declaration of Karen Paolinelli in Support of Motion    2    R:\Client\10538-002\PLEADINGS\WJH-7
to Limit Notice in Chapter 11 Case    Emergency Motion for Order Limiting Scope of
Notice for C11 Case\Dec.031023.docx

As with many other rural hospitals serving a largely uninsured population, MCH has sustained many financial setbacks in recent years and the COVID pandemic accelerated the financial problems. The governmental reimbursement fees and health plan fees paid to MCH were wholly insufficient and did not cover the costs of care we are required to provide.

For the past two and a half years, MCH and the courageous nurses, physicians and caregivers that treat patients, went far above and beyond battling COVID. This response took a significant toll on the financial health of MCH. While there have been "lifelines" tossed out, the lifeline has dried up and without help MCH has withered and will soon die without immediate care.

Beginning in 2021 and continuing to this day, MCH embarked on evaluating and identifying potential relationships with other healthcare systems. In 2021 MCH identified a possible afflation with Saint Agnes Medical Center ("SAMC") and its parent, Trinity Health Care System ("Trinity"). Protracted negotiations ensued. SAMC made significant loans to MCH. When the proposed affiliation was presented to the Attorney General of the State of California, the Attorney General, after many months of delay, sought to impose conditions that were unacceptable to SAMC. As a result SAMC terminated the affiliation agreement. This, thus, forced MCH to file Chapter 11 as it ran out of money and was unable to pay employees.

MCH has the following major assets: Cash $5,000,000, Hospital campus $16,000,000-$60,000,000, incoming provider fees receivable/government transfers $24,000,000, $1,500,000 in receivables, $00.00 to $20,000,000 million of FEMA reimbursements, miscellaneous personal property assets $3,000,000 (est.) and a 35-acre farm property valued at $535,000, and a long term note valued at $485,000 which is secured by real property.

The major secured creditor of MCH is SAMC, to whom $15,400,000 is owed. New England Sheet Metal and one of its subcontractors, Patterson Drywall, together assert four mechanic's liens for about $1,100,000.

///

///

///

MCH owes its former employees approximately $2,000,000 in the aggregate for unpaid accumulated personal time off. About $1,100,000 is entitled to priority status. MCH also has approximately $9,100,000 in general unsecured creditors, which includes an unsecured loan of $1,100,000 owed to Citizens Business Bank.

MCH will have an additional, unknown amount owed due to claims resulting from the rejection of executory contracts and leases. There is also an overpayment claimed by Medicare in the amount of $400,000. Additionally, there are no less than $1,200,000 in self-insured insurance claims. MCH is a very sick hospital.

On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate and manages its affairs as a debtor in possession. No trustee, examiner, ombudsman or committee has been appointed. There are no patients being treated by the Debtor. The Debtor is aggressively soliciting new suitors and evaluating ways to restart and resume operations, including reopening its medical clinics.

## II.

### FINANCES

#### A.    The Debtor's Campus

The Hospital is located at 1250 E Almond Avenue, Madera, California 93637. The facility was designed and constructed as an acute care hospital, and over the years it has been renovated and expanded to accommodate the needs of its patients and the communities it serves. The Debtor owns the entire 39.5 acre campus with the hospital and medical buildings. Two buildings on the campus are owned by physicians on land leased from the Debtor. The Debtor formerly leased three other facilities: the Chowchilla Medical Center Rural Health Clinic in Chowchilla, the Family Health Service Rural Health Clinic in Mendota, and the IT facility in Madera. All three facilities have been relinquished to the landlords. The Debtor has three suspended construction projects on the main campus. The estimated value of the hospital campus is $16 million to $60 million.

///

///

### B.    The Debtor's Staff

The Hospital is licensed ("in suspense") to operate 106 beds. The license is in suspense. Approximately 160 doctors have privileges at the Hospital. As of the Petition Date, the Debtor employed approximately 30-35 people. The current personnel include, but are not limited to, administrative and office staff, technicians, maintenance staff, IT staff, human resources staff, medical records personnel, engineering and housekeeping services. The staff are needed to collect on money owed and to mothball the facility and preserve it for future use. Over 700 employees were laid off since late-December 2022 following issuance of a WARN Act notice.

### C.    The Debtor's Management

As noted above, I am the Debtor's Chief Executive Officer. I have served in this position since November 2017. Prior to that, I was the Chief Operating Officer. I have a Nursing Degree and a Master of Science Degree and have worked at MCH for over 35 years.

The Chief Financial Officer, Shondale Seymour, joined MCH January 2023. The Controller is Aaron Chambers who joined December 2022. The Debtor's long time CFO retired in December 2022.

### D.    The Debtor's Revenues

The Debtor will receive revenues for payments for services provided to its patients from either health plans or from governmental programs such as Medicare and Medi-Cal.

The Debtor has been informed by State of California agencies that it should receive about $24,000,000+ over the period of about 24 months from January 2023 consisting of provider fees and disproportionate share money. It has about $5,000,000 cash, $1,500,000 in collectible accounts and large claim for funds from FEMA in an unknown amount ($00.00 to $20,000,000). MCH has considerable assets in addition to these expected cash revenues, including a 35 acre farm and a large 39.5 acre hospital campus having a significant value. SAMC asserts a security interest in these assets, junior only to mechanic's liens.

### E.    The Chapter 11 Filing

The fiscal crisis for the Debtor is the result of the collision of several factors. First, the Debtor provided millions of dollars per year in care to low income, uninsured people, for which

Declaration of Karen Paolinelli in Support of Motion    5    R:\Client\10538-002\PLEADINGS\WJH-7
to Limit Notice in Chapter 11 Case                    Emergency Motion for Order Limiting Scope of
                                                      Notice for C11 Case\Dec.031023.docx

it was inadequately compensated. The percentage of the Debtor's resources expended on this care increased because the Debtor serves a depressed community and the economic condition of this community has worsened due to inflation and other factors. The COVID pandemic has devastated MCH. According to a May 2022 article in the American Journal of Nursing, the COVID pandemic "transformed a long-simmering nursing shortage into a full-blown crisis," leading hospitals to turn to traveling nurses to fill the shortage. MCH was not immune to this crisis and was forced to hire traveling nurses of its own at very high costs in order to meet state mandated nurse-to-patient ratios.

Second, the Hospital's campus is approximately 51 years old and the maintenance costs for this campus are substantial and increasing every year.

Third, the fracture of the proposed affiliation agreement took MCH by surprise and occurred as MCH was at a critically low cash point, leaving it with no cash to pay for continued medical services.

Fourth, being a standalone, small rural area hospital in California is simply not an advantageous financial situation. Such hospitals, including MCH, suffered from a lack of economies of scale, poor payor mix, high overhead costs, less high-margin specialty service lines, and an overall lower revenue base.

Fifth, the costs resulting from COVID and the resulting costs of traveling nurses was considerable, as have the high inflationary pressures and considerable legal expense in connection with the affiliation process.

During the period of time that I have managed the Hospital, I have made extensive efforts to deal with the financial crisis, including, but not limited to, begging the State of California and elected representatives for more money while operating as efficiently as possible on a shoestring budget. However, MCH lacked leverage and was not able to increase the governmental or health plan contract rates. Pleas for more money fell (and continue to fall) on deaf ears. The combination of low Medi-Cal rates plus lower than market contract rates with health plans meant MCH could not cover the costs of operations.

Prior to closing, the Debtor needed to generate approximately $300,000 per day in revenue to cover its operating costs to stay in full operation. The Hospital was generating only approximately $225,000 per day in revenue when it closed. Thus, the Debtor lost money, $2 to $2.5 million, every month it operated in 2022.

Over a year ago, because the Debtor's CEO and Board concluded that the Debtor cannot survive at its then cash flow levels and would have to close absent drastic measures, representatives of the Board approached SAMC (and others), which had previously expressed an interest in acquiring or operating the Hospital, and negotiated an affiliation agreement subject to California Attorney General approval. After a long delay and review of over 13 months, on account of conditions imposed by the California Attorney General, SAMC withdrew from proceeding with the affiliation agreement. As a result of the withdrawn affiliation agreement and lack of money to pay employees, MCH concluded that it must shut down hospital operations, cease treating patients, shut down clinics, close its doors and find a suitor or liquidate its assets.

The emergency room closed on December 30, 2022. The WARN Act notice was sent to all employees on December 23, 2022.

Every effort to obtain a new suitor was, and is, being made as are efforts to reopen the clinics.

**F.    The Debtor's Secured Debt**

**1.    Saint Agnes Medical Center**

In April 2021, SAMC, entered into an agreement to provide financing to MCH.

As of the Petition Date, the Debtor owed SAMC a total of approximately $15,400,000 which is secured by a deed of trust against all real property and a security interest in almost all assets. The loan is in default. The Debtor believes SAMC is the only creditor with a security interest in cash collateral.

**2.    New England Sheet Metal**

The Debtor owes New England Sheet Metal and one of its subcontractors, Patterson Drywall, about $1,100,000 on account of works of improvement and four mechanic's liens against the hospital campus have been filed.

Declaration of Karen Paolinelli in Support of Motion      7      R:\Client\10538-002\PLEADINGS\WJH-7
to Limit Notice in Chapter 11 Case                            Emergency Motion for Order Limiting Scope of
Notice for C11 Case\Dec.031023.docx

### 3.    Equipment Leases

The Debtor has numerous leases with numerous lessors of real and personal property, all of which are still being evaluated. An estimated $2,800,000 is owed on these equipment leases.

As of the Petition Date, the monthly payments called for on the leases total about $100,000 per month. The actual amounts are being investigated. No payments on the executory contracts have been made recently.

### G.    The Debtor's Unsecured Debt

MCH owes its former employees approximately $2,000,000 in the aggregate for unpaid accumulated personal time off. About $1,100,000 is entitled to priority status. MCH also has approximately $9,100,000 in general unsecured creditors, which includes an unsecured loan of $1,100,000 owed to Citizens Business Bank.

MCH will have an additional, unknown amount owed due to claims resulting from the rejection of executory contracts and leases. There is also an overpayment claimed by Medicare in the amount of $400,000. Additionally, there are no less than $1,200,000 in self-insured insurance claims.

### III.

### EMERGENCY MOTION

### Emergency Motion of Debtor for Order Limiting Notice (WJH-7)

By the Emergency Motion to Limiting the Scope of Notice for Chapter 11 Case (the "Limited Notice Motion") the Debtor seeks an order authorizing the Debtor to limit notice of the Limited Notice Matters (defined below) in this chapter 11 case to the following parties: (1) the U.S. Trustee's Office, (2) the creditors appearing on the list filed by the Debtor in accordance with Bankruptcy Rule 1007(d) unless and until a committee of unsecured creditors (the "Committee") is appointed, then in that event, to counsel to the Committee and the Committee, (3) parties that file with the Court and serve upon the Debtor requests for notice in accordance with Bankruptcy Rule 2002(i), (4) any secured creditors, (5) various attorneys for the California Attorney General and (6) any party with a pecuniary interest in the subject matter of the particular Limited Notice Matter or its counsel.

Declaration of Karen Paolinelli in Support of Motion    8    R:\Client\10538-002\PLEADINGS\WJH-7
to Limit Notice in Chapter 11 Case    Emergency Motion for Order Limiting Scope of
Notice for C11 Case\Dec.031023.docx

The Debtor's creditor matrix exceeds 1000+ parties. Requiring notice to and service upon all of parties would significantly increase the cost of administering this estate. The limited scope of notice proposed herein is necessary to avoid the administrative burdens and costs that serving notice of all pleadings on these parties would impose upon the Debtor while assuring that the interested parties receive notice of all matters.

I am informed and believe that, by this Limited Notice Motion, the Debtor seeks, pursuant to Bankruptcy Rules 2002(i), 2002(m), 4001, 6004, 6006, 6007, 9006, 9007, 9013, 9014, and 9019, an order authorizing the Debtor to limit notice of the Limited Notice Matters (as defined below) in this Case to the following parties: (1) the U.S. Trustee's Office, (2) the twenty largest creditors appearing on the list filed by the Debtor unless and until a committee of unsecured creditors (the "Committee") is appointed, then in that event, also to counsel of the Committee, (3) any party asserting secured claims, (4) parties that file with the Court and serve upon the Debtor requests for notice, (5) various attorneys for the California Attorney General and (6) any party with a pecuniary interest in the subject matter of the particular Limited Notice Matter or its counsel. If the relief requested in the Limited Notice Motion is granted, the cost that is associated with administering this case would be dramatically reduced. Any party not on the list has the option of requesting special notice.

The Debtor requests that the Court limit the scope of service of all notices, motions, or applications (the "Limited Notice Matters"), including, but not limited to, the following:

- any proposed use, sale, or lease of property of the estate pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 4001(b), and 6004;

- any proposed debtor in possession financing or use of cash collateral;

- any proposed extension of the Debtor's exclusive time to file a plan of reorganization and solicit acceptance thereof (including, without limitation, the

Declaration of Karen Paolinelli in Support of Motion    9    R:\Client\10538-002\PLEADINGS\WJH-7
to Limit Notice in Chapter 11 Case    Emergency Motion for Order Limiting Scope of
Notice for C11 Case\Dec.031023.docx

time to file a disclosure statement) pursuant to section 1121 of the Bankruptcy Code and Bankruptcy Rule 3016;

- any proposed approval of a compromise or settlement of a controversy pursuant to Bankruptcy Rules 2002(a)(3) and 9019 and/or section 363 of the Bankruptcy Code;

- any proposed abandonment or disposition of property of the estate pursuant to section 554 of the Bankruptcy Code and Bankruptcy Rules 6007(a) or (c);

- any proposed assumption, assumption and assignment or rejection of contracts or leases under section 365 of the Bankruptcy Code and Bankruptcy Rule 6006(a) or (c);

- any proposal to prohibit or condition the use, sale or lease of property pursuant to section 363 of the Bankruptcy Code or Bankruptcy Rule 4001(a);

- any proposed objections to claims pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rules 3002, 3003 or 3007;

- any verified statement filed by any entity or committee (other than those appointed pursuant to section 1102 or 1104 of the Bankruptcy Code) representing more than one creditor pursuant to Bankruptcy Rule 2019(a) and any motion filed in respect thereof pursuant to Bankruptcy Rule 2019(b);

- any proposed application for employment of professionals pursuant to sections 327, 1103 or 1104 of the Bankruptcy Code or Bankruptcy Rule 2014;

- any proposed application for compensation or reimbursement of expenses of professionals, pursuant to sections 328, 329, 330, or 331 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(6), 2016, 2017, and 6005; except as provided by other orders of this Court;

Declaration of Karen Paolinelli in Support of Motion      10      R:\Client\10538-002\PLEADINGS\WJH-7
to Limit Notice in Chapter 11 Case                              Emergency Motion for Order Limiting Scope of
                                                                 Notice for C11 Case\Dec.031023.docx

- a hearing on any other contested matter in this case that requires notice to all creditors or equity holders pursuant to the Bankruptcy Code, Bankruptcy Rule 9014, or the Local Bankruptcy Rules; and

- all other pleadings, papers, and requests for relief or other order of the Court, except as limited below.

Notwithstanding the foregoing, I am informed and believe the relief requested in the Limited Notice Motion does not affect the rights of all creditors and parties in interest in this Case to receive notice of the following matters or proceedings: (i) a hearing on the dismissal or conversion of this Case; (ii) the time fixed for filing objections to any disclosure statement and any hearing to consider approval of any disclosure statement; (iii) the time fixed for accepting, rejecting, or objecting to confirmation of a plan or any modification thereof and the hearing thereon; (iv) the entry of an order confirming a plan; and (v) the date fixed for filing proofs of claim.

I declare under penalty of perjury that the foregoing facts are true and correct under the laws of the United States of America and I would so testify if called as a witness.

Executed this 10th day of March, 2023, at Madera, California.

_Karen Paolinelli_
Karen Paolinelli

Declaration of Karen Paolinelli in Support of Motion    11    R:\Client\10538-002\PLEADINGS\WJH-7
to Limit Notice in Chapter 11 Case    Emergency Motion for Order Limiting Scope of
Notice for C11 Case\Dec.031023.docx