Filed 03/14/23     Case 23-10457     Doc 64

**4**
**WANGER JONES HELSLEY**
Riley C. Walter #91839
Kurt F. Vote #160496
Steven K. Vote #309152
Danielle J. Bethel #315945
265 E. River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 490-0949
E-Mail: rwalter@wjhattorneys.com

Attorneys for Debtor and Debtor in Possession, Madera Community Hospital

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| In re: | Case No. 23-10457 |
| MADERA COMMUNITY HOSPITAL, | Chapter 11 |
|     Debtor in Possession. | DC No.: WJH-10 |
| Tax ID#: 23-7429117<br>Address: 1250 E Almond Avenue<br>           Madera, CA 93637 | Date: March 28, 2023<br>Time: 9:30 a.m.<br>Place: 2500 Tulare Street<br>          Courtroom 13<br>          Fresno, CA 93721<br>Judge: Hon. René Lastreto II |

**DECLARATION OF KAREN PAOLINELLI IN SUPPORT OF MOTION FOR AUTHORIZATION TO ASSUME CONSULTING AGREEMENT (IMPOSSIBLE SERVICES GROUP, INC.)**

I, Karen Paolinelli, hereby declare and represent as follows:

1. I am the Chief Executive Officer of Madera Community Hospital, the above-captioned debtor and debtor in possession (the "Debtor" or "MCH"). I am primarily responsible for the overall management of the Debtor. I am generally familiar with the day-to-day operations, assets, business and financial affairs of the Debtor.

///

2. Unless as otherwise stated, all facts contained within this Declaration are based upon personal knowledge (my own or information gathered from others who report to me), my review of relevant documents, or my opinion based upon my experience.

3. I submit this Declaration in support of the Debtor's Motion to Assume Consulting Agreement (Impossible Services Group, Inc.)("Motion"). I have reviewed the Motion and believe that the relief sought therein is essential to the continued functioning of the Debtor's business and the efficient administration of the bankruptcy estate.

4. As discussed below, in December 2022, Saint Agnes Medical Center ("SAMC"), after receiving conditions imposed by the California Attorney General, terminated negotiation of an affiliation agreement with MCH which resulted in MCH shutting down all medical services. Since January 10, 2023 no medical services have been provided at the hospital and there are no patients. However, there are still ongoing business operations.

5. As with many other rural hospitals serving a largely uninsured population, MCH has sustained many financial setbacks in recent years and the COVID pandemic accelerated the financial problems. The governmental reimbursement fees paid to MCH are wholly insufficient.

6. For the past two and a half years, MCH and the courageous nurses, physicians and caregivers that treat patients, went far above and beyond battling COVID. This response took a significant toll on the financial health of MCH. While there have been "lifelines" tossed out, the lifeline has dried up and without help MCH has withered and will soon die without immediate care.

7. As highlighted by a recent 2022 American Hospital Association report, there has been a significant increase in costs of labor, drugs, equipment and supplies, including food and energy costs, all of which are being exacerbated by extremely high inflation especially for 2022.

8. Despite MCH's efforts to increase its revenues, the increasing expenses caused MCH to sustain a loss of $2.0 - $2.5 million per month during 2022.

9. Beginning in 2021 and continuing to this day, MCH embarked on evaluating and identifying potential relationships with other healthcare systems. In 2021 MCH identified a possible afflation with SAMC and its parent, Trinity Health Care System ("Trinity"). Protracted

Declaration of Karen Paolinelli in Support of Motion to Assume Consulting Agreement (Impossible Services Group, Inc.)

-2-

R:\Client\10538-002\PLEADINGS\WJH-10 Motion to Assume Consulting Agreement (Impossible Services)\!Final\Declaration.Paolinelli.031023.docx

negotiations ensued. SAMC made significant loans to MCH. When the proposed affiliation was presented to the Attorney General of the State of California, the Attorney General, after many months of delay, sought to impose conditions that were unacceptable to SAMC. As a result SAMC terminated the affiliation agreement. This, combined with the lost revenue described above, forced MCH to file Chapter 11 as it has run out of money.

10. Up until SAMC withdrew, MCH was confident that the affiliation would be approved and consummated. However, when SAMC, withdrew from the affiliation, our CFO abruptly retired, leaving MCH without a CFO or Controller, and a skeleton and relatively inexperienced accounting staff, all at a critical time as MCH had to begin preparing for a complex Chapter 11 filing.

11. In December 2022, I had the good fortune of making contact with Aaron Chambers, who is the President of Impossible Services Group, Inc., dba Chambers Business Solutions ("ISGI"). Mr. Chambers proposed that ISGI could provide the needed services of a CFO and Controller to MCH. Thereafter, I received the resumes of Aaron Chambers and Shondale Seymour, who were proposed to serve as Controller and CFO, respectively. The resumes of Mr. Chambers and Ms. Seymour are attached hereto as Exhibits B and C.

12. I then conferred with MCH's board of trustees, who approved the execution of a consulting agreement with ISGI. The consulting agreement between MCH and ISGI was then fully executed and became effective on December 28, 2022 (the "Consulting Agreement"). A true and correct copy of the Consulting Agreement is attached hereto as Exhibit A. After the Consulting Agreement was finalized, ISGI immediately jumped into the fray and began to help us in performing vitally needed financial services.

13. MCH has a great need for the services provided to it by ISGI. These services include preparing for the Chapter 11 filing, preparation of the bankruptcy schedules, assisting with and evaluating possible new suitors and related proposals, facilitating the cash management system, overseeing of billings and collections, compliance with Chapter 11 rules and administrative requirements such as monthly operating reports, evaluating hundreds of employee paid time off and other employee benefit claims, evaluating vendor claims, identifying Section

503(b)(9) claims, preparing cash collateral budgets and projections, preparing the disclosure statement and plan, collection efforts pertaining to FEMA, and more.

14. From personal experience, I know that the services provided for by the Consulting Agreement are necessary and are critical to the recovery of as much as possible for the estate.

15. Furthermore, the fees charged by ISGI for the services of Mr. Chambers and Ms. Seymour are $175 per hour, each, which I believe is very reasonable. This is based on what I have been told within the industry, as well as my own personal internet research, which show that comparable services would usually cost $250 to $350 per hour per professional, especially for professionals with experience in dealing with Chapter 11 debtors.

16. It is my opinion, based on my business judgment, that the services provided by ISGI pursuant to the Consulting Agreement are vital to MCH's goal of maximizing recovery of as much as possible for the bankruptcy estate. It is therefore my professional opinion that the Consulting Agreement should be assumed as being in the best interest of this estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct this 14th day of March, 2023 at Madera, California.

*/s/ Karen Paolinelli*
Karen Paolinelli