**72**

Paul S. Jasper (CA Bar No. 200138)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105
Telephone:  415.344.7000
Facsimile:  415.344.7050
Email:        PJasper@perkinscoie.com

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:  973.643.7000
Facsimile:  973.643.6500
Email:        ASherman@sillscummis.com
                   BMankovetskiy@sillscummis.com

*Co-Counsel to the Official Committee of
Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>MADERA COMMUNITY HOSPITAL,<br><br>    Debtor in Possession.<br><br>Tax ID#    23-7429117<br>Address:    1250 E. Almond Avenue<br>                    Madera, CA 93637 | Case No. 23-10457<br><br>Chapter: 11<br><br>DC No.:  PSJ-025<br><br>**DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>Judge: Hon. René Lastreto II |

**NOTE: THIS DISCLOSURE STATEMENT HAS <u>NOT YET BEEN APPROVED</u> BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125(A) OF THE BANKRUPTCY CODE**

**ARTICLE I.** EXECUTIVE SUMMARY...........................................................................1

    A.     AN OVERVIEW OF THE CHAPTER 11 PROCESS..................................2

    B.     OVERVIEW OF THE PLAN.......................................................................2

    C.     SOLICITATION, VOTING AND CONFIRMATION MATTERS .............4

         1.     Who May Vote on the Plan........................................................4

         2.     Summary of Solicitation Package and Voting Instructions ...............4

10172450

**3.** Confirmation of the Plan ...................................................................5

**4.** Confirming and Consummating the Plan ...........................................6

**5.** Rules of Interpretation ......................................................................6

**6.** Distribution of Non-Voting Class Notice to Holders of Claims in Non-Voting Classes and Holders of Disputed Claims......................6

**7.** Filing of the Plan Supplement ...........................................................7

**8.** The Confirmation Hearing .................................................................7

**9.** The Deadline for Objecting to Confirmation of the Plan .................7

**10.** Effect of Confirmation of the Plan....................................................7

D. RISK FACTORS ........................................................................................7

**ARTICLE II.** BACKGROUND TO THE CHAPTER 11 CASE ...........................................8

A. THE DEBTOR'S HISTORY, BUSINESS, AND OPERATIONS .............8

B. THE DEBTOR'S MANAGEMENT ........................................................9

C. SUMMARY OF PRE-PETITION INDEBTEDNESS ...............................9

1. Secured Debt.......................................................................................9

a. Saint Agnes Medical Center .............................................................9

b. New England Sheet Metal .................................................................9

c. Equipment Loans/Leases ..................................................................9

2. General Unsecured Claims .................................................................9

D. EVENTS LEADING TO THE BANKRUPTCY CASE ...........................10

E. DEVELOPMENTS IN THE DEBTOR'S CHAPTER 11 CASE...............11

1. First Day and Other Early Motions and Orders ..............................11

2. Retention of Chapter 11 Professionals..............................................11

3. Appointment of the Unsecured Creditors' Committee ....................11

4. Schedules and Statements of Financial Affairs ...............................12

5. Claims Bar Date.................................................................................12

6.   Exclusivity ...................................................................12

7.   Assumption of Certain Executory Contracts ...................................12

8.   Rejection of Certain Leases and Executory Contracts....................13

9.   Use of Cash Collateral ......................................................13

10.  Asset Sales ...................................................................13

11.  Rubio Adversary Proceeding Against the Debtor...........................13

12.  Adversary Proceeding Against the U.S. Department of Health and Human Services ...................................................................14

**ARTICLE III.** PRESERVATION OF CAUSES OF ACTION .........................................15

**ARTICLE IV.** SUMMARY OF THE PLAN ...................................................18

A.   ADMINISTRATIVE AND PRIORITY TAX CLAIMS ............................18

1.   Administrative Expense Claims.......................................................18

2.   Priority Tax Claims...................................................................19

B.   CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS ....19

1.   Summary ...................................................................19

2.   Separate Classification of Certain Claims .......................................20

3.   **Elimination of Vacant Classes** .......................................20

4.   Voting; Presumptions; Solicitation in Good Faith...........................20

5.   **Cramdown** ...................................................................20

6.   Classification and Treatment of Claims.......................................21

7.   Special Provision Governing Unimpaired Claims...........................23

8.   Subordinated Claims...................................................................23

C.   ACCEPTANCE OR REJECTION OF THE PLAN ...................................23

1.   Deemed and Presumed Acceptance of Plan...................................23

2.   Voting Classes ...................................................................23

3.   Controversy Concerning Impairment ...........................................23

| | | | |
|---|---|---|---|
| | **4.** | Acceptance by Impaired Classes of Claims | 23 |
| | **5.** | Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code | 24 |
| D. | | MEANS FOR IMPLEMENTATION OF THE PLAN | 24 |
| | **1.** | Overview | 24 |
| | **2.** | General Settlement of Claims | 24 |
| | **3.** | Continued Existence of Debtor and Vesting of Assets in Liquidation Trust | 24 |
| | **4.** | Corporate Action | 25 |
| | **5.** | Liquidation Trust | 26 |
| | **6.** | Liquidation Trustee | 28 |
| | **7.** | Liquidation Trust Beneficiaries | 30 |
| | **8.** | Liquidation Trust Oversight Committee | 30 |
| | **9.** | Reopening Transaction | 30 |
| | **10.** | Source of Funding / Net Distributable Assets | 31 |
| | **11.** | Distribution of Liquidation Trust Interests | 32 |
| | **12.** | Distribution of Net Distributable Assets | 32 |
| | **13.** | Disputed Claims Reserve | 32 |
| | **14.** | Objections to Claims | 32 |
| | **15.** | Surcharge Under Section 506(c) of the Bankruptcy Code | 33 |
| | **16.** | Disallowance of Untimely Claims | 33 |
| | **17.** | Claims Paid or Payable by Third Parties and Insured Claims | 33 |
| | **18.** | Preservation of Causes of Action | 34 |
| | **19.** | Release of Liens, Claims and Security Interests | 35 |
| | **20.** | Cancellation of Securities, Certificates and Instruments | 36 |
| | **21.** | Dissolution of Debtor; Final Decree | 36 |
| | **22.** | Treatment of Vacant Classes | 36 |

E.     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................................... 36

    1.    Assumption and Rejection of Executory Contracts and Unexpired Leases ...................................................................... 36

    2.    Claims On Account of the Rejection of Executory Contracts or Unexpired Leases ........................................................ 37

    3.    Preservation and Vesting of D&O Liability Insurance Policies ...... 37

F.     LIMITATION ON LIABILITY AND RELATED PROVISIONS ............ 38

    1.    General ........................................................................... 38

    2.    Limitation on Liability of Liquidating Trustee ................................ 38

G.     EXCULPATION & INJUNCTION ................................................... 39

    1.    No Discharge ................................................................... 39

    2.    Exculpation ..................................................................... 39

    3.    Injunction ....................................................................... 39

H.     BINDING NATURE OF PLAN ...................................................... 40

I.     CONFIRMATION PROCEDURES ................................................. 41

    1.    Confirmation Hearing ....................................................... 41

    2.    Filing Objections to the Plan ............................................. 41

J.     STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN ............................................................................. 41

    1.    Best Interests of Creditors Test and Plan Recovery Analysis .......... 42

    2.    Feasibility ........................................................................ 44

    3.    Acceptance by Impaired Classes ..................................... 44

    4.    Confirmation Without Acceptance by Impaired Classes ............... 45

    5.    No Unfair Discrimination ................................................. 45

    6.    Fair and Equitable Test ..................................................... 45

K.     CONSUMMATION OF THE PLAN ............................................... 46

**ARTICLE V.** RISK FACTORS ................................................................ 46

10172450

A.   CERTAIN BANKRUPTCY LAW CONSIDERATIONS ........................46

   1.   Parties in Interest May Object to the Plan Proponent's Classification of Claims. ............................................................46

   2.   The Conditions Precedent to the Effective Date of the Plan May Not Occur. ................................................................47

   3.   The Plan Proponent May Fail to Satisfy the Vote Requirement......47

   4.   The Plan Proponent May Not Be Able to Secure Confirmation of the Plan. ................................................................47

   5.   Non-Consensual Confirmation of the Plan May Be Necessary.......48

   6.   The Plan Proponent May Object to the Amount or Classification of a Claim. ..............................................................48

   7.   The Effective Date May Not Occur. ................................................48

   8.   The Chapter 11 Case May Be Converted to a Case under Chapter 7 of the Bankruptcy Code ................................................48

   9.   Injunction, Exculpation and Limitation of Liability Provisions May Not Be Approved ..........................................................49

B.   DISCLOSURE STATEMENT DISCLAIMER............................................49

   1.   The Information Contained Herein is for Soliciting Votes Only.....49

   2.   No Legal or Tax Advice is Provided to You by This Disclosure Statement. ..............................................................49

   3.   No Admissions Are Made by This Disclosure Statement. ..............49

   4.   No Reliance Should Be Placed on Any Failure to Identify Litigation Claims or Projected Objections. ......................................49

   5.   Nothing Herein Constitutes a Waiver of Any Right to Object to Claims or Recover Transfers and Assets. .........................................49

   6.   The Information Used Herein was Provided by the Debtor and was Relied Upon by the Plan Proponent's Advisors. .............................50

   7.   The Potential Exists for Inaccuracies and the Plan Proponent Has No Duty to Update. ...............................................................50

   8.   No Representations Made Outside the Disclosure Statement Are Authorized ...............................................................50

10172450

**ARTICLE VI.** ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ....................................................................................................50

    A.     LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE50

    B.     FILING OF AN ALTERNATIVE PLAN OF REORGANIZATION.........51

**ARTICLE VII.** SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.................................................................51

    A.     FEDERAL INCOME TAX CONSEQUENCES TO CERTAIN CREDITORS AND THE LIQUIDATION TRUST ....................................51

        **1.**    In General..........................................................................52

        **2.**    Tax Treatment of the Liquidation Trust...........................53

        **3.**    Non-United States Persons ...............................................54

    B.     INFORMATION REPORTING AND BACKUP WITHHOLDING..........55

**ARTICLE VIII.** RECOMMENDATION ..........................................................................55

The Official Committee of Unsecured Creditors (the "Committee" or the "Plan Proponent") is sending you this document and the accompanying materials (the "Disclosure Statement") because you may be a creditor entitled to vote on the *Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* of the debtor and debtor in possession in the above-captioned case (the "Debtor") (as may be amended from time to time, the "Plan"),[1] a copy of which attached hereto as **Exhibit A**. [This Disclosure Statement has been approved by the Bankruptcy Court as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code. The Plan Proponent is soliciting your vote to accept or reject the Plan.]

**ONLY HOLDERS OF GENERAL UNSECURED CLAIMS (CLASS 4) ARE ENTITLED TO VOTE ON THE PLAN AND ARE BEING SOLICITED UNDER THIS DISCLOSURE STATEMENT.**

**THE VOTING DEADLINE IS 5:00 P.M. PREVAILING PACIFIC TIME ON FEBRUARY 13, 2024 (UNLESS THE PLAN PROPONENT EXTENDS THE VOTING DEADLINE).**

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or the Plan Proponent's *Motion for an Order (I) Approving Disclosure Statement; (II) Establishing Procedures for the Solicitation and Tabulation of Votes on Plan; (III) Scheduling Hearing on Confirmation of Plan; and (IV) Approving Related Matters* filed contemporaneously herewith (the "Disclosure Statement Motion"), as applicable. To the extent that anything in this Disclosure Statement and the Plan are inconsistent, the Plan shall control and govern.

- 1 -

> **IMPORTANT INFORMATION DISCLAIMER REGARDING THIS DISCLOSURE STATEMENT:**

THE PLAN PROPONENT IS PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT TO HOLDERS OF CLAIMS FOR THE PURPOSE OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN PROPONENT'S CHAPTER 11 PLAN OF LIQUIDATION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY CONSIDER ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE V HEREIN.

THE PLAN IS PROPOSED BY THE COMMITTEE AS THE PLAN PROPONENT. THE PLAN PROPONENT URGES ALL CREDITORS ENTITLED TO VOTE ON THE PLAN TO TIMELY VOTE TO ACCEPT THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF FEDERAL SECURITIES LAWS. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE PLAN PROPONENT CONSIDERS ALL STATEMENTS REGARDING ANTICIPATED OR FUTURE MATTERS TO BE FORWARD-LOOKING STATEMENTS. FORWARD-LOOKING STATEMENTS MAY INCLUDE STATEMENTS ABOUT:

- FINANCIAL CONDITION, REVENUES, CASH FLOWS, AND EXPENSES;

- LEVELS OF INDEBTEDNESS, LIQUIDITY, AND COMPLIANCE WITH APPLICABLE COVENANTS;

- FINANCIAL STRATEGY, BUDGET, PROJECTIONS, AND OPERATING RESULTS;

- VARIATION FROM PROJECTED FINANCIAL DATA; AND

- AVAILABILITY AND TERMS OF CAPITAL.

STATEMENTS CONCERNING THESE AND OTHER MATTERS ARE NOT GUARANTEES OF ANY ENTITY'S FUTURE PERFORMANCE. THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE DIFFERENT FROM THOSE PROJECTED BY OR ON BEHALF OF THE PLAN PROPONENT, AND THE PLAN PROPONENT UNDERTAKES NO OBLIGATION TO UPDATE THE PROJECTIONS MADE HEREIN. THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS

AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS. THE PLAN RECOVERY ANALYSIS, PROJECTIONS, AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE VALUE OF THE PROPERTY DISTRIBUTED TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED. THEREFORE, ANY ANALYSES, ESTIMATES, OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE PLAN PROPONENT URGES EACH HOLDER OF A CLAIM TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHER, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN OR A GUARANTEE BY THE BANKRUPTCY COURT OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. NEITHER THIS DISCLOSURE STATEMENT NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

THE PLAN PROPONENT HAS RELIED UPON INFORMATION PROVIDED BY THE DEBTOR AND THE DEBTOR'S PROFESSIONALS IN CONNECTION WITH PREPARATION OF THIS DISCLOSURE STATEMENT. THE PLAN PROPONENT HAS NOT INDEPENDENTLY VERIFIED THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTOR'S CHAPTER 11 CASE, AND CERTAIN DOCUMENTS RELATED TO

10172450

THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE OR THAT MAY BE FILED LATER WITH THE PLAN SUPPLEMENT. ALTHOUGH THE PLAN PROPONENT BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY CONFLICT, INCONSISTENCY, OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN AND CONTROL FOR ALL PURPOSES. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR.

IN PREPARING THIS DISCLOSURE STATEMENT, THE PLAN PROPONENT RELIED ON FINANCIAL DATA DERIVED FROM THE DEBTOR'S BOOKS AND RECORDS, ON UNVERIFIED INFORMATION PROVIDED BY THE DEBTOR IN ITS SCHEDULES OF ASSETS AND LIABILITIES, IN THE *DECLARATION IN SUPPORT OF APPLICATION FOR ORDER SHORTENING TIME OF EMERGENCY MOTIONS* [DOCKET NO. 5], AND IN OTHER FILINGS MADE BY THE DEBTOR IN THIS CHAPTER 11 CASE, AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTOR'S BUSINESS. THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED (UNLESS OTHERWISE EXPRESSLY PROVIDED HEREIN) AND NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTOR'S BUSINESS AND ANY FUTURE FINANCIAL RESULTS. THE PLAN PROPONENT EXPRESSLY CAUTIONS READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER, OR AS HAVING ANY ADVERSE ESTOPPEL EFFECT. RATHER, THIS DISCLOSURE STATEMENT SHALL CONSTITUTE A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO POTENTIAL CONTESTED MATTERS, POTENTIAL ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT. EXCEPT AS PROVIDED UNDER THE PLAN, THE LIQUIDATION TRUSTEE, OR THE LIQUIDATION TRUST, AS APPLICABLE, MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND CAUSES OF ACTION AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS ON THE TERMS SPECIFIED IN THE PLAN.

10172450

**THE PLAN PROPONENT IS GENERALLY MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF WHERE FEASIBLE, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE PLAN PROPONENT MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE PLAN PROPONENT HAS NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS SENT. INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION, MODIFICATION, OR AMENDMENT. THE PLAN PROPONENT RESERVES THE RIGHT TO FILE AN AMENDED OR MODIFIED PLAN AND RELATED DISCLOSURE STATEMENT FROM TIME TO TIME.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR POTENTIAL ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, OR AS HAVING ANY ADVERSE ESTOPPEL EFFECT. <u>FURTHER, AS SET FORTH IN DETAIL IN ARTICLE III OF THIS DISCLOSURE STATEMENT AND ARTICLE I.B. AND V.R. OF THE PLAN (INCLUDING AS SET FORTH IN THE PLAN'S DEFINITION OF "CAUSES OF ACTION"), EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL CAUSES OF ACTION AND RIGHTS RELATED THERETO ARE EXPRESSLY RESERVED AND PRESERVED UNDER THE PLAN</u>.**

**THE PLAN PROPONENT HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE PLAN PROPONENT HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF ITS PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.**

**HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTOR AND THEIR OWN ANALYSES OF THE TERMS OF THE PLAN IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. IMPORTANTLY, PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD REVIEW THE PLAN IN ITS ENTIRETY AND CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT AND ANY EXHIBITS HERETO, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN ARTICLE V HEREIN, "RISK FACTORS."**

**HOLDERS OF CLAIMS AND OTHER PARTIES SHOULD BE AWARE THAT THE PLAN CONTAINS INJUNCTIONS, EXCULPATIONS, AND LIMITATIONS OF LIABILITY THAT MAY MATERIALLY AFFECT THEIR RIGHTS.**

**THE DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (PACIFIC TIME) ON <u>FEBRUARY 13, 2024</u>, UNLESS EXTENDED BY THE PLAN PROPONENT IN ITS DISCRETION.**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST (INCLUDING THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN, WHO VOTE TO REJECT THE PLAN, OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) THE DEBTOR WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.**

**THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO CERTAIN MATERIAL CONDITIONS PRECEDENT DESCRIBED HEREIN AND SET FORTH IN ARTICLE IX OF THE PLAN. THERE IS NO ASSURANCE THAT THE PLAN WILL BE CONFIRMED, OR IF CONFIRMED, THAT THE CONDITIONS REQUIRED TO BE SATISFIED FOR THE PLAN TO BECOME EFFECTIVE WILL BE SATISFIED (OR WAIVED).**

**ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.**

## **EXHIBITS**

**EXHIBIT A** – Plan Proponent's Plan of Liquidation

**EXHIBIT B** – Organizational Chart of the Debtor

**EXHIBIT C** – Plan Recovery Analysis

10172450

# ARTICLE I.
## EXECUTIVE SUMMARY

**Only Holders of General Unsecured Claims (Class 4) are entitled to vote on the Plan and are being solicited under this Disclosure Statement.**

This Executive Summary is being provided as an overview of the material items addressed in the Disclosure Statement and the Plan, which is qualified by reference to the entire Disclosure Statement and by the actual terms of the Plan (and including all Exhibits attached hereto and to the Plan) and should not be relied upon for a comprehensive discussion of the Disclosure Statement and/or the Plan. Prior to soliciting votes on a proposed plan of reorganization, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance or rejection of the plan of reorganization. As such, this Disclosure Statement is being submitted in accordance with the requirements of section 1125 of the Bankruptcy Code. This Disclosure Statement includes, without limitation, information about:

- the Debtor's business and financial history;

- the significant events that have occurred to date;

- the solicitation procedures for voting on the Plan;

- the confirmation process and the voting procedures that Holders of Claims who are entitled to vote on the Plan must follow for their votes to be counted; and

- the terms and provisions of the Plan, including certain effects of confirmation of the Plan, certain risk factors relating to the Debtor and the Plan, and the manner in which distributions will be made under the Plan.

If the Plan cannot be confirmed for any reason, then (a) the Plan may be revoked by the Plan Proponent, or (b) the Plan Proponent may seek to convert the Chapter 11 Case to a chapter 7 liquidation. The Plan Proponent intends to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims that is Impaired as set forth in Article IV of the Plan.

If confirmed and consummated, the Plan will facilitate the orderly wind down of the Debtor's remaining assets, including the pursuit of any remaining Causes of Action and distribution of any proceeds therefrom according to the Plan, all of which are preserved unless the Plan expressly provides otherwise. The Plan also enables the Plan Proponent to pursue and consummate a Reopening Transaction if, at any time before the Effective Date, the Plan Proponent determines, in its sole discretion, that consummation of such Reopening Transaction is in the best interests of the Estate and Creditors. The Plan Proponent believes that any alternative to confirmation of the Plan, such as a chapter 7 liquidation or other attempts by another party in interest to file a plan, would result in significant delays, litigation, and additional costs, and ultimately would diminish the recovery for creditors. **Accordingly, the Plan Proponent strongly recommends that all Holders of General Unsecured Claims (Class 4) vote to accept the Plan.**

10172450

## A.    AN OVERVIEW OF THE CHAPTER 11 PROCESS

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11 of the Bankruptcy Code, a debtor may remain in possession of its assets and business and attempt to reorganize or liquidate its business for the benefit of such debtor, its creditors and other parties in interest.

The commencement of a chapter 11 case creates an estate comprised of all of the legal and equitable interests of a debtor in property as of the date that the bankruptcy petition is filed. Sections 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession," unless the bankruptcy court orders the appointment of a trustee. The filing of a bankruptcy petition also triggers the automatic stay provisions of section 362 of the Bankruptcy Code which provide, among other things, for an automatic stay of all attempts to collect prepetition claims from a debtor or otherwise interfere with its property or business. Except as otherwise ordered by the bankruptcy court, the automatic stay generally remains in full force and effect until the effective date of a plan of reorganization, following confirmation of such plan of reorganization.

The Bankruptcy Code provides that, upon commencement of a chapter 11 bankruptcy case, the Office of the United States Trustee may appoint a committee of unsecured creditors and may, in its discretion, appoint additional committees of creditors or of equity interest holders if necessary to assure adequate representation.

Upon the commencement of a chapter 11 bankruptcy case, all creditors and equity interest holders have standing to be heard on any issue in the chapter 11 proceedings pursuant to section 1109(b) of the Bankruptcy Code.

The formulation and confirmation of a plan is the principal objective of a chapter 11 case. The plan sets forth the means of satisfying the claims against the debtor. A bankruptcy court's confirmation of a plan binds the debtor, any entity acquiring property under the plan, any holder of a claim or an equity interest in the debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code to the terms and conditions of the confirmed plan, whether or not such Entity voted on the plan or affirmatively voted to reject the plan.

## B.    OVERVIEW OF THE PLAN

The Plan is a plan of liquidation which, among other things, provides for a Liquidation Trustee to liquidate or otherwise dispose of the remaining assets of the Estate, to the extent such assets were not previously monetized to Cash or otherwise transferred by the Debtor prior to the Effective Date (including, without limitation, pursuant to a post-petition Bankruptcy Court-approved sale of the Debtor's assets or the consummation of a Reopening Transaction). The Liquidation Trustee would also distribute all net proceeds to creditors, including payment in full of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims (Class 1), Allowed Other Secured Claims (Class 2) (subject to the Liquidation Trustee's election of alternative treatments under the Plan and solely to extent of the value of the collateral which secured such Claims) and Allowed SAMC Secured Obligations (Class 3) (subject to the Liquidation Trustee's election of alternative treatments under the Plan and solely to extent of the value of the collateral which secured such Claims), generally in accordance with the priority scheme under the Bankruptcy Code, subject to the terms of the Plan. Subject to the terms of the Plan, the net proceeds from any asset sale,

10172450

Reopening Transaction and Causes of Action will be used to fund recoveries under the Plan to Holders of Allowed Claims entitled to distributions under the Plan.

Under the Plan, a Holder of an Allowed General Unsecured Claim in Class 4 will receive its Pro Rata share of the Liquidation Trust Interests, which, in general, will entitle the Holder thereof to its Pro Rata interest in the aggregate amount of the Net Distributable Assets. The Net Distributable Assets are net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, Allowed SAMC Secured Obligations and Trust Expenses, and/or any reserves established for the foregoing.

As reflected in the Plan Recovery Analysis attached hereto as **Exhibit C** (the "Plan Recovery Analysis"),[2] in addition to Cash on Hand, the Estate includes certain real and personal property, any proceeds of which will be used to fund distributions to creditors in accordance with the terms of the Plan. The Estate also contains potential Causes of Action that will be transferred to the Liquidation Trust under the Plan, all of which are preserved unless the Plan expressly provides otherwise. No value has been attributed to litigation claims for purposes of this Disclosure Statement and the Plan Recovery Analysis. The Plan also enables the Committee to pursue and consummate a Reopening Transaction if, at any time before the Effective Date, it determines in its sole discretion that consummation of such Reopening Transaction is in the best interests of the Estate and Creditors.

The following chart briefly summarizes the classification and estimated recoveries of Claims under the Plan (assuming an Effective Date [----, 2024).[3]

| Class | Type of Claim or Interest | Estimated Claim Amount | Impairment | Entitled to Vote | Estimated Recovery Under Plan |
|-------|---------------------------|------------------------|------------|------------------|-------------------------------|
| 1 | Other Priority Claims | $[--] | No | No | 100% |
| 2 | Other Secured Claims | $[--] | No | No | 100% |
| 3 | SAMC Secured Obligations | $[--] | No | No | 100% |
| 4 | General Unsecured Claims | $[--] | Yes | Yes | [--]% |

---

[2] The information and estimates set forth in the Plan Recovery Analysis, as well as statements in this Disclosure Statement based upon such information and estimates (including the chart summarizing the classification and estimated recoveries of Claims under the Plan below), are based on information provided by the Debtor. Neither the Plan Proponent nor its professionals have had the opportunity to independently verify the information and estimates set forth in the Plan Recovery Analysis or the statements in this Disclosure Statement based upon such information and estimates. The Committee accepts such information, estimates, and statements for the purposes of this Disclosure Statement but reserves, on its own behalf and on behalf of the Liquidation Trustee, the right to dispute such information, estimates, and statements in the event that any subsequent investigation and/or information reveals different or conflicting facts. Nothing in the Plan Recovery Analysis or in this Disclosure Statement based upon the Plan Recovery Analysis shall bind the Committee or the Liquidation Trustee or be construed to constitute an admission of any fact or waiver of any right by the Committee or the Liquidation Trustee or have any adverse estoppel effect.

[3] This chart is only a summary of the classification and treatment of Claims under the Plan. References should be made to the entire Disclosure Statement and the Plan for a complete description.

10172450

**THE PROJECTED RECOVERIES AND ALL CLAIM ESTIMATES SET FORTH IN THE TABLE ABOVE OR ELSEWHERE IN THIS DISCLOSURE STATEMENT ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE. FOR A COMPLETE DESCRIPTION OF THE PLAN'S CLASSIFICATION AND TREATMENT OF CLAIMS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN AND THE RISK FACTORS DESCRIBED IN ARTICLE V BELOW. THE TABLE IS INTENDED FOR ILLUSTRATIVE PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR A REVIEW OF THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY. FOR CERTAIN CLASSES OF CLAIMS, THE ACTUAL AMOUNT OF ALLOWED CLAIMS COULD BE MATERIALLY DIFFERENT THAN THE ESTIMATED AMOUNTS SHOWN IN THE TABLE ABOVE.**

## C.     SOLICITATION, VOTING AND CONFIRMATION MATTERS

### 1.     Who May Vote on the Plan

Each Holder of an Allowed Claim in Class 4 is entitled to vote either to accept or to reject the Plan. Only those votes cast by Holders of Allowed Claims in Class 4 shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain confirmation. An Impaired Class of Claims shall have accepted the Plan if: (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. Classes 1, 2, and 3 are Unimpaired under the Plan, are each conclusively deemed and presumed to accept the Plan by operation of law, and are not entitled to vote on the Plan. Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, the Plan Proponent reserves the right to seek confirmation of the Plan over such rejection pursuant to section 1129(b) of the Bankruptcy Code.

### 2.     Summary of Solicitation Package and Voting Instructions

The following materials constitute the solicitation package with respect to the Plan enclosed herewith (the "Solicitation Package"):

- a copy of a notice of (i) the order approving the Disclosure Statement, (ii) the Confirmation Hearing, (iii) the deadline and procedures for filing objections to confirmation of the Plan, and (iv) the Voting Deadline;

- a copy of the form of ballot and a return envelope therefor;

- a copy of this Disclosure Statement with all Exhibits;

- the Plan (as an Exhibit hereto);

- a copy of the order approving this Disclosure Statement (without Exhibits) (the "Disclosure Statement Order"); and

10172450

- a cover letter from the Plan Proponent explaining the attachments and requesting that creditors vote in favor of the Plan.

Only Holders of General Unsecured Claims (Class 4) are entitled to vote to accept or reject the Plan and shall be served with copies of this Disclosure Statement and the Plan. All parties entitled to vote to accept or reject the Plan shall receive a copy of an appropriate Ballot. Any party who desires additional paper copies of these documents may request copies from the Plan Proponent.

The Plan Proponent will, among other things, provide additional copies of all Solicitation Package materials and generally oversee the solicitation process.

Only the Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan. To be counted, Ballots cast by Holders must be received by the Plan Proponent by **5:00 p.m. (prevailing Pacific Time) on <u>February 13, 2024,</u> the Voting Deadline**. Voting instructions are attached to each Ballot.

Unless the Plan Proponent, in its discretion, decides otherwise, any Ballot received after the Voting Deadline shall not be counted. On or before **February 20, 2024**, the Plan Proponent will process and tabulate received Ballots and will File a Tabulation Declaration.

Parties may contact the Plan Proponent with any questions related to the solicitation procedures applicable to their Claims.

**Any Ballot that is properly executed by the Holder of a Claim but fails to clearly indicate an acceptance or rejection, or that indicates both an acceptance and a rejection of the Plan, shall not be counted.**

**All Ballots are accompanied by voting instructions. It is important to follow the specific instructions provided with the Ballot. Voting tabulation procedures are set forth in the Ballots.**

3.      **Confirmation of the Plan**

(a)      <u>**Generally**</u>

"Confirmation" is the technical term for the Bankruptcy Court's approval of a plan of reorganization or liquidation. The timing, standards and factors considered by the Bankruptcy Court in deciding whether to confirm a plan are discussed below.

The confirmation of a plan of liquidation by the Bankruptcy Court binds the debtor, any person acquiring property under a plan of liquidation, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.

(b)      <u>**The Confirmation Hearing**</u>

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.

10172450

The Plan Proponent will provide notice of the Confirmation Hearing to all necessary parties. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing of any adjournment thereof.

**4.      Confirming and Consummating the Plan**

It is a condition to confirmation of the Plan that the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Plan Proponent. Certain other conditions contained in the Plan must be satisfied or waived pursuant to the provisions of the Plan.

**5.      Rules of Interpretation**

The following rules for interpretation and construction shall apply to this Disclosure Statement: (1) capitalized terms used in the Disclosure Statement and not otherwise defined shall have the meaning ascribed to such terms in the Plan (or, if not defined in the Plan, in the Disclosure Statement Motion); (2) unless otherwise specified, any reference in this Disclosure Statement to a contract, instrument, release, indenture, or other agreement or document shall be a reference to such document in the particular form or substantially on such terms and conditions described; (3) unless otherwise specified, any reference in this Disclosure Statement to an existing document, schedule, or exhibit, whether or not filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an entity as a Holder of a Claim includes that Entity's successors and assigns; (5) unless otherwise specified, all references in this Disclosure Statement to Sections are references to Sections of this Disclosure Statement; (6) unless otherwise specified, all references in this Disclosure Statement to exhibits are references to exhibits in this Disclosure Statement; (7) unless otherwise set forth in this Disclosure Statement, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (8) any term used in capitalized form in this Disclosure Statement that is not otherwise defined in this Disclosure Statement, the Plan, or the Disclosure Statement Motion but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**6.      Distribution of Non-Voting Class Notice to Holders of Claims in Non-Voting Classes and Holders of Disputed Claims**

As set forth above, certain Holders of Claims are not entitled to vote on the Plan. As a result, such parties will not receive Solicitation Packages but, instead, will only receive the Non-Voting Class Notice that explains, among other things, that (i) Classes 1, 2 and 3 are Unimpaired under the Plan, and therefore, are conclusively deemed and presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code; (ii) instructions for Holders of Claims in all Classes on how they may obtain a copy of the Plan and this Disclosure Statement; (iii) the deadline by which to object to confirmation of the Plan; and (iv) the Confirmation Hearing date and time.

<u>Contract and Lease Counterparties</u>. Parties to certain of the Debtor's Executory Contracts and Unexpired Leases may not have Claims pending the disposition of their contracts or leases by assumption or rejection under the Plan. Such parties nevertheless will receive notice of the Confirmation Hearing.

- 6 -

10172450

**7.    Filing of the Plan Supplement**

The Plan Proponent will file the Plan Supplement with the Bankruptcy Court in accordance with the Disclosure Statement Order. The Plan Proponent will have the right to amend the documents contained in, and Exhibits to, the Plan Supplement through the Effective Date.

**8.    The Confirmation Hearing**

**The Confirmation Hearing has been scheduled to commence on February 27, 2024 at 9:30 a.m. (prevailing Pacific Time).** The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Plan Proponent by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

**9.    The Deadline for Objecting to Confirmation of the Plan**

**The deadline for objecting to Confirmation of the Plan is February 13, 2024 at 4:00 p.m. (prevailing Pacific Time)**. Subject to order of the Bankruptcy Court, any objection to confirmation of the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the objecting party and the amount and nature of the Claim of such Entity; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan; and (v) be filed with the Bankruptcy Court and served by no later than the deadline set by the Bankruptcy Court, and on the parties set forth in the Disclosure Statement Order (the "Notice Parties"), which service may be by way of the CM/ECF system, with courtesy copies by email.

**CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.**

**10.    Effect of Confirmation of the Plan**

The Plan contains certain provisions relating to (a) the compromise and settlement of Claims, and (b) exculpation of certain parties.

**THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (A) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (B) HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASE (IF ANY ARE FILED), OR (C) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

**D.    RISK FACTORS**

**PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS IS URGED TO CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE**

- 7 -

10172450

**RISK FACTORS DESCRIBED IN ARTICLE V HEREIN TITLED, "RISK FACTORS."**

## ARTICLE II.
## BACKGROUND TO THE CHAPTER 11 CASE[4]

**A.    THE DEBTOR'S HISTORY, BUSINESS, AND OPERATIONS**

Madera Community Hospital ("MCH" or the "Hospital") is a non-profit California Corporation that owns a general acute care hospital in Madera, California.  The hospital is licensed (in suspense) for 106 beds.  As of the date hereof, the Debtor has seven employees.  Since December 26, 2022, the Debtor has laid off over 700 employees.  It is the only adult hospital in the county and served a population of about 160,000 people, some of whom are uninsured and many of whom are lower income.  The closest hospitals with emergency rooms are 23.5 miles away in Fresno or 35 miles away in Merced, both of which are long distances in an emergency situation.

As discussed below, in December 2022, Saint Agnes Medical Center ("SAMC"), after receiving conditions imposed by the California Attorney General, terminated negotiation of an affiliation agreement with MCH, which resulted in MCH shutting down all medical services.  Since January 10, 2023, no medical services have been provided at the Hospital.

MCH also had rural health clinics in Chowchilla, Madera and Mendota, all of which were closed on January 10, 2023.

MCH previously provided the following services: clinics, diagnostic imaging, inpatient care, dialysis, emergency department, intensive care unit, telemedicine, gastroenterology, labor & delivery, telemetry, medical surgical inpatient services, medical guard unit and maternity.

Although MCH is not currently treating patients, it has continuing operations relating to preserving its assets, seeking "suitors" and exploring resumption of operating its clinics.

Beginning in 2021 and continuing to the present, MCH embarked on evaluating and identifying potential relationships with other healthcare systems.  In 2021, MCH identified a possible affiliation with SAMC and its parent, Trinity Health Care System ("Trinity").  Protracted negotiations ensued. SAMC made significant loans to MCH.  When the proposed affiliation was presented to the Attorney General of the State of California, the Attorney General, after many months of delay, sought to impose

---

[4] Capitalized terms used in this section but not otherwise defined in this Disclosure Statement shall have the meanings ascribed to them in the *Declaration in Support of Application for Order Shortening Time of Emergency Motions* [Docket No. 5] (the "First Day Declaration").

Statements in this Article II and the exhibits referenced therein, including with respect to the Debtor's background, prepetition events, the Debtor's reasons for filing the Chapter 11 Case, and descriptions and effects of applicable documents, are based upon the Debtor's characterization of the relevant facts and prior representations in this Chapter 11 Case (and, with respect to statements regarding descriptions and effects of applicable documents, are qualified in their entirety by reference to the applicable documents themselves). The Committee accepts these characterizations and representations for the purposes of this Disclosure Statement but reserves, on its own behalf and on behalf of the Liquidation Trustee, the right to dispute them in the event that any subsequent investigation reveals different or conflicting facts. Nothing in this Article II or the exhibits referenced therein shall bind the Committee or the Liquidation Trustee or be construed to constitute an admission of any fact or waiver of any right by the Committee or the Liquidation Trustee, including for the purposes of any Causes of Action preserved under the Plan, or be construed to have any adverse estoppel effect.

10172450

conditions that were unacceptable to SAMC. As a result, SAMC terminated the affiliation agreement. This led MCH to file a chapter 11 petition, as it ran out of money and was unable to pay employees.

## B.    THE DEBTOR'S MANAGEMENT

MCH is governed by a volunteer Board of Trustees consisting of community leaders: Diedre da Silva, Chair, Stell Manfredi, Vice Chair, Robert Poythress, Finance Committee Chair, Monte Pistoresi, Secretary, Mohammad Arain, M.D., Past Chief of Staff, Don Warnock, Executive Member, Aftab Naz, M.D., Chief of Staff, Jon Basila, Anita Eden, Bruce Norton, Jan Zitek, Mike Diebert, Jay Mahil and Wally Nishimoto.

The leadership of the Hospital consists of Karen Paolinelli, MSN, RN, FNP-C, PA-C, Chief Executive Officer. The CFO is Shondale Seymour on a contract basis. The Controller is Aaron Chambers, also on a contract basis.

A chart showing the Debtor's organizational structure is attached hereto as **Exhibit B**.

## C.    SUMMARY OF PRE-PETITION INDEBTEDNESS

### 1.    Secured Debt

#### a.    Saint Agnes Medical Center

In April 2021, SAMC entered into an agreement to provide financing to MCH. As of the Petition Date, the Debtor allegedly owed SAMC a total of approximately $15,400,000, which is purportedly secured by a deed of trust against all real property and a security interest in almost all assets.

#### b.    New England Sheet Metal

As of the Petition Date, the Debtor alleged that it may owe New England Sheet Metal and one of its subcontractors, Patterson Drywall, up to $1,100,000 on account of works of improvement, and four mechanic's liens against the hospital campus had been filed. The Plan Proponent reserves the right to challenge any such liens and to object to any claims asserted or filed by New England Sheet Metal, its subcontractors, or anyone else acting on their behalf.

#### c.    Equipment Loans/Leases

As of the Petition Date, the Debtor had numerous leases with lessors or real and personal property. As of the Petition Date, an estimated $2,800,000 was owed on these equipment leases, with monthly payments totaling approximately $100,000, in the aggregate.

### 2.    General Unsecured Claims

As of the Petition Date, the Debtor estimated that it owed its former employees approximately $2,000,000 in the aggregate for unpaid accumulated personal time off, of which approximately $1,100,000 is allegedly entitled to priority status. In addition, as of the Petition Date, the Debtor was the defendant in a class action lawsuit alleging violations of the California and Federal WARN Act. The class representative for that lawsuit has since filed two proofs of claim, under the California and

- 9 -

10172450

Federal WARN Acts, each asserting a claim of $10 million, and seeking priority treatment of $15,150 of such amount pursuant to section 507(a)(4) of the Bankruptcy Code.

The Debtor also estimated that, in addition to the above-described employee-related claims, it has approximately $9,100,000 in general unsecured creditors, which includes an unsecured loan of $1,100,000 owed to Citizens Business Bank. Additional amounts will also be owed based on the rejection of executory contracts and unexpired leases. There is also an overpayment claimed by Medicare in the amount of $400,000. Additionally, there are at least $1,200,000 in self-insured insurance claims.

## D.    EVENTS LEADING TO THE BANKRUPTCY CASE

The fiscal crisis for the Debtor was the result of several factors. First, the Debtor provided millions of dollars per year in care to low income, uninsured people, for which Medi-Cal reimbursements were less than expenses. The percentage of the Debtor's resources expended on care to Medi-Cal patients increased because the Debtor serves a depressed community and the economic conditions of this community have worsened due to inflation and other factors.

Second, the COVID-19 pandemic was devastating for MCH. The COVID-19 pandemic "transformed a long-simmering nursing shortage into a full-blown crisis," forcing MCH to hire traveling nurses at high costs in order to meet state mandated nurse-to-patient ratios.

Third, being a standalone, small rural area hospital in California presents a challenging financial situation. Such hospitals, including MCH, suffered from a lack of economies of scale, poor payor mix, high overhead costs, less high-margin specialty service lines, and an overall lower revenue base. The Hospital's campus is approximately 51 years old and the maintenance costs for this campus are substantial and increasing every year.

In sum, MCH faced considerable costs and other challenging macroeconomic conditions in the period preceding the commencement of this chapter 11 case, including costs resulting from COVID, the resulting costs of travelling nurses, high inflationary pressures, and considerable legal expense in connection with the affiliation process (discussed below).

Prior to closing, the Debtor needed to generate approximately $300,000 per day in revenue to cover its operating costs to stay in full operation. The Hospital was generating only approximately $225,000 per day in revenue when it closed. Thus, the Debtor lost money, $2 to $2.5 million, every month it operated in 2022.

The Debtor's CEO and Board concluded that the Debtor could not survive at its existing cash flow levels and would have to close absent drastic measures. As a result, representatives of the Board approached SAMC (and others), which had previously expressed an interest in acquiring or operating the Hospital, and negotiated an affiliation agreement subject to California Attorney General approval. After a long delay and review of over 13 months, on account of conditions imposed by the California Attorney General, SAMC withdrew from proceeding with the affiliation agreement.

The unanticipated fracture of the proposed affiliation agreement with SAMC occurred as MCH was at a critically low cash point, leaving it with no cash to pay for continued medical services and to pay employees. As a result, MCH concluded that it must shut down hospital operations, cease treating patients, shut down clinics, close its doors and find a suitor or liquidate its assets.

- 10 -

10172450

The emergency room closed on December 30, 2022. On March 10, 2023 (the "<u>Petition Date</u>"), the Debtor filed its chapter 11 bankruptcy case.

**E.      DEVELOPMENTS IN THE DEBTOR'S CHAPTER 11 CASE**

**1.      First Day and Other Early Motions and Orders**

The Debtor has filed motions and obtained approval for:

(i)      payments to the Debtor's workforce for prepetition obligations and benefits [Docket Nos. 12 & 114];

(ii)      the use of cash collateral and granting adequate protection [Docket Nos. 18, 125, 168, 451, 589, 674, 724, 760, 883, 1025, 1063];

(iii)      maintenance of existing bank accounts, business forms and continuity of cash management system [Docket Nos. 23 & 246];

(iv)      adequate assurance of payment for utility services [Docket Nos. 28 & 115];

(v)      limiting scope of notice for chapter 11 case [Docket Nos. 38 & 116];

(vi)      maintenance of insurance programs and payment of insurance premiums and brokerage commissions [Docket Nos. 42 & 117];

(vii)      authorizing pass through payments (DHCS Worker Retention Payments [Docket Nos. 144, 244]; and

(viii)      interim compensation and reimbursement procedures for chapter 11 professionals [Docket Nos. 636, 695, & 759].

**2.      Retention of Chapter 11 Professionals**

The Debtor has filed applications and obtained authority to retain various professionals to assist the Debtor in carrying out its duties under the Bankruptcy Code during the Chapter 11 Case. These professionals include: (i) Wanger Jones Helsley as bankruptcy counsel [Docket No. 70]; (ii) McCormick Barstow as special insurance defense counsel [Docket No. 74]; (iii) Ward Legal, Inc. as special healthcare, employment and business transactions counsel [Docket No. 78]; (iv) CHW LLP as certified public accountant [Docket No. 158]; (v) JWT & Associates, LLP as certified public accountant; [Docket No. 461]; (vi) Newmark Pearson Commercial as leasing broker [Docket No. 473]; and (vii) Newmark Valuation & Advisory as appraiser [Docket No. 643].

**3.      Appointment of the Unsecured Creditors' Committee**

On April 5, 2023, the U.S. Trustee appointed the Committee in the Chapter 11 Case [Docket No. 195], consisting of the following creditors: (i) SnapMed Tech., Inc. DBA SnapNurse; (ii) Citizens Business Bank; (iii) Lourdes Ortega; (iv) Arya Medical Group; and (v) Cardinal Health 110, LLC.

The Committee obtained Bankruptcy Court approval to employ Sills and Perkins as its bankruptcy co-counsel on May 23, 2023 [Docket Nos. 488, 489]. The Committee also obtained

Bankruptcy Court approval to employ FTI Consulting, Inc. as its financial advisor on June 21, 2023 [Docket No. 595]

### 4.    Schedules and Statements of Financial Affairs

On March 23, 2023, the Debtor filed its Schedule of Assets and Liabilities and Statement of Financial Affairs (collectively, the "Schedules and Statements") [Docket No. 136].  The Debtor filed certain amendments to its Schedules and Statements on April 24, 2023 and June 5, 2023 [Docket Nos. 282, 544]

### 5.    Claims Bar Date

On March 14, 2023, the Office of the United States Trustee filed a *Notice of Chapter 11 Case* [Docket No. 49] (the "Notice of Bar Date"), pursuant to which: (i) July 17, 2023 was established as the deadline for all non-governmental units to file proofs of claim in the Chapter 11 Case; and (ii) September 6, 2023 was established as the deadline for all governmental units (as defined in section 101(27) of the Bankruptcy Code) to file proofs of claim in the Chapter 11 Case.

On June 12, 2023, the Debtor filed an *Application for Ex Parte Order Extending Claims Bar Date as to Later Discovered Claims* [Docket No. 556] (the "Motion to Set Later Discovered Claims Bar Date"), pursuant to which the Debtor sought to extend the deadline to file proofs of claim to September 30, 2023, for certain creditors who may not have been served with the Notice of Bar Date. On June 13, 2023, the Bankruptcy Court entered an order granting the Motion to Set Later Discovered Claims Bar Date [Docket No. 564].

### 6.    Exclusivity

Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the Bankruptcy Court enters an order for relief under chapter 11 of the Bankruptcy Code during which only the debtor may file a chapter 11 plan. If the debtor files a chapter 11 plan within such 120-day period, section 1121(c)(3) of the Bankruptcy Code extends the exclusivity period by an additional 60 days to permit the debtor to seek acceptances of such plan. Section 1121(d) of the Bankruptcy Code also permits the Bankruptcy Court to extend these exclusivity periods "for cause."

On August 24, 2023, the Bankruptcy Court entered an order extending the Debtor's exclusive filing period to October 6, 2023 and extending the Debtor's exclusive solicitation period to December 5, 2023 [Docket No. 844].  The exclusivity period has now terminated.

### 7.    Assumption of Certain Executory Contracts

On March 14, 2023, the Debtor filed a motion to assume a consulting agreement with Impossible Services Group, Inc. [Docket No. 62].  On April 18, 2023, the Bankruptcy Court entered an order granting such motion [Docket No. 262].

On September 8, 2023, the Debtor filed a motion to assume certain executory contracts with Quality Reimbursement Services, Inc. [Docket No. 934].  On October 3, 2023, the Bankruptcy Court entered an order granting such motion [Docket No. 1005].

10172450

**8.     Rejection of Certain Leases and Executory Contracts**

On April 4, 2023, the Debtor filed a motion to reject a non-residential real property lease, a related sublease agreement, and certain additional related agreements with Chowchilla Memorial Hospital District and Brenda Neer Physical Therapy, Inc., a California corporation, dba Chowchilla Physical Therapy [Docket No. 173]. On June 28, 2023, the Bankruptcy Court entered an order granting such motion [Docket No. 627].

On April 4, 2023, the Debtor filed a motion to reject an unexpired non-residential real property lease with McCain Varney & Kent, LLC [Docket No. 184]. On June 29, 2023, the Bankruptcy Court entered an order granting such motion [Docket No. 640].

On April 4, 2023, the Debtor filed a motion to reject an unexpired non-residential real property lease with AMOR Wellness Center, Inc. [Docket No. 179]. On June 28, 2023, the Bankruptcy Court entered an order granting such motion [Docket No. 629].

Numerous other contracts and leases are subject to motions to reject that are pending as of the date hereof.

**9.     Use of Cash Collateral**

On March 13, 2023, the Debtor filed the *Emergency Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral and (B) Granting Adequate Protection for Use of Cash Collateral* [Docket No. 18]. The Bankruptcy Court has entered numerous orders authorizing the Debtor to use cash collateral on an interim basis [*see* Docket Nos. 125, 168, 451, 589, 674, 724, 760, 883, 1025, 1063].

**10.     Asset Sales**

On March 13, 2023, the Debtor filed an *Emergency Motion for Authority to Sell Personal Property of the Estate Pursuant to 11 U.S.C. § 363* [Docket No. 33] (the "Excess Medical Supply Sale Motion"), pursuant to which the Debtor requested authority to sell certain personal property consisting of excess medical supplies. On March 15, 2023, the United States Trustee filed an objection to the Excess Medical Supply Sale Motion [Docket No. 89]. On March 16, 2023, the Bankruptcy Court entered an order denying, without prejudice, the Excess Medical Supply Sale Motion [Docket No. 99].

On September 5, 2023, the Debtor filed a *Motion for Authority to Sell Real Property* [Docket No. 899] (the "Farmland Sale Motion"), pursuant to which the Debtor requested authority, *inter alia*: (i) to sell approximately 35.58 acres of farmland to S & K Management for $569,280, subject to higher and better bids; (ii) to pay the net proceeds of the sale to SAMC from the escrow. At a hearing held on October 24, 2023, the Bankruptcy Court granted the Farmland Sale Motion after conducting an auction at which overbids were submitted. On November 8, 2023, the Bankruptcy Court entered an order granting the Farmland Sale Motion and authorizing the Debtor to sell the farmland to R.K.R.K. 1998 Irrevocable Trust for $730,000.

**11.     Rubio Adversary Proceeding Against the Debtor**

On May 11, 2023, Antonio Rubio, on behalf of himself and a putative class of similarly situated former employees, filed a class action adversary proceeding (the "Rubio Adversary Proceeding") complaint against the Debtor [Adv. Pro. No. 23-01024] (the "Rubio Complaint"). The Rubio

- 13 -

Complaint asserts causes of action for: (i) alleged violation of the federal WARN Act, 29 U.S.C. § 2101, *et seq.*, (ii) alleged violation of the California WARN Act, Cal. Lab. Code §§ 1401, *et seq.*, (iii) alleged violation of the California Labor Code, Cal. Lab. Code § 227.3, and (iv) penalties allegedly owed under the Labor Code Private Attorneys General Act, Cal. Lab. Code §§ 2698-2699 *et seq.*

On June 9, 2023, the Debtor filed a motion to dismiss the Rubio Complaint [Docket No. 11] (the "<u>Motion to Dismiss</u>"). On September 1, 2023, the Bankruptcy Court entered an order denying the Motion to Dismiss [Docket No. 36].

On September 15, 2023, the Debtor filed an answer [Docket No. 40] to the Rubio Complaint, which asserts numerous affirmative defenses.  The Rubio Adversary Proceeding remains pending.

### 12.     Adversary Proceeding Against the U.S. Department of Health and Human Services

On July 20, 2023, the Debtor filed an adversary proceeding complaint against the U.S. Department of Health and Human Services and Xavier Becerra, in his official capacity as acting Secretary of Health and Human Services [Adv. Pro. No. 23-01030].  The adversary complaint asserts that the defendants violated the automatic stay by terminating the Debtor's Medicare provider agreements and requests the entry of a declaratory judgment finding that defendants violated the automatic stay and that the defendant's termination of the Debtor's Medicare provider agreements is void.

The defendants' deadline to file a responsive pleading has been extended to November 27, 2023, and a status conference in the adversary proceeding is scheduled for December 13, 2023 [Docket No. 12].

- 14 -

10172450

1

2
### ARTICLE III.
### PRESERVATION OF CAUSES OF ACTION
3

4          Unless any Causes of Action against any party are expressly waived, relinquished, exculpated,
released, compromised, or settled in the Plan or a Bankruptcy Court order, the Plan Proponent
5  expressly reserves, retains, and preserves all claims and/or Causes of Action (as defined in Article I(B)
of the Plan)[5] of the Debtor and its estate of any kind or nature whatsoever, whether arising before or
6  after the Petition Date including, without limitation, all claims and Causes of Action against the
Excluded Parties identified on <u>Exhibit A</u> to the Plan.  Consistent with section 1123(b)(3) of the
7  Bankruptcy Code, this reservation, retention, and preservation is intended to provide for potential
8  settlement and/or adjustment of Claims against the Debtor and its estate and/or retention and
enforcement of all claims and Causes of Action of the Debtor and its estate.  This reservation, retention,
9  and preservation is intended to be broad in scope, and provides notice to enable Creditors to (i) identify
the claims and Causes of Action (or potential claims and Causes of Action) at issue and (ii) evaluate
10  whether those claims and Causes of Action might provide additional assets for distribution.

11          This reservation, retention, and preservation of claims and Causes of Action further provides
12  notice to Creditors and other parties in interest herein about the types and categories of claims and
Causes of Action that might enlarge the Estate, and is based upon information known by the Plan
13  Proponent to date.  To the extent that any Creditor or party in interest has any questions or concerns
regarding the scope and breadth of the types and/or categories of claims and Causes of Action reserved,
14  retained, and preserved, any such Creditor or party in interest should object to this Disclosure
Statement and request that the Bankruptcy Court require a more complete description of the types or
15  categories of claims and Causes of Action reserved, retained, and preserved.

16          Further, no Person or Entity may rely on the absence of a specific reference in the Plan or the
17  Disclosure Statement to any claim and/or Cause of Action against them as any indication that the Plan
Proponent, Liquidating Trustee, or the Liquidating Trust, as applicable, will not pursue any and all
18  available claims and/or Causes of Action against them, it being the intent of the Plan Proponent that,
subject to the exculpation and limitation on liability provisions set forth in Articles X and XI of the
19  Plan, all claims and Causes of Action described herein shall be reserved, retained, and preserved for

20

---

[5] The Plan defines "Causes of Action" as follows: "any action, claim, cause of action, cross-claim, third-party claim,
21  controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment,
account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever belonging to
22  the Debtor or its Estate, in each case whether known, unknown, contingent or non-contingent, matured or unmatured,
suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect,
23  choate or inchoate, secured or unsecured, assertable directly or derivatively (including under alter ego theories), whether
arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of
24  law, and the proceeds thereof.  For the avoidance of doubt, Cause of Action includes: (a) any right of setoff, counterclaim
or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to
25  object to Claims; (c) any claim pursuant to section 362 and any and all Avoidance Actions; (d) any claim or defense
including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any
26  claims under any state, federal or foreign law; (f) all Tort Claims and D&O Claims; (g) any and all claims under any D&O
Liability Insurance Policies; and (h) all Retained Causes of Action, including those enumerated in **Article V.R** of this Plan.
27  The definition of 'Causes of Action' shall be construed in accordance with its broadest possible meaning, and any doubts
or ambiguities shall be resolved in favor of inclusiveness.  **Except as otherwise expressly provided in this Plan or the**
28  **Confirmation Order, any and all Causes of Action of the Debtor or the Estate (including, but not limited to, Tort**
**Claims and D&O Claims), are expressly preserved under the Plan and retained by the Liquidation Trust.**"

- 15 -

the benefit of all Creditors and parties in interest. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such claims and/or Causes of Action upon, after, or as a consequence of the Plan's confirmation or occurrence of the Effective Date. Any counterparty or potential counterparty to a claim or Cause of Action that is concerned whether a claim and/or Cause of Action may or will be asserted against it, him, or her, may contact the Plan Proponent in connection with the Plan confirmation process described in this Disclosure Statement for further information.

In addition to the foregoing, as described herein and in the Plan, consistent with applicable law and subject to the exculpation and limitation on liability provisions set forth in Articles X and XI of the Plan, the Plan Proponent identifies the following type and categories of claims and Causes of Action to be preserved and reserved:

a.    any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity;

b.    the right to object to Claims;

c.    any claim pursuant to section 362 and any and all Avoidance Actions[6], irrespective of whether or not the targets of such Causes of Action have been identified by name or any transfers subject to avoidance have been listed in the Debtor's Schedules, this Disclosure Statement, the Plan, or any other document Filed in the Chapter 11 Case;

d.    any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code;

e.    any claims and Causes of Action under any state, federal or foreign law;

f.    all Tort Claims[7] and D&O Claims[8];

g.    any and all claims and Causes of Action (including Tort Claims and D&O Claims), against the Excluded Parties and/or any other party not expressly released pursuant to the Plan;

---

[6] The Plan defines "Avoidance Actions" as "any and all avoidance, recovery, subordination, or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including actions or remedies arising under sections 502, 510, or 542-553 of the Bankruptcy Code, and the proceeds thereof, excluding those Avoidance Actions that have been released or sold pursuant to a Final Order of the Bankruptcy Court in the Chapter 11 Case."

[7] The Plan defines "Tort Claims" as "any and all claims or Causes of Action of the Debtor or its Estate against any of the Debtor's current or former professionals, directors, officers, trustees, managers and similar parties, including but not limited to any D&O Claims."

[8] The Plan defines "D&O Claims" as "any and all rights, Causes of Action and claims arising under state, federal or other applicable law against the Debtor's current or former directors, trustees, managers, officers and similar parties, including claims for breach of fiduciary duty, and the proceeds of any such rights, Causes of Action and claims, including from any D&O Liability Insurance Policies."

10172450

h.     any and all claims and Causes of Action relating to pending litigation, including, without limitation, the suits, administrative proceedings, executions, garnishments, and attachments listed in the Debtor's Schedules;

i.     any and all claims and Causes of Action against vendors, suppliers of goods or services (including attorneys, accountants, consultants, or other professional service providers), utilities, contract counterparties, and other parties for, including but not limited to: (A) services rendered; (B) over- and under-payments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, setoff, or recoupment; (C) failure to fully perform or to condition performance on additional requirements under contracts with the Debtor; (D) wrongful or improper termination, suspension of services, or supply of goods, or failure to meet other contractual or regulatory obligation; (E) indemnification and/or warranty claims; or (F) turnover Causes of Action arising under §§ 542 or 543;

j.     any and all claims and Causes of Action against health plans, payors, and other related providers;

k.     any and all claims and Causes of Action related to third-party non-Debtor's violations of antitrust, unfair competition, or similar laws;

l.     any and all claims and Causes of Action against landlords or lessors, including, without limitation, for erroneous charges, overpayments, returns of security deposits, indemnification, or for environmental claims;

m.     any and all claims and Causes of Action (i) arising against current or former tenants or lessees, including, without limitation, for non-payment of rent, damages, and holdover proceedings; and (ii) arising from damage to the Debtor's property;

n.     any and all claims and Causes of Action relating to claims, rights, or other Causes of Action the Debtor may have to interplead third parties in actions commenced against the Debtor;

o.     any and all claims and Causes of Action for collection of a debt or other amount owed to the Debtor;

p.     any and all claims and Causes of Action against insurance carriers, reinsurance carriers, underwriters, surety bond issuers or other related or similar parties relating to coverage, indemnity, contribution, reimbursement, or other matters;

q.     any and all claims and Causes of Action under any D&O Liability Insurance Policies[9];

r.     any and all claims and Causes of Action arising under or relating to any Reopening Transaction, including, but not limited to, enforcement of any agreement

---

[9] The Plan defines "D&O Liability Insurance Policies" as "all insurance policies for directors', officers', managers', trustees' and/or similar parties' liability maintained by the Debtor as of the Petition Date and/or the Effective Date, including tail coverage after the termination of any such policies, and the proceeds thereof."

10172450

memorializing such Reopening Transaction, and/or any breaches thereof by applicable non-Debtor parties; and

s.     all claims, demands, and Causes of Action of any kind or nature whatsoever held by, through, or on behalf of the Debtor and/or its Estate against any Person or Entity that have not otherwise been resolved or disposed of, all of which are preserved in full, whether or not such claims or Causes of Action are specifically identified in the Plan or this Disclosure Statement.

**This Disclosure Statement constitutes notice to any party in interest that, subject to the exculpation and limitation of liability provisions set forth in Articles X and XI of the Plan, it is the intent to pursue any and all such claims and Causes of Action described and defined herein to judgment and collection, and that the proceeds of all such claims and Causes of Action are essential to the Plan.**

**ARTICLE IV.**
**SUMMARY OF THE PLAN**

**THIS ARTICLE IV IS INTENDED ONLY TO PROVIDE A SUMMARY OF THE MATERIAL TERMS OF THE PLAN AND IS QUALIFIED BY REFERENCE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN AND SHOULD NOT BE RELIED ON FOR A COMPREHENSIVE DISCUSSION OF THE PLAN. TO THE EXTENT THERE ARE ANY INCONSISTENCIES OR CONFLICTS BETWEEN THIS ARTICLE IV AND THE PLAN, THE TERMS AND CONDITIONS SET FORTH IN THE PLAN SHALL CONTROL AND GOVERN.**

**A.     ADMINISTRATIVE AND PRIORITY TAX CLAIMS**

**1.     Administrative Expense Claims**

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim will receive from the Debtor or the Liquidation Trust, as applicable, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Liquidation Trustee and such Holder. **Unless otherwise ordered by Final Order of the Bankruptcy Court, all Administrative Expense Claims must be Filed within forty-five (45) days after the Effective Date, and served on the Liquidation Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court. The failure to File a request for payment of an Administrative Expense Claim on or before forty-five (45) days after the Effective Date shall result in such Administrative Expense Claim being forever Disallowed, barred, and expunged in its entirety without further notice to any party, or action, approval, or order of the Bankruptcy Court.**

10172450

The Debtor estimates that Administrative Expense Claims arising under section 503(b)(9) of the Bankruptcy Code will total approximately **[**$0.00**]**. The Debtor or the Liquidation Trustee, as applicable, will have sufficient funds under the Plan to satisfy such Claims in full.

*Professional Fee Claims*.  Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must File, within forty-five (45) days after the Effective Date, and serve on the Liquidation Trustee, the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim; *provided* that the Liquidation Trustee may pay Professionals in the ordinary course of business, for any work authorized by the Liquidation Trustee performed on and after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash. Once Allowed by the Bankruptcy Court, Professional Fee Claims incurred prior to the Effective Date shall be promptly paid from the Professional Fee Trust Account.  If the amounts held in the Professional Fee Trust Account are insufficient to pay all such Allowed Accrued Professional Compensation in full in Cash, the Liquidation Trustee shall promptly pay any unpaid balance of such Allowed Accrued Professional Compensation from the Cash transferred to the Liquidation Trust on the Effective Date.

### 2.    Priority Tax Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Liquidation Trustee:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; or (b) such other less favorable treatment as agreed to in writing by the Liquidation Trustee and such Holder.

Priority Tax Claims against the Debtor are estimated to total approximately $[-----].

## B.    CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS

### 1.    Summary

All Claims, except Administrative Expense Claims (including Professional Fee Claims) and Priority Tax Claims are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified as described in Article III.F of the Plan.

The categories of Claims listed below classify Claims for all purposes including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid, released, or otherwise settled prior to the Effective Date.

- 19 -

**Summary of Classification and Treatment of Classified Claims**

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed and Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed and Presumed to Accept |
| 3 | SAMC Secured Obligations | Unimpaired | Deemed and Presumed to Accept |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |

### 2.    Separate Classification of Certain Claims

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within the Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of voting to accept or reject the Plan and receiving Plan Distributions.

All General Unsecured Claims (or other classified Claims) have been placed in one Class for purposes of the Plan.

### 3.    Elimination of Vacant Classes

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

### 4.    Voting; Presumptions; Solicitation in Good Faith

Only Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan. Holders of Claims in this Voting Class will receive Ballots containing detailed voting instructions.

The Plan Proponent will solicit votes on the Plan from the Voting Class in good faith and in compliance with the applicable provisions of the Bankruptcy Code. Accordingly, the Plan Proponent and each of its Related Persons shall be entitled to, and upon the Confirmation Date will be granted, the protections of section 1125(e) of the Bankruptcy Code.

### 5.    Cramdown

If any Class of Claims is deemed and/or presumed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Plan Proponent intends to (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code, or (ii) amend or modify the Plan in accordance with the terms of the Plan and the Bankruptcy Code. If a controversy arises as to whether any Claims, or any Class of Claims, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

10172450

**6.    Classification and Treatment of Claims**

(a)    <u>**Class 1 - Other Priority Claims**</u>

o    *Classification*:  Class 1 consists of the Other Priority Claims, which are any Claims against the Debtor accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

o    *Treatment*:  The legal, equitable, and contractual rights of the Holders of Other Priority Claims are unaltered by the Plan.  With respect to each Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Other Priority Claim is an Allowed Other Priority Claim on the Effective Date, or (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim will receive in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed Other Priority Claim, at the election of the Liquidation Trustee: (A) Cash equal to the amount of such Allowed Other Priority Claim; (B) such other less favorable treatment as to which the Liquidation Trustee and the Holder of such Allowed Other Priority Claim will have agreed upon in writing; or (C) such other treatment such that it will not be Impaired.

o    *Impairment and Voting*:  Class 1 is an Unimpaired Class and the Holders of Other Priority Claims are conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Priority Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

(b)    <u>**Class 2 - Other Secured Claims**</u>

o    *Classification*:  Class 2 consists of the Other Secured Claims.  This Class will be further divided into subclasses designated by letters of the alphabet (Class 2A, Class 2B and so on), so that each Holder of any Allowed Other Secured Claim against the Debtor is in a Class by itself, except to the extent that there are Other Secured Claims that are substantially similar to each other and may be included within a single Class.

o    *Treatment*: The legal, equitable, and contractual rights of the Holders of Other Secured Claims are unaltered by the Plan.  With respect to each Allowed Other Secured Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Other Secured Claim is an Allowed Other Secured Claim on the Effective Date, or (ii) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim will receive in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed Other Secured Claim, at the election of the Liquidation Trustee: (A) Cash equal to the amount of such Allowed Other Secured Claim; (B) return of the Collateral securing such Allowed Other Secured Claim; (C) such other less favorable treatment as

- 21 -

10172450

to which the Liquidation Trustee and the Holder of such Allowed Other Secured Claim will have agreed upon in writing; (D) any defaults shall be cured and shall be paid or satisfied in accordance with and pursuant to the terms of the applicable agreement between the Liquidation Trustee and the Holder of the Allowed Other Secured Claim and such Claim shall be Reinstated; or (E) Reinstatement or such other treatment such that it will not be Impaired.

o  *Impairment and Voting*:  Class 2 is an Unimpaired Class and the Holders of Other Secured Claims are conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Secured Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

(c)  **Class 3 – SAMC Secured Obligations**

o  *Classification*:  Class 3 consists of SAMC Secured Obligations.

o  *Treatment*: The legal, equitable, and contractual rights of Holders of SAMC Secured Obligations are unaltered by the Plan. With respect to Allowed SAMC Secured Obligations, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such SAMC Secured Obligation is an Allowed SAMC Secured Obligation on the Effective Date, or (ii) the date on which such SAMC Secured Obligation becomes an Allowed SAMC Secured Obligation, each Holder of an Allowed SAMC Secured Obligation will receive in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed SAMC Secured Obligation, at the election of the Liquidation Trustee: (A) Cash equal to the amount of such Allowed SAMC Secured Obligation; (B) such other less favorable treatment as to which the Liquidation Trustee and the Holder of such Allowed SAMC Secured Obligation will have agreed upon in writing; or (C) such other treatment such that it will not be Impaired.

o  *Impairment and Voting*: Class 3 is an Unimpaired Class and the Holders of SAMC Secured Obligations are conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of SAMC Secured Obligations will not be entitled to vote to accept or reject the Plan and will not be solicited.

(d)  **Class 4 – General Unsecured Claims**

o  *Classification*:  Class 4 consists of the General Unsecured Claims, which are any Claim against the Debtor that is not a/an: (a) Administrative Expense Claim (including a Professional Fee Claim); (b) Priority Tax Claim; (c) Other Priority Claim; (d) Other Secured Claim; or (e) SAMC Secured Obligation.

o  *Treatment*:  As soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed General Unsecured Claim, its Pro Rata share of the Liquidation Trust Interests, which shall entitle such Holder to its Pro Rata Share of the Liquidation Trust Assets.

o    *Impairment and Voting*:  Class 4 is an Impaired Class and the Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

### 7.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's, the Committee's or the Liquidation Trustee's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to cure any arrears or defaults that may exist with respect to Executory Contracts or Unexpired Leases to be assumed under the Plan.

### 8.    Subordinated Claims

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(a) of the Bankruptcy Code, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor and the Liquidation Trustee reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

## C.    ACCEPTANCE OR REJECTION OF THE PLAN

### 1.    Deemed and Presumed Acceptance of Plan

Classes 1, 2 and 3 are Unimpaired under the Plan and are therefore conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 2.    Voting Classes

Subject to the provisions of any order approving the Disclosure Statement, each Holder of an Allowed Claim, as of the applicable Voting Record Date, in the Voting Class (Class 4) will be entitled to vote to accept or reject the Plan.

### 3.    Controversy Concerning Impairment

In the event of any controversy as to whether any Holder of an Allowed Claim or Class is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

### 4.    Acceptance by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class (or, as applicable sub-class) of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims actually voting in such Class (or, as applicable, sub-class) voted to accept the Plan.  A Class of Claims for which no Holder votes to accept or reject the Plan shall be deemed to have accepted the Plan.

10172450

### 5. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Plan Proponent shall seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class (or, as applicable, sub-class) that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Plan Proponent reserves the right to amend, revoke, modify, or withdraw the Plan or any amendment, supplement, or Exhibit thereto, or the Plan Supplement in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## D. MEANS FOR IMPLEMENTATION OF THE PLAN

### 1. Overview

The Plan provides for: (a) the disposition of substantially all the Assets of the Debtor and its estate and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code; (b) the winding down of the Debtor and its affairs by the Liquidation Trustee; and (c) the creation of a mechanism for the Liquidation Trustee to pursue, litigate, waive, settle, and compromise Causes of Action (including, but not limited to, D&O Claims and Tort Claims) to maximize Creditor recoveries. The Plan also enables the Committee to pursue and consummate a Reopening Transaction if, at any time before the Effective Date, it determines in its sole discretion that consummation of such Reopening Transaction is in the best interests of the Estate and Creditors.

### 2. General Settlement of Claims

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims, and is fair, equitable, and reasonable.

### 3. Continued Existence of Debtor and Vesting of Assets in Liquidation Trust

On and after the Effective Date, subject to the requirements of the Plan, the Debtor will continue to exist as a separate corporation, and shall retain all of the powers of a corporation under applicable non-bankruptcy law, and without prejudice to any right to amend its articles of incorporation, dissolve, merge, or convert into another form of business entity, or to alter or terminate its existence. The Liquidation Trustee shall be deemed to have been admitted as the sole director of the Debtor under applicable non-bankruptcy law and shall be authorized to exercise all of the rights and powers of a sole director as provided by the Plan. Further, the Debtor's articles of incorporation shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

Neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtor, which shall continue as a corporation, under the control of the Liquidation Trustee following the Effective Date subject to the terms of the Plan.

- 24 -

10172450

Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of the Debtor and its Estate, including any Causes of Action (including, but not limited to, Tort Claims and D&O Claims), will vest in the Liquidation Trust free and clear of all Claims, Liens, charges, and other encumbrances. Notwithstanding the foregoing, the Plan Proponent reserves the right to modify the Plan to exclude certain Assets from transfer to the Liquidation Trust as necessary to preserve rights and claims of the Estate and maximize value for Creditors. The Confirmation Order shall constitute a determination that the transfers of the Liquidation Trust Assets to the Liquidation Trust are legal and valid and consistent with applicable law, including applicable state law.

All parties shall execute any documents or other instruments as necessary to cause title to the applicable Assets to be transferred to the Liquidation Trust. The Liquidation Trust Assets will be held in trust for the benefit of all Liquidation Trust Beneficiaries pursuant to the terms of the Plan and the Liquidation Trust Agreement.

**4.      Corporate Action**

On the Effective Date, the matters under the Plan involving or requiring corporate action of the Debtor, including but not limited to actions requiring a vote or other approval of the board of directors, managers, members, partners, or trustees of the Debtor or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the managers, members, directors, officers or trustees of the Debtor.

Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (i) any existing manager, director, officer and trustee of the Debtor will be deemed to have resigned on the Effective Date without any further corporate action; (ii) the Liquidation Trustee shall be deemed the sole manager, director, officer, trustee and representative of the Debtor to exercise the rights, power, and authority of the Debtor under applicable provisions of the Plan and bankruptcy and non-bankruptcy law; and (iii) all matters provided under the Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order shall act as an order modifying the Debtor's articles of incorporation such that the provisions of the Plan can be effectuated. The Plan shall be administered by the Liquidation Trustee, and all actions taken thereunder in the name of the Debtor shall be taken through the Liquidation Trustee. All corporate governance activities of the Debtor shall be exercised by the Liquidation Trustee, in his or her discretion, subject to the terms of the Plan.

On and after the Effective Date, the Liquidation Trustee may, in the name of the Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan, the Confirmation Order or the Liquidation Trust Agreement. Without limiting the foregoing, the Liquidation Trustee may pay all reasonable Trust Expenses in the ordinary course of business without further notice to Creditors or approval of the Bankruptcy Court.

From and after the Effective Date, (i) the Debtor, for all purposes, shall be deemed to have withdrawn its business operations from any state or local authority in which it was previously conducting or is registered or licensed to conduct its business operations, and the Debtor shall not be required to file any document, pay any sum or take any other action, in order to effectuate such

10172450

withdrawal, and (ii) the Debtor shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

**5.      Liquidation Trust**

Prior to the Effective Date, the Debtor shall execute the Liquidation Trust Agreement. The Liquidation Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidation Trust as a grantor trust.

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of maximizing the value of the Liquidation Trust Assets, which shall initially consist of the Distributable Assets, and effectuating Plan Distributions to Creditors consistent with the Plan. The Liquidation Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.

On the Effective Date, the Liquidation Trust Assets shall vest automatically in the Liquidation Trust. The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be made for the benefit and on behalf of the Liquidation Trust Beneficiaries. The assets comprising the Liquidation Trust Assets will be treated for tax purposes as being transferred by the Debtor to the Liquidation Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Liquidation Trust Beneficiaries to the Liquidation Trust in exchange for the Liquidation Trust Interests in the Liquidation Trust. The Liquidation Trust Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust. Upon the transfer of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtor's rights, title, and interest in the Liquidation Trust Assets, and the Debtor will have no further interest in or with respect to the Liquidation Trust Assets.

In pursuing any Causes of Action, the Liquidation Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtor's rights with respect to the periods in which any of the Causes of Action may be brought under section 546 of the Bankruptcy Code. The Liquidation Trust Agreement will require consistent valuation of the Liquidation Trust Assets by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all U.S. federal and other income tax and reporting purposes. The Liquidation Trust will not be permitted to receive or retain Cash in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the Liquidation Trust Assets.

In connection with the prosecution of the Causes of Action, any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity attaching to any prepetition and/or pre-Effective Date documents or communications relating to the Causes of Action shall be transferred to and shall vest in the Liquidation Trust. The Liquidation Trust's receipt of such privileges or immunities associated with the Causes of Action shall not operate as a waiver of those privileges or immunities possessed or retained by the Debtor, nor shall it operate to eliminate the rights of any co-defendant to any applicable joint privilege or immunity. The Liquidation Trust shall also be vested with the Debtor's rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004. The Liquidation Trust, however, shall not be considered a successor of the Debtor and shall not assume any obligations of the Debtor other than expressly provided for by the Plan and the Liquidation Trust Agreement.

10172450

Any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity held by the Committee shall be transferred to and shall vest in the Liquidation Trust. The Liquidation Trust shall have access to all discovery obtained by the Committee in this Chapter 11 Case, including discovery obtained pursuant to Bankruptcy Rule 2004.

Except as otherwise ordered by the Bankruptcy Court, the Trust Expenses on or after the Effective Date shall be paid in the ordinary course of business in accordance with the Liquidation Trust Agreement without further order of the Bankruptcy Court and without notice to any other party.

The Liquidation Trust shall file annual reports regarding the liquidation or other administration of property comprising the Liquidation Trust Assets, the distributions made by it and other matters required to be included in such report in accordance with the Liquidation Trust Agreement. In addition, the Liquidation Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

The Liquidation Trust Interests are not intended to constitute "securities." To the extent the Liquidation Trust Interests are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act or other applicable law. If the Liquidation Trustee determines, with the advice of counsel, that the Liquidation Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act, or other applicable law, then the Liquidation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and to file reports with the SEC to the extent required by applicable law.

The existence of the Liquidation Trust and the authority of the Liquidation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the date on which: (a) all material Liquidation Trust Assets are liquidated and/or monetized in accordance with the Plan; *provided*, *however,* for the avoidance of doubt, that the Liquidation Trustee shall not be required to pursue any Causes of Action or take any other action that the Liquidation Trustee determines, in his discretion, is not likely to yield sufficient additional proceeds to justify further pursuit or action; (b) the funds in the Liquidation Trust have been distributed in accordance with the Plan; and (c) the order closing the Chapter 11 Case is a Final Order.

To the extent that the terms of the Plan with respect to the Liquidation Trust are inconsistent with the terms set forth in the Liquidation Trust Agreement, then the terms of the Liquidation Trust Agreement shall govern.

**The Plan shall be interpreted so as to afford, for the benefit of all Holders of Allowed Claims, the greatest opportunity for maximum recovery by the Liquidation Trustee on the Liquidation Trust Assets and proceeds thereof, Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and proceeds thereof, and rights in and proceeds of any D&O Liability Insurance Policies. The proceeds of Causes of Action (including, but not limited to, D&O Claims and Tort Claims) are material to the implementation of the Plan and the recoveries to Creditors**.

- 27 -

### 6.      Liquidation Trustee

*Appointment of the Liquidation Trustee*. The Liquidation Trustee shall be selected by the Committee and appointed as of the date of the execution of the Liquidation Trust Agreement. The identity of the Liquidation Trustee shall be disclosed prior to the Confirmation Hearing as part of the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code. The Liquidation Trustee will be compensated by the Liquidation Trust, which compensation shall be disclosed in the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.

*Liquidation Trustee as the Representative of the Debtor's Estate*. On the Effective Date, the Liquidation Trustee shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidation Trust Agreement, including the right to (1) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Liquidation Trust Agreement and the Plan; (2) administer the Liquidation Trust Assets, including prosecuting, settling, abandoning, or compromising any Causes of Action; and (3) employ and compensate professionals and other agents consistent with Article V.F of the Plan.

For the avoidance of doubt, upon the occurrence of the Effective Date, the Liquidation Trustee shall automatically be granted, have, and be vested with exclusive standing and authority to: (i) bring and prosecute any Cause of Action (including, but not limited to, D&O Claims and Tort Claims) in a court of competent jurisdiction; and (ii) negotiate, settle, waive, or otherwise resolve any Causes of Action (including, but not limited to, D&O Claims and Tort Claims). For the further avoidance of doubt, upon the Effective Date, the Liquidation Trustee shall automatically be: (a) deemed a representative of the Debtor and the Estate with respect to all applicable Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and any related D&O Liability Insurance Policies; and (b) granted and have the right to control any and all privileges and protections on behalf of the Debtor, the Committee and the Estate with respect to all applicable Causes of Action (including, but not limited to, D&O Claims and Tort Claims). Nothing in the Plan shall require the Liquidation Trustee to prosecute or pursue any Causes of Action.

*Powers of the Liquidation Trustee*. The Liquidation Trustee shall be a representative of the Debtor's Estate and shall, subject to the terms of the Liquidation Trust Agreement, have the power to make all decisions with respect to the Liquidation Trust Assets, including prosecution, negotiation, waiver, and/or settlement of any Causes of Action (including, but not limited to, D&O Claims and Tort Claims).  Unless otherwise provided in the Plan, the Confirmation Order or the Liquidation Trust Agreement, the duties and powers of the Liquidation Trustee shall include the following (without need of further Court approval):

(i)      To implement the Plan, including any other powers necessary or incidental thereto;

(ii)      To exercise all power and authority that may be exercised, to commence, pursue, abandon, and/or settle all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtor or the Committee prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, manager or trustee of the Debtor with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, managers and trustees, including consummating the Plan and all transfers thereunder on behalf of the Debtor;

(iii)     To wind-up the affairs of the Debtor to the extent necessary as expeditiously as reasonably possible, including by filing final cost reports and taking such other actions as are necessary after the Effective Date to bring about an orderly wind-down of the Debtor's operations;

(iv)     To take all actions as may be necessary or appropriate to pursue and consummate a Reopening Transaction;

(v)     To maintain and use the Debtor's existing accounts and/or to close any such accounts and transfer all amounts therein to one or more accounts in, accordance with the Plan, or to invest some or all of the funds that would otherwise be deposited into such accounts in allowed investments under applicable non-bankruptcy law;

(vi)     To make distributions to Holders of Allowed Claims, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Debtor or the Liquidation Trust;

(vii)     To use, manage, sell, lease, license, abandon, convert to Cash, and/or otherwise dispose of the Liquidation Trust Assets for the purpose of making distributions, including distributions of Distributable Assets and Net Distributable Assets, and fully consummating the Plan;

(viii)     To take all steps necessary to terminate the corporate existence of the Debtor and to wind-up and close the Liquidation Trust;

(ix)     To prosecute objections to Claims, including Administrative Expense Claims, and compromise, settle, and/or litigate any such Claims (Disputed or otherwise);

(x)     To investigate and prosecute any and all Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and compromise, settle, waive, and/or litigate any Causes of Action (including, but not limited to, D&O Claims and Tort Claims);

(xi)     To prepare and file tax returns for the Debtor and the Liquidation Trust to the extent required by law;

(xii)     To employ and compensate any and all such professionals and agents as the Liquidation Trustee, in his or her sole discretion, deems reasonably necessary to perform his or her duties under the Plan, without further order of the Bankruptcy Court;

(xiii)     To satisfy and pay all Trust Expenses;

(xiv)     To obtain, renew, replace, or supplement insurance policies and to pay any associated obligations, including the payment of associated premiums, and to exercise any other power or authority necessary or incidental thereto;

(xv)     To participate in or File any post-Effective Date motion(s) to amend or modify the Plan or the Liquidation Trust Agreement, or any appeal(s) of the Confirmation Order;

(xvi)     To participate in or File any action to enforce or interpret the Plan;

(xvii)     To bind the Liquidation Trust; and

10172450

(xviii) To take all other actions not inconsistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable in connection with the administration or implementation of the Plan, including filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Case.

*Liquidation Trustee as Successor in Interest to the Debtor and Committee.* Upon the Effective Date, the Liquidation Trustee is the successor in interest to the Debtor and the Committee, and thus, as of and after the Effective Date, to the extent the Plan requires an action by the Debtor or the Committee, the action shall be taken by the Liquidation Trustee on behalf of the Debtor and the Committee, as applicable.

### 7. Liquidation Trust Beneficiaries

Each of the Liquidation Trust Beneficiaries shall be recorded and set forth in a schedule maintained by the Liquidation Trustee expressly for such purpose based upon its Allowed Claim.

The ownership of Liquidation Trust Interests shall not entitle any Liquidation Trust Beneficiary to any title in or to the Liquidation Trust Assets, any right to call for a partition or division of such Liquidation Trust Assets, or any right to require an accounting, except as may be specifically provided herein. Ownership of a Liquidation Trust Interest (a) shall be noted in the books and records of the Liquidation Trust and (b) shall not be evidenced by any certificate, note, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee.

As set forth in more detail in the Liquidation Trust Agreement, the Liquidation Trust Interests may not be transferred, sold, assigned, hypothecated, or pledged, except as they may be assigned or transferred by will, intestate succession, or operation of law.

### 8. Liquidation Trust Oversight Committee

The Liquidation Trust Oversight Committee shall be comprised of not less than three (3) members, who shall be designated by the Committee. The identity of the members of the Liquidation Trust Oversight Committee shall be disclosed as part of the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.

The Liquidation Trust Oversight Committee shall oversee the Liquidation Trust and consult with the Liquidation Trustee, as set forth herein and in the Liquidation Trust Agreement. The Liquidation Trustee shall report to the Liquidation Trust Oversight Committee from time to time regarding the performance of his or her duties. The members of the Liquidation Trust Oversight Committee shall be reimbursed for all reasonable expenses incurred in the performance of their duties under the Plan and the Liquidation Trust Agreement.

The duties and powers of the Liquidation Trust Oversight Committee shall terminate upon final resolution of the Liquidation Trust Assets and distribution of the proceeds thereof or as otherwise provided in the Liquidation Trust Agreement.

### 9. Reopening Transaction

Subject to Bankruptcy Court approval, the Committee, in its sole discretion, reserves the right, at any time prior to the Effective Date, to pursue and consummate a Reopening Transaction if it

10172450

determines in its sole discretion that consummation of such Reopening Transaction is in the best interests of the Estate and Creditors. A Reopening Transaction may be implemented pursuant to a Reopening Transaction Motion or an amended Plan. To implement a Reopening Transaction, the Committee shall inform the U.S. Trustee of its intent to file a Reopening Transaction Motion or amended Plan and shall file the Reopening Transaction Motion or amended Plan. Any Reopening Transaction Motion shall contain additional details regarding the nature of the proposed transaction, the identity of any counterparty or counterparties, and material economic provisions. Parties in interest shall have twenty-one (21) days to object to a Reopening Transaction Motion unless otherwise ordered by the Bankruptcy Court.  In the event of a timely objection, the Bankruptcy Court will hold a hearing regarding the Reopening Transaction Motion.

**10.    Source of Funding / Net Distributable Assets**

The source of all distributions and payments under the Plan will be the Distributable Assets and the proceeds thereof. Distributions to the Holders of Liquidation Trust Interests will be funded entirely from Liquidation Trust Assets consisting of Net Distributable Assets.

The Liquidation Trustee, in his or her discretion, shall have the authority to allocate and reallocate Liquidation Trust Assets (including Cash, and including with respect to any reserves provided for under the Plan) as necessary to effectuate the Plan without further notice to any party, or action, approval, or order of the Bankruptcy Court, to the extent such allocation or reallocation would not be inconsistent with the terms of the Plan; *provided, however*, that the Liquidation Trustee may, but is not required to, apply to the Bankruptcy Court on notice to the parties included on the Post-Effective Date Notice List prior to making any such allocation or reallocation.  In the event that the Liquidation Trustee determines that effectuation of the Plan or an equitable distribution to Holders of Allowed Claims requires allocation or reallocation of Liquidation Trust Assets in a manner that would otherwise be inconsistent with any term of the Plan (including for the purposes of distribution under the Plan), the Liquidation Trustee shall have the authority to make such allocation or reallocation with approval of the Bankruptcy Court upon application to the Bankruptcy Court on notice to parties included on the Post-Effective Date Notice List.

"*Distributable Assets*" means, except as otherwise noted herein, any and all real, personal, or other property of the Debtor of any nature as of the Effective Date and the Liquidation Trust from and after the Effective Date, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, but not limited to, (i) any Cash on Hand; (ii) any Excess Professional Fee Trust Amount; (iii) the D&O Liability Insurance Policies; (iv) the Retained Causes of Action (including, but not limited to, Tort Claims and D&O Claims); and (v) the proceeds of the foregoing.  Notwithstanding the foregoing, the term "Distributable Assets" does not include any Cash tendered by the Debtor and held in the Professional Fee Trust Account except for the Excess Professional Fee Trust Amount, if any. For the avoidance of doubt, the term "Distributable Assets" includes any proceeds or other consideration realized from any Reopening Transaction.

"*Net Distributable Assets*" means the Distributable Assets of the Liquidation Trust from and after the Effective Date once all such assets have been reduced to Cash, net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims, Allowed SAMC Secured Obligations, and Trust Expenses, and/or reserves established for any of the foregoing.

- 31 -

10172450

**11.    Distribution of Liquidation Trust Interests**

Upon the Effective Date, Liquidation Trust Interests shall be distributed to Holders of Allowed General Unsecured Claims.

Certain Liquidation Trust Interests shall be reserved for Holders of Disputed General Unsecured Claims and held by the Liquidation Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Disputed General Unsecured Claims.

**12.    Distribution of Net Distributable Assets**

Plan Distributions, if any, to be made to Liquidation Trust Beneficiaries shall be made solely from the Liquidation Trust Assets.

If the distribution to be received by the Holder of an Allowed General Unsecured Claim would be less than fifty dollars ($50.00) on any distribution date or in the aggregate, at the discretion of the Liquidation Trustee, no such payment will be made to such Holder.

**13.    Disputed Claims Reserve**

The Liquidation Trustee shall maintain a Disputed Claims Reserve pending Allowance or Disallowance of Disputed Claims, and shall withhold such Cash from distributions to Holders of Allowed General Unsecured Claims. The Liquidation Trustee, in the Liquidation Trustee's discretion, on and after the Effective Date, shall have authority to increase or decrease the Disputed Claims Reserve, as reasonably necessary and appropriate. Upon the Final Distribution Date, the Liquidation Trustee shall distribute any Cash remaining in the Disputed Claims Reserve to Holders of Allowed General Unsecured Claims in accordance with the allocations set forth in the Plan and the Liquidation Trust Agreement.

**14.    Objections to Claims**

From and after the Effective Date, the Liquidation Trustee shall have the exclusive authority, right, and standing (but shall not be obligated) to: (i) object to and contest the allowance of any and all Claims; (ii) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed, without further notice to any party, or action, approval, or order of the Bankruptcy Court; and (iii) litigate to final resolution objections to Claims. The failure of any party to object to any Claim in the Chapter 11 Case prior to the occurrence of the Effective Date shall be without prejudice to the right of the Liquidation Trustee to contest, object to, or otherwise defend against such Claim.

**No Plan Distribution shall be made to a Holder of a Claim Disputed or otherwise, unless and until such Claim is or becomes an Allowed Claim.**

All objections to Claims shall be Filed with the Bankruptcy Court, and served upon the Holders of such Claims, on or before the one hundred eightieth (180th) day after the Effective Date. The time period for filing objections to Claims shall automatically renew for successive periods of one hundred eighty (180) days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Bankruptcy Court upon motion of the Liquidation Trustee or a Holder of a Claim.

10172450

Until such time as an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Plan Distributions. The Holder of an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim will be entitled to a Plan Distribution only when and if such unliquidated or contingent Claim becomes an Allowed Claim.

**15.    Surcharge Under Section 506(c) of the Bankruptcy Code**

All rights of Holders of Secured Claims under the Plan are subject to the rights of the Debtor, the Committee and/or the Liquidation Trustee to surcharge the applicable Collateral pursuant to section 506(c) of the Bankruptcy Code, which rights are expressly preserved.

**16.    Disallowance of Untimely Claims**

Any Claim for which a Bar Date has been established that is not timely Filed or otherwise asserted as directed on or before the applicable Bar Date shall: (a) be forever Disallowed, barred, and expunged in its entirety; and (b) not be enforceable against the Debtor, the Estate, the Liquidation Trust, and/or the Liquidation Trustee, all without further notice to any party, or action, approval, or order of the Bankruptcy Court, irrespective of whether such Claim was Filed prior to, on, or following the Confirmation Date. Except as otherwise agreed by the Liquidation Trustee, any and all Holders of Claims for which a Bar Date has been established that is not timely Filed or otherwise asserted as directed on or before the applicable Bar Date shall not be treated as Creditors for purposes of voting and distribution pursuant to Bankruptcy Rule 3003(c)(2).

**17.    Claims Paid or Payable by Third Parties and Insured Claims**

a.    Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be Disallowed without a Claim objection having to be Filed and without further notice to any party, or action, approval, or order of the Bankruptcy Court, to the extent that the Holder of such Claim received payment in full on account of such Claim from a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee. To the extent a Holder of a Claim receives a Plan Distribution on account of such Claim and receives payment from a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee on account of such Claim, such Holder shall, within two weeks of such Holder's receipt thereof, repay the distribution to the Debtor or the Liquidation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim determined as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtor or the Liquidation Trustee, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each day after the two-week grace period specified above until the amount is repaid.

b.    Claims Payable by Third Parties

No Plan Distribution shall be made on account of an Allowed Claim that is payable by a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee, including pursuant to any insurance policy, until the Holder of such Allowed Claim has exhausted all remedies with respect to such third party or insurance policy. To the extent that one or more of the Debtor's insurers

- 33 -

or another third party agrees to satisfy in full or in part an Allowed Claim, then immediately upon such agreement, the applicable portion of such Claim may be Disallowed and expunged without a Claim objection having to be Filed and without further notice to any party, or action, approval or order of the Bankruptcy Court.  Unless and until the Holder of a Claim that is payable by a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee exhausts all remedies with respect to such third party of insurance policy, such Claim shall be deemed estimated at zero dollars ($0) for all purposes of the Plan and Liquidation Trust Agreement without further notice to any party, or action, approval or order of the Bankruptcy Court.

### c.  Special Issues Regarding Insured Claims

Under the terms of the Debtor's various insurance policies, the Debtor may owe a deductible amount or self-insured retention obligation on account of Insured Claims. After the Effective Date of the Plan (unless an applicable order modifying the automatic stay has been entered at an earlier date), Holders of Insured Claims shall be enjoined by the injunctions established by the Confirmation Order and the Plan from commencing or continuing any action to assert or collect any alleged Claims relating to any deductible or self-insured retention obligation against the Debtor, its Estate, and the Liquidation Trust.

The Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtor's insurers under their policies, and the Debtor's insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtor, the existence, primacy, and/or scope of available coverage under any alleged applicable policy.  The Plan shall not operate as a waiver of any other Claims that the Debtor's insurers have asserted or may assert in any Proof of Claim, or the rights and defenses of the Debtor, the Estate, or the Liquidation Trust to such Claims.

### 18.  Preservation of Causes of Action

Except as provided in Articles X and XI of the Plan, nothing contained in the Plan shall be deemed a waiver or relinquishment of any claims or Causes of Action of the Debtor or the Estate that are not settled with respect to Allowed Claims or specifically waived or relinquished by the Plan, which shall vest in the Liquidation Trust (collectively, along with the proceeds thereof, the "Retained Causes of Action"). The Retained Causes of Action preserved under the Plan include, without limitation, the following claims, rights, or other causes of action:

(i)     claims and Causes of Action (including, but not limited to, Tort Claims and D&O Claims), against the Excluded Parties and/or any other party not expressly released pursuant to the Plan;

(ii)    Avoidance Actions;

(iii)   relating to pending litigation, including, without limitation, the suits, administrative proceedings, executions, garnishments, and attachments listed in the Debtor's Schedules;

(iv)    against vendors, suppliers of goods or services (including attorneys, accountants, consultants, or other professional service providers), utilities, contract counterparties, and other parties for, including but not limited to: (A) services rendered; (B) over- and

- 34 -

under-payments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, setoff, or recoupment; (C) failure to fully perform or to condition performance on additional requirements under contracts with the Debtor; (D) wrongful or improper termination, suspension of services, or supply of goods, or failure to meet other contractual or regulatory obligation; (E) indemnification and/or warranty claims; or (F) turnover Causes of Action arising under §§ 542 or 543;

(v)     against health plans, payors, and other related providers;

(vi)    related to third-party non-Debtor's violations of antitrust, unfair competition, or similar laws;

(vii)   against landlords or lessors, including, without limitation, for erroneous charges, overpayments, returns of security deposits, indemnification, or for environmental claims;

(viii)  arising against current or former tenants or lessees, including, without limitation, for non-payment of rent, damages, and holdover proceedings;

(ix)    arising from damage to the Debtor's property;

(x)     relating to claims, rights, or other Causes of Action the Debtor may have to interplead third parties in actions commenced against the Debtor;

(xi)    for collection of a debt or other amount owed to the Debtor;

(xii)   against insurance carriers, reinsurance carriers, underwriters, surety bond issuers or other related or similar parties relating to coverage, indemnity, contribution, reimbursement, or other matters; and

(xiii)  arising under or relating to any Reopening Transaction, including, but not limited to, enforcement of any agreement memorializing such Reopening Transaction, and/or any breaches thereof by applicable non-Debtor parties.

**Except as otherwise expressly provided in the Plan, any and all claims and Causes of Action of the Debtor and the Estate are preserved under the Plan.**

**19.     Release of Liens, Claims and Security Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, security interests, mortgages, deeds of trust, or other interests in or against the property of the Estate will be fully released, terminated, extinguished, and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification, or other action by any Entity or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any Entity. Any Entity holding such Liens or interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Liquidation Trustee such instruments of termination, release, satisfaction, and/or assignment (in recordable form) as may be reasonably

- 35 -

requested by the Liquidation Trustee. Nothing contained in the Plan shall revive, preserve, or transfer any Claims or Liens that have been released pursuant to any prior order of the Bankruptcy Court.

### 20. Cancellation of Securities, Certificates and Instruments

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, on the Effective Date, all agreements, notes, instruments, debentures, certificates, Securities, and other documents evidencing any prepetition Claim against the Debtor and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, inoperative and of no force or effect.

### 21. Dissolution of Debtor; Final Decree

At any time following the Effective Date, the Liquidation Trustee, on behalf of the Debtor, shall be authorized to File a motion for the entry of a final decree closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code. Upon entry of such final decree, the Debtor shall be deemed dissolved without further order of the Bankruptcy Court or action by the Liquidation Trustee, including the filing of any documents with the secretary of state or any other government agency.

### 22. Treatment of Vacant Classes

Any Claim in a Class that is considered vacant under Article III.C of the Plan shall receive no Plan Distribution.

## E. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 1. Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, *except* for those Executory Contracts and Unexpired Leases that:

> 1. have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto;
>
> 2. have been assumed by order of the Bankruptcy Court;
>
> 3. are the subject of a motion to assume or motion to reject pending on the Effective Date;
>
> 4. are identified on a schedule of assumed contracts in the Plan Supplement; or
>
> 5. are explicitly assumed pursuant to the terms of the Plan.

Notwithstanding the foregoing, in the event that the Committee or the Liquidation Trustee determines in good faith that one or more Executory Contracts or Unexpired Leases of the Debtor are critical to preserving the viability of pursuing and consummating a Reopening Transaction post-Effective Date, the Committee or the Liquidation Trustee, as applicable, shall have the authority to designate such Executory Contracts or Unexpired Leases as "Reopening Optionality Agreements," in which case the Committee or the Liquidation Trustee, as applicable, shall have until sixty (60) days

- 36 -

after the Effective Date to determine whether to assume or reject such Reopening Optionality Agreements.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtor's assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

For the avoidance of doubt, the Debtor shall not assume any prepetition indemnity obligations to their directors, officers, and managers.

### 2. Claims On Account of the Rejection of Executory Contracts or Unexpired Leases

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the Effective Date or such other date set by Final Order. The Debtor, the Committee or the Liquidation Trust will provide notice of such rejection (which may be made in the same notice as the occurrence of the Effective Date) and specify the appropriate deadline for the filing of such Proof of Claim.

Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped, and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtor, the Estate, the Liquidation Trustee, or the Liquidation Trust, and the Debtor, the Estate, the Liquidation Trustee, the Liquidation Trust and all of their property will be forever discharged from any and all indebtedness and liability with respect to such Claim, unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan, without further notice to any party, or action, approval, or order of the Bankruptcy Court. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in Article XI.C of the Plan. Notwithstanding the foregoing, to the extent that any such Claim is or was subject to a previously established Bar Date in the Chapter 11 Case, such previously established Bar Date shall be deemed operative and will not be deemed extended by virtue of Article VI.B of the Plan. All claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

### 3. Preservation and Vesting of D&O Liability Insurance Policies

Notwithstanding anything to the contrary in the Plan, as of the Effective Date, all rights of the Debtor and its Estate in the D&O Liability Insurance Policies are fully and expressly preserved under the Plan. Confirmation and effectiveness of the Plan will not discharge, impair, or otherwise modify any rights of the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or any other beneficiary under the D&O Liability Insurance Policies. On the Effective Date, the D&O Liability Insurance Policies and the proceeds thereof (subject in all cases to the terms of the D&O Liability

- 37 -

Insurance Policies or the rights of any other beneficiaries therein) shall automatically vest in the Liquidation Trust and shall be a Liquidation Trust Asset. For the avoidance of doubt, the D&O Liability Insurance Policies are not Executory Contracts and are neither assumed nor rejected under the Plan.

The Confirmation Order shall constitute a determination that no default by the Debtor exists with respect to any of the D&O Liability Insurance Policies and that nothing in any prior order, any prior agreements, or the Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the D&O Liability Insurance Policies or any coverage thereunder with regard to any Causes of Action (including, but not limited to, the D&O Claims and Tort Claims), or claims, interests, or rights of the Debtor, the Estate, the Liquidation Trustee, or the Liquidation Trust. The Plan shall be liberally construed to protect the interests of all Creditors in all Causes of Action (including, but not limited to, D&O Claims and Tort Claims), and to limit any Claims against the Estate.

Nothing in the Plan shall diminish, impair, or otherwise affect (i) rights of the Debtor's current or former directors, officers, managers, trustees, or any other Person covered under the D&O Liability Insurance Policies, or (ii) payments from the proceeds or the enforceability of any D&O Liability Insurance Policies that may cover (a) claims by the Debtor, or (b) claims against the Debtor or covered Persons thereunder.

## F.      LIMITATION ON LIABILITY AND RELATED PROVISIONS

### 1.      General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification, and treatment of all Allowed Claims and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, unless specifically provided otherwise in the Plan or the Liquidation Trust Agreement, after the Effective Date the Liquidation Trustee may, in his or her sole and absolute discretion, (1) compromise and settle Claims against the Debtor, and (2) compromise and settle Causes of Action against other Entities.

### 2.      Limitation on Liability of Liquidating Trustee

The Liquidation Trustee, the Liquidation Trust Oversight Committee, and the individual members of the Liquidation Trust Oversight Committee will not be liable for any act they may do or omit to do as in such capacity under the Plan and the Liquidation Trust Agreement, as applicable, while acting in good faith and in the exercise of their reasonable business judgment; nor will any of them be liable in any event except for gross negligence, willful misconduct, or fraud as determined by a Final Order of a court of competent jurisdiction. The foregoing limitation on liability also will apply to any Person or Entity employed by any such party (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such party in the fulfillment of their respective duties hereunder or under the Liquidation Trust Agreement. Also, the Liquidation Trustee, the Liquidation Trust Oversight Committee (and its individual members), and any Person or Entity

10172450

employed by such parties (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such a party shall be entitled to indemnification out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being employed by such party, or for performing any functions incidental to such service.

## G.    EXCULPATION & INJUNCTION

### 1.    No Discharge

Nothing contained in the Plan shall be deemed to constitute a discharge of the Debtor under section 1141(d)(3) of the Bankruptcy Code.  However, no Holder of a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Plan other than Assets required to be distributed to that Holder pursuant to the Plan. As of the Confirmation Date, all Persons and Entities are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

### 2.    Exculpation

Except as otherwise specifically provided in the Plan, the Exculpated Parties will neither have nor incur any liability to any Entity or Person for any claims or Causes of Action arising between the Petition Date and the Effective Date for any act taken or omitted to be taken in connection with, or related to the Chapter 11 Case, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, pursuing, or effecting the Consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, pursuing confirmation of the Plan, or soliciting votes on the Plan and the Exculpated Parties shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; *provided, further*, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action, or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

"*Exculpated Parties*" means, collectively, each in its capacity as such: (a) the Debtor Exculpated Parties, (b) the Committee Exculpated Parties, and (c) the SAMC Exculpated Parties; *provided, however*, that the Exculpated Parties shall not include any of the Excluded Parties.

### 3.    Injunction

**Except as otherwise provided in the Plan, from and after the Effective Date, all Entities and Persons who have held, hold, or may hold Claims against the Debtor or its Estate, are permanently enjoined from taking any action in furtherance of such Claim and/or any other cause of action released and/or discharged under the Plan, including, without limitation, the following actions: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor, the Debtor's**

10172450

property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets with respect to any such Claim and/or other cause of action, or taking any act to recover such Claim outside of the claims allowance procedures discussed in the Plan, the Bankruptcy Code and Bankruptcy Rules; (ii) creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien, security interest or encumbrance of any kind against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets on account of any such Claim and/or other cause of action; (iii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or other cause of action; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due from or to the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets, or against the property or interests in property of the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or other cause of action; *provided, however*, that solely with respect to the Debtor, the Debtor's property, and the Debtor's Estate, the foregoing injunction shall remain in effect only until both (a) the Chapter 11 Case has been closed and (b) all assets of the Debtor's Estate and the Liquidation Trust Assets have been fully administered; *provided further, however*, that such injunction shall be revived and/or remain in effect, as applicable, to the extent that the Chapter 11 Case is reopened for any reason, until the Chapter 11 Case is closed and the other conditions for termination of the injunction set forth in this paragraph have been satisfied. By accepting Plan Distributions, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions in the Plan. Such injunctions shall extend for the benefit of the Liquidation Trustee, any successors of the Debtor, and to property and interests in property subject to this Plan. All injunctions or stays provided for in the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date. The injunction in this paragraph shall apply only to actions against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, and/or the Liquidation Trust Assets.

From and after the Effective Date, to the extent of the Exculpations and limitations of liability granted in this Plan, all Persons and Entities shall be permanently enjoined from commencing or continuing in any manner against the Exculpated Parties or parties whose liability is limited (collectively, the "Protected Parties"), and their respective assets and properties, as the case may be, any suit, action, or other proceeding on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest, or remedy with respect to which such Protected Parties are exculpated or with respect to which such Protected Parties' liability is otherwise limited.

## H.     BINDING NATURE OF PLAN

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR AND EACH AND EVERY SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED

10172450

A PROOF OF CLAIM IN THE CHAPTER 11 CASE, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

## I.     CONFIRMATION PROCEDURES

### 1.     Confirmation Hearing

**The Confirmation Hearing has been scheduled to commence on February 27, 2024 at 9:30 a.m. (Pacific Time).** The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Plan Proponent without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

### 2.     Filing Objections to the Plan

**The deadline for objecting to Confirmation of the Plan is February 13, 2024 at 5:00 p.m. (Pacific Time)**. Subject to order of the Bankruptcy Court, any objection to confirmation of the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the objecting party and the amount and nature of the Claim of such Entity; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan; and (v) be filed with the Bankruptcy Court and served by no later than the deadline to object to confirmation, as set by the Bankruptcy Court, service of which may be by way of the CM/ECF system, with courtesy copies by email.

> CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

## J.     STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Plan Proponent believes that: (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Plan Proponent has complied or will comply with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. Specifically, the Plan Proponent believes that the Plan satisfies or will satisfy the applicable confirmation requirements of section 1129 of the Bankruptcy Code set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code;

- The Plan Proponent has complied and will comply with the applicable provisions of the Bankruptcy Code;

- The Plan has been proposed in good faith and not by any means forbidden by law;

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and

incident to the case, has been or will be disclosed to the Bankruptcy Court, and any such payment: (a) made before the confirmation of the Plan is reasonable; or (b) is subject to the approval of the Bankruptcy Court as reasonable if it is to be fixed after confirmation of the Plan;

- The Plan Proponent will disclose the identity and affiliations of the person proposed to serve, after confirmation of the Plan, as the Liquidation Trustee or a member of the Liquidation Trust Oversight Committee. The appointment to such office by such person, will be consistent with the interests of creditors and with public policy;

- Either each Holder of an Impaired Claim against the Debtor will (A) have accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated on that date under chapter 7 of the Bankruptcy Code, or (B) if section 1111(b)(2) applies to such Claim, receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such Holder's interest in the estate's interest in the property that secures such claims;

- Each Class of Claims that is entitled to vote on the Plan will either have accepted the Plan or will not be Impaired under the Plan, or the Plan can be confirmed without the approval of such voting Class pursuant to section 1129(b) of the Bankruptcy Code;

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Expense Claims and Priority Claims will be paid in full in Cash on the Effective Date, or as soon thereafter as is reasonably practicable;

- At least one Class of Impaired Claims will accept the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class; and

- The Debtor has paid or will pay all fees payable under section 1930 of title 28, and the Plan provides for the payment of all such fees.

1. **Best Interests of Creditors Test and Plan Recovery Analysis**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the bankruptcy court find, as a condition to confirmation of a chapter 11 plan, that each holder of a claim or equity interest in each impaired class: (i) has accepted the plan; or (ii) among other things, will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such Person would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.

The Plan satisfies the best interest of creditors test. The Plan provides a greater recovery to the Holders of Allowed General Unsecured Claims than such Holders would receive under a liquidation under Chapter 7, primarily because the Plan avoids additional administrative expenses and commissions associated with the appointment of a Chapter 7 trustee, while increasing the efficiency of administering the Debtor's remaining assets for the benefit of creditors.

10172450

Generally under the Plan, general unsecured creditors will receive Pro Rata shares of the Liquidating Trust Interests, which effectively provide a ratable share of the Net Distributable Assets of the Debtor. The Net Distributable Assets are net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, SAMC Secured Obligations and Trust Expenses, and/or reserves established for any of the foregoing. The Debtor expects that Class 4 General Unsecured Creditors will likely receive a recovery in the approximate range of [----]%, which is based on various assumptions and more fully set forth in the Plan Recovery Analysis attached hereto as **Exhibit C**.

Such recoveries to Holders of General Unsecured Claims under the Plan are expected to be more than such creditors' recovery in a Chapter 7 liquidation. Among other things, if the Chapter 11 Case was converted to a Chapter 7 case, the Debtor's estate would incur the costs of payment of a statutorily allowed sliding-scale commission to the Chapter 7 trustee, as well as the additional costs of replacement counsel and other professionals retained by the trustee to get up to speed and assist with the liquidation.[10] Such amounts, together with other wind-down costs, would exceed the amount of Trust Expenses that will be incurred by the Liquidation Trustee and their professionals and agents in completing the liquidation of the remaining assets and otherwise winding up the affairs of the Debtor. Additionally, the Debtor's estate would likely suffer additional delays, as a Chapter 7 trustee and his/her counsel need time to develop a necessary learning curve in order to complete the administration of the estate. The Debtor's estate would continue to be obligated to pay all unpaid expenses incurred by the Debtor during the Chapter 11 Case (such as compensation for professionals) which will constitute Allowed Claims in any Chapter 7 case. In short, the primary consequence of liquidating the Debtor under Chapter 7 of the Bankruptcy Code, given the substantial similarity of the functions of the Liquidation Trustee and a chapter 7 trustee, would be to incur additional administrative expenses and other costs and reduce the amounts payable to holders of General Unsecured Claims.

To assist the Bankruptcy Court in making the findings required under section 1129(a)(7) of the Bankruptcy Code, the Debtor, with assistance from its professionals, prepared the Plan Recovery Analysis, a copy of which is attached hereto as **Exhibit C**. The Plan Recovery Analysis incorporates certain assumptions relating to the risks and costs associated with the projected recoveries under the Plan (assuming an Effective Date of [------, 2024]).

THE PLAN PROPONENT BELIEVES THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE PLAN RECOVERY ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE PLAN PROPONENT OR A CHAPTER 7 TRUSTEE. NEITHER THE PLAN RECOVERY ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE PLAN RECOVERY ANALYSIS.

---

[10]  The Chapter 7 trustee would likely engage his or her own advisors and professionals that would add more professional fees and expenses that would have to be paid prior to any distributions to holders of Allowed General Unsecured Claims.

10172450

### 2.      Feasibility

Under section 1129(a)(11) of the Bankruptcy Code, the Plan Proponent must show that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Plan). The Plan complies with this requirement because all of the Debtor's remaining assets will be liquidated or otherwise disposed of and/or monetized in connection with a Reopening Transaction, and the proceeds thereof will be distributed to creditors pursuant to the terms of the Plan and, provided the Plan is confirmed and consummated, the Estate will no longer exist to be subject to future reorganization or liquidation.

On the Effective Date, the Debtor is expected to will have sufficient funds to satisfy Claims pursuant to the treatment set forth in the Plan as well as to implement the Plan. Specifically, the Debtor is projected to have approximately $[---] million in cash in the aggregate as of the Effective Date (assuming an effective date of [_____, 2024]).

Accordingly, the Plan Proponent believes that the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code and will present additional supporting evidence prior to or at the Confirmation Hearing, if and to the extent necessary.

### 3.      Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default— (A) cures any such default that occurred before or after the commencement of the Chapter 11 Case, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (B) reinstates the maturity of such claim or interest as such maturity existed before such default; (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan and are not insiders. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. Section 1126(d) of the Bankruptcy Code, except as otherwise provided in section 1126(e) of the Bankruptcy Code, defines acceptance of a plan by a class of impaired equity interests as

acceptance by holders of at least two-thirds in amount of equity interests in that class actually voting to accept or to reject the plan.

Classes 1, 2 and 3 are not Impaired under the Plan, and, as a result, the Holders of such Claims are conclusively deemed and presumed to have accepted the Plan.

Claims in Class 4 are Impaired under the Plan. Only the Holders of Claims in Class 4 are entitled to vote on the Plan.

Pursuant to section 1129 of the Bankruptcy Code, the Holders of Claims in Class 4 must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to such Class, and without considering whether the Plan "discriminates unfairly" with respect to such Class, as both standards are described herein. As stated above, Class 4 will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims in each such Class (other than any Claims designated under section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan.

### 4.      Confirmation Without Acceptance by Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if less than all impaired classes entitled to vote on the plan have accepted it, *provided* that the plan has been accepted by at least one impaired class of claims. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired Class's rejection or deemed rejection of the Plan, the Plan will be confirmed, at the Plan Proponent's request, in a procedure commonly known as "cram down," so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Class of Claims that is impaired under, and has not accepted, the Plan.

### 5.      No Unfair Discrimination

The unfair discrimination test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

Under the Plan, creditors who are of equal priority, including general unsecured creditors, are placed in the same applicable Class, and the members thereof are provided the same treatment. Thus, the unfair discrimination test is satisfied in this case.

### 6.      Fair and Equitable Test

This test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class. As to the dissenting class, the test sets different standards depending on the type of claims or equity interests in such class:

The condition that a plan be "fair and equitable" to a non-accepting Class of Secured Claims includes the requirements that: (a) the Holders of such Secured Claims retain the liens securing such

- 45 -

Claims to the extent of the Allowed amount of the Claims, whether the property subject to the liens is retained by the Debtor or transferred to another entity under the Plan; and (b) each Holder of a Secured Claim in the Class receives deferred Cash payments totaling at least the Allowed amount of such Claim with a present value, as of the Effective Date of the Plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

The condition that a plan be "fair and equitable" with respect to a non-accepting Class of unsecured Claims includes the requirement that either: (a) the plan provides that each Holder of a Claim of such Class receive or retain on account of such Claim property of a value, as of the Effective Date of the plan, equal to the allowed amount of such Claim; or (b) the Holder of any Claim that is junior to the Claims of such Class will not receive or retain under the plan on account of such junior Claim any property.

To the extent that any class of Claims either reject the Plan or is deemed to have rejected the Plan, the Plan Proponent intends to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

Notwithstanding the rejection of any Class that votes to reject the Plan, the Plan Proponent does not believe that the Plan discriminates unfairly against any Impaired Class of Claims. The Plan Proponent believes that the Plan and the treatment of all Classes of Claims under the Plan satisfy the foregoing requirements for non-consensual confirmation of the Plan.

## K.     CONSUMMATION OF THE PLAN

The Plan will be consummated on the Effective Date. For a more detailed discussion of the conditions precedent to the consummation of the Plan and the impact of failure to meet such conditions, see Article IX of the Plan.

**ARTICLE V.**
**RISK FACTORS**

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THESE RISK FACTORS ARE MANY, THESE FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTOR'S ASSETS OR THE PLAN AND ITS IMPLEMENTATION.

## A.     CERTAIN BANKRUPTCY LAW CONSIDERATIONS

### 1.     Parties in Interest May Object to the Plan Proponent's Classification of Claims.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Plan Proponent believes that the classification of Claims under the Plan complies with the requirements set forth in the Bankruptcy Code because the Plan

- 46 -

10172450

Proponent created Classes of Claims, each encompassing Claims that are substantially similar to the other Claims in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 2.    The Conditions Precedent to the Effective Date of the Plan May Not Occur.

As more fully set forth in Article IX of the Plan, the Effective Date of the Plan is subject to numerous conditions precedent. If such conditions precedent are not waived or not met, the Effective Date will not take place.

### 3.    The Plan Proponent May Fail to Satisfy the Vote Requirement.

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Plan Proponent intends to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Plan Proponent may seek to accomplish an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

### 4.    The Plan Proponent May Not Be Able to Secure Confirmation of the Plan.

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, findings by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting Holders of Claims within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that the Disclosure Statement, the balloting procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes, or the Plan contains other terms disapproved of by the Bankruptcy Court.

The Plan Proponent, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan as necessary for confirmation. Any such modifications could result in less favorable treatment of any non-accepting Class than the treatment currently provided in the Plan. Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan. Section 1127 of the Bankruptcy Code permits the Plan Proponent to modify the Plan at any time before confirmation, but not if such modified Plan fails to meet the requirements for confirmation. The Plan Proponent may modify the Plan at any time after confirmation of the Plan

- 47 -

and before substantial consummation of the Plan if circumstances warrant such modification and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, but not if such modified Plan fails to meet the requirements for confirmation. The Plan Proponent will comply with the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code with respect to the modified Plan. Any Holder of a Claim that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

**5.    Non-Consensual Confirmation of the Plan May Be Necessary.**

In the event that any impaired class of claims does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class) and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Plan Proponent believes that the Plan satisfies these requirements and the Plan Proponent intends to request such non-consensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, in the event that one of the Voting Classes does not accept the Plan, there can be no assurance that the Bankruptcy Court will reach this conclusion.

**6.    The Plan Proponent May Object to the Amount or Classification of a Claim.**

Except as otherwise provided in the Plan, the Plan Proponent reserves the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is or may become subject to an objection, counterclaim, or other suit by the Debtor, the Committee, or any successor thereto, including the Liquidation Trustee. Any Holder of a Claim that is or may become subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

**7.    The Effective Date May Not Occur.**

Although the Plan Proponent believes that the Effective Date may occur shortly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur.

**8.    The Chapter 11 Case May Be Converted to a Case under Chapter 7 of the Bankruptcy Code**

If a bankruptcy court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the bankruptcy court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Plan Proponent believes that liquidation under chapter 7 would result in materially smaller distributions being made to creditors than those provided for in the Plan because of (a) the additional administrative expenses involved in the appointment of a chapter 7 trustee, and (b) the additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation.

10172450

9.     **Injunction, Exculpation and Limitation of Liability Provisions May Not Be Approved**

Articles X-XI of the Plan provide for certain injunctions, exculpations and limitations of liability. The injunctions, exculpations and limitations of liability provided in the Plan are subject to objection by parties in interest and may not be approved.

B.     **DISCLOSURE STATEMENT DISCLAIMER**

1.     **The Information Contained Herein is for Soliciting Votes Only.**

The information contained in this Disclosure Statement is for purposes of soliciting votes on the Plan and may not be relied upon for any other purposes.

2.     **No Legal or Tax Advice is Provided to You by This Disclosure Statement.**

**<u>This Disclosure Statement is not legal or tax advice to You</u>**. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice, and are not personal to any person or entity. Each Holder of a Claim should consult his or her own legal counsel and accountant with regard to any legal, tax, and other matters concerning his or her Claim. This Disclosure Statement may not be relied upon for any purpose other than as a disclosure of certain information to determine how to vote on the Plan or object to confirmation of the Plan.

3.     **No Admissions Are Made by This Disclosure Statement.**

The information and statements contained in this Disclosure Statement will not (a) constitute an admission of any fact or liability by any person or Entity (including, without limitation, the Debtor, the Committee, and the Liquidation Trustee), (b) have any adverse estoppel effect, or (c) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, Holders of Allowed Claims, or any other parties in interest.

4.     **No Reliance Should Be Placed on Any Failure to Identify Litigation Claims or Projected Objections.**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim is, or is not, identified in this Disclosure Statement. The Plan Proponent and/or Liquidation Trustee may seek to investigate, file, and prosecute litigation rights and claims against any third parties and may object to Claims after the Confirmation Date or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies such litigation claims or objections to Claims.

5.     **Nothing Herein Constitutes a Waiver of Any Right to Object to Claims or Recover Transfers and Assets.**

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any claims or rights of the Plan Proponent or the Liquidation Trustee (or any party in interest, as the case may be) to object to that Holder's Allowed Claim regardless of whether any Claims or Causes of Action of the Debtor or Estate are specifically or generally identified herein.

10172450

**6.      The Information Used Herein was Provided by the Debtor and was Relied Upon by the Plan Proponent's Advisors.**

Counsel to and other advisors retained by the Plan Proponent have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Plan Proponent have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

**7.      The Potential Exists for Inaccuracies and the Plan Proponent Has No Duty to Update.**

The statements contained in this Disclosure Statement are made by the Plan Proponent as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a material change in the information set forth herein since that date. The Plan Proponent has used its reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan. Nevertheless, the financial information contained in, or incorporated by reference into, this Disclosure Statement is provided in reliance on financial data derived from the Debtor's books and records, the Debtor's schedules of assets and liabilities, and other representations made by the Debtor in the course of its various filings in this Chapter 11 Case.  Because such information has not been audited (unless otherwise expressly provided herein), such information may be materially inaccurate, and should not be relied upon.  Further, although the Plan Proponent may subsequently update the information in this Disclosure Statement, the Plan Proponent has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

**8.      No Representations Made Outside the Disclosure Statement Are Authorized.**

No representations concerning or relating to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in or included with this Disclosure Statement should not be relied upon by you in arriving at your decision.

## ARTICLE VI.
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.      LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

If no chapter 11 plan can be confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code in which case, a trustee would be elected or appointed to liquidate the Debtor's assets. The Plan Proponent believes that liquidation under chapter 7 would result in (i) smaller distributions being made to creditors than those provided for in the Plan because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee, and (ii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation.

10172450

**B.     FILING OF AN ALTERNATIVE PLAN OF REORGANIZATION**

If the Plan is not confirmed, the Plan Proponent or any other party in interest could attempt to formulate a different plan. The Plan Proponent believes that the Plan will allow all parties in interest to realize the highest recoveries under the circumstances. Among other things, any alternative to confirmation of the Plan could result in extensive delays and increased administrative expenses, resulting in small distributions to creditors.

**ARTICLE VII.**
**SUMMARY OF CERTAIN U.S. FEDERAL INCOME**
**TAX CONSEQUENCES OF THE PLAN**

THE FOLLOWING IS INTENDED TO BE ONLY A BRIEF SUMMARY OF SELECTED FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF TAX ADVICE FROM, A TAX PROFESSIONAL. THE SELECTED FEDERAL TAX CONSEQUENCES THAT ARE DESCRIBED HEREIN AND OTHER FEDERAL, STATE AND LOCAL TAX CONSEQUENCES THAT ARE NOT ADDRESSED HEREIN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH TAX CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF AN ALLOWED CLAIM. ACCORDINGLY, EACH HOLDER OF AN ALLOWED CLAIM IS STRONGLY ADVISED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN. THE BELOW SUMMARY OF TAX CONSEQUENCES IS NOT INTENDED TO BE AND IS NOT TAX ADVICE.

THE PLAN PROPONENT DOES NOT INTEND TO REQUEST A TAX RULING FROM THE INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WITH RESPECT TO ANY OF THE TAX CONSEQUENCES OF THE PLAN. CONSEQUENTLY, THE INTERNAL REVENUE SERVICE OR ANOTHER TAXING AUTHORITY MAY DISAGREE WITH AND MAY CONTEST ONE OR MORE OF THE TAX CONSEQUENCES DESCRIBED HEREIN TO THE DEBTOR AND HOLDERS OF CLAIMS.

TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE, (B) ANY SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN, AND (C) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

**A.     FEDERAL INCOME TAX CONSEQUENCES TO CERTAIN CREDITORS AND THE LIQUIDATION TRUST**

The following discussion summarizes certain material U.S. federal income tax consequences to the Holders of Claims and the Liquidation Trust. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "IRC"), applicable Treasury Regulations, judicial

10172450

authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS").  here can be no assurance that the IRS will not take a contrary view, no ruling from the Service has been or will be sought nor will any counsel provide a legal opinion as to any of the expected tax consequences set forth below.

Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein.  Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to Holders of Claims, the Liquidation Trust, or the Debtor. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences described herein.

### 1.    In General

The following summary is for general information only. The tax treatment of a Holder of a Claim may vary depending upon such Holder's particular situation. This summary does not address all of the tax consequences that may be relevant to a Holder, including any alternative minimum tax consequences and does not address the tax consequences to a Holder that has made an agreement to resolve its claim in a manner not explicitly provided for in the Plan. This summary also does not address the U.S. federal income tax consequences to persons not entitled to vote on the Plan or Holders subject to special treatment under the U.S. federal income tax laws, such as brokers or dealers in securities or currencies, certain securities traders, tax-exempt entities, financial institutions, insurance companies, foreign persons, partnerships and other pass-through entities, and Holders that have acquired Claims in connection with the performance of services. The following summary assumes that the Claims are held by Holders as "capital assets" within the meaning of section 1221 of the IRC and that all Claims denominated as indebtedness are properly treated as debt for U.S. federal income tax purposes.

The tax treatment of Holders and the character, amount and timing of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan may vary, depending upon, among other things: (i) whether the Claim (or portion thereof) constitutes a Claim for principal or interest; (ii) the type of consideration received by the Holder in exchange for the Claim and whether the Holder receives distributions under the Plan in more than one taxable year; (iii) whether the Holder is a citizen or resident of the United States for tax purposes, is otherwise subject to U.S. federal income tax on a net basis, or falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above; (iv) the manner in which the Holder acquired the Claim; (v) the length of time that the Claim has been held; (vi) whether the Claim was acquired at a discount; (vii) whether the Holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years; (viii) whether the Holder has previously included in income accrued but unpaid interest with respect to the Claim; (ix) the method of tax accounting of the Holder; (x) whether the Claim is an installment obligation for U.S. federal income tax purposes; and (xi) whether the "market discount" rules are applicable to the Holder.  Therefore, each Holder should consult its tax advisor for information that may be relevant to its particular situation and circumstances, and the particular tax consequences to such Holder of the transactions contemplated by the Plan.

Holders of Allowed Claims as of the Effective Date that are beneficiaries of the Liquidation Trust should be treated as receiving from the Debtor their respective shares of the applicable assets of the Liquidation Trust in satisfaction of their Allowed Claims, and simultaneously transferring such

- 52 -

assets to the Liquidation Trust. Accordingly, a Holder of a Claim should in most, but not all, circumstances recognize gain or loss equal to the difference between the "amount realized" by such Holder in exchange for its Claim and such holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a Holder's Claim. The tax basis of a holder in a Claim will generally be equal to the Holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (*e.g.*, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the Holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year. Additionally, Holders should generally recognize their allocable share of income, gain, loss and deductions recognized by the Liquidation Trust on an annual basis.

A creditor who received Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim. A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the Holders of certain Claims, including General Unsecured Claims in Class 4, will likely receive only a partial distribution on account of their Allowed Claims. Whether the applicable holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the holder and its Claims. Creditors should consult their own tax advisors.

### 2.    Tax Treatment of the Liquidation Trust

The Liquidation Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. In general, a liquidating trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as a "grantor" trust (i.e., a disregarded entity). However, merely establishing a liquidating trust does not ensure that it will be treated as a grantor trust for U.S. federal income tax purposes. The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Liquidation Trust has been structured with the intention of complying with such general criteria. The Liquidation Trust Agreement will limit the investment powers of the Liquidation Trustee in accordance with Rev. Proc. 94-45 and will require the Liquidation Trust to distribute at least annually to the Liquidation Trust Beneficiaries (as such may have been determined at such time) its net income (net of any payment of or provision for Taxes), except for amounts retained as reasonably necessary to maintain the value of the Liquidation Trust Assets or to meet claims or contingent

- 53 -

liabilities. In accordance with Rev. Proc. 94-45, the Liquidation Trust Agreement will require all relevant parties to treat, for federal income tax purposes, the transfer of the Debtor's Assets to the Liquidation Trust as (i) a transfer of such assets to the Liquidation Trust Beneficiaries (to the extent of the value of their respective interests in the applicable Liquidation Trust Assets) followed by (ii) a transfer of such assets by such Liquidation Trust Beneficiaries (to the extent of the value of their respective interests in the applicable Liquidation Trust Assets), with the beneficiaries of the Liquidation Trust being treated as the grantors and owners of the Liquidating Trust. Beneficiaries of the Liquidation Trust will generally recognize gain (or loss) in its taxable year that includes the Effective Date.

All parties (including the Liquidation Trustee and Liquidation Trust Beneficiaries) are required to treat, for U.S. federal income tax purposes, the Liquidation Trust as a grantor trust of which the Liquidation Trust Beneficiaries are the owners and grantors. Consistent with the treatment of the Liquidation Trust as a grantor trust, each Holder must report on its U.S. federal income tax return its allocable share of the Liquidation Trust's income. Therefore, a Holder may incur a U.S. federal income tax liability with respect to its allocable share of the income of the Liquidation Trust whether or not the Liquidation Trust has made any distributions to such Holder. The character of items of income, gain, deduction, and credit to any Holder and the ability of such Holder to benefit from any deduction or losses will depend on the particular situation of such Holder.

In general, a distribution of underlying assets from the Liquidation Trust to a beneficiary thereof may not be taxable to such Holder because such Holders are already regarded for U.S. federal income tax purposes as owning such assets. Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of distributions from the Liquidation Trust.

The Liquidation Trust Beneficiaries will be treated as receiving an amount equal to the fair market value of their interests in the Liquidation Trust in exchange for their Claims. The Liquidation Trust Beneficiaries will be treated for U.S. federal income tax purposes as owning their shares of the Liquidation Trust Assets, including any Causes of Action, and will be required to include their allocable shares of each item of income, gain, deduction, loss and credit of the Liquidation Trust in determining their taxable income. The Liquidation Trust Agreement will require consistent valuation of the Liquidation Trust Assets by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all U.S. federal income tax and reporting purposes. The Liquidation Trustee will file with the IRS tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and send to each Liquidation Trust Beneficiary a statement setting forth the information necessary for such Liquidation Trust Beneficiary to determine its share of items of income, gain, loss, deduction, or credit of the Liquidation Trust for federal income tax purposes.

This discussion assumes that the Liquidation Trust will be so treated for federal income tax purposes. However, no ruling has been requested from the IRS and no opinion of counsel has been requested concerning the tax status of the Liquidation Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position. Were the IRS to successfully challenge such classification, the U.S. federal income tax consequences to the Liquidation Trust and the Liquidation Trust Beneficiaries could vary from those discussed herein.

### 3.      Non-United States Persons

A Holder of a Claim that is not a U.S. Person generally will not be subject to U.S. federal income tax with respect to property (including money) received in exchange for such Claim pursuant

10172450

to the Plan, unless (i) such Holder is engaged in a trade or business in the United States to which income, gain or loss from the exchange is "effectively connected" for United States federal income tax purposes, or (ii) if such Holder is an individual, such holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.

## B. INFORMATION REPORTING AND BACKUP WITHHOLDING

Distributions pursuant to the Plan will be subject to any applicable federal income tax reporting and withholding. The IRC imposes "backup withholding" on certain "reportable" payments to certain taxpayers, including payments of interest. Under the IRC's backup withholding rules, a Holder of a Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan, unless the Holder (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional federal income tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of income tax. A Holder of a Claim may be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

**THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

## ARTICLE VIII.
## RECOMMENDATION

In the opinion of the Plan Proponent, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a larger distribution to the Debtor's creditors than would otherwise result in a liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims than that which is proposed under the Plan. Accordingly, the Plan Proponent recommends that all creditors who are entitled to vote on the Plan vote to accept the Plan.

10172450

Dated:  November 17, 2023

By:     /s/ Paul S. Jasper
_____

Paul S. Jasper (CA Bar No. 200138)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105
Telephone:     415.344.7000
Facsimile:     415.344.7050
Email:          PJasper@perkinscoie.com

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:     973.643.7000
Facsimile:     973.643.6500
Email:          ASherman@sillscummis.com
                    BMankovetskiy@sillscummis.com

*Co-Counsel to the Official Committee of Unsecured Creditors*

/s/ Bruce D. Adams
_____
Bruce D. Adams
*Co-Chair of Committee*

/s/ Ali Rashidian
_____
Dr. Ali Rashidian
*Co-Chair of Committee*

**[Signature Page to Disclosure Statement]**

- 56 -

**<u>EXHIBIT A</u>**

**PLAN OF LIQUIDATION**

## **EXHIBIT B**

**ORGANIZATIONAL CHART OF THE COMPANY**

10172450

# EXHIBIT C

## PLAN RECOVERY ANALYSIS

## [TO BE FILED]

10172450