**32**

**WANGER JONES HELSLEY**
Riley C. Walter #91839
Ian J. Quinn #342754
265 East River Park Circle, Suite 310
Fresno, California 93720
Telephone:      (559) 490-0949
E-mail: rwalter@wjhattorneys.com
             iquinn@wjhattorneys.com

Attorneys for Debtor in Possession, MADERA COMMUNITY HOSPITAL

Paul S. Jasper (CA Bar No. 200138)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050
Email:       PJasper@perkinscoie.com

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: 973.643.7000
Facsimile: 973.643.6500
Email:       ASherman@sillscummis.com
             BMankovetskiy@sillscummis.com

Co-Counsel to the Official Committee of Unsecured Creditors

## IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| In re | CASE NO. 23-10457 |
| MADERA COMMUNITY HOSPITAL, | Chapter 11 |
|     Debtor in Possession. | DC No.: WJH-77 |
| Tax ID#:    23-7429117<br>Address:    1250 E. Almond Ave.<br>           Madera, CA 93637 | Date:    February 13, 2024<br>Time:    9:30 a.m.<br>Place:    2500 Tulare Street<br>           Fresno, CA 93721<br>           Courtroom 13<br>Judge:    Honorable René Lastreto II |

Joint Motion for Authority to Enter Into Transaction, etc.    1    R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

**JOINT MOTION OF THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(A) AND 363(B) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO ENTER INTO A MASTER TRANSITION AGREEMENT AND A MANAGEMENT SERVICES AGREEMENT WITH AMERICAN ADVANCED MANAGEMENT, INC.**

TO THE HONORABLE RENÉ LASTRETO II, UNITED STATES BANKRUPTCY JUDGE:

1.    Madera Community Hospital (the "Debtor" or the "Hospital") and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtor, the "Movants"), jointly move (the "Motion"), pursuant to sections 105(a), and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), for entry of an order, substantially in the form attached as **<u>Exhibit A</u>**, authorizing the Debtor to enter into a Master Transition Agreement (the "MTA" or "Transition Agreement"), substantially in the form attached as **<u>Exhibit B</u>**, and a Management Services Agreement (the "MSA" and, together with the MTA, the "Transaction Documents") with American Advanced Management Inc. ("AAM" or the "Manager"), substantially in the form attached as Exhibit A to the MTA, to allow the pursuit of a value-maximizing Hospital "reopening transaction" to enable the Hospital to continue serving its community and its mission.

2.    In support of this Motion, the Movants submit the Declaration of Karen Paolinelli in Support of Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing the Debtor to Enter Into a Master Transition Agreement and a Management Services Agreement with American Advanced Management, Inc. (the "Declaration") filed concurrently herewith and incorporated herein by reference, and respectfully state as follows:

**I.**

**<u>INTRODUCTION</u>**

3.    As discussed in greater detail below, before the commencement of this chapter 11 case on March 10, 2023 (the "Petition Date"), the Debtor began evaluating and identifying

Joint Motion for Authority to Enter Into Transaction, etc.     2     R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

potential relationships with other healthcare systems in an effort to keep the Hospital open and serving its community. Although the Debtor was unable to consummate such a transaction before the Petition Date, the Debtor's efforts have continued since the Petition Date, with oversight, input and assistance from the Committee.

4.  Such collective efforts have borne fruit and, after engaging in robust, arm's-length negotiations and discussions with numerous parties, the Movants jointly support the Debtor's entry into the Transaction Documents with AAM.

5.  By this Motion, the Movants seek Court approval to enter into a series of transactions that are intended to result in a potential reopening of the Hospital, while preserving the assets of the Debtor's estate for distribution to creditors. As explained below, pursuant to the Transaction Documents, AAM will be financially responsible for all costs associated with the operation of the Hospital upon the first date on which the Court has entered an order granting this Motion that has become final and non-appealable (the "Operation Assumption Date") and will immediately deposit $16 million to back-stop its obligation to pay all such expenses until the earlier of: (i) the date of the termination of the Transaction Documents; and (ii) the effective date of a confirmed chapter 11 plan.

6.  Ultimately, these transactions will form the backbone of an amended chapter 11 plan that will provide for the formation of a liquidation trust (the "Liquidation Trust"), and the transfer of ownership of the real property on which the Hospital is located (the "Real Property Asset") and the "Hospital Assets" to GSR Madera, L.P., a California limited partnership ("GSR" or "Buyer") in exchange for a cash contribution from AAM to the Liquidation Trust of the lesser of (a) $30 million, or (b) an amount sufficient to result in the payment of the Debtor's creditors in full. The Hospital Assets consist of all personal property used in the Hospital's operations that was generated after the Operation Assumption Date, but excluding the Estate Personal Assets (defined below). To the extent these transactions are terminated, the amended chapter 11 plan will provide for a pivot to an orderly liquidation of the Debtor's assets for the benefit of creditors.

7.  Entry into the Transaction Documents will provide the Debtor's estate significant financial benefits (including up to $30 million to fund creditor recoveries and Liquidation Trust

Joint Motion for Authority to Enter Into Transaction, etc.        3        R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

expenses, plus coverage of all expenses associated with the operation of the Hospital during the "Transition Period") between the Operation Assumption Date and the date on which the Real Property Asset and Hospital Assets (other than the Estate Personal Assets) are transferred from the Debtor to the Buyer, while mitigating financial risks, and allow AAM to assist the Hospital in its reopening and continued operations, until the parties can transition the operations and ownership of the Hospital Assets to the Buyer, by which AAM will continue the delivery of health care for the benefit of communities served by the Debtor.[1]

8.      In particular, pursuant to the Transaction Documents, upon the Operation Assumption Date, inter alia, AAM will immediately (a) become the manager of the Hospital; (b) assume all financial responsibility of the Hospital's operations and provide funding to the Hospital sufficient for the Hospital to pay all expenses associated with the Hospital's post-Operation Assumption Date operations ("OAD Expenses"); (c) make an initial deposit of $15 million (the "Initial Contribution") into an interest-bearing escrow account (the "Escrow Account") to: (i) "backstop" AAM's obligation to pay all OAD Expenses, and (ii) fund unsecured creditor recoveries; and (d) deposit $1 million (the "One Million Deposit") into the Escrow Account for the payment of all interest and related expenses associated with the allowed secured claim asserted by Saint Agnes Medical Center ("Saint Agnes") against the Debtor and to further "backstop" AAM's obligation to pay all OAD Expenses, subject to conditions described below and in the MTA.  In addition, upon the confirmation of a conforming chapter 11 plan, inter alia, AAM is responsible for paying up to an additional $15 million (in three $5 million dollar installments, each a "Supplemental Contribution") to fund recoveries for unsecured creditors.

9.      To further mitigate any risks associated with the pursuit of the Hospital's reopening, the Movants are in discussions with representatives of the County of Madera (the

---

[1] The Movants and AAM are in advanced negotiations regarding the terms of two asset purchase agreements (the "**APAs**"), that will effectuate the transfer of the Real Property Asset and the Hospital Assets to the Buyer, the exhibits to the APAs, and a related escrow agreement.  The current forms of the APAs (without their exhibits) are attached as Exhibits B and C to the proposed MTA, but Movants anticipate that the APAs will undergo further revisions prior to the hearing on this Motion.  The updated APAs, their exhibits, and the escrow agreement will be filed and served separately in advance of the hearing on the Motion.

Joint Motion for Authority to Enter Into Transaction, etc.      4      R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

"County") regarding financial support that the County may provide to further facilitate the Hospital reopening and the transactions contemplated herein.

10.     For these reasons and those discussed in detail below, the Movants submit that the Debtor's entry into the Transaction Documents, is in the best interests of the Debtor, its estate, its creditors and the Madera community and should be approved by this Court.

## II.

## JURISDICTION

11.     The United States Bankruptcy Court for the Eastern District of California (the "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §157(b).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

12.     The statutory bases for the relief requested are Bankruptcy Code sections 105(a) and 363(b).

## III.

## BACKGROUND

### A.  General Background

13.     On March 10, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this bankruptcy case.

14.     On April 5, 2023, the U.S. Trustee appointed the Committee, consisting of the following members: (i) SnapMed Tech., Inc. DBA SnapNurse; (ii) Citizens Business Bank; (iii) Lourdes Ortega; (iv) Arya Medical Group; and (v) Cardinal Health 110, LLC [Docket No. 195].

15.     On November 17, 2023, the Committee filed a chapter 11 plan [Docket No. 1123] (the "Plan") and a related disclosure statement [Docket No. 1125], which disclosure statement was amended on December 15, 2023 [Docket No. 1203].

16.     The Plan provides for, inter alia: (a) formation of the Liquidation Trust; (b) the disposition of substantially all the assets of the Debtor and its estate and the distribution of the net proceeds thereof to holders of allowed claims, consistent with the priority provisions of the

Joint Motion for Authority to Enter Into Transaction, etc.                    5              R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion
to Enter into Transaction [AAM]\CLEAN.Madera - Post-
Petition Agreement Motion.011924.ijq.docx

10263610

Bankruptcy Code; (c) the winding down of the Debtor and its affairs by a liquidation trustee; and (d) the creation of a mechanism for the liquidation trustee to pursue, litigate, waive, settle, and compromise a broad array of causes of action to maximize creditor recoveries. The Plan also contemplates the pursuit and consummation of a "reopening transaction" if such reopening transaction is in the best interests of the estate and creditors. See Plan, Art.V.I.

### B. The Pre-Petition Closure of the Hospital[2]

17.     The Debtor is a non-profit California corporation that owns a general acute care hospital in Madera, California (the "Hospital"). The Hospital is licensed (in suspense) for 106 beds. It is the only adult hospital in the county and served a population of about 160,000 people, some of whom are uninsured and many of whom are lower income. The closest hospitals with emergency rooms are 23.5 miles away in Fresno or 35 miles away in Merced, both of which are long distances in emergency situations.

18.     Since January 10, 2023, no medical services have been provided at the Hospital.[3] The Debtor previously provided the following services: clinics, diagnostic imaging, inpatient care, dialysis, emergency department, intensive care unit, telemedicine, gastroenterology, labor & delivery, telemetry, medical surgical inpatient services, medical guard unit and maternity.

19.     Although the Debtor is not currently treating patients, it has continuing operations relating to preserving its assets, seeking "suitors" and exploring resumption of operating its clinics.

20.     Beginning in 2021 and continuing to the Petition Date, the Debtor evaluated and identified potential relationships with other healthcare systems. In 2021, the Debtor identified a possible affiliation with Saint Agnes, and its parent, Trinity Health Care System. Protracted

---

[2] Statements in this section, including with respect to the Debtor's background, prepetition events and the Debtor's reasons for filing the chapter 11 case, are based upon the Debtor's characterization of the relevant facts and prior representations in this chapter 11 case. The Committee accepts these characterizations and representations for the purposes of this Motion but reserves, on its own behalf and on behalf of any liquidation trustee, the right to dispute them in the event that any subsequent investigation reveals different or conflicting facts. Nothing in this section shall bind the Committee or any liquidation trustee or be construed to constitute an admission of any fact or waiver of any right by the Committee or the liquidation trustee, including for the purposes of any causes of action preserved under the Plan, or be construed to have any adverse estoppel effect.

[3] The Debtor also had rural health clinics in Chowchilla, Madera and Mendota, which were closed on January 10, 2023.

Joint Motion for Authority to Enter Into Transaction, etc.      6      R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

1  negotiations ensued. Saint Agnes made significant loans to the Debtor. When the proposed

2  affiliation was presented to the Attorney General of the State of California, the Attorney General,

3  after many months of delay, sought to impose conditions that were unacceptable to Saint Agnes.

4  As a result, Saint Agnes terminated the affiliation agreement. This led the Debtor to file a chapter

5  11 petition, as it ran out of money and was unable to pay employees.

6            **C.  Post-Petition Efforts to Locate Suitor to Re-Open Hospital**

7         21.     Since the Petition Date, the Debtor, with the assistance, oversight and input of the

8  Committee, has continued its efforts to find a party interested in pursuing a transaction that will

9  allow for the reopening of the Hospital.

10         22.     The declaration of Karen Paolinelli discusses in detail the various parties who

11  expressed interest in pursuing the transaction.

12         23.     Initially the Debtor entered into a letter of intent with Adventist Health

13  ("Adventist"), subject to Court approval. Subsequently, the Debtor, Adventist and representatives

14  of the State of California engaged in discussions regarding short and long-term financing

15  considerations related to a potential Hospital reopening.  Ultimately, however, such discussions

16  did not materialize in an agreement and Adventist elected to exit discussions.

17         24.     While the Debtor was in discussions with Adventist, it also engaged in discussions

18  with AAM, which had expressed an interest in pursuing a Hospital-reopening transaction before

19  the Petition Date.  As discussions with AAM were on-going, in late 2023, Praise Healthcare, LLC

20  ("Praise") also expressed an interest in pursuing a Hospital reopening transaction.

21         25.     As negotiations with both parties continued, the Debtor and the Committee

22  encouraged both AAM and Praise to finalize their proposed transaction documents and provide

23  evidence of their financial ability to consummate the transactions.  After a short period of

24  engagement with the Debtor, Praise informed the parties that it was not proceeding further in the

25  process.  As a result, the Debtor and Committee engaged in extensive negotiations with AAM

26  and exchanged multiple drafts of operative agreements, which ultimately resulted in the

27  Transaction Documents that are the subject of this Motion.

28  ///

Joint Motion for Authority to Enter Into Transaction, etc.       7       R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

### D.  The MTA, the MSA and the Proposed Hospital Reopening[4]

26.     As noted above, the Plan contemplates the potential pursuit and consummation of a "reopening transaction" if it is determined to be in the best interests of the estate and creditors. See Plan, Art.VI.  By this Motion, the Movants seek authorization for the Debtor to pursue such a reopening transaction by entering into the Transaction Documents with AAM, a Delaware for profit corporation with experience in the reopening and revitalization of rural California hospitals. Below is a summary of certain material provisions of the MTA and the MSA:

| MATERIAL TERMS OF THE MTA AND THE MSA[5] | |
|---|---|
| **MTA** | |
| RECITALS<br><br>[MTA ¶ 1] | **(C) Purpose of MTA.** Manager is dedicated under the Transition Agreement to the reopening of Hospital under the terms set forth below.  It is Manager's intention to assist Hospital in its reopening and continued operations under the MSA, until the Parties can transition the operations and ownership of the Hospital Assets (defined below) to Manager, by which Manager will continue the delivery of health care for the benefit of communities served by the Debtor. The parties recognize and agree that it will take the combined financial resources of the Debtor and Manager to accomplish the reopening of the Hospital. Expected costs fall into three categories: (i) existing burn rate and re-opening investment; (ii) operational subsidy and continued capital investment once open; and (iii) creditor repayment through an approved chapter 11 bankruptcy plan. Because there will be a significant initial and ongoing investment in the reopening and operation of the Hospital by Manager, and Manager is unlikely to receive any net income or management fees during its management of the Hospital, Manager will be allowed to purchase the assets of the Hospital for the amount of its investment into the creditor repayment, and management and operation of the Hospital, as further described herein.<br><br>**(D) Management of the Hospital**. Under the MSA, Manager will act as the Debtor's agent for, among other things: (i) applying for a change of ownership (as noted below) with the California Department of Public Health ("**CDPH**"); (ii) applying for funding under the California Distressed Hospital Loan Program pursuant to California Health and Safety Code Sections 129380 et seq.; and (iii) applying for the necessary approvals with the California Attorney General's Nonprofit Health Facilities division. |

---

[4] The descriptions of the MTA and the MSA are intended as summaries only. To the extent of any discrepancy between these summaries and the MTA or MSA, the terms of the MTA or MSA govern.

[5] Capitalized terms utilized in these summaries that are not otherwise defined herein shall have the meanings ascribed to such terms in the MTA.

Joint Motion for Authority to Enter Into Transaction, etc.          8          R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| | MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|---|
| | **(E) Manager's Option to Acquire Hospital**. At its election, but no later than thirty-six (36) months after the Execution Date, Manager may elect (in its sole discretion) to submit an application ("**CHOW Application**") for change of ownership or transfer of membership interests to CDPH to effect a change in licensed operator of the Hospital from the Debtor to Manager. The date of CDPH's approval of the CHOW Application shall be the date on which ownership of the Hospital Assets shall be transferred from the Debtor to Manager. The "**Hospital Assets**" shall include the Hospital's operations and any personal property assets generated after the Operation Assumption Date but shall <u>not</u> include the Estate Personal Assets (as defined below).<br><br>**(G) Transition Period**. From the Operation Assumption Date of the Transition Agreement until the Closing Date (the **"Transition Period"**), the Parties desire for Manager to provide the Debtor with certain management and administrative services in support of the Hospital's operations as identified in the Transition Agreement. The Debtor and Manager believe that Manager's provision of the services identified in the Transition Agreement will enhance the Debtor's ability to provide high quality, efficient health care services to the community served by the Hospital during the Transition Period.<br><br>**(F) Post-Closing Date**. After the Closing Date, Manager will operate the Hospital pursuant to its own acute care health facility license issued by CDPH pursuant to the approved CHOW Application, and the Debtor will cease to operate the Hospital. |
| **MTA § 1 - Transition of Facilities** | **(a) - Assumption of Financial Responsibility**: Immediately upon occurrence of the Operation Assumption Date, AAM shall assume all financial responsibility for the Hospital's operations.<br><br>**(b) - Payment of Expenses**: AAM shall provide funding to the Hospital sufficient for the Hospital to pay all of its expenses associated with the Hospital's operations arising after the Operation Assumption Date (the "**OAD Expenses**") *provided* that AAM's obligation to fund the OAD Expenses shall not apply to expenses accruing after termination of the MSA. Commencing on the Operation Assumption Date and ending on the Effective Date of the Plan, on or before the tenth (10th) Business Day of each calendar month, AAM shall deliver to the Committee a written report detailing (a) all OAD Expenses that remain due and unpaid as of the first day of such calendar month that are not subject to a bona fide dispute ("**Undisputed OAD Expenses**") and (b) all OAD Expenses that remain due and unpaid as of the first day of such calendar month due to a bona fide dispute ("**Disputed OAD Expenses**").<br><br>**(c) - Retention of Revenue by AAM**: Any and all revenue (other than revenue that constitutes, or arises from, the Estate Personal Assets) that arise after the Operation Assumption Date and prior to termination of the MSA shall be the sole and exclusive property of AAM (the "**OAD Revenues**"). |

Joint Motion for Authority to Enter Into Transaction, etc.    9    R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| | MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|---|
| | **(d) - <u>Retention of Property by Debtor</u>**: All Quality Assurance Fees, FEMA funds, cash on hand as of the Operation Assumption Date, accounts receivable, causes of action, the Almond Farm, and all other assets identified in the Debtor's Schedule of Assets and Liabilities or accruing prior to the Operation Assumption Date (collectively, the "**Estate Personal Assets**") shall remain the property of the Debtor's estate, available to pay the claims of all of the Debtor's creditors and shall not be: (1) subject to the MSA; (2) transferred or otherwise hypothecated, encumbered (except as such encumbrance existed on the Petition Date) or otherwise affected by the MSA or the transaction contemplated herein; or (3) impaired, impacted or otherwise affected by AAM or any affiliate thereof. |
| | **(e) - <u>Distressed Hospital Loan Program Funds</u>**: Notwithstanding the foregoing, any amounts loaned to the Hospital by the California Health Facility Financing Authority (CHFFA) in connection with the $2 million bridge loan award and eligibility for another $50 million loan announced by the Department of Health Care Access and Information ("**HCAI**") on August 24, 2023, or pursuant to any other funds loaned, granted, or otherwise awarded by HCAI to the Hospital (or its then owner) pursuant to AB112 (all such proceeds constituting, collectively, the "**DHLP Funds**") shall be applied solely to fund operation of the Hospital so long as it continues to operate. |
| | **(f) - <u>Allowance of General Unsecured Claim to AAM</u>**: AAM shall be deemed to have an allowed general unsecured claim in an amount equal to the OAD Expenses that it funds out-of-pocket minus the OAD Revenues (the "**AAM GUC**"). Beginning on the date on which the Hospital receives DHLP Funds (the "**DHLP Funds Receipt Date**"), no further OAD Expenses shall be added to the calculation of the AAM GUC except to the extent that the total OAD Expenses incurred after the DHLP Funds Receipt Date exceeds the total amount of DHLP Funds received by the Hospital. The AAM GUC shall be subordinated in all respects to the claims of all general unsecured creditors of the Debtor ("**Estate GUC Claims**") and shall only be payable upon the payment in full (without interest) of all Estate GUC Claims (other than the AAM GUC), except as set forth below. |
| <u>MTA § 2 - Treatment of Claims.</u> | The net proceeds from the Estate Personal Assets and the Real Property Asset (as defined below) shall be used to pay allowed claims pursuant to the priorities set forth in the Bankruptcy Code pursuant to a Chapter 11 Plan. To the extent that the Hospital resumes operations and is sold or otherwise transitioned to a third party as an operating hospital either through a sale motion, a plan of reorganization, a management agreement, or in any other manner, the AAM GUC shall be treated as an allowed administrative claim payable solely from such proceeds of the sale of the Hospital (but shall not be payable from the proceeds of any Estate Personal Assets unless all Estate GUC Claims have been paid in full, without interest). |

Joint Motion for Authority to Enter Into Transaction, etc.

10

R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| | |
|---|---|
| **MATERIAL TERMS OF THE MTA AND THE MSA[5]** | |
| **MTA § 3 - Sale of Real Property Asset and Hospital Assets.** | **(a) - Liquidation Trust**: Unless it elects to terminate the MSA pursuant to Paragraph 6 of the MTA on or before the Commitment Deadline (defined below), AAM shall contribute up to $30 million in cash (the "**AAM Cash Contribution**") to fund a liquidation trust (the "**Liquidation Trust**") established pursuant to a Conforming Plan (as defined below) for the benefit of the Estate GUC Claims in exchange for the sale to GSR Madera, L.P., a California limited partnership ("**GSR**" or "**Buyer**") created to hold the assets to be purchased pursuant to such Conforming Plan, of (1) the real property on which the Hospital is located (the "**Real Property Asset**")(memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit B to the MTA) and (2) at the election of Manager, the transition of the Hospital Assets to Buyer (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit C to the MTA). |

**(b) - Funding of AAM Cash Contribution**: The AAM Cash Contribution shall be funded as follows:

  i.   Upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order, AAM shall immediately deposit into an interest-bearing escrow account (the "**Escrow Account**") an initial deposit toward the AAM Cash Contribution in the amount of $15 million (the "**Initial Contribution**"). The Escrow Account shall meet the criteria for a Conforming Escrow Account (defined below).

  ii.  Immediately after the occurrence of the Conforming Plan Effective Date, the Initial Contribution shall be released from the Escrow Account to be transferred to the liquidation trustee (the "**Liquidation Trustee**") appointed pursuant to the Conforming Plan and deposited into the Liquidation Trust.

  iii. The balance of the AAM Cash Contribution shall be paid by AAM to the Liquidation Trust in up to three (3) installments of $5 million each (each a "**Supplemental Contribution**") until such time as AAM has contributed into escrow or directly to the Liquidation Trust a total amount of cash (including the Initial Contribution but excluding any amounts paid by AAM toward OAD Expenses) equal to the lesser of (i) $30 million or (ii) an amount sufficient to pay in full all allowed Estate GUC Claims (other than the subordinated AAM GUC). The Supplemental Contributions shall be paid by AAM to the Liquidation Trust according to the following schedule:

Joint Motion for Authority to Enter Into Transaction, etc.          11          R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| MATERIAL TERMS OF THE MTA AND THE MSA[5] | |
|---|---|
| Supplemental Contribution Schedule | Deadline for Payment to Liquidation Trustee |
| 1st $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $15 million has been distributed to holders of allowed Estate GUC Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |
| 2nd $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $20 million has been distributed to holders of allowed Estate GUC Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |
| 3rd $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $25 million has been distributed to holders of allowed Estate GUC Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |

**(c) - <u>AAM Contribution Lien.</u>** AAM's obligation to pay the AAM Cash Contribution shall be secured by a lien (the "**AAM Contribution Lien**") in favor of the Liquidation Trust against all of the Hospital's assets (but shall be subordinated to any lien granted to HCAI in connection with the loan of DHLP Funds). Upon the Liquidation Trust's receipt of the full amount of the AAM Cash Contribution, the AAM Contribution Lien shall be deemed released and the Liquidation Trustee shall (at AAM's request) execute requisite documentation to evidence release of the AAM Contribution Lien.

**(e) – <u>Conforming Plan.</u>** Upon passage of the Commitment Deadline without the MSA being terminated, the Committee shall promptly file (or if already

Joint Motion for Authority to Enter Into Transaction, etc.     12     R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| | MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|---|

filed, pursue confirmation of) a Chapter 11 Plan (and related disclosure statement) that constitutes a Conforming Plan. To qualify as a "**Conforming Plan**," the Chapter 11 Plan must:

i. Provide for the sale to GSR of the Real Property Asset effective upon (a) the effective date of a Conforming Plan and (b) release of the Initial Contribution from the Escrow Account and deposit of such funds into the Liquidation Trust;

ii. As additional consideration for AAM's purchase of the Real Property Asset, obligate AAM to contribute the remainder of the AAM Cash Contribution to the Liquidation Trust in accordance with paragraph 3.b above;

iii. Grant AAM the option, at its sole discretion, to submit a CHOW Application to CDPH to effect a change in licensed operator of the Hospital from the Debtor to Manager within thirty-six (36) months after the Execution Date ("**CHOW Election**");

iv. Subject to AAM exercising the CHOW Election, provide for transfer of the Hospital Assets to GSR effective immediately upon (a) CDPH's approval of such timely submitted CHOW Application, and (b) GSR's payment to the Debtor of $1.00;[6]

v. Provide for the following treatment of executory contracts and unexpired leases:

aa. On or before the Plan Confirmation Date, Buyer may designate in a written notice to the Debtor and the Committee one or more executory contracts or unexpired leases to be assumed by the Debtor upon the effective date (the "**Conforming Plan Effective Date**") of the Conforming Plan (any such designated executory contract or unexpired Lease, a "**Designated Contract**");

bb. Each Designated Contract shall be assumed by the Debtor, and assigned to Buyer, on the Conforming Plan Effective Date subject to the Buyer's payment, prior to the Conforming Plan Effective Date, to the counterparty to such Designated Contract the amount(s), if any, required to cure all defaults under such Designated Contract(s), as required under the Bankruptcy Code or determined by the Bankruptcy Court pursuant to a Final Order (the "**Cure Costs**");

---

[6] For the avoidance of doubt, the $1.00 sale price is in addition to consideration provided by AAM to the Debtor under the MSA, payment of the Initial Contribution, and AAM's obligation to fund the remainder of the AAM Cash Contribution.

Joint Motion for Authority to Enter Into Transaction, etc.     13     R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| | MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|---|
| | cc.  Any Designated Contract with respect to which Buyer has not paid the respective Cure Costs directly to its counterparty shall be deemed rejected on the Conforming Plan Effective Date; |
| | dd.  Buyer's payment of Cure Costs shall not be credited towards, or otherwise reduce or alter in any way, AAM's obligation to pay to the Liquidating Trustee the AAM Cash Contribution; |
| | ee.  The Debtor shall have no obligation to assume or assign any executory contract or unexpired lease that is not a Designated Contract; and |
| | vi.  Grant AAM the following rights so long as the Transition Agreement and MSA have not been terminated: |
| | aa.  The selection of the initial Liquidation Trustee (and any replacement) shall be subject to AAM 's consent, not to be unreasonably withheld; |
| | bb.  AAM shall have the right to serve as one of three members of a committee (a "**Liquidation Trust Oversight Committee**") formed to oversee the Liquidation Trust and consult with the Liquidation Trustee in connection with the implementation of the Conforming Plan;[7] and |
| | cc.  Settlement of (a) any disputed claim asserted against the Debtor's bankruptcy estate where the amount in dispute exceeds $100,000 and/or (b) any claim held by the Liquidation Trust that seeks recovery of more than $500,000 shall require either (a) AAM's consent (not to be unreasonably withheld) or (b) an order of the Bankruptcy Court authorizing such settlement. |
| **MTA § 4 - Additional Payments.** | Upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order, AAM shall (i) assume the liability for the unused portion of the $2 million bridge loan and for any other amounts loaned to the Hospital by HCAI in connection with AB112; and (ii) immediately deposit $1 million (the "**One Million Deposit**") into the Escrow Account for the payment of all interest and related expenses associated with the allowed secured claim (the "**Saint Agnes Claim**") asserted by Saint Agnes Medical Center ("**Saint Agnes**") against the Debtor until (a) the MSA is terminated; (b) the Saint Agnes Claim has been paid in full; or (c) the Plan Confirmation Deadline (defined below). The consideration due from AAM pursuant to this paragraph 4 is in addition to the AAM Cash Contribution and shall not be credited against, nor in any way reduce, the AAM Contribution |

---

[7] For the avoidance of doubt, the Liquidation Trust Oversight Committee's powers may be limited to supervision and consultation, without any consent or direction rights.

Joint Motion for Authority to Enter Into Transaction, etc.      14      R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| | MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|---|
| | due in accordance with paragraph 3 above.  Upon payment in full of the Saint Agnes Claim, any unused balance of the One Million Deposit shall be applied in the following priority: *first*, to fund the Initial Contribution, *second*, to fund each Supplemental Contribution sequentially, and, *third*, after all of AAM's obligations to fund the Initial Contribution and the Supplemental Contributions have been satisfied in full, to be repaid to AAM. |
| **MTA § 5 – Exclusivity.** | The Bankruptcy Court's approval of the MSA shall mean that, solely until such time as the MSA is terminated, the Debtor and the Committee shall not solicit proposals or offers from other hospital management companies or parties interested in the acquisition of the Hospital or the Real Property Asset and shall agree to be bound by the terms of the MSA, and any order of the Bankruptcy Court approving the MSA.  In order to fulfill their fiduciary duties, the Debtor and the Committee may receive (but not solicit) proposals or offers for alternative transactions from other parties (the "**Alternative Buyers**") and negotiate, provide due diligence, discuss, and/or analyze such alternative transactions received without breaching this provision or terminating the MSA; provided however, that, so long as the MSA remains in effect, neither the Debtor nor the Committee (or any of their respective members, officers, directors, professionals, representatives or agents) shall directly or indirectly encourage, solicit or support any attempt by such Alternative Buyers to seek the termination of the MSA or the approval of an alternative transaction (an "**Alternative Transaction**") to that contemplated by the MTA or the MSA.  In the event that an Alternative Transaction is presented to the Bankruptcy Court, at AAM's request, the Debtor and the Committee shall join AAM in opposing the approval of such Alternative Transaction. |
| **MTA § 6 - Termination of the MSA.** | **(a) - AAM Right to Terminate on or before Commitment Deadline**.  AAM shall have the right to terminate the MSA and the Transition Agreement in its sole and absolute discretion on or before the earlier to occur of (a) five days after any notification in writing received by AAM or its counsel (including via e-mail or other electronic means) that HCAI is not willing to loan at least $50 million of DHLP Funds to the Hospital (including, but not limited to, its unwillingness to loan at least $50 million of DHLP Funds if AAM is the Hospital's operator) or (b) April 15, 2024 (the "**Commitment Deadline**").  If the Bankruptcy Court enters an order approving the MSA *after* February 15, 2024 (the "**MSA Approval Deadline**"), the Commitment Deadline shall be extended by an amount of days equal to the number of days that fall between the MSA Approval Deadline and the date on which such order is entered by the Bankruptcy Court (the "**MSA Approval Order Date**").<br><br>**(b) - AAM Right to Terminate if Plan Not Timely Confirmed**.  If the Bankruptcy Court does not confirm a Conforming Plan within ninety (90) days after the Commitment Deadline (the "**Plan Confirmation Deadline**"), AAM shall have the option during the seven (7) days immediately following the Plan Confirmation Deadline, exercisable in its sole and absolute discretion, to |

Joint Motion for Authority to Enter Into Transaction, etc.          15          R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|

terminate the MSA and the Transition Agreement by providing written notice of termination to counsel for the Debtor and the Committee. The Plan Confirmation Deadline may be extended by AAM or by order of the Bankruptcy Court.

**(c) - <u>Debtor Right to Terminate</u>**. Debtor shall have the right to terminate the MSA and the Transition Agreement, in its sole and absolute discretion, by written notice to AAM, if (a) the Commitment Deadline has passed and (b) at the time such written notice of termination is delivered to AAM, HCAI has not confirmed in writing its commitment to loan at least $50 million of DHLP Funds to the Hospital.

**(d) - <u>Termination for Cause</u>**. Either party may terminate the MSA and the Transition Agreement for Cause upon written notice to the other party specifying the basis for the termination. For purposes of the Transition Agreement, "**Cause**" shall mean any of the following:

    i.    A material breach of any of the terms of the Transition Agreement by the other party that is not cured within seven (7) days after written notice of the breach; or

    ii.    The other party's engaging in any illegal or fraudulent activity that materially affects the other party's ability to perform under the Transition Agreement.

**(f) - <u>Effect of Termination</u>**. Upon termination of the Transition Agreement for any reason, any portion of the Initial Contribution or the One Million Deposit remaining in the Escrow Account shall be applied in the following order: *first*, to (i) pay any OAD Expenses incurred on or before, and that remain unpaid as of, the date the Transition Agreement terminates (the "**Termination Date Expenses**") or (ii) deposit with the Liquidation Trustee an amount sufficient to pay all Termination Date Expenses, and, *second*, to refund to AAM any funds remaining in the Escrow Account after all OAD Expenses have been paid in full. This subparagraph shall survive termination of the Transition Agreement.

| **MTA § 7 – <u>Uses and Replenishment of Escrowed Funds.</u>** | **(a) – <u>Uses of Escrowed Funds</u>**.

    i.    Until the earlier of (a) the Conforming Plan Effective Date, or (b) the first date on which (i) the Transition Agreement has terminated and (ii) all OAD Expenses incurred by the Hospital during the Transition Period have been paid in full, the Initial Contribution shall be held in the Escrow Account as security for AAM's obligations to (a) pay OAD Expenses and (b) pay the first $15 million of the AAM Cash Contribution. |

Joint Motion for Authority to Enter Into Transaction, etc.          16          R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|

ii.      The One Million Deposit shall be held in the Escrow Account as security for AAM's obligations to (a) pay OAD Expenses, (b) pay all interest and related expenses associated with the Saint Agnes Claim, and (c) pay the first $15 million of the AAM Cash Contribution.

**(b) – <u>Conforming Escrow Agreement</u>**.  In order to constitute a "**Conforming Escrow Account**," the Escrow Account must be subject to an escrow agreement between AAM, the Debtor, the Committee, and the escrow agent that provides as follows:

i.      All funds held in the Conforming Escrow Account shall be held in trust for the benefit of the general unsecured creditors of Debtor's bankruptcy estate.

ii.      *Release from Escrow*.  Funds contained in the Escrow Account shall not be released from the Escrow Account to AAM, the Debtor, the Liquidation Trustee, or otherwise, except as follows:

aa.    On or before the tenth Business Day of each calendar month (as to each calendar month, its "**Expense Payment Deadline**"), funds held in the Escrow Account shall be released to the Debtor in an amount sufficient to pay all Undisputed OAD Expenses that were due and unpaid as of the first day of the prior calendar month (and as to which Manager has not provided to the Committee (or, if appointed pursuant to a Conforming Plan, the Liquidation Trustee) proof of payment prior to the Expense Payment Deadline) and shall be immediately applied by the Debtor solely to pay such Undisputed OAD Expenses;

bb.    On or before the Expense Payment Deadline of each calendar month, a portion of the One Million Deposit shall be released to the Debtor in an amount sufficient to pay all interest and related expenses associated with the Saint Agnes Claim that accrued during the prior calendar month, and shall be immediately applied by the Debtor solely to pay such interest and related expenses;

cc.    Upon the occurrence of the Conforming Plan Effective Date, all funds remaining in the Escrow Account (which shall be no less than $15 million) shall be released to the Liquidation Trustee to fund the initial portion of the AAM Cash Contribution; and

dd.    Upon (i) order of the Bankruptcy Court confirming that the Transition Agreement has been validly terminated, or (ii) written confirmation by AAM, on the one hand, and either

Joint Motion for Authority to Enter Into Transaction, etc.     17     R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| | MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|---|
| | the Committee or the Liquidation Trustee, on the other hand, that the Transition Agreement has been validly terminated, any funds remaining in the Escrow Account shall be applied in the following order: *first*, to (i) pay any OAD Expenses incurred on or before, and that remain unpaid as of, the date the Transition Agreement terminates (the "**Termination Date Expenses**") or (ii) deposit with the Liquidation Trustee an amount sufficient to pay all Termination Date Expenses, and, *second*, to refund to AAM any funds remaining in the Escrow Account after all OAD Expenses have been paid in full.<br><br>**(c) – <u>Replenishment of Escrow</u>**.<br><br>    i.    On or before the fifteenth Business Day of each calendar month, AAM shall deposit into the Escrow Account an amount sufficient such that the Initial Contribution held in the Escrow Account is no less than $15 million.<br><br>    ii.    On or before the Conforming Plan Effective Date, AAM shall deposit into the Escrow Account an amount sufficient such that, as of the occurrence of the Conforming Plan Effective Date, the Initial Contribution held in the Escrow Account is no less than $15 million. |
| **<u>MTA § 8 - Alternative Proposal.</u>** | In the event that AAM determines to terminate the Transition Agreement in accordance with paragraph 6 above, AAM shall submit to Debtor (or if a Plan has been confirmed, the Liquidation Trustee) a binding $3 million stalking horse bid for the Real Property Asset if requested to do so by the Committee (or if a Plan has been confirmed, the Liquidation Trustee). This paragraph shall survive termination of the Transition Agreement. |
| | **MSA** |
| **<u>ARTICLE 1: DUTIES OF MANAGER</u>** | **§ 1.1 - Management**. Subject to those duties which shall remain the responsibility of the Debtor as set forth in Article II, Manager shall provide day-to-day management and operations support for the Hospital and shall do so in a fiscally responsible manner seeking to provide high-quality services to the community. Manager shall provide its services in a manner that meets the day-to-day requirements of the business, and the operational and administrative needs of the Hospital. Manager shall have the exclusive authority to perform these functions, subject to the Debtor's ultimate authority and control over the professional, administrative and other operations of the Hospital as required under applicable conditions of participation (42 C.F.R. 482), California Health & Safety Code Section 1250 et seq., and regulations thereunder, and subject to the approvals, as necessary, of the Bankruptcy Court. |

Joint Motion for Authority to Enter Into Transaction, etc.    18    R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| | MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|---|

**§ 1.3 - AAM's Duties**. Manager shall assume and discharge all usual and customary responsibilities, duties and obligations in connection with operating and maintaining the Hospital as a public hospital in full compliance with all regulations and standards required of a general acute care hospital so licensed, including, without limitation, the following services:

a. Maintenance of the Hospital;

b. Supervision of all patient care as required by law, regulations and community standards for a general acute care hospital;

c. Coordination with the Hospital's medical staff;

d. Management and supervision of all personnel and staff;

e. Billing and collection services for services provided by the Hospital before and after the Operation Assumption Date (as defined in Section 6.1 herein);

f. Processing and payment of all accounts payable of the Hospital in accordance with the provisions of the MSA;

g. Payroll processing, including processing of payroll taxes;

h. Purchasing all supplies, consumable goods, and other items necessary for the operation of the Hospital, as provided herein;

i. Bookkeeping and accounting for the operation of the Hospital; provided, however, that the Debtor shall arrange for accounting review by a qualified firm independent of Manager to validate financial statements prepared by Manager on behalf of the Debtor during the term of the MSA;

j. The timely filing of all reports required by the government and/or any other person or entity, provided that such filing shall be provided to the Debtor for review and possible revision at least twenty (20) days prior to its filing;

k. Negotiate payment to creditors as part of the Chapter 11 bankruptcy proceedings, to the extent not inconsistent with the terms of any confirmed Chapter 11 Plan;

l. Fund the current operational expenses;

m. Assume management and responsibility for the accounts payable and accounts receivable including, but not limited to, collection of Estate Personal Assets (such as California Quality Assurance Fees (QAF) and FEMA funds) for the sole benefit of the Debtor's pre-petition creditors; provided, however, that distributions on account of prepetition claims shall be addressed as set forth in the Chapter 11 Plan; and

n. Resume necessary capital improvements to the Hospital's physical plant necessary for its reopening and continued operations.

**§ 1.5 - Financial Management**

a. The Debtor shall maintain at least one of the bank accounts that it has at the time of the Operation Assumption Date ("**Old Bank Accounts**").

b. From and after the Operation Assumption Date, Manager shall pay all expenses, invoices, accounts payable and other obligations of

Joint Motion for Authority to Enter Into Transaction, etc.          19          R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| MATERIAL TERMS OF THE MTA AND THE MSA[5] |
| --- |

the Debtor necessary for the reopening and operational management of Hospital. Manager shall pay all expenses, invoices, accounts payable and other obligations of the Debtor from additional funds of Manager as may be reasonably required to fund operations of the Hospital during the Transition Period.

c.  Manager shall undertake, manage, and administer: (i) the timely payment of all Hospital expenses and accounts payable incurred on or after the Operation Assumption Date; (ii) the timely billing of fees for all services, goods and other items provided at the Hospital on or after the Operation Assumption Date; and (iii) the collection of accounts receivable pertaining to services and items provided after the Operation Assumption Date. Manager shall take such actions on behalf of the Debtor and under the Debtor's provider numbers, including, without limitation, the Debtor's provider numbers issued by Medicare, Medi-Cal or their fiscal intermediaries or paying agents (the "**Programs**").

d.  After the Operation Assumption Date, Manager shall maintain all accounting books and records that relate to the Hospital.

e.  The Debtor hereby appoints Manager as its agent for purposes of billing and collecting the Debtor's accounts receivable and the Debtor hereby agrees to execute any and all documents necessary to memorialize such appointments. The Debtor further appoints Manager to be its true and lawful attorney-in-fact during the term of the MSA for purposes of (i) billing and collecting in the name of the Debtor, and (ii) receiving, taking possession of and endorsing in the name of the Debtor any notes, checks, money orders, insurance payments and other instruments received in payment of accounts receivable of the Debtor. The Debtor agrees to cooperate with Manager, and to execute such documents and take such other actions as may be reasonably necessary or desirable, in connection with the efficient day-to-day billing and collection of the fees and charges of the Debtor, including, without limitation, the addition of Manager and its designated agents as authorized signatories on the Old Bank Accounts, and granting Manager the right to make withdrawals from such Old Bank Accounts when and as required to pay expenses pertaining to operations on or after the Operation Assumption Date.

f.  In connection with its administration, management and payment of all the Hospital's expenses and accounts payable pertaining to the time on or after the Operation Assumption Date, Manager shall have full and complete authority to draw, by check or other means, all available amounts in the Old Bank Accounts to cover the payment of such fees and expenses.

g.  Manager has the responsibility to maintain and report on all Distressed Hospital Loan Program ("**DHLP**") financial records and compliance programs that are required by the Department of Health Care Access and Information ("**HCAI**") and the California

Joint Motion for Authority to Enter Into Transaction, etc.    20    R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|

Health Facilities Financing Authority ("**CHFFA**").

**§ 1.15 – Management & Shared Services Fees**

a. In exchange for services rendered under the MSA, the Manager will accrue a management fee (the "**Management Fee**") to cover the shared services provided by Manager to the Hospital, including, but not limited to, shared staff and resources for services such as Revenue Cycle, Finance, IT, Human Resources, Marketing & Communication, and other shared leadership positions. At the beginning of each 12-month period that Manager provides management services to the Hospital following the Operation Assumption Date, the Management Fee will be re-calculated as follows:

| Time Period | Management Fee Calculation |
|---|---|
| 0 to 12 months following the Operation Assumption Date | 8% of the Debtor's historical operating revenue averaged across calendar years 2021 and 2022. |
| 12 to 24 months following the Operation Assumption Date | 8% of the greater of (a) the Debtor's historical operating revenue averaged across calendar years 2021 and 2022 or (b) the Debtor's historical operating revenue averaged across the first 12 months following the Operation Assumption Date. |
| 24 to 36 months following the Operation Assumption Date | 8% of the greater of (a) the Debtor's historical operating revenue averaged across calendar years 2021 and 2022 or (b) the Debtor's historical operating revenue averaged across the second 12 months following the Operation Assumption Date. |
| Each subsequent 12-month period beginning 36 months after the Operation Assumption Date | 8% of the Debtor's historical operating revenue averaged across the prior 12 months. |

b. The Management Fee shall be paid solely from revenues of the Hospital arising on and after the Operation Assumption Date. Under no circumstances shall the Estate Personal Assets, the AAM Cash Contribution, or the Real Property Asset (or any proceeds from its sale) be applied to pay any portion of the Management Fee.

c. If the Manager terminates the MSA, Manager will forgive any Management Fee balance due as of the date of termination.

**ARTICLE 2: DUTIES OF OWNER**

**§ 2.1 - Debtor's Board of Directors; Role and Responsibilities.** Without limiting (a) the responsibility of the Debtor and its Board of Trustees concerning establishment of the mission and vision of the Hospital and determination of appropriate strategic goals, objectives and relationships for

Joint Motion for Authority to Enter Into Transaction, etc.     21     R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|

the Hospital, or (b) the duties of the Debtor's Board of Trustees as prescribed under applicable conditions of participation (42 C.F.R. 482) and by the California Health & Safety Code Sections 1250 and 129380, *et seq.*, the Board of Trustees of the Debtor, acting in its duly appointed role, shall appoint Manager as the Debtor's representative in connection with the operations of the Hospital, the DHLP Funds, and all matters relating thereto.

**§ 2.2 - Board Control.** Until such time as the Chapter 11 Plan is confirmed in the Bankruptcy Case, the Debtor shall **e**xercise ultimate control over the assets and operation of the Hospital, except that Manager (as provided in Section 1.1) shall act as the Debtor's agent for the management of the Hospital, and shall have the authority to supervise and manage its day-to-day operations in accordance with the policy directives, rules and regulations adopted by the Board and as otherwise expressly set forth herein. Notwithstanding the foregoing, the Debtor shall at all times during the term of the MSA have full and unrestricted access to the Hospital, including all of its facilities, Personnel, accounts, books and records, contracts and otherwise, as the owner and operator of the Hospital.

**§ 2.7 - Debtor Actions**. During the term of the MSA, Debtor shall not, without the consent of Manager:

    a.  Subject to the Bankruptcy Court's jurisdiction over sales and dispositions under 11 U.S.C. § 363, authorize or approve the transfer, sale or other disposition of any of the Hospital's real or personal property other than in the ordinary and usual course of business as heretofore conducted, except for such items as are no longer useful, or obsolete, worn out or incapable of any further use, and as will be replaced in accordance with the Debtor's usual practice with other items of substantially the same value and utility as the items transferred, sold, exchanged or otherwise disposed of;

    b.  Authorize or approve the creation, participation in or agreement to the creation of any liens, encumbrances or hypothecations of any of the Hospital's real or personal property, except any liens for current taxes not yet due and payable and liens created in the ordinary and usual course of its business as heretofore conducted;

    c.  Authorize or approve the execution of any lease, contract or agreement of any kind or character with respect to the Hospital or its licensed operations, or incur any liabilities in connection therewith, save for those to which it is presently committed or that arise in the ordinary course of business as heretofore conducted, provided however it is understood and agreed the Debtor may incur expenses relating to maintenance of insurance coverage for the Board of Trustees in the event the coverage referred to in Section 4.1 a. hereinafter is deemed inadequate in the sole discretion of the Board of Trustees, engaging legal representation and obtaining financial and accounting advice, the

Joint Motion for Authority to Enter Into Transaction, etc.    22    R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|

|  | payment of which shall be the responsibility of Manager as set forth in Section 1.5 b. of the MSA;<br><br>d.  Authorize or approve the termination of any permits concerning the Hospital or its licensed operations;<br><br>e.  Authorize or approve the waiver or release of any right or claim of the Debtor with respect to the Hospital or its licensed operations except in the ordinary course of business; or<br><br>f.  Take any action that in any way alters Manager's rights to access Hospital assets as set forth in the MSA. |
|---|---|
| **ARTICLE 3: OWNER'S EMPLOYEES** | **§ 3.1 - Management of Employees**.  During the Transition Period, Manager shall have management authority over the Debtor's employees.  The Debtor shall cooperate with Manager in connection with all decisions regarding employment status and roles during the Transition Period.<br><br>**§ 3.4 - Continued Liability of Debtor**. Any liability arising prior to the Operation Assumption Date that relates to, or resulting from: (a) Debtor's actual or prospective employment or engagement, retention and/or termination of any current or former employee of Debtor or any affiliate of Debtor (including liabilities for compensation or benefits or liabilities with respect to a claim of an unfair labor practice, Union activities or under any employment Law or regulation), or (b) Debtor's compliance or failure to comply with the notification requirements under the Worker Adjustment and Retraining Notification Act 29 U.S.C. Section 2100 *et seq.* or any similar state Law, including California Labor Code Section 1400 *et seq.* (collectively, the **"WARN Act"**) and any liability under the WARN Act related to Manager's not offering employment to or not hiring any of Debtor's employees, shall remain that of Debtor and Manager shall have no obligation with respect to any such liability. Debtor will provide its employees and former employees with continuous coverage during the Transition Period in accordance with the terms of its employee welfare benefit plans, and Debtor shall comply with the continuation coverage requirements of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, and any similar state laws. |
| **ARTICLE 4: INSURANCE AND INDEMNITY** | **§ 4.2 - Debtor's Indemnification**.  Except as and to the extent relating to Manager's or any of its affiliates' gross negligence or willful misconduct, bad faith or fraud, the Debtor shall indemnify and hold harmless Manager, its affiliates, and its and their respective officers, directors, partners, managers, shareholders, members, principals, attorneys, agents, employees and other representatives (collectively, the **"Manager Indemnified Parties"**) from and against any and all Losses (as defined below) that any such Manager Indemnified Party incurs as a result of, arising out of, relating to or in connection with: (i) any breach or nonfulfillment of any covenants or other agreements made by the Debtor in the MSA; (ii) the Debtor's non-compliance |

Joint Motion for Authority to Enter Into Transaction, etc.     23     R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|

with any Law; or (iii) any gross negligence, fraud, willful misconduct or criminal acts of the Debtor or its current and past officers, directors, members, employees, agents and/or independent contractors.

**§ 4.3 – Manager's Indemnification**.  Except as and to the extent relating to the Debtor's or any of its affiliates' gross negligence or willful misconduct, bad faith or fraud, including the gross negligence, willful misconduct, bad faith or fraud of the Debtor's employees or contractors, Manager shall indemnify and hold harmless the Debtor, its affiliates, and its and their respective officers, directors, partners, managers, shareholders, members, principals, attorneys, agents, employees and other representatives (collectively, the **"Debtor Indemnified Parties"**) from and against any and all Losses that any such Debtor Indemnified Party incurs as a result of, or arising from: (i) any breach or non-fulfillment of any of the covenants or other agreements made by Manager in the MSA; and (ii) any gross negligence, fraud, willful misconduct or criminal acts of Manager or its officers, directors, employees, agents and independent contractors.

**§ 4.4 - Adjustments to Indemnification Liability**. The amount of any Losses shall be reduced or reimbursed, as the case may be, by any amount received by any Manager Indemnified Parties or any Debtor Indemnified Parties, as applicable, with respect thereto under any insurance coverage provided by any third party or from any other party alleged to be responsible therefor, provided that such reduction or reimbursement shall be net of any (i) increase in premiums in any such insurance coverage or (ii) costs of collection. The Manager Indemnified Parties and the Debtor Indemnified Parties, as applicable, shall use commercially reasonable efforts to collect any amounts available under such insurance coverage and from such other party alleged to have responsibility.

**§ 4.5 - Reimbursement by Indemnified Parties**.  If a Manager Indemnified Party or Debtor Indemnified Party, as applicable, receives an amount under insurance coverage or from such other party with respect to Losses at any time subsequent to any indemnification provided by the Debtor pursuant to Section 4.2 or by Manager pursuant to Section 4.3, then such Manager Indemnified Party or Debtor Indemnified Party, as applicable, shall promptly reimburse Manager or the Debtor, as applicable, for any payment made or out-of-pocket expense incurred by such Person in connection with providing such indemnification up to such amount received (less any costs or expenses incurred in recovering such amounts) by the Manager Indemnified Party or Debtor Indemnified Party, as applicable. Notwithstanding the foregoing, nothing in this Section 4.5 shall be construed to relieve any insurance carrier of its obligations under any insurance coverage maintained by the Debtor, Manager or any affiliate of the Debtor or Manager, which in all cases shall be primary to the indemnification obligations hereunder.

Joint Motion for Authority to Enter Into Transaction, etc.    24    R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

| | |
|---|---|
| | **MATERIAL TERMS OF THE MTA AND THE MSA**[5] |
| **ARTICLE 5: RELATIONSHIP BETWEEN PARTIES** | **§ 5.1 - Independent Contractor**. Manager shall at all times be an independent contractor with respect to the Debtor in meeting Manager's responsibilities under the MSA. Nothing in the MSA is intended nor shall be construed to create a partnership, employer-employee or joint venture relationship between Manager and the Debtor or between Manager and any Debtor Practitioner. |
| | **§ 5.2 - Limitation on Control**. Manager shall neither have nor exercise any control or direction over the professional medical judgment of any professional provider contracted with the Debtor, or the methods by any professional provider contracted with the Debtor performs professional medical services; provided, however, that the Debtor and any professional provider contracted with the Debtor shall be subject to and shall at all times comply with the bylaws, guidelines, policies and rules of Manager. Neither Party shall have any right, power or authority to act for or enter into binding agreements on behalf of the other Party, except as specifically set forth in the MSA. |
| **ARTICLE VI: TERM AND DEFINITION** | **§ 6.1 - Term.** The MSA shall become effective on the first date on which all of the following have occurred: (a) the Bankruptcy Court has issued an order (an "**Approval Order**") authorizing the Debtor to enter into the MSA and the Transition Agreement, (b) the MSA has been executed by the Debtor and Manager, and (c) the Approval Order has become a final, non-appealable order (the **"Operation Assumption Date"**).  It is anticipated that Manager's management services will be for an initial period of one (1) year, and shall continue for a period of two (2) years, or such longer period as the parties may agree to, subject to the termination provisions of the MSA.  The MSA will otherwise terminate on the effective date of Manager electing to and closing the purchase of the Hospital Assets under any Asset Sale. |
| | **§ 6.2 - Termination by Manager**. Manager shall have the right to terminate the MSA in its sole and absolute discretion on or before the earlier to occur of (a) five days after any notification in writing received by Manager or its counsel (including via e-mail or other electronic means) that HCAI is unable to loan at least $50 million of DHLP Funds to the Hospital (including, but not limited to, its inability to loan at least $50 million of DHLP Funds if Manager is the Hospital's operator) or (b) April 15, 2024 (the "**Commitment Deadline**"). |
| | **§ 6.3 - Termination by Manager Without Cause**. If during the term of the MSA, Manager should terminate the MSA without cause, then Manager will forfeit all monies it has expended for operations, capital, creditor payments, or other expenditures.  Manager and the Debtor agree that in the event of such termination, there will be an accounting for all QAF and FEMA monies received.  In the event that all such QAF and FEMA monies have not been used to fulfill Chapter 11 obligations during the MSA, Manager will reimburse the Debtor for the shortfall, if any, of such funds invested. |

Joint Motion for Authority to Enter Into Transaction, etc.

10263610

25          R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

| MATERIAL TERMS OF THE MTA AND THE MSA[5] |
|---|

**§ 6.4 - Termination by Either Party for Cause**. Either party may terminate the MSA for cause upon written notice to the other party specifying the basis for the termination. For purposes of the MSA, "**Cause**" shall mean any of the following:

    a.  A material breach of any of the terms of the MSA by the other party that is not cured within 60 days after written notice of the breach; or

    b.  The other party's engaging in any illegal or fraudulent activity that materially affects the other party's ability to perform under the MSA; or

    c.  The Transition Agreement has been terminated in accordance with its terms by any party thereto.

**§ 6.5 - Rights Upon the Debtor's Breach**. If the Debtor breaches any material provision of the MSA, then Manager may, at its option, upon thirty (30) days written notice to the Debtor, unless the Debtor has cured said default before said thirty (30) days have elapsed, or immediately in the case of danger to patient care, (i) terminate the MSA, or (ii) maintain the MSA in full force and effect, and in either case seek damages or other relief appropriate thereto.

**§ 6.6 - Rights Upon Termination.** Upon any termination or expiration of the MSA, all rights and obligations of the Parties under the MSA shall cease except those rights and obligations that have accrued or expressly survive such termination or expiration.

A chart summarizing the certain key expected dates related to the Transaction Documents is provided below:

| Date | Description |
|---|---|
| February 13, 2024 | Hearing on Motion |
| February 15, 2024 | MSA Approval Deadline |
| February 27, 2024 | Operation Assumption Date |
| April 15, 2024 | Commitment Deadline |
| July 15, 2024 | Plan Confirmation Deadline |
| July 22, 2024 | AAM Deadline to Terminate Transaction Documents *if* Conforming Plan Not Confirmed by Plan Confirmation Deadline |

**IV.**

Joint Motion for Authority to Enter Into Transaction, etc.    26    R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

**RELIEF REQUESTED**

27.    By this Motion, the Movants request entry of an order, substantially in the form submitted herewith, pursuant to Bankruptcy Code sections 105(a) and 363(b), authorizing the Debtor to enter into the Transaction Documents with AAM.

**V.**

**BASIS FOR REQUESTED RELIEF**

28.    Bankruptcy Code section 105(a) authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy Code section 105(a) grants bankruptcy courts broad statutory authority to enforce the Bankruptcy Code's provisions either under the Bankruptcy Code's specific statutory language or equitable common law doctrines.[8]

29.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Courts uniformly hold that approval of a proposed use of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if there is a sound business justification for the transaction.[9]

30.    The business judgment rule shields a debtor's management from judicial second-guessing.[10]  Once a debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."[11]  Thus, if a debtor's actions satisfy the

---

[8] *See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process").

[9] *See In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (9th Cir. BAP 1996) ("[D]ebtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification."); *see also In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions"); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (a judge determining a section 363(b) application must find a good business reason to grant such application); *Off. Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (upholding debtor's decision so long as it was attributable to "any rational business purposes").

[10] *See In re Tower Air*, 416 F.3d 229, 238 (3d Cir. 2005).

[11] *Id.*

---

Joint Motion for Authority to Enter Into Transaction, etc.        27        R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.  In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."[12]

31.    Here, the Debtor has decided, in the exercise of its business judgment, after evaluating its options and liquidity position and consulting with its advisors, as well as the Committee's advisors, to enter into the MTA and the MSA with AAM.  *See* Declaration of Karen Paolinelli. The Movants respectfully submit that the Debtor's decision to enter into the MTA and the MSA is based upon its sound business judgment and should be approved.  As explained below, entry into the MTA and MSA will provide the estate significant financial benefits and mitigate down-side risks, while enabling the Hospital to pursue a reopening transaction to continue serving its community and its underserved population.  *See* Declaration of Karen Paolinelli.

For example, under the MTA:

- AAM is projected to contribute up to $30 million in cash to fund a liquidation trust in exchange for the sale, pursuant to the terms of a Confirming Plan, of (1) the Real Property Asset, and (2) at the election of AAM, the transition of the Hospital Assets to Buyer (MTA § 3(a));

- AAM will deposit $1 million into the Escrow Account for the payment of all interest and related expenses associated with the Saint Agnes Claim (MTA § 4);

- AAM will assume all financial responsibility for the Hospital's operations, immediately upon occurrence of the Operation Assumption Date (MTA § 1(a));

- All Estate Personal Assets (including all Quality Assurance Fees, FEMA funds, cash on hand as of the Operation Assumption Date, accounts receivable, causes of action, the almond farm, and all other assets identified in the Debtor's Schedule of Assets and Liabilities or accruing prior to the Operation Assumption Date) will

---

[12] *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

Joint Motion for Authority to Enter Into Transaction, etc.          28          R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

remain the property of the Debtor's estate, available to pay the claims of all of the Debtor's creditors (MTA § 1(d));

- Any amounts loaned to the Hospital in connection with the $2 million bridge loan and any other DHLP Funds (including the Hospital's eligibility for another $50 million loan) will be applied solely to fund Hospital operations (MTA § 1(e));

- AAM will assume the liability for the unused portion of the $2 million bridge loan and for any other amounts loaned to the Hospital by HCAI in connection with AB112 (MTA § 4);

- The AAM GUC will be subordinated in all respects to Estate GUC Claims and shall only be payable upon the payment in full (without interest) of all Estate GUC Claims, except as set forth in the MTA (MTA § 1(f)); and

- In the event that AAM terminates the MTA, AAM will submit a binding $3 million stalking horse bid for the Real Property Asset if requested to do so by the Committee (or if a Plan has been confirmed, the Liquidation Trustee) (MTA § 8).

Likewise, benefits to be provided to the estate under the MSA include the following:

- AAM will provide day-to-day management and operations support for the Hospital in a fiscally responsible manner, seeking to provide high-quality services to the community (MSA § 1.1);

- AAM will assume and discharge all usual and customary responsibilities, duties and obligations in connection with operating and maintaining the Hospital as a public hospital in full compliance with all regulations and standards required of a general acute care hospital so licensed, including, without limitation, the following services:

  - Maintenance of the Hospital;

  - Supervision of all patient care as required by law, regulations and community standards for a general acute care hospital;

  - Coordination with the Hospital's medical staff;

  - Management and supervision of all personnel and staff;

Joint Motion for Authority to Enter Into Transaction, etc.                    29          R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

- • Billing and collection services for services provided by the Hospital before and after the Operation Assumption Date;

- • Processing and payment of all accounts payable of the Hospital in accordance with the provisions of the MSA;

- • Payroll processing, including processing of payroll taxes;

- • Purchasing all supplies, consumable goods, and other items necessary for the operation of the Hospital, as provided herein;

- • Bookkeeping and accounting for the operation of the Hospital;

- • The timely filing of all reports required by the government and/or any other person or entity;

- • Negotiate payment to creditors as part of the Chapter 11 bankruptcy proceedings, to the extent not inconsistent with the terms of any confirmed Chapter 11 Plan;

- • Fund the current operational expenses;

- • Assume management and responsibility for the accounts payable and accounts receivable including, but not limited to, collection of Estate Personal Assets (such as California Quality Assurance Fees (QAF) and FEMA funds) for the sole benefit of Debtor's pre-petition creditors; provided, however, that distributions on account of prepetition claims shall be addressed as set forth in the Chapter 11 Plan; and

- • Resume necessary capital improvements to hospital's physical plant necessary for its reopening and continued operations (MSA § 1.3);

- • AAM will pay all expenses, invoices, accounts payable and other obligations of Debtor necessary for the reopening and operational management of Hospital. AAM shall pay all expenses, invoices, accounts payable and other obligations of Debtor from additional funds of AAM as may be reasonably required to fund operations of the Hospital during the Transition Period (MSA § 1.5);

Joint Motion for Authority to Enter Into Transaction, etc.

30

R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

- Any Management Fee to be paid to AAM will be paid solely from revenues of the Hospital arising on and after the Operation Assumption Date. Under no circumstances shall the Estate Personal Assets, the AAM Cash Contribution, or the Real Property Asset (or any proceeds from its sale) be applied to pay any portion of the Management Fee (MSA § 1.15); and

- If AAM terminates the MSA, AAM will forgive any Management Fee balance due as of the date of termination (MSA § 1.15).

32. Based on the significant benefits to be provided to the Debtor under the MTA and the MSA, the Debtor has concluded, after consulting with its advisors, and those of the Committee, and considering its options and liquidity position, that entry into such agreements is in the best interest of its estate, its creditors, and the Madera community. *See* Declaration of Karen Paolinelli.

33. Lastly, the Debtor's entry into the Transaction Documents would not constitute a *sub rosa* plan because the ultimate transaction and treatment of creditors will be set forth in an amended Plan, which will be subject to voting and the confirmation requirements of the Bankruptcy Code.

34. For all of the foregoing reasons, the Movants respectfully submit that entering into the Transaction Documents is a sound exercise of the Debtor's business judgment and is in the best interests of the Debtor's estate and its stakeholders.

## VI.

## WAIVER OF BANKRUPTCY RULE 6004(h)

35. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."[13] The Movants request that the proposed order be made effective immediately by providing that the fourteen day stay under Bankruptcy Rules 6004(h) is waived.

---

[13] Fed. R. Bankr. P. 6004(h).

Joint Motion for Authority to Enter Into Transaction, etc.    31    R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion to Enter into Transaction [AAM]\CLEAN.Madera - Post-Petition Agreement Motion.011924.ijq.docx

10263610

36.     Any delay in the Debtor's ability to enter into the agreement would be detrimental to the Debtor, its creditors, and estates. Accordingly, the Movants submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rules 6004(h), to the extent applicable.

**VII.**

**NOTICE**

37.     Notice of this Motion will be provided pursuant to the Order Limiting Scope of Notice (ECF-116).

WHEREFORE, the Movants respectfully request entry of the proposed order, substantially in the form attached hereto as **Exhibit A**, and for such additional relief as the Court deems appropriate.

Dated: January  19 , 2024                    WANGER JONES HELSLEY

By: _____
Riley C. Walter
Attorneys for Debtor and Debtor in Possession,
MADERA COMMUNITY HOSPITAL

Dated: January  19 , 2024                    PERKINS COIE LLP

By:   /s/ Paul S. Jasper
Paul S. Jasper
Co-Counsel of the Official Unsecured
Creditor's Committee

Joint Motion for Authority to Enter Into
Transaction, etc.                    32          R:\Client\10538-002\PLEADINGS\WJH-77 Joint Motion
to Enter into Transaction [AAM]\CLEAN.Madera - Post-
Petition Agreement Motion.011924.ijq.docx

10263610