**71**

Paul S. Jasper (CA Bar No. 200138)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050
Email:     PJasper@perkinscoie.com

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: 973.643.7000
Facsimile: 973.643.6500
Email:     ASherman@sillscummis.com
          BMankovetskiy@sillscummis.com

Co-Counsel to the Official Committee of
Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 23-10457 |
| MADERA COMMUNITY HOSPITAL, | Chapter: 11 |
| Debtor in Possession. | DC No.: PSJ-025 |
| Tax ID# 23-7429117<br>Address: 1250 E. Almond Avenue<br>Madera, CA 93637 | **FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>Judge: Hon. René Lastreto II |

10288062

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, AND DEFINED TERMS ........................................................................1

    A.    Rules of Interpretation and Computation of Time ................................1

    B.    Defined Terms ........................................................................2

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS ....................17

    A.    Administrative Expense Claims ........................................17

    B.    Priority Tax Claims ..............................................................18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS ..........18

    A.    Summary ..............................................................................18

    B.    Separate Classification of Certain Claims ..........................18

    C.    Elimination of Vacant Classes ............................................19

    D.    Voting; Presumptions; Solicitation in Good Faith................19

    E.    Cramdown ............................................................................19

    F.    Classification and Treatment of Claims................................19

    G.    Special Provision Governing Unimpaired Claims................22

    H.    Special Provision Governing Cash Paid to SAMC ..............22

    I.    Subordinated Claims ..........................................................22

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ........................22

    A.    Deemed and Presumed Acceptance of Plan........................22

    B.    Reserved................................................................................23

    C.    Voting Classes ....................................................................23

    D.    Controversy Concerning Impairment ..................................23

    E.    Acceptance by Impaired Classes of Claims........................23

    F.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code..................23

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ......................23

    A.    Overview................................................................................23

10288062

B.   The MTA & MSA.................................................................................24

C.   Pivot to a Liquidation Transaction...................................................29

D.   General Settlement of Claims...........................................................29

E.   Continued Existence of the Debtor and Vesting of Assets in Liquidation Trust.................................................................................................29

F.   Corporate Action...............................................................................30

G.   Liquidation Trust..............................................................................31

H.   Liquidation Trustee...........................................................................32

I.   Liquidation Trust Beneficiaries .......................................................35

J.   Liquidation Trust Oversight Committee...........................................35

K.   Source of Funding / Net Distributable Assets..................................36

L.   Distribution of Liquidation Trust Interests ......................................36

M.   Distribution of Net Distributable Assets..........................................36

N.   Disputed Claims Reserve .................................................................37

O.   Objections to Claims.........................................................................37

P.   Surcharge Under Section 506(c) of the Bankruptcy Code................38

Q.   Disallowance of Untimely Claims ...................................................38

R.   Claims Paid or Payable by Third Parties and Insured Claims ..........38

S.   Preservation of Causes of Action.....................................................39

T.   Release of Liens, Claims, and Security Interests..............................40

U.   Cancellation of Securities, Certificates and Instruments .................40

V.   Dissolution of Debtor; Final Decree ................................................41

W.   Treatment of Vacant Classes ...........................................................41

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.................................................................................................41

A.   Assumption and Rejection of Executory Contracts and Unexpired Leases .......41

10288062

B.  Claims on Account of the Rejection of Executory Contracts or Unexpired Leases .................................................................. 42

C.  Preservation and Vesting of D&O Liability Insurance Policies ........................ 43

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ................................. 43

A.  Dates of Distributions ............................................................... 43

B.  Distribution Agent ................................................................... 44

C.  Cash Distributions ................................................................... 44

D.  Rounding of Payments ............................................................... 44

E.  Distributions on Account of Claims Allowed After the Effective Date ............ 44

F.  General Distribution Procedures ..................................................... 44

G.  Address for Delivery of Distributions ............................................... 45

H.  Undeliverable Distributions, Unclaimed Property, and De Minimis Distribution ........................................................................... 45

I.  Distributions to be Applied First to Administrative and Priority Claims .......... 46

J.  Distribution Record Date ............................................................ 46

K.  Distribution Cap .................................................................... 46

L.  Withholding Taxes ................................................................... 46

M.  Setoffs and Recoupment .............................................................. 47

N.  Distributions Free and Clear ........................................................ 47

O.  Lost, Stolen, Mutilated, or Destroyed Securities ................................... 47

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ............................................................. 48

A.  Disputed Claims ..................................................................... 48

B.  Procedures Regarding Disputed Claims ................................................ 48

C.  Allowance of Claims ................................................................. 49

ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ....................... 50

A.  Conditions Precedent to the Effective Date .......................................... 50

10288062

B.    Waiver of Conditions ..................................................................................... 51

C.    Substantial Consummation ............................................................................ 51

D.    Effect of Non-Occurrence of Conditions to Consummation ......................... 51

ARTICLE X. LIMITATION ON LIABILITY AND RELATED PROVISIONS ................... 51

A.    General ........................................................................................................... 51

B.    Release of SAMC ........................................................................................... 52

C.    Limitation on Liability of Liquidation Trustee .............................................. 52

D.    Reserved ......................................................................................................... 53

ARTICLE XI. EXCULPATION AND INJUNCTION .......................................................... 53

A.    No Discharge .................................................................................................. 53

B.    Exculpation ..................................................................................................... 53

C.    Injunction ....................................................................................................... 53

ARTICLE XII. BINDING NATURE OF PLAN ................................................................... 54

ARTICLE XIII. RETENTION OF JURISDICTION .............................................................. 55

ARTICLE XIV. MISCELLANEOUS PROVISIONS ............................................................ 57

A.    Dissolution of the Committee ........................................................................ 57

B.    Payment of Statutory Fees ............................................................................. 57

C.    Modification of Plan ...................................................................................... 58

D.    Adjustment of Claims Register ...................................................................... 58

E.    Extension of Time .......................................................................................... 58

F.    Post-Effective Date Notice List ..................................................................... 58

G.    Revocation of Plan ......................................................................................... 59

H.    Entire Agreement ........................................................................................... 59

I.    Closing of Chapter 11 Case ........................................................................... 59

J.    Successors and Assigns .................................................................................. 59

K.    Reservation of Rights ..................................................................................... 59

10288062

L.    Further Assurances ................................................................................60

M.    Nonseverability ....................................................................................60

N.    Service of Documents ...........................................................................60

O.    Filing of Additional Documents ...........................................................61

P.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code ..................................................................................61

Q.    Incorporation of Other Documents .......................................................61

R.    Governing Law .....................................................................................61

S.    Tax Reporting and Compliance .............................................................62

T.    Controlling Document ..........................................................................62

U.    Confirmation Request ...........................................................................62

**EXHIBITS**

Exhibit A      Excluded Parties
Exhibit B      Liquidation Trust Agreement

10288062

---

## FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY
## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

---

The Official Committee of Unsecured Creditors (the "Committee" or the "Plan Proponent") proposes the following First Amended Chapter 11 Plan of Liquidation (the "Plan") for Madera Community Hospital (the "Debtor") for, among other things, the resolution of the outstanding Claims against the Debtor.

Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in **Article I** of the Plan. The Plan Proponent is a proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (as such term is defined herein) for a discussion of the Debtor's history, business, results of operations, historical financial information, accomplishments leading up to Solicitation of the Plan, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents that will be Filed with the Bankruptcy Court that are referenced in this Plan, the Plan Supplement, or the Disclosure Statement as Exhibits. All such Exhibits are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and the terms of this Plan, the Plan Proponent reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its Consummation.

The Plan Proponent intends to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims that is Impaired as set forth in **Article III** hereof.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME, AND DEFINED TERMS

### A.  Rules of Interpretation and Computation of Time

For purposes hereof: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented through and including the Confirmation Date, which, after they are filed, may be amended, modified, or supplemented only with the express written consent of the Plan Proponent; (d) unless otherwise specified, all references herein to "Articles," "Sections," and "Exhibits" are references to Articles, Sections, and Exhibits hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the

10288062

Bankruptcy Code or the Bankruptcy Rules, as the case may be; (j) "$" or "dollars" means Dollars in lawful currency of the United States of America; and (k) any immaterial effectuating provisions may be interpreted by the Plan Proponent in a manner that is consistent with the overall purpose and intent of the Plan without further order of the Bankruptcy Court.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**B.** **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1. "*AAM*" means American Advanced Management, Inc., a Delaware for profit corporation.

2. "*AAM Cash Contribution*" means the Cash to be contributed by AAM, in accordance with the terms of the MTA, in an amount of up to $30 million, which funds shall be used to fund the Liquidation Trust for the benefit of Holders of General Unsecured Claims, in exchange for the sale to Buyer of: (i) the Real Property Asset (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit B to the MTA), and (ii) at the election of AAM, the transition of the Hospital Assets to Buyer (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit C to the MTA).

3. "*AAM Contribution Lien*" means the Lien granted in favor of the Liquidation Trustee against all of the Hospital's assets that secures AAM's obligation to pay the AAM Cash Contribution. For the avoidance of doubt, the AAM Contribution Lien is and shall be subordinated to any Lien granted to HCAI in connection with any loan of DHLP Funds.

4. "*AAM GUC*" has the meaning ascribed to such term in Article V.B. of this Plan.

5. "*Accrued Professional Compensation*" means, with respect to a particular Professional, an Administrative Expense Claim of such Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred from the Petition Date through and including the Effective Date.

6. "*Administrative Expense Claim*" means any Claim against the Debtor or the Estate that has been timely Filed of a kind specified in section 503(b) and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual and necessary costs and expenses of administration of this Chapter 11 Case incurred after the Petition Date and through and including the Effective Date, including Professional Fee Claims, Section 503(b)(9) Claims, and Allowed Claims that are entitled to be treated as Administrative Expense Claims pursuant to a Final Order of the Bankruptcy Court, but excluding any Statutory Fees.

7. "*Administrative Expense Claim Bar Date*" means any deadline set by an order of the Bankruptcy Court by which Holders of Administrative Expense Claims, other than Professional Fee Claims, must assert Administrative Expense Claims or be forever barred.

- 2 -

10288062

8.    "*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

9.    "*Allowed*" means, as to any Claim (or portion thereof), the amount (a) that is allowed by a Final Order of the Bankruptcy Court (or such other court as provided by the Plan or as the Liquidation Trustee and the Holder of such Claim agree may adjudicate such Claim and objections thereto); (b) that is expressly allowed by this Plan and/or the Confirmation Order in a liquidated amount; (c) which is not the subject of a Proof of Claim timely Filed with the Bankruptcy Court and is Scheduled as liquidated and noncontingent (other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed), but only to the extent such Claim (i) is Scheduled as liquidated and noncontingent and (ii) is not the subject of a pending objection pursuant to section 502(d) of the Bankruptcy Code; or (d) for which a Proof of Claim in a liquidated amount has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code or deemed timely Filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which (i) no objection to its allowance has been Filed within the periods of limitation fixed by the Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court, or (iii) following the Effective Date, as otherwise may be determined by the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement (including by stipulation, without further notice to any party, or action, approval, or order of the Bankruptcy Court). Notwithstanding anything to the contrary herein, no Claim that is Disallowed in accordance with section 502(d) of the Bankruptcy Code is Allowed, and each such Claim shall be expunged without further action by the Debtor and/or the Liquidation Trustee, and without further notice to any party, or action, approval, or order of the Bankruptcy Court.

10.    "*Almond Farm*" means approximately 35 acres of farmland located on Avenue 12 in Madera, Madera County, California, assessor parcel number 047-014-008-000, and any proceeds of sale thereof.

11.    "*Assets*" means all of the right, title, and interest of the Debtor in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, intangible, legal or equitable, and liquidated or unliquidated).

12.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including actions or remedies arising under sections 502, 510, or 542-553 of the Bankruptcy Code, and the proceeds thereof, excluding those Avoidance Actions that have been released or sold pursuant to a Final Order of the Bankruptcy Court in this Chapter 11 Case.

13.    "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of this Plan.

14.    "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

15.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of California, Fresno Division.

- 3 -

10288062

16.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

17.    "*Bar Date*" means the applicable deadlines by which a Proof of Claim must be, or must have been, Filed in this Chapter 11 Case, as established by either an order of the Bankruptcy Court, the Notice of Chapter 11 Bankruptcy Case [Docket No. 49], or this Plan, including without limitation, (a) the July 17, 2023 deadline to File Proofs of Claim relating to prepetition Claims; (b) the September 6, 2023 deadline for Governmental Units to File Proofs of Claim relating to prepetition Claims; (c) the September 30, 2023 deadline to File Proofs of Claim for so-called "later discovered claims," which claims are identified in Docket No. 558; (d) any Administrative Expense Claim Bar Date; and (e) any deadline established to file a Claim arising from the rejection of any Executory Contract or Unexpired Lease.

18.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

19.    "*Buyer*" means GSR Madera, L.P., a California limited partnership.

20.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

21.    "*Cash on Hand*" means the Debtor's and Estate's Cash on hand as of the Effective Date, excluding any amounts in the Professional Fee Trust Account required for the payment of Professional Fee Claims that are contemplated to be paid from the Professional Fee Trust Account.

22.    "*Causes of Action*" means any action, claim, cause of action, cross-claim, third-party claim, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever belonging to the Debtor or its Estate, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertible directly or derivatively (including under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law, and the proceeds thereof.  For the avoidance of doubt, Cause of Action includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any claim pursuant to section 362 and any and all Avoidance Actions; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state, federal or foreign law; (f) all Tort Claims and D&O Claims; (g) any and all claims under any D&O Liability Insurance Policies; and (h) all Retained Causes of Action, including those enumerated in **Article V.S** of this Plan.  The definition of "Causes of Action" shall be construed in accordance with its broadest possible meaning, and any doubts or ambiguities shall be resolved in favor of inclusiveness.  **Except as otherwise expressly provided in this Plan or the Confirmation Order, any and all Causes of Action of the Debtor or the Estate (including, but not limited to, Tort Claims and D&O Claims), are expressly preserved under the Plan and retained by the Liquidation Trust.**

23.    "*CDPH*" means the California Department of Public Health.

24.     "*Chapter 11 Case*" means the Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court.

25.     "*CHOW Application*" means an application for change of ownership or transfer of membership interests submitted to CDPH to effect a change in licensed operator of the Hospital from the Debtor to AAM.

26.     "*CHOW Election*" means AAM's option, at its sole discretion, to submit a CHOW Application to CDPH to effect a change in licensed operator of the Hospital from the Debtor to AAM, which option must be exercised, if at all, within 36 months after the MTA Execution Date.

27.     "*Claim*" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

28.     "*Claims Register*" means the official register of Claims maintained by the Bankruptcy Court.

29.     "*Class*" means a category of Holders of Claims as set forth in **Article III** hereof pursuant to section 1122(a) of the Bankruptcy Code.

30.     "*Closing Date*" means the date on which the Real Property Asset and Hospital Assets (other than the Estate Personal Assets) are transferred from the Debtor to Buyer. For the avoidance of doubt, no Liquidation Trust Assets shall be, or shall be deemed, transferred from the Debtor to AAM or the Buyer.

31.     "*Collateral*" means any property or interest in property of the Debtor's Estate that is subject to a valid and enforceable Lien to secure a Claim.

32.     "*Commitment Deadline*" means the *earlier* to occur of: (i) five days after any notification in writing received by AAM or its counsel (including via email or other electronic means) that HCAI is not willing to loan at least $50 million of DHLP Funds to the Hospital (including, but not limited to, its unwillingness to loan at least $50 million of DHLP Funds if AAM is the Hospital's operator); or (ii) April 15, 2024; *provided*, *however*, that if the Bankruptcy Court enters an order approving the MSA after the MSA Approval Deadline, the Commitment Deadline shall be extended by an amount of days equal to the number of days that fall between the MSA Approval Deadline and the date on which such order is entered by the Bankruptcy Court.

33.     "*Committee*" means the Official Committee of Unsecured Creditors in the Chapter 11 Case appointed pursuant to section 1102 of the Bankruptcy Code.

34.     "*Committee Exculpated Parties*" means, collectively, (i) the Committee; (ii) the Committee's Professionals; and (iii) the Committee's current and former members, solely acting in their capacities as members of the Committee.

35.     "*Confirmation Date*" means the date on which the clerk or agent of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

36.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to sections 1128 and 1129 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

- 5 -

37.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

38.     "*Conforming Escrow Account*" means an escrow account subject to a Conforming Escrow Agreement.

39.     "*Conforming Escrow Agreement*" means an escrow agreement between AAM, the Debtor, the Committee and an escrow agent that provides as follows: (1) all funds held in the Conforming Escrow Account shall be held in trust for the benefit of Holders of Allowed General Unsecured Claims; and (2) funds contained in the Escrow Account shall not be released from the Escrow Account to AAM, the Debtor, the Liquidation Trustee, or otherwise, except as follows: (A) on or before the Expense Payment Deadline of each calendar month, funds held in the Escrow Account shall be released to the Debtor in an amount sufficient to pay all Undisputed OAD Expenses, that were due and unpaid as of the first day of the prior calendar month (and as to which AAM has not provided to the Committee (of, if appointed pursuant to the Plan, the Liquidation Trustee) proof of payment prior to the Expense Payment Deadline) and shall be immediately applied by the Debtor solely to pay such Undisputed OAD Expenses; (B) on or before the Expense Payment Deadline of each calendar month, a portion of the One Million Deposit shall be released to the Debtor in an amount sufficient to pay all interest and related expenses associated with any Allowed SAMC Secured Obligations that accrued during the prior calendar month, and shall be immediately applied by the Debtor solely to pay such interest and related expenses; (C) upon the Effective Date, all funds remaining in the Escrow Account (which shall be no less than $15 million) shall be released to the Liquidation Trustee to fund the initial portion of the AAM Cash Contribution; and (D) upon (i) order of the Bankruptcy Court confirming that the MTA has been validly terminated, or (ii) written confirmation by AAM, on the one hand, and either the Committee or the Liquidation Trustee, on the other hand, that the MTA has been validly terminated, any funds remaining in the Escrow Account shall be applied in the following order: *first*, to (i) pay any Termination Date Expenses or (ii) deposit with the Liquidation Trustee an amount sufficient to pay all Termination Date Expenses, and *second*, to refund to AAM any funds remaining in the Escrow Account after all OAD Expenses have been paid in full.

40.     "*Consummation*" or "*Consummated*" means the occurrence of the Effective Date.

41.     "*Creditor*" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

42.     "*Cure Costs*" means any amounts required to cure any default(s) under an Executory Contract or Unexpired Lease as required under the Bankruptcy Code or determined by the Bankruptcy Court pursuant to a Final Order.

43.     "*Debtor*" means Madera Community Hospital, in its capacity as debtor and debtor in possession in the Chapter 11 Case and, from and after the Effective Date, as liquidating debtor pursuant to the Plan.

44.     "*Debtor Exculpated Parties*" means, collectively, the Debtor's Professionals retained in the Chapter 11 Case. For the avoidance of doubt, no Excluded Parties are included within the scope of the Debtor Exculpated Parties.

10288062

45. "*Designated Contract*" means any Executory Contract or Unexpired Lease designated by the Buyer to be assumed by the Debtor and assigned to the Buyer as of the Effective Date. All Designated Contracts shall be identified in the Plan Supplement.

46. "*DHLP Funds*" means any amounts loaned to the Hospital by the California Health Facility Financing Authority in connection with the $2 million bridge loan award and eligibility for another $50 million loan announced by HCIA on August 24, 2023, or pursuant to any other funds loans, granted, or otherwise awarded by HCAI to the Hospital (or its then owner) pursuant to AB112. For the avoidance of doubt, any DHLP Funds shall be applied solely to fund operation of the Hospital so long as it continues to operate.

47. "*DHLP Funds Receipt Date*" means the first date on which the Hospital receives any DHLP Funds.

48. "*Disallowed*" means, as to any Claim (or portion thereof), a Claim against the Debtor that (i) has been disallowed by a Final Order, (ii) is not listed on the Schedules or, as to any Claim, is listed as unliquidated, contingent, or disputed and as to which no Proof of Claim has been Filed by the applicable Bar Date for such Claim or deemed timely Filed pursuant to any Final Order, or (iii) has been agreed to by the Holder of such Claim and the Debtor or the Liquidation Trustee to have no value or to be expunged.

49. "*Disclosure Statement*" means that certain *Second Amended Disclosure Statement for the Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors*, as amended, supplemented, or modified from time to time, including all Exhibits and schedules thereto and, in form and substance acceptable to the Plan Proponent [Docket No. ●], approved by the Bankruptcy Court on [●].

50. "*Disputed*" means, with respect to a Claim, (a) any Claim, which Claim is disputed under **Article VIII** of this Plan or as to which the Debtor before the Effective Date, or the Liquidation Trustee from and after the Effective Date, or any other party in interest has interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be Filed by any Bar Date or order of the Bankruptcy Court but as to which a Proof of Claim was not timely or properly Filed or deemed timely and/or properly Filed by Final Order; (c) any Claim that is listed in the Schedules as unliquidated, contingent or disputed, and as to which no request for payment or Proof of Claim has been timely Filed; or (d) any Claim that is otherwise disputed by the Debtor or the Committee before the Effective Date or the Liquidation Trustee from and after the Effective Date in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order, *provided, however*, that if the Debtor, the Committee or the Liquidation Trustee seek to dispute a Claim that is the subject of a Filed Proof of Claim, the Debtor, the Committee or the Liquidation Trustee shall do so in accordance with the Bankruptcy Code, Bankruptcy Rules, and the Local Rules. To the extent the Debtor, the Committee or the Liquidation Trustee dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtor and the Committee before the Effective Date or the Liquidation Trustee from and after the Effective Date do not dispute, if any, and Disputed as to the balance of such Claim.

51. "*Disputed Claims Reserve*" means a reserve, which may be held in a segregated account, for the payment of Disputed General Unsecured Claims that become Allowed General

10288062

Unsecured Claims after the Effective Date, which reserve shall be held in trust and maintained by the Liquidation Trustee for the benefit of Holders of Disputed General Unsecured Claims.

52. "*Disputed OAD Expenses*" means all OAD Expenses that remain due and unpaid as of the first day of a calendar month due to a bona fide dispute.

53. "*Distributable Assets*" means, except as otherwise noted herein, any and all real, personal, or other property of the Debtor of any nature as of the Effective Date and the Liquidation Trust from and after the Effective Date, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, but not limited to, (i) any Cash on Hand; (ii) any portion of the AAM Cash Contribution funded by AAM pursuant to the MTA; (iii) the Estate Personal Assets; (iv) any Excess Professional Fee Trust Amount; (v) the D&O Liability Insurance Policies; (vi) the Retained Causes of Action (including, but not limited to, Tort Claims and D&O Claims); and (vii) the proceeds of the foregoing. Notwithstanding the foregoing, the term "Distributable Assets" does not include any Cash tendered by the Debtor and held in the Professional Fee Trust Account except for the Excess Professional Fee Trust Amount, if any. For the avoidance of doubt, the term "Distributable Assets" includes any proceeds or other consideration realized from any Liquidation Transaction and/or the net proceeds from Estate Personal Assets and the Real Property Asset.

54. "*Distribution Agent*" means any party designated by the Liquidation Trustee to serve as distribution agent under this Plan. The Liquidation Trustee may be the Distribution Agent.

55. "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive Plan Distributions, as such date shall be fixed by order of the Bankruptcy Court.

56. "*D&O Claims*" means any and all rights, Causes of Action and claims arising under state, federal or other applicable law against the Debtor's current or former directors, trustees, managers, officers and similar parties, including, without limitation: (i) claims for breach of fiduciary duty, (ii) claims relating to damages, losses, or amounts owed or potentially owed for any alleged or actual violation of the federal WARN Act, 29 U.S.C. § 2101, *et seq.*, the California WARN Act, Cal. Lab. Code §§ 1401, *et seq.*, California Labor Code, Cal. Lab. Code § 227.3, the Labor Code Private Attorneys General Act, Cal. Lab. Code §§ 2698-2699 *et seq.*, or any similar laws, and/or (iii) claims related to damages, losses, or amounts owed or potentially owed arising from or relating to the termination, lapse or other loss of the benefit of any of the Debtor's Medicare, Medicaid or Medi-Cal provider agreement(s), Rural Health Clinic License(s), or other similar agreements, and the proceeds of any such rights, Causes of Action and claims, including from any D&O Liability Insurance Policies.

57. "*D&O Liability Insurance Policies*" means all insurance policies for directors', officers', managers', trustees' and/or similar parties' liability maintained by the Debtor as of the Petition Date and/or the Effective Date, including tail coverage after the termination of any such policies, and the proceeds thereof.

58. "*Effective Date*" means, with respect to the Plan, the date that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in **Article IX.A** have been satisfied or waived (in accordance with **Article IX.B**); and (c) the Plan is declared effective. Within two (2) Business Days of the

- 8 -

10288062

Effective Date, the Plan Proponent will file a notice of occurrence of the Effective Date on the Bankruptcy Court docket.

59.     "*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

60.     "*Escrow Account*" means the escrow account into which AAM shall immediately deposit the Initial Contribution upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order.

61.     "*Estate*" means the bankruptcy estate of the Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

62.     "*Estate Personal Assets*" means all quality assurance fees, Federal Emergency Management Agency (FEMA) funds, Cash on Hand as of the Operation Assumption Date, accounts receivable, Causes of Action, the Almond Farm, and all other Assets identified in the Debtor's Schedules or accruing prior to the Operation Assumption Date. For the avoidance of doubt, all Estate Personal Assets shall remain the property of the Debtor's Estate, available to pay the Claims of all of the Debtor's Creditors and shall not be: (i) subject to the MSA; (ii) transferred or otherwise hypothecated, encumbered (except as such encumbrance existed on the Petition Date) or otherwise affected by the MSA, the MTA, or the transactions contemplated therein; or (iii) impaired, impacted or otherwise affected by AAM or any affiliate thereof.

63.     "*Excess Professional Fee Trust Amount*" means any amounts remaining in the Professional Fee Trust Account after the payment of all Allowed Professional Fee Claims.

64.     "*Exchange Act*" means the Securities and Exchange Act of 1934, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

65.     "*Excluded Parties*" means, collectively, each party listed on <u>Exhibit A</u> hereto.

66.     "*Exculpated Parties*" means, collectively, each in its capacity as such: (a) the Debtor Exculpated Parties, (b) the Committee Exculpated Parties, and (c) the SAMC Exculpated Parties; *provided, however*, that the Exculpated Parties shall not include any of the Excluded Parties.

67.     "*Exculpation*" means the exculpation provision set forth in **Article XI.B** hereof.

68.     "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption, assignment, or rejection under section 365 of the Bankruptcy Code.

69.     "*Expense Payment Deadline*" means, as to each calendar month, the tenth Business Day of such calendar month.

70.     "*Exhibit*" means an exhibit annexed hereto, to the Plan Supplement, or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

10288062

71.     "*Federal Judgment Rate*" means the interest rate on federal judgments, in effect for the calendar week of the Petition Date, and is based on the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System.

72.     "*File*" or "*Filed*" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

73.     "*Final Distribution Date*" means the date when, (a) in the reasonable judgment of the Liquidation Trustee substantially all of the assets of the Liquidation Trust have been monetized and there are no substantial potential sources of additional Cash for distribution, (b) there remain no Disputed Claims, and (c) the Liquidation Trustee distributes all remaining Cash held by the Liquidation Trust to the Holders of Liquidation Trust Interests in accordance with this Plan and the Liquidation Trust Agreement.

74.     "*Final Order*" means an order or judgment: (i) as to which the time to appeal, petition for certiorari or move for review or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for review or rehearing is pending, or such an appeal has been rendered statutorily moot pursuant to Section 363(m) of the Bankruptcy Code, or (ii) if an appeal, writ of certiorari, reargument or rehearing has been filed or sought, and a stay pending appeal has been entered, the order or judgment has been affirmed by the highest court to which such order or judgment was appealed or certiorari has been denied, or reargument or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired; *provided that* the theoretical possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not prevent such order or judgment from being considered a Final Order.

75.     "*General Unsecured Claim*" means any Claim against the Debtor that is not a/an: (a) Administrative Expense Claim (including a Professional Fee Claim); (b) Priority Tax Claim; (c) Other Priority Claim; (d) Other Secured Claim; or (e) SAMC Secured Obligation.  For the avoidance of doubt, the AAM GUC shall constitute a General Unsecured Claim, but shall be subordinated in all respects to all other Allowed General Unsecured Claims and shall only be payable upon the payment in full (without interest) of all Allowed General Unsecured Claims (other than the AAM GUC), except as otherwise set forth in this Plan.

76.     "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

77.     "*HCAI*" means the California Department of Health Care Access and Information.

78.     "*Holder*" means, as applicable, (i) an Entity holding a Claim against the Debtor; or (ii) an Entity holding a Liquidation Trust Interest in the Liquidation Trust.

79.     "*Hospital*" means the Debtor's general acute care hospital, located at 1250 E Almond Avenue, Madera, California 93637, and related facilities.

10288062

80. "*Hospital Assets*" means the Hospital's operational assets and any other personal property assets generated after the Operation Assumption Date, but does <u>not</u> include the Estate Personal Assets (or any other Liquidation Trust Assets).

81. "*Impaired*" means, when used in reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

82. "*Initial Contribution*" means the $15 million deposit to be made by AAM, into the Escrow Account, as an initial deposit toward the AAM Cash Contribution, immediately upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order.

83. "*Initial Distribution Date*" means, subject to the "Treatment" sections in **Article III** hereof, the date that is on or as soon as reasonably practicable after the Effective Date, when Plan Distributions shall commence to Holders of Allowed Claims.

84. "*Insured Claim*" means a General Unsecured Claim arising prior to the Confirmation Date involving personal injury, medical malpractice, slip-and-fall, wrongful death, or other similar Claims that are covered by the terms of the Debtor's various insurance policies, or any other General Unsecured Claim against the Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution, or other payment under a policy of insurance under which the Debtor is an insured or beneficiary of the coverage provided under the applicable policy. All Insured Claims are Disputed Claims. Some of the Insured Claims may be fully insured, and no deductible amount would be payable by the Debtor under the terms of the applicable insurance policy. As to other Insured Claims, a deductible or self-insured retention obligation may be applicable. For the avoidance of doubt, with respect to all Insured Claims arising from events that occurred prior to the Petition Date for which notice is or was provided to the insurer in accordance with the applicable policy, such deductibles and self-insured retention obligations shall be treated as Class 4 General Unsecured Claims to the extent Allowed. Further, no insurance carrier shall, or shall be entitled, to deny coverage under any insurance policy based upon (i) any failure of the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee, to pay any deductible or self-insured retention in full, or (ii) the treatment of any Claim for a deductible or self-insured retention obligation as a Class 4 General Unsecured Claim.

85. "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

86. "*Liquidation Transaction*" means any form of transaction or procedure to implement an orderly liquidation of the Debtor's Assets, including the Hospital, so that the proceeds thereof can ultimately be distributed to Holders of Allowed Claims.

87. "*Liquidation Trust*" means the trust established pursuant to the Liquidation Trust Agreement. With respect to any action required or permitted to be taken by the Liquidation Trust, the term includes the Liquidation Trustee or any other Person or Entity authorized to take such action in accordance with the Liquidation Trust Agreement. In the event of any conflict between the terms of this Plan and the terms of the Liquidation Trust Agreement, the terms of the Plan control.

10288062

88.    "*Liquidation Trust Agreement*" means that certain agreement establishing and delineating the terms and conditions of the Liquidation Trust, in form and substance reasonably acceptable to the Committee.

89.    "*Liquidation Trust Assets*" means all assets held from time to time by the Liquidation Trust (including the Estate Personal Assets and the Causes of Action, including, but not limited to, Tort Claims and D&O Claims and the proceeds thereof), the proceeds of which shall be distributed to the Holders of Liquidation Trust Interests after payment in full of Trust Expenses and any other obligations to the extent set forth in this Plan or the Liquidation Trust Agreement.  The Liquidation Trust Assets shall initially consist of the Distributable Assets. For the avoidance of doubt, the term "Liquidation Trust Assets" does not include any Cash tendered by the Debtor and held in the Professional Fee Trust Account except for the Excess Professional Fee Trust Amount, if any.

90.    "*Liquidation Trust Beneficiaries*" means the Holders of Liquidation Trust Interests.

91.    "*Liquidation Trust Interests*" means the beneficial interests in the Liquidation Trust distributed to the Holders of Allowed Claims in Class 4 on account of the Allowed General Unsecured Claims as set forth in **Article III.F.4** of the Plan.

92.    "*Liquidation Trust Oversight Committee*" means the committee formed pursuant to **Article V.J** of the Plan to, among other things, consult with the Liquidation Trust.  AAM shall have the right to serve as one of the members of the Liquidation Trust Oversight Committee.

93.    "*Liquidation Trustee*" means that Person selected by the Committee, with the consent of AAM, such consent not to be unreasonably withheld, to serve as the trustee of the Liquidation Trust as set forth in **Article V.H** of the Plan or any of his, her, or its successors.

94.    "*Local Rules*" means the Local Rules of Practice of the United States Bankruptcy Court Eastern District of California, as amended from time to time and as applicable to the Chapter 11 Case.

95.    "*MSA*" means the Management Services Agreement, by and between AAM and the Debtor, substantially in the form approved by the Bankruptcy Court pursuant to an order granting the Debtor's motion, pursuant to Section 363 of the Bankruptcy Code, for authority to enter into it, and the MTA, filed in the Bankruptcy Case on January 19, 2024 [Docket No. 1298].

96.    "*MSA Approval Deadline*" means February 15, 2024.

97.    "*MSA Approval Order Date*" means the date on which the order approving the MSA in entered by the Bankruptcy Court.

98.    "*MTA*" means the Master Transition Agreement by and between AAM and the Debtor, substantially in the form approved by the Bankruptcy Court, pursuant to an order granting the Debtor's motion, pursuant to Section 363 of the Bankruptcy Code, for authority to enter into it, and the MSA, filed in the Bankruptcy Case on January 19, 2024 [Docket No. 1298].

99.    "*MTA Execution Date*" means the first date on which the MTA and MSA have both been signed by all parties thereto.

10288062

100.    "*Net Distributable Assets*" means the Distributable Assets of the Liquidation Trust from and after the Effective Date once all such assets have been reduced to Cash, net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims, Allowed SAMC Secured Obligations, and Trust Expenses, and/or reserves established for any of the foregoing.

101.    "*OAD Expenses*" means all expenses associated with the Hospital's operations arising *after* the Operation Assumption Date.

102.    "*OAD Revenues*" means any and all revenues (other than revenue that constitutes, or arises from, the Estate Personal Assets) that arise after the Operation Assumption Date and prior to the termination of MSA.

103.    "*One Million Deposit*" means the $1 million deposit to be made by AAM, into the Escrow Account immediately upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order, for the payment of all interest and related expenses associated with any Allowed SAMC Secured Obligations until (a) the MSA is terminated; (b) all SAMC Secured Obligations have been paid in full; or (c) the Plan Confirmation Deadline.  For the avoidance of doubt, the One Million Deposit is in addition to the AAM Cash Contribution and shall not be credited against, nor in any way reduce, the AAM Contribution due in accordance with paragraph 3 of the MTA or this Plan.  Upon payment in full of all Allowed SAMC Secured Obligation, any unused balance of the One Million Deposit shall be applied in the following priority: *first*, to fund the Initial Contribution, *second* to fund each Supplemental Contribution sequentially, and, third, after all of AAM's obligations to fund the Initial Contribution and the Supplemental Contributions have been satisfied in full, to be repaid to AAM.

104.    "*Operation Assumption Date*" means the first date on which both of the following conditions have occurred: (a) the Bankruptcy Court's order approving the MTA and the MSA has become a Final Order, and (b) AAM has deposited both the Initial Contribution and the One Million Deposit into a Conforming Escrow Account.

105.    "*Other Priority Claim*" means any Claim against the Debtor accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

106.    "*Other Secured Claim*" means any Secured Claim against the Debtor other than an SAMC Secured Obligation.

107.    "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary, or other capacity.

108.    "*Petition Date*" means March 10, 2023, the date on which the Debtor commenced the Chapter 11 Case.

109.    "*Plan*" means this *First Amended Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors*, including the Exhibits and Plan Supplement and all

10288062

supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified, or otherwise supplemented from time to time.

110. "*Plan Confirmation Deadline*" means the first day that is ninety (90) days after the Commitment Deadline. The Plan Confirmation Deadline may be extended by AAM or by order of the Bankruptcy Court.

111. "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims under this Plan.

112. "*Plan Documents*" means any of the documents, other than this Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement.

113. "*Plan Proponent*" means the Committee.

114. "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including the Exhibits, Plan Documents, and the Designated Contract list, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time, which shall be Filed with the Bankruptcy Court. The Plan Proponent shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

115. "*Post-Effective Date Notice List*" means the list, created pursuant to **Article XIV.F** of this Plan, of Persons who desire to receive notices after the Effective Date of the Plan.

116. "*Priority Tax Claim*" means any Claim of a Governmental Unit against the Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

117. "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim in a particular Class (or several Classes taken as a whole) bears to (b) the aggregate Allowed amount of all Claims in such Class (or several Classes taken as a whole), unless this Plan provides otherwise.

118. "*Professional*" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise, and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

119. "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503, or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

120. "*Professional Fee Trust Account*" means the trust account held by the Debtor's or the Liquidation Trustee's counsel for the purpose of paying Allowed Professional Fee Claims.

121. "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

122. "*Reinstated*" or "*Reinstatement*" means, with respect to any Claim, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim

10288062

in accordance with Section 1124 of the Bankruptcy Code; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than the Debtor or an insider of the Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

123.     "*Real Property Asset*" means the real property on which the Hospital is located.

124.     "*Related Persons*" means, (i) with respect to any Person other than the Debtor, such Person's financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting solely in such capacity at any time, and any Person claiming by or through any of them, and (ii) with respect to the Debtor, such Debtor's Professionals retained in this Chapter 11 Case. None of the Excluded Parties shall be a Related Person of the Debtor.

125.     "*Retained Causes of Action*" shall have the meaning ascribed to such term in **Article V.S** of this Plan.

126.     "*SAMC*" means Saint Agnes Medical Center.

127.     "*SAMC Exculpated Parties*" means SAMC and its Related Persons, current and former officers, directors, managers, equity holders, Affiliates, subsidiaries, predecessors, successors, and employees, in their capacities as such. For the avoidance of doubt, the Excluded Parties are expressly excluded from the definition of SAMC Exculpated Parties.

128.     "*SAMC Secured Obligation*" or "*SAMC Secured Obligations*" means any Secured Claim held by SAMC as a result of financing provided to the Debtor in April 2021 in the initial principal amount of $15,000,000.

129.     "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and all amendments or supplements thereto Filed by the Debtor with the Bankruptcy Court.

130.     "*Section 503(b)(9) Claims*" means Allowed Claims pursuant to section 503(b)(9) of the Bankruptcy Code.

131.     "*Secured Claim*" means a Claim that is secured by a valid and enforceable Lien on property in which the Debtor's Estate has an interest or that is subject to valid setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to

section 553 of the Bankruptcy Code; *provided*, *however*, that a Secured Claim shall not include any portion of the Claim to the extent that the value of such Entity's Collateral is less than the amount of such Claim.

132.    "*SEC*" means the Securities and Exchange Commission.

133.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state, or local law.

134.    "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

135.    "*Solicitation*" means the solicitation of votes of those parties entitled to vote to accept or reject the Plan.

136.    "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including such taxes on prime contracting and owner-builder sales), privilege taxes (including privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

137.    "*Supplemental Contribution*" means each of the additional Cash contributions to be paid by AAM to the Liquidation Trust, as set forth in the MTA and the Plan, in up to three (3) installments of $5 million each until such time as AAM has contributed into a Conforming Escrow Account or directly to the Liquidation Trust a total amount of Cash (including the Initial Contribution, but excluding any amounts paid by AAM toward OAD Expenses) equal to the *lesser* of: (i) $30 million, or (ii) an amount sufficient to pay in full all Allowed General Unsecured Claims (other than the subordinated AAM GUC).

138.    "*Termination Date Expenses*" means any OAD Expenses incurred on or before, and that remain unpaid as of, the date the MTA terminates.

139.    "*Tort Claims*" means any and all claims or Causes of Action of the Debtor or its Estate against any of the Debtor's current or former professionals, directors, officers, trustees, managers and similar parties, including but not limited to any D&O Claims.

140.    "*Transition Period*" means the period from the Operation Assumption Date until the Closing Date.

141.    "*Trust Expenses*" means the costs, expenses, or other obligations incurred, payable or owed by the Liquidation Trust from and after the Effective Date, including the reasonable fees, costs, and expenses of the Liquidation Trustee and his or her attorneys and other professionals, relating to, among other things, the implementation of the Plan and the administration of the Liquidation Trust.

142.    "*Undisputed OAD Expenses*" means all OAD Expenses that remain due and unpaid as of the first day of a calendar month that are not subject to a bond fide dispute.

10288062

143.　　"*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption, assignment, or rejection under section 365 of the Bankruptcy Code.

144.　　"*Unimpaired*" means not impaired within the meaning of section 1124 of the Bankruptcy Code.

145.　　"*Voting Classes*" means Class 3 and Class 4 under this Plan.

146.　　"*Voting Record Date*" means the date for determining which Holders of Claims are entitled to receive the Disclosure Statement and vote to accept or reject this Plan, which date shall be set by the Bankruptcy Court.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

### A.　　Administrative Expense Claims

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim will receive from the Debtor or the Liquidation Trust, as applicable, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Liquidation Trustee and such Holder.  So long as the MTA remains in effect, AAM shall either pay directly, or provide funding to the Debtor sufficient to pay, all OAD Expenses and, to the extent AAM fails to timely fund the payment of an OAD Expense, such OAD Expense shall be paid from the Escrow Account (which shall then be replenished for such drawn amount by AAM), in each case as required by the MTA, and as further described in Article V.B of the Plan.  Allowed Administrative Expense Claims that are not OAD Expenses shall be paid from Cash on Hand.  **Unless otherwise ordered by Final Order of the Bankruptcy Court, all Administrative Expense Claims must be Filed within forty-five (45) days after the Effective Date, and served on the Liquidation Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court.  The failure to File a request for payment of an Administrative Expense Claim on or before forty-five (45) days after the Effective Date shall result in such Administrative Expense Claim being forever Disallowed, barred, and expunged in its entirety without further notice to any party, or action, approval, or order of the Bankruptcy Court.**

*Professional Fee Claims*.  Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must File, within forty-five (45) days after the Effective Date, and serve on the Liquidation Trustee, the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim; *provided* that the Liquidation Trustee may pay Professionals in the ordinary course of business, for any work authorized by the Liquidation Trustee performed on and after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and Consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash.  Once Allowed by the Bankruptcy Court, Professional Fee Claims incurred prior to the Effective Date shall be promptly paid from the Professional Fee Trust Account.  If the amounts held in the

- 17 -

10288062

Professional Fee Trust Account are insufficient to pay all such Allowed Accrued Professional Compensation in full in Cash, the Liquidation Trustee shall promptly pay any unpaid balance of such Allowed Accrued Professional Compensation from the Cash transferred to the Liquidation Trust on the Effective Date.

**B.     Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date, or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Liquidation Trustee: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; or (b) such other less favorable treatment as agreed to in writing by the Liquidation Trustee and such Holder. Allowed Priority Tax Claims will be paid from Cash on Hand.

### ARTICLE III.
### CLASSIFICATION AND TREATMENT OF
### CLASSIFIED CLAIMS

**A.     Summary**

All Claims, except Administrative Expense Claims (including Professional Fee Claims) and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified as described in **Article III.F** of the Plan.

The categories of Claims listed below classify Claims for all purposes including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid, released, or otherwise settled prior to the Effective Date.

**Summary of Classification and Treatment of Classified Claims**

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed and Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed and Presumed to Accept |
| 3 | SAMC Secured Obligations | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |

**B.     Separate Classification of Certain Claims**

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within this Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated as being in a

- 18 -

10288062

separate sub-Class for the purposes of voting to accept or reject this Plan and receiving Plan Distributions.

All General Unsecured Claims (or other classified Claims) have been placed in one Class for purposes of this Plan.

**C.**    **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**D.**    **Voting; Presumptions; Solicitation in Good Faith**

Only Holders of Allowed Claims in Classes 3 and 4 are entitled to vote to accept or reject this Plan. Holders of Claims in these Voting Classes will receive Ballots containing detailed voting instructions.

The Plan Proponent will solicit votes on the Plan from the Voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code. Accordingly, the Plan Proponent and each of its Related Persons shall be entitled to, and upon the Confirmation Date will be granted, the protections of section 1125(e) of the Bankruptcy Code.

**E.**    **Cramdown**

If any Class of Claims is deemed and/or presumed to reject this Plan or is entitled to vote on this Plan and does not vote to accept this Plan, the Plan Proponent intends to (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code, or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code. If a controversy arises as to whether any Claims, or any Class of Claims, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**F.**    **Classification and Treatment of Claims**

    1.    Class 1 – Other Priority Claims

- *Classification*: Class 1 consists of the Other Priority Claims.

- *Treatment*: The legal, equitable, and contractual rights of the Holders of Other Priority Claims are unaltered by the Plan. With respect to each Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Other Priority Claim is an Allowed Other Priority Claim on the Effective Date, or (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim will receive in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed Other Priority Claim, at the election of the Liquidation Trustee: (A) Cash equal to the amount of such Allowed

10288062

Other Priority Claim; (B) such other less favorable treatment as to which the Liquidation Trustee and the Holder of such Allowed Other Priority Claim will have agreed upon in writing; or (C) such other treatment such that it will not be Impaired. Allowed Other Priority Claims will be paid from Cash on Hand unless otherwise agreed to by the Holder of such Claim.

- *Impairment and Voting*: Class 1 is an Unimpaired Class and the Holders of Other Priority Claims are conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Other Priority Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

2.    Class 2 – Other Secured Claims

- *Classification*: Class 2 consists of the Other Secured Claims. This Class will be further divided into subclasses designated by letters of the alphabet (Class 2A, Class 2B and so on), so that each Holder of any Allowed Other Secured Claim against the Debtor is in a Class by itself, except to the extent that there are Other Secured Claims that are substantially similar to each other and may be included within a single Class.

- *Treatment*: The legal, equitable, and contractual rights of the Holders of Other Secured Claims are unaltered by the Plan. With respect to each Allowed Other Secured Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Other Secured Claim is an Allowed Other Secured Claim on the Effective Date, or (ii) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim will receive in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed Other Secured Claim, at the election of the Liquidation Trustee: (A) Cash equal to the amount of such Allowed Other Secured Claim; (B) return of the Collateral securing such Allowed Other Secured Claim; (C) such other less favorable treatment as to which the Liquidation Trustee and the Holder of such Allowed Other Secured Claim will have agreed upon in writing; (D) any defaults shall be cured and shall be paid or satisfied in accordance with and pursuant to the terms of the applicable agreement between the Liquidation Trustee and the Holder of the Allowed Other Secured Claim and such Claim shall be Reinstated; or (E) Reinstatement or such other treatment such that it will not be Impaired.

- *Impairment and Voting*: Class 2 is an Unimpaired Class and the Holders of Other Secured Claims are conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Other Secured Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

3.     Class 3 – SAMC Secured Obligations

- *Classification*:  Class 3 consists of SAMC Secured Obligations.

- *Allowance*: The SAMC Secured Obligation shall be allowed in an aggregate principal amount (plus accrued and unpaid interest through January 1, 2024) of $2,323,485 plus unpaid fees and interest that accrue from January 2, 2024 through the Effective Date, which represents the outstanding portion of the SAMC Secured Obligations.

- *Treatment*: On the Effective Date, and in exchange for a waiver and release of any and all claims or Causes of Action asserted or assertable against SAMC by the Debtor, the Estate, the Committee, the Liquidation Trust or the Liquidation Trustee (as further described in Article X.B of this Plan), the SAMC Secured Obligations shall receive a distribution in the amount (the "<u>SAMC Distribution Amount</u>") equal to the sum of: (a) $2,230,546, plus (b) any interest, fees and expenses, accrued between January 2, 2024 and the Effective Date, that remain due and owing as of the Effective Date. On or before the Expense Payment Deadline of each calendar month, a portion of the One Million Deposit shall be released to the Debtor in an amount sufficient to pay certain interest and expenses associated with the Allowed SAMC Secured Obligations that accrued during the prior calendar month and shall be immediately applied by the Debtor solely to pay such interest and expenses (and thereby reducing the SAMC Distribution Amount to the extent paid from the One Million Deposit). The balance of the Allowed SAMC Secured Obligations shall be paid on the Effective Date from Cash on Hand, unless otherwise agreed to by the Holder of such Allowed SAMC Secured Obligation.

- *Impairment and Voting*:  Class 3 is an Impaired Class and the Holders of SAMC Secured Obligations are entitled to vote to accept or reject the Plan.

4.     Class 4 – General Unsecured Claims

- *Classification*:  Class 4 consists of the General Unsecured Claims.

- *Treatment*:  As soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed General Unsecured Claim (unless the applicable Holder agrees to a less favorable treatment), its Pro Rata share of Liquidation Trust Interests, which shall entitle such Holder to its Pro Rata Share of the Liquidation Trust Assets.  The Liquidation Trust Assets shall initially consist of, *inter alia*: (i) any Cash on Hand (including the $15 million Initial Contribution); (ii) the Estate Personal Assets; (iii) any Excess Professional Fee Trust Amount; (iv) the D&O Liability Insurance Policies; (v) the Retained Causes of Action (including, but

not limited to, Tort Claims and D&O Claims); and (vi) the proceeds of the foregoing. Plan Distributions on account of such Liquidation Trust Assets shall be made on or as soon as reasonably practicable after the later of: (i) the Initial Distribution Date if such General Unsecured Claim is Allowed on the Effective Date, or (ii) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim.

- *Impairment and Voting*: Class 4 is an Impaired Class and the Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

## G.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's, the Committee's or the Liquidation Trustee's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to cure any arrears or defaults that may exist with respect to Executory Contracts or Unexpired Leases to be assumed under the Plan.

## H.    Special Provision Governing Cash Paid to SAMC

Notwithstanding anything to the contrary in the Plan, the Debtor (and the Committee) waive any rights in respect of legal and equitable claims of setoff or recoupment as they relate to any cash payments made to SAMC during the course of the chapter 11 case and any distributions made on account of SAMC Secured Obligations under this Plan.

## I.    Subordinated Claims

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(a) of the Bankruptcy Code, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor and the Liquidation Trustee reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

## ARTICLE IV.
## ACCEPTANCE OR REJECTION OF THE PLAN

## A.    Deemed and Presumed Acceptance of Plan

Classes 1 and 2 are Unimpaired under the Plan and are therefore conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

10288062

**B.**    **Reserved**

**C.**    **Voting Classes**

Subject to the provisions of any order approving the Disclosure Statement, each Holder of an Allowed Claim, as of the applicable Voting Record Date, in the Voting Classes (Classes 3 and 4) will be entitled to vote to accept or reject the Plan.

**D.**    **Controversy Concerning Impairment**

In the event of any controversy as to whether any Holder of an Allowed Claim or Class is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

**E.**    **Acceptance by Impaired Classes of Claims**

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class (or, as applicable sub-class) of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims actually voting in such Class (or, as applicable, sub-class) voted to accept the Plan. An Impaired Class of Claims for which no Holder votes to accept or reject the Plan shall be deemed to have rejected the Plan.

**F.**    **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

The Plan Proponent shall seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class (or, as applicable, sub-class) that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Plan Proponent reserves the right to amend, revoke, modify, or withdraw the Plan or any amendment, supplement, or Exhibit thereto, or the Plan Supplement in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**ARTICLE V.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.**    **Overview**

This Plan provides for: (a) the formation of the Liquidation Trust; (b) the disposition of substantially all the Assets of the Debtor and its Estate and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code; (c) the winding down of the Debtor and its affairs by the Liquidation Trustee; and (d) the creation of a mechanism for the Liquidation Trustee to pursue, litigate, waive, settle, and compromise Causes of Action (including, but not limited to, D&O Claims and Tort Claims) to maximize Creditor recoveries.

The Plan also provides that, unless AAM elects to terminate the MSA on or before the Commitment Deadline, and subject to the Plan being confirmed on or before the Plan Confirmation Deadline, AAM shall contribute up to $30 million in Cash to fund the Liquidation Trust for the benefit of Holders of Allowed General Unsecured Claims in exchange for the sale to Buyer of: (i) the Real Property Asset (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit B to the MTA), and (ii) at the election of AAM, the transition of the Hospital

- 23 -

Assets to Buyer (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit C to the MTA). To the extent these transactions are terminated, the Plan enables the Committee to pursue and consummate a Liquidation Transaction if, at any time before the Effective Date, it determines in its sole discretion that consummation of such Liquidation Transaction is in the best interests of the Estate and Creditors.

In addition, in the event that AAM terminates the MTA, AAM shall submit to the Debtor (or if the Plan has been confirmed, the Liquidation Trustee) a binding $3 million stalking horse bid for the Real Property Asset if requested to do so by the Committee (or if a Plan has been confirmed, the Liquidation Trustee).

**B.      The MTA & MSA**

*Purpose*. AAM is dedicated under the MTA to the reopening of Hospital under the terms set forth in the MTA. It is AAM's intention to assist Hospital in its reopening and continued operations under the MSA, until the parties can transition the operations and ownership of the Hospital Assets to AAM, by which AAM will continue the delivery of health care for the benefit of communities served by the Debtor.

*Management of the Hospital*. Under the MSA, AAM will act as the Debtor's agent for, among other things: (i) applying for a change of ownership with the CDPH; (ii) applying for funding under the California Distressed Hospital Loan Program pursuant to California Health and Safety Code Sections 129380 *et seq.*; and (iii) applying for the necessary approvals with the California Attorney General's Nonprofit Health Facilities division.

*AAM's Option to Acquire Hospital*. At its election, but no later than thirty-six (36) months after the MTA Execution Date, AAM may elect (in its sole discretion) to submit a CHOW Application for change of ownership or transfer of membership interests to CDPH to effect a change in licensed operator of the Hospital from the Debtor to AAM. The date of CDPH's approval of the CHOW Application shall be the date on which ownership of the Hospital Assets shall be transferred from the Debtor to Manager.

*Transition Period*. During the Transition Period, AAM shall provide the Debtor with certain management and administrative services in support of the Hospital's operations as identified in the MTA and MSA.

*Post-Closing Date*. After the Closing Date, AAM will operate the Hospital pursuant to its own acute care health facility license issued by CDPH pursuant to the approved CHOW Application, and the Debtor will cease to operate the Hospital.

*Transition of Facilities*.

(i)      *Assumption of Financial Responsibility*: Immediately upon the occurrence of the Operation Assumption Date, AAM shall assume all financial responsibility for the Hospital's operations.

(ii)     *Payment of Expenses*: AAM shall provide funding to the Hospital sufficient for the Hospital to pay all OAD Expenses; *provided* that AAM's obligation to fund the OAD Expenses shall not apply to expenses accruing after termination of the MSA.

- 24 -

(iii)     *Retention of Revenue by AAM*: Any and all OAD Revenues shall be the sole and exclusive property of AAM.

(iv)     *Retention of Property by Debtor*: All Estate Personal Assets shall remain the property of the Debtor's Estate, available to pay the Claims of all of the Debtor's Creditors and shall not be: (i) subject to the MSA; (ii) transferred or otherwise hypothecated, encumbered (except as such encumbrance existed on the Petition Date) or otherwise affected by the MSA or the transactions contemplated therein or in the MTA; or (iii) impaired, impacted or otherwise affected by AAM or any affiliate thereof.

(v)     *Distressed Hospital Loan Program Funds*: Notwithstanding anything to the contrary in this Plan, any DHLP Funds shall be applied solely to fund operation of the Hospital so long as it continues to operate.

(vi)     *Allowance of AAM GUC*: Subject to the Bankruptcy Court's approval of the MTA, AAM shall be deemed to have an Allowed General Unsecured Claim in an amount equal to the OAD Expenses that it funds out-of-pocket *minus* the OAD Revenues (the "AAM GUC"); *provided*, *however*, that beginning on the DHLP Funds Receipt Date, no further OAD Expenses shall be added to the calculation of the AAM GUC except to the extent that the total OAD Expenses incurred after the DHLP Funds Receipt Date exceeds the total amount of DHLP Funds received by the Hospital. For the avoidance of doubt, the AAM GUC shall be subordinated in all respects to all other Allowed General Unsecured Claims and shall only be payable upon the payment in full (without interest) of all Allowed General Unsecured Claims (other than the AAM GUC), except as set forth below in "Treatment of Claims".

*Treatment of Claims*. The net proceeds from the Estate Personal Assets and the Real Property Asset shall be used to pay Allowed Claims pursuant to the priorities set forth in the Bankruptcy Code and in accordance with the terms of this Plan. To the extent that the Hospital resumes operations and is sold or otherwise transitioned to a third party as an operating hospital either through a sale motion, a plan of reorganization, a management agreement, or in any other manner, the AAM GUC shall be treated as an Allowed Administrative Expense Claim payable solely from such proceeds of the sale of the Hospital (but shall not be payable from the proceeds of any Estate Personal Assets unless all Allowed General Unsecured Claims have been paid in full, without interest).

*Sale of Real Property Asset and Hospital Assets*.

(i)     *Liquidation Trust*: Unless it elects to terminate the MSA pursuant to Paragraph 6 thereof on or before the Commitment Deadline, AAM shall contribute the AAM Cash Contribution, subject to the terms of the MTA and this Plan, to fund the Liquidation Trust for the benefit of Holders of Allowed General Unsecured Claims in exchange for the sale to Buyer of: (1) the Real Property Asset (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit B to the MTA), and (2) at the election of AAM, the transition of the Hospital Assets to Buyer (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit C to the MTA).

(ii)     *Funding of AAM Cash Contribution*: The AAM Cash Contribution shall be funded as follows:

- 25 -

10288062

a. Upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order, AAM shall immediately deposit into the Escrow Account the Initial Contribution.

b. *Replenishment of Escrow*: On or before the Effective Date, AAM shall deposit into the Escrow Account an amount sufficient such that, as of the occurrence of the Effective Date, the Initial Contribution held in the Escrow Account is no less than $15 million.

c. Immediately upon the Effective Date, the Initial Contribution shall be released from the Escrow Account to be transferred to the Liquidation Trustee.

d. The balance of the AAM Cash Contribution shall be paid by AAM to the Liquidation Trust in up to three (3) Supplemental Contributions until such time as AAM has contributed into the Escrow Account or directly to the Liquidation Trust a total amount of Cash (including the Initial Contribution, but excluding any amounts paid by AAM toward OAD Expenses) equal to the *lesser* of: (i) $30 million, or (ii) an amount sufficient to pay in full all Allowed General Unsecured Claims (other than the subordinated AAM GUC). The Supplemental Contributions shall be paid by AAM to the Liquidation Trust according to the following schedule:

| Supplemental Contribution Schedule | Deadline for Payment to Liquidation Trustee |
|---|---|
| 1st $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $15 million has been distributed to Holders of Allowed General Unsecured Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |
| 2nd $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $20 million has been distributed to Holders of Allowed General Unsecured Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |
| 3rd $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $25 million has been distributed to Holders of Allowed General Unsecured Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |

(iii) *AAM Contribution Lien*: AAM's obligation to pay the AAM Cash Contribution shall be secured by the AAM Contribution Lien. Upon the Liquidation Trust's receipt of the full amount of the AAM Cash Contribution, the AAM Contribution Lien shall be deemed released and the Liquidation Trustee shall (at AAM's request) execute requisite documentation to evidence release of the AAM Contribution Lien.

(iv)  *Surplus Funds*: To the extent that, after paying all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Other Secured Claims, Allowed SAMC Secured Obligations, and Allowed General Unsecured Claims in full, the Debtor's estate has remaining Assets, all such remaining Assets (including, but not limited to, the Estate Personal Assets) shall be the sole and exclusive property of AAM.  Notwithstanding anything to the contrary contained in the Plan, the MTA, or otherwise, this provision shall not apply to any DHLP Funds.

(v)  *Sale of Real Property Asset*: The sale of the Real Property Asset to Buyer shall be, and shall be deemed, effective immediately upon: (a) the Effective Date, and (b) the release of the Initial Contribution from the Escrow Account and the deposit of such funds into the Liquidation Trust.  As additional consideration for AAM's purchase of the Real Property Asset, AAM shall contribute the remainder of the AAM Cash Contribution to the Liquidation Trust in accordance with the terms of the Plan and Paragraph 3.b. of the MTA.

(vi)  *CHOW Election*: AAM shall have the option, in its sole discretion, to submit a CHOW Application to CDPH to effect a change in licensed operator of the Hospital from the Debtor to AAM within thirty-six (36) months of the MTA Effective Date.

(vii)  *Transfer of Hospital Assets*: Subject to AAM exercising the CHOW Election, the transfer of the Hospital Assets to Buyer shall be, and shall be deemed, effective immediately upon: (a) CDPH's approval of such timely-submitted CHOW Application; and (b) Buyer's payment to the Debtor of $1.00.[1]

*Additional Payments*.  Upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order, AAM shall (i) assume the liability for the unused portion of the $2 million bridge loan and for any other amounts loaned to the Hospital by HCAI in connection with AB112; and (ii) immediately deposit the One Million Deposit into the Escrow Account for the payment of all interest and related expenses associated with any Allowed SAMC Secured Obligations until (a) the MSA is terminated; (b) all Allowed SAMC Secured Obligations have been paid in full; or (c) the Plan Confirmation Deadline.  On or before the Expense Payment Deadline of each calendar month: (a) funds held in the Escrow Account shall be released to the Debtor in an amount sufficient to pay all Undisputed OAD Expenses that were due and unpaid as of the first day of the prior calendar month (and as to which AAM has not provided to the Committee (or, if appointed pursuant to the Plan, the Liquidation Trustee) proof of payment prior to the Expense Payment Deadline) and shall be immediately applied by the Debtor solely to pay such Undisputed OAD Expenses and (b) a portion of the One Million Deposit shall be released to the Debtor in an amount sufficient to pay all interest and related expenses associated with any Allowed SAMC Secured Obligations that accrued during the prior calendar month, and shall be immediately applied by the Debtor solely to pay such interest and related expenses.  The consideration from AAM pursuant to this provision is in addition to the AAM Cash Contribution and shall not be credited against, nor in any way reduce, the AAM Contribution due in accordance with the terms of the MTA or this Plan.  Upon payment in full of all Allowed SAMC Secured Obligations, any unused balance of the One Million Deposit shall be applied in the following priority: *first*, to fund the Initial Contribution, *second*, to fund each Supplemental

---

[1] For the avoidance of doubt, the $1.00 sale price is in addition to consideration provided by AAM to the Debtor under the MSA, payment of the Initial Contribution, and AAM's obligation to fund the remainder of the AAM Cash Contribution.

Contribution sequentially, and, *third*, after all of AAM's obligations to fund the Initial Contribution and the Supplemental Contributions have been satisfied in full, to be repaid to AAM.

*Termination of the MSA and MTA*.

(i)    *AAM Right to Terminate on or Before Commitment Deadline:* AAM shall have the right to terminate the MSA and MTA in its sole and absolute discretion on or before the Commitment Deadline. If the Bankruptcy Court enters an order approving the MSA *after* the MSA Approval Deadline, the Commitment Deadline shall be extended by an amount of days equal to the number of days that fall between the MSA Approval Deadline and the MSA Approval Order Date.

(ii)    *AAM Right to Terminate if Plan Not Timely Confirmed*: If the Bankruptcy Court does not confirm the Plan by the Plan Confirmation Deadline, AAM shall have the option during the seven (7) days immediately following the Plan Confirmation Deadline, exercisable in its sole and absolute discretion, to terminate the MSA and MTA by providing written notice of termination to counsel for the Debtor and the Committee. The Plan Confirmation Deadline may be extended by AAM or by order of the Bankruptcy Court.

(iii)    *Debtor Right to Terminate*: Debtor shall have the right to terminate the MSA and MTA, in its sole and absolute discretion, by written notice to AAM, if (a) the Commitment Deadline has passed and (b) at the time such written notice of termination is delivered to AAM, HCAI has not confirmed in writing its commitment to loan at least $50 million of DHLP Funds to the Hospital.

(iv)    *Termination for Cause*: Either party may terminate the MSA and MTA for Cause upon written notice to the other party specifying the basis for the termination.

    a.    Under the MTA, "Cause" means any of the following: (i) a material breach of any of the terms of the MTA by the other party that is not cured within seven (7) days after written notice of the breach; or (ii) the other party's engaging in any illegal or fraudulent activity that materially affects the other party's ability to perform under the MTA.

    b.    Under the MSA, "Cause" means any of the following: (i) a material breach of any of the terms of the MSA by the other party that is not cured within sixty (60) days after written notice of the breach; or (ii) the other party's engaging in any illegal or fraudulent activity that materially affects the other party's ability to perform under the MSA; or (iii) the MTA having been terminated in accordance with its terms by any party thereto.

(v)    *Effect of Termination*: Upon the termination of the MTA for any reasons, any portion of the Initial Contribution or the One Million Deposit remaining in the Escrow Account shall be applied in the following order: *first*, to (i) pay Termination Date Expenses or (ii) deposit with the Liquidation Trustee an amount sufficient to pay all Termination Date Expenses, and, *second*, to refund to AAM any funds remaining in the Escrow Account after all OAD Expenses have been paid in full. This provision shall survive termination of the MTA.

10288062

*Uses of Escrowed Funds.*

(i)     Until the earlier of (a) the Effective Date, or (b) the first date on which (i) the MTA has been terminated and (ii) all OAD Expenses incurred by the Hospital during the Transition Period have been paid in full, the Initial Contribution shall be held in the Escrow Account as security for AAM's obligations to (a) pay OAD Expenses and (b) pay the first $15 million of the AAM Cash Contribution.

(ii)    The One Million Deposit shall be held in the Escrow Account as security for AAM's obligations to (a) pay OAD Expenses, (b) pay all interest and related expenses associated with the SAMC Secured Obligations, and (c) pay the first $15 million of the AAM Cash Contribution.

*Alternative Proposal.* In the event that AAM terminates the MTA in accordance with the terms thereof, AAM will submit to the Debtor (or, if the Plan has been confirmed, the Liquidation Trustee) a binding $3 million stalking horse bid for the Real Property Asset if requested to do so by the Committee (or, if a Plan has been confirmed, the Liquidation Trustee).

**C.     Pivot to a Liquidation Transaction**

In the event that the MTA is terminated in accordance with its terms, the Committee reserves the right, in its sole discretion, at any time prior to the Effective Date, to pursue and consummate a Liquidation Transaction, if it determines in its sole discretion that consummation of such a Liquidation Transaction is in the best interests of the Estate and Creditors; provided that any such Liquidation Transaction shall provide: (a) the same "Treatment" of SAMC Secured Obligations as specified in Article III.F.3 of this Plan, and (b) for the SAMC Secured Obligations to be paid in full in Cash as soon as reasonably practicable after the effective date of such Liquidation Transaction.

**D.     General Settlement of Claims**

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims, and is fair, equitable, and reasonable. **Except as otherwise expressly provided in the Plan, any and all claims and Causes of Action of the Debtor and the Estate are preserved under the Plan.**

**E.     Continued Existence of the Debtor and Vesting of Assets in Liquidation Trust**

On and after the Effective Date, subject to the requirements of the Plan, the Debtor will continue to exist as a separate corporation, and shall retain all of the powers of a corporation under applicable non-bankruptcy law, and without prejudice to any right to amend its articles of incorporation, dissolve, merge, or convert into another form of business entity, or to alter or terminate its existence.  The Liquidation Trustee shall be deemed to have been admitted as the sole director of the Debtor under applicable non-bankruptcy law and shall be authorized to exercise all of the rights and powers of a sole director as provided by the Plan.

10288062

Neither the occurrence of the Effective Date, nor the effectiveness of this Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtor, which shall continue as a corporation, under the control of the Liquidation Trustee following the Effective Date subject to the terms of the Plan.

Except as otherwise provided in this Plan, on and after the Effective Date, all Distributable Assets and property of the Debtor and its Estate, including any Causes of Action (including, but not limited to Tort Claims and D&O Claims), will vest in the Liquidation Trust free and clear of all Claims, Liens, charges, and other encumbrances. Notwithstanding the foregoing, the Plan Proponent reserves the right to modify the Plan to exclude certain Assets from transfer to the Liquidation Trust as necessary to preserve rights and claims of the Estate and maximize value for Creditors. The Confirmation Order shall constitute a determination that the transfers of the Liquidation Trust Assets to the Liquidation Trust are legal and valid and consistent with applicable law, including applicable state law.

All parties shall execute any documents or other instruments as necessary to cause title to the applicable Assets to be transferred to the Liquidation Trust.  The Liquidation Trust Assets will be held in trust for the benefit of all Liquidation Trust Beneficiaries pursuant to the terms of the Plan and the Liquidation Trust Agreement.

## F.      **Corporate Action**

On the Effective Date, the matters under the Plan involving or requiring corporate action of the Debtor, including but not limited to actions requiring a vote or other approval of the board of directors, managers, members, partners or trustees of the Debtor or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the managers, members, directors, officers or trustees of the Debtor.

Without limiting the generality of the foregoing, except as otherwise provided in the Plan and the MSA and MTA (to the extent such agreements remain in effect), on the Effective Date and automatically and without further action: (i) any existing manager, director, officer, or trustee of the Debtor will be deemed to have resigned on the Effective Date without any further corporate action; (ii) the Liquidation Trustee shall be deemed the sole manager, director, officer, trustee and representative of the Debtor to exercise the rights, power, and authority of the Debtor under applicable provisions of this Plan and bankruptcy and non-bankruptcy law; and (iii) all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Confirmation Order shall act as an order modifying the Debtor's articles of incorporation, such that the provisions of this Plan can be effectuated.  The Plan shall be administered by the Liquidation Trustee, and all actions taken thereunder in the name of the Debtor shall be taken through the Liquidation Trustee.  All corporate governance activities of the Debtor shall be exercised by the Liquidation Trustee in his or her discretion, subject to the terms of this Plan.

On and after the Effective Date, the Liquidation Trustee may, in the name of the Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan, the Confirmation Order or the Liquidation Trust Agreement.  Without limiting the foregoing, the Liquidation Trustee may pay all reasonable Trust Expenses in the ordinary course of business without further notice to Creditors or Holders or approval of the Bankruptcy Court.

10288062

### G.     Liquidation Trust

Prior to the Effective Date, the Debtor shall execute the Liquidation Trust Agreement.  The Liquidation Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidation Trust as a grantor trust.

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of maximizing the value of the Liquidation Trust Assets, which shall initially consist of the Distributable Assets, and effectuating Plan Distributions to Creditors consistent with the Plan.  The Liquidation Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.

On the Effective Date, the Liquidation Trust Assets shall vest automatically in the Liquidation Trust.  The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be made for the benefit and on behalf of the Liquidation Trust Beneficiaries.  The assets comprising the Liquidation Trust Assets will be treated for tax purposes as being transferred by the Debtor to the Liquidation Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Liquidation Trust Beneficiaries to the Liquidation Trust in exchange for the Liquidation Trust Interests in the Liquidation Trust.  The Liquidation Trust Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust.  Upon the transfer of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtor's rights, title, and interest in the Liquidation Trust Assets, and the Debtor will have no further interest in or with respect to the Liquidation Trust Assets.

In pursuing any Causes of Action, the Liquidation Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtor's rights with respect to the periods in which any of the Causes of Action may be brought under section 546 of the Bankruptcy Code.  The Liquidation Trust Agreement will require consistent valuation of the Liquidation Trust Assets by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all U.S. federal and other income tax and reporting purposes.  The Liquidation Trust will not be permitted to receive or retain Cash in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the Liquidation Trust Assets.

In connection with the prosecution of the Causes of Action, any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity attaching to any prepetition and/or pre-Effective Date documents or communications relating to the Causes of Action shall be transferred to and shall vest in the Liquidation Trust.  The Liquidation Trust's receipt of such privileges or immunities associated with the Causes of Action shall not operate as a waiver of those privileges or immunities possessed or retained by the Debtor, nor shall it operate to eliminate the rights of any co-defendant to any applicable joint privilege or immunity.  The Liquidation Trust shall also be vested with the Debtor's rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004.  The Liquidation Trust, however, shall not be considered a successor of the Debtor and shall not assume any obligations of the Debtor other than expressly provided for by the Plan and the Liquidation Trust Agreement.

Any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity held by the Committee shall be transferred to and shall vest in the Liquidation Trust.  The

- 31 -

Liquidation Trust shall have access to all discovery obtained by the Committee in the Chapter 11 Case, including discovery obtained pursuant to Bankruptcy Rule 2004.

Except as otherwise ordered by the Bankruptcy Court, the Trust Expenses on or after the Effective Date shall be paid in the ordinary course of business in accordance with the Liquidation Trust Agreement without further order of the Bankruptcy Court and without notice to any other party.

The Liquidation Trust shall file annual reports regarding the liquidation or other administration of property comprising the Liquidation Trust Assets, the distributions made by it and other matters required to be included in such report in accordance with the Liquidation Trust Agreement.  In addition, the Liquidation Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

The Liquidation Trust Interests are not intended to constitute "securities."  To the extent the Liquidation Trust Interests are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act or other applicable law.  If the Liquidation Trustee determines, with the advice of counsel, that the Liquidation Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act, or other applicable law, then the Liquidation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and to file reports with the SEC to the extent required by applicable law.

The existence of the Liquidation Trust and the authority of the Liquidation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the date on which: (a) all material Liquidation Trust Assets are liquidated and/or monetized in accordance with the Plan; *provided*, *however,* for the avoidance of doubt, that the Liquidation Trustee shall not be required to pursue any Causes of Action or take any other action that the Liquidation Trustee determines, in his discretion, is not likely to yield sufficient additional proceeds to justify further pursuit or action; (b) the funds in the Liquidation Trust have been distributed in accordance with the Plan; and (c) the order closing the Chapter 11 Case is a Final Order.

To the extent that the terms of the Plan with respect to the Liquidation Trust are inconsistent with the terms set forth in the Liquidation Trust Agreement, then the terms of the Plan shall govern.

**This Plan shall be interpreted so as to afford, for the benefit of all Holders of Allowed Claims, the greatest opportunity for maximum recovery by the Liquidation Trustee on the Liquidation Trust Assets and proceeds thereof, Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and proceeds thereof, and rights in and proceeds of any D&O Liability Insurance Policies.  The proceeds of Causes of Action (including, but not limited to, D&O Claims and Tort Claims) are material to the implementation of this Plan and the recoveries to Creditors**.

## H.    Liquidation Trustee

*Appointment of the Liquidation Trustee*.  The Liquidation Trustee shall be selected by the Committee, subject to the consent of AAM, such consent not to be unreasonable withheld, and appointed as of the date of the execution of the Liquidation Trust Agreement.  The identity of the Liquidation Trustee shall be disclosed prior to the Confirmation Hearing as part of the Plan

- 32 -

Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code. The Liquidation Trustee will be compensated by the Liquidation Trust, which compensation shall be disclosed in the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.

*Liquidation Trustee as the Representative of the Debtor's Estate.* On the Effective Date, the Liquidation Trustee shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidation Trust Agreement and the Plan, including the right to: (1) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Liquidation Trust Agreement and the Plan; (2) administer the Liquidation Trust Assets, including prosecuting, settling, abandoning, or compromising any Causes of Action; and (3) employ and compensate professionals and other agents consistent with this **Article V.H** of the Plan.

For the avoidance of doubt, upon the occurrence of the Effective Date, the Liquidation Trustee shall automatically be granted, have, and be vested with exclusive standing and authority to: (i) bring and prosecute any Cause of Action (including, but not limited to, D&O Claims and Tort Claims) in a court of competent jurisdiction; and (ii) negotiate, settle, waive, or otherwise resolve any Causes of Action (including, but not limited to, D&O Claims and Tort Claims); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Causes of Action that seeks recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement.

For the further avoidance of doubt, upon the Effective Date, the Liquidation Trustee shall automatically be: (a) deemed a representative of the Debtor and the Estate with respect to all applicable Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and any related D&O Liability Insurance Policies; and (b) granted and have the right to control any and all privileges and protections on behalf of the Debtor, the Committee and the Estate with respect to all applicable Causes of Action (including, but not limited to, D&O Claims and Tort Claims). Nothing in this Plan shall require the Liquidation Trustee to prosecute or pursue any Causes of Action.

*Powers of the Liquidation Trustee.* The Liquidation Trustee shall be a representative of the Debtor's Estate and shall, subject to the terms of the Liquidation Trust Agreement, have the power to make all decisions with respect to the Liquidation Trust Assets, including prosecution, negotiation, waiver, and/or settlement of any Causes of Action (including, but not limited to, D&O Claims and Tort Claims); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Causes of Action asserted against other Entities that seeks recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement. Unless otherwise provided in the Plan, the Confirmation Order or the Liquidation Trust Agreement, the duties and powers of the Liquidation Trustee shall include the following (without need of further Court approval):

(i)     To implement this Plan, including any other powers necessary or incidental thereto;

(ii)     To exercise all power and authority that may be exercised, to commence, pursue, abandon, and/or settle all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtor or the Committee prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, manager or trustee of the Debtor with like effect as if authorized, exercised, and taken by unanimous action of such

- 33 -

officers, directors, managers and trustees, including consummating the Plan and all transfers thereunder on behalf of the Debtor;

(iii)    To wind-up the affairs of the Debtor to the extent necessary as expeditiously as reasonably possible, including by filing final cost reports and taking such other actions as are necessary after the Effective Date to bring about an orderly wind-down of the Debtor's operations;

(iv)    To take all actions as may be necessary or appropriate to pursue and consummate: (a) the transactions and obligations contemplated by the MTA and the MSA, or the asset purchase agreements attached thereto, (b) enforce the rights of the Debtor, the Committee, and the Liquidation Trustee (as representative of the Debtor and its Estate) pursuant to any Conforming Escrow Agreement, or (c) a Liquidation Transaction;

(v)    To maintain and use the Debtor's existing accounts and/or to close any such accounts and transfer all amounts therein to one or more accounts in, accordance with the Plan, or to invest some or all of the funds that would otherwise be deposited into such accounts in allowed investments under applicable non-bankruptcy law;

(vi)    To make distributions to Holders of Allowed Claims, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Debtor or the Liquidation Trust;

(vii)    To use, manage, sell, lease, license, abandon, convert to Cash, and/or otherwise dispose of the Liquidation Trust Assets for the purpose of making distributions, including distributions of Distributable Assets and Net Distributable Assets, and fully consummating the Plan;

(viii)    To take all steps necessary to terminate the corporate existence of the Debtor and to wind-up and close the Liquidation Trust;

(ix)    To prosecute objections to Claims, including Administrative Expense Claims, and compromise, settle, and/or litigate any such Claims (Disputed or otherwise); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement;

(x)    To investigate and prosecute any and all Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and compromise, settle, waive, and/or litigate any Causes of Action (including, but not limited to, D&O Claims and Tort Claims); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Causes of Action asserted against other Entities that seeks recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement;

(xi)    To prepare and file tax returns for the Debtor and the Liquidation Trust to the extent required by law;

(xii)    To employ and compensate any and all such professionals and agents as the Liquidation Trustee, in his or her sole discretion, deems reasonably necessary to perform his or her duties under the Plan, without further order of the Bankruptcy Court;

- 34 -

(xiii)    To satisfy and pay all Trust Expenses;

(xiv)    To obtain, renew, replace, or supplement insurance policies and to pay any associated obligations, including the payment of associated premiums, and to exercise any other power or authority necessary or incidental thereto;

(xv)    To participate in or File any post-Effective Date motion(s) to amend or modify this Plan or the Liquidation Trust Agreement, or any appeal(s) of the Confirmation Order;

(xvi)    To participate in or File any action to enforce or interpret this Plan;

(xvii)    To bind the Liquidation Trust; and

(xviii)    To take all other actions not inconsistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable in connection with the administration or implementation of the Plan, including filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Case.

*Liquidation Trustee as Successor in Interest to the Debtor and Committee.* Upon the Effective Date, the Liquidation Trustee is the successor in interest to the Debtor and the Committee, and thus, as of and after the Effective Date, to the extent this Plan requires an action by the Debtor or the Committee, the action shall be taken by the Liquidation Trustee on behalf of the Debtor and the Committee, as applicable.

## I.    Liquidation Trust Beneficiaries

Each of the Liquidation Trust Beneficiaries shall be recorded and set forth in a schedule maintained by the Liquidation Trustee expressly for such purpose based upon its Allowed Claim.

The ownership of Liquidation Trust Interests shall not entitle any Liquidation Trust Beneficiary to any title in or to the Liquidation Trust Assets, any right to call for a partition or division of such Liquidation Trust Assets, or any right to require an accounting, except as may be specifically provided herein. Ownership of a Liquidation Trust Interest (a) shall be noted in the books and records of the Liquidation Trust and (b) shall not be evidenced by any certificate, note, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee.

As set forth in more detail in the Liquidation Trust Agreement, the Liquidation Trust Interests may not be transferred, sold, assigned, hypothecated, or pledged, except as they may be assigned or transferred by will, intestate succession, or operation of law.

## J.    Liquidation Trust Oversight Committee

The Liquidation Trust Oversight Committee shall be comprised of not less than three (3) members, who shall be designated by the Committee, *provided*, *however*, that AAM shall have the right to serve as one of the members of the Liquidation Trust Oversight Committee. The identity of the members of the Liquidation Trust Oversight Committee shall be disclosed as part of the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.

10288062

The Liquidation Trust Oversight Committee shall oversee the Liquidation Trust and consult with the Liquidation Trustee, as set forth herein and in the Liquidation Trust Agreement.[2] The Liquidation Trustee shall report to the Liquidation Trust Oversight Committee from time to time regarding the performance of his or her duties. The members of the Liquidation Trust Oversight Committee shall be reimbursed for all reasonable expenses incurred in the performance of their duties under the Plan and the Liquidation Trust Agreement.

The duties and powers of the Liquidation Trust Oversight Committee shall terminate upon final resolution of the Liquidation Trust Assets and distribution of the proceeds thereof or as otherwise provided in the Liquidation Trust Agreement.

## K.    Source of Funding / Net Distributable Assets

The source of all distributions and payments under the Plan will be the Distributable Assets and the proceeds thereof. Distributions to the Holders of Liquidation Trust Interests will be funded entirely from Liquidation Trust Assets consisting of Net Distributable Assets.

The Liquidation Trustee, in his or her discretion, shall have the authority to allocate and reallocate Liquidation Trust Assets (including Cash, and including with respect to any reserves provided for under this Plan) as necessary to effectuate the Plan without further notice to any party, action, approval, or order of the Bankruptcy Court, to the extent such allocation or reallocation would not be inconsistent with the terms of this Plan; *provided*, *however*, that the Liquidation Trustee may, but is not required to, apply to the Bankruptcy Court on notice to the parties included on the Post-Effective Date Notice List prior to making any such allocation or reallocation. In the event that the Liquidation Trustee determines that effectuation of the Plan or an equitable distribution to Holders of Allowed Claims requires allocation or reallocation of Liquidation Trust Assets in a manner that would otherwise be inconsistent with any term of this Plan (including for the purposes of distribution under the Plan), the Liquidation Trustee shall have the authority to make such allocation or reallocation with approval of the Bankruptcy Court upon application to the Bankruptcy Court on notice to parties included on the Post-Effective Date Notice List.

## L.    Distribution of Liquidation Trust Interests

Upon the Effective Date, Liquidation Trust Interests shall be distributed to Holders of Allowed General Unsecured Claims.

Certain Liquidation Trust Interests shall be reserved for Holders of Disputed General Unsecured Claims and held by the Liquidation Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Disputed General Unsecured Claims.

## M.    Distribution of Net Distributable Assets

Plan Distributions, if any, to be made to Liquidation Trust Beneficiaries shall be made solely from the Liquidation Trust Assets.

---

[2] For the avoidance of doubt, the Liquidation Trust Oversight Committee's powers shall be limited to supervision and consultation, without any consent or direction rights.

10288062

If the distribution to be received by the Holder of an Allowed General Unsecured Claim would be less than fifty dollars ($50.00) on any distribution date or in the aggregate, at the discretion of the Liquidation Trustee, no such payment will be made to such Holder.

**N.    Disputed Claims Reserve**

The Liquidation Trustee shall maintain a Disputed Claims Reserve pending Allowance or Disallowance of Disputed Claims, and shall withhold such Cash from distributions to Holders of Allowed General Unsecured Claims.  The Liquidation Trustee, in the Liquidation Trustee's discretion, on and after the Effective Date, shall have authority to increase or decrease the Disputed Claims Reserve, as reasonably necessary and appropriate.  Upon the Final Distribution Date, the Liquidation Trustee shall distribute any Cash remaining in the Disputed Claims Reserve to Holders of Allowed General Unsecured Claims in accordance with the allocations set forth in this Plan and the Liquidation Trust Agreement.

**O.    Objections to Claims**

From and after the Effective Date, the Liquidation Trustee shall have the exclusive authority, right, and standing (but shall not be obligated) to: (i) object to and contest the allowance of any and all Claims; (ii) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed, without further notice to any party, or action, approval, or order of the Bankruptcy Court; and (iii) litigate to final resolution objections to Claims; *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement. The failure of any party to object to any Claim in the Chapter 11 Case prior to the occurrence of the Effective Date shall be without prejudice to the right of the Liquidation Trustee to contest, object to, or otherwise defend against such Claim.

**No Plan Distribution shall be made to a Holder of a Claim Disputed or otherwise, unless and until such Claim is or becomes an Allowed Claim.**

All objections to Claims shall be Filed with the Bankruptcy Court, and served upon the Holders of such Claims, on or before the one hundred twentieth (120th) day after the Effective Date.  The time period for filing objections to Claims shall automatically renew for successive periods of one hundred twenty (120) days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Bankruptcy Court upon motion of the Liquidation Trustee or a Holder of a Claim.

Until such time as an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Plan Distributions.  The Holder of an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim will be entitled to a Plan Distribution only when and if such unliquidated or contingent Claim becomes an Allowed Claim.

- 37 -

**P.     Surcharge Under Section 506(c) of the Bankruptcy Code**

All rights of Holders of Secured Claims under this Plan are subject to the rights of the Debtor, the Committee and/or the Liquidation Trustee to surcharge the applicable Collateral pursuant to section 506(c) of the Bankruptcy Code, which rights are expressly preserved.

**Q.     Disallowance of Untimely Claims**

Any Claim for which a Bar Date has been established that is not timely Filed or otherwise asserted as directed on or before the applicable Bar Date shall: (a) be forever Disallowed, barred, and expunged in its entirety; and (b) not be enforceable against the Debtor, the Estate, the Liquidation Trust, and/or the Liquidation Trustee, all without further notice to any party, or action, approval, or order of the Bankruptcy Court, irrespective of whether such Claim was Filed prior to, on, or following the Confirmation Date.  Except as otherwise agreed by the Liquidation Trustee, any and all Holders of Claims for which a Bar Date has been established that is not timely Filed or otherwise asserted as directed on or before the applicable Bar Date shall not be treated as Creditors for purposes of voting and distribution pursuant to Bankruptcy Rule 3003(c)(2).

**R.     Claims Paid or Payable by Third Parties and Insured Claims**

        1.     Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be Disallowed without a Claim objection having to be Filed and without further notice to any party, or action, approval, or order of the Bankruptcy Court, to the extent that the Holder of such Claim received payment in full on account of such Claim from a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee.  To the extent a Holder of a Claim receives a Plan Distribution on account of such Claim and receives payment from a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee on account of such Claim, such Holder shall, within two weeks of such Holder's receipt thereof, repay the distribution to the Debtor or the Liquidation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim determined as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtor or the Liquidation Trustee, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each day after the two-week grace period specified above until the amount is repaid.

        2.     Claims Payable by Third Parties

No Plan Distribution shall be made on account of an Allowed Claim that is payable by a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee, including pursuant to any insurance policy, until the Holder of such Allowed Claim has exhausted all remedies with respect to such third party or insurance policy.  To the extent that one or more of the Debtor's insurers or another third party agrees to satisfy in full or in part an Allowed Claim, then immediately upon such agreement, the applicable portion of such Claim may be Disallowed and expunged without a Claim objection having to be Filed and without further notice to any party, or action, approval or order of the Bankruptcy Court.  Unless and until the Holder of a Claim that is payable by a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee exhausts all remedies with respect to such third party of insurance policy, such Claim shall be deemed estimated at zero dollars ($0) for

- 38 -

10288062

all purposes of the Plan and Liquidation Trust Agreement without further notice to any party, or action, approval or order of the Bankruptcy Court.

3. <u>Special Issues Regarding Insured Claims</u>

Under the terms of the Debtor's various insurance policies, the Debtor may owe a deductible amount or self-insured retention obligation on account of Insured Claims. After the Effective Date of the Plan (unless an applicable order modifying the automatic stay has been entered at an earlier date), Holders of Insured Claims shall be enjoined by the injunctions established by the Confirmation Order and this Plan from commencing or continuing any action to assert or collect any alleged Claims relating to any deductible or self-insured retention obligation against the Debtor, its Estate, and the Liquidation Trust.

The Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtor's insurers under their policies, and the Debtor's insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtor, the existence, primacy, and/or scope of available coverage under any alleged applicable policy. The Plan shall not operate as a waiver of any other Claims that the Debtor's insurers have asserted or may assert in any Proof of Claim, or the rights and defenses of the Debtor, the Estate, or the Liquidation Trust to such Claims.

**S.** **Preservation of Causes of Action**

Except as provided in **Articles X and XI** hereof, nothing contained in this Plan shall be deemed a waiver or relinquishment of any claims or Causes of Action of the Debtor or the Estate that are not settled with respect to Allowed Claims or specifically waived or relinquished by this Plan, which shall vest in the Liquidation Trust (collectively, along with the proceeds thereof, the "<u>Retained Causes of Action</u>"). The Retained Causes of Action preserved hereunder include, without limitation, the following claims, rights, or other causes of action:

(i)    claims and Causes of Action (including, but not limited to, Tort Claims and D&O Claims), against the Excluded Parties and/or any other party not expressly released or enjoined under this Plan;

(ii)    Avoidance Actions;

(iii)    relating to pending litigation, including, without limitation, the suits, administrative proceedings, executions, garnishments, and attachments listed in the Debtor's Schedules;

(iv)    against vendors, suppliers of goods or services (including attorneys, accountants, consultants, or other professional service providers), utilities, contract counterparties, and other parties for, including but not limited to: (A) services rendered; (B) over- and under-payments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, setoff, or recoupment; (C) failure to fully perform or to condition performance on additional requirements under contracts with the Debtor; (D) wrongful or improper termination, suspension of services, or supply of goods, or failure to meet other contractual or regulatory obligation; (E) indemnification and/or warranty claims; or (F) turnover Causes of Action arising under §§ 542 or 543;

10288062

(v)     against health plans, payors, and other related providers;

(vi)    related to third-party non-Debtor's violations of antitrust, unfair competition, or similar laws;

(vii)   against landlords or lessors, including, without limitation, for erroneous charges, overpayments, returns of security deposits, indemnification, or for environmental claims;

(viii)  arising against current or former tenants or lessees, including, without limitation, for non-payment of rent, damages, and holdover proceedings;

(ix)    arising from damage to the Debtor's property;

(x)     relating to claims, rights, or other Causes of Action the Debtor may have to interplead third parties in actions commenced against the Debtor;

(xi)    for collection of a debt or other amount owed to the Debtor;

(xii)   against insurance carriers, reinsurance carriers, underwriters, surety bond issuers or other related or similar parties relating to coverage, indemnity, contribution, reimbursement, or other matters; and

(xiii)  arising under or relating to the MSA or the MTA, the asset purchase agreements attached thereto, or any Conforming Escrow Agreement, including, but not limited to, enforcement of such agreements and/or any breaches of such agreements.

**Except as otherwise expressly provided in the Plan, any and all claims and Causes of Action of the Debtor and the Estate are preserved under the Plan.**

## T.     Release of Liens, Claims, and Security Interests

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, security interests, mortgages, deeds of trust, or other interests in or against the property of the Estate will be fully released, terminated, extinguished, and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification, or other action by any Entity or any director, stockholder, securityholder, manager, member, trustee or partner (or board thereof) of any Entity.  Any Entity holding such Liens or interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Liquidation Trustee such instruments of termination, release, satisfaction, and/or assignment (in recordable form) as may be reasonably requested by the Liquidation Trustee.  Nothing contained in this Plan shall revive, preserve, or transfer any Claims or Liens that have been released pursuant to any prior order of the Bankruptcy Court.

## U.     Cancellation of Securities, Certificates and Instruments

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, notes, instruments, debentures,

10288062

certificates, Securities, and other documents evidencing any prepetition Claim against the Debtor and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, inoperative and of no force or effect.

**V.      Dissolution of Debtor; Final Decree**

At any time following the Effective Date, the Liquidation Trustee, on behalf of the Debtor, shall be authorized to File a motion for the entry of a final decree closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code. Upon entry of such final decree, the Debtor shall be deemed dissolved without further order of the Bankruptcy Court or action by the Liquidation Trustee, including the filing of any documents with the secretary of state or any other government agency.

**W.      Treatment of Vacant Classes**

Any Claim in a Class that is considered vacant under **Article III.C** of this Plan shall receive no Plan Distribution.

**ARTICLE VI.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases**

On or before the Confirmation Date, Buyer may provide by written notice to the Debtor and the Committee a list of Designated Contracts to be assumed by the Debtor and assigned to the Buyer upon the Effective Date, subject to the Buyer's payment, prior to the Effective Date, to the counterparty to such Designated Contract of the Cure Costs.

Any Designated Contract with respect to which Buyer has not paid the respective Cure Costs directly to its counterparty shall be deemed rejected on the Effective Date.

Buyer's payment of Cure Costs shall not be credited towards, or otherwise reduce or alter in any way, AAM's obligation to pay the Liquidation Trustee the AAM Cash Contribution.

The Debtor shall have no obligation to assume or assign any executory contract or unexpired lease that is not a Designated Contract.

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, *except* for those Executory Contracts and Unexpired Leases that:

1.      have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto;

2.      have been assumed by order of the Bankruptcy Court;

3.      are the subject of a motion to assume or motion to reject pending on the Effective Date;

- 41 -

4.      are identified as a Designated Contract in the Plan Supplement, and, with respect to such Designated Contract, Buyer has paid, prior to the Effective Date, to the counterparty to such Designated Contract the Cure Costs thereof; or

5.      are explicitly assumed pursuant to the terms of this Plan.

Notwithstanding the foregoing, in the event that (a) the MTA has been terminated and (b) the Committee or the Liquidation Trustee determines in good faith that one or more Executory Contracts or Unexpired Leases of the Debtor are critical to preserving the viability of pursuing and consummating an alternative reopening transaction post-Effective Date, the Committee or the Liquidation Trustee, as applicable, shall have the authority to designate such Executory Contracts or Unexpired Leases as "Reopening Optionality Agreements," in which case the Committee or the Liquidation Trustee, as applicable, shall have until sixty (60) days after the Effective Date to determine whether to assume or reject such Reopening Optionality Agreements.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtor's assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

For the avoidance of doubt, the Debtor shall not assume any prepetition indemnity obligations to their directors, officers, trustees and managers.

**B.      Claims on Account of the Rejection of Executory Contracts or Unexpired Leases**

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the Effective Date or such other date set by Final Order. The Debtor, the Committee or the Liquidation Trust will provide notice of such rejection (which may be made in the same notice as the occurrence of the Effective Date) and specify the appropriate deadline for the filing of such Proof of Claim.

Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped, and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtor, the Estate, the Liquidation Trustee, or the Liquidation Trust, and the Debtor, the Estate, the Liquidation Trustee, the Liquidation Trust and all of their property will be forever discharged from any and all indebtedness and liability with respect to such Claim, unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan, without further notice to any party, or action, approval, or order of the Bankruptcy Court. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in **Article XI.C** of the Plan. Notwithstanding the foregoing, to the extent that any such Claim is or was subject to a previously established Bar Date in the Chapter 11 Case, such previously established Bar Date shall be deemed operative and will not be deemed extended by virtue

- 42 -

of this **Article VI.B**.  All claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

**C.     Preservation and Vesting of D&O Liability Insurance Policies**

Notwithstanding anything to the contrary in the Plan, as of the Effective Date, all rights of the Debtor and its Estate in the D&O Liability Insurance Policies are fully and expressly preserved under the Plan.  Confirmation and effectiveness of the Plan will not discharge, impair, or otherwise modify any rights of the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or any other beneficiary under the D&O Liability Insurance Policies.  On the Effective Date, the D&O Liability Insurance Policies and the proceeds thereof (subject in all cases to the terms of the D&O Liability Insurance Policies or the rights of any other beneficiaries therein) shall automatically vest in the Liquidation Trust and shall be a Liquidation Trust Asset.  For the avoidance of doubt, the D&O Liability Insurance Policies are not Executory Contracts and are neither assumed nor rejected under the Plan.

The Confirmation Order shall constitute a determination that no default by the Debtor exists with respect to any of the D&O Liability Insurance Policies and that nothing in any prior order, any prior agreements, or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the D&O Liability Insurance Policies or any coverage thereunder with regard to any Causes of Action (including, but not limited to, the D&O Claims and Tort Claims), or claims, interests, or rights of the Debtor, the Estate, the Liquidation Trustee, or the Liquidation Trust. The Plan shall be liberally construed to protect the interests of all Creditors in all Causes of Action (including, but not limited to, D&O Claims and Tort Claims), and to limit any Claims against the Estate.

Nothing in this Plan shall diminish, impair, or otherwise affect (i) rights of the Debtor's current or former directors, officers, trustees, managers, or any other Person covered under the D&O Liability Insurance Policies, or (ii) payments from the proceeds or the enforceability of any D&O Liability Insurance Policies that may cover (a) claims by the Debtor, or (b) claims against the Debtor or covered Persons thereunder.

**ARTICLE VII.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.     Dates of Distributions**

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim), or as soon as reasonably practicable thereafter, each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions provided in the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

10288062

Upon the Effective Date, all debts of the Debtor shall be deemed fixed and adjusted pursuant to the Plan and the Debtor and the Liquidation Trust shall have no liability on account of any Claims except as set forth in the Plan and in the Confirmation Order.  All payments and all distributions made by the Liquidation Trustee or the Distribution Agent under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the Debtor.

**B.**     **Distribution Agent**

Except as provided herein, all Plan Distributions shall be made by the Liquidation Trustee or the Distribution Agent.  The Liquidation Trustee or the Distribution Agent shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

The Liquidation Trustee and the Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform their duties under the Plan; (b) make all distributions contemplated hereby; (c) employ transfer agents and registrars to represent them with respect to their responsibilities; and (d) exercise such other powers as may be vested in the Liquidation Trustee and the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Liquidation Trustee and the Distribution Agent to be necessary and proper to implement the provisions hereof.

**C.**     **Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Liquidation Trustee, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**D.**     **Rounding of Payments**

Whenever payment or distribution of a fraction of a dollar of value whether in the form of Cash or Securities would otherwise be called for, the actual payment or distribution may, at the discretion of the Liquidation Trustee, reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one-half of one dollar and a rounding up of such fraction to the nearest whole dollar if the amount is one-half or more of one dollar.

**E.**     **Distributions on Account of Claims Allowed After the Effective Date**

Except as otherwise agreed by the Holder of a particular Claim or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order.  Plan Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**F.**     **General Distribution Procedures**

The Liquidation Trustee or the Distribution Agent shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise.  All Cash and other

property held by the Liquidation Trustee for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

**G.    Address for Delivery of Distributions**

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth on any Proofs of Claim Filed by such Holders (to the extent such Proofs of Claim are Filed in the Chapter 11 Case), (2) at the addresses set forth in any written notices of address change delivered to the Liquidation Trustee, or (3) at the addresses in the Debtor's or the Liquidation Trust's books and records.

**H.    Undeliverable Distributions, Unclaimed Property, and De Minimis Distribution**

If the distribution to the Holder of any Allowed Claim is returned to the Debtor or the Liquidation Trust as undeliverable, no further distribution shall be made to such Holder, and the Liquidation Trustee shall have no obligation to make any further distribution to the Holder, unless and until the Liquidation Trustee is notified in writing of such Holder's then-current address. The Liquidation Trustee shall have no independent obligation to check or identify a current mailing address for any Holder of an Allowed Claim. Subject to the terms of this Plan, undeliverable distributions shall remain in the possession of the Liquidation Trustee until such time as a distribution becomes deliverable.

Any Entity that fails to claim any Cash or Securities within ninety (90) days from the date upon which a Plan Distribution is first made to such Entity shall forfeit all rights to any distribution under the Plan. Entities that fail to claim Cash or Securities under the Plan shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or against any Holder of an Allowed Claim to whom Plan Distributions are made by the Liquidation Trustee. Undeliverable Cash and Securities shall not be entitled to any interest, dividends, or other accruals of any kind. Any check that is not cashed or otherwise deposited within ninety (90) days after the check's date shall be deemed an undeliverable distribution under this Plan.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable distribution within ninety (90) days after the first attempted delivery shall have its Claim for such undeliverable distribution expunged and shall be forever barred from asserting any such Claim against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or their respective property. In such cases, any Cash held for distribution on account of such Claims shall be property of the Liquidation Trust, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan. Nothing contained in the Plan shall require the Liquidation Trustee to attempt to locate any Holder of an Allowed Claim. Similarly, checks or drafts issued pursuant to this Plan to Persons holding Allowed Claims and not presented for payment within ninety (90) days following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter. Any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, and their property. Any distribution which is deemed nonnegotiable shall re-vest in the Liquidation Trust and be available for distribution consistent with the Plan.

If the distribution to be received by the Holder of an Allowed General Unsecured Claim would be less than fifty dollars ($50.00) on any distribution date or in the aggregate, at the discretion of the Liquidation Trustee, no such payment will be made to such Holder.

- 45 -

### I.     Distributions to be Applied First to Administrative and Priority Claims

To the extent any Holder of an Allowed Claim receives any Plan Distribution(s) from the Liquidation Trustee or Liquidation Trust on account of Claims with more than one level of priority, such distribution(s) shall be applied by the recipient first to satisfy any Allowed Administrative Expense Claims, Allowed Priority Tax Claims, or Other Priority Claims of the recipient against the Debtor which are entitled to priority under Bankruptcy Code sections 503 or 507 (in accordance with their respective priority under the Bankruptcy Code) and, only after all such priority Claims are fully satisfied, to any Allowed Claims not entitled to such priority.

### J.     Distribution Record Date

Except as otherwise provided in a Final Order of the Bankruptcy Court or as otherwise stipulated by the Debtor or Liquidation Trustee, as applicable, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. The Debtor and Liquidation Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any distribution with respect to any Claim, the Debtor and the Liquidation Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the Proof of Claim Filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are known to the Debtor or the Liquidation Trustee, as applicable, as of the Distribution Record Date.

### K.     Distribution Cap

In no event shall any Holder of an Allowed Claim receive Plan Distribution(s) of an aggregate value exceeding one hundred percent (100%) of the amount of such Holder's Allowed Claim.

### L.     Withholding Taxes

In connection with the Plan, to the extent applicable, the Liquidation Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Plan Distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. The Liquidation Trustee shall be entitled to deduct any U.S. or non-U.S. federal, state, or local withholding taxes from any payments made with respect to Allowed Claims, as appropriate. In the case of a non-Cash distribution that is subject to withholding, the Liquidation Trustee may withhold an appropriate portion of such distributed property and sell such withheld property to generate Cash necessary to pay over the withholding tax. A Holder of an Allowed Claim entitled to receive a Plan Distribution shall not receive any Plan Distribution unless such Holder has provided to the Liquidation Trustee such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Liquidation Trustee to comply with applicable tax reporting and withholding laws (including an IRS Form W-9 or (if the Holder is a non-U.S. Person) an appropriate IRS Form W-8 (unless such Person is exempt from information reporting requirements under the Tax Code)) and so notifies the Liquidation Trustee. If such Holder does not provide such taxpayer identification number and such other information and certification within the time and in the manner set forth in the Liquidation Trust Agreement, such Holder will forfeit its interest in the Liquidation Trust and shall not receive any Plan Distribution. Any amounts withheld pursuant hereto

- 46 -

shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. In connection with any Plan Distribution, the Liquidation Trustee may take whatever actions are necessary to comply with applicable U.S. federal, state, local and non-U.S. tax withholding obligations.

**Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution; and (b) no Plan Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Liquidation Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under this Plan.**

## M.    Setoffs and Recoupment

The Liquidation Trustee may, to the extent permitted under applicable law, setoff or recoup against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights, and Causes of Action of any nature that the Debtor or the Liquidation Trustee may hold against the Holder of such Allowed Claim that are not otherwise waived, released, or compromised in accordance with the Plan; *provided, however*, that neither such a setoff, recoupment, nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trustee of any such claims, rights, and Causes of Action that the Debtor or the Liquidation Trustee possesses against such Holder; *provided*, *further* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trustee of any such Claims, rights, or Causes of Action that the Debtor, the Estate, or the Liquidation Trustee may possess against such Holder. Notwithstanding anything to the contrary in this section, the Plan or the Confirmation Order, the Liquidation Trustee waives any rights to setoff or recoupment against SAMC. Any Holder of an Allowed Claim subject to such setoff or recoupment reserves the right to challenge any such setoff or recoupment in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

## N.    Distributions Free and Clear

Except as otherwise provided herein, any distributions under the Plan shall be free and clear of any Liens, Claims, and encumbrances, and no Entity, including the Debtor, shall have any interest (legal, beneficial, or otherwise) in any property of any of the Estate distributed pursuant to the Plan.

## O.    Lost, Stolen, Mutilated, or Destroyed Securities

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to the Liquidation Trustee or the Distribution Agent: (x) evidence reasonably satisfactory to the Liquidation Trustee or the Distribution Agent of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be required by the Liquidation Trustee or the Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed

- 47 -

Claim. Upon compliance with this **Article VII.O** of the Plan as determined by the Debtor or the Liquidation Trustee by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to the Liquidation Trustee and the Distribution Agent.

**ARTICLE VIII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

**A.    Disputed Claims**

The Liquidation Trustee may, in his or her discretion, File with the Bankruptcy Court an objection to the allowance of any Claim or any other appropriate motion or adversary proceeding with respect thereto. All such objections, and any objection to the allowance of any Claim Filed by the Debtor or the Committee and not resolved prior to the Effective Date, may be litigated to Final Order by the Liquidation Trustee. The Liquidation Trustee may compromise, settle, withdraw, or resolve any objection to any Claim without further order of the Bankruptcy Court. Unless otherwise provided in the Plan, the Confirmation Order, or the Liquidation Trust Agreement, the Liquidation Trustee is authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan; *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement.   Under no circumstances will any distributions be made on account of Disallowed Claims. The Liquidation Trustee is under no obligation to object to the allowance of any Claim. Further, to the extent that there are no Assets available to make a distribution to the Holder of such Claim or such Class of Claims under the Plan or the cost of any objection is reasonably believed by the Liquidation Trustee to exceed the anticipated distribution on such Claim or such Class of Claims, then the Liquidation Trustee is under no obligation to object to the allowance of such Claim or Class of Claims.

**B.    Procedures Regarding Disputed Claims**

Notwithstanding any provision in the Plan to the contrary, except as otherwise agreed by the Liquidation Trustee, in the Liquidation Trustee's sole discretion, no partial payments and no partial distributions will be made with respect to a Disputed Claim, even if a portion of the Claim is not Disputed, or any Claim that has otherwise not been Allowed until such disputes are resolved by Final Order or a settlement or stipulation between the Debtor or Liquidation Trustee and the Holder of the Claim, or some portion of the Claim, has been Allowed. In the event there is a Disputed Claim or Claim that has otherwise not been Allowed requiring adjudication and resolution, the Liquidation Trustee reserves the right to establish appropriate reserves for potential payment of such Claim. To the extent a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan, without any interest to be paid on account of the time period during which such Claim was a Disputed Claim. No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

10288062

**C.    Allowance of Claims**

Following the date on which a Disputed Claim becomes an Allowed Claim after the Initial Distribution Date, the Liquidation Trustee shall pay directly to the Holder of such Allowed Claim, as soon as reasonably practicable, the amount provided for under the Plan, as applicable, and in accordance therewith.

1.    Allowance of Claims

Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Liquidation Trustee will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor or its Estate had with respect to any Claim immediately before the Effective Date, except with respect to any Claim deemed Allowed under the Plan or by orders of the Bankruptcy Court. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim will become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim.

2.    Prosecution of Objections to Claims

From and after the Effective Date, unless otherwise provided in the Plan, the Confirmation Order, or the Liquidation Trust Agreement, the Liquidation Trustee will have the sole authority to File objections to Claims and settle, compromise, withdraw, or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in an Unimpaired Class or otherwise. From and after the Effective Date, the Liquidation Trustee may settle or compromise any Disputed Claim without any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement. The Liquidation Trustee will have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Estimation

The Liquidation Trustee may, at any time and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously Filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection. Any order of the Bankruptcy Court that estimates a Disputed Claim pursuant to the Plan shall irrevocably constitute and be a conclusive and final determination of the Allowed amount of such Claim or the maximum allowable amount of such Claim, if any, as set forth by the Bankruptcy Court. Accordingly, the Holder of a Disputed Claim that is estimated by the Bankruptcy Court pursuant to the Plan will not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or actual determination of the allowed amount of such Disputed Claim or otherwise, and the Holder of such Claim shall not have recourse to the

- 49 -

Liquidation Trustee in the event the allowed amount of the Claim of such Holder is at any time later determined to exceed the estimated maximum allowable amount. The rights and objections of all parties are reserved in connection with any such estimation proceeding.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.**     **Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of **Article IX.B** of the Plan:

a.     The Plan and Plan Supplement and all schedules, documents, supplements, and Exhibits to the Plan will have been Filed by the Plan Proponent;

b.     The Confirmation Order, in form and substance reasonably acceptable to the Plan Proponent shall have been entered and shall be in full force and effect, and shall not have been reversed, stayed, modified, or vacated on appeal;

c.     The Confirmation Order shall contain a finding that the Plan constitutes a "Conforming Plan" within the meaning ascribed to such term in the MTA.

d.     The Liquidation Trustee shall have accepted, in writing, the terms of the Liquidation Trustee's service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

e.     The Liquidation Trust shall have been established;

f.     If the MTA has not been validly terminated, AAM shall have deposited into the Escrow Account an amount sufficient such that the Initial Contribution held in the Escrow Account as of the Effective Date is no less than $15 million;

g.     Unless the MTA was terminated on or before the Commitment Deadline, the Confirmation Order shall provide that the AAM Contribution Lien was valid and perfected as of the date immediately following the Commitment Deadline; *provided*, that the AAM Contribution Lien shall be subordinated to any Lien granted to HCAI in connection with any loan of DHLP Funds;

h.     With respect to all other documents and agreements necessary to implement the Plan: (1) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such documents and agreements shall have been tendered for delivery to the required parties and have been approved by any required parties and, to the extent required, filed with and approved by the applicable authorities in the relevant jurisdiction; and (3) such documents and agreements shall have been effected or executed;

i.     There shall be no ruling, judgment, or order issued by any Governmental Unit making illegal, enjoining, or otherwise preventing or prohibiting the Consummation of the

10288062

Plan, unless such ruling, judgment, or order has been stayed, reversed, or vacated within three (3) Business Days after such issuance; and

j.       All other actions, authorizations, consents, and regulatory approvals required (if any) and necessary to implement the provisions of the Plan shall have been obtained, effected, or executed in a manner acceptable to the Plan Proponent or, if waivable, waived by the Person or Persons (or Entity or Entities) entitled to the benefit thereof.

**B.       Waiver of Conditions**

The conditions to Consummation of the Plan set forth in this **Article IX** may be waived by Plan Proponent, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.  The failure of the Plan Proponent to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

**C.       Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**D.       Effect of Non-Occurrence of Conditions to Consummation**

If the Consummation of the Plan does not occur, upon the Plan Proponent's filing of a notice on the docket of the Bankruptcy Court, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will:  (a) constitute a waiver or release of any claims by or Claims against the Debtor; (b) prejudice in any manner the rights of the Debtor, the Committee, any Holders, or any other Entity; (c) constitute an allowance of any Claim; or (d) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, the Committee, any Holders, or any other Entity in any respect.

## ARTICLE X.
## LIMITATION ON LIABILITY AND RELATED PROVISIONS

**A.       General**

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification, and treatment of all Allowed Claims and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, unless specifically provided otherwise in this Plan or the Liquidation Trust Agreement, after the Effective Date the Liquidation Trustee may, in his or her sole and absolute discretion, (1) compromise and settle Claims against the Debtor, and (2) compromise and settle Causes of Action against other Entities; *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 and settlement of any Causes of Action asserted against other Entities that seeks

- 51 -

recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement.

**B.      Release of SAMC**

Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, for good and valuable consideration, on and after the Effective Date, SAMC is expressly, unconditionally, generally and individually and collectively released, acquitted and discharged by the Debtor and its Estate from any and all actions, claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims or claims for recharacterization, subordination, or avoidance of the SAMC Secured Obligations, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and SAMC, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by SAMC on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

**C.      Limitation on Liability of Liquidation Trustee**

The Liquidation Trustee, the Liquidation Trust Oversight Committee, and the individual members of Liquidation Trust Oversight Committee will not be liable for any act they may do or omit to do as in such capacity under the Plan and the Liquidation Trust Agreement, as applicable, while acting in good faith and in the exercise of their reasonable business judgment; nor will any of them be liable in any event except for gross negligence, willful misconduct, or fraud as determined by a Final Order of a court of competent jurisdiction. The foregoing limitation on liability also will apply to any Person or Entity employed by any such party (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such party in the fulfillment of their respective duties hereunder or under the Liquidation Trust Agreement. Also, the Liquidation Trustee, the Liquidation Trust Oversight Committee (and its individual members), and any Person or Entity employed by such parties (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such a party shall be entitled to indemnification out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being employed by such party, or for performing any functions incidental to such service.

10288062

**D.**     **Reserved**

# ARTICLE XI.
## EXCULPATION AND INJUNCTION

**A.**     **No Discharge**

Nothing contained in this Plan shall be deemed to constitute a discharge of the Debtor under section 1141(d)(3) of the Bankruptcy Code. However, no Holder of a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Plan other than Assets required to be distributed to that Holder pursuant to the Plan.  As of the Confirmation Date, all Persons and Entities are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

**B.**     **Exculpation**

Except as otherwise specifically provided in the Plan, the Exculpated Parties will neither have nor incur any liability to any Entity or Person for any claims or Causes of Action arising between the Petition Date and the Effective Date for any act taken or omitted to be taken in connection with, or related to the Chapter 11 Case, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, pursuing, or effecting the Consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, pursuing confirmation of the Plan, or soliciting votes on the Plan and the Exculpated Parties shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; *provided, further*, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action, or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

**C.**     **Injunction**

**Except as otherwise provided in the Plan, from and after the Effective Date, all Entities and Persons who have held, hold, or may hold Claims against the Debtor or its Estate, are permanently enjoined from taking any action in furtherance of such Claim and/or any other cause of action released and/or discharged under the Plan, including, without limitation, the following actions: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets with respect to any such Claim and/or other cause of action, or taking any act to recover such Claim outside of the claims allowance procedures discussed in this Plan, the Bankruptcy Code and Bankruptcy Rules; (ii) creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien, security interest or encumbrance of any kind against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets on account of any such Claim and/or other cause of action; (iii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means,**

- 53 -

whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or other cause of action; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due from or to the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets, or against the property or interests in property of the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or other cause of action; *provided, however,* that any rights of recoupment asserted by the California Department of Health Care Services against the Debtor or the Estate and any rights and defenses of the Debtor, the Estate, the Liquidation Trust and the Liquidation Trustee with respect thereto are fully preserved; *provided, further*, that solely with respect to the Debtor, the Debtor's property, and the Debtor's Estate, the foregoing injunction shall remain in effect only until both (a) the Chapter 11 Case has been closed and (b) all assets of the Debtor's Estate and the Liquidation Trust Assets have been fully administered; *provided further, however*, that such injunction shall be revived and/or remain in effect, as applicable, to the extent that the Chapter 11 Case is reopened for any reason, until the Chapter 11 Case is closed and the other conditions for termination of the injunction set forth in this paragraph have been satisfied. By accepting Plan Distributions, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions in the Plan. Such injunctions shall extend for the benefit of the Liquidation Trustee, any successors of the Debtor, and to property and interests in property subject to this Plan. All injunctions or stays provided for in the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date. The injunction in this paragraph shall apply only to actions against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, and/or the Liquidation Trust Assets.

From and after the Effective Date, to the extent of the Exculpations and limitations of liability granted in this Plan, all Persons and Entities shall be permanently enjoined from commencing or continuing in any manner against the Exculpated Parties or parties whose liability is limited (collectively, the "Protected Parties"), and their respective assets and properties, as the case may be, any suit, action, or other proceeding on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest, or remedy with respect to which such Protected Parties are exculpated or with respect to which such Protected Parties' liability is otherwise limited.

### ARTICLE XII.
### BINDING NATURE OF PLAN

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR AND EACH AND EVERY SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASE, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

**ARTICLE XIII.**
**RETENTION OF JURISDICTION**

**A.      Retention of Jurisdiction**

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, to the maximum extent permitted by applicable law, retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Liquidation Trust, and this Plan, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, unsecured, or subordinated status of any Claim, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance, priority and secured status of any Claim;

2.      except as may otherwise be limited herein, recover all Assets of the Debtor and property of the Debtor's Estate, wherever located;

3.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Liquidation Trustee shall pay professionals in the ordinary course of business for any work expressly authorized by the Liquidation Trustee after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

4.      resolve any matters related to the MSA and the MTA, the asset purchase agreements attached thereto, any Conforming Escrow Agreement and/or any Liquidation Transaction;

5.      resolve any matters related to: (a) the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to this Plan after the Effective Date; (b) any potential contractual obligation arising under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether or not a contract or lease is or was executory or expired;

6.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

7.      resolve any issues related to any matters adjudicated in the Chapter 11 Case;

8.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and/or 1146 of the Bankruptcy Code;

9.      ensure that Plan Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising under or related to Plan Distributions;

10288062

10.    decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other Causes of Action (including, but not limited to D&O Claims and Tort Claims), or matters that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any motions or applications involving the Debtor that may be pending on the Effective Date or instituted by the Liquidation Trustee after the Effective Date, *provided* that the Liquidation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions, enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures, and other agreements or documents adopted in connection with this Plan, the Plan Supplement, or the Disclosure Statement;

11.    resolve any cases, controversies, suits, disputes, or Causes of Action (including, but not limited to, D&O Claims and Tort Claims), that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's or Person's obligations incurred in connection with this Plan;

12.    issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the Consummation or enforcement of this Plan, except as otherwise provided in this Plan;

13.    enforce the terms and conditions of this Plan, the Confirmation Order, and the Liquidation Trust Agreement;

14.    resolve any cases, controversies, suits, or disputes with respect to the Exculpation, limitations of liability, and other provisions contained in **Articles X and XI** hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such exculpations, injunctions, and other provisions;

15.    enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, limitations of liability, indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed), including, without limitation, resolving any dispute, case, controversy, or suit with respect to whether or not the Debtor is bankrupt or out of business pursuant to any statute including, without limitation, pursuant to 42 CFR 433.312(b) and/or 42 CFR 433.318(e);

16.    approve any settlements or compromises entered into by the Liquidation Trustee;

17.    resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, any applicable Bar Date, the hearing on the approval of the Disclosure Statement, the hearing on the confirmation of the Plan, or for any other purpose;

18.    enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked, or vacated;

19.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order, including the Confirmation Order;

20.    adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code, including without limitation, hearing and determining all disputes involving or relating to any liability arising out of the termination of employment or the termination of any

employee or retirement benefit program, regardless of whether or not such termination occurred prior to the Effective Date;

      21.    resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document adopted or created in connection with this Plan or the Disclosure Statement and to enter and implement such orders as may be necessary or appropriate to execute, implement or consummate any of the foregoing;

      22.    enter a(n) order(s) or decree(s) concluding or closing the Chapter 11 Case;

      23.    issue any order necessary to administer the Estate or the Liquidation Trust; and

      24.    hear and determine any other matter not inconsistent with the Bankruptcy Code.

## B.    Consent to Jurisdiction

All Creditors who have Filed or otherwise asserted Claims in the Chapter 11 Case shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for purposes of the Causes of Action.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

## A.    Dissolution of the Committee

On the Effective Date, except as provided in the immediately following sentence, the Committee shall dissolve automatically and all members thereof shall be released and discharged from all rights, duties, and responsibilities arising from, or related to, the Chapter 11 Case. After the Effective Date, the Committee shall continue in existence for the sole purposes of: (i) filing, objecting to, and/or prosecuting fee applications Filed in the Chapter 11 Case; and (ii) prosecuting any pending motions or applications to which the Committee is a party.

## B.    Payment of Statutory Fees

Prior to the Effective Date, the Debtor shall pay, in full in Cash, any fees due and owing pursuant to 28 U.S.C. § 1930 (including interest under 31 U.S.C. § 3717, if applicable) (the "Statutory Fees") on or before the Effective Date. Notwithstanding anything to the contrary in the Plan, Statutory Fees are not subject to an allowance procedure under 11 U.S.C. § 503(b), nor is the United States Trustee required to file a request for payment of such fees. On and after the Effective Date, the Liquidation Trustee shall pay the applicable Statutory Fees that accrue after the Effective Date (or remain unpaid from the period prior to the Effective Date) until the earlier of (1) a final decree closing the Chapter 11 Case or (2) conversion or dismissal of the Chapter 11 Case. The Debtor or the Liquidation Trustee shall pay any Statutory Fees due and payable with respect to any disbursements made to the Liquidation Trust on the Effective Date. The Liquidation Trust shall not owe any Statutory Fees with respect to any disbursements made from the Liquidation Trust until, and only to the extent that, the total disbursements made from the Liquidation Trust exceed the total amount of disbursements made by the Debtor to the Liquidation Trust.

The Debtor shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the United States Trustee. After the Effective Date, the Liquidation Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the United States Trustee. The United States Trustee shall not be required to File any Administrative Expense Claim in the case.

## C.    **Modification of Plan**

Effective as of the date hereof and subject to the limitations and rights contained in **Article IX** of this Plan: (a) the Plan Proponent reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan (including the Plan Supplement and any Exhibits to the Plan) prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Plan Proponent, after notice and hearing and entry of an order of the Bankruptcy Court, may amend or modify this Plan, (including the Plan Supplement and any Exhibits to the Plan), in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan (including the Plan Supplement and any Exhibits to the Plan) in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan (including the Plan Supplement and any Exhibits to the Plan), as altered, amended or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of such Claim of such Holder.

Objections with respect to any amendments or modifications to the Plan (as and to the extent permitted hereby) Filed after the deadline for objections to the Plan, as set by the Bankruptcy Court, may be brought at the Confirmation Hearing. The Plan, and any modification or supplement thereof, may be inspected in the Office of the Clerk or its designee during normal business hours. The documents annexed to the Disclosure Statement or contained in any modification or supplement to the Plan or the Disclosure Statement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

## D.    **Adjustment of Claims Register**

The clerk of the Bankruptcy Court or other authorized party is authorized and directed to adjust the Claims Register at the direction of the Liquidation Trustee to reflect the disallowance, reduction, reclassification, modification, or other resolution of any Claim pursuant to the terms of this Plan (whether or not documented in a Final Order, written agreement or otherwise) or any Final Order of the Bankruptcy Court without further notice to any party, or action, approval, or order of the Bankruptcy Court.

## E.    **Extension of Time**

For cause shown, any deadlines herein that are applicable to the Debtor, the Committee, the Liquidation Trustee or the Liquidation Trust and which are not otherwise extendable, may be extended by the Bankruptcy Court.

## F.    **Post-Effective Date Notice List**

Because certain Persons may not desire to continue to receive notices after the Effective Date, this Plan provides for the establishment of a Post-Effective Date Notice List. Persons on such Post-

10288062

Effective Date Notice List will be given certain notices and in some cases an opportunity to object to certain matters under this Plan (as described herein). Any Person desiring to be included on the Post-Effective Date Notice List must (i) File a request to be included on the Post-Effective Date Notice List and include thereon its name, contact person, address, telephone number, and email address, within thirty (30) days after the Effective Date, and (ii) concurrently serve a copy of its request to be included on the Post-Effective Date Notice List on the Liquidation Trustee and the Liquidation Trustee's counsel. Those Parties set forth in **Article XIV.N** of the Plan shall be included on the Post-Effective Date Notice List without the necessity of filing a request.

**G.  Revocation of Plan**

The Plan Proponent reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If the Plan Proponent revokes or withdraws this Plan, or if confirmation of this Plan or Consummation of this Plan does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Person or Entity.

**H.  Entire Agreement**

Except as otherwise addressed in any prior order of the Bankruptcy Court in the Chapter 11 Case or described herein, the Plan (and any supplements or amendments hereto) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects (other than the Liquidation Trust Agreement), all of which have become merged and integrated into the Plan.

**I.  Closing of Chapter 11 Case**

The Liquidation Trustee shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

**J.  Successors and Assigns**

From and after the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtor, the Liquidation Trustee, and their respective successors and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

**K.  Reservation of Rights**

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Plan Proponent or any other Entity with respect to this Plan shall be or shall be deemed to be an admission

or waiver of any rights of: (1) the Plan Proponent with respect to the Holders of Claims or other Entity; or (2) any Holder of a Claim or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Plan Proponent of any contract or lease on any Exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, will constitute an admission by the Plan Proponent that any such contract or lease is or is not an Executory Contract or Unexpired Lease or that the Debtor, the Estate or the Liquidation Trust has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtor or the Liquidation Trustee under any Executory Contract or non-Executory Contract or Unexpired Lease or expired lease.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor or the Liquidation Trustee under any Executory Contract or non-Executory Contract or Unexpired Lease or expired lease.

**L.    Further Assurances**

The Plan Proponent, the Liquidation Trustee, all Holders of Claims receiving Plan Distributions, and all other Entities shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order. On or before the Effective Date, the Plan Proponent shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**M.    Nonseverability**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the Plan Proponent's consent, and (3) nonseverable and mutually dependent.

**N.    Service of Documents**

All notices, requests, and demands to or upon the Plan Proponent to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email transmission, when received, addressed as follows:

Perkins Coie LLP

10288062

505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050
Attn: Paul S. Jasper (PJasper@perkinscoie.com)

Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: 973.643.7000
Facsimile: 973.643.6500
Attn: Andrew H. Sherman (ASherman@sillscummis.com)
        Boris I. Mankovetskiy (BMankovetskiy@sillscummis.com)

and the Liquidation Trustee at contact information to be provided.

**O.    Filing of Additional Documents**

On or before the Effective Date, the Plan Proponent may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**P.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code**

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.

**Q.    Incorporation of Other Documents**

All Exhibits to the Plan and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in **Article I.B**) and be fully enforceable as if stated in full herein.

**R.    Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, or other federal law is applicable, or to the extent that an Exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of California, without giving effect to the principles of conflicts of law of such jurisdiction.

- 61 -

10288062

**S.       Tax Reporting and Compliance**

The Debtor, the Committee and the Liquidation Trustee are hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

**T.       Controlling Document**

In the event of an inconsistency between this Plan, on the one hand, and the Plan Supplement, any other of the Plan Documents, or any other instrument or document created or executed pursuant to this Plan, on the other hand, or between this Plan and the Disclosure Statement, this Plan shall control. The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern. For the avoidance of doubt, nothing in the Plan or the Confirmation Order shall be construed to amend, modify, or abrogate any prior order of the Bankruptcy Court in the Chapter 11 Case.

**U.       Confirmation Request**

The Plan Proponent requests that the Bankruptcy Court confirm the Plan and that the Bankruptcy Court do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding any rejection of the Plan by an Impaired Class.

10288062

Dated:  January 30, 2024

By:    /s/ Paul S. Jasper

Paul S. Jasper (CA Bar No. 200138)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105
Telephone:    415.344.7000
Facsimile:    415.344.7050
Email:        PJasper@perkinscoie.com

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:    973.643.7000
Facsimile:    973.643.6500
Email:        ASherman@sillscummis.com
              BMankovetskiy@sillscummis.com

*Co-Counsel to the Official Committee of Unsecured Creditors*


/s/ Bruce D. Adams
Bruce D. Adams
*Co-Chair of Committee*


/s/ Ali Rashidian
Dr. Ali Rashidian
*Co-Chair of Committee*

**[Signature Page to Chapter 11 Plan of Liquidation]**

10288062

**Exhibit A**

Excluded Parties


[TBD]

**Exhibit B**

Liquidation Trust Agreement

[TBD]

10288062