Paul S. Jasper, Bar No. 200138
PJasper@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050

*Co-Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

In re

MADERA COMMUNITY HOSPITAL

Debtor.

Case No. 23-10457

Chapter: 11

DC No.: PSJ-032

**SECOND INTERIM APPLICATION OF PERKINS COIE LLP FOR ALLOWANCE OF COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Hearing Date: March 12, 2024
Hearing Time: 9:30 a.m. (Pacific Time)
Place: 2500 Tulare Street
Courtroom 13
Fresno, CA 93721
Judge: Honorable René Lastreto II

**Objection Deadline: February 27, 2024**

**I. INTRODUCTION**

Perkins Coie LLP ("Perkins Coie" or the "Applicant") hereby submits its second interim application (the "Application") for allowance and payment of fees and reimbursement of expenses incurred from August 1, 2023 through November 30, 2023 (the "Application Period"), as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Madera Community Hospital (the "Debtor") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Application is brought pursuant to (i) sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), (ii) Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* (the "U.S. Trustee Guidelines"), and (iv) the *Order Establishing Procedures for Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court*, dated August 2, 2023 [Docket No. 759].

By this Application, Perkins Coie seeks the entry of an order for (i) the interim allowance and payment of **$155,100.49** (the "Interim Amount") in total for fees earned, and reimbursement of expenses incurred, during the Application Period. The Interim Amount is comprised of (i) the fees billed by Perkins Coie in compensation for 264.1 hours of professional services rendered as co-counsel to the Committee during the Application Period in the amount of **$153,375.50**, and (ii) reimbursement for expenses Perkins Coie actually incurred in the course of its representation of the Committee during the Application Period in the amount of **$1,724.95**, for a total interim amount sought for the Application Period of **$155,100.49**.

This Application is based upon the contents hereof, together with the exhibits, the declaration of Paul S. Jasper filed concurrently herewith, the pleadings, papers, and records on file in these cases, and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

This Application is subject to the United States Department of Justice's *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases* ("Appendix B Guidelines").

The summary coversheet, and summary charts in compliance with the Appendix B Guidelines and detailing the amount of fees charged and hours worked by timekeeper and billing category, and expense reimbursements requested by category during the Application Period are filed herewith as **Exhibit 2** through **Exhibit 7**.

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B), and the Committee consents to entry of a final order by the Court in connection with this Application to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

The statutory bases for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and the U.S. Trustee Guidelines.

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A. Filing of Petition and Appointment of Committee

On March 10, 2023, (the "Petition Date"), the Debtor filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. *See* Docket No. 1. The Debtor continues to operate, manage, and maintain its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

On April 5, 2023, the Office of the United States Trustee for Region 17 (the "U.S. Trustee") appointed five members to the Committee under sections 1102(a) and 1102(b) of the Bankruptcy Code: (1) SnapMed Tech, Inc. DBA SnapNurse, (2) Citizens Business Bank, (3) Lourdes Ortega, (4) Arya Medical Group, and (5) Cardinal Health 110, LLC. *See* Docket No. 195.

### B. Employment of Perkins Coie and Sills Cummis as Co-Counsel

On May 23, 2023, the Committee filed its *Application for Entry of Order Authorizing Retention of Perkins Coie LLP as Co-Counsel to Official Committee of Unsecured Creditors Effective as of April 17, 2023* [Docket No. 418] (the "Retention Application").

The Retention Application was granted on May 23, 2023, by this Court's *Order Granting Application for Entry of Order Authorizing Retention of Perkins Coie LLP as Co-Counsel to Official Committee of Unsecured Creditors Effective as of April 17, 2023* [Docket No. 489] (the "Retention Order"). A copy of the Retention Order is attached as **Exhibit 1** hereto.

On May 23, 2023, the Court entered an order authorizing the Committee to retain Sills Cummis & Gross P.C. ("Sills Cummis") as co-counsel to the Committee. *See* Docket No. 488.

**C. Interim Compensation Procedures Order**

On August 2, 2023, the Court entered its *Order Establishing Procedures for Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* (the "Interim Compensation Procedures Order"). *See* Docket No. 759. The Interim Compensation Procedures Order authorizes Perkins Coie and certain other professionals retained in this Bankruptcy Case (collectively, the "Subject Professionals") to submit monthly fee statements for services rendered and, absent timely objection, be paid 80% of the monthly fees accrued (with a 20% holdback) and be reimbursed for 100% of the monthly expenses incurred. The Interim Compensation Procedures Order further requires that Subject Professionals who have received monthly payments to file an interim application under § 331 of the Bankruptcy Code for allowance of the compensation and reimbursement of the expenses sought in the monthly statements issued during the applicable period, and to seek payment of the 20% holdback.

**D. Prior Payments of Compensation**

On October 25, 2023, the Court issued its *Order Approving First Interim Application of Perkins Coie LLP for Allowance of Compensation for Services and Reimbursement of Expenses as Co-Counsel to the Official Committee of Unsecured Creditors* (the "First Fee Order"). The First Fee Order approved, on an interim basis, allowance and payment of fees and reimbursement of expenses incurred by Perkins Coie from April 17, 2023 through July 31, 2023 (the "First Application Period"), in the aggregate amount of $158,854.85 (inclusive of fees of $158,737.25 and $117.60 of expenses). The Court-approved fees and expenses for the First Application Period have been paid to Perkins Coie.

In accordance with the Court's Interim Compensation Procedures Order, Perkins Coie submitted four (4) monthly fee statements (collectively, the "Monthly Fee Statements") for services rendered during the Application Period seeking interim compensation and reimbursement of expenses during the Application Period. *See* Docket Nos. 961, 1040, 1145, and 1182. Copies of the computer-generated time entries reflecting the time recorded for these services, as well as expense statements reflecting the disbursements incurred, were filed with this Court as exhibits to the Monthly Fee Statements and are also attached as **Exhibit 7** hereto.

| Date of Monthly Fee Statement | Period Covered | Fees Billed | Fees Sought (80%) | Expense Reimbursement Requested (100%) |
|---|---|---|---|---|
| 09/25/2023 | 08/01/2023-08/31/2023 | $23,447.00 | $18,757.60 | $1,241.93 |
| 10/25/2023 | 09/01/2023-09/30/2023 | $42,118.00 | $33,694.40 | $394.14 |
| 11/21/2023 | 10/01/2023-10/31/2023 | $35,017.50 | $28,014 | $.63 |
| 12/12/2023 | 11/01/2023-11/30/2023 | $52,793.00 | $42,234.40 | $88.29 |
| **TOTALS** | | **$153,375.50** | **$122,700.40** | **$1,724.99** |

For the Application Period, Perkins Coie has been paid a total of $122,700.40 of fees and has been reimbursed for $1,724.99 of out-of-pocket expenses, for a total received of $124,425.39. Through this Application, Perkins Coie seeks allowance of $153,375.50 of fees incurred during the Application Period, and approval for payment of $30,675.10 of that amount, which was incurred, but has not been paid due to a 20% holdback from amounts sought in its Monthly Fee Statements.

Perkins Coie also seeks allowance of $1,724.99 of out-of-pocket expenses incurred during the Application Period, all of which has already been reimbursed pursuant to the Monthly Fee Statements. A detailed invoice summarizing those expenses is included in **Exhibit 8** hereto.

To date, Perkins Coie has been paid a total of $281,437.65 of fees and has been reimbursed for $1,842.60 of out-of-pocket expenses, for a total received of $283,280.25. As noted above, by this Application, Perkins Coie seeks payment of an additional $30,675.10 of fees incurred during the Application Period that have not been paid due to the 20% holdback.

No compensation previously received has been shared. No agreement nor understanding exists between Perkins Coie and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with these Chapter 11 Cases.

**E. Plan and Disclosure Statement**

On November 17, 2023, the Committee filed the initial Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors [Docket No. 1123] (the "Plan") and the initial Disclosure Statement for Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors [Docket No. 1125] (the "Disclosure Statement"). On December 15, 2023, the Committee filed an amended Disclosure Statement [Docket No. 1203]. On January 30, 2024, the Committee filed a second amended Disclosure Statement and an amended Plan. [Docket Nos. 1354, 1355].

**F. Monthly Operating Reports**

All monthly operating reports have been filed.

## IV. ALLOCATION OF WORK BETWEEN PERKINS COIE AND SILLS CUMMIS

The Committee selected Perkins Coie and Sills Cummis as co-counsel to take advantage of the two firms' complementary skills. Sills Cummis has a depth and breadth of expertise and experience developed over a decade of representing committees in hospital cases throughout the country but has no California state offices or attorneys. Perkins Coie likewise has extensive experience representing committees in hospital and other healthcare cases; but the Committee valued the unique depth and breadth of expertise that Sills Cummis has specifically in hospital-related cases. Prior to this case, Perkins Coie and Sills Cummis had recent experience working cost-effectively and efficiently together as co-counsel to the official committee of unsecured creditors in *In re Watsonville Hospital Corporation, et al.*, 21-51477 (Bankr. N.D. Cal. 2021) and *In re Mercy Hospital and Medical Center, et al.*, 21-01805-TAB (Bankr. N.D. Ill. 2021).

Throughout this Chapter 11 Case, Sills Cummis and Perkins Coie have been closely coordinating efforts to leverage their respective expertise for the benefit of their constituents and to avoid any unnecessary duplication of effort. Sills Cummis has led on setting the Committee's overall strategic approach to maximizing creditor recoveries, and has been responsible for determining efficient allocation of tasks between the two firms. Aside from handling traditional local counsel tasks such as filing and service, appearance at hearings, and compliance with local rules and procedures, Perkins Coie took the lead on (i) multiple rounds of negotiations with

American Advanced Management, Inc. ("AAM") that have resulted in the Debtor and AAM agreeing to enter into a proposed Master Transition Agreement and a Master Transition Agreement pursuant to which AAM will (a) become the manager of the Hospital, (b) fund expenses related to reopening, and operating, the Hospital, (c) pay monthly interest and other expenses related to the Debtor's primary secured debt, and (d) contribute up to $30 million to fund a liquidation trust under a confirmed plan of liquidation; (ii) negotiations and discussions with the County of Madera (the "County"), including (a) identifying executory contracts viewed as critical to retaining licensure and reopening optionality, and (b) the County's interest/willingness to (x) subsidize, or otherwise support, a third party's acquisition of the Hospital, or (y) provide interim funding of the Burn Rate to preserve operational optionality; and (iii) research and providing advice on California-specific issues, such the Debtor's potential liability for claims filed against it under the California and Federal WARN Acts, recovery of QAF payments and compliance with state requirements for sale of a non-profit hospital, as requested by Sills Cummis. Perkins Coie supported Sills Cummis on other issues where needed, due to Sills' Cummis scheduling conflicts or unavailability. There was some necessary overlap and coordination at times, but no more than if a single firm was dividing up tasks among different attorneys.

## V.     SERVICES RENDERED DURING THE APPLICATION PERIOD

Since the formation of the Committee, Perkins Coie has rendered professional services for and assisted the Committee in performing its statutory duties. The background and qualifications of all Perkins Coie attorneys and paraprofessionals who rendered services to the Committee are summarized in the professional biographies attached hereto as **Exhibit 9** hereto.

Based on the unique circumstances of these Chapter 11 Cases, including the Debtor' status as a non-profit entity, Perkins Coie agreed to charge adjusted, discounted hourly rates capped at $995 for partners and senior counsel, and $695 for counsel and associates (the "Capped Rates"). In addition, Perkins Coie agreed that, for each month in this case, Perkins Coie's fees (not including expenses) will be limited to the lesser of (i) the amount of Perkins Coie's fees at its Capped Rates and (ii) the amount of Perkins Coie's fees at a blended hourly rate of $725.

In general, tasks were allocated among attorneys and paraprofessionals based upon their

comparative expertise and in light of their hourly billing rates, consistent with the firm's usual staffing practices. All fees sought to be allowed were billed on a monthly basis at the lesser of the Capped Rates or blended rates described above.

The rates charged by Perkins Coie professionals are less than or comparable to those charged by other experienced and skillful professionals with bankruptcy and non-bankruptcy practices in similar firms. Excluding paraprofessionals, Perkins Coie's blended hourly rate for professional services rendered during the Application Period (not including paraprofessionals) was $717, and including paraprofessionals was $581.

This Application briefly summarizes, by category, the services rendered by Perkins Coie on behalf of the Committee during the Application Period. Perkins Coie has maintained contemporaneous time records, which include detailed chronologies, describing the precise nature of the work, the time expended, and specific tasks performed on behalf of the Committee during the Application Period. The detailed time records for April 17, 2023 through July 31, 2023 are attached hereto as **Exhibit 7**. Pursuant to the Interim Compensation Procedures Order, Perkins Coie filed monthly fee statements, which also included the detailed time records.

In accordance with the U.S. Trustee Guidelines, Perkins Coie classified all services performed for which compensation is sought into categories. Perkins Coie attempted to place the services performed in the category that best relates to the service provided.

Perkins Coie has established the following billing categories in this case to date:

- Asset Analysis and Recovery
- Asset Disposition
- Avoidance Action Analysis
- Business Operations
- Case Administration
- Claims Administration & Objections
- Creditor Communications & Inquiries
- Employee Benefits/Pensions
- Employment Applications
- Employment/Fee Objections
- Executory Contracts & Unexpired Leases
- Fee Applications
- Financing
- Interim Compensation

- Lien Review
- Meetings of Creditors
- Plan & Disclosure Statement
- Relief from Stay Proceedings
- WARN Claims

**Exhibit 7** comprises the Firm's invoices for the Application Period, which include detailed breakdowns of the time entries and expenses incurred for each of the above billing categories of services, and a summary of professionals, their hourly rates, and compensation sought for this category is located at the end of the respective invoice. For each of the categories, the hours billed, and fees charged are indicated. In each case, the fees charged are calculated at the agreed-upon Capped Rates, prior to the application of the $725 blended hourly rate discount.

**A. Asset Analysis & Recovery ($10,845.50; Hours: 10.9)**

During the Application Period, Perkins Coie's services in this category were focused on (a) analyzing and evaluating the value of the Debtor's assets, including its real estate, inventory and equipment, QAF and FEMA payments, provider agreement, and RCH certification and (b) repeated discussions with the County concerning its willingness to continue to provide funding towards a reopening of the Hospital, or to be part of a sale transaction, either as a purchaser, or as a source of funding, and its willingness to fund the Hospital's ongoing expenses (the "Burn Rate") being incurred by the Debtor to retain the Hospital's optionality to be reopened while the Debtor considered options and potential suitors. Those efforts ultimately resulted in the County providing $2 million of funding to date towards funding the Burn Rate during the Application Period while the Hospital continues to pursue a reopening and ultimate sale of assets as a going concern.

In connection with the foregoing, Perkins Coie attorneys and paraprofessionals expended **10.9 hours**, for which Perkins Coie seeks compensation in the amount of $10,845.50.

**B. Asset Disposition (Fees: $59,998.50; Hours: 60.3)**

During the Application Period, Perkins Coie's services in this category were focused on the Debtor' efforts to sell its assets and identify an operator to potentially reopen the Hospital and/or acquire the operating assets. Perkins Coie led negotiations with the Debtor and potential purchaser AAM to understand the terms under which AAM was willing to operate and/or acquire

the Hospital. Perkins Coie reviewed, analyzed, commented on, and drafted extensive revisions to multiple rounds of drafts of the proposed Master Transition Agreement ("MTA") and Management Services Agreement ("MSA") memorializing those terms.

Perkins Coie led discussions with the County concerning ways in which it might subsidize or facilitate a reopening transaction, including its continued funding of the Burn Rate pending a reopening transaction closing. Perkins Coie reviewed, and considered analysis from FTI, the Debtor, and SAMC concerning, LOIs and expressions of interest from other potential purchasers. Perkins Coie also researched and analyzed issues related to the terms under which the California Department of Health Care Access and Information ("HCAI") would be willing to loan monies to support a reopening transaction pursuant to California's Distressed Hospital Loan Program ("DHLP"). Finally, Perkins Coir reviewed and analyzed proposals to sell the Debtor's almond farm, and attendance at the sale hearing at which the almond farm was auctioned.

In connection with the foregoing, Perkins Coie attorneys and paraprofessionals expended 60.3 hours, for which Perkins Coie seeks compensation in the amount of $59,998.50.

**C.   Case Administration (Fees: $16,682.00; Hours: 31.2)**

During the Application Period, this category includes time spent: (i) reviewing the Debtor's status conference statements, and preparing for and attending status conferences, (ii) reviewing and advising on local rules and Judge Lastreto's procedures; (iii) filing, serving, and modifying as needed, all electronic filings in the case on behalf of the Committee's professionals to conform to local rules and Judge Lastreto's procedures; (iv) reviewing filings and the docket to monitor case status and identify upcoming hearings and deadlines; (v) collaborating with Debtors' counsel and co-counsel to schedule and continue hearings as needed; and (vi) conferring with the Committee's and Debtor's professionals regarding case status and administration. This category also included time billed on tasks that did not fall squarely within any other billing category.

In connection with the foregoing, Perkins Coie attorneys and paraprofessionals expended 31.2 hours, for which Perkins Coie seeks compensation in the amount of $16,682.00.

**D.     Claims Administration & Objections (Fees: $11,830.50; Hours: 16.8)**

During the Application Period, Perkins Coie's services in this category were focused on review and analysis of a WARN class action adversary complaint, related correspondence, and multiple proofs of claim filed by Antonio Rubio on behalf of himself and a purported class of similarly situated former employees. During the Application Period, Perkins Coie provided support to the Debtor's counsel towards identifying potential defenses to the WARN-related adversary proceeding and proofs of claim, analyzing the related exposures, requesting and reviewing relevant documents, and investigating the facts relevant to that analysis. Perkins Coie also participated in initial review and analysis by FTI of other disputed claims and a preliminary claims pool analysis.

In connection with the foregoing, Perkins Coie attorneys and paraprofessionals expended 16.8 hours, for which it seeks compensation in the amount of $11,830.50.

**E.     Executory Contracts & Unexpired Leases (Fees: $2,786.00; Hours: 2.8)**

During the Application Period, Perkins Coie's services in this category were focused on (i) attending hearings on the Debtor's motions to reject executory contracts and leases; (ii) discussions and emails with FTI Consulting and the County's counsel to identify contracts needed to preserve Hospital reopening optionality; and (iii) participation in multiple calls between counsel for Debtor, secured creditor SAMC, and the Committee to address funding and/or potential rejection of executory contracts.

In connection with the foregoing, Perkins Coie attorneys and paraprofessionals expended 2.8 hours, for which Perkins Coie seeks compensation in the amount of $2,786.00.

**F.     Fee Applications (Fees: $20,330; Hours: 28.2)**

During the Application Period, Perkins Coie's services in this category were focused on: (a) preparing Perkins Coie's first interim fee application and a template for all Committee professionals; (b) reviewing and revising Sills' and FTI's first interim fee applications to conform to local rules and U.S. Trustee guidelines; and (c) communicating with the Committee's other advisors and the Debtor's professionals regarding the foregoing and related matters.

In connection with the foregoing, Perkins Coie attorneys and paraprofessionals expended 28.2 hours, for which Perkins Coie seeks compensation in the amount of $20,330.00.

**G.     Financing (Fees: $5,671.50; Hours: 5.7)**

During the Application Period, Sills Cummis led efforts concerning potential objection to the Debtor's cash collateral motion and negotiation of revisions to multiple interim cash collateral orders. Perkins Coie's services in this category supplemented Sills' Cummis's efforts in the following ways: (i) participation in negotiations of cash collateral budgets and adequate protection payments with counsel for the Debtor and SAMC, (ii) negotiation with counsel for County about funding of portions of budget contingent on County funding of Burn Rate; (iii) appearance at hearings on continued use of cash collateral; and (iv) commenting on cash collateral orders.

In connection with the foregoing, Perkins Coie attorneys and paraprofessionals expended 5.7 hours, for which Perkins Coie seeks compensation in the amount of $5,671.50.

**H.     Interim Compensation (Fees: $23,507.50; Hours: 54.4)**

During the Application Period, Perkins Coie's services in this category were focused on (i) preparing monthly fee statements for Perkins Coie; (ii) reviewing and revising monthly fee statements of Sills and FTI; (iii) preparing related filings and certificates of no objection; and (iv) related communications with the Debtor's and the Committee's professionals.

In connection with the foregoing, Perkins Coie attorneys and paraprofessionals expended 54.4 hours, for which Perkins Coie seeks compensation in the amount of $23,507.50.

**I.     Meetings of Creditors (Fees: $13,239.50; Hours: 16.4)**

During the Application Period, Perkins Coie's services in this category were focused on (i) drafting updates to the Committee on case developments; (ii) preparing for, and attending, multiple meetings of the Committee to report on developments in the bankruptcy case and obtain direction from Committee in response to such developments; (iii) reviewing updates prepared by co-counsel in preparation for Committee meetings; (iv) paralegal attendance at Committee meetings to take minutes; (v) reviewing and commenting on minutes for Committee meetings; and (vii) responding to calls from Committee members.

In connection with the foregoing, Perkins Coie attorneys and paraprofessionals expended 16.4 hours, for which Perkins Coie seeks compensation in the amount of $13,239.50.

**J. Plan and Disclosure Statement (Fees: $31,252.50; Hours: 37.4)**

During the Application Period, Perkins Coie's services in this category were focused on: (a) drafting and revising a chapter 11 plan, disclosure statement, and related documents, including a supporting motion; (b) revising the chapter 11 plan and disclosure statement to incorporate reopening transaction reflected in AAM MTA; and (c) communicating with Debtor's counsel, the Committee members, the Committee's other professionals, Saint Agnes' counsel and others regarding the foregoing and related matters.

In connection with the foregoing, Perkins Coie attorneys and paraprofessionals expended 37.4 hours, for which Perkins Coie seeks compensation in the amount of $31,252.50.

## VI. SUMMARY OF DISBURSEMENTS

Perkins Coie incurred a total of $1,724.95 in out-of-pocket disbursements during the Application Period for filing fees, photocopies and printing, and postage. Perkins Coie records all expenses incurred in connection with its performance of professional services. The charges incurred by Perkins Coie were necessary and were incurred as a direct result of Perkins Coie's representation of the Committee. A summary chart detailing the type and amount of expenses incurred during the Application Period is attached hereto as **Exhibit 8**.

Perkins Coie customarily charges $0.10 per page for photocopying expenses, and $0.25 per page for scanning and copying expenses. Perkins Coie's photocopying machines automatically record the number of copies made when the person that is doing the copying enters the client's account number into a device attached to the photocopier. Whenever feasible, Perkins Coie sends large copying projects to an outside copy service that charges a reduced rate for photocopying.

## VII. ATTORNEY STATEMENT PURSUANT TO APPENDIX B GUIDELINES

The following statement is provided pursuant to ¶ C.5. of the Appendix B Guidelines.

(a) **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?

**Answer**: Yes. Based on the unique circumstances of these Chapter 11 Cases, including the Debtor' status as a non-profit entity, Perkins Coie agreed to charge adjusted, discounted hourly rates capped at $995 for partners and senior counsel, and $695 for counsel and associates. In addition, Perkins Coie agreed that, for each month in this case, Perkins Coie's fees (not including expenses) will be limited to the lesser of (i) the amount of Perkins Coie's fees at its Capped Rates and (ii) the amount of Perkins Coie's fees at a blended hourly rate of $725. As a result of such discount, Perkins Coie's total fees for the Application Period are $42,768 less than they would be if Perkins Coie billed at its standard hourly rates.

(b) **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

**Answer**: Not applicable.

(c) **Question**: Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

**Answer**: No.

(d) **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

**Answer**: No.

(e) **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Answer: No.

(f) **Question**: If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client

agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Answer**: Not applicable. Perkins Coie did not increase its rates for this matter during the Application Period.

## VIII. CLIENT REVIEW OF BILLING STATEMENTS

An email enclosing this Application was sent to the Committee on February 6, 2024. This email invited the Committee to discuss with Perkins Coie and/or the Office of the United States Trustee any objections, concerns, or questions the Committee or its members may have with regard to the requested compensation and reimbursement set forth in the Application. To date, no objections or other responses have been received from any of the Committee members.

## IX. CASH ON HAND

The Debtor's December 2023 monthly operating report reflects that the Debtor holds approximately $9.5 million of cash. See Docket No. 1293. Saint Agnes Medical Center asserts a lien against the Debtor's funds, which it contends constitute its cash collateral.

## X. NOTICE

In accordance with the Interim Compensation Procedures Order, this Application is being served on: (i) Wanger Jones Helsley, as counsel to the Debtor; (ii) Sills Cummis & Gross P.C., as co-counsel to the Committee; (iii) Foley & Lardner LLP, as counsel to Saint Agnes Medical Center; (iv) the Office of the United States Trustee; and (v) all parties who have appeared in this case and requested service pursuant to Bankruptcy Rule 2002. The Committee respectfully requests that this Court find the notice provided herein sufficient under the circumstances and waive and dispense with any further notice requirement.

## XI. BASIS FOR RELIEF REQUESTED

The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331, as supplemented by Federal Rule of Bankruptcy Procedure 2016. Section 330(a)(1) of the Bankruptcy Code allows for the following: "(A) reasonable compensation for actual, necessary services

rendered by . . . [an] attorney and by any paraprofessional person employed by such [attorney]; and (B) reimbursement for actual, necessary expenses. Section 330(a)(3)(A) provides that:

> [i]n determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [Title 11]; (D) amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title [11].[1]

Congress intended that bankruptcy attorneys be compensated at the market rate for comparable services in non-bankruptcy cases. *See In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 71 (2d Cir. 1996) (*citing In re UNR Indus., Inc.*, 986 F.2d 207, 208–09 (7th Cir. 1993). The policy of 11 U.S.C. § 330 is to ensure that qualified attorneys will "not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation." *Id.* at 210.

The court's examination of the reasonableness of services rendered must be conducted in an "objective manner, based upon what services a reasonable lawyer or legal firm would have performed . . . ." *Ames Dep't Stores*, 76 F.3d at 72 (*citing In re Matter of Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995).

Perkins Coie seeks compensation only for actual, necessary professional services rendered and reimbursement of reasonable expenses incurred on behalf of the Committee during the Application Period. This has been a challenging case given the closure of the Hospital pre-petition, the establishment and development of the Distressed Hospital Loan Program during the pendency of the case, the challenges related to assessing the potential impact on creditors of a potential reopening of the Hospital, and the need to react to novel new issues under a fast-moving timetable.

---

[1] 11 U.S.C. § 330(a)(3).

Among other benefits, Perkins Coie's efforts helped obtain the County's agreement to fund $2 million of Burn Rate expenses during the Application Period in support of the Committee's efforts to support a potential reopening while keeping the estate economically neutral. Perkins Coie also led negotiations with AAM during the Application Period that have since resulted in AAM and the Debtor agreeing to the terms of a potential reopening transaction that could result in AAM taking over management of the Hospital and contributing up to $30 million to fund a liquidation trust for the benefit of allowed creditor claims. Perkins Coie and its co-counsel Sills Cummis were diligent in allocating work among them in a manner that kept duplication to a minimum while taking advantage of their respective and complementary expertise to deliver time-sensitive responsiveness to the Committee in a cost-effective manner.

In sum, the services provided by Perkins Coie during the Application Period were actual and necessary for the administration of this Chapter 11 Case, performed at the request of the Committee, commensurate with the significance of the tasks, and ultimately provided more than substantial value to the estate and unsecured creditors.

## XII. CONCLUSION

As detailed above, Perkins Coie is seeking the allowance of **$153,375.50** in fees incurred during the Application Period. In addition, Perkins Coie is seeking the allowance of **$1,7424.95** in actual, necessary costs and expenses incurred during the Application Period, for a total request of **$155,100.49**. In accordance with 11 U.S.C. § 330, Perkins Coie submits that the amounts requested are fair and reasonable given (a) the complexity of this case; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services, and the costs of comparable services other than in a case under the Bankruptcy Code. Perkins Coie further submits that pursuant to the criteria normally examined in bankruptcy cases and based upon the factors considered in accordance with 11 U.S.C. § 330 and Rule 2016 of the Federal Rules of Bankruptcy Procedure, the results achieved support approval of the compensation sought by Perkins Coie.

**WHEREFORE**, Perkins Coie respectfully requests that the Court:

(a) approve, on an interim basis, the allowance and payment of **$153,375.50** for compensation for professional services rendered to the Committee during the Application Period;

(b) approve the reimbursement of Perkins Coie's out-of-pocket expenses incurred in connection with the rendering of such services during the Application Period, in the amount of **$1,724.95;**

(c) approve the payment of **$30,675.10** to Perkins Coie to satisfy the portion of Perkins Coie's fees for professional services that were incurred, but have not been paid, due to a 20% holdback from amounts sought in its Monthly Fee Statements.

DATED: February 9, 2024

**PERKINS COIE LLP**

By: */s/ Paul S. Jasper*

Paul S. Jasper, Bar No. 200138
PJasper@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050

*Co-Counsel to the Official Committee of Unsecured Creditors*