**6 PAGES**
JASON E. RIOS, State Bar No. 190086
FELDERSTEIN FITZGERALD
  WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
Email: jrios@ffwplaw.com

Attorneys for County of Madera

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>MADERA COMMUNITY HOSPITAL,<br><br>        Debtor-in-Possession,<br><br>Tax ID#: 23-7429117<br><br>Address: 1250 E. Almond Ave.<br>            Madera, CA 93637 | Case No. 23-10457<br><br>Chapter 11<br><br>DC No.: WJH-77<br><br>**OPPOSITION TO JOINT MOTION OF THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(A) AND 363(B) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO ENTER INTO A MASTER TRANSITION AGREEMENT AND A MANAGEMENT SERVICES AGREEMENT WITH AMERICAN ADVANCED MANAGEMENT, INC.**<br><br>Date: February 13, 2024<br>Time: 9:30 a.m.<br>Location: 2500 Tulare Street<br>            Fresno, CA 93721<br>            Courtroom 13<br>            Via ZoomGov<br>Judge: Hon. René Lastreto II |

Creditor and party in interest, County of Madera ("Madera County"), having reviewed the *Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Sections 105(A) And 363(B) of the Bankruptcy Code Authorizing the Debtor to Enter into a Master Transition Agreement and a Management Services Agreement with American Advanced Management, Inc.* [Docket No. 1298] (the "Joint Motion") filed by the Debtor and the Official Creditors Committee on January 19, 2024, hereby files this opposition to the Joint Motion. In support of this Opposition, Madera County relies on the Notice of Proposed Alternative Transaction, and the Exhibits filed concurrently herewith, and states as follows:

## PRELIMINARY STATEMENT

The Joint Motion seeks approval for what is effectively a potential sale of the hospital and operations to American Advanced Management Inc. ("AAM"), pursuant to a Master Transition Agreement ("MTA") that provides a possible payment of up to $30 million (the "Existing Proposal"), subject to multiple conditions and risk factors.

Madera County appreciates the efforts of the Debtor and the Committee to restore hospital operations in Madera County. Madera County has itself been an active and critical participant in those efforts, having funded $125,000/week over the past six and a half months to preserve the hospital and its license for reopening, and Madera County has approved funding additional weekly payments through March 22, 2024, totaling approximately $4,250,000 over an 8-month period. (See *e.g.* Order Authorizing Interim Use of Cash Collateral, [Dkt. No. 1347]). However, Madera County objects to the proposed Existing Proposal on the grounds that there is a substantially higher and better bid for reopening the hospital.

Madera County together with The Regents of the University of California, acting on behalf of the University of California San Francisco ("UCSF Health") and Adventist Health System/West ("Adventist Health") are filing and presenting a Notice of Proposed Alternative Transaction (the "Authority Proposal") to reopen Madera Community Hospital as a Reorganized Debtor with a single member, a joint powers authority created under the Joint Exercise of Powers Act, California Government Code Section 6500 *et. seq,* comprised of Madera County and UCSF Health (the "Authority"), with the hospital to be operated by Adventist Health pursuant to a Management

1 Services Agreement. The Authority Proposal provides for the Authority to fund a $2,500,000
2 deposit within three (3) days of the entry of a final order approving a Plan Support Agreement,
3 another $1,000,000 into an escrow for certain interest and fees for St. Agnes, and on the Effective
4 Date of an Amended Plan ("<u>Amended Plan Effective Date</u>"), an additional amount not to exceed
5 $30,000,000 for the benefit of the Liquidation Trust to be used, as needed, to satisfy claims under
6 the plan plus accrued post-petition interest for general unsecured creditors at the rate of two percent
7 (2%) per annum, with the remaining balance of funds, if any, returned to the Authority. If the
8 Authority's proposal is approved, until May 3, 2024,, the costs of maintaining the Hospital referred
9 to as the "Burn Rate" throughout this case shall continue to be paid from the contributions made by
10 Madera County. Thereafter and until the Effective Date, the Burn Rate shall be funded from, the
11 $2,500,000 deposit and/or further funding from Madera County or the Authority. The Authority
12 Proposal maximizes value and minimizes risks to the estate by, among other things, providing
13 availability of up to an additional $3.5 million which will allow the possibility for the allowed
14 general unsecured claims to receive payment of accrued post-petition interest.

15 Madera County submits that for the reasons explained in the Authority Proposal and the
16 substance of the proposed alternative transaction described therein and set forth in the supporting
17 Exhibits, Debtor's estate and the Court should deny the Joint Motion because the Authority Proposal
18 is in the best interests of the Estate, its creditors, and the community.

### ANALYSIS

20 The Bankruptcy Court has substantial discretion in establishing the rules for overbidding
21 and weighing the benefit to the estate of respective competing offers. *See e.g., In Re Gulf States*
22 *Steel of Alabama*, 285 B.R. 497, 517 (Bank. N.D. Ala 2002); *In Re America West Airlines*, 166 B.R.
23 908, 912-913 (Bank. AZ 1994). However, here the Joint Motion does not provide any proposed
24 overbidding procedures. Instead, the Joint Motion proposes to transfer substantially all of the assets
25 of the Estate pursuant to a private sale without opportunity for overbidding that would maximize
26 the value of the Estate's assets for the benefit of creditors.
27 ///
28 ///

1       While Federal Rule of Bankruptcy Procedure, Rule 6004(f)(1) authorizes sales by both
2 private sale or by public auction, bankruptcy courts favor public sales with opportunity for overbid.
3 *See e.g. In re Planned Systems, Inc*., 82 B.R. 919, 923 (Bank. S.D. Ohio 1988). As explained in
4 Colliers, "In considering proposed private sales, courts have required a demonstration of an
5 emergency or threat to asset value, failed attempts by the trustee to sell the asset for greater value,
6 other valuation evidence (*e.g*., testimony or the existence of similar transactions) and the absence of
7 objection." 3 Collier on Bankruptcy §363.02[4A](16th ed. 2023). These factors do not favor a
8 private sale of the Hospital. Here, Madera County, a creditor and party in interest does object to the
9 proposed private sale, and the Authority proposes a restructuring transaction that would realize
10 millions of dollars more for the Estate, on a much faster schedule, with less execution risk.

11       While the Existing Proposal provides AAM with absolute discretion to terminate the MTA
12 at any point prior to April 15, 2024 (the "<u>Existing Proposal Commitment Deadline</u>"), the Existing
13 Proposal does not provide the Debtor with any right to terminate the MTA prior to the Existing
14 Proposal Commitment Deadline and precludes the Debtor from seeking alternative proposals giving
15 AAM an exclusive period on the transaction. *See* Exhibit B to Joint Motion [Docket No. 1301], at
16 § 6(a). This imbalance in the termination rights provided to AAM and the Debtor is inconsistent
17 with the Debtor's fiduciary duties to maximize the value of its estate, as it bars the Debtor from
18 considering alternate proposals that would better serve the interests of the estate and other
19 stakeholders in the Hospital's successful reorganization. Bankruptcy courts have recognized that
20 proposed transactions of this nature that do not provide a debtor with a "fiduciary out" should not
21 be approved under section 363 of the Bankruptcy Code. *See In re Global Crossing Ltd.*, 295 B.R.
22 726, 745-46 (Bankr. S.D.N.Y. 2003) ("If this Court were to believe, for half a second, that the
23 Debtors had spurned a better offer to the detriment of their fiduciary duties, this Court would not
24 hesitate to invoke its powers. But . . . the record reflects that with the "fiduciary out" provisions . . .
25 execution of [the Purchase Agreement] still permits the Debtors to make an appropriate response if
26 a superior offer is made that the Debtors should consider by reason of their fiduciary duties."); *In re*
27 *Innkeepers USA Trust*, 442 B.R. 227, 235 (Bankr. S.D.N.Y. 2010) ("Finally, and of paramount
28 importance, I believe that the so-called Fiduciary Out, as written, is flawed. It prohibits the Debtors

1　from taking action consistent with their fiduciary obligations. Fiduciaries owe duties of care and
2　loyalty, and courts have held that these duties apply with equal or greater force in the context of a
3　sale of assets. . . . [T]he fact that the Debtors agreed to this provision causes me to question the
4　Debtors' honest interest in exercising due care.").

5　　　　　Madera County further notes that the Joint Motion does not offer any evidence that AAM
6　has put any money into the Estate. In contrast, Madera County has already funded over $3,000,000
7　to the estate and, as noted, will have funded $4,250,000 to the estate over 8-months through March
8　22, 2024. Moreover, the proposed MTA transaction is far from certain to realize any benefit to the
9　estate. For example, it includes (i) a right for AAM to terminate the proposed transaction for any
10　reason until April 15, 2024 (See Exhibit B to Joint Motion [Docket No. 1301], at §6), (ii) substantial
11　conditions to closing (see *e.g*. See Exhibit B to Joint Motion [Docket No. 1301], at §3(e)), (iii)
12　payments in tranches over time, and (iv) as much as 3 years until AAM could close on the sale of
13　the Hospital real estate assets. The Joint Motion does not include any evidence of AAM's financial
14　wherewithal to successfully operate the hospital over these many months/years, its ability to make
15　$30 million in payments, or the likelihood that AAM will be able to satisfy the conditions to closing.
16　Does AAM have the $30 million as immediately available cash? Will AAM be financing any of
17　these funds? If so, what are the financing conditions. The Joint Motion does not address these
18　important considerations.

19　　　　　In contrast, the Authority Proposal guarantees that the Burn Rate will continue to be funded
20　through the Amended Plan Effective Date. The Authority Proposal is not conditioned on licensing
21　or other regulatory approvals. It is conditioned on the California Department of Health Care Access
22　and Information committing to the allocation of $50,000,000 in loan funding from the Distressed
23　Hospital Loan Program already set aside for MCH to the Reorganized MCH, but the Authority is
24　otherwise prepared to move forward subject to the documentation, Bankruptcy Court approval and
25　plan confirmation. The Authority Proposal has funding commitments from UCSF Health and
26　Adventist Health, who have the $35 million in immediately available funds and the commitment to
27　funding. *See, e.g.,* UCSF's most recent audited financial statements, which are publicly available
28　and can be accessed here: https://www.ucop.edu/uc-controller/financial-reports/systemwide-

1 reports/medical-center-reports/22-23/medical-center-report-2023.pdf (page 44 reporting over $2 billion in cash/cash equivalents), and Adventist's ability to fund can be verified here: https://adventisthealth.org/documents/system/liquidity-report-12-31-23.pdf.

Thus, the Authority Proposal provides for up to $35 million to the Estate in a matter of months with minimal deal risk. This not only provides an increased recovery for creditors on a faster time schedule with less risk, but also the potential for payment of interest at the rate of two percent (2%) per annum. Thus, the Court should not grant the Motion and give the Debtor and the Committee an opportunity to move forward with the Authority's proposed transaction.

It should also be noted that the Existing Proposal includes provisions for AAM to have a subordinated claim against the Estate. (See Exhibit B to Joint Motion [Docket No. 1301], at §1(f)). The Authority Proposal does not dilute the Estate's ability to pay its creditors by creating claims against the Estate.

**CONCLUSION**

For the foregoing reasons, the County of Madera objects to the relief requested in the Joint Motion and requests that the Court allow the Debtor's estate to realize the substantially better value and benefits of the Authority Proposal for the estate.

Dated: February 12, 2024

                FELDERSTEIN FITZGERALD
                WILLOUGHBY PASCUZZI & RIOS LLP

By   /s/ Jason E. Rios
       JASON E. RIOS
       Attorneys for County of Madera