HUSCH BLACKWELL LLP
Christopher Miles (CA SBN 268774)
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: 816.983.8307
Facsimile: 816.983.8080
Email: christopher.miles@huschblackwell.com

HUSCH BLACKWELL LLP
Caleb T. Holzaepfel, Esq.
Admitted *pro hac vice*
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402
Telephone: 423.755.2654
Email: caleb.holzaepfel@huschblackwell.com

Counsel for Safety National Casualty Corporation

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>MADERA COMMUNITY HOSPITAL,<br><br>        Debtor in Possession. | Case No. 23-10457<br><br>Chapter 11<br><br>DCN: CM-1<br><br>**SAFETY NATIONAL CASUALTY CORPORATION'S OBJECTION AND RESERVATION OF RIGHTS TO THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>Hearing:<br>Date:   TBD<br>Time:   TBD<br>Place:   2500 Tulare Street<br>         Courtroom 13<br>         Fresno, CA 93721<br>Judge: Honorable René Lastreto II |

- 1 -

HB: 4870-6165-3156.6

Safety National Casualty Corporation ("Safety National"), by and through counsel, respectfully files this objection (the "Objection") to the *First Amended Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* [Dkt. No. 1355] (the "Plan"), and in support of this Objection would show the Court as follows:

## I. INTRODUCTION

1. The Official Committee of Unsecured Creditors' (the "Committee") Plan attempts to have its cake and eat it too in regard to its legacy insurance policies with Safety National. First, the Plan indicates that "[t]he Plan will not expand the scope of, or alter in any other way, the rights and obligations of the Debtor's insurers under their policies," **but** certain provisions in the Plan seek to alter the rights and obligations of the Debtor and Safety National under the Safety National Insurance Policies and the Bankruptcy Code. *See* Plan, Article V.R.3. Under Articles I.B.84 and V.R.3 of the Plan, the Committee seeks to modify the Debtor's coverage obligations, thereby attempting to modify the Safety National Insurance Policies (as defined *infra*). Moreover, under Article VI.A, Debtor has indicated that it may assume its insurance policies with Safety National. Such assumption would require that the Debtor assume the insurance policies as they are without nonconsensual modifications and provide adequate assurance of future performance. Finally, Debtors inappropriately seek to make potential post-petition administrative claims unsecured claims. *See* Plan. Article I.B.84. As such, Safety National files this objection requesting that specific language be modified in the Plan and/or any Confirmation Order[1] ratifying or affirming the rights and obligations under the Safety National Insurance Policies.

---

[1] Capitalized terms shall have the same meaning as in the Plan unless otherwise defined herein.

- 2 -

SAFETY NATIONAL CASUALTY CORPORATION'S OBJECTION AND RESERVATION OF RIGHTS TO THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

HB: 4870-6165-3156.6

## II. BACKGROUND

**A. Debtor's Insurance Policies with Safety National**

2. In 2005, Safety National entered into an insurance program with Debtor Madera Community Hospital ("<u>Madera</u>" or "<u>Debtor</u>"), including, but not limited to, the following:

    a. For policy periods from October 1, 2005, forward, such policy period expiring October 1, 2021, Safety National provided large deductible workers' compensation/employers liability insurance coverage to Madera, Policy Number LDS4004230 (the <u>Worker's Comp Policy</u>").

3. In conjunction with the Worker's Comp Policy, Safety National entered into ancillary related agreements with Madera, including, but not limited to, an Indemnity Agreement dated October 1, 2005 (the "<u>Indemnity Agreement</u>," and together with the Worker's Comp Policy and other related ancillary agreements, the "<u>Safety National Insurance Policies</u>"). The Safety National Insurance Policies continue to operate in runoff, and both Debtor and Safety National continue to have ongoing obligations related to administering and defending claims under the Safety National Insurance Policies, including deductible and/or self-insured retention obligations.

**B. Debtor's Chapter 11 Case and Treatment of the Safety National Insurance Policies**

4. On March 10, 2023 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). A detailed description of the Debtor, its business, and the facts and circumstances supporting the Debtor's chapter 11 case is set forth in greater detail in the First Day Declaration.

5. On January 30, 2024, the Committee filed its proposed Plan at Docket Number 1355. Article VI.A of the Plan indicates that Debtor may assume the Safety National Insurance Policies and assign them to the buyer upon the Effective Date. Article V.R of the Plan deals with Insured Claims, which is, in relevant part, defined to mean "any other General Unsecured Claim against the Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution, or

- 3 -

SAFETY NATIONAL CASUALTY CORPORATION'S OBJECTION AND RESERVATION OF RIGHTS TO THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

HB: 4870-6165-3156.6

other payment under a policy of insurance under which the Debtor is an insured or beneficiary of the coverage provided under the applicable policy…. For the avoidance of doubt, with respect to all Insured Claims arising from events that occurred prior to the Petition Date for which notice is or was provided to the insurer in accordance with the applicable policy, such deductibles and self-insured retention obligations shall be treated as Class 4 General Unsecured Claims to the extent Allowed. Further, no insurance carrier shall, or shall be entitled, to deny coverage under any insurance policy based upon (i) any failure of the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee, to pay any deductible or self-insured retention in full, or (ii) the treatment of any Claim for a deductible or self-insured retention obligation as a Class 4 General Unsecured Claim." Plan, Art. I.B.84.

6. The Plan states that after the Effective Date of the Plan, even though the Debtor may owe a deductible amount or self-insured retention obligations under the terms of its insurance policies, "[h]olders of Insured Claims shall be enjoined. . .from commencing or continuing any action to assert or collect any alleged Claims relating to any deductible or self-insured retention obligations against the Debtor, its Estate, and the Liquidation Trust." Plan, Art. V.R.3.

7. As such, Debtor intends to treat certain claims or potential claims of Safety National as Insured Claims under the Plan.

8. Despite the foregoing, Article V.R.3 states that the Plan shall not "expand the scope of, or alter in any other way, the rights and obligations of the Debtor's insurers under their policies" and that "the Debtor's insurers shall retain any and all defenses to coverage that such insurers may have. . .[and] [t]he Plan shall not operate as a waiver of any other Claims that the Debtor's insurers have asserted or may assert in any Proof of Claim. . ." Plan, Art. V.R.3.

9. Thus, even though the Plan purports to not alter the rights and obligations of the Debtor's insurers, like Safety National, under their policies, the contradictory language in Articles

- 4 -

HB: 4870-6165-3156.6

I.B.84 and V.R.3 is an attempted modification of the Safety National Insurance Policies, as it modifies coverage obligations and Safety National's rights to reimbursement, indemnification, etc., as well as potential defense under the Safety National Insurance Policies. The Plan would also seek to eliminate Safety National's potential post-petition administrative claims pursuant to on-going workers' compensation obligations of Debtors. While Safety National acknowledges that it has non-bankruptcy law obligations that it will comply with in regard to workers' compensation coverage issues, it objects to Debtor's unilateral attempt to modify the Safety National Insurance Policies in regard to coverage obligations.

10. The Debtor cannot unilaterally amend the Safety National Insurance Policies through the Plan pursuant to the Bankruptcy Code or applicable law. Accordingly, Safety National files this objection to the Plan, objecting to the extent that Plan seeks to alter Safety National's rights and the Debtor's obligations under the Safety National Insurance Policies.

### III. RELIEF REQUESTED

11. Because the Plan's language attempts to modify Safety National's rights and the Debtor's obligations under the Safety National Insurance Policies, Safety National serves this objection to any language in the Plan, Plan Supplement, Confirmation Order, or any related documents that non-consensually modifies the rights and obligations under the Safety National Insurance Policies.

12. Safety National requests that Article I.B.84 of the Plan be revised to exclude Safety National as an Insured Claim.

13. Further, for the avoidance of doubt and to preserve the rights and obligations under the Safety National Insurance Policies, Safety National requests that the following language regarding treatment of the Safety National Insurance Policies be included at Article V.R.3 of the Plan and/or any Confirmation Order:

HB: 4870-6165-3156.6

**Provisions Governing Safety National Contracts.** Notwithstanding any provision in the Disclosure Statement, Plan, Plan Supplement, Confirmation Order, any Assumption Notice, Cure Notice, schedule of assumed contracts and/or Cure Amounts, any agreements between the Debtor, and Plan Administrator, any other document related to any of the foregoing, or any other order of the Bankruptcy Court related to the Safety National Insurance Policies (collectively the "<u>Bankruptcy Pleadings and Orders</u>"):

(1) Each of the Debtor's Insurance Policies with Safety National Casualty Corporation ("<u>Safety National</u>") and related agreements (the "<u>Safety National Insurance Policies</u>") and any agreement, documents, or instructions relating thereto, are treated as Executory Contracts under the Plan and shall be assumed under the Plan and assigned to the Buyer as of the Effective Date.

(2) For the avoidance of doubt, notwithstanding any provision in the Bankruptcy Pleadings and Orders or any related document, nothing shall alter, modify, amend, impair, or prejudice the legal, equitable, or contractual rights, obligations, and defenses of Safety National, the Debtor (or, after the Effective Date the Wind-Down Debtor), or any other individual or entity, as applicable, under any of the Debtor's Safety National Insurance Policies. Any such rights and obligations shall be determined under the Safety National Insurance Policies and applicable non-bankruptcy law.

(3) As proscribed under the Safety National Insurance Policies, after the Effective Date, the Debtor and/or Wind-Down Debtor, through the Plan Administrator, shall maintain its duty and obligations.

(4) The rights of Safety National to satisfy any of the Debtor's and/or Wind-Down Debtor's obligations under the Safety National Insurance Policies shall be determined under the Safety National Insurance Policies and applicable non-bankruptcy law.

(5) The rights of Safety National to assert any post-petition administrative claim shall be determined under the Bankruptcy Code, the Safety National Insurance Policies, and any applicable non-bankruptcy law.

### IV. ARGUMENTS & AUTHORITIES

14. The Plan seeks to unilaterally alter the Safety National Insurance Policies and strip away certain rights of Safety National thereunder – while still funneling claims through the Safety National Insurance Policies and receiving the benefits thereof. Moreover, the Plan would inappropriately modify Safety Nationals' rights under the Bankruptcy Code to seek an administrative claim.

- 6 -

SAFETY NATIONAL CASUALTY CORPORATION'S OBJECTION AND RESERVATION OF RIGHTS TO THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

HB: 4870-6165-3156.6

**A. The Plan Improperly Alters the Terms of the Safety National Insurance Policies.**

15. Section 365 of the Bankruptcy Code does <u>not</u> permit the modification of executory contracts. The Safety National Insurance Policies must be assumed in total, with all obligations and rights intact – or rejected. "It is well-settled that an executory contract cannot be assumed in part and rejected in part.... Rather, a debtor "must assume the entire contract, *cum onere*"—the debtor must accept "both the obligations and the benefits of the executory contract." *In re Escarent Entities, L.P.*, 423 F. App'x 462, 466 (5th Cir. 2011) (citing *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir.1996); *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir.2000)); *see Tompkins ex. rel A.T. v. Troy Sch. Dist.,* 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burden as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.,* 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.,* 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.,* 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *In re Flemng Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("The [debtor]… may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.") (internal citations and quotations omitted) (alteration in original); *In re Texas Rangers Baseball Partners,* 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party."). Where an order of the bankruptcy court alters the rights and obligations under an assumed executory contract, the court is in effect modifying the agreement. *In re Escarent Entities, L.P.*, 423 F. App'x

- 7 -

SAFETY NATIONAL CASUALTY CORPORATION'S OBJECTION AND RESERVATION OF RIGHTS TO THE FIRST AMENDED
CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

HB: 4870-6165-3156.6

at 467. Where this is done without the consent of the non-debtor party, this is in essence an un-agreed to modification, and the "bankruptcy court thus violate[s] its obligation to ensure that [the Debtor] assume[s] the contract *in toto.*" Id; *see, e.g., Wilson v. Career Educ. Corp.,* 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Jeffrey L. Miller Investments, Inc.* 610 B.R. 692, 703 (Bankr. M.D. Fla. 2019) (stating that it is the court's "duty to enforce [a] contract as written- not rewrite it to make it more reasonable for one of the parties"); *In re Lloyd E. Mitchell, Inc.,* 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court").

16. Moreover, it is clear under well-established law that neither the Committee, Debtor nor this Court can rewrite the Safety National Insurance Policies, but, rather, the Safety National Insurance Policies must be enforced as written. *See, e.g., In re WorldCorp, Inc.,* 252 B.R. 890, 897 (Bankr. D. Del. 2000) (a court may not "rewrite [a] contract to include terms that a party wishes [it] had bargained for, but did not, prior to execution of the agreement"); *see also Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.,* 769 F. Supp. 671, 707 (D. Del. 1991) *aff'd,* 988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *Ally Financial Inc., v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC),* 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015) (a party cannot convince a court to "rewrite [a] contract to fulfill [its] unspoken expectation") (quoting, in part, *Buena Vista Home Entm't, Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp.)*, 374 B.R. 113, 121 (Bankr. S.D.N.Y. 2007)); *In re Best Mfg. Grp. LLC,* 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been

interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

17. Additionally, each of the Insurance Policies must be read, interpreted, and enforced in its entirety. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract"); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

18. However, contrary to this well-established law, the Plan contains multiple provisions that purport to alter or modify the Safety National Insurance Policies and the terms and conditions thereof.

**a. Impermissible release of obligations under the Safety National Insurance Policies.**

19. Through the Plan, it appears that the Committee seeks to continue to receive the benefits of the Safety National Insurance Policies for Debtor. *See, e.g.*, Plan, Art. VI.A. However, the Plan does not adequately address the continuing ***obligations*** of the Debtor or its successors under the Safety National Insurance Policies. While Safety National will comply with state law and regulations in regard coverage issues – if Debtor rejects the Safety National Insurance Policies, Safety National will almost certainly be forced to step in and cover the deductible obligations that Debtor will fail to meet. In the event that this occurs, Safety National is entitled to seek

- 9 -

SAFETY NATIONAL CASUALTY CORPORATION'S OBJECTION AND RESERVATION OF RIGHTS TO THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

HB: 4870-6165-3156.6

reimbursement under the terms of the Safety National Insurance Policies (such as offset of any security held) and a claim of reimbursement from Debtor.

20. It is well-established that debtors and their successors cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See Tompkins ex. rel. A.T.*, 199 Fed. Appx. at 468 (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co.*, 457 F.3d at 773 (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan*, 148 Fed. Appx. at 888 (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating* P'ship, 291 F.3d at 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d at 308. ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'")

- 10 -

SAFETY NATIONAL CASUALTY CORPORATION'S OBJECTION AND RESERVATION OF RIGHTS TO THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

HB: 4870-6165-3156.6

(internal citations omitted); *Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Texas Rangers Baseball Partners)*, 521 B.R. 134, 179-80 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

21. Therefore, to the extent that the Plan seeks to retain the benefits of any portion of the Safety National Insurance Policies, each of the Safety National Insurance Policies must continue in their entirety, and the rights and benefits, and potential defenses, under each of the Safety National Insurance Policies cannot be split from the respective obligations thereunder. While Debtors may be able to reject the Safety National Insurance Policies, the Debtors cannot also remove Safety National's rights to claims resulting therefrom, including administrative claims.

**B. The Plan Must Provide That Workers' Compensation Claims and Direct Action Claims Must Continue in the Ordinary Course.**

22. The Plan does not provide for the handling of workers' compensation claims or direct action claims against the Debtor's insurers.

23. Both workers' compensation claims and direct action claims are subject to state law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Committee's Plan. *See, e.g.*, *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions).

24. Accordingly, the Plan cannot prevent workers' compensation claims and direct action claims from going forward.

25. The Safety National Insurance Policies include policies that provide workers' compensation insurance to the Debtor, and certain of the Debtor's obligations with respect to such

policies are secured by collateral. Any workers' compensation claims against the Debtor potentially covered by the Safety National Insurance Policies must, therefore, be able to proceed, and Safety National, in turn, must be able to handle and administer such claims, including applying any existing collateral to the Debtor's obligations with respect thereto in accordance with the terms and conditions of the Safety National Insurance Policies.

26. In sum, the Plan should also clarify that workers' compensation and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course, and, relatedly, that Safety National may continue to so administer, handle, defend, settle, and/or pay such covered claims, including drawing on and/or applying any existing collateral in connection therewith, in the ordinary course and pursuant to the terms of the Safety National Insurance Policies and applicable non-bankruptcy law.

27. Further, Safety National does not have notice of the Debtor's position on cure amounts owed, so no cure has been established for purposes of assignment of the Safety National Insurance Policies, and Safety National reserves all rights to object to any cure under the Safety National Insurance Policies.

### V.    RESERVATION OF RIGHTS

28. Safety National specifically reserves all of its rights with respect to the Safety National Insurance Policies and its right to further object to the Plan or assert any additional claims as appropriate.

### VI.    CONCLUSION

Accordingly, Safety National respectfully requests that the aforementioned language be included in the Plan or any Confirmation Order, and in the alternative, that the Court deny confirmation of the *First Amended Chapter 11 Plan of Liquidation Proposed by the Official*

*Committee of Unsecured Creditors* and grant such other and further relief to which Safety National is justly entitled.

Dated this 13th day of February 2024.

                        Respectfully Submitted,

                        */s/ Christopher Miles*
                        Christopher Miles
                        CA SBN 268774
                        christopher.miles@huschblackwell.com
                        HUSCH BLACKWELL LLP
                        4801 Main Street, Suite 1000
                        Kansas City, MO 64112
                        Telephone: 816.983.8307
                        Facsimile: 816.983.8080

                        *Counsel for Safety National Casualty Corporation*

SAFETY NATIONAL CASUALTY CORPORATION'S OBJECTION AND RESERVATION OF RIGHTS TO THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

HB: 4870-6165-3156.6

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 13th day of February, 2024, a true a correct copy of the foregoing *Safety National Casualty Corporation's Objection to the First Amended Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* was served upon all parties noticed pursuant to the Court's ECF filing system.

*/s/ Christopher Miles*
Christopher Miles

.

- 14 -

SAFETY NATIONAL CASUALTY CORPORATION'S OBJECTION AND RESERVATION OF RIGHTS TO THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

HB: 4870-6165-3156.6