# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

# FRESNO DIVISION

In re

MADERA COMMUNITY HOSPITAL,

    Debtor in Possession.

Tax ID#  23-7429117
Address:  1250 E. Almond Avenue
           Madera, CA 93637

Case No. 23-10457

Chapter: 11

DC No.:  PSJ-025

**ORDER (I) APPROVING DISCLOSURE STATEMENT; (II) ESTABLISHING PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES ON PLAN; (III) SCHEDULING HEARING ON CONFIRMATION OF PLAN; AND (IV) APPROVING RELATED MATTERS**

Judge: Hon. René Lastreto II

This matter coming before the Court on the *Third Amended Disclosure Statement for Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* (including all exhibits thereto and as may be amended, modified or supplemented in accordance with the terms therein, the "Disclosure Statement") and the *Motion for an Order (I) Approving Disclosure Statement (II) Establishing Procedures for the Solicitation and Tabulation of Votes on Plan; (III) Scheduling Hearing on Confirmation of Plan; and (IV) Approving Related Matters* [Docket No. 1121] (the "Motion")[1] filed by the Official Committee of Unsecured Creditors (the "Committee" or the "Plan Proponent") regarding Madera Community Hospital's (the "Debtor") bankruptcy case; and after considering objections to the Motion, if any; and upon the record and after due deliberation thereon; and the Court finding that proper and adequate notice of the hearing on approval of the Disclosure Statement and of the Motion has been given to all parties in interest, and no other or further notice or hearing being necessary; and after due deliberation and sufficient cause appearing therefore;

    **IT IS HEREBY FOUND AND CONCLUDED THAT:**

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

10344353

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.      The Disclosure Statement contains adequate information, within the meaning of section 1125 of the Bankruptcy Code, regarding the *Second Amended Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* [Docket No. 1451] (including all exhibits thereto and as amended, modified, or supplemented, the "Plan").

C.      The Solicitation Procedures and the Voting and Tabulation Procedures provide a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and applicable Bankruptcy Rules, including, without limitation, Bankruptcy Rules 2002, 3017, 3018, and 3020.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.  All objections to the Motion, including any objections to the adequacy of the Disclosure Statement, if any, are, to the extent not consensually resolved as set forth herein, overruled in their entirety.

2.      The Disclosure Statement is approved pursuant to 11 U.S.C. § 1125(b) and Fed. R. Bankr. P. 3017(b) in the form attached hereto as **Exhibit E**.  The Plan Proponent: (a) is authorized to make non-material revisions, updates, and corrections to the Plan and Disclosure Statement; and (b) shall file a copy of the final Disclosure Statement and any amended Plan with the Court.

3.      The hearing to consider confirmation of the Plan shall commence on **April 16, 2024, at 9:30 a.m. (Pacific Time)** (the "Confirmation Hearing").  The Confirmation Hearing may be continued from time to time by order of the Court.  Any request for a continuance of the Confirmation Hearing may be made orally at the Confirmation Hearing or in advance by written application pursuant to Local Rule 9014-1(j). The Plan may be modified, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during, or as a result of, the Confirmation Hearing, without further notice to interested parties.

4.      The Confirmation Hearing Notice, in substantially the form attached hereto as **Exhibit A**, is approved.  As set forth below, the Confirmation Hearing Notice shall be included as part of the Solicitation Package and sent via first class mail to all creditors and parties in interest entitled to vote

10344353

on the Plan. In addition, the Plan Proponent shall serve the Confirmation Hearing Notice upon (a) the Securities & Exchange Commission; (b) the Internal Revenue Service; (c) the Office of the United States Trustee; (d) all known creditors and parties in interest; and (e) those parties that have requested service under Bankruptcy Rule 2002.

5.      All objections to confirmation of the Plan, including any supporting memoranda, must be in writing, be filed with the Court, and shall (a) state the name and address of the objecting party and the amount of its Claim or the nature of its interest in the Debtor's bankruptcy case, (b) state with particularity the provision or provisions of the Plan objected to and, for any objection asserted, the legal and factual basis for such objection, and (c) be served upon the following parties (the "Notice Parties") so as to be received on or before **April 2, 2024 at 5:00 p.m.** (prevailing Pacific Time) (the "Plan Objection Deadline"): (i) the Debtor, 1250 E. Almond Avenue, Madera, California 93637, Attn: Karen Paolinelli (kpaolinelli@maderahospital.org); (ii) counsel for the Debtor, Wanger Jones Helsley LLP, 265 E. River Park Circle, Suite 310 Fresno, California 93720, Attn: Riley C. Walter (rwalter@wjhattorneys.com); (iii) counsel for the Committee, (x) Perkins Coie LLP, 505 Howard Street, Suite 1000, San Francisco, CA 94105, Attn: Paul Jasper (pjasper@perkinscoie.com) and (y) Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102, Attn: Andrew Sherman (asherman@sillscummis.com) and Boris Mankovetskiy (bmankovetskiy@sillscummis.com); and (iv) counsel to the United States Trustee, 501 I Street, Suite 7-500, Sacramento, California 95113, Attn: Jorge A. Gaitan (Jorge.a.gaitan@usdoj.gov). All objections not timely filed and served in accordance with the provisions of this Order are hereby deemed waived and will not be considered by this Court.

6.      If the Holder of a Claim would like to challenge either (a) the classification of such Claim or (b) the allowance of such Claim for voting purposes in accordance with the Voting and Tabulation Procedures, the Holder must, pursuant to Bankruptcy Rule 3018(a), file a motion for an order temporarily allowing such Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Notice Parties so that it is received by **March 19, 2024 at 5:00 p.m.** (prevailing Pacific Time). Unless the Court orders otherwise, a Claim will not be counted for voting purposes in excess of the amount determined in accordance with the Voting and

10344353

Tabulation Procedures. For the avoidance of doubt, any temporary allowance of Claims for voting purposes does not constitute an allowance of such Claims for purposes of receiving distributions under the Plan and is without prejudice to the rights of the Plan Proponent in any other context, including its right to contest the amount, validity, or classification of any Claim for purposes of allowance and distribution under the Plan.

7.      The date of entry of this Order (the "Record Date") shall be the record date for purposes of determining which parties are entitled to receive the Solicitation Packages or the Non-Voting Class Notice and, where applicable, vote on the Plan. With respect to a transferred Claim, the transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of such transferred Claim only if (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) had been completed prior to the Record Date; or (b) the transferee filed by the Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.

8.      The Plan Proponent shall transmit, or cause to be transmitted, the Solicitation Packages no later than **March 5, 2024** (the "Solicitation Mailing Deadline") by first class, United States mail (or by international courier if the addresses are not located in the United States), to holders of Claims in Classes 3 and 4, the only classes entitled to vote on the Plan (the "Voting Classes"). To avoid duplication and reduce expenses, the Plan Proponent shall serve only one Solicitation Package to each creditor who has more than one Claim, but shall include the appropriate Ballots for each class of Claims.

9.      Pursuant to Bankruptcy Rule 3017(d), the Plan Proponent is not required to transmit a Solicitation Package to the Non-Voting Classes. The Plan Proponent shall transmit or cause to be transmitted no later than the Solicitation Mailing Deadline, by first class, United States mail (or by international courier if the addresses are not located in the United States), to each holder of a Claim in the Non-Voting Classes, at its address to which notices are required to be sent pursuant to Bankruptcy Rule 2002(g), a notice substantially in the form attached hereto as **Exhibit B** (the "Non-Voting Class Notice"). The Non-Voting Class Notice will indicate that a holder of a Claim in a Non-Voting Class is entitled, upon written request to counsel to the Plan Proponent, to receive a copy of the Plan and

Disclosure Statement, at the expense of the Debtor. The Non-Voting Class Notice shall be deemed a summary of the Plan for purposes of compliance with Bankruptcy Rule 3017(d).

10. The Plan Proponent shall serve the Solicitation Package, the Non-Voting Class Notice, and notices regarding the Confirmation Hearing, inspect, monitor, and supervise the solicitation process, serve as the tabulator of the ballots, and certify to the Court the results of the balloting. The Plan Proponent is permitted to dispense with the mailing of Solicitation Packages or Non-Voting Class Notices to addresses and entities to which the notice of the Disclosure Statement Hearing was returned by the United States Postal Service or courier. The Plan Proponent is further relieved of any obligation to attempt to locate the correct address and re-send prior to the Voting Deadline the Solicitation Packages or the Non-Voting Class Notice that are returned as undeliverable. To the extent any Solicitation Packages are returned as undeliverable and are re-sent, the initial mailing date shall be the date of service for the purpose of calculating notice.

11. The Ballots, substantially in the forms attached hereto as **Exhibits C** **and** **D**, are approved. Unless extended by the Plan Proponent in writing, Ballots accepting or rejecting the Plan must be <u>received</u> on or before **April 2, 2024 at 5:00 p.m.** (prevailing Pacific Time) (the "<u>Voting Deadline</u>") by the Plan Proponent at the following address:

<div align="center">

**Sills Cummis & Gross P.C.,**
**Attn: Andrew Sherman, Esq. and Boris Mankovetskiy, Esq.**
**One Riverfront Plaza,**
**Newark, New Jersey 07102**

</div>

12. Ballots received via facsimile, electronic mail or other electronic transmission will not be counted, unless approved by the Plan Proponent.

13. Votes may not be changed after the Voting Deadline unless the Court, for cause, permits such change after notice and hearing pursuant to Bankruptcy Rule 3018(a). Ballots must be properly executed and counted. Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of a Claim in one of the Voting Classes will not be counted.

14. In cases where a party has executed a Ballot in accordance with the terms of this Order, and has indicated corrections or updates to the mailing address used in the service of the Solicitation

10344353

Package, either physically on the face of the Ballot or otherwise separately enclosed with the Ballot, the corrected or updated mailing address shall be used for future purposes.

15.     The Voting and Tabulation Procedures, as set forth in the Motion, are hereby approved in their entirety.

16.     Unless otherwise permitted or directed by the Court, (a) the Plan Proponent shall file and serve the Plan Supplement in accordance with the Order Limiting Scope of Notice [ECF No. 116] no later than **March 22, 2024**; (b) the Plan Proponent shall file the Tabulation Declaration no later than **April 9, 2024**; (c) the Plan Proponent may file a brief in support of the Plan and consolidated reply to any objections to the Plan no later than **April 9, 2024**; and (d) the Plan Proponent may file any motion to "designate" the vote(s) of any creditor(s), in accordance with section 1126(e) of the Bankruptcy Code, no later than **April 9, 2024**.

17.     In the event of an inconsistency between the Plan, on the one hand, and the Disclosure Statement (or solicitation materials or procedures approved by this Order), on the other hand, the Plan shall control.

18.     The Plan Proponent is authorized and empowered to take such steps, expend such monies, and perform such acts as may be necessary to implement and effectuate the terms of this Order.

19.     This Court retains jurisdiction over any and all matters arising out of or related to the interpretation or implementation of this Order.

/// END OF ORDER ///

Dated: Feb 29, 2024

By the Court

René Lastreto II, Judge
United States Bankruptcy Court

## **EXHIBIT A**

**Confirmation Hearing Notice**

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

In re

MADERA COMMUNITY HOSPITAL,

    Debtor in Possession.

Tax ID#   23-7429117
Address:   1250 E. Almond Avenue
           Madera, CA 93637

Case No. 23-10457

Chapter: 11

DC No.:  PSJ-025

**NOTICE OF (A) HEARING TO CONSIDER CONFIRMATION OF SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS; (B) DEADLINE FOR VOTING TO ACCEPT OR REJECT PLAN; AND (C) RELATED MATTERS**

Hearing Date:  April 16, 2024
Time:         9:30 a.m.
Place:        2500 Tulare Street
            Courtroom 13
            Fresno, CA 93721

Judge: Hon. René Lastreto II

**TO:    HOLDERS OF CLAIMS IN CLASS 3 (SAMC SECURED OBLIGATIONS) AND CLASS 4 (GENERAL UNSECURED CLAIMS):**

On February 20, 2024, the Official Committee of Unsecured Creditors (the "Committee" or the "Plan Proponent"), filed the *Second Amended Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* [Docket No. 1451] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan") in relation to Madera Community Hospital's (the "Debtor") bankruptcy case.

Concurrently with the filing of the Plan, the Plan Proponent filed the related Disclosure Statement in support of the Plan [Docket No. 1449] (including all exhibits thereto and as may be amended, modified or supplemented from time to time, collectively, the "Disclosure Statement"). On [●], 2024, this Court entered an order approving the Disclosure Statement [Docket No. ●] (the "Disclosure Statement Order") and certain related materials (collectively, the "Solicitation Materials").

A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held on April 16, 2024, commencing at 9:30 a.m. (prevailing Pacific Time), before the Honorable René Lastreto II, United States Bankruptcy Judge, at 2500 Tulare Street, Courtroom 13, Fresno, CA 93721.

The record date for determining which holders of claims against the Debtor may vote on the Plan is [●], 2024 at 5:00 p.m. (Pacific Time) (the "Record Date").  If you have received with this Notice a ballot form (a "Ballot"), you are eligible to vote to accept or reject the Plan.

For your Ballot to be counted, you must complete all required information on the Ballot, execute the Ballot and **return the completed Ballot to the address indicated on the Ballot so that it is received by 5:00 p.m. (Pacific Time) on April 2, 2024** (the "Voting Deadline"). Any failure to follow the voting instructions

included with the Ballot or to return a properly completed Ballot so that it is received by the Voting Deadline may disqualify your Ballot and your vote.

If an objection is pending with respect to your Claim as of March 12, 2024, your vote will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan, and you are required to file a motion for such relief (the "Rule 3018 Motion") no later than March 19, 2024, which may be heard on or prior to the Confirmation Hearing. Notwithstanding the foregoing, if the Plan Proponent files an objection to a claim and request that such claim be allowed in a specific amount, your Ballot shall be counted in such specified amount.

The Bankruptcy Court has established **April 2, 2024 at 5:00 p.m.** (prevailing Pacific Time), as the last date and time for filing and serving objections to the confirmation of the Plan (the "Plan Objection Deadline"). All objections must state with particularity the legal and factual grounds for such objection; they shall (i) be in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) be filed with the Court and served so as to be received by the Plan Objection Deadline; and (v) served on the following parties: (a) the Debtor, 1250 E. Almond Avenue, Madera, California 93637, Attn: Karen Paolinelli (kpaolinelli@maderahospital.org); (b) counsel for the Debtor, Wanger Jones Helsley LLP, 265 E. River Park Circle, Suite 310 Fresno, California 93720, Attn: Riley C. Walter (rwalter@wjhattorneys.com); (c) counsel for the Committee, (x) Perkins Coie LLP, 505 Howard Street, Suite 1000, San Francisco, CA 94105, Attn: Paul Jasper (pjasper@perkinscoie.com) and (y) Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102, Attn: Andrew Sherman (asherman@sillscummis.com) and Boris Mankovetskiy (bmankovetskiy@sillscummis.com); (d) counsel to the United States Trustee, 501 I Street, Suite 7-500, Sacramento, California 95113, Attn: Jorge A. Gaitan (Jorge.a.gaitan@usdoj.gov).; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**Objections not timely filed and served by the Plan Objection Deadline in accordance with the provisions of this Notice will not be heard and will be overruled.**

**Articles X and XI of the Plan contain the proposed release, limitation on liability, injunction and exculpation provisions set forth on Annex A hereto.**

Any party in interest wishing to obtain copies of the Disclosure Statement or the Plan at the Debtor's expense may do so by contacting the Plan Proponent. The documents are also available on the Court's website: www.caeb.uscourts.gov. Please note that a PACER password and login are needed to access documents on the Court's website.

The Confirmation Hearing may be continued from time to time by order of the Court. Any request for a continuance of the Confirmation Hearing may be made orally at the Confirmation Hearing or in advance by written application pursuant to Local Rule 9014-1(j).

Dated:     March [_], 2024

*/s/ DRAFT*
Paul S. Jasper (CA Bar No. 200138)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone:     415.344.7000
Facsimile:      415.344.7050
Email:           PJasper@perkinscoie.com

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
SILLS CUMMIS & GROSS P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

One Riverfront Plaza
Newark, New Jersey 07102
Telephone:      973.643.7000
Facsimile       973.643.6500
Email:          ASherman@sillscummis.com
                BMankovetskiy@sillscummis.com

*Co-Counsel to the Official Committee of Unsecured
Creditors*

<div align="center">

**Annex A**

**ARTICLE X**
**LIMITATION ON LIABILITY AND RELATED PROVISIONS**

</div>

**Release of SAMC**

Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, for good and valuable consideration, on and after the Effective Date, SAMC is expressly, unconditionally, generally and individually and collectively released, acquitted and discharged by the Debtor and its Estate from any and all actions, claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims or claims for recharacterization, subordination, or avoidance of the SAMC Secured Obligations, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and SAMC, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by SAMC on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

**Limitation on Liability of Liquidation Trustee**

The Liquidation Trustee, the Liquidation Trust Oversight Committee, and the individual members of the Liquidation Trust Oversight Committee will not be liable for any act they may do or omit to do as in such capacity under the Plan and the Liquidation Trust Agreement, as applicable, while acting in good faith and in the exercise of their reasonable business judgment; nor will any of them be liable in any event except for gross negligence, willful misconduct, or fraud as determined by a Final Order of a court of competent jurisdiction. Subject to the discretion of the Liquidation Trustee, and as memorialized in the Liquidation Trust Agreement, an applicable engagement letter, or other written agreement, the foregoing limitation on liability shall also apply to one or more (or all) Persons or Entities employed by any such party (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such party in the fulfillment of their respective duties hereunder or under the Liquidation Trust Agreement. Also, the Liquidation Trustee, the Liquidation Trust Oversight Committee (and its individual members), and (subject to the discretion of the Liquidation Trustee, and as memorialized in the Liquidation Trust Agreement, an applicable engagement letter, or other written agreement) one or more (or all) Persons or Entities employed by such parties (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such a party shall be entitled to indemnification out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being employed by such party, or for performing any functions incidental to such service.

## ARTICLE XI
## EXCULPATION AND INJUNCTION

**Exculpation**

Except as otherwise specifically provided in the Plan, the Exculpated Parties will neither have nor incur any liability to any Entity or Person for any claims or Causes of Action arising between the Petition Date and the Effective Date for any act taken or omitted to be taken in connection with, or related to the Chapter 11 Case, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, pursuing, or effecting the Consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, pursuing confirmation of the Plan, or soliciting votes on the Plan and the Exculpated Parties shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; *provided, further*, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action, or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

**Injunction**

**Except as otherwise provided in the Plan, from and after the Effective Date, all Entities and Persons who have held, hold, or may hold Claims against the Debtor or its Estate, are permanently enjoined from taking any action in furtherance of such Claim and/or any other cause of action released and/or discharged under the Plan, including, without limitation, the following actions: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets with respect to any such Claim and/or other cause of action, or taking any act to recover such Claim outside of the claims allowance procedures discussed in this Plan, the Bankruptcy Code and Bankruptcy Rules; (ii) creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien, security interest or encumbrance of any kind against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets on account of any such Claim and/or other cause of action; (iii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or cause of action; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due from or to the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets, or against the property or interests in property of the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or other cause of action; *provided*, *however,* that any rights of recoupment asserted by the California Department of Health Care Services against the Debtor or the Estate and any rights and defenses of the Debtor, the Estate, the Liquidation Trust and the Liquidation Trustee with respect thereto are fully preserved; *provided, further*, that solely with respect to the Debtor, the Debtor's property, and the Debtor's Estate, the foregoing injunction shall remain in effect only until both**

**(a) the Chapter 11 Case has been closed and (b) all assets of the Debtor's Estate and the Liquidation Trust Assets have been fully administered; *provided further, however*, that such injunction shall be revived and/or remain in effect, as applicable, to the extent that the Chapter 11 Case is reopened for any reason, until the Chapter 11 Case is closed and the other conditions for termination of the injunction set forth in this paragraph have been satisfied. By accepting Plan Distributions, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions in the Plan. Such injunctions shall extend for the benefit of the Liquidation Trustee, any successors of the Debtor, and to property and interests in property subject to this Plan. All injunctions or stays provided for in the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date. The injunction in this paragraph shall apply only to actions against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, and/or the Liquidation Trust Assets.**

**From and after the Effective Date, to the extent of the Exculpations and limitations of liability granted in this Plan, all Persons and Entities shall be permanently enjoined from commencing or continuing in any manner against the Exculpated Parties or parties whose liability is limited (collectively, the "Protected Parties"), and their respective assets and properties, as the case may be, any suit, action, or other proceeding on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest, or remedy with respect to which such Protected Parties are exculpated or with respect to which such Protected Parties' liability is otherwise limited.**

# **EXHIBIT B**

**Non-Voting Class Notice**

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

In re

MADERA COMMUNITY HOSPITAL,

Debtor in Possession.

Tax ID#   23-7429117
Address:   1250 E. Almond Avenue
           Madera, CA 93637

Case No. 23-10457

Chapter: 11

DC No.:  PSJ-025

**NOTICE OF NON-VOTING STATUS WITH RESPECT TO CLASSES DEEMED AND PRESUMED TO ACCEPT SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Hearing Date: April 16, 2024
Time:              9:30 a.m.
Place:             2500 Tulare Street
                       Courtroom 13
                       Fresno, CA 93721

Judge: Hon. René Lastreto II

**TO:**     **HOLDERS OF CLAIMS IN CLASS 1 (OTHER PRIORITY CLAIMS) AND CLASS 2 (OTHER SECURED CLAIMS)**

On February 20, 2024, the Official Committee of Unsecured Creditors (the "<u>Committee</u>" or the "<u>Plan Proponent</u>"), filed the *Second Amended Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* [Docket No. 1451] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Plan</u>") in relation to Madera Community Hospital's (the "<u>Debtor</u>") bankruptcy case.

Concurrently with the filing of the Plan, the Plan Proponent filed the related Disclosure Statement in support of the Plan [Docket No. 1449] (including all exhibits thereto and as may be amended, modified or supplemented from time to time, collectively, the "<u>Disclosure Statement</u>"). On [●], 2024, this Court entered an order approving the Disclosure Statement [Docket No. ●] (the "<u>Disclosure Statement Order</u>") and certain related materials (collectively, the "<u>Solicitation Materials</u>").

Pursuant to section 1126(f) of the Bankruptcy Code, Holders holding Claims in Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) under the Plan, which are Unimpaired, are conclusively deemed and presumed to have accepted the Plan and are not entitled to vote. Accordingly, the Plan Proponent is not required to transmit a Solicitation Package to holders of Claims in Classes 1 and 2 of the Plan (each, a "<u>Non-Voting Class</u>") pursuant to the Disclosure Statement Order. Instead, you have been sent this notice because you have been identified as a holder of a Claim or Equity Interest in a Non-Voting Class.

<u>**Articles X and XI of the Plan contain the proposed release, limitation on liability, injunction and exculpation provisions set forth on Annex A hereto.**</u>

A hearing to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>") will be held on April 16, 2024, commencing at 9:30 a.m. (prevailing Pacific Time), before the Honorable René Lastreto II, United States Bankruptcy Judge, at 2500 Tulare Street, Courtroom 13, Fresno, CA 93721. The Confirmation Hearing may

be continued from time to time without further notice except for an announcement made at the Confirmation Hearing or any adjourned confirmation hearing.

The Bankruptcy Court has established **April 2, 2024 at 5:00 p.m.** (prevailing Pacific Time), as the last date and time for filing and serving objections to the confirmation of the Plan (the "Plan Objection Deadline"). All objections must state with particularity the legal and factual grounds for such objection; they shall (i) be in writing; (ii) state the name and address of the objecting party and the nature of the claim of such party; (iii) state with particularity the basis and nature of any objection; (iv) be filed with the Court and served so as to be received by the Plan Objection Deadline; and (v) served on the following parties: (a) the Debtor, 1250 E. Almond Avenue, Madera, California 93637, Attn: Karen Paolinelli (kpaolinelli@maderahospital.org); (b) counsel for the Debtor, Wanger Jones Helsley LLP, 265 E. River Park Circle, Suite 310 Fresno, California 93720, Attn: Riley C. Walter (rwalter@wjhattorneys.com); (c) counsel for the Committee, (x) Perkins Coie LLP, 505 Howard Street, Suite 1000, San Francisco, CA 94105, Attn: Paul Jasper (pjasper@perkinscoie.com) and (y) Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102, Attn: Andrew Sherman (asherman@sillscummis.com) and Boris Mankovetskiy (bmankovetskiy@sillscummis.com); (d) counsel to the United States Trustee, 501 I Street, Suite 7-500, Sacramento, California 95113, Attn: Jorge A. Gaitan (Jorge.a.gaitan@usdoj.gov); and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**Objections not timely filed and served by the Plan Objection Deadline in accordance with the provisions of this Notice will not be heard and will be overruled.**

Any party in interest wishing to obtain copies of the Disclosure Statement or the Plan at the Debtor's expense may do so by contacting the Plan Proponent. The documents are also available on the Court's website: www.caeb.uscourts.gov. Please note that a PACER password and login are needed to access documents on the Court's website.

The Confirmation Hearing may be continued from time to time without further notice except for (i) an announcement made at the Confirmation Hearing or any adjourned confirmation hearing or (ii) a written notice filed with the Bankruptcy Court and served on all parties who have filed objections to confirmation of the Plan, the United States Trustee, and all parties who have requested notice in this chapter 11 case pursuant to Bankruptcy Rule 2002.

Dated:    March [_], 2024

*/s/ DRAFT*

Paul S. Jasper (CA Bar No. 200138)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone:    415.344.7000
Facsimile:    415.344.7050
Email:          PJasper@perkinscoie.com

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:    973.643.7000
Facsimile     973.643.6500
Email:          ASherman@sillscummis.com
                  BMankovetskiy@sillscummis.com

*Co-Counsel to the Official Committee of Unsecured Creditors*

**Annex A**


**ARTICLE X**
**LIMITATION ON LIABILITY AND RELATED PROVISIONS**

**Release of SAMC**

Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, for good and valuable consideration, on and after the Effective Date, SAMC is expressly, unconditionally, generally and individually and collectively released, acquitted and discharged by the Debtor and its Estate from any and all actions, claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims or claims for recharacterization, subordination, or avoidance of the SAMC Secured Obligations, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and SAMC, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by SAMC on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

**Limitation on Liability of Liquidation Trustee**

The Liquidation Trustee, the Liquidation Trust Oversight Committee, and the individual members of the Liquidation Trust Oversight Committee will not be liable for any act they may do or omit to do as in such capacity under the Plan and the Liquidation Trust Agreement, as applicable, while acting in good faith and in the exercise of their reasonable business judgment; nor will any of them be liable in any event except for gross negligence, willful misconduct, or fraud as determined by a Final Order of a court of competent jurisdiction.  Subject to the discretion of the Liquidation Trustee, and as memorialized in the Liquidation Trust Agreement, an applicable engagement letter, or other written agreement, the foregoing limitation on liability shall also apply to one or more (or all) Persons or Entities employed by any such party (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such party in the fulfillment of their respective duties hereunder or under the Liquidation Trust Agreement. Also, the Liquidation Trustee, the Liquidation Trust Oversight Committee (and its individual members), and (subject to the discretion of the Liquidation Trustee, and as memorialized in the Liquidation Trust Agreement, an applicable engagement letter, or other written agreement) one or more (or all) Persons or Entities employed by such parties (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such a party shall be entitled to indemnification out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being employed by such party, or for performing any functions incidental to such service.

# ARTICLE XI
## EXCULPATION AND INJUNCTION

### Exculpation

Except as otherwise specifically provided in the Plan, the Exculpated Parties will neither have nor incur any liability to any Entity or Person for any claims or Causes of Action arising between the Petition Date and the Effective Date for any act taken or omitted to be taken in connection with, or related to the Chapter 11 Case, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, pursuing, or effecting the Consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, pursuing confirmation of the Plan, or soliciting votes on the Plan and the Exculpated Parties shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; *provided, further*, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action, or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

### Injunction

**Except as otherwise provided in the Plan, from and after the Effective Date, all Entities and Persons who have held, hold, or may hold Claims against the Debtor or its Estate, are permanently enjoined from taking any action in furtherance of such Claim and/or any other cause of action released and/or discharged under the Plan, including, without limitation, the following actions: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets with respect to any such Claim and/or other cause of action, or taking any act to recover such Claim outside of the claims allowance procedures discussed in this Plan, the Bankruptcy Code and Bankruptcy Rules; (ii) creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien, security interest or encumbrance of any kind against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets on account of any such Claim and/or other cause of action; (iii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or other cause of action; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due from or to the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets, or against the property or interests in property of the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or other cause of action; *provided, however,* that any rights of recoupment asserted by the California Department of Health Care Services against the Debtor or the Estate and any rights and defenses of the Debtor, the Estate, the Liquidation Trust and the Liquidation Trustee with respect thereto are fully preserved; *provided, further,* that solely with respect to the Debtor, the Debtor's property, and the Debtor's Estate, the foregoing injunction shall remain in effect only until both**

**(a) the Chapter 11 Case has been closed and (b) all assets of the Debtor's Estate and the Liquidation Trust Assets have been fully administered;** *provided further, however*, **that such injunction shall be revived and/or remain in effect, as applicable, to the extent that the Chapter 11 Case is reopened for any reason, until the Chapter 11 Case is closed and the other conditions for termination of the injunction set forth in this paragraph have been satisfied. By accepting Plan Distributions, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions in the Plan. Such injunctions shall extend for the benefit of the Liquidation Trustee, any successors of the Debtor, and to property and interests in property subject to this Plan. All injunctions or stays provided for in the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date. The injunction in this paragraph shall apply only to actions against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, and/or the Liquidation Trust Assets.**

**From and after the Effective Date, to the extent of the Exculpations and limitations of liability granted in this Plan, all Persons and Entities shall be permanently enjoined from commencing or continuing in any manner against the Exculpated Parties or parties whose liability is limited (collectively, the "<u>Protected Parties</u>"), and their respective assets and properties, as the case may be, any suit, action, or other proceeding on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest, or remedy with respect to which such Protected Parties are exculpated or with respect to which such Protected Parties' liability is otherwise limited.**

5

**<u>EXHIBIT C</u>**

**Forms of Ballot**

**(Class 4 – General Unsecured Claim)**

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

In re

MADERA COMMUNITY HOSPITAL,

     Debtor in Possession.

Tax ID#   23-7429117
Address:   1250 E. Almond Avenue
              Madera, CA 93637

---

Case No. 23-10457

Chapter: 11

DC No.:  PSJ-025

**BALLOT TO ACCEPT OR REJECT SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Hearing Date: April 16, 2024
Time:         9:30 a.m.
Place:        2500 Tulare Street
              Courtroom 13
              Fresno, CA 93721

Judge: Hon. René Lastreto II

---

## CLASS 4:  GENERAL UNSECURED CLAIMS

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF HOLDERS OF CLASS 4 GENERAL UNSECURED CLAIMS FOR VOTING.  PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY.  PLEASE COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY.  IF THE PLAN PROPONENT HAS NOT RECEIVED THIS BALLOT BY 5:00 P.M., PREVAILING PACIFIC TIME, ON APRIL 2, 2024 (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED AT THE DISCRETION OF THE PLAN PROPONENT, IT WILL NOT BE COUNTED.  <u>FACSIMILE AND E-MAIL BALLOTS WILL NOT BE ACCEPTED.</u>**

This ballot (the "<u>Ballot</u>") is submitted to you to solicit your vote to accept or reject the *Second Amended Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* [Docket No. 1451] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Plan</u>") filed by the Official Committee of Unsecured Creditors (the "<u>Committee</u>" and/or the "<u>Plan Proponent</u>") in relation to Madera Community Hospital's (the "<u>Debtor</u>") bankruptcy case.[1]  The Plan is described in the related *Third Amended Disclosure Statement for Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* [Docket No. 1449] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Disclosure Statement</u>") approved by order [Docket No. ●] of the United States Bankruptcy Court for the Eastern District of California (the "<u>Bankruptcy Court</u>").  The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your claim(s) under the Plan.

---

[1]  Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in Class 4 who vote on the Plan and if the Plan otherwise satisfies applicable legal requirements.

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR IF YOU LOSE YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE PLAN PROPONENT.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEM 1. IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST. IF THIS BALLOT IS NOT SIGNED IN ITEM 2 BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Class Vote.**  The undersigned, the holder of a Class 4 General Unsecured Claim, hereby votes, in the amount set forth below, as follows (check <u>one</u> box):

☐ Accept the Plan          ☐ Reject the Plan.

Amount of Claim:  $_____

**Item 2.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant.  The undersigned understands that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted.

| | |
|---|---|
| _____ | _____ |
| Name of Creditor | Social Security or Federal Tax I.D. No. (optional) |
| _____ | _____ |
| Signature | |
| _____ | _____ |
| If by Authorized Agent, Name and Title | Street Address |
| | _____ |
| | City, State, Zip Code |
| _____ | _____ |
| Date Completed | Telephone Number |

2

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.     In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to the Plan Proponent at the following address:

<div align="center">

**Sills Cummis & Gross P.C.,**
**Attn: Andrew Sherman, Esq. and Boris Mankovetskiy, Esq.**
**One Riverfront Plaza,**
**Newark, New Jersey 07102**

</div>

An envelope addressed to the Plan Proponent is enclosed for your convenience.

**Ballots must be *received* by the Plan Proponent by 5:00 p.m., prevailing Pacific Time, April 2, 2024 (the "<u>Voting Deadline</u>").**  If a Ballot is received after the Voting Deadline, it will not be counted.

2.     Please sign and date your Ballot as required in Item 2.  Your signature is required before your Ballot may be counted.

3.     If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan, unless there is an objection to your claim pending as of March 12, 2024.  The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Plan Proponent, or any other party in interest, in any other context (*e.g.*, the right to contest the amount or validity of any claim for purposes of allowance under the Plan).  If your claim is the subject of an objection that was filed by March 12, 2024, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan. In order for a claim subject to a timely filed objection to be temporarily allowed for voting purposes only, you are required to file a motion with the Bankruptcy Court seeking such relief by no later than March 19, 2024. Notwithstanding the foregoing, if the Plan Proponent files a timely objection to your claim and requests that your claim be allowed in a specific amount, and you file a timely and valid Ballot, your Ballot shall be counted in such specified amount.

4.     The following voting and standard assumptions shall be used in tabulating Ballots, including yours:

a.     Except to the extent the Plan Proponent otherwise determines, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Plan Proponent in connection with the confirmation of the Plan;

b.     Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each class to either accept or reject the Plan.  If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

c.     Any executed Ballot which does not indicate an acceptance or rejection shall not be counted;

d.     Any executed Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

e.     Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

f.     The method of delivery of Ballots to be sent to the Plan Proponent is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Plan Proponent;

g.     Delivery of the original executed Ballot to the Plan Proponent on or before the Voting Deadline is required.  Delivery of a Ballot by facsimile, email or any other electronic means will not be accepted unless otherwise ordered by the Court;

h.    If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

i.    If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Plan Proponent, must submit proper evidence, satisfactory to the Plan Proponent, of such person's authority to so act in such capacity;

j.    The Plan Proponent, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting; *provided, however*, that the Tabulation Declaration shall identify any defective Ballots accepted by the Plan Proponent for purposes of voting on the Plan.  Except as otherwise provided herein, the Plan Proponent may reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

k.    Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Plan Proponent, which determination shall be final and binding;

l.    If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim shall not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

m.    Any holder of a Claim who has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

n.    Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

o.    Neither the Plan Proponent, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

p.    No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

q.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

r.    The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

5.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

6.    **PLEASE RETURN YOUR BALLOT PROMPTLY.  THE PLAN PROPONENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE OR E-MAIL**.

NO PERSON, INCLUDING THE PLAN PROPONENT, HAS BEEN AUTHORIZED TO GIVE ANY ADVICE, INCLUDING LEGAL ADVICE, REGARDING THE DEBTOR OR THE PLAN.

4

**<u>EXHIBIT D</u>**

**Forms of Ballot**

**(Class 3 – SAMC Secured Obligation)**

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

In re

MADERA COMMUNITY HOSPITAL,

    Debtor in Possession.

Tax ID#  23-7429117
Address:   1250 E. Almond Avenue
            Madera, CA 93637

Case No. 23-10457

Chapter: 11

DC No.:  PSJ-025

**BALLOT TO ACCEPT OR REJECT SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Hearing Date: April 16, 2024
Time:        9:30 a.m.
Place:       2500 Tulare Street
            Courtroom 13
            Fresno, CA 93721

Judge: Hon. René Lastreto II

## CLASS 3:  SAMC SECURED OBLIGATION

**THIS BALLOT IS TO BE USED BY OR ON BEHALF OF HOLDERS OF CLASS 3 SAMC SECURED OBLIGATIONS FOR VOTING. PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY.  PLEASE COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED ENVELOPE PROMPTLY.  IF THE PLAN PROPONENT HAS NOT RECEIVED THIS BALLOT BY 5:00 P.M., PREVAILING PACIFIC TIME, ON APRIL 2, 2024 (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED AT THE DISCRETION OF THE PLAN PROPONENT, IT WILL NOT BE COUNTED.  <u>FACSIMILE AND E-MAIL BALLOTS WILL NOT BE ACCEPTED.</u>**

This ballot (the "<u>Ballot</u>") is submitted to you to solicit your vote to accept or reject the *Second Amended Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* [Docket No. 1451] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Plan</u>") filed by the Official Committee of Unsecured Creditors (the "<u>Committee</u>" and/or the "<u>Plan Proponent</u>") in relation to Madera Community Hospital's (the "<u>Debtor</u>") bankruptcy case.[1] The Plan is described in the related *Third Amended Disclosure Statement for Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* [Docket No. 1449] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Disclosure Statement</u>") approved by order [Docket No. ●] of the United States Bankruptcy Court for the Eastern District of California (the "<u>Bankruptcy Court</u>").  The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your claim(s) under the Plan.

---

[1]  Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least one-half in number and two-thirds in amount of the claims in Class 3 who vote on the Plan and if the Plan otherwise satisfies applicable legal requirements.

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR IF YOU LOSE YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE PLAN PROPONENT.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEM 1. IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST. IF THIS BALLOT IS NOT SIGNED IN ITEM 2 BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Class Vote.** The undersigned, the holder of a Class 3 SAMC Secured Obligation, hereby votes, in the amount set forth below, as follows (check <u>one</u> box):

☐ Accept the Plan          ☐ Reject the Plan.

Amount of Claim: $_____

**Item 2. Acknowledgments.** By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant. The undersigned understands that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted.

| | |
|---|---|
| _____ | _____ |
| Name of Creditor | Social Security or Federal Tax I.D. No. (optional) |
| _____ | _____ |
| Signature | |
| _____ | _____ |
| If by Authorized Agent, Name and Title | Street Address |
| | _____ |
| | City, State, Zip Code |
| _____ | _____ |
| Date Completed | Telephone Number |

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.    In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to the Plan Proponent at the following address:

<div align="center">

**Sills Cummis & Gross P.C.,**
**Attn: Andrew Sherman, Esq. and Boris Mankovetskiy, Esq.**
**One Riverfront Plaza,**
**Newark, New Jersey 07102**

</div>

An envelope addressed to the Plan Proponent is enclosed for your convenience.

**Ballots must be *received* by the Plan Proponent by 5:00 p.m., prevailing Pacific Time, April 2, 2024 (the "Voting Deadline").**  If a Ballot is received after the Voting Deadline, it will not be counted.

2.    Please sign and date your Ballot as required in Item 2.  Your signature is required before your Ballot may be counted.

3.    If your claim has not been previously allowed by order of the Bankruptcy Court, your claim will be deemed to be temporarily allowed, solely for purposes of voting on the Plan, unless there is an objection to your claim pending as of March 12, 2024.  The temporary allowance of your claim for voting purposes does not constitute an allowance of your claim for purposes of distribution under the Plan and is without prejudice to the rights of the Plan Proponent, or any other party in interest, in any other context (*e.g.*, the right to contest the amount or validity of any claim for purposes of allowance under the Plan).  If your claim is the subject of an objection that was filed by March 12, 2024, in accordance with Bankruptcy Rule 3018, your Ballot will not be counted unless the Court temporarily allows your claim for purposes of voting to accept or reject the Plan. In order for a claim subject to a timely filed objection to be temporarily allowed for voting purposes only, you are required to file a motion with the Bankruptcy Court seeking such relief by no later than March 19, 2024. Notwithstanding the foregoing, if the Plan Proponent files a timely objection to your claim and requests that your claim be allowed in a specific amount, and you file a timely and valid Ballot, your Ballot shall be counted in such specified amount.

4.    The following voting and standard assumptions shall be used in tabulating Ballots, including yours:

a.    Except to the extent the Plan Proponent otherwise determines, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Plan Proponent in connection with the confirmation of the Plan;

b.    Claims shall not be split for purposes of voting; thus, each creditor must vote the full amount of its Claim(s) within each class to either accept or reject the Plan.  If a creditor attempts to split such vote on their Ballot, such Ballot will not be counted for voting purposes;

c.    Any executed Ballot which does not indicate an acceptance or rejection shall not be counted;

d.    Any executed Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

e.    Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

f.    The method of delivery of Ballots to be sent to the Plan Proponent is at the election and risk of each holder of a Claim, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Plan Proponent;

g.    Delivery of the original executed Ballot to the Plan Proponent on or before the Voting Deadline is required.  Delivery of a Ballot by facsimile, email or any other electronic means will not be accepted unless otherwise ordered by the Court;

h.      If multiple Ballots are received from or on behalf of an individual holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

i.      If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Plan Proponent, must submit proper evidence, satisfactory to the Plan Proponent, of such person's authority to so act in such capacity;

j.      The Plan Proponent, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting; *provided, however*, that the Tabulation Declaration shall identify any defective Ballots accepted by the Plan Proponent for purposes of voting on the Plan.  Except as otherwise provided herein, the Plan Proponent may reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

k.      Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Plan Proponent, which determination shall be final and binding;

l.      If a designation is requested under section 1126(e) of the Bankruptcy Code, any vote to accept or reject the Plan cast with respect to such Claim shall not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

m.      Any holder of a Claim who has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

n.      Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

o.      Neither the Plan Proponent, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

p.      No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

q.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

r.      The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

5.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

6.      **PLEASE RETURN YOUR BALLOT PROMPTLY.  THE PLAN PROPONENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE OR E-MAIL**.

NO PERSON, INCLUDING THE PLAN PROPONENT, HAS BEEN AUTHORIZED TO GIVE ANY ADVICE, INCLUDING LEGAL ADVICE, REGARDING THE DEBTOR OR THE PLAN.

4

1

**<u>EXHIBIT E</u>**

2

**DISCLOSURE STATEMENT**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Paul S. Jasper (CA Bar No. 200138)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050
Email:     PJasper@perkinscoie.com

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: 973.643.7000
Facsimile: 973.643.6500
Email:     ASherman@sillscummis.com
           BMankovetskiy@sillscummis.com

*Co-Counsel to the Official Committee of
Unsecured Creditors*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

In re

MADERA COMMUNITY HOSPITAL,

    Debtor in Possession.

Tax ID#   23-7429117
Address:   1250 E. Almond Avenue
           Madera, CA 93637

Case No. 23-10457

Chapter: 11

DC No.: PSJ-025

**THIRD AMENDED DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**Hearing Date**:

Date:    February 27, 2024
Time:    9:30 a.m. Pacific Time
Place:   2500 Tulare Street
         Courtroom 13
         Fresno, CA 93721
Judge:   Judge: Hon. René Lastreto II

**NOTE: THIS DISCLOSURE STATEMENT HAS <u>NOT YET BEEN</u> APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125(A) OF THE BANKRUPTCY CODE**

**ARTICLE I.** EXECUTIVE SUMMARY ...............................................................................1

    A.     AN OVERVIEW OF THE CHAPTER 11 PROCESS ...................................2

    B.     OVERVIEW OF THE PLAN ...........................................................................3

10408334

C.      SOLICITATION, VOTING AND CONFIRMATION MATTERS ..............5

    **1.**     Who May Vote on the Plan.................................................................5

    **2.**     Summary of Solicitation Package and Voting Instructions ..............6

    **3.**     Confirmation of the Plan...................................................................7

    **4.**     Confirming and Consummating the Plan...........................................7

    **5.**     Rules of Interpretation .....................................................................7

    **6.**     Distribution of Non-Voting Class Notice to Holders of Claims in Non-Voting Classes and Holders of Disputed Claims.......................8

    **7.**     Filing of the Plan Supplement..........................................................8

    **8.**     The Confirmation Hearing ................................................................8

    **9.**     The Deadline for Objecting to Confirmation of the Plan .................8

    **10.**    Effect of Confirmation of the Plan....................................................9

D.      RISK FACTORS ..............................................................................9

**ARTICLE II.** BACKGROUND TO THE CHAPTER 11 CASE ........................................9

A.      THE DEBTOR'S HISTORY, BUSINESS, AND OPERATIONS ..............9

B.      THE DEBTOR'S MANAGEMENT ................................................10

C.      SUMMARY OF PRE-PETITION INDEBTEDNESS ................................10

    1.     Secured Debt...................................................................................10

    a.     Saint Agnes Medical Center ..........................................................10

    b.     New England Sheet Metal ...............................................................11

    c.     Equipment Loans/Leases .................................................................11

    2.     General Unsecured Claims ..............................................................11

    3.     Rubio Claims and Rubio Adversary Proceeding Asserting Violations of Federal and California WARN Act, Cal. Labor Code § 227.3, and PAGA.............................................................................................11

D.      EVENTS LEADING TO THE BANKRUPTCY CASE .............................13

E.      DEVELOPMENTS IN THE DEBTOR'S CHAPTER 11 CASE................14

| | 1. | First Day and Other Early Motions and Orders | 14 |
|---|---|---|---|
| | 2. | Retention of Chapter 11 Professionals | 14 |
| | 3. | Appointment of the Unsecured Creditors' Committee | 14 |
| | 4. | Schedules and Statements of Financial Affairs | 15 |
| | 5. | Claims Bar Date | 15 |
| | 6. | Exclusivity | 15 |
| | 7. | Assumption of Certain Executory Contracts | 15 |
| | 8. | Rejection of Certain Leases and Executory Contracts | 15 |
| | 9. | Use of Cash Collateral | 16 |
| | 10. | Asset Sales | 16 |
| | 11. | Rubio Adversary Proceeding Against the Debtor | 16 |
| | 12. | Adversary Proceeding Against the U.S. Department of Health and Human Services | 17 |
| | 13. | Motion to Set First Interim Administrative Expense Bar Date | 17 |
| | 14. | The Hospital Reopening Motion | 17 |

**ARTICLE III.** PRESERVATION OF CAUSES OF ACTION .......................... 18

**ARTICLE IV.** SUMMARY OF THE PLAN .................................................... 22

| A. | | ADMINISTRATIVE AND PRIORITY TAX CLAIMS | 22 |
|---|---|---|---|
| | 1. | Administrative Expense Claims | 22 |
| | 2. | Priority Tax Claims | 23 |
| B. | | CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS | 23 |
| | 1. | Summary | 23 |
| | 2. | Separate Classification of Certain Claims | 24 |
| | 3. | **Elimination of Vacant Classes** | 24 |
| | 4. | Voting; Presumptions; Solicitation in Good Faith | 24 |
| | 5. | **Cramdown** | 24 |

| | | | |
|---|---|---|---|
| **6.** | Classification and Treatment of Claims | | 24 |
| **7.** | Special Provision Governing Unimpaired Claims | | 27 |
| **8.** | Special Provision Governing Cash Paid to SAMC | | 27 |
| **9.** | Subordinated Claims | | 27 |
| **C.** | ACCEPTANCE OR REJECTION OF THE PLAN | | 27 |
| **1.** | Deemed and Presumed Acceptance of Plan | | 27 |
| **2.** | Voting Classes | | 27 |
| **3.** | Controversy Concerning Impairment | | 28 |
| **4.** | Acceptance by Impaired Classes of Claims | | 28 |
| **5.** | Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code | | 28 |
| **D.** | MEANS FOR IMPLEMENTATION OF THE PLAN | | 28 |
| **1.** | Overview | | 28 |
| **2.** | The MTA & MSA | | 29 |
| **3.** | Pivot to a Liquidation Transaction | | 35 |
| **4.** | General Settlement of Claims | | 35 |
| **5.** | Continued Existence of Debtor and Vesting of Assets in Liquidation Trust | | 35 |
| **6.** | Corporate Action | | 36 |
| **7.** | Liquidation Trust | | 37 |
| **8.** | Liquidation Trustee | | 38 |
| **9.** | Liquidation Trust Beneficiaries | | 41 |
| **10.** | Liquidation Trust Oversight Committee | | 41 |
| **11.** | Source of Funding / Net Distributable Assets | | 42 |
| **12.** | Distribution of Liquidation Trust Interests | | 43 |
| **13.** | Distribution of Net Distributable Assets | | 43 |
| **14.** | Disputed Claims Reserve | | 43 |

10408334

| | 15. | Objections to Claims | 44 |
| | 16. | Surcharge Under Section 506(c) of the Bankruptcy Code | 44 |
| | 17. | Disallowance of Untimely Claims | 44 |
| | 18. | Claims Paid or Payable by Third Parties and Insured Claims | 45 |
| | 19. | Preservation of Causes of Action | 46 |
| | 20. | Release of Liens, Claims and Security Interests | 47 |
| | 21. | Cancellation of Securities, Certificates and Instruments | 47 |
| | 22. | Dissolution of Debtor; Final Decree | 47 |
| | 23. | Treatment of Vacant Classes | 47 |
| E. | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 48 |
| | 1. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 48 |
| | 2. | Claims On Account of the Rejection of Executory Contracts or Unexpired Leases | 49 |
| | 3. | Preservation and Vesting of D&O Liability Insurance Policies | 49 |
| F. | | LIMITATION ON LIABILITY AND RELATED PROVISIONS | 50 |
| | 1. | General | 50 |
| | 2. | Release of SAMC | 50 |
| | 3. | Limitation on Liability of Liquidating Trustee | 51 |
| G. | | EXCULPATION & INJUNCTION | 51 |
| | 1. | No Discharge | 51 |
| | 2. | Exculpation | 51 |
| | 3. | Injunction | 52 |
| H. | | BINDING NATURE OF PLAN | 53 |
| I. | | CONFIRMATION PROCEDURES | 53 |
| | 1. | Confirmation Hearing | 53 |

|  | **2.** | Filing Objections to the Plan.................................................53 |
| **J.** | | STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN ........................................................................................54 |
|  | **1.** | Best Interests of Creditors Test and Plan Recovery Analysis..........55 |
|  | **2.** | Feasibility...................................................................56 |
|  | **3.** | Acceptance by Impaired Classes .......................................56 |
|  | **4.** | Confirmation Without Acceptance by Impaired Classes.................57 |
|  | **5.** | No Unfair Discrimination ...............................................58 |
|  | **6.** | Fair and Equitable Test ................................................58 |
| **K.** | | CONSUMMATION OF THE PLAN ......................................59 |
| **ARTICLE V.** | | RISK FACTORS .................................................59 |
| **A.** | | CERTAIN BANKRUPTCY LAW CONSIDERATIONS ..................59 |
|  | **1.** | Parties in Interest May Object to the Plan Proponent's Classification of Claims.................................................................59 |
|  | **2.** | The Conditions Precedent to the Effective Date of the Plan May Not Occur...........................................................................59 |
|  | **3.** | The Plan Proponent May Fail to Satisfy the Vote Requirement......59 |
|  | **4.** | The Plan Proponent May Not Be Able to Secure Confirmation of the Plan. ..................................................................60 |
|  | **5.** | Non-Consensual Confirmation of the Plan May Be Necessary.......60 |
|  | **6.** | The Plan Proponent May Object to the Amount or Classification of a Claim. ..................................................................61 |
|  | **7.** | The Effective Date May Not Occur. .................................61 |
|  | **8.** | The Chapter 11 Case May Be Converted to a Case under Chapter 7 of the Bankruptcy Code ...............................................61 |
|  | **9.** | Injunction, Exculpation and Limitation of Liability Provisions May Not Be Approved .........................................................61 |
|  | **10.** | The Hospital Reopening May Not Occur and the AAM Transactions May Be Terminated .....................................................61 |
| **B.** | | DISCLOSURE STATEMENT DISCLAIMER............................62 |

**1.** The Information Contained Herein is for Soliciting Votes Only.....62

**2.** No Legal or Tax Advice is Provided to You by This Disclosure Statement...........................................................................62

**3.** No Admissions Are Made by This Disclosure Statement. ..............62

**4.** No Reliance Should Be Placed on Any Failure to Identify Litigation Claims or Projected Objections. ......................................62

**5.** Nothing Herein Constitutes a Waiver of Any Right to Object to Claims or Recover Transfers and Assets. ........................................62

**6.** The Information Used Herein was Provided by the Debtor and was Relied Upon by the Plan Proponent's Advisors. ............................62

**7.** The Potential Exists for Inaccuracies and the Plan Proponent Has No Duty to Update. ...................................................................63

**8.** No Representations Made Outside the Disclosure Statement Are Authorized...........................................................................63

**ARTICLE VI.** ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ......................................................................................63

    A. LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE63

    B. FILING OF AN ALTERNATIVE PLAN OF REORGANIZATION.........63

**ARTICLE VII.** SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.........................................................64

    A. FEDERAL INCOME TAX CONSEQUENCES TO CERTAIN CREDITORS AND THE LIQUIDATION TRUST ...................................64

        1. In General..........................................................................65

        2. Tax Treatment of the Liquidation Trust...........................66

        3. Non-United States Persons ...............................................67

    B. INFORMATION REPORTING AND BACKUP WITHHOLDING..........68

**ARTICLE VIII.** RECOMMENDATION ...........................................................68

10408334

The Official Committee of Unsecured Creditors (the "<u>Committee</u>" or the "<u>Plan Proponent</u>") is sending you this document and the accompanying materials (the "<u>Disclosure Statement</u>") because you may be a creditor entitled to vote on the *Second Amended Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors* of the debtor and debtor in possession in the above-captioned case (the "<u>Debtor</u>") (as may be amended from time to time, the "<u>Plan</u>"),[1] a copy of which attached hereto as **<u>Exhibit A</u>**. This Disclosure Statement has been approved by the Bankruptcy Court as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code. The Plan Proponent is soliciting your vote to accept or reject the Plan.

**ONLY HOLDERS OF SAMC SECURED OBLIGATIONS (CLASS 3) AND GENERAL UNSECURED CLAIMS (CLASS 4) ARE ENTITLED TO VOTE ON THE PLAN AND ARE BEING SOLICITED UNDER THIS DISCLOSURE STATEMENT.**

<div style="border:1px solid black; text-align:center">

**THE VOTING DEADLINE IS 5:00 P.M. PREVAILING PACIFIC TIME
ON <u>APRIL 2, 2024</u>
(UNLESS THE PLAN PROPONENT EXTENDS THE VOTING DEADLINE).**

</div>

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or the Plan Proponent's *Motion for an Order (I) Approving Disclosure Statement; (II) Establishing Procedures for the Solicitation and Tabulation of Votes on Plan; (III) Scheduling Hearing on Confirmation of Plan; and (IV) Approving Related Matters* filed contemporaneously herewith (the "<u>Disclosure Statement Motion</u>"), as applicable. To the extent that anything in this Disclosure Statement and the Plan are inconsistent, the Plan shall control and govern.

10408334

1

2

<div style="border:1px solid black; padding:10px;">

**IMPORTANT INFORMATION DISCLAIMER REGARDING THIS DISCLOSURE STATEMENT:**

</div>

3

4

5

6

7

8

　　　THE PLAN PROPONENT IS PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT TO HOLDERS OF CLAIMS FOR THE PURPOSE OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN PROPONENT'S CHAPTER 11 PLAN OF LIQUIDATION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY CONSIDER ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE V HEREIN.

9

10

　　　THE PLAN IS PROPOSED BY THE COMMITTEE AS THE PLAN PROPONENT. THE PLAN PROPONENT URGES ALL CREDITORS ENTITLED TO VOTE ON THE PLAN TO TIMELY VOTE TO ACCEPT THE PLAN.

11

12

13

14

15

16

　　　THIS DISCLOSURE STATEMENT CONTAINS "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF FEDERAL SECURITIES LAWS. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE PLAN PROPONENT CONSIDERS ALL STATEMENTS REGARDING ANTICIPATED OR FUTURE MATTERS TO BE FORWARD-LOOKING STATEMENTS. FORWARD-LOOKING STATEMENTS MAY INCLUDE STATEMENTS ABOUT:

17

18

19

- FINANCIAL CONDITION, REVENUES, CASH FLOWS, AND EXPENSES;

- LEVELS OF INDEBTEDNESS, LIQUIDITY, AND COMPLIANCE WITH APPLICABLE COVENANTS;

20

21

- FINANCIAL STRATEGY, BUDGET, PROJECTIONS, AND OPERATING RESULTS;

22

- VARIATION FROM PROJECTED FINANCIAL DATA; AND

23

- AVAILABILITY AND TERMS OF CAPITAL.

24

25

26

27

28

　　　STATEMENTS CONCERNING THESE AND OTHER MATTERS ARE NOT GUARANTEES OF ANY ENTITY'S FUTURE PERFORMANCE. THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE DIFFERENT FROM THOSE PROJECTED BY OR ON BEHALF OF THE PLAN PROPONENT, AND THE PLAN PROPONENT UNDERTAKES NO OBLIGATION TO UPDATE THE PROJECTIONS MADE HEREIN. THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS

AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS. THE PLAN RECOVERY ANALYSIS, PROJECTIONS, AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE VALUE OF THE PROPERTY DISTRIBUTED TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED. THEREFORE, ANY ANALYSES, ESTIMATES, OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE PLAN PROPONENT URGES EACH HOLDER OF A CLAIM TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHER, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN OR A GUARANTEE BY THE BANKRUPTCY COURT OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. NEITHER THIS DISCLOSURE STATEMENT NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

THE PLAN PROPONENT HAS RELIED UPON, AMONG OTHER THINGS, INFORMATION PROVIDED BY THE DEBTOR AND THE DEBTOR'S PROFESSIONALS IN CONNECTION WITH PREPARATION OF THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTOR'S CHAPTER 11 CASE, AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY

**REFERENCE OR THAT MAY BE FILED LATER WITH THE PLAN SUPPLEMENT. ALTHOUGH THE PLAN PROPONENT BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY CONFLICT, INCONSISTENCY, OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN AND CONTROL FOR ALL PURPOSES.**

**IN PREPARING THIS DISCLOSURE STATEMENT, THE PLAN PROPONENT RELIED ON, AMONG OTHER THINGS, FINANCIAL DATA DERIVED FROM THE DEBTOR'S BOOKS AND RECORDS, ON UNVERIFIED INFORMATION PROVIDED BY THE DEBTOR IN ITS SCHEDULES OF ASSETS AND LIABILITIES, IN THE _DECLARATION IN SUPPORT OF APPLICATION FOR ORDER SHORTENING TIME OF EMERGENCY MOTIONS_ [DOCKET NO. 5], AND IN OTHER FILINGS MADE BY THE DEBTOR IN THIS CHAPTER 11 CASE, AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTOR'S BUSINESS. THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED (UNLESS OTHERWISE EXPRESSLY PROVIDED HEREIN) AND NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTOR'S BUSINESS AND ANY FUTURE FINANCIAL RESULTS. THE PLAN PROPONENT EXPRESSLY CAUTIONS READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER, OR AS HAVING ANY ADVERSE ESTOPPEL EFFECT. RATHER, THIS DISCLOSURE STATEMENT SHALL CONSTITUTE A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO POTENTIAL CONTESTED MATTERS, POTENTIAL ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.**

**NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT. EXCEPT AS PROVIDED UNDER THE PLAN, THE LIQUIDATION TRUSTEE, OR THE LIQUIDATION TRUST, AS APPLICABLE, MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND CAUSES OF ACTION AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS ON THE TERMS SPECIFIED IN THE PLAN.**

**THE PLAN PROPONENT IS GENERALLY MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF WHERE FEASIBLE, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE PLAN PROPONENT MAY SUBSEQUENTLY**

**UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE PLAN PROPONENT HAS NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS SENT. INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION, MODIFICATION, OR AMENDMENT. THE PLAN PROPONENT RESERVES THE RIGHT TO FILE AN AMENDED OR MODIFIED PLAN AND RELATED DISCLOSURE STATEMENT FROM TIME TO TIME.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR POTENTIAL ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, OR AS HAVING ANY ADVERSE ESTOPPEL EFFECT. <u>FURTHER, AS SET FORTH IN DETAIL IN ARTICLE III OF THIS DISCLOSURE STATEMENT AND ARTICLE I.B. AND V.S. OF THE PLAN (INCLUDING AS SET FORTH IN THE PLAN'S DEFINITION OF "CAUSES OF ACTION"), EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL CAUSES OF ACTION AND RIGHTS RELATED THERETO ARE EXPRESSLY RESERVED AND PRESERVED UNDER THE PLAN.</u>**

**THE PLAN PROPONENT HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE PLAN PROPONENT HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF ITS PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.**

**HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTOR AND THEIR OWN ANALYSES OF THE TERMS OF THE PLAN IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. IMPORTANTLY, PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD REVIEW THE PLAN IN ITS ENTIRETY AND CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT AND ANY EXHIBITS HERETO, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN ARTICLE V HEREIN, "RISK FACTORS."**

**HOLDERS OF CLAIMS AND OTHER PARTIES SHOULD BE AWARE THAT THE PLAN CONTAINS INJUNCTIONS, EXCULPATIONS, AND LIMITATIONS OF LIABILITY THAT MAY MATERIALLY AFFECT THEIR RIGHTS.**

**THE DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (PACIFIC TIME) ON <u>APRIL 2, 2024</u>, UNLESS EXTENDED BY THE PLAN PROPONENT IN ITS DISCRETION.**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST (INCLUDING THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN, WHO VOTE TO REJECT THE PLAN, OR WHO ARE NOT**

10408334

ENTITLED TO VOTE ON THE PLAN) THE DEBTOR WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO CERTAIN MATERIAL CONDITIONS PRECEDENT DESCRIBED HEREIN AND SET FORTH IN ARTICLE IX OF THE PLAN. THERE IS NO ASSURANCE THAT THE PLAN WILL BE CONFIRMED, OR IF CONFIRMED, THAT THE CONDITIONS REQUIRED TO BE SATISFIED FOR THE PLAN TO BECOME EFFECTIVE WILL BE SATISFIED (OR WAIVED).

ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

## EXHIBITS

**EXHIBIT A** – Plan Proponent's Plan of Liquidation

**EXHIBIT B** – Plan Recovery Analysis

10408334

# ARTICLE I.
## EXECUTIVE SUMMARY

**Only Holders of SAMC Secured Obligations (Class 3) and General Unsecured Claims (Class 4) are entitled to vote on the Plan and are being solicited under this Disclosure Statement.**

This Executive Summary is being provided as an overview of the material items addressed in the Disclosure Statement and the Plan, which is qualified by reference to the entire Disclosure Statement and by the actual terms of the Plan (and including all Exhibits attached hereto and to the Plan) and should not be relied upon for a comprehensive discussion of the Disclosure Statement and/or the Plan. Prior to soliciting votes on a proposed chapter 11 plan, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance or rejection of the plan of reorganization. As such, this Disclosure Statement is being submitted in accordance with the requirements of section 1125 of the Bankruptcy Code. This Disclosure Statement includes, without limitation, information about:

- the Debtor's business and financial history;

- the significant events that have occurred to date;

- the solicitation procedures for voting on the Plan;

- the confirmation process and the voting procedures that Holders of Claims who are entitled to vote on the Plan must follow for their votes to be counted; and

- the terms and provisions of the Plan, including certain effects of confirmation of the Plan, certain risk factors relating to the Debtor and the Plan, and the manner in which distributions will be made under the Plan.

If the Plan cannot be confirmed for any reason, then (a) the Plan may be revoked by the Plan Proponent, or (b) the Debtor may seek to convert the Chapter 11 Case to a chapter 7 liquidation pursuant to section 1112(c) of the Bankruptcy Code. The Plan Proponent intends to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims that is Impaired as set forth in Article IV of the Plan.

The Plan provides for recovery to creditors either through a Hospital-reopening transaction or through the proceeds of the liquidation of assets. It is expected that creditor recoveries will be greater through a Hospital-reopening transaction rather than a liquidation of assets.

The potential Hospital-reopening transaction will be with American Advanced Management, Inc. ("AAM") and the proceeds of that transaction will help fund creditor distributions. In particular, the Plan generally provides that, subject to the occurrence of the Operation Assumption Date, AAM shall contribute up to $30 million in Cash to fund the Liquidation Trust for the benefit of Holders of Allowed General Unsecured Claims in exchange for the sale of: (i) the real property on which the Hospital is located, and (ii) at the election of AAM, the transition of the Hospital's operational assets and other personal property assets. It is expected that a Hospital-reopening transaction will pay the

10408334

Claims of General Unsecured Creditors in full, as described below. In the event that the proposed Hospital-reopening transaction is terminated, the Plan enables the Committee to pursue and consummate a Liquidation Transaction if, at any time before the Effective Date, it determines in its sole discretion that such course of action is in the best interests of Creditors. It is expected that a Liquidation Transaction will provide payments to General Unsecured Creditors, but there is no assurance that those Claims will be paid in full.

The following chart briefly summarizes the classification and estimated recoveries of Claims: (a) under the proposed Plan, (b) under an alternative chapter 11 plan (*i.e.*, not involving a potential Hospital reopening transaction with AAM), and (c) in a chapter 7 liquidation scenario (in all events, assuming an Effective Date of May 1, 2024).[2]

| Class | Type of Claim or Interest | Estimated Claim Amount | Impairment | Entitled to Vote | Estimated Recovery Under This Plan | Estimated Recovery Under Alternative Chapter 11 Plan | Estimated Recovery in Chapter 7 Liquidation |
|---|---|---|---|---|---|---|---|
| 1 | Other Priority Claims | $1,142,780 – $1,543,862 | No | No | 100% | 100% | 100% |
| 2 | Other Secured Claims | $1,256,847 - $2,020,982 | No | No | 100% | 100% | 100% |
| 3 | SAMC Secured Obligations | $2,323,485 | Yes | Yes | 96% | 96% | 96% – 100% |
| 4 | General Unsecured Claims | $14,382,418 – $29,392,055 | Yes | Yes | 100% | 68.1% - 100% | 52.6% - 100% |

The Plan Proponent believes that any alternative to confirmation of the Plan, such as a chapter 7 liquidation or other attempts by another party in interest to file a plan, would result in significant delays, litigation, and additional costs, and ultimately would diminish the recovery for creditors. **Accordingly, the Plan Proponent strongly recommends that all Holders of SAMC Secured Obligations (Class 3) and General Unsecured Claims (Class 4) vote to accept the Plan.**

## A.  AN OVERVIEW OF THE CHAPTER 11 PROCESS

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11 of the Bankruptcy Code, a debtor may remain in possession of its assets and business and attempt to reorganize or liquidate its business for the benefit of such debtor, its creditors and other parties in interest.

The commencement of a chapter 11 case creates an estate comprised of all of the legal and equitable interests of a debtor in property as of the date that the bankruptcy petition is filed. Sections 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession," unless the bankruptcy court orders the appointment of a trustee. The filing of a bankruptcy petition also triggers the automatic stay

---

[2]  This chart is only a summary of the classification and treatment of Claims under the Plan. References should be made to the entire Disclosure Statement and the Plan for a complete description.

10408334

provisions of section 362 of the Bankruptcy Code which provide, among other things, for an automatic stay of all attempts to collect prepetition claims from a debtor or otherwise interfere with its property or business. Except as otherwise ordered by the bankruptcy court, the automatic stay generally remains in full force and effect until the effective date of a plan of reorganization, following confirmation of such plan of reorganization.

The Bankruptcy Code provides that, upon commencement of a chapter 11 bankruptcy case, the Office of the United States Trustee may appoint a committee of unsecured creditors and may, in its discretion, appoint additional committees of creditors or of equity interest holders if necessary to assure adequate representation.

Upon the commencement of a chapter 11 bankruptcy case, all creditors and equity interest holders have standing to be heard on any issue in the chapter 11 proceedings pursuant to section 1109(b) of the Bankruptcy Code.

The formulation and confirmation of a plan is the principal objective of a chapter 11 case. The plan sets forth the means of satisfying the claims against the debtor. A bankruptcy court's confirmation of a plan binds the debtor, any entity acquiring property under the plan, any holder of a claim or an equity interest in the debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code to the terms and conditions of the confirmed plan, whether or not such Entity voted on the plan or affirmatively voted to reject the plan.

## B.    OVERVIEW OF THE PLAN

The Plan provides for: (a) the formation of the Liquidation Trust; (b) the disposition of substantially all the Assets of the Debtor and its Estate and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code; (c) the winding down of the Debtor and its affairs by the Liquidation Trustee; and (d) the creation of a mechanism for the Liquidation Trustee to pursue, litigate, waive, settle, and compromise Causes of Action (including, but not limited to, D&O Claims and Tort Claims) to maximize Creditor recoveries.

The Plan also provides that, subject to the occurrence of the Operation Assumption Date, AAM shall contribute up to $30 million in Cash to fund the Liquidation Trust for the benefit of Holders of Allowed General Unsecured Claims in exchange for the sale to Buyer of: (i) the Real Property Asset (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit B to the MTA), and (ii) at the election of AAM, the transition of the Hospital Assets to Buyer (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit C to the MTA). To the extent these transactions are terminated, the Plan enables the Committee to pursue and consummate a Liquidation Transaction if, at any time before the Effective Date, it determines in its sole discretion that consummation of such Liquidation Transaction is in the best interests of the Estate and Creditors.

In addition, in the event that AAM terminates the MTA, AAM shall submit to the Debtor (or, if the Plan has been confirmed, the Liquidation Trustee) a binding $3 million stalking horse bid for the Real Property Asset if requested to do so by the Committee (or, if a Plan has been confirmed, the Liquidation Trustee).

Under the Plan, the SAMC Secured Obligation shall be allowed in an aggregate principal amount (plus accrued and unpaid interest through January 1, 2024) of $2,323,485 plus unpaid fees and

10408334

interest that accrue from January 2, 2024 through the Effective Date, which represents the outstanding portion of the SAMC Secured Obligations. On the Effective Date, and in exchange for a waiver and release of any and all claims or Causes of Action asserted or assertable against SAMC by the Debtor, the Estate, the Committee, the Liquidation Trust or the Liquidation Trustee (as further described in Article X.B of the Plan), the SAMC Secured Obligations shall receive a distribution in the amount (the "SAMC Distribution Amount") equal to the sum of: (a) $2,230,546, plus (b) any interest, fees and expenses, accrued between January 2, 2024 and the Effective Date, that remain due and owing as of the Effective Date. On or before the Expense Payment Deadline of each calendar month, a portion of the One Million Deposit shall be released to the Debtor in an amount sufficient to pay certain interest and expenses associated with the Allowed SAMC Secured Obligations that accrued during the prior calendar month and shall be immediately applied by the Debtor solely to pay such interest and expenses (and thereby reducing the SAMC Distribution Amount to the extent paid from the One Million Deposit). The balance of the Allowed SAMC Secured Obligations shall be paid on the Effective Date from Cash on Hand, unless otherwise agreed to by the Holder of such Allowed SAMC Secured Obligation.

Under the Plan, a Holder of an Allowed General Unsecured Claim in Class 4 will receive its Pro Rata share of the Liquidation Trust Interests, which, in general, will entitle the Holder thereof to its Pro Rata interest in the aggregate amount of the Net Distributable Assets. The Net Distributable Assets are net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, Allowed SAMC Secured Obligations and Trust Expenses, and/or any reserves established for the foregoing.

As reflected in the Plan Recovery Analysis attached hereto as **Exhibit B** (the "Plan Recovery Analysis"),[3] in addition to Cash on Hand, the Estate includes certain real and personal property, any proceeds of which will be used to fund distributions to creditors in accordance with the terms of the Plan. The Estate also contains potential Causes of Action that will be transferred to the Liquidation Trust under the Plan, all of which are preserved unless the Plan expressly provides otherwise. No value has been attributed to litigation claims for purposes of this Disclosure Statement and the Plan Recovery Analysis.

The following chart briefly summarizes the classification and estimated recoveries of Claims: (a) under the Plan, (b) under an alternative chapter 11 plan (not involving a potential Hospital reopening transaction with AAM), and (c) in a chapter 7 liquidation scenario (in all events, assuming an Effective Date of May 1, 2024).[4]

---

[3] The information and estimates set forth in the Plan Recovery Analysis, as well as statements in this Disclosure Statement based upon such information and estimates (including the chart summarizing the classification and estimated recoveries of Claims under the Plan below), are based on, among other things, information provided by the Debtor and may be subject to material change.

[4] This chart is only a summary of the classification and treatment of Claims under the Plan. References should be made to the entire Disclosure Statement and the Plan for a complete description.

10408334

| Class | Type of Claim or Interest | Estimated Claim Amount | Impairment | Entitled to Vote | Estimated Recovery Under This Plan | Estimated Recovery Under Alternative Chapter 11 Plan | Estimated Recovery in Chapter 7 Liquidation |
|---|---|---|---|---|---|---|---|
| 1 | Other Priority Claims | $1,142,780 – $1,543,862 | No | No | 100% | 100% | 100% |
| 2 | Other Secured Claims | $1,256,847 - $2,020,982 | No | No | 100% | 100% | 100% |
| 3 | SAMC Secured Obligations | $2,323,485 | Yes | Yes | 96% | 96% | 96% - 100% |
| 4 | General Unsecured Claims | $14,382,418 – $29,392,055 | Yes | Yes | 100% | 68.1% - 100% | 52.6% - 100% |

**THE PROJECTED RECOVERIES AND ALL CLAIM ESTIMATES SET FORTH IN THE TABLE ABOVE OR ELSEWHERE IN THIS DISCLOSURE STATEMENT ARE ESTIMATES ONLY AND THEREFORE SUBJECT TO CHANGE. FOR A COMPLETE DESCRIPTION OF THE PLAN'S CLASSIFICATION AND TREATMENT OF CLAIMS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN AND THE RISK FACTORS DESCRIBED IN ARTICLE V BELOW. THE TABLE IS INTENDED FOR ILLUSTRATIVE PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR A REVIEW OF THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY. FOR CERTAIN CLASSES OF CLAIMS, THE ACTUAL AMOUNT OF ALLOWED CLAIMS COULD BE MATERIALLY DIFFERENT THAN THE ESTIMATED AMOUNTS SHOWN IN THE TABLE ABOVE.**

## C.     SOLICITATION, VOTING AND CONFIRMATION MATTERS

### 1.     Who May Vote on the Plan

Each Holder of an Allowed Claim in Class 3 and Class 4 is entitled to vote either to accept or to reject the Plan. Only those votes cast by Holders of Allowed Claims in Class 3 and Class 4 shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain confirmation. An Impaired Class of Claims shall have accepted the Plan if: (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. Classes 1 and 2 are Unimpaired under the Plan, are each conclusively deemed and presumed to accept the Plan by operation of law, and are not entitled to vote on the Plan. Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, the Plan Proponent reserves the right to seek confirmation of the Plan over such rejection pursuant to section 1129(b) of the Bankruptcy Code.

**2. Summary of Solicitation Package and Voting Instructions**

The following materials constitute the solicitation package with respect to the Plan enclosed herewith (the "Solicitation Package"):

- a copy of a notice of (i) the order approving the Disclosure Statement, (ii) the Confirmation Hearing, (iii) the deadline and procedures for filing objections to confirmation of the Plan, and (iv) the Voting Deadline;

- a copy of the form of ballot and a return envelope therefor;

- a copy of this Disclosure Statement with all Exhibits;

- the Plan (as an Exhibit hereto);

- a copy of the order approving this Disclosure Statement (without Exhibits) (the "Disclosure Statement Order"); and

- a cover letter from the Plan Proponent explaining the attachments and requesting that creditors vote in favor of the Plan.

Only Holders of SAMC Secured Obligations (Class 3) and General Unsecured Claims (Class 4) are entitled to vote to accept or reject the Plan and shall be served with copies of this Disclosure Statement and the Plan. All parties entitled to vote to accept or reject the Plan shall receive a copy of an appropriate Ballot. Any party who desires additional paper copies of these documents may request copies from the Plan Proponent.

The Plan Proponent will, among other things, provide additional copies of all Solicitation Package materials and generally oversee the solicitation process.

Only the Holders of Claims in Classes 3 and 4 are entitled to vote to accept or reject the Plan. To be counted, Ballots cast by Holders must be received by the Plan Proponent by **5:00 p.m. (prevailing Pacific Time) on April 2, 2024, the Voting Deadline**. Voting instructions are attached to each Ballot.

Unless the Plan Proponent, in its discretion, decides otherwise, any Ballot received after the Voting Deadline shall not be counted. On or before **April 9, 2024**, the Plan Proponent will process and tabulate received Ballots and will File a Tabulation Declaration. The Plan Proponent shall have until **April 9, 2024** to file any motion requesting, pursuant to Section 1126(e) of the Bankruptcy Code, designation that any Entity's acceptance or rejection of the Plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Parties may contact the Plan Proponent with any questions related to the solicitation procedures applicable to their Claims.

**Any Ballot that is properly executed by the Holder of a Claim but fails to clearly indicate an acceptance or rejection, or that indicates both an acceptance and a rejection of the Plan, shall not be counted.**

10408334

**All Ballots are accompanied by voting instructions. It is important to follow the specific instructions provided with the Ballot. Voting tabulation procedures are set forth in the Ballots.**

3. **Confirmation of the Plan**

(a) **Generally**

"Confirmation" is the technical term for the Bankruptcy Court's approval of a plan of reorganization or liquidation. The timing, standards and factors considered by the Bankruptcy Court in deciding whether to confirm a plan are discussed below.

The confirmation of a plan of liquidation by the Bankruptcy Court binds the debtor, any person acquiring property under a plan of liquidation, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.

(b) **The Confirmation Hearing**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.

The Plan Proponent will provide notice of the Confirmation Hearing to all necessary parties. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing of any adjournment thereof.

4. **Confirming and Consummating the Plan**

It is a condition to confirmation of the Plan that the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Plan Proponent. Certain other conditions contained in the Plan must be satisfied or waived pursuant to the provisions of the Plan.

5. **Rules of Interpretation**

The following rules for interpretation and construction shall apply to this Disclosure Statement: (1) capitalized terms used in the Disclosure Statement and not otherwise defined shall have the meaning ascribed to such terms in the Plan (or, if not defined in the Plan, in the Disclosure Statement Motion); (2) unless otherwise specified, any reference in this Disclosure Statement to a contract, instrument, release, indenture, or other agreement or document shall be a reference to such document in the particular form or substantially on such terms and conditions described; (3) unless otherwise specified, any reference in this Disclosure Statement to an existing document, schedule, or exhibit, whether or not filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an entity as a Holder of a Claim includes that Entity's successors and assigns; (5) unless otherwise specified, all references in this Disclosure Statement to Sections are references to Sections of this Disclosure Statement; (6) unless otherwise specified, all references in this Disclosure Statement to exhibits are references to exhibits in this Disclosure Statement; (7) unless otherwise set forth in this Disclosure Statement, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (8) any term used in capitalized form in this Disclosure Statement that is not otherwise defined in this Disclosure Statement, the Plan, or the Disclosure Statement Motion but that is used in the Bankruptcy Code or the Bankruptcy

- 7 -

Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

### 6. Distribution of Non-Voting Class Notice to Holders of Claims in Non-Voting Classes and Holders of Disputed Claims

As set forth above, certain Holders of Claims are not entitled to vote on the Plan. As a result, such parties will not receive Solicitation Packages but, instead, will only receive the Non-Voting Class Notice that explains, among other things, that (i) Classes 1 and 2 are Unimpaired under the Plan, and therefore, are conclusively deemed and presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code; (ii) instructions for Holders of Claims in all Classes on how they may obtain a copy of the Plan and this Disclosure Statement; (iii) the deadline by which to object to confirmation of the Plan; and (iv) the Confirmation Hearing date and time.

<u>Contract and Lease Counterparties</u>. Parties to certain of the Debtor's Executory Contracts and Unexpired Leases may not have Claims pending the disposition of their contracts or leases by assumption or rejection under the Plan. Such parties nevertheless will receive notice of the Confirmation Hearing.

### 7. Filing of the Plan Supplement

The Plan Proponent will file the Plan Supplement with the Bankruptcy Court in accordance with the Disclosure Statement Order. The Plan Proponent will have the right to amend the documents contained in, and Exhibits to, the Plan Supplement through the Effective Date.

### 8. The Confirmation Hearing

**The Confirmation Hearing has been scheduled to commence on April] 16, 2024 at 9:30 a.m. (prevailing Pacific Time).** The Confirmation Hearing may be continued from time to time by order of the Bankruptcy Court.  Any request for a continuance of the Confirmation Hearing may be made orally at the Confirmation Hearing or in advance by written application pursuant to Local Rule 9014-1(j).  Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

### 9. The Deadline for Objecting to Confirmation of the Plan

**The deadline for objecting to Confirmation of the Plan is April 2, 2024 at 5:00 p.m. (prevailing Pacific Time).** Subject to order of the Bankruptcy Court, any objection to confirmation of the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the objecting party and the amount and nature of the Claim of such Entity; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan; and (v) be filed with the Bankruptcy Court and served by no later than the deadline set by the Bankruptcy Court, and on the parties set forth in the Disclosure Statement Order (the "<u>Notice Parties</u>"), which service may be by way of the CM/ECF system, with courtesy copies by email.

**CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.**

10408334

**10.    Effect of Confirmation of the Plan**

The Plan contains certain provisions relating to (a) the compromise and settlement of Claims, and (b) exculpation of certain parties.  **Except as otherwise expressly provided in the Plan, any and all claims and Causes of Action of the Debtor and the Estate are preserved under the Plan.**

> **THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (A) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (B) HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASE (IF ANY ARE FILED), OR (C) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

**D.    RISK FACTORS**

**PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN EACH VOTING CLASS IS URGED TO CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE V HEREIN TITLED, "RISK FACTORS."**

**ARTICLE II.**
**BACKGROUND TO THE CHAPTER 11 CASE[5]**

**A.    THE DEBTOR'S HISTORY, BUSINESS, AND OPERATIONS**

Madera Community Hospital ("MCH" or the "Hospital") is a non-profit California Corporation that owns a general acute care hospital in Madera, California.  The hospital is licensed (in suspense) for 106 beds.  As of the date hereof, the Debtor has seven employees.  Since December 26, 2022, the Debtor has laid off over 700 employees.  It is the only adult hospital in the county and served a population of about 160,000 people, some of whom are uninsured and many of whom are lower income.  The closest hospitals with emergency rooms are 23.5 miles away in Fresno or 35 miles away in Merced, both of which are long distances in an emergency situation.

As discussed below, in December 2022, Saint Agnes Medical Center ("SAMC"), after receiving conditions imposed by the California Attorney General, terminated negotiation of an

---

[5] Capitalized terms used in this section but not otherwise defined in this Disclosure Statement shall have the meanings ascribed to them in the *Declaration in Support of Application for Order Shortening Time of Emergency Motions* [Docket No. 5] (the "First Day Declaration").

Statements in this Article II, including, without limitation, with respect to the Debtor's background, prepetition events, and the Debtor's reasons for filing the Chapter 11 Case, are based upon the Debtor's characterization of the relevant facts and prior representations in this Chapter 11 Case. Nothing in this Article II or the exhibits referenced therein shall bind the Committee or the Liquidation Trustee or be construed to constitute an admission of any fact or waiver of any right by the Committee or the Liquidation Trustee, including for the purposes of any Causes of Action preserved under the Plan, or be construed to have any adverse estoppel effect.

10408334

affiliation agreement with MCH, which resulted in MCH shutting down all medical services. Since January 10, 2023, no medical services have been provided at the Hospital.

MCH also had rural health clinics in Chowchilla, Madera and Mendota, all of which were closed on January 10, 2023.

MCH previously provided the following services: clinics, diagnostic imaging, inpatient care, dialysis, emergency department, intensive care unit, telemedicine, gastroenterology, labor & delivery, telemetry, medical surgical inpatient services, medical guard unit and maternity.

Although MCH is not currently treating patients, it has continuing operations relating to preserving its assets, seeking "suitors" and exploring resumption of operating its clinics.

Beginning in 2021 and continuing to the Petition Date, MCH evaluated and identified potential relationships with other healthcare systems. In 2021, MCH identified a possible affiliation with SAMC and its parent, Trinity Health Care System. Protracted negotiations ensued. SAMC made significant loans to MCH. When the proposed affiliation was presented to the Attorney General of the State of California, the Attorney General, after many months of delay, sought to impose conditions that were unacceptable to SAMC. As a result, SAMC terminated the affiliation agreement. This led MCH to file a chapter 11 petition, as it ran out of money and was unable to pay employees.

As discussed below, although the Debtor was unable to consummate a Hospital reopening transaction before the Petition Date, the Debtor's efforts have continued since the Petition Date, with oversight, input and assistance from the Committee. Such efforts have proven successful and pursuant to the Plan, the Plan Proponent seeks approval of a series of transaction intended to result in a reopening of the Hospital, while preserving the assets of the Debtor's estate for distribution to creditors.

## B.     THE DEBTOR'S MANAGEMENT

MCH is governed by a volunteer Board of Trustees consisting of community leaders: Diedre da Silva, Chair, Stell Manfredi, Vice Chair, Robert Poythress, Finance Committee Chair, Monte Pistoresi, Secretary, Mohammad Arain, M.D., Past Chief of Staff, Don Warnock, Executive Member, Aftab Naz, M.D., Chief of Staff, Jon Basila, Anita Eden, Bruce Norton, Jan Zitek, Mike Diebert, Jay Mahil and Wally Nishimoto.

The leadership of the Hospital consists of Karen Paolinelli, MSN, RN, FNP-C, PA-C, Chief Executive Officer. The CFO is Shondale Seymour on a contract basis. The Controller is Aaron Chambers, also on a contract basis.

## C.     SUMMARY OF PRE-PETITION INDEBTEDNESS

### 1.   Secured Debt

#### a.   Saint Agnes Medical Center

In April 2021, SAMC entered into an agreement to provide financing to MCH in the original principal amount of $15,000,000. During the course of the chapter 11 case the Debtor made payments to SAMC on account of such debt in the amount of $13,726,547.40 (against which the Debtor, the Committee, the Estate, and the Liquidation Trustee have waived any right of setoff or recoupment).

- 10 -

As of January 1, 2024, it is estimated that the Debtor owes SAMC a total of approximately $2,323,485, plus unpaid fees and interest which is secured by a deed of trust against all real property and a security interest in almost all assets.

### b.  New England Sheet Metal

As of December 31, 2023, it is estimated that the Debtor may owe New England Sheet Metal and one of its subcontractors, Patterson Drywall, up to $1,256,847 on account of works of improvement, and four mechanic's liens against the hospital campus had been filed.  The Plan Proponent reserves the right to challenge any such liens and to object to any claims asserted or filed by New England Sheet Metal, its subcontractors, or anyone else acting on their behalf.

### c.  Equipment Loans/Leases

As of the Petition Date, the Debtor had numerous leases with lessors of real and personal property.  As of December 31, 2023, it is estimated that the net secured amount of such equipment lease claims (after reducing the equipment value) approximates $1,364,135.

### 2.  General Unsecured Claims

As of December 31, 2023, it is estimated that the Debtor may owe its former employees approximately $2,047,280 - $2,476,545, in the aggregate for unpaid accumulated personal time off, of which approximately $1,017,780 - $1,418,862 is allegedly entitled to priority status.

It is also estimated that, in addition to the above-described employee-related claims, the Debtor has approximately $8,852,919 - $22,030,237 in general unsecured claims, which includes an unsecured loan of $1,100,000 owed to Citizens Business Bank.  Additional amounts will also be owed based on the rejection of executory contracts and unexpired leases.  Additionally, it is estimated that there may be approximately $125,000 in self-insured insurance claims that are entitled to priority and could be up to an additional $440,000 in general unsecured self-insurance claims.

### 3.  Rubio Claims and Rubio Adversary Proceeding Asserting Violations of Federal and California WARN Act, Cal. Labor Code § 227.3, and PAGA

As of the Petition Date, the Debtor was the defendant in a class action lawsuit (the "District Court WARN Litigation"), Case No. 1:23-cv-00262-SAB, commenced by Antonio Rubio ("Rubio"), on behalf of himself and a putative class of similarly situated former employees, by filing a complaint (the "District Court Rubio Complaint") pending in the United States District Court for the Eastern District of California alleging violations of the federal WARN Act, 29 U.S.C. § 2101, *et seq.* (the "Federal WARN Act"), the California WARN Act, Cal. Lab. Code §§ 1401, *et seq.* (the "California WARN Act"), and California Labor Code, Cal. Lab. Code § 227.3 ("Labor Code 227.3").

On May 11, 2023, Rubio, on behalf of himself and a putative class of similarly situated former employees, commenced a class action adversary proceeding [Adv. Pro. No. 23-01024] (the "Rubio Adversary Proceeding") by filing a complaint (the "Rubio Adversary Complaint") against the Debtor. The Rubio Adversary Complaint asserts causes of action for: (i) alleged violation of the Federal WARN Act, (ii) alleged violation of the California WARN Act, (iii) alleged violation of Labor Code 227.3, and (iv) penalties allegedly owed under the Labor Code Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698-2699 *et seq.*

- 11 -

Rubio, who is the class representative for the putative class in the District Court WARN Litigation and the Rubio Adversary Proceeding, has since filed six proofs of claim, Claim Nos. 301-1 through 306-1 (collectively, the "Rubio Proofs of Claim"), which assert claims seeking damages totaling $22,045,053.07 for alleged: (i) violations of the Federal WARN Act, (ii) violations of the California WARN Act, and (iii) unpaid accrued vacation time pursuant to Labor Code 227.3 and related penalties under PAGA. Certain of the Rubio Proofs of Claim were filed as class proofs of claim on behalf of Rubio and purport to bring claims on behalf of a class of individuals allegedly similarly situated to Rubio.

None of the District Court Rubio Complaint, the Rubio Adversary Complaint, nor the Rubio Proofs of Claim identifies any individual member of the putative class of similarly situated former employees other than Rubio.

The claims alleged in the District Court Rubio Complaint, the Rubio Adversary Complaint, and the Rubio Proofs of Claim are referred to, collectively, as the "Rubio Claims."

The Committee's position is that: (i) the Rubio Claims are subject to an arbitration agreement; (ii) the arbitration agreement precludes any of the Rubio Claims being pursued as a class action; (iii) each of the Rubio Claims fails to state a valid claim on behalf of any individual other than Rubio individually; and (iv) aside from the portions of the Rubio Claims that assert claims on behalf of Antonio Rubio individually (rather than on behalf of any alleged class), no claimant timely filed a claim under the Federal WARN Act, the California WARN Act, Labor Code 227.3, or PAGA, by the applicable Bar Date and, therefore, any claim by anyone other than Rubio in connection with the Rubio Claims is time-barred. *See*, *e.g.*, *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993); *Decembre v. Nations First Capital, LLC (In re Nations First Capital, LLC)*, 851 Fed. Appx. 32 (9th Cir. 2021); *Iris Biotechnologies, Inc. v. Heller Ehrman LLP*, 623 Fed. Appx. 3274 (9th Cir. 2015).

In reliance on the Committee's above-described position, and given the prejudice the estate and other creditors would suffer if untimely proofs of claim were allowed and the amount of time that has passed since the Bar Date lapsed, the Plan Recovery Analysis assumes that the total aggregate amount of the Rubio Claims that are potentially valid is between $0 and $2,045,053.07. The Committee's decisions to file, and pursue confirmation of, the Plan were, and are, made in reliance on the assumption that no individual, other than Rubio, individually, has any right of recovery whatsoever against the Debtor's assets pursuant to the Rubio Claims.

On June 9, 2023, the Debtor filed a motion to dismiss the Rubio Adversary Complaint [Docket No. 11] (the "Motion to Dismiss"). On September 1, 2023, the Bankruptcy Court entered an order denying the Motion to Dismiss [Docket No. 36].

On September 15, 2023, the Debtor filed an answer [Docket No. 40] to the Rubio Adversary Complaint, which asserts numerous affirmative defenses.

The Debtor intends to file a motion in the Rubio Adversary Proceeding seeking to compel arbitration of the Rubio Claims, including all such claims asserted in the District Court WARN Litigation, the Rubio Adversary Complaint, and the Rubio Proofs of Claim.

On January 5, 2024, the Bankruptcy Court entered a Joint Stipulation and Order to Stay Proceedings Pending Mediation [Docket No. 57], which stayed the Rubio Adversary Proceeding for

10408334

all purposes, including discovery purposes, pending completion of mediation by the Parties and a further order of the Bankruptcy Court.

A status conference in the Rubio Adversary Proceeding is currently scheduled for April 24, 2024 at 11:00 a.m.

## D.      EVENTS LEADING TO THE BANKRUPTCY CASE

The fiscal crisis for the Debtor was the result of several factors. First, the Debtor provided millions of dollars per year in care to low income, uninsured people, for which Medi-Cal reimbursements were less than expenses. The percentage of the Debtor's resources expended on care to Medi-Cal patients increased because the Debtor serves a depressed community and the economic conditions of this community have worsened due to inflation and other factors.

Second, the COVID-19 pandemic was devastating for MCH. The COVID-19 pandemic "transformed a long-simmering nursing shortage into a full-blown crisis," forcing MCH to hire traveling nurses at high costs in order to meet state mandated nurse-to-patient ratios.

Third, being a standalone, small rural area hospital in California presents a challenging financial situation. Such hospitals, including MCH, suffered from a lack of economies of scale, poor payor mix, high overhead costs, less high-margin specialty service lines, and an overall lower revenue base. The Hospital's campus is approximately 51 years old and the maintenance costs for this campus are substantial and increasing every year.

In sum, MCH faced considerable costs and other challenging macroeconomic conditions in the period preceding the commencement of this chapter 11 case, including costs resulting from COVID, the resulting costs of travelling nurses, high inflationary pressures, and considerable legal expense in connection with the affiliation process (discussed below).

Prior to closing, the Debtor needed to generate approximately $300,000 per day in revenue to cover its operating costs to stay in full operation. The Hospital was generating only approximately $225,000 per day in revenue when it closed. Thus, the Debtor lost money, $2 to $2.5 million, every month it operated in 2022.

The Debtor's CEO and Board concluded that the Debtor could not survive at its existing cash flow levels and would have to close absent drastic measures. As a result, representatives of the Board approached SAMC (and others), which had previously expressed an interest in acquiring or operating the Hospital, and negotiated an affiliation agreement subject to California Attorney General approval. After a long delay and review of over 13 months, on account of conditions imposed by the California Attorney General, SAMC withdrew from proceeding with the affiliation agreement.

The unanticipated fracture of the proposed affiliation agreement with SAMC occurred as MCH was at a critically low cash point, leaving it with no cash to pay for continued medical services and to pay employees. As a result, MCH concluded that it must shut down hospital operations, cease treating patients, shut down clinics, close its doors and find a suitor or liquidate its assets.

The emergency room closed on December 30, 2022. On March 10, 2023 (the "<u>Petition Date</u>"), the Debtor filed its chapter 11 bankruptcy case.

10408334

**E.    DEVELOPMENTS IN THE DEBTOR'S CHAPTER 11 CASE**

**1.    First Day and Other Early Motions and Orders**

The Debtor has filed motions and obtained approval for:

(i)    payments to the Debtor's workforce for prepetition obligations and benefits [Docket Nos. 12 & 114];

(ii)    the use of cash collateral and granting adequate protection [Docket Nos. 18, 125, 168, 451, 589, 674, 724, 760, 883, 1025, 1063, 1434];

(iii)    maintenance of existing bank accounts, business forms and continuity of cash management system [Docket Nos. 23 & 246];

(iv)    adequate assurance of payment for utility services [Docket Nos. 28 & 115];

(v)    limiting scope of notice for chapter 11 case [Docket Nos. 38 & 116];

(vi)    maintenance of insurance programs and payment of insurance premiums and brokerage commissions [Docket Nos. 42 & 117];

(vii)    authorizing pass through payments (DHCS Worker Retention Payments [Docket Nos. 144, 244]; and

(viii)    interim compensation and reimbursement procedures for chapter 11 professionals [Docket Nos. 636, 695, & 759].

**2.    Retention of Chapter 11 Professionals**

The Debtor has filed applications and obtained authority to retain various professionals to assist the Debtor in carrying out its duties under the Bankruptcy Code during the Chapter 11 Case. These professionals include:  Wanger Jones Helsley as bankruptcy counsel [Docket No. 70];  McCormick Barstow as special insurance defense counsel [Docket No. 74];  Ward Legal, Inc. as special healthcare, employment and business transactions counsel [Docket No. 78];  CHW LLP as certified public accountant [Docket No. 158];  JWT & Associates, LLP as certified public accountant; [Docket No. 461];  Newmark Pearson Commercial as leasing broker [Docket No. 473];  and  Newmark Valuation & Advisory as appraiser [Docket No. 643].

**3.    Appointment of the Unsecured Creditors' Committee**

On April 5, 2023, the U.S. Trustee appointed the Committee in the Chapter 11 Case [Docket No. 195], consisting of the following creditors:  SnapMed Tech., Inc. DBA SnapNurse;  Citizens Business Bank;  Lourdes Ortega;  Arya Medical Group;  and  Cardinal Health 110, LLC.

The Committee obtained Bankruptcy Court approval to employ Sills and Perkins as its bankruptcy co-counsel on May 23, 2023 [Docket Nos. 488, 489].  The Committee also obtained Bankruptcy Court approval to employ FTI Consulting, Inc. as its financial advisor on June 21, 2023 [Docket No. 595]

10408334

### 4.     Schedules and Statements of Financial Affairs

On March 23, 2023, the Debtor filed its Schedule of Assets and Liabilities and Statement of Financial Affairs (collectively, the "Schedules and Statements") [Docket No. 136]. The Debtor filed certain amendments to its Schedules and Statements on April 24, 2023 and June 5, 2023 [Docket Nos. 282, 544]

### 5.     Claims Bar Date

On March 14, 2023, the Office of the United States Trustee filed a *Notice of Chapter 11 Case* [Docket No. 49] (the "Notice of Bar Date"), pursuant to which: (i) July 17, 2023 was established as the deadline for all non-governmental units to file proofs of claim in the Chapter 11 Case; and (ii) September 6, 2023 was established as the deadline for all governmental units (as defined in section 101(27) of the Bankruptcy Code) to file proofs of claim in the Chapter 11 Case.

On June 12, 2023, the Debtor filed an *Application for Ex Parte Order Extending Claims Bar Date as to Later Discovered Claims* [Docket No. 556] (the "Motion to Set Later Discovered Claims Bar Date"), pursuant to which the Debtor sought to extend the deadline to file proofs of claim to September 30, 2023, for certain creditors who may not have been served with the Notice of Bar Date. On June 13, 2023, the Bankruptcy Court entered an order granting the Motion to Set Later Discovered Claims Bar Date [Docket No. 564].

### 6.     Exclusivity

Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the Bankruptcy Court enters an order for relief under chapter 11 of the Bankruptcy Code during which only the debtor may file a chapter 11 plan. If the debtor files a chapter 11 plan within such 120-day period, section 1121(c)(3) of the Bankruptcy Code extends the exclusivity period by an additional 60 days to permit the debtor to seek acceptances of such plan. Section 1121(d) of the Bankruptcy Code also permits the Bankruptcy Court to extend these exclusivity periods "for cause."

On August 24, 2023, the Bankruptcy Court entered an order extending the Debtor's exclusive filing period to October 6, 2023 and extending the Debtor's exclusive solicitation period to December 5, 2023 [Docket No. 844]. The exclusivity period has now terminated.

### 7.     Assumption of Certain Executory Contracts

On March 14, 2023, the Debtor filed a motion to assume a consulting agreement with Impossible Services Group, Inc. [Docket No. 62]. On April 18, 2023, the Bankruptcy Court entered an order granting such motion [Docket No. 262].

On September 8, 2023, the Debtor filed a motion to assume certain executory contracts with Quality Reimbursement Services, Inc. [Docket No. 934]. On October 3, 2023, the Bankruptcy Court entered an order granting such motion [Docket No. 1005].

### 8.     Rejection of Certain Leases and Executory Contracts

On April 4, 2023, the Debtor filed a motion to reject a non-residential real property lease, a related sublease agreement, and certain additional related agreements with Chowchilla Memorial Hospital District and Brenda Neer Physical Therapy, Inc., a California corporation, dba Chowchilla

10408334

Physical Therapy [Docket No. 173]. On June 28, 2023, the Bankruptcy Court entered an order granting such motion [Docket No. 627].

On April 4, 2023, the Debtor filed a motion to reject an unexpired non-residential real property lease with McCain Varney & Kent, LLC [Docket No. 184]. On June 29, 2023, the Bankruptcy Court entered an order granting such motion [Docket No. 640].

On April 4, 2023, the Debtor filed a motion to reject an unexpired non-residential real property lease with AMOR Wellness Center, Inc. [Docket No. 179]. On June 28, 2023, the Bankruptcy Court entered an order granting such motion [Docket No. 629].

Numerous other contracts and leases are subject to motions to reject that are pending as of the date hereof.

**9.      Use of Cash Collateral**

On March 13, 2023, the Debtor filed the *Emergency Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral and (B) Granting Adequate Protection for Use of Cash Collateral* [Docket No. 18]. The Bankruptcy Court has entered numerous orders authorizing the Debtor to use cash collateral on an interim basis [*see* Docket Nos. 125, 168, 451, 589, 674, 724, 760, 883, 1025, 1063, 1153, 1231].

**10.     Asset Sales**

On March 13, 2023, the Debtor filed an *Emergency Motion for Authority to Sell Personal Property of the Estate Pursuant to 11 U.S.C. § 363* [Docket No. 33] (the "Excess Medical Supply Sale Motion"), pursuant to which the Debtor requested authority to sell certain personal property consisting of excess medical supplies. On March 15, 2023, the United States Trustee filed an objection to the Excess Medical Supply Sale Motion [Docket No. 89]. On March 16, 2023, the Bankruptcy Court entered an order denying, without prejudice, the Excess Medical Supply Sale Motion [Docket No. 99].

On September 5, 2023, the Debtor filed a *Motion for Authority to Sell Real Property* [Docket No. 899] (the "Farmland Sale Motion"), pursuant to which the Debtor requested authority, *inter alia*: (i) to sell approximately 35.58 acres of farmland to S & K Management for $569,280, subject to higher and better bids; (ii) to pay the net proceeds of the sale to SAMC from the escrow. At a hearing held on October 24, 2023, the Bankruptcy Court granted the Farmland Sale Motion after conducting an auction at which overbids were submitted. On November 8, 2023, the Bankruptcy Court entered an order granting the Farmland Sale Motion and authorizing the Debtor to sell the farmland to R.K.R.K. 1998 Irrevocable Trust for $730,000. Of this amount, approximately $726,000 was paid to SAMC on account of its purported secured claim.

**11.     Rubio Adversary Proceeding Against the Debtor**

On May 11, 2023, Antonio Rubio, on behalf of himself and a putative class of similarly situated former employees, filed the Rubio Adversary Complaint against the Debtor [Adv. Pro. No. 23-01024], asserting causes of action for: (i) alleged violation of the Federal WARN Act, (ii) alleged violation of the California WARN Act, (iii) alleged violation of the California Labor Code, Cal. Lab. Code § 227.3, and (iv) penalties allegedly owed under PAGA.

10408334

On June 9, 2023, the Debtor filed a Motion to Dismiss the Rubio Adversary Complaint [Docket No. 11]. On September 1, 2023, the Bankruptcy Court entered an order denying the Motion to Dismiss [Docket No. 36].

On September 15, 2023, the Debtor filed an answer [Docket No. 40] to the Rubio Adversary Complaint, which asserts numerous affirmative defenses.

On January 5, 2024, the Bankruptcy Court entered a Joint Stipulation and Order to Stay Proceedings Pending Mediation [Docket No. 57], which stayed the Rubio Adversary Proceeding for all purposes, including discovery purposes, pending completion of mediation by the Parties and a further order of the Bankruptcy Court.

A status conference in the Rubio Adversary Proceeding is currently scheduled for April 24, 2024 at 11:00 a.m.

### 12. Adversary Proceeding Against the U.S. Department of Health and Human Services

On July 20, 2023, the Debtor filed an adversary proceeding complaint against the U.S. Department of Health and Human Services and Xavier Becerra, in his official capacity as acting Secretary of Health and Human Services [Adv. Pro. No. 23-01030]. The adversary complaint asserts that the defendants violated the automatic stay by terminating the Debtor's Medicare provider agreements and requests the entry of a declaratory judgment finding that defendants violated the automatic stay and that the defendant's termination of the Debtor's Medicare provider agreements is void.

The defendants' deadline to file a responsive pleading has been extended to February 21, 2024, and a status conference in the adversary proceeding is scheduled for February 28, 2024 at 11:00 a.m. [Docket No. 20].

### 13. Motion to Set First Interim Administrative Expense Bar Date

On December 21, 2023, the Debtor filed a *Motion for Order Fixing Deadline for Filing Requests for Allowance and Payment of Administrative Expenses Incurred on or After the Petition Date and Through and Including December 31, 2023, and Designating Form and Manner of Notice Thereof* [Docket No. 1223] (the "First Interim Administrative Expense Bar Date Motion"), pursuant to which the Debtor seeks to set February 26, 2024 as the date by which all requests for allowance and payment of administrative expenses, pursuant to section 503 of the Bankruptcy Code, incurred on or after the Petition Date and through and including December 31, 2023 must be filed with the Bankruptcy Court (the "First Interim Administrative Expense Bar Date")

On January 26, 2024, the Bankruptcy Court entered an order granting the First Interim Administrative Expense Bar Date Motion [Docket No. 1339].

### 14. The Hospital Reopening Motion

On January 19, 2024, the Debtor and the Committee filed the *Joint Motion of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing the Debtor to Enter into a Master Transition Agreement and a Management Services Agreement with American Advanced Management, Inc.* [Docket No.

- 17 -

1298] (the "<u>Hospital Reopening Motion</u>"), pursuant to which the movants seek authorization for the Debtor to enter into a series of transactions intended to result in a potential reopening of the Hospital, while preserving the assets of the Debtor's estate for distribution to creditors.

In particular, upon the entry of a final and non-appealable order approving the Hospital Reopening Motion, pursuant to the terms of the Master Transition Agreement and Management Services Agreement, AAM will immediately, *inter alia*: (a) become the manager of the Hospital; (b) assume all financial responsibility of the Hospital's operations and provide funding to the Hospital sufficient for the Hospital to pay all expenses associated with its on-going operations; (c) make an initial deposit of $15 million into an interest-bearing escrow account to: (i) "backstop" AAM's obligation to pay all Hospital operating expenses, and (ii) fund unsecured creditor recoveries; and (d) deposit $1 million into an escrow account for the payment of all interest and related expenses associated with the allowed secured claim asserted by SAMC and to further "backstop" AAM's obligation to pay all Hospital operating expenses. In addition, upon the confirmation of the Plan, *inter alia*, AAM is responsible for paying up to an additional $15 million (in three $5 million dollar installments) to fund recoveries for unsecured creditors.

On February 12, 2024, the County of Madera (the "<u>County</u>") filed an objection to the Hospital Reopening Motion [Docket No. 1422] (the "<u>County Objection</u>"). In connection with the County Objection, the County, together with The Regents of the University of California, acting on behalf of the University of California San Francisco and Adventist Health System West, a California nonprofit religious corporation, also submitted a *Notice of Proposed Alternative Transaction* [Docket No. 1423] (the "<u>Alternative Proposed Transaction</u>"). In the County Objection, the County argued that the Hospital Reopening Motion should be denied so that the Debtor could pursue the Alternative Proposed Transaction instead.

The County Objection was overruled and the Hospital Reopening Motion was approved at a hearing held on February 13, 2024.

<div align="center">

**ARTICLE III.**
**PRESERVATION OF CAUSES OF ACTION**

</div>

Unless any Causes of Action against any party are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Plan Proponent expressly reserves, retains, and preserves all claims and/or Causes of Action (as defined in Article I(B) of the Plan)[6] of the Debtor and its estate of any kind or nature whatsoever, whether arising before or

---

[6] The Plan defines "Causes of Action" as follows: "any action, claim, cause of action, cross-claim, third-party claim, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever belonging to the Debtor or its Estate, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law, and the proceeds thereof. For the avoidance of doubt, Cause of Action includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any claim pursuant to section 362 and any and all Avoidance Actions; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state, federal or foreign law; (f) all Tort Claims and D&O Claims; (g) any and all claims under any D&O Liability Insurance Policies; and (h) all Retained Causes of Action, including those enumerated in **Article V.S** of this Plan.

10408334

after the Petition Date including, without limitation, all claims and Causes of Action against the Excluded Parties identified on Exhibit A to the Plan. Consistent with section 1123(b)(3) of the Bankruptcy Code, this reservation, retention, and preservation is intended to provide for potential settlement and/or adjustment of Claims against the Debtor and its estate and/or retention and enforcement of all claims and Causes of Action of the Debtor and its estate. This reservation, retention, and preservation is intended to be broad in scope, and provides notice to enable Creditors to (i) identify the claims and Causes of Action (or potential claims and Causes of Action) at issue and (ii) evaluate whether those claims and Causes of Action might provide additional assets for distribution.

This reservation, retention, and preservation of claims and Causes of Action further provides notice to Creditors and other parties in interest herein about the types and categories of claims and Causes of Action that might enlarge the Estate, and is based upon information known by the Plan Proponent to date. To the extent that any Creditor or party in interest has any questions or concerns regarding the scope and breadth of the types and/or categories of claims and Causes of Action reserved, retained, and preserved, any such Creditor or party in interest should object to this Disclosure Statement and request that the Bankruptcy Court require a more complete description of the types or categories of claims and Causes of Action reserved, retained, and preserved.

Further, no Person or Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any claim and/or Cause of Action against them as any indication that the Plan Proponent, Liquidating Trustee, or the Liquidating Trust, as applicable, will not pursue any and all available claims and/or Causes of Action against them, it being the intent of the Plan Proponent that, subject to the exculpation and limitation on liability provisions set forth in Articles X and XI of the Plan, all claims and Causes of Action described herein shall be reserved, retained, and preserved for the benefit of all Creditors and parties in interest. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such claims and/or Causes of Action upon, after, or as a consequence of the Plan's confirmation or occurrence of the Effective Date. Any counterparty or potential counterparty to a claim or Cause of Action that is concerned whether a claim and/or Cause of Action may or will be asserted against it, him, or her, may contact the Plan Proponent in connection with the Plan confirmation process described in this Disclosure Statement for further information.

In addition to the foregoing, as described herein and in the Plan, consistent with applicable law and subject to the exculpation and limitation on liability provisions set forth in Articles X and XI of the Plan, the Plan Proponent identifies the following type and categories of claims and Causes of Action to be preserved and reserved:

　　　　a.　　　any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity;

　　　　b.　　　the right to object to Claims;

---

The definition of 'Causes of Action' shall be construed in accordance with its broadest possible meaning, and any doubts or ambiguities shall be resolved in favor of inclusiveness. **Except as otherwise expressly provided in this Plan or the Confirmation Order, any and all Causes of Action of the Debtor or the Estate (including, but not limited to, Tort Claims and D&O Claims), are expressly preserved under the Plan and retained by the Liquidation Trust.**"

10408334

c.　　　any claim pursuant to section 362 and any and all Avoidance Actions[7], irrespective of whether or not the targets of such Causes of Action have been identified by name or any transfers subject to avoidance have been listed in the Debtor's Schedules, this Disclosure Statement, the Plan, or any other document Filed in the Chapter 11 Case;

d.　　　any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code;

e.　　　any claims and Causes of Action under any state, federal or foreign law;

f.　　　all Tort Claims[8] and D&O Claims[9];

g.　　　any and all claims and Causes of Action (including Tort Claims and D&O Claims), against the Excluded Parties and/or any other party not expressly released pursuant to the Plan;

h.　　　any and all claims and Causes of Action relating to pending litigation, including, without limitation, the suits, administrative proceedings, executions, garnishments, and attachments listed in the Debtor's Schedules;

i.　　　any and all claims and Causes of Action against vendors, suppliers of goods or services (including attorneys, accountants, consultants, or other professional service providers), utilities, contract counterparties, and other parties for, including but not limited to: (A) services rendered; (B) over- and under-payments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, setoff, or recoupment; (C) failure to fully perform or to condition performance on additional requirements under contracts with the Debtor; (D) wrongful or improper termination, suspension of services, or supply of goods, or failure to meet other contractual or regulatory obligation; (E) indemnification and/or warranty claims; or (F) turnover Causes of Action arising under §§ 542 or 543;

---

[7] The Plan defines "Avoidance Actions" as "any and all avoidance, recovery, subordination, or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including actions or remedies arising under sections 502, 510, or 542-553 of the Bankruptcy Code, and the proceeds thereof, excluding those Avoidance Actions that have been released or sold pursuant to a Final Order of the Bankruptcy Court in the Chapter 11 Case."

[8] The Plan defines "Tort Claims" as "any and all claims or Causes of Action of the Debtor or its Estate against any of the Debtor's current or former professionals, directors, officers, trustees, managers and similar parties, including but not limited to any D&O Claims."

[9] The Plan defines "D&O Claims" as "any and all rights, Causes of Action and claims arising under state, federal or other applicable law against the Debtor's current or former directors, trustees, managers, officers and similar parties, including, without limitation: (i) claims for breach of fiduciary duty, (ii) claims relating to damages, losses, or amounts owed or potentially owed for any alleged or actual violation of the federal WARN Act, 29 U.S.C. § 2101, *et seq.*, the California WARN Act, Cal. Lab. Code §§ 1401, *et seq.*, California Labor Code, Cal. Lab. Code § 227.3, the Labor Code Private Attorneys General Act, Cal. Lab. Code §§ 2698-2699 *et seq.*, or any similar laws, and/or (iii) claims related to damages, losses, or amounts owed or potentially owed arising from or relating to the termination, lapse or other loss of the benefit of any of the Debtor's Medicare, Medicaid or Medi-Cal provider agreements(s), Rural Health Clinic License(s), or other similar agreements, and the proceeds of any such rights, Causes of Action and claims, including from any D&O Liability Insurance Policies."

10408334

j.    any and all claims and Causes of Action against health plans, payors, and other related providers;

k.    any and all claims and Causes of Action related to third-party non-Debtor's violations of antitrust, unfair competition, or similar laws;

l.    any and all claims and Causes of Action against landlords or lessors, including, without limitation, for erroneous charges, overpayments, returns of security deposits, indemnification, or for environmental claims;

m.    any and all claims and Causes of Action (i) arising against current or former tenants or lessees, including, without limitation, for non-payment of rent, damages, and holdover proceedings; and (ii) arising from damage to the Debtor's property;

n.    any and all claims and Causes of Action relating to claims, rights, or other Causes of Action the Debtor may have to interplead third parties in actions commenced against the Debtor;

o.    any and all claims and Causes of Action for collection of a debt or other amount owed to the Debtor;

p.    any and all claims and Causes of Action against insurance carriers, reinsurance carriers, underwriters, surety bond issuers or other related or similar parties relating to coverage, indemnity, contribution, reimbursement, or other matters;

q.    any and all claims and Causes of Action under any D&O Liability Insurance Policies[10];

r.    any and all claims and Causes of Action arising under or relating to the MSA or the MTA, the asset purchase agreements attached thereto, or any Conforming Escrow Agreement, including but not limited to, enforcement of such agreements and/or any breaches of such agreements; and

s.    all claims, demands, and Causes of Action of any kind or nature whatsoever held by, through, or on behalf of the Debtor and/or its Estate against any Person or Entity that have not otherwise been resolved or disposed of, all of which are preserved in full, whether or not such claims or Causes of Action are specifically identified in the Plan or this Disclosure Statement.

**This Disclosure Statement constitutes notice to any party in interest that, subject to the exculpation and limitation of liability provisions set forth in Articles X and XI of the Plan, it is the intent to pursue any and all such claims and Causes of Action described and defined herein to judgment and collection, and that the proceeds of all such claims and Causes of Action are essential to the Plan.**

---

[10] The Plan defines "D&O Liability Insurance Policies" as "all insurance policies for directors', officers', managers', trustees' and/or similar parties' liability maintained by the Debtor as of the Petition Date and/or the Effective Date, including tail coverage after the termination of any such policies, and the proceeds thereof."

- 21 -

10408334

## ARTICLE IV.
## SUMMARY OF THE PLAN

> **THIS ARTICLE IV IS INTENDED ONLY TO PROVIDE A SUMMARY OF THE MATERIAL TERMS OF THE PLAN AND IS QUALIFIED BY REFERENCE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN AND SHOULD NOT BE RELIED ON FOR A COMPREHENSIVE DISCUSSION OF THE PLAN. TO THE EXTENT THERE ARE ANY INCONSISTENCIES OR CONFLICTS BETWEEN THIS ARTICLE IV AND THE PLAN, THE TERMS AND CONDITIONS SET FORTH IN THE PLAN SHALL CONTROL AND GOVERN.**

**A.      ADMINISTRATIVE AND PRIORITY TAX CLAIMS**

**1.      Administrative Expense Claims**

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim will receive from the Debtor or the Liquidation Trust, as applicable, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Liquidation Trustee and such Holder. So long as the MTA remains in effect, AAM shall either pay directly, or provide funding to the Debtor sufficient to pay, all OAD Expenses and, to the extent AAM fails to timely fund the payment of an OAD Expense, such OAD Expense shall be paid from the Escrow Account (which shall then be replenished for such drawn amount by AAM), in each case as required by the MTA, and as further described in Article V.B of the Plan.  Allowed Administrative Expense Claims that are not OAD Expenses shall be paid from Cash on Hand.  **Unless otherwise ordered by Final Order of the Bankruptcy Court, all Administrative Expense Claims must be Filed within forty-five (45) days after the Effective Date, and served on the Liquidation Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court.  The failure to File a request for payment of an Administrative Expense Claim on or before forty-five (45) days after the Effective Date shall result in such Administrative Expense Claim being forever Disallowed, barred, and expunged in its entirety without further notice to any party, or action, approval, or order of the Bankruptcy Court.**

The Debtor estimates that Administrative Expense Claims arising under section 503(b)(9) of the Bankruptcy Code will total approximately $0.00. The Debtor or the Liquidation Trustee, as applicable, will have sufficient funds under the Plan to satisfy such Claims in full.

*Professional Fee Claims.*  Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must File, within forty-five (45) days after the Effective Date, and serve on the Liquidation Trustee, the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim; *provided* that the Liquidation Trustee may pay Professionals in the ordinary course of business, for any work authorized by the Liquidation Trustee performed on and after the Effective Date, including those fees and expenses

10408334

incurred by Professionals in connection with the implementation and Consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash. Once Allowed by the Bankruptcy Court, Professional Fee Claims incurred prior to the Effective Date shall be promptly paid from the Professional Fee Trust Account. If the amounts held in the Professional Fee Trust Account are insufficient to pay all such Allowed Accrued Professional Compensation in full in Cash, the Liquidation Trustee shall promptly pay any unpaid balance of such Allowed Accrued Professional Compensation from the Cash transferred to the Liquidation Trust on the Effective Date.

**2.**     **Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Liquidation Trustee: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; or (b) such other less favorable treatment as agreed to in writing by the Liquidation Trustee and such Holder. Allowed Priority Tax Claims will be paid from Cash on Hand.

Priority Tax Claims against the Debtor are estimated to total approximately $0.00.

**B.**     **CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS**

**1.**     **Summary**

All Claims, except Administrative Expense Claims (including Professional Fee Claims) and Priority Tax Claims are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified as described in Article III.F of the Plan.

The categories of Claims listed below classify Claims for all purposes including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid, released, or otherwise settled prior to the Effective Date.

### Summary of Classification and Treatment of Classified Claims

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed and Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed and Presumed to Accept |
| 3 | SAMC Secured Obligations | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |

10408334

### 2.    Separate Classification of Certain Claims

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within the Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of voting to accept or reject the Plan and receiving Plan Distributions.

All General Unsecured Claims (or other classified Claims) have been placed in one Class for purposes of the Plan.

### 3.    Elimination of Vacant Classes

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

### 4.    Voting; Presumptions; Solicitation in Good Faith

Only Holders of Allowed Claims in Classes 3 and 4 are entitled to vote to accept or reject the Plan.  Holders of Claims in these Voting Classes will receive Ballots containing detailed voting instructions.

The Plan Proponent will solicit votes on the Plan from the Voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  Accordingly, the Plan Proponent and each of its Related Persons shall be entitled to, and upon the Confirmation Date will be granted, the protections of section 1125(e) of the Bankruptcy Code.

### 5.    Cramdown

If any Class of Claims is deemed and/or presumed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Plan Proponent intends to (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code, or (ii) amend or modify the Plan in accordance with the terms of the Plan and the Bankruptcy Code.  If a controversy arises as to whether any Claims, or any Class of Claims, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### 6.    Classification and Treatment of Claims

#### (a)    <u>Class 1 - Other Priority Claims</u>

- o  *Classification*:  Class 1 consists of the Other Priority Claims, which are any Claims against the Debtor accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

- o  *Treatment*:  The legal, equitable, and contractual rights of the Holders of Other Priority Claims are unaltered by the Plan.  With respect to each Allowed Other

- 24 -

Priority Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Other Priority Claim is an Allowed Other Priority Claim on the Effective Date, or (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim will receive in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed Other Priority Claim, at the election of the Liquidation Trustee: (A) Cash equal to the amount of such Allowed Other Priority Claim; (B) such other less favorable treatment as to which the Liquidation Trustee and the Holder of such Allowed Other Priority Claim will have agreed upon in writing; or (C) such other treatment such that it will not be Impaired. Allowed Other Priority Claims will be paid from Cash on Hand unless otherwise agreed to by the Holder of such Claim.

o   *Impairment and Voting*:  Class 1 is an Unimpaired Class and the Holders of Other Priority Claims are conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Priority Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

(b)   **Class 2 - Other Secured Claims**

o   *Classification*:  Class 2 consists of the Other Secured Claims.  This Class will be further divided into subclasses designated by letters of the alphabet (Class 2A, Class 2B and so on), so that each Holder of any Allowed Other Secured Claim against the Debtor is in a Class by itself, except to the extent that there are Other Secured Claims that are substantially similar to each other and may be included within a single Class.

o   *Treatment*: The legal, equitable, and contractual rights of the Holders of Other Secured Claims are unaltered by the Plan.  With respect to each Allowed Other Secured Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Other Secured Claim is an Allowed Other Secured Claim on the Effective Date, or (ii) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim will receive in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed Other Secured Claim, at the election of the Liquidation Trustee: (A) Cash equal to the amount of such Allowed Other Secured Claim; (B) return of the Collateral securing such Allowed Other Secured Claim; (C) such other less favorable treatment as to which the Liquidation Trustee and the Holder of such Allowed Other Secured Claim will have agreed upon in writing; (D) any defaults shall be cured and shall be paid or satisfied in accordance with and pursuant to the terms of the applicable agreement between the Liquidation Trustee and the Holder of the Allowed Other Secured Claim and such Claim shall be Reinstated; or (E) Reinstatement or such other treatment such that it will not be Impaired.

o   *Impairment and Voting*:  Class 2 is an Unimpaired Class and the Holders of Other Secured Claims are conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of

10408334

Other Secured Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

(c) **Class 3 – SAMC Secured Obligations**

o    *Classification*:  Class 3 consists of SAMC Secured Obligations.

o    *Allowance*: The SAMC Secured Obligation shall be allowed in an aggregate principal amount (plus accrued and unpaid interest through January 1, 2024) of $2,323,485 plus unpaid fees and interest that accrue from January 2, 2024 through the Effective Date, which represents the outstanding portion of the SAMC Secured Obligations.

o    *Treatment*: On the Effective Date, and in exchange for a waiver and release of any and all claims or Causes of Action asserted or assertable against SAMC by the Debtor, the Estate, the Committee, the Liquidation Trust or the Liquidation Trustee (as further described in Article X.B of the Plan), the SAMC Secured Obligations shall receive a distribution in the amount (the "SAMC Distribution Amount") equal to the sum of: (a) $2,230,546, plus (b) any interest, fees and expenses, accrued between January 2, 2024 and the Effective Date, that remain due and owing as of the Effective Date. On or before the Expense Payment Deadline of each calendar month, a portion of the One Million Deposit shall be released to the Debtor in an amount sufficient to pay certain interest and expenses associated with the Allowed SAMC Secured Obligations that accrued during the prior calendar month and shall be immediately applied by the Debtor solely to pay such interest and expenses (and thereby reducing the SAMC Distribution Amount to the extent paid from the One Million Deposit). The balance of the Allowed SAMC Secured Obligations shall be paid on the Effective Date from Cash on Hand, unless otherwise agreed to by the Holder of such Allowed SAMC Secured Obligation.

o    *Impairment and Voting*: Class 3 is an Impaired Class and the Holders of SAMC Secured Obligations are entitled to vote to accept or reject the Plan.

(d) **Class 4 – General Unsecured Claims**

o    *Classification*:  Class 4 consists of the General Unsecured Claims, which are any Claim against the Debtor that is not a/an: (a) Administrative Expense Claim (including a Professional Fee Claim); (b) Priority Tax Claim; (c) Other Priority Claim; (d) Other Secured Claim; or (e) SAMC Secured Obligation.

o    *Treatment*:  As soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed General Unsecured Claim (unless the applicable Holder agrees to a less favorable treatment), its Pro Rata share of the Liquidation Trust Interests, which shall entitle such Holder to its Pro Rata Share of the Liquidation Trust Assets.  The Liquidation Trust Assets shall initially consist of, *inter alia*: (i) any Cash on Hand (including the $15 million Initial Contribution); (ii) the Estate Personal

10408334

Assets; (iii) any Excess Professional Fee Trust Amount; (iv) the D&O Liability Insurance Policies; (v) the Retained Causes of Action (including, but not limited to, Tort Claims and D&O Claims); and (vi) the proceeds of the foregoing. Plan Distributions on account of such Liquidation Trust Assets shall be made on or as soon as reasonably practicable after the later of: (i) the Initial Distribution Date if such General Unsecured Claim is Allowed on the Effective Date, or (ii) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim.

o    *Impairment and Voting*:  Class 4 is an Impaired Class and the Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

### 7.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's, the Committee's or the Liquidation Trustee's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to cure any arrears or defaults that may exist with respect to Executory Contracts or Unexpired Leases to be assumed under the Plan.

### 8.    Special Provision Governing Cash Paid to SAMC

Notwithstanding anything to the contrary in the Plan, the Debtor (and the Committee) waive any rights in respect of legal and equitable claims of setoff or recoupment as they relate to any cash payments made to SAMC during the course of the chapter 11 case and any distributions made on account of SAMC Secured Obligations under the Plan.

### 9.    Subordinated Claims

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(a) of the Bankruptcy Code, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor and the Liquidation Trustee reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

## C.    ACCEPTANCE OR REJECTION OF THE PLAN

### 1.    Deemed and Presumed Acceptance of Plan

Classes 1 and 2 are Unimpaired under the Plan and are therefore conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 2.    Voting Classes

Subject to the provisions of any order approving the Disclosure Statement, each Holder of an Allowed Claim, as of the applicable Voting Record Date, in the Voting Classes (Class 3 and Class 4) will be entitled to vote to accept or reject the Plan.

10408334

### 3.     Controversy Concerning Impairment

In the event of any controversy as to whether any Holder of an Allowed Claim or Class is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

### 4.     Acceptance by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class (or, as applicable sub-class) of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims actually voting in such Class (or, as applicable, sub-class) voted to accept the Plan.  An Impaired Class of Claims for which no Holder votes to accept or reject the Plan shall be deemed to have rejected the Plan.

### 5.     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Plan Proponent shall seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class (or, as applicable, sub-class) that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Plan Proponent reserves the right to amend, revoke, modify, or withdraw the Plan or any amendment, supplement, or Exhibit thereto, or the Plan Supplement in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## D.     MEANS FOR IMPLEMENTATION OF THE PLAN

### 1.     Overview

The Plan provides for: (a) the formation of the Liquidation Trust; (b) the disposition of substantially all the Assets of the Debtor and its Estate and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code; (c) the winding down of the Debtor and its affairs by the Liquidation Trustee; and (d) the creation of a mechanism for the Liquidation Trustee to pursue, litigate, waive, settle, and compromise Causes of Action (including, but not limited to, D&O Claims and Tort Claims) to maximize Creditor recoveries.

The Plan also provides that, subject to the occurrence of the Operation Assumption Date, AAM shall contribute up to $30 million in Cash to fund the Liquidation Trust for the benefit of Holders of Allowed General Unsecured Claims in exchange for the sale to Buyer of: (i) the Real Property Asset (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit B to the MTA), and (ii) at the election of AAM, the transition of the Hospital Assets to Buyer (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit C to the MTA). To the extent these transactions are terminated, the Plan enables the Committee to pursue and consummate a Liquidation Transaction if, at any time before the Effective Date, it determines in its sole discretion that consummation of such Liquidation Transaction is in the best interests of the Estate and Creditors.

In addition, in the event that AAM terminates the MTA, AAM shall submit to the Debtor (or if the Plan has been confirmed, the Liquidation Trustee) a binding $3 million stalking horse bid for the Real Property Asset if requested to do so by the Committee (or, if a Plan has been confirmed, the Liquidation Trustee).

- 28 -

10408334

### 2.      The MTA & MSA

*Purpose*. AAM is dedicated under the MTA to the reopening of Hospital under the terms set forth in the MTA, and upon CDPH's approval.  It is AAM's intention to assist Hospital in its reopening and continued operations under the MSA, until the parties can transition the operations and ownership of the Hospital Assets to AAM, by which AAM will continue the delivery of health care for the benefit of communities served by the Debtor.  The parties recognize and agree that it will take the combined financial resources of the Debtor and AAM to accomplish the reopening of the Hospital. Expected costs fall into three categories: (i) existing burn rate and re-opening investment; (ii) operational subsidy and continued capital investment once open; and (iii) creditor repayment through AAM's contribution of up to $30 million to fund the Liquidation Trust. Because there will be a significant initial and ongoing investment in the reopening and operation of the Hospital by AAM, and AAM is unlikely to receive any net income or management fees during its management of the Hospital, AAM will be allowed to purchase the assets of the Hospital for the amount of its investment into the creditor repayment, and management and operation of the Hospital, as further described herein and in the MTA.

*Management of the Hospital*. Under the MSA, AAM will act as the Debtor's agent for, among other things: (i) applying for a change of ownership with the CDPH; (ii) applying for funding under the California Distressed Hospital Loan Program pursuant to California Health and Safety Code Sections 129380 *et seq.*; and (iii) applying for the necessary approvals with the California Attorney General's Nonprofit Health Facilities division.

*AAM's Option to Acquire Hospital*. At its election, but no later than thirty-six (36) months after the MTA Execution Date, AAM may elect (in its sole discretion) to submit a CHOW Application for change of ownership or transfer of membership interests to CDPH to effect a change in licensed operator of the Hospital from the Debtor to AAM. The date of CDPH's approval of the CHOW Application shall be the date on which ownership of the Hospital Assets shall be transferred from the Debtor to Manager.

*Transition Period*. During the Transition Period, AAM shall provide the Debtor with certain management and administrative services in support of the Hospital's operations as identified in the MTA and MSA. The Debtor and AAM believe that AAM's provision of the services identified in the MTA will enhance the Debtor's ability to provide high quality, efficient health care services to the community served by the Hospital during the Transition Period.

*Post-Closing Date*. After the Closing Date, AAM will operate the Hospital pursuant to its own acute care health facility license issued by CDPH pursuant to the approved CHOW Application, and the Debtor will cease to operate the Hospital.

*Transition of Facilities*.

(i)      *Assumption of Financial Responsibility*: Immediately upon the occurrence of the Operation Assumption Date, AAM shall assume all financial responsibility for the Hospital's operations.

(ii)     *Payment of Expenses*: AAM shall provide funding to the Hospital sufficient for the Hospital to pay all OAD Expenses; *provided* that AAM's obligation to fund the OAD Expenses shall not apply to expenses accruing after termination of the MSA.

10408334

(iii)   *Retention of Property by Debtor*: All Estate Personal Assets shall remain the property of the Debtor's Estate, available to pay the Claims of all of the Debtor's Creditors and shall not be: (i) subject to the MSA; (ii) transferred or otherwise hypothecated, encumbered (except as such encumbrance existed on the Petition Date) or otherwise affected by the MSA or the transactions contemplated therein or in the MTA; or (iii) impaired, impacted or otherwise affected by AAM or any affiliate thereof.

(iv)   *Distressed Hospital Loan Program Funds*: Notwithstanding anything to the contrary in the Plan, any DHLP Funds shall be applied solely to fund operation of the Hospital so long as it continues to operate. Any unpaid balance of DHLP Funds remaining on the Closing Date shall be returned to the California Health Facility Financing Authority.

(v)   *Use of Funds by AAM*.  For five (5) years from the Operation Assumption Date, AAM shall commit to reinvest Net Funds produced by the Hospital (including its rural clinics) into providing services to the Madera community at the Hospital. As used herein, "Net Funds" means revenues from services furnished at the Hospital, Disproportionate Share Hospital Program funds, and QAF revenue, less (i) expenses of the Hospital, (ii) joint expenses of AAM and the Hospital as allocated to the Hospital in proportion to the services provided, (iii) payment of funds, including QAF and FEMA funds, to the Hospital's pre-petition creditors, in accordance with relevant orders from the Bankruptcy Court, *provided that* annual repayment of any such expenses ("AAM Repayment") shall not exceed 15% of the gross revenues of the Hospital.  For avoidance of doubt, DHLP Funds shall not be used to fund any portion of the AAM Repayment.

(vi)   *Accounting Methods*.  All calculations shall be made in accordance with AAM's normal accounting practices and capital approval processes provided that those processes shall include practices and processes to effectuate these requirements.

(vii)   *Retention of Benefits by Debtor*. Notwithstanding anything in this Agreement or in the MSA to the contrary, during the term of the MSA or upon the Closing Date, AAM shall not, through direct payments to itself of expenses or funds, or, in the event that the facility is acquired by AAM, through investments in the facility, acquire funds (excluding management fees) in excess of that portion of the AAM Cash Contribution actually contributed to fund the Liquidation Trust.

(viii)   *Contingent Repayment of Funds by AAM*.  To the extent that, upon either (i) the Closing Date or (ii) upon termination of the MTA, AAM has acquired funds (excluding management fees), either through direct payments to itself of expenses or funds, or, in the event that the facility is acquired by AAM, through investments in the facility, that are in excess of that portion of the AAM Cash Contribution actually contributed to fund the Liquidation Trust, AAM shall return any such excess funds to the Debtor.

(ix)   *Allowance of AAM GUC*: Subject to the Bankruptcy Court's approval of the MTA, and subject to subparagraphs (vii) and (viii) above, AAM shall be deemed to have an Allowed General Unsecured Claim in an amount equal to the OAD Expenses that are paid by AAM out-of-pocket prior to the Hospital's receipt of DHLP Funds (the "AAM GUC"); *provided*, *however*, that beginning on the DHLP Funds Receipt Date, no

10408334

further OAD Expenses shall be added to the calculation of the AAM GUC except to the extent that the total OAD Expenses incurred after the DHLP Funds Receipt Date exceeds the total amount of DHLP Funds received by the Hospital and are therefore funded by AAM out-of-pocket. For the avoidance of doubt, the AAM GUC shall be subordinated in all respects to all other Allowed General Unsecured Claims and shall only be payable upon the payment in full (without interest) of all Allowed General Unsecured Claims (other than the AAM GUC), except as set forth below in "Treatment of Claims".

*Treatment of Claims*. The net proceeds from the Estate Personal Assets and the Real Property Asset shall be used to pay Allowed Claims pursuant to the priorities set forth in the Bankruptcy Code and in accordance with the terms of the Plan. To the extent that the Hospital resumes operations and is sold or otherwise transitioned to a third party as an operating hospital either through a sale motion, a plan of reorganization, a management agreement, or in any other manner, the AAM GUC shall be treated as an Allowed Administrative Expense Claim payable solely from such proceeds of the sale of the Hospital (but shall not be payable from the proceeds of any Estate Personal Assets unless all Allowed General Unsecured Claims have been paid in full, without interest).

*Sale of Real Estate Asset and Hospital Assets*.

(i)     *Liquidation Trust*: Subject to the occurrence of the Operation Assumption Date, AAM shall contribute the AAM Cash Contribution, subject to the terms of the MTA and the Plan, to fund the Liquidation Trust for the benefit of Holders of Allowed General Unsecured Claims in exchange for the sale to Buyer of: (1) the Real Property Asset (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit B to the MTA), and (2) at the election of AAM, the transition of the Hospital Assets to Buyer (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit C to the MTA).

(ii)    *Funding of AAM Cash Contribution*: The AAM Cash Contribution shall be funded as follows:

a.   Upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order, AAM shall immediately deposit into the Escrow Account the Initial Contribution.

b.   *Replenishment of Escrow*: On or before the Effective Date, AAM shall deposit into the Escrow Account an amount sufficient such that, as of the occurrence of the Effective Date, the Initial Contribution held in the Escrow Account is no less than $15 million.

c.   Immediately upon the Effective Date, the Initial Contribution shall be released from the Escrow Account to be transferred to the Liquidation Trustee.

d.   The balance of the AAM Cash Contribution shall be paid by AAM to the Liquidation Trust in up to three (3) Supplemental Contributions until such time as AAM has contributed into the Escrow Account or directly to the Liquidation Trust a total amount of Cash (including the Initial Contribution, but excluding any amounts paid by AAM out-of-pocket toward OAD Expenses) equal to the *lesser*

of: (i) $30 million, or (ii) an amount sufficient to pay in full all Allowed General Unsecured Claims (other than the subordinated AAM GUC). The Supplemental Contributions shall be paid by AAM to the Liquidation Trust according to the following schedule:

| Supplemental Contribution Schedule | Deadline for Payment to Liquidation Trustee |
|---|---|
| 1st $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $15 million has been distributed to Holders of Allowed General Unsecured Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |
| 2nd $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $20 million has been distributed to Holders of Allowed General Unsecured Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |
| 3rd $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $25 million has been distributed to Holders of Allowed General Unsecured Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |

(iii)   *AAM Contribution Lien*: AAM's obligation to pay the AAM Cash Contribution shall be secured by the AAM Contribution Lien. Upon the Liquidation Trust's receipt of the full amount of the AAM Cash Contribution, the AAM Contribution Lien shall be deemed released and the Liquidation Trustee shall (at AAM's request) execute requisite documentation to evidence release of the AAM Contribution Lien.

(iv)   *Surplus Funds*. To the extent that, after paying all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Other Secured Claims, Allowed SAMC Secured Obligations, and Allowed General Unsecured Claims in full, without interest, and the Allowed AAM Subordinated Claim, without interest, the Debtor's estate has remaining Assets, such remaining Assets (including, but not limited to, the Estate Personal Assets) shall be used as follows: (a) *first*, to fund the Wind Up Reserve, (b) *second*, to pay the AAM Refund, (c) *third*, to pay post-petition interest on Allowed General Unsecured Claims at the prevailing Federal Judgment Rate as of the Effective Date, and (d) *fourth*, any remaining balance shall be paid to the Hospital. For avoidance of doubt, notwithstanding anything to the contrary contained in the Plan, the MTA, or otherwise, this provision shall not apply to DHLP Funds.

(v)   *Sale of Real Property Asset*: The sale of the Real Property Asset to Buyer shall be, and shall be deemed, effective immediately upon: (a) the Effective Date, and (b) the release of the Initial Contribution from the Escrow Account and the deposit of such funds into the Liquidation Trust. As additional consideration for AAM's purchase of the Real

- 32 -

Property Asset, AAM shall contribute the remainder of the AAM Cash Contribution to the Liquidation Trust in accordance with the terms of the Plan and Paragraph 3.b. of the MTA.

(vi)     *CHOW Election*: AAM shall have the option, in its sole discretion, to submit a CHOW Application to CDPH to effect a change in licensed operator of the Hospital from the Debtor to AAM within thirty-six (36) months of the MTA Effective Date.

(vii)    *Transfer of Hospital Assets*: Subject to AAM exercising the CHOW Election, the transfer of the Hospital Assets to Buyer shall be, and shall be deemed, effective immediately upon: (a) CDPH's approval of such timely-submitted CHOW Application for the change of ownership; and (b) Buyer's payment to the Debtor of $1.00.[11]

*Additional Payments*. Upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order, AAM shall (i) assume the liability for the unused portion of the $2 million bridge loan and for any other amounts loaned to the Hospital by HCAI in connection with AB112; and (ii) immediately deposit the One Million Deposit into the Escrow Account for the payment of all interest and related expenses associated with any Allowed SAMC Secured Obligations until (a) the MSA is terminated; (b) all Allowed SAMC Secured Obligations have been paid in full; or (c) the Plan Confirmation Deadline. On or before the Expense Payment Deadline of each calendar month: (a) funds held in the Escrow Account shall be released to the Debtor in an amount sufficient to pay all Undisputed OAD Expenses that were due and unpaid as of the first day of the prior calendar month (and as to which AAM has not provided to the Committee (or, if appointed pursuant to the Plan, the Liquidation Trustee) proof of payment prior to the Expense Payment Deadline) and shall be immediately applied by the Debtor solely to pay such Undisputed OAD Expenses and (b) a portion of the One Million Deposit shall be released to the Debtor in an amount sufficient to pay all interest and related expenses associated with any Allowed SAMC Secured Obligations that accrued during the prior calendar month, and shall be immediately applied by the Debtor solely to pay such interest and related expenses. The consideration due from AAM pursuant to this provision is in addition to the AAM Cash Contribution and shall not be credited against, nor in any way reduce, the AAM Cash Contribution due in accordance with the terms of the MTA or this Plan. Upon payment in full of all Allowed SAMC Secured Obligations, any unused balance of the One Million Deposit shall be applied in the following priority: *first*, to fund the Initial Contribution, *second*, to fund each Supplemental Contribution sequentially, and, *third*, after all of AAM's obligations to fund the Initial Contribution and the Supplemental Contributions have been satisfied in full, to be repaid to AAM.

*Termination of the MSA and MTA*.

(i)      *AAM Right to Terminate if Plan Not Timely Confirmed*: If the Bankruptcy Court does not confirm the Plan by the Plan Confirmation Deadline, AAM shall have the option during the seven (7) days immediately following the Plan Confirmation Deadline, exercisable in its sole and absolute discretion, to terminate the MSA and MTA by providing written notice of termination to counsel for the Debtor and the Committee. The Plan Confirmation Deadline may be extended by AAM or by order of the Bankruptcy Court.

---

[11] For the avoidance of doubt, the $1.00 sale price is in addition to consideration provided by AAM to the Debtor under the MSA, payment of the Initial Contribution, and AAM's obligation to fund the remainder of the AAM Cash Contribution.

10408334

(ii) *Debtor Right to Terminate*: Debtor shall have the right to terminate the MSA and MTA, in its sole and absolute discretion, by written notice to AAM, if the Bankruptcy Court does not confirm the Plan on or before the Plan Confirmation Deadline.

(iii) *Termination for Cause*: Either party may terminate the MSA and MTA for Cause upon written notice to the other party specifying the basis for the termination.

  a. Under the MTA, "Cause" means any of the following: (i) a material breach of any of the terms of the MTA by the other party that is not cured within seven (7) days after written notice of the breach; or (ii) the other party's engaging in any illegal or fraudulent activity that materially affects the other party's ability to perform under the MTA.

  b. Under the MSA, "Cause" means any of the following: (i) a material breach of any of the terms of the MSA by the other party that is not cured within sixty (60) days after written notice of the breach; or (ii) the other party's engaging in any illegal or fraudulent activity that materially affects the other party's ability to perform under the MSA; or (iii) the MTA having been terminated in accordance with its terms by any party thereto.

(iv) *Effect of Termination*:

  a. Upon (a) AAM's termination of the MTA in accordance with subparagraph (i) above, (b) the Debtor's termination of the MTA other than for Cause, or (c) AAM's valid termination of the MTA for Cause (as determined by Final Order of the Bankruptcy Court), any portion of the Initial Contribution or the One Million Deposit remaining in the Escrow Account shall be applied in the following order: *first*, to (i) pay Termination Date Expenses or (ii) deposit with the Liquidation Trustee an amount sufficient to pay all Termination Date Expenses, and, *second*, to refund to AAM any funds remaining in the Escrow Account after all OAD Expenses have been paid in full. This provision shall survive termination of the MTA.

  b. Upon termination of the MTA by the Debtor for Cause (as determined by Final Order of the Bankruptcy Court), any portion of the Initial Contribution or the One Million Deposit remaining in the Escrow Account shall be released to (a) the Liquidation Trustee or (b) if no Liquidation Trustee has been appointed in this Chapter 11 Case, to the Debtor, in each case for the benefit of creditors of the Debtor's Estate.

(v) *Compliance with California Health and Safety Code*. Following the commencement of the provision of health care services at the Hospital, should Debtor or AAM terminate the MTA resulting in the closure of the Hospital, closure or reduction of emergency medical services, or relocation or elimination of a supplement service by the Hospital, notice shall be given to the public according to the public notice requirements and timelines pursuant to California Health and Safety Code sections 1255.1 through 1255.25.

*Uses of Escrowed Funds.*

10408334

(i)    Until the earlier of (a) the Effective Date, or (b) the first date on which (i) the MTA has been terminated and (ii) all OAD Expenses incurred by the Hospital during the Transition Period have been paid in full, the Initial Contribution shall be held in the Escrow Account as security for AAM's obligations to (a) pay OAD Expenses and (b) pay the first $15 million of the AAM Cash Contribution.

(ii)    The One Million Deposit shall be held in the Escrow Account as security for AAM's obligations to (a) pay OAD Expenses, (b) pay all interest and related expenses associated with the SAMC Secured Obligations, and (c) pay the first $15 million of the AAM Cash Contribution.

*Alternative Proposal.* In the event that AAM terminates the MTA in accordance with the terms thereof, AAM will submit to the Debtor (or, if the Plan has been confirmed, the Liquidation Trustee) a binding $3 million stalking horse bid for the Real Property Asset if requested to do so by the Committee (or, if a Plan has been confirmed, the Liquidation Trustee).

**3.    Pivot to a Liquidation Transaction**

In the event that the MTA is terminated in accordance with its terms, the Committee reserves the right, in its sole discretion, at any time prior to the Effective Date, to pursue and consummate a Liquidation Transaction, if it determines in its sole discretion that consummation of such a Liquidation Transaction is in the best interests of the Estate and Creditors; provided that any such Liquidation Transaction shall provide: (a) the same "Treatment" of SAMC Secured Obligations as specified in Article III.F.3 of the Plan, and (b) for the SAMC Secured Obligations to be paid in full in Cash as soon as reasonably practicable after the effective date of such Liquidation Transaction.

**4.    General Settlement of Claims**

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims, and is fair, equitable, and reasonable. **Except as otherwise expressly provided in the Plan, any and all claims and Causes of Action of the Debtor and the Estate are preserved under the Plan.**

**5.    Continued Existence of Debtor and Vesting of Assets in Liquidation Trust**

On and after the Effective Date, subject to the requirements of the Plan, the Debtor will continue to exist as a separate corporation, and shall retain all of the powers of a corporation under applicable non-bankruptcy law, and without prejudice to any right to amend its articles of incorporation, dissolve, merge, or convert into another form of business entity, or to alter or terminate its existence. The Liquidation Trustee shall be deemed to have been admitted as the sole director of the Debtor under applicable non-bankruptcy law and shall be authorized to exercise all of the rights and powers of a sole director as provided by the Plan.

Neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtor, which shall

10408334

continue as a corporation, under the control of the Liquidation Trustee following the Effective Date subject to the terms of the Plan.

Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of the Debtor and its Estate, including any Causes of Action (including, but not limited to, Tort Claims and D&O Claims), will vest in the Liquidation Trust free and clear of all Claims, Liens, charges, and other encumbrances. Notwithstanding the foregoing, the Plan Proponent reserves the right to modify the Plan to exclude certain Assets from transfer to the Liquidation Trust as necessary to preserve rights and claims of the Estate and maximize value for Creditors. The Confirmation Order shall constitute a determination that the transfers of the Liquidation Trust Assets to the Liquidation Trust are legal and valid and consistent with applicable law, including applicable state law.

All parties shall execute any documents or other instruments as necessary to cause title to the applicable Assets to be transferred to the Liquidation Trust. The Liquidation Trust Assets will be held in trust for the benefit of all Liquidation Trust Beneficiaries pursuant to the terms of the Plan and the Liquidation Trust Agreement.

**6.      Corporate Action**

On the Effective Date, the matters under the Plan involving or requiring corporate action of the Debtor, including but not limited to actions requiring a vote or other approval of the board of directors, managers, members, partners or trustees of the Debtor or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the managers, members, directors, officers or trustees of the Debtor.

Without limiting the generality of the foregoing, except as otherwise provided in the Plan and the MSA and MTA (to the extent such agreements remain in effect), on the Effective Date and automatically and without further action, (i) any existing manager, director, officer and trustee of the Debtor will be deemed to have resigned on the Effective Date without any further corporate action; (ii) the Liquidation Trustee shall be deemed the sole manager, director, officer, trustee and representative of the Debtor to exercise the rights, power, and authority of the Debtor under applicable provisions of the Plan and bankruptcy and non-bankruptcy law; and (iii) all matters provided under the Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order shall act as an order modifying the Debtor's articles of incorporation such that the provisions of the Plan can be effectuated. The Plan shall be administered by the Liquidation Trustee, and all actions taken thereunder in the name of the Debtor shall be taken through the Liquidation Trustee. All corporate governance activities of the Debtor shall be exercised by the Liquidation Trustee, in his or her discretion, subject to the terms of the Plan.

On and after the Effective Date, the Liquidation Trustee may, in the name of the Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan, the Confirmation Order or the Liquidation Trust Agreement. Without limiting the foregoing, the Liquidation Trustee may pay all reasonable Trust Expenses in the ordinary course of business without further notice to Creditors or approval of the Bankruptcy Court.

10408334

### 7.    Liquidation Trust

Prior to the Effective Date, the Debtor shall execute the Liquidation Trust Agreement. The Liquidation Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidation Trust as a grantor trust.

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of maximizing the value of the Liquidation Trust Assets, which shall initially consist of the Distributable Assets, and effectuating Plan Distributions to Creditors consistent with the Plan. The Liquidation Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.

On the Effective Date, the Liquidation Trust Assets shall vest automatically in the Liquidation Trust. The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be made for the benefit and on behalf of the Liquidation Trust Beneficiaries. The assets comprising the Liquidation Trust Assets will be treated for tax purposes as being transferred by the Debtor to the Liquidation Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Liquidation Trust Beneficiaries to the Liquidation Trust in exchange for the Liquidation Trust Interests in the Liquidation Trust. The Liquidation Trust Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust. Upon the transfer of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtor's rights, title, and interest in the Liquidation Trust Assets, and the Debtor will have no further interest in or with respect to the Liquidation Trust Assets.

In pursuing any Causes of Action, the Liquidation Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtor's rights with respect to the periods in which any of the Causes of Action may be brought under section 546 of the Bankruptcy Code. The Liquidation Trust Agreement will require consistent valuation of the Liquidation Trust Assets by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all U.S. federal and other income tax and reporting purposes. The Liquidation Trust will not be permitted to receive or retain Cash in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the Liquidation Trust Assets.

In connection with the prosecution of the Causes of Action, any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity attaching to any prepetition and/or pre-Effective Date documents or communications relating to the Causes of Action shall be transferred to and shall vest in the Liquidation Trust. The Liquidation Trust's receipt of such privileges or immunities associated with the Causes of Action shall not operate as a waiver of those privileges or immunities possessed or retained by the Debtor, nor shall it operate to eliminate the rights of any co-defendant to any applicable joint privilege or immunity. The Liquidation Trust shall also be vested with the Debtor's rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004. The Liquidation Trust, however, shall not be considered a successor of the Debtor and shall not assume any obligations of the Debtor other than expressly provided for by the Plan and the Liquidation Trust Agreement.

Any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity held by the Committee shall be transferred to and shall vest in the Liquidation Trust. The

10408334

Liquidation Trust shall have access to all discovery obtained by the Committee in this Chapter 11 Case, including discovery obtained pursuant to Bankruptcy Rule 2004.

Except as otherwise ordered by the Bankruptcy Court, the Trust Expenses on or after the Effective Date shall be paid in the ordinary course of business in accordance with the Liquidation Trust Agreement without further order of the Bankruptcy Court and without notice to any other party.

The Liquidation Trust shall file annual reports regarding the liquidation or other administration of property comprising the Liquidation Trust Assets, the distributions made by it and other matters required to be included in such report in accordance with the Liquidation Trust Agreement. In addition, the Liquidation Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

The Liquidation Trust Interests are not intended to constitute "securities." To the extent the Liquidation Trust Interests are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act or other applicable law. If the Liquidation Trustee determines, with the advice of counsel, that the Liquidation Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act, or other applicable law, then the Liquidation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and to file reports with the SEC to the extent required by applicable law.

The existence of the Liquidation Trust and the authority of the Liquidation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the date on which: (a) all material Liquidation Trust Assets are liquidated and/or monetized in accordance with the Plan; *provided, however,* for the avoidance of doubt, that the Liquidation Trustee shall not be required to pursue any Causes of Action or take any other action that the Liquidation Trustee determines, in his discretion, is not likely to yield sufficient additional proceeds to justify further pursuit or action; (b) the funds in the Liquidation Trust have been distributed in accordance with the Plan; and (c) the order closing the Chapter 11 Case is a Final Order.

To the extent that the terms of the Plan with respect to the Liquidation Trust are inconsistent with the terms set forth in the Liquidation Trust Agreement, then the terms of the Plan shall govern.

**The Plan shall be interpreted so as to afford, for the benefit of all Holders of Allowed Claims, the greatest opportunity for maximum recovery by the Liquidation Trustee on the Liquidation Trust Assets and proceeds thereof, Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and proceeds thereof, and rights in and proceeds of any D&O Liability Insurance Policies. The proceeds of Causes of Action (including, but not limited to, D&O Claims and Tort Claims) are material to the implementation of the Plan and the recoveries to Creditors**.

8.      **Liquidation Trustee**

*Appointment of the Liquidation Trustee*. The Liquidation Trustee shall be selected by the Committee, subject to the consent of AAM, such consent not to be unreasonable withheld, and appointed as of the date of the execution of the Liquidation Trust Agreement. The identity of the Liquidation Trustee shall be disclosed prior to the Confirmation Hearing as part of the Plan

- 38 -

10408334

Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code. The Liquidation Trustee will be compensated by the Liquidation Trust, which compensation shall be disclosed in the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.

*Liquidation Trustee as the Representative of the Debtor's Estate.* On the Effective Date, the Liquidation Trustee shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidation Trust Agreement and the Plan, including the right to (1) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Liquidation Trust Agreement and the Plan; (2) administer the Liquidation Trust Assets, including prosecuting, settling, abandoning, or compromising any Causes of Action; and (3) employ and compensate professionals and other agents consistent with Article V.H of the Plan.

For the avoidance of doubt, upon the occurrence of the Effective Date, the Liquidation Trustee shall automatically be granted, have, and be vested with exclusive standing and authority to: (i) bring and prosecute any Cause of Action (including, but not limited to, D&O Claims and Tort Claims) in a court of competent jurisdiction; and (ii) negotiate, settle, waive, or otherwise resolve any Causes of Action (including, but not limited to, D&O Claims and Tort Claims); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Causes of Action that seeks recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement.

For the further avoidance of doubt, upon the Effective Date, the Liquidation Trustee shall automatically be: (a) deemed a representative of the Debtor and the Estate with respect to all applicable Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and any related D&O Liability Insurance Policies; and (b) granted and have the right to control any and all privileges and protections on behalf of the Debtor, the Committee and the Estate with respect to all applicable Causes of Action (including, but not limited to, D&O Claims and Tort Claims). Nothing in the Plan shall require the Liquidation Trustee to prosecute or pursue any Causes of Action.

*Powers of the Liquidation Trustee.* The Liquidation Trustee shall be a representative of the Debtor's Estate and shall, subject to the terms of the Liquidation Trust Agreement, have the power to make all decisions with respect to the Liquidation Trust Assets, including prosecution, negotiation, waiver, and/or settlement of any Causes of Action (including, but not limited to, D&O Claims and Tort Claims); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Causes of Action asserted against other Entities that seeks recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement. Unless otherwise provided in the Plan, the Confirmation Order or the Liquidation Trust Agreement, the duties and powers of the Liquidation Trustee shall include the following (without need of further Court approval):

(i)     To implement the Plan, including any other powers necessary or incidental thereto;

(ii)    To exercise all power and authority that may be exercised, to commence, pursue, abandon, and/or settle all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtor or the Committee prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, manager or trustee of the Debtor with like effect as if authorized, exercised, and taken by unanimous action of such

10408334

officers, directors, managers and trustees, including consummating the Plan and all transfers thereunder on behalf of the Debtor;

(iii)    To wind-up the affairs of the Debtor to the extent necessary as expeditiously as reasonably possible, including by filing final cost reports and taking such other actions as are necessary after the Effective Date to bring about an orderly wind-down of the Debtor's operations;

(iv)    To take all actions as may be necessary or appropriate to pursue and consummate: (a) the transactions and obligations contemplated by the MTA and the MSA, or the asset purchase agreements attached thereto, (b) enforce the rights of the Debtor, the Committee, and the Liquidation Trustee (as representative of the Debtor and its Estate) pursuant to any Conforming Escrow Agreement, or (c) a Liquidation Transaction;

(v)    To maintain and use the Debtor's existing accounts and/or to close any such accounts and transfer all amounts therein to one or more accounts in, accordance with the Plan, or to invest some or all of the funds that would otherwise be deposited into such accounts in allowed investments under applicable non-bankruptcy law;

(vi)    To make distributions to Holders of Allowed Claims, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Debtor or the Liquidation Trust;

(vii)    To use, manage, sell, lease, license, abandon, convert to Cash, and/or otherwise dispose of the Liquidation Trust Assets for the purpose of making distributions, including distributions of Distributable Assets and Net Distributable Assets, and fully consummating the Plan;

(viii)    To take all steps necessary to terminate the corporate existence of the Debtor and to wind-up and close the Liquidation Trust;

(ix)    To prosecute objections to Claims, including Administrative Expense Claims, and compromise, settle, and/or litigate any such Claims (Disputed or otherwise); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement;

(x)    To investigate and prosecute any and all Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and compromise, settle, waive, and/or litigate any Causes of Action (including, but not limited to, D&O Claims and Tort Claims); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Causes of Action asserted against other Entities that seeks recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement

(xi)    To prepare and file tax returns for the Debtor and the Liquidation Trust to the extent required by law;

(xii)    To employ and compensate any and all such professionals and agents as the Liquidation Trustee, in his or her sole discretion, deems reasonably necessary to perform his or her duties under the Plan, without further order of the Bankruptcy Court;

- 40 -

10408334

(xiii)   To satisfy and pay all Trust Expenses;

(xiv)   To obtain, renew, replace, or supplement insurance policies and to pay any associated obligations, including the payment of associated premiums, and to exercise any other power or authority necessary or incidental thereto;

(xv)   To participate in or File any post-Effective Date motion(s) to amend or modify the Plan or the Liquidation Trust Agreement, or any appeal(s) of the Confirmation Order;

(xvi)   To participate in or File any action to enforce or interpret the Plan;

(xvii)   To bind the Liquidation Trust; and

(xviii) To take all other actions not inconsistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable in connection with the administration or implementation of the Plan, including filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Case.

*Liquidation Trustee as Successor in Interest to the Debtor and Committee.* Upon the Effective Date, the Liquidation Trustee is the successor in interest to the Debtor and the Committee, and thus, as of and after the Effective Date, to the extent the Plan requires an action by the Debtor or the Committee, the action shall be taken by the Liquidation Trustee on behalf of the Debtor and the Committee, as applicable.

## 9.   Liquidation Trust Beneficiaries

Each of the Liquidation Trust Beneficiaries shall be recorded and set forth in a schedule maintained by the Liquidation Trustee expressly for such purpose based upon its Allowed Claim.

The ownership of Liquidation Trust Interests shall not entitle any Liquidation Trust Beneficiary to any title in or to the Liquidation Trust Assets, any right to call for a partition or division of such Liquidation Trust Assets, or any right to require an accounting, except as may be specifically provided herein. Ownership of a Liquidation Trust Interest (a) shall be noted in the books and records of the Liquidation Trust and (b) shall not be evidenced by any certificate, note, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee.

As set forth in more detail in the Liquidation Trust Agreement, the Liquidation Trust Interests may not be transferred, sold, assigned, hypothecated, or pledged, except as they may be assigned or transferred by will, intestate succession, or operation of law.

## 10.   Liquidation Trust Oversight Committee

The Liquidation Trust Oversight Committee shall be comprised of not less than three (3) members, who shall be designated by the Committee, *provided*, *however* that AAM shall have the right to serve as one of the members of the Liquidation Trust Oversight Committee. The identity of the members of the Liquidation Trust Oversight Committee shall be disclosed as part of the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.

10408334

The Liquidation Trust Oversight Committee shall oversee the Liquidation Trust and consult with the Liquidation Trustee, as set forth herein and in the Liquidation Trust Agreement.[12] The Liquidation Trustee shall report to the Liquidation Trust Oversight Committee from time to time regarding the performance of his or her duties. The members of the Liquidation Trust Oversight Committee shall be reimbursed for all reasonable expenses incurred in the performance of their duties under the Plan and the Liquidation Trust Agreement.

The duties and powers of the Liquidation Trust Oversight Committee shall terminate upon final resolution of the Liquidation Trust Assets and distribution of the proceeds thereof or as otherwise provided in the Liquidation Trust Agreement.

**11.      Source of Funding / Net Distributable Assets**

The source of all distributions and payments under the Plan will be the Distributable Assets and the proceeds thereof. Distributions to the Holders of Liquidation Trust Interests will be funded entirely from Liquidation Trust Assets consisting of Net Distributable Assets.

The Liquidation Trustee, in his or her discretion, shall have the authority to allocate and reallocate Liquidation Trust Assets (including Cash, and including with respect to any reserves provided for under the Plan) as necessary to effectuate the Plan without further notice to any party, or action, approval, or order of the Bankruptcy Court, to the extent such allocation or reallocation would not be inconsistent with the terms of the Plan; *provided*, *however*, that the Liquidation Trustee may, but is not required to, apply to the Bankruptcy Court on notice to the parties included on the Post-Effective Date Notice List prior to making any such allocation or reallocation.  In the event that the Liquidation Trustee determines that effectuation of the Plan or an equitable distribution to Holders of Allowed Claims requires allocation or reallocation of Liquidation Trust Assets in a manner that would otherwise be inconsistent with any term of the Plan (including for the purposes of distribution under the Plan), the Liquidation Trustee shall have the authority to make such allocation or reallocation with approval of the Bankruptcy Court upon application to the Bankruptcy Court on notice to parties included on the Post-Effective Date Notice List.

"*Distributable Assets*" means, except as otherwise noted herein, any and all real, personal, or other property of the Debtor of any nature as of the Effective Date and the Liquidation Trust from and after the Effective Date, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, but not limited to, (i) any Cash on Hand; (ii) any portion of the AAM Cash Contribution funded by AAM pursuant to the MTA; (iii) the Estate Personal Assets; (iv) any Excess Professional Fee Trust Amount; (v) the D&O Liability Insurance Policies; (vi) the Retained Causes of Action (including, but not limited to, Tort Claims and D&O Claims); and (vii) the proceeds of the foregoing. Notwithstanding the foregoing, the term "Distributable Assets" does not include any Cash tendered by the Debtor and held in the Professional Fee Trust Account except for the Excess Professional Fee Trust Amount, if any. For the avoidance of doubt, the term "Distributable Assets" includes any proceeds or other consideration realized from any Liquidation Transaction and/or the net proceeds from Estate Personal Assets and Real Property Asset.

---

[12] For the avoidance of doubt, the Liquidation Trust Oversight Committee's powers shall be limited to supervision and consultation, without any consent or direction rights.

10408334

"*Net Distributable Assets*" means the Distributable Assets of the Liquidation Trust from and after the Effective Date once all such assets have been reduced to Cash, net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims, Allowed SAMC Secured Obligations, and Trust Expenses, and/or reserves established for any of the foregoing.

**12.     Distribution of Liquidation Trust Interests**

Upon the Effective Date, Liquidation Trust Interests shall be distributed to Holders of Allowed General Unsecured Claims.

Certain Liquidation Trust Interests shall be reserved for Holders of Disputed General Unsecured Claims and held by the Liquidation Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Disputed General Unsecured Claims.

**13.     Distribution of Net Distributable Assets**

Plan Distributions, if any, to be made to Liquidation Trust Beneficiaries shall be made solely from the Liquidation Trust Assets.

If the distribution to be received by the Holder of an Allowed General Unsecured Claim would be less than fifty dollars ($50.00) on any distribution date or in the aggregate, at the discretion of the Liquidation Trustee, no such payment will be made to such Holder.

**14.     Disputed Claims Reserve**

The Liquidation Trustee shall maintain a Disputed Claims Reserve pending Allowance or Disallowance of Disputed Claims, and shall withhold such Cash from distributions to Holders of Allowed General Unsecured Claims.  In the event that Disputed Claims are pending at the time of a Plan Distribution under the Plan, the Liquidation Trustee shall set aside in the Dispute Claims Reserve sufficient Cash such that the aggregate Cash held in the Disputed Claims Reserve is equal to the amount of Cash that would have been distributed to the Holders of the Disputed Claims on such distribution date(s) had the Disputed Claims been Allowed at the time of such Plan Distribution(s) made to the Holders of Allowed Claims in the same Class or of the same priority as the Disputed Claims except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be Allowed or otherwise determines the amount which would constitute a sufficient reserve for a Disputed Claim (which estimations and determinations may be requested by the Liquidation Trustee), such amount as determined by the Bankruptcy Court shall be used to determine the amount of Cash reserved as to such Claim.  If a Disputed Claim ultimately becomes an Allowed Claim, the amount of Cash reserved for that Disputed Claim shall be distributed on the earlier of (a) the next distribution date following the date when the Disputed Claim becomes an Allowed Claim, or (b) sixty (60) days after such Disputed Claim becomes an Allowed Claim. Any reserved Cash not ultimately distributed to the Holder of a Disputed Claim because the Disputed Claim is Disallowed, in whole or in part, or Allowed in a reduced amount, shall become property of the Liquidation Trust and shall be distributed in accordance with the terms of the Plan. Upon the Final Distribution Date, the Liquidation Trustee shall distribute any Cash remaining in the Disputed Claims Reserve to Holders of Allowed General Unsecured Claims in accordance with the allocations set forth in the Plan and the Liquidation Trust Agreement.

- 43 -

10408334

### 15. Objections to Claims

From and after the Effective Date, the Liquidation Trustee shall have the exclusive authority, right, and standing (but shall not be obligated) to: (i) object to and contest the allowance of any and all Claims; (ii) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed, without further notice to any party, or action, approval, or order of the Bankruptcy Court; and (iii) litigate to final resolution objections to Claims; *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement. The failure of any party to object to any Claim in the Chapter 11 Case prior to the occurrence of the Effective Date shall be without prejudice to the right of the Liquidation Trustee to contest, object to, or otherwise defend against such Claim.

**No Plan Distribution shall be made to a Holder of a Claim Disputed or otherwise, unless and until such Claim is or becomes an Allowed Claim.**

All objections to Claims shall be Filed with the Bankruptcy Court, and served upon the Holders of such Claims, on or before the one hundred twentieth (120th) day after the Effective Date. The time period for filing objections to Claims shall automatically renew for successive periods of one hundred twenty (120) days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Bankruptcy Court upon motion of the Liquidation Trustee or a Holder of a Claim.

Until such time as an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Plan Distributions. The Holder of an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim will be entitled to a Plan Distribution only when and if such unliquidated or contingent Claim becomes an Allowed Claim.

### 16. Surcharge Under Section 506(c) of the Bankruptcy Code

All rights of Holders of Secured Claims under the Plan are subject to the rights of the Debtor, the Committee and/or the Liquidation Trustee to surcharge the applicable Collateral pursuant to section 506(c) of the Bankruptcy Code, which rights are expressly preserved.

### 17. Disallowance of Untimely Claims

Any Claim for which a Bar Date has been established that is not timely Filed or otherwise asserted as directed on or before the applicable Bar Date shall: (a) be forever Disallowed, barred, and expunged in its entirety; and (b) not be enforceable against the Debtor, the Estate, the Liquidation Trust, and/or the Liquidation Trustee, all without further notice to any party, or action, approval, or order of the Bankruptcy Court, irrespective of whether such Claim was Filed prior to, on, or following the Confirmation Date. Except as otherwise agreed by the Liquidation Trustee, any and all Holders of Claims for which a Bar Date has been established that is not timely Filed or otherwise asserted as directed on or before the applicable Bar Date shall not be treated as Creditors for purposes of voting and distribution pursuant to Bankruptcy Rule 3003(c)(2).

10408334

**18.   Claims Paid or Payable by Third Parties and Insured Claims**

a.   <u>Claims Paid by Third Parties</u>

A Claim shall be reduced in full, and such Claim shall be Disallowed without a Claim objection having to be Filed and without further notice to any party, or action, approval, or order of the Bankruptcy Court, to the extent that the Holder of such Claim received payment in full on account of such Claim from a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee.  To the extent a Holder of a Claim receives a Plan Distribution on account of such Claim and receives payment from a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee on account of such Claim, such Holder shall, within two weeks of such Holder's receipt thereof, repay the distribution to the Debtor or the Liquidation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim determined as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtor or the Liquidation Trustee, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each day after the two-week grace period specified above until the amount is repaid.

b.   <u>Claims Payable by Third Parties</u>

No Plan Distribution shall be made on account of an Allowed Claim that is payable by a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee, including pursuant to any insurance policy, until the Holder of such Allowed Claim has exhausted all remedies with respect to such third party or insurance policy.  To the extent that one or more of the Debtor's insurers or another third party agrees to satisfy in full or in part an Allowed Claim, then immediately upon such agreement, the applicable portion of such Claim may be Disallowed and expunged without a Claim objection having to be Filed and without further notice to any party, or action, approval or order of the Bankruptcy Court.  Unless and until the Holder of a Claim that is payable by a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee exhausts all remedies with respect to such third party of insurance policy, such Claim shall be deemed estimated at zero dollars ($0) for all purposes of the Plan and Liquidation Trust Agreement without further notice to any party, or action, approval or order of the Bankruptcy Court.

c.   <u>Special Issues Regarding Insured Claims</u>

Under the terms of the Debtor's various insurance policies, the Debtor may owe a deductible amount or self-insured retention obligation on account of Insured Claims. After the Effective Date of the Plan (unless an applicable order modifying the automatic stay has been entered at an earlier date), Holders of Insured Claims shall be enjoined by the injunctions established by the Confirmation Order and the Plan from commencing or continuing any action to assert or collect any alleged Claims relating to any deductible or self-insured retention obligation against the Debtor, its Estate, and the Liquidation Trust.

The Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtor's insurers under their policies, and the Debtor's insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtor, the existence, primacy, and/or scope of available coverage under any alleged applicable policy.  The Plan shall not operate as a waiver of any other Claims that the Debtor's insurers

10408334

have asserted or may assert in any Proof of Claim, or the rights and defenses of the Debtor, the Estate, or the Liquidation Trust to such Claims.

**19.      Preservation of Causes of Action**

Except as provided in Articles X and XI of the Plan, nothing contained in the Plan shall be deemed a waiver or relinquishment of any claims or Causes of Action of the Debtor or the Estate that are not settled with respect to Allowed Claims or specifically waived or relinquished by the Plan, which shall vest in the Liquidation Trust (collectively, along with the proceeds thereof, the "Retained Causes of Action"). The Retained Causes of Action preserved under the Plan include, without limitation, the following claims, rights, or other causes of action:

(i)      claims and Causes of Action (including, but not limited to, Tort Claims and D&O Claims), against the Excluded Parties and/or any other party not expressly released or enjoined pursuant to the Plan;

(ii)     Avoidance Actions;

(iii)    relating to pending litigation, including, without limitation, the suits, administrative proceedings, executions, garnishments, and attachments listed in the Debtor's Schedules;

(iv)     against vendors, suppliers of goods or services (including attorneys, accountants, consultants, or other professional service providers), utilities, contract counterparties, and other parties for, including but not limited to: (A) services rendered; (B) over- and under-payments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, setoff, or recoupment; (C) failure to fully perform or to condition performance on additional requirements under contracts with the Debtor; (D) wrongful or improper termination, suspension of services, or supply of goods, or failure to meet other contractual or regulatory obligation; (E) indemnification and/or warranty claims; or (F) turnover Causes of Action arising under §§ 542 or 543;

(v)      against health plans, payors, and other related providers;

(vi)     related to third-party non-Debtor's violations of antitrust, unfair competition, or similar laws;

(vii)    against landlords or lessors, including, without limitation, for erroneous charges, overpayments, returns of security deposits, indemnification, or for environmental claims;

(viii)   arising against current or former tenants or lessees, including, without limitation, for non-payment of rent, damages, and holdover proceedings;

(ix)     arising from damage to the Debtor's property;

(x)      relating to claims, rights, or other Causes of Action the Debtor may have to interplead third parties in actions commenced against the Debtor;

(xi)     for collection of a debt or other amount owed to the Debtor;

10408334

(xii)    against insurance carriers, reinsurance carriers, underwriters, surety bond issuers or other related or similar parties relating to coverage, indemnity, contribution, reimbursement, or other matters; and

(xiii)   arising under or relating to the MSA or the MTA, the asset purchase agreements attached thereto, or any Conforming Escrow Agreement, including, but not limited to, enforcement of such agreements and/or any breaches of such agreements.

**Except as otherwise expressly provided in the Plan, any and all claims and Causes of Action of the Debtor and the Estate are preserved under the Plan.**

### 20.    Release of Liens, Claims and Security Interests

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, security interests, mortgages, deeds of trust, or other interests in or against the property of the Estate will be fully released, terminated, extinguished, and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification, or other action by any Entity or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any Entity. Any Entity holding such Liens or interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Liquidation Trustee such instruments of termination, release, satisfaction, and/or assignment (in recordable form) as may be reasonably requested by the Liquidation Trustee. Nothing contained in the Plan shall revive, preserve, or transfer any Claims or Liens that have been released pursuant to any prior order of the Bankruptcy Court.

### 21.    Cancellation of Securities, Certificates and Instruments

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, on the Effective Date, all agreements, notes, instruments, debentures, certificates, Securities, and other documents evidencing any prepetition Claim against the Debtor and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, inoperative and of no force or effect.

### 22.    Dissolution of Debtor; Final Decree

At any time following the Effective Date, the Liquidation Trustee, on behalf of the Debtor, shall be authorized to File a motion for the entry of a final decree closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code. Upon entry of such final decree, the Debtor shall be deemed dissolved without further order of the Bankruptcy Court or action by the Liquidation Trustee, including the filing of any documents with the secretary of state or any other government agency.

### 23.    Treatment of Vacant Classes

Any Claim in a Class that is considered vacant under Article III.C of the Plan shall receive no Plan Distribution.

10408334

## E.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 1.  Assumption and Rejection of Executory Contracts and Unexpired Leases

On or before the Confirmation Date, Buyer may provide by written notice to the Debtor and the Committee a list of Designated Contracts to be assumed by the Debtor and assigned to the Buyer upon the Effective Date, subject to the Buyer's payment, prior to the Effective Date, to the counterparty to such Designated Contract of the Cure Costs.

Any Designated Contract with respect to which Buyer has not paid the respective Cure Costs directly to its counterparty shall be deemed rejected on the Effective Date.

Buyer's payment of Cure Costs shall not be credited towards, or otherwise reduce or alter in any way, Buyer's obligation to pay the Liquidation Trustee the AAM Cash Contribution.

The Debtor shall have no obligation to assume or assign any executory contract or unexpired lease that is not a Designated Contract.

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, *except* for those Executory Contracts and Unexpired Leases that:

1.  have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto;

2.  have been assumed by order of the Bankruptcy Court;

3.  are the subject of a motion to assume or motion to reject pending on the Effective Date;

4.  are identified as a Designated Contract in the Plan Supplement, and, with respect to such Designated Contract, Buyer has paid, prior to the Effective Date, to the counterparty to such Designated Contract the Cure Costs thereof; or

5.  are explicitly assumed pursuant to the terms of the Plan.

Notwithstanding the foregoing, in the event that (a) the MTA has been terminated and (b) the Committee or the Liquidation Trustee determines in good faith that one or more Executory Contracts or Unexpired Leases of the Debtor are critical to preserving the viability of pursuing and consummating an alternative reopening transaction post-Effective Date, the Committee or the Liquidation Trustee, as applicable, shall have the authority to designate such Executory Contracts or Unexpired Leases as "Reopening Optionality Agreements," in which case the Committee or the Liquidation Trustee, as applicable, shall have until sixty (60) days after the Effective Date to determine whether to assume or reject such Reopening Optionality Agreements.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including any "change of control"

- 48 -

10408334

provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtor's assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

For the avoidance of doubt, the Debtor shall not assume any prepetition indemnity obligations to their directors, officers, and managers.

**2. Claims On Account of the Rejection of Executory Contracts or Unexpired Leases**

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the Effective Date or such other date set by Final Order. The Debtor, the Committee or the Liquidation Trust will provide notice of such rejection (which may be made in the same notice as the occurrence of the Effective Date) and specify the appropriate deadline for the filing of such Proof of Claim.

Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped, and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtor, the Estate, the Liquidation Trustee, or the Liquidation Trust, and the Debtor, the Estate, the Liquidation Trustee, the Liquidation Trust and all of their property will be forever discharged from any and all indebtedness and liability with respect to such Claim, unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan, without further notice to any party, or action, approval, or order of the Bankruptcy Court. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in Article XI.C of the Plan. Notwithstanding the foregoing, to the extent that any such Claim is or was subject to a previously established Bar Date in the Chapter 11 Case, such previously established Bar Date shall be deemed operative and will not be deemed extended by virtue of Article VI.B of the Plan. All claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

**3. Preservation and Vesting of D&O Liability Insurance Policies**

Notwithstanding anything to the contrary in the Plan, as of the Effective Date, all rights of the Debtor and its Estate in the D&O Liability Insurance Policies are fully and expressly preserved under the Plan. Confirmation and effectiveness of the Plan will not discharge, impair, or otherwise modify any rights of the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or any other beneficiary under the D&O Liability Insurance Policies. On the Effective Date, the D&O Liability Insurance Policies and the proceeds thereof (subject in all cases to the terms of the D&O Liability Insurance Policies or the rights of any other beneficiaries therein) shall automatically vest in the Liquidation Trust and shall be a Liquidation Trust Asset. For the avoidance of doubt, the D&O Liability Insurance Policies are not Executory Contracts and are neither assumed nor rejected under the Plan.

The Confirmation Order shall constitute a determination that no default by the Debtor exists with respect to any of the D&O Liability Insurance Policies and that nothing in any prior order, any prior agreements, or the Plan shall be construed or applied to modify, impair, or otherwise affect the

10408334

enforceability of the D&O Liability Insurance Policies or any coverage thereunder with regard to any Causes of Action (including, but not limited to, the D&O Claims and Tort Claims), or claims, interests, or rights of the Debtor, the Estate, the Liquidation Trustee, or the Liquidation Trust. The Plan shall be liberally construed to protect the interests of all Creditors in all Causes of Action (including, but not limited to, D&O Claims and Tort Claims), and to limit any Claims against the Estate.

Nothing in the Plan shall diminish, impair, or otherwise affect (i) rights of the Debtor's current or former directors, officers, managers, trustees, or any other Person covered under the D&O Liability Insurance Policies, or (ii) payments from the proceeds or the enforceability of any D&O Liability Insurance Policies that may cover (a) claims by the Debtor, or (b) claims against the Debtor or covered Persons thereunder.

## F.    LIMITATION ON LIABILITY AND RELATED PROVISIONS

### 1.    General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification, and treatment of all Allowed Claims and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, unless specifically provided otherwise in the Plan or the Liquidation Trust Agreement, after the Effective Date the Liquidation Trustee may, in his or her sole and absolute discretion, (1) compromise and settle Claims against the Debtor, and (2) compromise and settle Causes of Action against other Entities; *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 and settlement of any Causes of Action asserted against other Entities that seek recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement.

### 2.    Release of SAMC

Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, for good and valuable consideration, on and after the Effective Date, SAMC is expressly, unconditionally, generally and individually and collectively released, acquitted and discharged by the Debtor and its Estate from any and all actions, claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims or claims for recharacterization, subordination, or avoidance of the SAMC Secured Obligations, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and SAMC, the restructuring of Claims and Interests before or in the Chapter 11

- 50 -

10408334

Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by SAMC on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

### 3. Limitation on Liability of Liquidating Trustee

The Liquidation Trustee, the Liquidation Trust Oversight Committee, and the individual members of the Liquidation Trust Oversight Committee will not be liable for any act they may do or omit to do as in such capacity under the Plan and the Liquidation Trust Agreement, as applicable, while acting in good faith and in the exercise of their reasonable business judgment; nor will any of them be liable in any event except for gross negligence, willful misconduct, or fraud as determined by a Final Order of a court of competent jurisdiction. Subject to the discretion of the Liquidation Trustee, and as memorialized in the Liquidation Trust Agreement, an applicable engagement letter, or other written agreement, the foregoing limitation on liability shall also apply to one or more (or all) Persons or Entities employed by any such party (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such party in the fulfillment of their respective duties hereunder or under the Liquidation Trust Agreement. Also, the Liquidation Trustee, the Liquidation Trust Oversight Committee (and its individual members), and (subject to the discretion of the Liquidation Trustee, and as memorialized in the Liquidation Trust Agreement, an applicable engagement letter, or other written agreement) any Person or Entity employed by such parties (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such a party shall be entitled to indemnification out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being employed by such party, or for performing any functions incidental to such service.

## G. EXCULPATION & INJUNCTION

### 1. No Discharge

Nothing contained in the Plan shall be deemed to constitute a discharge of the Debtor under section 1141(d)(3) of the Bankruptcy Code. However, no Holder of a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Plan other than Assets required to be distributed to that Holder pursuant to the Plan. As of the Confirmation Date, all Persons and Entities are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

### 2. Exculpation

Except as otherwise specifically provided in the Plan, the Exculpated Parties will neither have nor incur any liability to any Entity or Person for any claims or Causes of Action arising between the Petition Date and the Effective Date for any act taken or omitted to be taken in connection with, or related to the Chapter 11 Case, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, pursuing, or effecting the Consummation of the Plan, the Disclosure

Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, pursuing confirmation of the Plan, or soliciting votes on the Plan and the Exculpated Parties shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; *provided, further*, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action, or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

"*Exculpated Parties*" means, collectively, each in its capacity as such: (a) the Debtor Exculpated Parties, (b) the Committee Exculpated Parties, and (c) the SAMC Exculpated Parties; *provided, however*, that the Exculpated Parties shall not include any of the Excluded Parties.

**3.      Injunction**

**Except as otherwise provided in the Plan, from and after the Effective Date, all Entities and Persons who have held, hold, or may hold Claims against the Debtor or its Estate, are permanently enjoined from taking any action in furtherance of such Claim and/or any other cause of action released and/or discharged under the Plan, including, without limitation, the following actions: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets with respect to any such Claim and/or other cause of action, or taking any act to recover such Claim outside of the claims allowance procedures discussed in the Plan, the Bankruptcy Code and Bankruptcy Rules; (ii) creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien, security interest or encumbrance of any kind against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets on account of any such Claim and/or other cause of action; (iii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or other cause of action; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due from or to the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets, or against the property or interests in property of the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or other cause of action; *provided, however*, that any rights of recoupment asserted by the California Department of Health Care Services against the Debtor or the Estate, and any rights and defenses thereto of the Debtor, the Estate, the Liquidation Trust and the Liquidation Trustee with respect thereto are fully preserved; *provided, further*, that solely with respect to the Debtor, the Debtor's property, and the Debtor's Estate, the foregoing injunction shall remain in effect only until both (a) the Chapter 11 Case has been closed and (b) all assets of the Debtor's Estate and the Liquidation Trust Assets have been fully administered; *provided further, however*, that such injunction shall be revived and/or remain in effect, as applicable, to the extent that the Chapter 11 Case is reopened for any reason, until the Chapter 11 Case is closed and the other conditions for termination of the injunction set forth in this paragraph have been satisfied. By accepting Plan Distributions, each Holder of an Allowed Claim will be deemed to have specifically**

- 52 -

**consented to the injunctions in the Plan. Such injunctions shall extend for the benefit of the Liquidation Trustee, any successors of the Debtor, and to property and interests in property subject to the Plan. All injunctions or stays provided for in the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date. The injunction in this paragraph shall apply only to actions against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, and/or the Liquidation Trust Assets.**

**From and after the Effective Date, to the extent of the Exculpations and limitations of liability granted in the Plan, all Persons and Entities shall be permanently enjoined from commencing or continuing in any manner against the Exculpated Parties or parties whose liability is limited (collectively, the "__Protected Parties__"), and their respective assets and properties, as the case may be, any suit, action, or other proceeding on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest, or remedy with respect to which such Protected Parties are exculpated or with respect to which such Protected Parties' liability is otherwise limited.**

## H.    BINDING NATURE OF PLAN

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR AND EACH AND EVERY SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASE, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

## I.    CONFIRMATION PROCEDURES

### 1.    Confirmation Hearing

**The Confirmation Hearing has been scheduled to commence on April 16, 2024 at 9:30 a.m. (Pacific Time).** The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Plan Proponent without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

### 2.    Filing Objections to the Plan

**The deadline for objecting to Confirmation of the Plan is April 2, 2024 at 5:00 p.m. (Pacific Time)**. Subject to order of the Bankruptcy Court, any objection to confirmation of the Plan must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the objecting party and the amount and nature of the Claim of such Entity; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan; and (v) be filed with the Bankruptcy Court and served by no later than the deadline to object to confirmation, as set by the

10408334

Bankruptcy Court, service of which may be by way of the CM/ECF system, with courtesy copies by email.

> **CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.**

## J.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Plan Proponent believes that: (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Plan Proponent has complied or will comply with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. Specifically, the Plan Proponent believes that the Plan satisfies or will satisfy the applicable confirmation requirements of section 1129 of the Bankruptcy Code set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code;

- The Plan Proponent has complied and will comply with the applicable provisions of the Bankruptcy Code;

- The Plan has been proposed in good faith and not by any means forbidden by law;

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the case, has been or will be disclosed to the Bankruptcy Court, and any such payment: (a) made before the confirmation of the Plan is reasonable; or (b) is subject to the approval of the Bankruptcy Court as reasonable if it is to be fixed after confirmation of the Plan;

- The Plan Proponent will disclose the identity and affiliations of the person proposed to serve, after confirmation of the Plan, as the Liquidation Trustee or a member of the Liquidation Trust Oversight Committee. The appointment to such office by such person, will be consistent with the interests of creditors and with public policy;

- Either each Holder of an Impaired Claim against the Debtor will (A) have accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated on that date under chapter 7 of the Bankruptcy Code, or (B) if section 1111(b)(2) applies to such Claim, receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such Holder's interest in the estate's interest in the property that secures such claims;

- Each Class of Claims that is entitled to vote on the Plan will either have accepted the Plan or will not be Impaired under the Plan, or the Plan can be confirmed without the approval of such voting Class pursuant to section 1129(b) of the Bankruptcy Code;

10408334

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Expense Claims and Priority Claims will be paid in full in Cash on the Effective Date, or as soon thereafter as is reasonably practicable;

- At least one Class of Impaired Claims will accept the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class; and

- The Debtor has paid or will pay all fees payable under section 1930 of title 28, and the Plan provides for the payment of all such fees.

1.    **Best Interests of Creditors Test and Plan Recovery Analysis**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the bankruptcy court find, as a condition to confirmation of a chapter 11 plan, that each holder of a claim or equity interest in each impaired class: (i) has accepted the plan; or (ii) among other things, will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such Person would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.

The Plan satisfies the best interest of creditors test. The Plan provides a greater recovery to the Holders of Allowed General Unsecured Claims than such Holders would receive under a liquidation under Chapter 7, primarily because the Plan avoids additional administrative expenses and commissions associated with the appointment of a Chapter 7 trustee, while increasing the efficiency of administering the Debtor's remaining assets for the benefit of creditors.

Generally under the Plan, general unsecured creditors will receive Pro Rata shares of the Liquidating Trust Interests, which effectively provide a ratable share of the Net Distributable Assets of the Debtor. The Net Distributable Assets are net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, SAMC Secured Obligations and Trust Expenses, and/or reserves established for any of the foregoing. Under the Plan, Class 4 General Unsecured Creditors will likely receive a recovery of approximately 100%, which is based on various assumptions and more fully set forth in the Plan Recovery Analysis attached hereto as **Exhibit B**.

Such recoveries to Holders of General Unsecured Claims under the Plan are expected to be more than such creditors' recovery in a Chapter 7 liquidation. Among other things, if the Chapter 11 Case was converted to a Chapter 7 case, the Debtor's estate would incur the costs of payment of a statutorily allowed sliding-scale commission to the Chapter 7 trustee, as well as the additional costs of replacement counsel and other professionals retained by the trustee to get up to speed and assist with the liquidation.[13] Such amounts, together with other wind-down costs, would exceed the amount of Trust Expenses that will be incurred by the Liquidation Trustee and their professionals and agents in completing the liquidation of the remaining assets and otherwise winding up the affairs of the Debtor. Additionally, the Debtor's estate would likely suffer additional delays, as a Chapter 7 trustee and his/her counsel need time to develop a necessary learning curve in order to complete the

---

[13]  The Chapter 7 trustee would likely engage his or her own advisors and professionals that would add more professional fees and expenses that would have to be paid prior to any distributions to holders of Allowed General Unsecured Claims.

10408334

administration of the estate. The Debtor's estate would continue to be obligated to pay all unpaid expenses incurred by the Debtor during the Chapter 11 Case (such as compensation for professionals) which will constitute Allowed Claims in any Chapter 7 case. In short, the primary consequence of liquidating the Debtor under Chapter 7 of the Bankruptcy Code, given the substantial similarity of the functions of the Liquidation Trustee and a chapter 7 trustee, would be to incur additional administrative expenses and other costs and reduce the amounts payable to holders of General Unsecured Claims.

To assist the Bankruptcy Court in making the findings required under section 1129(a)(7) of the Bankruptcy Code, the Plan Proponent, with assistance from its professionals and information provided by the Debtor, prepared the Plan Recovery Analysis, a copy of which is attached hereto as **Exhibit B**. The Plan Recovery Analysis incorporates certain assumptions relating to the risks and costs associated with the projected recoveries under the Plan (assuming an Effective Date of May 1, 2024).

THE PLAN PROPONENT BELIEVES THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE PLAN RECOVERY ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE PLAN PROPONENT OR A CHAPTER 7 TRUSTEE. NEITHER THE PLAN RECOVERY ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE PLAN RECOVERY ANALYSIS.

## 2. Feasibility

Under section 1129(a)(11) of the Bankruptcy Code, the Plan Proponent must show that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Plan). The Plan complies with this requirement because all of the Debtor's remaining assets will be liquidated or otherwise disposed of and/or monetized, and the proceeds thereof will be distributed to creditors pursuant to the terms of the Plan and, provided the Plan is confirmed and consummated, the Estate will no longer exist to be subject to future reorganization or liquidation.

On the Effective Date, the Debtor is expected to have sufficient funds to satisfy Claims pursuant to the treatment set forth in the Plan as well as to implement the Plan. Specifically, the Debtor is projected to have approximately $24,507,236 in cash in the aggregate as of the Effective Date, inclusive of the $15 million Initial Contribution (assuming an effective date of May 1, 2024).

Accordingly, the Plan Proponent believes that the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code and will present additional supporting evidence prior to or at the Confirmation Hearing, if and to the extent necessary.

## 3. Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore,

- 56 -

solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default— (A) cures any such default that occurred before or after the commencement of the Chapter 11 Case, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (B) reinstates the maturity of such claim or interest as such maturity existed before such default; (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan and are not insiders. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. Section 1126(d) of the Bankruptcy Code, except as otherwise provided in section 1126(e) of the Bankruptcy Code, defines acceptance of a plan by a class of impaired equity interests as acceptance by holders of at least two-thirds in amount of equity interests in that class actually voting to accept or to reject the plan.

Classes 1 and 2 are not Impaired under the Plan, and, as a result, the Holders of such Claims are conclusively deemed and presumed to have accepted the Plan.

Claims in Classes 3 and 4 are Impaired under the Plan. Only the Holders of Claims in Classes 3 and 4 are entitled to vote on the Plan.

Pursuant to section 1129 of the Bankruptcy Code, the Holders of Claims in Classes 3 and 4 must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to such Class, and without considering whether the Plan "discriminates unfairly" with respect to such Class, as both standards are described herein. As stated above, Classes 3 and 4 will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims in each such Class (other than any Claims designated under section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan.

### 4.    Confirmation Without Acceptance by Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if less than all impaired classes entitled to vote on the plan have accepted it, *provided* that the plan has been accepted by at least one impaired class of claims. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired Class's rejection or deemed rejection of the Plan, the Plan will be confirmed, at the Plan Proponent's request, in a procedure commonly known as "cram down," so long

10408334

as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Class of Claims that is impaired under, and has not accepted, the Plan.

### 5.    No Unfair Discrimination

The unfair discrimination test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

Under the Plan, creditors who are of equal priority, including general unsecured creditors, are placed in the same applicable Class, and the members thereof are provided the same treatment. Thus, the unfair discrimination test is satisfied in this case.

### 6.    Fair and Equitable Test

This test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class. As to the dissenting class, the test sets different standards depending on the type of claims or equity interests in such class:

The condition that a plan be "fair and equitable" to a non-accepting Class of Secured Claims includes the requirements that: (a) the Holders of such Secured Claims retain the liens securing such Claims to the extent of the Allowed amount of the Claims, whether the property subject to the liens is retained by the Debtor or transferred to another entity under the Plan; and (b) each Holder of a Secured Claim in the Class receives deferred Cash payments totaling at least the Allowed amount of such Claim with a present value, as of the Effective Date of the Plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

The condition that a plan be "fair and equitable" with respect to a non-accepting Class of unsecured Claims includes the requirement that either: (a) the plan provides that each Holder of a Claim of such Class receive or retain on account of such Claim property of a value, as of the Effective Date of the plan, equal to the allowed amount of such Claim; or (b) the Holder of any Claim that is junior to the Claims of such Class will not receive or retain under the plan on account of such junior Claim any property.

To the extent that any class of Claims either reject the Plan or is deemed to have rejected the Plan, the Plan Proponent intends to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

Notwithstanding the rejection of any Class that votes to reject the Plan, the Plan Proponent does not believe that the Plan discriminates unfairly against any Impaired Class of Claims. The Plan Proponent believes that the Plan and the treatment of all Classes of Claims under the Plan satisfy the foregoing requirements for non-consensual confirmation of the Plan.

10408334

**K.    CONSUMMATION OF THE PLAN**

The Plan will be consummated on the Effective Date. For a more detailed discussion of the conditions precedent to the consummation of the Plan and the impact of failure to meet such conditions, see Article IX of the Plan.

<div align="center">

**ARTICLE V.**
**RISK FACTORS**

</div>

> PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THESE RISK FACTORS ARE MANY, THESE FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTOR'S ASSETS OR THE PLAN AND ITS IMPLEMENTATION.

**A.    CERTAIN BANKRUPTCY LAW CONSIDERATIONS**

**1.    Parties in Interest May Object to the Plan Proponent's Classification of Claims.**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Plan Proponent believes that the classification of Claims under the Plan complies with the requirements set forth in the Bankruptcy Code because the Plan Proponent created Classes of Claims, each encompassing Claims that are substantially similar to the other Claims in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

**2.    The Conditions Precedent to the Effective Date of the Plan May Not Occur.**

As more fully set forth in Article IX of the Plan, the Effective Date of the Plan is subject to numerous conditions precedent. If such conditions precedent are not waived or not met, the Effective Date will not take place.

**3.    The Plan Proponent May Fail to Satisfy the Vote Requirement.**

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Plan Proponent intends to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Plan Proponent may seek to accomplish an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

10408334

**4.      The Plan Proponent May Not Be Able to Secure Confirmation of the Plan.**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, findings by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting Holders of Claims within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that the Disclosure Statement, the balloting procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes, or the Plan contains other terms disapproved of by the Bankruptcy Court.

The Plan Proponent, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan as necessary for confirmation. Any such modifications could result in less favorable treatment of any non-accepting Class than the treatment currently provided in the Plan. Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan. Section 1127 of the Bankruptcy Code permits the Plan Proponent to modify the Plan at any time before confirmation, but not if such modified Plan fails to meet the requirements for confirmation. The Plan Proponent may modify the Plan at any time after confirmation of the Plan and before substantial consummation of the Plan if circumstances warrant such modification and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, but not if such modified Plan fails to meet the requirements for confirmation. The Plan Proponent will comply with the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code with respect to the modified Plan. Any Holder of a Claim that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

**5.      Non-Consensual Confirmation of the Plan May Be Necessary.**

In the event that any impaired class of claims does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class) and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Plan Proponent believes that the Plan satisfies these requirements and the Plan Proponent intends to request such non-consensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, in the event that one of

10408334

the Voting Classes does not accept the Plan, there can be no assurance that the Bankruptcy Court will reach this conclusion.

**6.      The Plan Proponent May Object to the Amount or Classification of a Claim.**

Except as otherwise provided in the Plan, the Plan Proponent reserves the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is or may become subject to an objection, counterclaim, or other suit by the Debtor, the Committee, or any successor thereto, including the Liquidation Trustee. Any Holder of a Claim that is or may become subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

**7.      The Effective Date May Not Occur.**

Although the Plan Proponent believes that the Effective Date may occur shortly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur.

**8.      The Chapter 11 Case May Be Converted to a Case under Chapter 7 of the Bankruptcy Code**

If a bankruptcy court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the bankruptcy court may, at the request of the Debtor, convert this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code pursuant to section 1112(c) of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Plan Proponent believes that liquidation under chapter 7 would result in materially smaller distributions being made to creditors than those provided for in the Plan because of (a) the additional administrative expenses involved in the appointment of a chapter 7 trustee, and (b) the additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation.

**9.      Injunction, Exculpation and Limitation of Liability Provisions May Not Be Approved**

Articles X-XI of the Plan provide for certain injunctions, exculpations and limitations of liability. The injunctions, exculpations and limitations of liability provided in the Plan are subject to objection by parties in interest and may not be approved.

**10.     The Hospital Reopening May Not Occur and the AAM Transactions May Be Terminated**

In the event that the MSA and/or MTA are terminated before the Effective Date, creditor recoveries may be adversely affected, as indicated in the Plan Recovery Analysis, attached as **Exhibit B**.

10408334

**B.      DISCLOSURE STATEMENT DISCLAIMER**

**1.      The Information Contained Herein is for Soliciting Votes Only.**

The information contained in this Disclosure Statement is for purposes of soliciting votes on the Plan and may not be relied upon for any other purposes.

**2.      No Legal or Tax Advice is Provided to You by This Disclosure Statement.**

**This Disclosure Statement is not legal or tax advice to You**. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice, and are not personal to any person or entity. Each Holder of a Claim should consult his or her own legal counsel and accountant with regard to any legal, tax, and other matters concerning his or her Claim. This Disclosure Statement may not be relied upon for any purpose other than as a disclosure of certain information to determine how to vote on the Plan or object to confirmation of the Plan.

**3.      No Admissions Are Made by This Disclosure Statement.**

The information and statements contained in this Disclosure Statement will not (a) constitute an admission of any fact or liability by any person or Entity (including, without limitation, the Debtor, the Committee, and the Liquidation Trustee), (b) have any adverse estoppel effect, or (c) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, Holders of Allowed Claims, or any other parties in interest.

**4.      No Reliance Should Be Placed on Any Failure to Identify Litigation Claims or Projected Objections.**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim is, or is not, identified in this Disclosure Statement. The Plan Proponent and/or Liquidation Trustee may seek to investigate, file, and prosecute litigation rights and claims against any third parties and may object to Claims after the Confirmation Date or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies such litigation claims or objections to Claims.

**5.      Nothing Herein Constitutes a Waiver of Any Right to Object to Claims or Recover Transfers and Assets.**

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any claims or rights of the Plan Proponent or the Liquidation Trustee (or any party in interest, as the case may be) to object to that Holder's Allowed Claim regardless of whether any Claims or Causes of Action of the Debtor or Estate are specifically or generally identified herein.

**6.      The Information Used Herein was Provided by the Debtor and was Relied Upon by the Plan Proponent's Advisors.**

Counsel to and other advisors retained by the Plan Proponent have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Plan Proponent have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently all information contained herein.

10408334

7. **The Potential Exists for Inaccuracies and the Plan Proponent Has No Duty to Update.**

The statements contained in this Disclosure Statement are made by the Plan Proponent as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a material change in the information set forth herein since that date. The Plan Proponent has used its reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan. Nevertheless, the financial information contained in, or incorporated by reference into, this Disclosure Statement is provided in reliance on financial data derived from the Debtor's books and records, the Debtor's schedules of assets and liabilities, and other representations made by the Debtor in the course of its various filings in this Chapter 11 Case. Because such information has not been audited (unless otherwise expressly provided herein), such information may be materially inaccurate, and should not be relied upon. Further, although the Plan Proponent may subsequently update the information in this Disclosure Statement, the Plan Proponent has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

8. **No Representations Made Outside the Disclosure Statement Are Authorized.**

No representations concerning or relating to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in or included with this Disclosure Statement should not be relied upon by you in arriving at your decision.

## ARTICLE VI.
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.     LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

If no chapter 11 plan can be confirmed, this Chapter 11 Case may, at the request of the Debtor pursuant to section 1112(c) of the Bankruptcy Code, be converted to a case under chapter 7 of the Bankruptcy Code in which case a trustee would be elected or appointed to liquidate the Debtor's assets. The Plan Proponent believes that liquidation under chapter 7 would result in (i) smaller distributions being made to creditors than those provided for in the Plan because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee, and (ii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation.

**B.     FILING OF AN ALTERNATIVE PLAN OF REORGANIZATION**

If the Plan is not confirmed, the Plan Proponent or any other party in interest could attempt to formulate a different plan. The Plan Proponent believes that the Plan will allow all parties in interest to realize the highest recoveries under the circumstances. Among other things, any alternative to confirmation of the Plan could result in extensive delays and increased administrative expenses, resulting in small distributions to creditors.

10408334

## ARTICLE VII.
## SUMMARY OF CERTAIN U.S. FEDERAL INCOME
## TAX CONSEQUENCES OF THE PLAN

THE FOLLOWING IS INTENDED TO BE ONLY A BRIEF SUMMARY OF SELECTED FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF TAX ADVICE FROM, A TAX PROFESSIONAL. THE SELECTED FEDERAL TAX CONSEQUENCES THAT ARE DESCRIBED HEREIN AND OTHER FEDERAL, STATE AND LOCAL TAX CONSEQUENCES THAT ARE NOT ADDRESSED HEREIN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH TAX CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF AN ALLOWED CLAIM. ACCORDINGLY, EACH HOLDER OF AN ALLOWED CLAIM IS STRONGLY ADVISED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN. THE BELOW SUMMARY OF TAX CONSEQUENCES IS NOT INTENDED TO BE AND IS NOT TAX ADVICE.

THE PLAN PROPONENT DOES NOT INTEND TO REQUEST A TAX RULING FROM THE INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WITH RESPECT TO ANY OF THE TAX CONSEQUENCES OF THE PLAN. CONSEQUENTLY, THE INTERNAL REVENUE SERVICE OR ANOTHER TAXING AUTHORITY MAY DISAGREE WITH AND MAY CONTEST ONE OR MORE OF THE TAX CONSEQUENCES DESCRIBED HEREIN TO THE DEBTOR AND HOLDERS OF CLAIMS.

TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE, (B) ANY SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN, AND (C) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## A.    FEDERAL INCOME TAX CONSEQUENCES TO CERTAIN CREDITORS AND THE LIQUIDATION TRUST

The following discussion summarizes certain material U.S. federal income tax consequences to the Holders of Claims and the Liquidation Trust. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "IRC"), applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"). There can be no assurance that the IRS will not take a contrary view, no ruling from the Service has been or will be sought nor will any counsel provide a legal opinion as to any of the expected tax consequences set forth below.

Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to Holders of Claims, the

10408334

Liquidation Trust, or the Debtor. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences described herein.

### 1. In General

The following summary is for general information only. The tax treatment of a Holder of a Claim may vary depending upon such Holder's particular situation. This summary does not address all of the tax consequences that may be relevant to a Holder, including any alternative minimum tax consequences and does not address the tax consequences to a Holder that has made an agreement to resolve its claim in a manner not explicitly provided for in the Plan. This summary also does not address the U.S. federal income tax consequences to persons not entitled to vote on the Plan or Holders subject to special treatment under the U.S. federal income tax laws, such as brokers or dealers in securities or currencies, certain securities traders, tax-exempt entities, financial institutions, insurance companies, foreign persons, partnerships and other pass-through entities, and Holders that have acquired Claims in connection with the performance of services. The following summary assumes that the Claims are held by Holders as "capital assets" within the meaning of section 1221 of the IRC and that all Claims denominated as indebtedness are properly treated as debt for U.S. federal income tax purposes.

The tax treatment of Holders and the character, amount and timing of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan may vary, depending upon, among other things: (i) whether the Claim (or portion thereof) constitutes a Claim for principal or interest; (ii) the type of consideration received by the Holder in exchange for the Claim and whether the Holder receives distributions under the Plan in more than one taxable year; (iii) whether the Holder is a citizen or resident of the United States for tax purposes, is otherwise subject to U.S. federal income tax on a net basis, or falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above; (iv) the manner in which the Holder acquired the Claim; (v) the length of time that the Claim has been held; (vi) whether the Claim was acquired at a discount; (vii) whether the Holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years; (viii) whether the Holder has previously included in income accrued but unpaid interest with respect to the Claim; (ix) the method of tax accounting of the Holder; (x) whether the Claim is an installment obligation for U.S. federal income tax purposes; and (xi) whether the "market discount" rules are applicable to the Holder. Therefore, each Holder should consult its tax advisor for information that may be relevant to its particular situation and circumstances, and the particular tax consequences to such Holder of the transactions contemplated by the Plan.

Holders of Allowed Claims as of the Effective Date that are beneficiaries of the Liquidation Trust should be treated as receiving from the Debtor their respective shares of the applicable assets of the Liquidation Trust in satisfaction of their Allowed Claims, and simultaneously transferring such assets to the Liquidation Trust. Accordingly, a Holder of a Claim should in most, but not all, circumstances recognize gain or loss equal to the difference between the "amount realized" by such Holder in exchange for its Claim and such holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a Holder's Claim. The tax basis of a holder in a Claim will generally be equal to the Holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (*e.g.*, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and

circumstances of its acquisition, the Holder's holding period of the Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the Holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year. Additionally, Holders should generally recognize their allocable share of income, gain, loss and deductions recognized by the Liquidation Trust on an annual basis.

A creditor who received Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim. A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the Holders of certain Claims, including General Unsecured Claims in Class 4, may receive only a partial distribution on account of their Allowed Claims. Whether the applicable holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the holder and its Claims. Creditors should consult their own tax advisors.

### 2.　　　Tax Treatment of the Liquidation Trust

The Liquidation Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. In general, a liquidating trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as a "grantor" trust (i.e., a disregarded entity). However, merely establishing a liquidating trust does not ensure that it will be treated as a grantor trust for U.S. federal income tax purposes. The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Liquidation Trust has been structured with the intention of complying with such general criteria. The Liquidation Trust Agreement will limit the investment powers of the Liquidation Trustee in accordance with Rev. Proc. 94-45 and will require the Liquidation Trust to distribute at least annually to the Liquidation Trust Beneficiaries (as such may have been determined at such time) its net income (net of any payment of or provision for Taxes), except for amounts retained as reasonably necessary to maintain the value of the Liquidation Trust Assets or to meet claims or contingent liabilities. In accordance with Rev. Proc. 94-45, the Liquidation Trust Agreement will require all relevant parties to treat, for federal income tax purposes, the transfer of the Debtor's Assets to the Liquidation Trust as (i) a transfer of such assets to the Liquidation Trust Beneficiaries (to the extent of the value of their respective interests in the applicable Liquidation Trust Assets) followed by (ii) a transfer of such assets by such Liquidation Trust Beneficiaries (to the extent of the value of their respective interests in the applicable Liquidation Trust Assets), with the beneficiaries of the Liquidation Trust being treated as the grantors and owners of the Liquidating Trust. Beneficiaries of

- 66 -

the Liquidation Trust will generally recognize gain (or loss) in its taxable year that includes the Effective Date.

All parties (including the Liquidation Trustee and Liquidation Trust Beneficiaries) are required to treat, for U.S. federal income tax purposes, the Liquidation Trust as a grantor trust of which the Liquidation Trust Beneficiaries are the owners and grantors. Consistent with the treatment of the Liquidation Trust as a grantor trust, each Holder must report on its U.S. federal income tax return its allocable share of the Liquidation Trust's income. Therefore, a Holder may incur a U.S. federal income tax liability with respect to its allocable share of the income of the Liquidation Trust whether or not the Liquidation Trust has made any distributions to such Holder. The character of items of income, gain, deduction, and credit to any Holder and the ability of such Holder to benefit from any deduction or losses will depend on the particular situation of such Holder.

In general, a distribution of underlying assets from the Liquidation Trust to a beneficiary thereof may not be taxable to such Holder because such Holders are already regarded for U.S. federal income tax purposes as owning such assets. Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of distributions from the Liquidation Trust.

The Liquidation Trust Beneficiaries will be treated as receiving an amount equal to the fair market value of their interests in the Liquidation Trust in exchange for their Claims. The Liquidation Trust Beneficiaries will be treated for U.S. federal income tax purposes as owning their shares of the Liquidation Trust Assets, including any Causes of Action, and will be required to include their allocable shares of each item of income, gain, deduction, loss and credit of the Liquidation Trust in determining their taxable income. The Liquidation Trust Agreement will require consistent valuation of the Liquidation Trust Assets by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all U.S. federal income tax and reporting purposes. The Liquidation Trustee will file with the IRS tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and send to each Liquidation Trust Beneficiary a statement setting forth the information necessary for such Liquidation Trust Beneficiary to determine its share of items of income, gain, loss, deduction, or credit of the Liquidation Trust for federal income tax purposes.

This discussion assumes that the Liquidation Trust will be so treated for federal income tax purposes. However, no ruling has been requested from the IRS and no opinion of counsel has been requested concerning the tax status of the Liquidation Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position. Were the IRS to successfully challenge such classification, the U.S. federal income tax consequences to the Liquidation Trust and the Liquidation Trust Beneficiaries could vary from those discussed herein.

**3.**       **Non-United States Persons**

A Holder of a Claim that is not a U.S. Person generally will not be subject to U.S. federal income tax with respect to property (including money) received in exchange for such Claim pursuant to the Plan, unless (i) such Holder is engaged in a trade or business in the United States to which income, gain or loss from the exchange is "effectively connected" for United States federal income tax purposes, or (ii) if such Holder is an individual, such holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.

10408334

**B.      INFORMATION REPORTING AND BACKUP WITHHOLDING**

Distributions pursuant to the Plan will be subject to any applicable federal income tax reporting and withholding. The IRC imposes "backup withholding" on certain "reportable" payments to certain taxpayers, including payments of interest. Under the IRC's backup withholding rules, a Holder of a Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan, unless the Holder (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional federal income tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of income tax. A Holder of a Claim may be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

**THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

<div align="center">

**ARTICLE VIII.**
**<u>RECOMMENDATION</u>**

</div>

In the opinion of the Plan Proponent, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a larger distribution to the Debtor's creditors than would otherwise result in an alternative chapter 11 plan or a liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims than that which is proposed under the Plan. Accordingly, the Plan Proponent recommends that all creditors who are entitled to vote on the Plan vote to accept the Plan.

10408334

Dated: February 27, 2024

By:     /s/ Paul S. Jasper

Paul S. Jasper (CA Bar No. 200138)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone:    415.344.7000
Facsimile:    415.344.7050
Email:        PJasper@perkinscoie.com

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:    973.643.7000
Facsimile:    973.643.6500
Email:        ASherman@sillscummis.com
              BMankovetskiy@sillscummis.com

*Co-Counsel to the Official Committee of Unsecured Creditors*


/s/ Bruce D. Adams
Bruce D. Adams
*Co-Chair of Committee*


/s/ Ali Rashidian
Dr. Ali Rashidian
*Co-Chair of Committee*

**[Signature Page to Disclosure Statement]**

10408334

## EXHIBIT A

## PLAN OF LIQUIDATION

Paul S. Jasper (CA Bar No. 200138)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105
Telephone:  415.344.7000
Facsimile:  415.344.7050
Email:      PJasper@perkinscoie.com

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:  973.643.7000
Facsimile:  973.643.6500
Email:     ASherman@sillscummis.com
           BMankovetskiy@sillscummis.com

Co-Counsel to the Official Committee of
Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>MADERA COMMUNITY HOSPITAL,<br><br>     Debtor in Possession.<br><br>Tax ID#   23-7429117<br>Address:   1250 E. Almond Avenue<br>           Madera, CA 93637 | Case No. 23-10457<br><br>Chapter: 11<br><br>DC No.:  PSJ-025<br><br>**SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>Judge: Hon. René Lastreto II |

10407306

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, AND DEFINED TERMS ........................................................................... 1

    A.      Rules of Interpretation and Computation of Time ................................... 1

    B.      Defined Terms ................................................................................. 2

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS .................................... 17

    A.      Administrative Expense Claims ........................................................ 17

    B.      Priority Tax Claims ....................................................................... 17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS .......... 18

    A.      Summary ..................................................................................... 18

    B.      Separate Classification of Certain Claims .......................................... 18

    C.      Elimination of Vacant Classes ........................................................ 18

    D.      Voting; Presumptions; Solicitation in Good Faith ............................... 19

    E.      Cramdown ................................................................................... 19

    F.      Classification and Treatment of Claims ............................................. 19

    G.      Special Provision Governing Unimpaired Claims ............................... 22

    H.      Special Provision Governing Cash Paid to SAMC ............................. 22

    I.      Subordinated Claims ..................................................................... 22

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ..................................... 22

    A.      Deemed and Presumed Acceptance of Plan ........................................ 22

    B.      Reserved ..................................................................................... 22

    C.      Voting Classes ............................................................................. 22

    D.      Controversy Concerning Impairment ................................................ 23

    E.      Acceptance by Impaired Classes of Claims ........................................ 23

    F.      Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ......... 23

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ................................... 23

    A.      Overview ..................................................................................... 23

10407306

| | | |
|---|---|---|
| B. | The MTA & MSA | 24 |
| C. | Pivot to a Liquidation Transaction | 30 |
| D. | General Settlement of Claims | 30 |
| E. | Continued Existence of the Debtor and Vesting of Assets in Liquidation Trust | 30 |
| F. | Corporate Action | 31 |
| G. | Liquidation Trust | 31 |
| H. | Liquidation Trustee | 33 |
| I. | Liquidation Trust Beneficiaries | 36 |
| J. | Liquidation Trust Oversight Committee | 36 |
| K. | Source of Funding / Net Distributable Assets | 37 |
| L. | Distribution of Liquidation Trust Interests | 37 |
| M. | Distribution of Net Distributable Assets | 37 |
| N. | Disputed Claims Reserve | 38 |
| O. | Objections to Claims | 38 |
| P. | Surcharge Under Section 506(c) of the Bankruptcy Code | 39 |
| Q. | Disallowance of Untimely Claims | 39 |
| R. | Claims Paid or Payable by Third Parties and Insured Claims | 39 |
| S. | Preservation of Causes of Action | 40 |
| T. | Release of Liens, Claims, and Security Interests | 41 |
| U. | Cancellation of Securities, Certificates and Instruments | 42 |
| V. | Dissolution of Debtor; Final Decree | 42 |
| W. | Treatment of Vacant Classes | 42 |
| ARTICLE VI. | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 42 |
| A. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 42 |

10407306

| | B. | Claims on Account of the Rejection of Executory Contracts or Unexpired Leases | 43 |
| | C. | Preservation and Vesting of D&O Liability Insurance Policies | 44 |
| ARTICLE VII. | | PROVISIONS GOVERNING DISTRIBUTIONS | 44 |
| | A. | Dates of Distributions | 44 |
| | B. | Distribution Agent | 45 |
| | C. | Cash Distributions | 45 |
| | D. | Rounding of Payments | 45 |
| | E. | Distributions on Account of Claims Allowed After the Effective Date | 45 |
| | F. | General Distribution Procedures | 46 |
| | G. | Address for Delivery of Distributions | 46 |
| | H. | Undeliverable Distributions, Unclaimed Property, and De Minimis Distribution | 46 |
| | I. | Distributions to be Applied First to Administrative and Priority Claims | 47 |
| | J. | Distribution Record Date | 47 |
| | K. | Distribution Cap | 47 |
| | L. | Withholding Taxes | 47 |
| | M. | Setoffs and Recoupment | 48 |
| | N. | Distributions Free and Clear | 48 |
| | O. | Lost, Stolen, Mutilated, or Destroyed Securities | 49 |
| ARTICLE VIII. | | PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS | 49 |
| | A. | Disputed Claims | 49 |
| | B. | Procedures Regarding Disputed Claims | 49 |
| | C. | Allowance of Claims | 50 |
| ARTICLE IX. | | CONDITIONS PRECEDENT TO THE EFFECTIVE DATE | 51 |
| | A. | Conditions Precedent to the Effective Date | 51 |

10407306

| | | | |
|---|---|---|---|
| | B. | Waiver of Conditions | 52 |
| | C. | Substantial Consummation | 52 |
| | D. | Effect of Non-Occurrence of Conditions to Consummation | 52 |
| ARTICLE X. LIMITATION ON LIABILITY AND RELATED PROVISIONS | | | 52 |
| | A. | General | 52 |
| | B. | Release of SAMC | 53 |
| | C. | Limitation on Liability of Liquidation Trustee | 53 |
| | D. | Reserved | 54 |
| ARTICLE XI. EXCULPATION AND INJUNCTION | | | 54 |
| | A. | No Discharge | 54 |
| | B. | Exculpation | 54 |
| | C. | Injunction | 54 |
| ARTICLE XII. BINDING NATURE OF PLAN | | | 55 |
| ARTICLE XIII. RETENTION OF JURISDICTION | | | 56 |
| ARTICLE XIV. MISCELLANEOUS PROVISIONS | | | 58 |
| | A. | Dissolution of the Committee | 58 |
| | B. | Payment of Statutory Fees | 58 |
| | C. | Modification of Plan | 59 |
| | D. | Adjustment of Claims Register | 59 |
| | E. | Extension of Time | 59 |
| | F. | Post-Effective Date Notice List | 59 |
| | G. | Revocation of Plan | 60 |
| | H. | Entire Agreement | 60 |
| | I. | Closing of Chapter 11 Case | 60 |
| | J. | Successors and Assigns | 60 |
| | K. | Reservation of Rights | 60 |

10407306

L.    Further Assurances ........................................................................... 61

M.    Nonseverability ............................................................................... 61

N.    Service of Documents ...................................................................... 61

O.    Filing of Additional Documents ..................................................... 62

P.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the
Bankruptcy Code .............................................................................. 62

Q.    Incorporation of Other Documents ................................................. 62

R.    Governing Law ................................................................................ 62

S.    Tax Reporting and Compliance ...................................................... 63

T.    Controlling Document ..................................................................... 63

U.    Confirmation Request ..................................................................... 63

**EXHIBITS**

Exhibit A      Excluded Parties
Exhibit B      Liquidation Trust Agreement

10407306

**SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

The Official Committee of Unsecured Creditors (the "Committee" or the "Plan Proponent") proposes the following Second Amended Chapter 11 Plan of Liquidation (the "Plan") for Madera Community Hospital (the "Debtor") for, among other things, the resolution of the outstanding Claims against the Debtor.

Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in **Article I** of the Plan. The Plan Proponent is a proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (as such term is defined herein) for a discussion of the Debtor's history, business, results of operations, historical financial information, accomplishments leading up to Solicitation of the Plan, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents that will be Filed with the Bankruptcy Court that are referenced in this Plan, the Plan Supplement, or the Disclosure Statement as Exhibits. All such Exhibits are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and the terms of this Plan, the Plan Proponent reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its Consummation.

The Plan Proponent intends to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims that is Impaired as set forth in **Article III** hereof.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME, AND DEFINED TERMS

**A.     Rules of Interpretation and Computation of Time**

For purposes hereof: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented through and including the Confirmation Date, which, after they are filed, may be amended, modified, or supplemented only with the express written consent of the Plan Proponent; (d) unless otherwise specified, all references herein to "Articles," "Sections," and "Exhibits" are references to Articles, Sections, and Exhibits hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the

10407306

Bankruptcy Code or the Bankruptcy Rules, as the case may be; (j) "$" or "dollars" means Dollars in lawful currency of the United States of America; and (k) any immaterial effectuating provisions may be interpreted by the Plan Proponent in a manner that is consistent with the overall purpose and intent of the Plan without further order of the Bankruptcy Court.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**B.    Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*AAM*" means American Advanced Management, Inc., a Delaware for profit corporation.

2.    "*AAM Cash Contribution*" means the Cash to be contributed by AAM, in accordance with the terms of the MTA, in an amount of up to $30 million, which funds shall be used to fund the Liquidation Trust for the benefit of Holders of General Unsecured Claims, in exchange for the sale to Buyer of: (i) the Real Property Asset (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit B to the MTA), and (ii) at the election of AAM, the transition of the Hospital Assets to Buyer (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit C to the MTA).

3.    "*AAM Contribution Lien*" means the Lien granted in favor of the Liquidation Trustee against all of the Hospital's assets that secures AAM's obligation to pay the AAM Cash Contribution. For the avoidance of doubt, the AAM Contribution Lien is and shall be subordinated to any Lien granted to HCAI in connection with any loan of DHLP Funds.

4.    "*AAM Refund*" means the balance, if any, of (a) the total of the Initial Contribution plus Supplemental Contributions made by AAM to the Liquidating Trust, minus (b) the amount required by the Liquidating Trustee to pay all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Other Secured Claims, Allowed SAMC Secured Obligations, and Allowed General Unsecured Claims in full, without interest, and the Allowed AAM Subordinated Claim, without interest, and fund the Wind Up Reserve.

5.    "*AAM GUC*" has the meaning ascribed to such term in Article V.B. of this Plan.

6.    "*Accrued Professional Compensation*" means, with respect to a particular Professional, an Administrative Expense Claim of such Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred from the Petition Date through and including the Effective Date.

7.    "*Administrative Expense Claim*" means any Claim against the Debtor or the Estate that has been timely Filed of a kind specified in section 503(b) and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual and necessary costs and expenses of administration of this Chapter 11 Case incurred after the Petition Date and through and including the Effective Date, including Professional Fee Claims, Section 503(b)(9)

- 2 -

Claims, and Allowed Claims that are entitled to be treated as Administrative Expense Claims pursuant to a Final Order of the Bankruptcy Court, but excluding any Statutory Fees.

8.    "*Administrative Expense Claim Bar Date*" means any deadline set by an order of the Bankruptcy Court by which Holders of Administrative Expense Claims, other than Professional Fee Claims, must assert Administrative Expense Claims or be forever barred.

9.    "*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

10.    "*Allowed*" means, as to any Claim (or portion thereof), the amount (a) that is allowed by a Final Order of the Bankruptcy Court (or such other court as provided by the Plan or as the Liquidation Trustee and the Holder of such Claim agree may adjudicate such Claim and objections thereto); (b) that is expressly allowed by this Plan and/or the Confirmation Order in a liquidated amount; (c) which is not the subject of a Proof of Claim timely Filed with the Bankruptcy Court and is Scheduled as liquidated and noncontingent (other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed), but only to the extent such Claim (i) is Scheduled as liquidated and noncontingent and (ii) is not the subject of a pending objection pursuant to section 502(d) of the Bankruptcy Code; or (d) for which a Proof of Claim in a liquidated amount has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code or deemed timely Filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which (i) no objection to its allowance has been Filed within the periods of limitation fixed by the Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court, or (iii) following the Effective Date, as otherwise may be determined by the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement (including by stipulation, without further notice to any party, or action, approval, or order of the Bankruptcy Court).  Notwithstanding anything to the contrary herein, no Claim that is Disallowed in accordance with section 502(d) of the Bankruptcy Code is Allowed, and each such Claim shall be expunged without further action by the Debtor and/or the Liquidation Trustee, and without further notice to any party, or action, approval, or order of the Bankruptcy Court.

11.    "*Almond Farm*" means approximately 35 acres of farmland located on Avenue 12 in Madera, Madera County, California, assessor parcel number 047-014-008-000, and any proceeds of sale thereof.

12.    "*Assets*" means all of the right, title, and interest of the Debtor in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, intangible, legal or equitable, and liquidated or unliquidated).

13.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including actions or remedies arising under sections 502, 510, or 542-553 of the Bankruptcy Code, and the proceeds thereof, excluding those Avoidance Actions that have been released or sold pursuant to a Final Order of the Bankruptcy Court in this Chapter 11 Case.

14.    "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of this Plan.

10407306

15. "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

16. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of California, Fresno Division.

17. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

18. "*Bar Date*" means the applicable deadlines by which a Proof of Claim must be, or must have been, Filed in this Chapter 11 Case, as established by either an order of the Bankruptcy Court, the Notice of Chapter 11 Bankruptcy Case [Docket No. 49], or this Plan, including without limitation, (a) the July 17, 2023 deadline to File Proofs of Claim relating to prepetition Claims; (b) the September 6, 2023 deadline for Governmental Units to File Proofs of Claim relating to prepetition Claims; (c) the September 30, 2023 deadline to File Proofs of Claim for so-called "later discovered claims," which claims are identified in Docket No. 558; (d) any Administrative Expense Claim Bar Date; and (e) any deadline established to file a Claim arising from the rejection of any Executory Contract or Unexpired Lease.

19. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

20. "*Buyer*" means GSR Madera, L.P., a California limited partnership.

21. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

22. "*Cash on Hand*" means the Debtor's and Estate's Cash on hand as of the Effective Date, excluding any amounts in the Professional Fee Trust Account required for the payment of Professional Fee Claims that are contemplated to be paid from the Professional Fee Trust Account.

23. "*Causes of Action*" means any action, claim, cause of action, cross-claim, third-party claim, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever belonging to the Debtor or its Estate, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertible directly or derivatively (including under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law, and the proceeds thereof. For the avoidance of doubt, Cause of Action includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any claim pursuant to section 362 and any and all Avoidance Actions; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state, federal or foreign law; (f) all Tort Claims and D&O Claims; (g) any and all claims under any D&O Liability Insurance Policies; and (h) all Retained Causes of Action, including those enumerated in **Article V.S** of this Plan. The definition of "Causes of Action" shall be construed in accordance with its broadest possible meaning, and any doubts or ambiguities shall be resolved in favor of inclusiveness. **Except as otherwise expressly provided in**

**this Plan or the Confirmation Order, any and all Causes of Action of the Debtor or the Estate (including, but not limited to, Tort Claims and D&O Claims), are expressly preserved under the Plan and retained by the Liquidation Trust.**

24.    "*CDPH*" means the California Department of Public Health.

25.    "*Chapter 11 Case*" means the Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court.

26.    "*CHOW Application*" means an application for change of ownership or transfer of membership interests submitted to CDPH to effect a change in licensed operator of the Hospital from the Debtor to AAM.

27.    "*CHOW Election*" means AAM's option, at its sole discretion, to submit a CHOW Application to CDPH to effect a change in licensed operator of the Hospital from the Debtor to AAM, which option must be exercised, if at all, within 36 months after the MTA Execution Date.

28.    "*Claim*" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

29.    "*Claims Register*" means the official register of Claims maintained by the Bankruptcy Court.

30.    "*Class*" means a category of Holders of Claims as set forth in **Article III** hereof pursuant to section 1122(a) of the Bankruptcy Code.

31.    "*Closing Date*" means the date on which the Hospital Assets (other than the Estate Personal Assets) are transferred from the Debtor to Buyer. For the avoidance of doubt, no Liquidation Trust Assets shall be, or shall be deemed, transferred from the Debtor to AAM or the Buyer.

32.    "*Collateral*" means any property or interest in property of the Debtor's Estate that is subject to a valid and enforceable Lien to secure a Claim.

33.    "*Committee*" means the Official Committee of Unsecured Creditors in the Chapter 11 Case appointed pursuant to section 1102 of the Bankruptcy Code.

34.    "*Committee Exculpated Parties*" means, collectively, (i) the Committee; (ii) the Committee's Professionals; and (iii) the Committee's current and former members, solely acting in their capacities as members of the Committee.

35.    "*Confirmation Date*" means the date on which the clerk or other agent of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

36.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to sections 1128 and 1129 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

37.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

- 5 -

10407306

38.    "*Conforming Escrow Account*" means an escrow account subject to a Conforming Escrow Agreement.

39.    "*Conforming Escrow Agreement*" means an escrow agreement between AAM, the Debtor, the Committee and an escrow agent that provides as follows: (1) all funds held in the Conforming Escrow Account shall be held in trust for the benefit of Holders of Allowed General Unsecured Claims; and (2) funds contained in the Escrow Account shall not be released from the Escrow Account to AAM, the Debtor, the Liquidation Trustee, or otherwise, except as follows: (A) on or before the Expense Payment Deadline of each calendar month, funds held in the Escrow Account shall be released to the Debtor in an amount sufficient to pay all Undisputed OAD Expenses, that were due and unpaid as of the first day of the prior calendar month (and as to which AAM has not provided to the Committee (of, if appointed pursuant to the Plan, the Liquidation Trustee) proof of payment prior to the Expense Payment Deadline) and shall be immediately applied by the Debtor solely to pay such Undisputed OAD Expenses; (B) on or before the Expense Payment Deadline of each calendar month, a portion of the One Million Deposit shall be released to the Debtor in an amount sufficient to pay all interest and related expenses associated with any Allowed SAMC Secured Obligations that accrued during the prior calendar month, and shall be immediately applied by the Debtor solely to pay such interest and related expenses; (C) upon the Effective Date, all funds remaining in the Escrow Account (which shall be no less than $15 million) shall be released to the Liquidation Trustee to fund the initial portion of the AAM Cash Contribution; and (D) upon (i) order of the Bankruptcy Court confirming that the MTA has been validly terminated, or (ii) written confirmation by AAM, on the one hand, and either the Committee or the Liquidation Trustee, on the other hand, that the MTA has been validly terminated, any funds remaining in the Escrow Account shall be applied in the following order: *first*, to (i) pay any Termination Date Expenses or (ii) deposit with the Liquidation Trustee an amount sufficient to pay all Termination Date Expenses, and *second*, to refund to AAM any funds remaining in the Escrow Account after all OAD Expenses have been paid in full.

40.    "*Consummation*" or "*Consummated*" means the occurrence of the Effective Date.

41.    "*Creditor*" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

42.    "*Cure Costs*" means any amounts required to cure any default(s) under an Executory Contract or Unexpired Lease as required under the Bankruptcy Code or determined by the Bankruptcy Court pursuant to a Final Order.

43.    "*Debtor*" means Madera Community Hospital, in its capacity as debtor and debtor in possession in the Chapter 11 Case and, from and after the Effective Date, as liquidating debtor pursuant to the Plan.

44.    "*Debtor Exculpated Parties*" means, collectively, the Debtor's Professionals retained in the Chapter 11 Case. For the avoidance of doubt, no Excluded Parties are included within the scope of the Debtor Exculpated Parties.

45.    "*Designated Contract*" means any Executory Contract or Unexpired Lease designated by the Buyer to be assumed by the Debtor and assigned to the Buyer as of the Effective Date. All Designated Contracts shall be identified in the Plan Supplement.

10407306

46.    "*DHLP Funds*" means any amounts loaned to the Hospital by the California Health Facility Financing Authority in connection with the $2 million bridge loan award and eligibility for another $50 million loan announced by HCIA on August 24, 2023, or pursuant to any other funds loans, granted, or otherwise awarded by HCAI to the Hospital (or its then owner) pursuant to AB112. For the avoidance of doubt, any DHLP Funds shall be applied solely to fund operation of the Hospital so long as it continues to operate.

47.    "*DHLP Funds Receipt Date*" means the first date on which the Hospital receives any DHLP Funds.

48.    "*Disallowed*" means, as to any Claim (or portion thereof), a Claim against the Debtor that (i) has been disallowed by a Final Order, (ii) is not listed on the Schedules or, as to any Claim, is listed as unliquidated, contingent, or disputed and as to which no Proof of Claim has been Filed by the applicable Bar Date for such Claim or deemed timely Filed pursuant to any Final Order, or (iii) has been agreed to by the Holder of such Claim and the Debtor or the Liquidation Trustee to have no value or to be expunged.

49.    "*Disclosure Statement*" means that certain *Third Amended Disclosure Statement for the Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors*, as amended, supplemented, or modified from time to time, including all Exhibits and schedules thereto and, in form and substance acceptable to the Plan Proponent [Docket No. ●], approved by the Bankruptcy Court on [●].

50.    "*Disputed*" means, with respect to a Claim, (a) any Claim, which Claim is disputed under **Article VIII** of this Plan or as to which the Debtor before the Effective Date, or the Liquidation Trustee from and after the Effective Date, or any other party in interest has interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be Filed by any Bar Date or order of the Bankruptcy Court but as to which a Proof of Claim was not timely or properly Filed or deemed timely and/or properly Filed by Final Order; (c) any Claim that is listed in the Schedules as unliquidated, contingent or disputed, and as to which no request for payment or Proof of Claim has been timely Filed; or (d) any Claim that is otherwise disputed by the Debtor or the Committee before the Effective Date or the Liquidation Trustee from and after the Effective Date in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order, *provided, however*, that if the Debtor, the Committee or the Liquidation Trustee seek to dispute a Claim that is the subject of a Filed Proof of Claim, the Debtor, the Committee or the Liquidation Trustee shall do so in accordance with the Bankruptcy Code, Bankruptcy Rules, and the Local Rules. To the extent the Debtor, the Committee or the Liquidation Trustee dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtor and the Committee before the Effective Date or the Liquidation Trustee from and after the Effective Date do not dispute, if any, and Disputed as to the balance of such Claim.

51.    "*Disputed Claims Reserve*" means a reserve, which may be held in a segregated account, for the payment of Disputed General Unsecured Claims that become Allowed General Unsecured Claims after the Effective Date, which reserve shall be held in trust and maintained by the Liquidation Trustee for the benefit of Holders of Disputed General Unsecured Claims.

52.    "*Disputed OAD Expenses*" means all OAD Expenses that remain due and unpaid as of the first day of a calendar month due to a bona fide dispute.

- 7 -

10407306

53.     "*Distributable Assets*" means, except as otherwise noted herein, any and all real, personal, or other property of the Debtor of any nature as of the Effective Date and the Liquidation Trust from and after the Effective Date, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, but not limited to, (i) any Cash on Hand; (ii) any portion of the AAM Cash Contribution funded by AAM pursuant to the MTA; (iii) the Estate Personal Assets; (iv) any Excess Professional Fee Trust Amount; (v) the D&O Liability Insurance Policies; (vi) the Retained Causes of Action (including, but not limited to, Tort Claims and D&O Claims); and (vii) the proceeds of the foregoing.  Notwithstanding the foregoing, the term "Distributable Assets" does not include any Cash tendered by the Debtor and held in the Professional Fee Trust Account except for the Excess Professional Fee Trust Amount, if any.  For the avoidance of doubt, the term "Distributable Assets" includes any proceeds or other consideration realized from any Liquidation Transaction and/or the net proceeds from Estate Personal Assets and the Real Property Asset.

54.     "*Distribution Agent*" means any party designated by the Liquidation Trustee to serve as distribution agent under this Plan. The Liquidation Trustee may be the Distribution Agent.

55.     "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive Plan Distributions, as such date shall be fixed by order of the Bankruptcy Court.

56.     "*D&O Claims*" means any and all rights, Causes of Action and claims arising under state, federal or other applicable law against the Debtor's current or former directors, trustees, managers, officers and similar parties, including, without limitation: (i) claims for breach of fiduciary duty, (ii) claims relating to damages, losses, or amounts owed or potentially owed for any alleged or actual violation of the federal WARN Act, 29 U.S.C. § 2101, *et seq.*, the California WARN Act, Cal. Lab. Code §§ 1401, *et seq.*, California Labor Code, Cal. Lab. Code § 227.3, the Labor Code Private Attorneys General Act, Cal. Lab. Code §§ 2698-2699 *et seq.*, or any similar laws, and/or (iii) claims related to damages, losses, or amounts owed or potentially owed arising from or relating to the termination, lapse or other loss of the benefit of any of the Debtor's Medicare, Medicaid or Medi-Cal provider agreements(s), Rural Health Clinic License(s), or other similar agreements, and the proceeds of any such rights, Causes of Action and claims, including from any D&O Liability Insurance Policies.

57.     "*D&O Liability Insurance Policies*" means all insurance policies for directors', officers', managers', trustees' and/or similar parties' liability maintained by the Debtor as of the Petition Date and/or the Effective Date, including tail coverage after the termination of any such policies, and the proceeds thereof.

58.     "*Effective Date*" means, with respect to the Plan, the date that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in **Article IX.A** have been satisfied or waived (in accordance with **Article IX.B**); and (c) the Plan is declared effective.  Within two (2) Business Days of the Effective Date, the Plan Proponent will file a notice of occurrence of the Effective Date on the Bankruptcy Court docket.

59.     "*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

- 8 -

60. "*Escrow Account*" means the escrow account into which AAM shall immediately deposit the Initial Contribution upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order.

61. "*Estate*" means the bankruptcy estate of the Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

62. "*Estate Personal Assets*" means all Quality Assurance Fees (QAF), Federal Emergency Management Agency (FEMA) funds, Cash on Hand as of the Operation Assumption Date, accounts receivable, Causes of Action, the Almond Farm, and all other Assets identified in the Debtor's Schedules or accruing prior to the Operation Assumption Date. For the avoidance of doubt, all Estate Personal Assets shall remain the property of the Debtor's Estate, available to pay the Claims of all of the Debtor's Creditors and shall not be: (i) subject to the MSA; (ii) transferred or otherwise hypothecated, encumbered (except as such encumbrance existed on the Petition Date) or otherwise affected by the MSA, the MTA, or the transactions contemplated therein; or (iii) impaired, impacted or otherwise affected by AAM or any affiliate thereof.

63. "*Excess Professional Fee Trust Amount*" means any amounts remaining in the Professional Fee Trust Account after the payment of all Allowed Professional Fee Claims.

64. "*Exchange Act*" means the Securities and Exchange Act of 1934, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

65. "*Excluded Parties*" means, collectively, each party listed on <u>Exhibit A</u> hereto.

66. "*Exculpated Parties*" means, collectively, each in its capacity as such: (a) the Debtor Exculpated Parties, (b) the Committee Exculpated Parties, and (c) the SAMC Exculpated Parties; *provided, however*, that the Exculpated Parties shall not include any of the Excluded Parties.

67. "*Exculpation*" means the exculpation provision set forth in **Article XI.B** hereof.

68. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption, assignment, or rejection under section 365 of the Bankruptcy Code.

69. "*Expense Payment Deadline*" means, as to each calendar month, the tenth Business Day of such calendar month.

70. "*Exhibit*" means an exhibit annexed hereto, to the Plan Supplement, or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

71. "*Federal Judgment Rate*" means the interest rate on federal judgments, in effect for the calendar week of the Petition Date, and is based on the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System.

72. "*File*" or "*Filed*" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

10407306

73.    "*Final Distribution Date*" means the date when, (a) in the reasonable judgment of the Liquidation Trustee substantially all of the assets of the Liquidation Trust have been monetized and there are no substantial potential sources of additional Cash for distribution, (b) there remain no Disputed Claims, and (c) the Liquidation Trustee distributes all remaining Cash held by the Liquidation Trust to the Holders of Liquidation Trust Interests in accordance with this Plan and the Liquidation Trust Agreement.

74.    "*Final Order*" means an order or judgment: (i) as to which the time to appeal, petition for certiorari or move for review or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for review or rehearing is pending, or such an appeal has been rendered statutorily moot pursuant to Section 363(m) of the Bankruptcy Code, or (ii) if an appeal, writ of certiorari, reargument or rehearing has been filed or sought, and a stay pending appeal has been entered, the order or judgment has been affirmed by the highest court to which such order or judgment was appealed or certiorari has been denied, or reargument or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired; *provided that* the theoretical possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not prevent such order or judgment from being considered a Final Order.

75.    "*General Unsecured Claim*" means any Claim against the Debtor that is not a/an: (a) Administrative Expense Claim (including a Professional Fee Claim); (b) Priority Tax Claim; (c) Other Priority Claim; (d) Other Secured Claim; or (e) SAMC Secured Obligation.  For the avoidance of doubt, the AAM GUC shall constitute a General Unsecured Claim, but shall be subordinated in all respects to all other Allowed General Unsecured Claims and shall only be payable upon the payment in full (without interest) of all Allowed General Unsecured Claims (other than the AAM GUC), except as otherwise set forth in this Plan.

76.    "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

77.    "*HCAI*" means the California Department of Health Care Access and Information.

78.    "*Holder*" means, as applicable, (i) an Entity holding a Claim against the Debtor; or (ii) an Entity holding a Liquidation Trust Interest in the Liquidation Trust.

79.    "*Hospital*" means the Debtor's general acute care hospital, located at 1250 E Almond Avenue, Madera, California 93637, and related facilities.

80.    "*Hospital Assets*" means the Hospital's operational assets and any other personal property assets generated after the Operation Assumption Date, but does <u>not</u> include the Estate Personal Assets (or any other Liquidation Trust Assets).

81.    "*Impaired*" means, when used in reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

82.    "*Initial Contribution*" means the $15 million deposit to be made by AAM, into the Escrow Account, as an initial deposit toward the AAM Cash Contribution, immediately upon the

- 10 -

10407306

Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order.

83.    "*Initial Distribution Date*" means, subject to the "Treatment" sections in **Article III** hereof, the date that is on or as soon as reasonably practicable after the Effective Date, when Plan Distributions shall commence to Holders of Allowed Claims.

84.    "*Insured Claim*" means a General Unsecured Claim arising prior to the Confirmation Date involving personal injury, medical malpractice, slip-and-fall, wrongful death, or other similar Claims that are covered by the terms of the Debtor's various insurance policies, or any other General Unsecured Claim against the Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution, or other payment under a policy of insurance under which the Debtor is an insured or beneficiary of the coverage provided under the applicable policy.  All Insured Claims are Disputed Claims.  Some of the Insured Claims may be fully insured, and no deductible amount would be payable by the Debtor under the terms of the applicable insurance policy.  As to other Insured Claims, a deductible or self-insured retention obligation may be applicable.  For the avoidance of doubt, with respect to all Insured Claims arising from events that occurred prior to the Petition Date for which notice is or was provided to the insurer in accordance with the applicable policy, such deductibles and self-insured retention obligations shall be treated as Class 4 General Unsecured Claims to the extent Allowed.  Further, no insurance carrier shall, or shall be entitled, to deny coverage under any insurance policy based upon (i) any failure of the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee, to pay any deductible or self-insured retention in full, or (ii) the treatment of any Claim for a deductible or self-insured retention obligation as a Class 4 General Unsecured Claim.

85.    "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

86.    "*Liquidation Transaction*" means any form of transaction or procedure to implement an orderly liquidation of the Debtor's Assets, including the Hospital, so that the proceeds thereof can ultimately be distributed to Holders of Allowed Claims.

87.    "*Liquidation Trust*" means the trust established pursuant to the Liquidation Trust Agreement.  With respect to any action required or permitted to be taken by the Liquidation Trust, the term includes the Liquidation Trustee or any other Person or Entity authorized to take such action in accordance with the Liquidation Trust Agreement.  In the event of any conflict between the terms of this Plan and the terms of the Liquidation Trust Agreement, the terms of the Plan control.

88.    "*Liquidation Trust Agreement*" means that certain agreement establishing and delineating the terms and conditions of the Liquidation Trust, in form and substance reasonably acceptable to the Committee.

89.    "*Liquidation Trust Assets*" means all assets held from time to time by the Liquidation Trust (including the Estate Personal Assets and the Causes of Action, including, but not limited to, Tort Claims and D&O Claims and the proceeds thereof), the proceeds of which shall be distributed to the Holders of Liquidation Trust Interests after payment in full of Trust Expenses and any other obligations to the extent set forth in this Plan or the Liquidation Trust Agreement.  The Liquidation Trust Assets shall initially consist of the Distributable Assets. For the avoidance of doubt,

- 11 -

the term "Liquidation Trust Assets" does not include any Cash tendered by the Debtor and held in the Professional Fee Trust Account except for the Excess Professional Fee Trust Amount, if any.

90.  "*Liquidation Trust Beneficiaries*" means the Holders of Liquidation Trust Interests.

91.  "*Liquidation Trust Interests*" means the beneficial interests in the Liquidation Trust distributed to the Holders of Allowed Claims in Class 4 on account of the Allowed General Unsecured Claims as set forth in **Article III.F.4** of the Plan.

92.  "*Liquidation Trust Oversight Committee*" means the committee formed pursuant to **Article V.J** of the Plan to, among other things, consult with the Liquidation Trust.  AAM shall have the right to serve as one of the members of the Liquidation Trust Oversight Committee.

93.  "*Liquidation Trustee*" means that Person selected by the Committee, with the consent of AAM, such consent not to be unreasonably withheld, to serve as the trustee of the Liquidation Trust as set forth in **Article V.H** of the Plan or any of his, her, or its successors.

94.  "*Local Rules*" means the Local Rules of Practice of the United States Bankruptcy Court Eastern District of California, as amended from time to time and as applicable to the Chapter 11 Case.

95.  "*MSA*" means the Management Services Agreement, by and between AAM and the Debtor, substantially in the form approved by the Bankruptcy Court pursuant to an order granting the Debtor's motion, pursuant to Section 363 of the Bankruptcy Code, for authority to enter into it, and the MTA, filed in the Chapter 11 Case on January 19, 2024 [Docket No. 1298].

96.  "*MTA*" means the Master Transition Agreement by and between AAM and the Debtor, substantially in the form approved by the Bankruptcy Court, pursuant to an order granting the Debtor's motion, pursuant to Section 363 of the Bankruptcy Code, for authority to enter into it, and the MSA, filed in the Chapter 11 Case on January 19, 2024 [Docket No. 1298].

97.  "*MTA Execution Date*" means the first date on which the MTA and MSA have both been signed by all parties thereto.

98.  "*Net Distributable Assets*" means the Distributable Assets of the Liquidation Trust from and after the Effective Date once all such assets have been reduced to Cash, net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims, Allowed SAMC Secured Obligations, and Trust Expenses, and/or reserves established for any of the foregoing.

99.  "*OAD Expenses*" means all expenses associated with the Hospital's operations arising *after* the Operation Assumption Date.

100.  "*One Million Deposit*" means the $1 million deposit to be made by AAM, into the Escrow Account immediately upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order, for the payment of all interest and related expenses associated with any Allowed SAMC Secured Obligations until (a) the MSA is terminated; (b) all SAMC Secured Obligations have been paid in full; or (c) the Plan Confirmation Deadline.  For the

- 12 -

avoidance of doubt, the One Million Deposit is in addition to the AAM Cash Contribution and shall not be credited against, nor in any way reduce, the AAM Cash Contribution due in accordance with paragraph 3 of the MTA or this Plan. Upon payment in full of all Allowed SAMC Secured Obligation, any unused balance of the One Million Deposit shall be applied in the following priority: *first*, to fund the Initial Contribution, *second* to fund each Supplemental Contribution sequentially, and, third, after all of AAM's obligations to fund the Initial Contribution and the Supplemental Contributions have been satisfied in full, to be repaid to AAM.

101.    "*Operation Assumption Date*" means the first date on which both of the following conditions have occurred: (a) the Bankruptcy Court's order approving the MTA and the MSA has become a Final Order, and (b) AAM has deposited both the Initial Contribution and the One Million Deposit into a Conforming Escrow Account.

102.    "*Other Priority Claim*" means any Claim against the Debtor accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

103.    "*Other Secured Claim*" means any Secured Claim against the Debtor other than an SAMC Secured Obligation.

104.    "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary, or other capacity.

105.    "*Petition Date*" means March 10, 2023, the date on which the Debtor commenced the Chapter 11 Case.

106.    "*Plan*" means this *Second Amended Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors*, including the Exhibits and Plan Supplement and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified, or otherwise supplemented from time to time.

107.    "*Plan Confirmation Deadline*" means July 15, 2024. The Plan Confirmation Deadline may be extended by AAM or by order of the Bankruptcy Court.

108.    "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims under this Plan.

109.    "*Plan Documents*" means any of the documents, other than this Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement.

110.    "*Plan Proponent*" means the Committee.

111.    "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including the Exhibits, Plan Documents, and the Designated Contract list, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time, which

10407306

shall be Filed with the Bankruptcy Court. The Plan Proponent shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

112. "*Post-Effective Date Notice List*" means the list, created pursuant to **Article XIV.F** of this Plan, of Persons who desire to receive notices after the Effective Date of the Plan.

113. "*Priority Tax Claim*" means any Claim of a Governmental Unit against the Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

114. "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim in a particular Class (or several Classes taken as a whole) bears to (b) the aggregate Allowed amount of all Claims in such Class (or several Classes taken as a whole), unless this Plan provides otherwise.

115. "*Professional*" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise, and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

116. "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503, or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

117. "*Professional Fee Trust Account*" means the trust account held by the Debtor's or the Liquidation Trustee's counsel for the purpose of paying Allowed Professional Fee Claims.

118. "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

119. "*QAF*" means Quality Assurance Fees.

120. "*Reinstated*" or "*Reinstatement*" means, with respect to any Claim, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim in accordance with Section 1124 of the Bankruptcy Code; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or applicable law; (iv) if such Claim arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than the Debtor or an insider of the Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

121. "*Real Property Asset*" means the real property on which the Hospital is located.

122. "*Related Persons*" means, (i) with respect to any Person other than the Debtor, such Person's financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting solely in such capacity at any

- 14 -

10407306

time, and any Person claiming by or through any of them, and (ii) with respect to the Debtor, such Debtor's Professionals retained in this Chapter 11 Case. None of the Excluded Parties shall be a Related Person of the Debtor.

123. "*Retained Causes of Action*" shall have the meaning ascribed to such term in **Article V.S** of this Plan.

124. "*SAMC*" means Saint Agnes Medical Center.

125. "*SAMC Exculpated Parties*" means SAMC and its Related Persons, current and former officers, directors, managers, equity holders, Affiliates, subsidiaries, predecessors, successors, and employees, in their capacities as such. For the avoidance of doubt, the Excluded Parties are expressly excluded from the definition of SAMC Exculpated Parties.

126. "*SAMC Secured Obligation*" or "*SAMC Secured Obligations*" means any Secured Claim held by SAMC as a result of financing provided to the Debtor in April 2021 in the initial principal amount of $15,000,000.

127. "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and all amendments or supplements thereto Filed by the Debtor with the Bankruptcy Court.

128. "*Section 503(b)(9) Claims*" means Allowed Claims pursuant to section 503(b)(9) of the Bankruptcy Code.

129. "*Secured Claim*" means a Claim that is secured by a valid and enforceable Lien on property in which the Debtor's Estate has an interest or that is subject to valid setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; *provided*, *however*, that a Secured Claim shall not include any portion of the Claim to the extent that the value of such Entity's Collateral is less than the amount of such Claim.

130. "*SEC*" means the Securities and Exchange Commission.

131. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state, or local law.

132. "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

133. "*Solicitation*" means the solicitation of votes of those parties entitled to vote to accept or reject the Plan.

134. "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including such taxes on prime contracting and owner-builder sales), privilege taxes

10407306

(including privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

135.    "*Supplemental Contribution*" means each of the additional Cash contributions to be paid by AAM to the Liquidation Trust, as set forth in the MTA and the Plan, in up to three (3) installments of $5 million each until such time as AAM has contributed into a Conforming Escrow Account or directly to the Liquidation Trust a total amount of Cash (including the Initial Contribution, but excluding any amounts paid by AAM toward OAD Expenses) equal to the *lesser* of: (i) $30 million, or (ii) an amount sufficient to pay in full all Allowed General Unsecured Claims (other than the subordinated AAM GUC).

136.    "*Termination Date Expenses*" means any OAD Expenses incurred on or before, and that remain unpaid as of, the date the MTA terminates.

137.    "*Tort Claims*" means any and all claims or Causes of Action of the Debtor or its Estate against any of the Debtor's current or former professionals, directors, officers, trustees, managers and similar parties, including but not limited to any D&O Claims.

138.    "*Transition Period*" means the period from the Operation Assumption Date until the Closing Date.

139.    "*Trust Expenses*" means the costs, expenses, or other obligations incurred, payable or owed by the Liquidation Trust from and after the Effective Date, including the reasonable fees, costs, and expenses of the Liquidation Trustee and his or her attorneys and other professionals, relating to, among other things, the implementation of the Plan and the administration of the Liquidation Trust.

140.    "*Undisputed OAD Expenses*" means all OAD Expenses that remain due and unpaid as of the first day of a calendar month that are not subject to a bond fide dispute.

141.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption, assignment, or rejection under section 365 of the Bankruptcy Code.

142.    "*Unimpaired*" means not impaired within the meaning of section 1124 of the Bankruptcy Code.

143.    "*Voting Classes*" means Class 3 and Class 4 under this Plan.

144.    "*Voting Record Date*" means the date for determining which Holders of Claims are entitled to receive the Disclosure Statement and vote to accept or reject this Plan, which date shall be set by the Bankruptcy Court.

145.    "*Wind Up Reserve*" means the amount approved by the Bankruptcy Court upon the Liquidating Trustee's motion for a final decree or otherwise, for payment of wind up costs, expenses, and obligations accrued or anticipated but not yet paid by the Liquidating Trustee as of the issuance of the final decree.

10407306

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

### A.　　Administrative Expense Claims

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim will receive from the Debtor or the Liquidation Trust, as applicable, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Liquidation Trustee and such Holder.  So long as the MTA remains in effect, AAM shall either pay directly, or provide funding to the Debtor sufficient to pay, all OAD Expenses and, to the extent AAM fails to timely fund the payment of an OAD Expense, such OAD Expense shall be paid from the Escrow Account (which shall then be replenished for such drawn amount by AAM), in each case as required by the MTA, and as further described in Article V.B of the Plan.  Allowed Administrative Expense Claims that are not OAD Expenses shall be paid from Cash on Hand.  **Unless otherwise ordered by Final Order of the Bankruptcy Court, all Administrative Expense Claims must be Filed within forty-five (45) days after the Effective Date, and served on the Liquidation Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court.  The failure to File a request for payment of an Administrative Expense Claim on or before forty-five (45) days after the Effective Date shall result in such Administrative Expense Claim being forever Disallowed, barred, and expunged in its entirety without further notice to any party, or action, approval, or order of the Bankruptcy Court.**

*Professional Fee Claims*.  Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must File, within forty-five (45) days after the Effective Date, and serve on the Liquidation Trustee, the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim; *provided* that the Liquidation Trustee may pay Professionals in the ordinary course of business, for any work authorized by the Liquidation Trustee performed on and after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and Consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash. Once Allowed by the Bankruptcy Court, Professional Fee Claims incurred prior to the Effective Date shall be promptly paid from the Professional Fee Trust Account.  If the amounts held in the Professional Fee Trust Account are insufficient to pay all such Allowed Accrued Professional Compensation in full in Cash, the Liquidation Trustee shall promptly pay any unpaid balance of such Allowed Accrued Professional Compensation from the Cash transferred to the Liquidation Trust on the Effective Date.

### B.　　Priority Tax Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date, or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Liquidation Trustee: (a) Cash in an amount

- 17 -

equal to the amount of such Allowed Priority Tax Claim; or (b) such other less favorable treatment as agreed to in writing by the Liquidation Trustee and such Holder. Allowed Priority Tax Claims will be paid from Cash on Hand.

<div align="center">

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS**

</div>

**A.**     **Summary**

All Claims, except Administrative Expense Claims (including Professional Fee Claims) and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified as described in **Article III.F** of the Plan.

The categories of Claims listed below classify Claims for all purposes including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid, released, or otherwise settled prior to the Effective Date.

<div align="center">

**Summary of Classification and Treatment of Classified Claims**

</div>

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed and Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed and Presumed to Accept |
| 3 | SAMC Secured Obligations | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |

**B.**     **Separate Classification of Certain Claims**

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within this Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of voting to accept or reject this Plan and receiving Plan Distributions.

All General Unsecured Claims (or other classified Claims) have been placed in one Class for purposes of this Plan.

**C.**     **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this

<div align="center">- 18 -</div>

10407306

Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**D.     Voting; Presumptions; Solicitation in Good Faith**

Only Holders of Allowed Claims in Classes 3 and 4 are entitled to vote to accept or reject this Plan.   Holders of Claims in these Voting Classes will receive Ballots containing detailed voting instructions.

The Plan Proponent will solicit votes on the Plan from the Voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  Accordingly, the Plan Proponent and each of its Related Persons shall be entitled to, and upon the Confirmation Date will be granted, the protections of section 1125(e) of the Bankruptcy Code.

**E.     Cramdown**

If any Class of Claims is deemed and/or presumed to reject this Plan or is entitled to vote on this Plan and does not vote to accept this Plan, the Plan Proponent intends to (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code, or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims, or any Class of Claims, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**F.     Classification and Treatment of Claims**

      1.     Class 1 – Other Priority Claims

- *Classification*:  Class 1 consists of the Other Priority Claims.

- *Treatment*:  The legal, equitable, and contractual rights of the Holders of Other Priority Claims are unaltered by the Plan.  With respect to each Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Other Priority Claim is an Allowed Other Priority Claim on the Effective Date, or (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim will receive in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed Other Priority Claim, at the election of the Liquidation Trustee:  (A) Cash equal to the amount of such Allowed Other Priority Claim; (B) such other less favorable treatment as to which the Liquidation Trustee and the Holder of such Allowed Other Priority Claim will have agreed upon in writing; or (C) such other treatment such that it will not be Impaired.  Allowed Other Priority Claims will be paid from Cash on Hand unless otherwise agreed to by the Holder of such Claim.

- *Impairment and Voting*:  Class 1 is an Unimpaired Class and the Holders of Other Priority Claims are conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

- 19 -

10407306

Therefore, the Holders of Other Priority Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

2.    Class 2 – Other Secured Claims

- *Classification*: Class 2 consists of the Other Secured Claims. This Class will be further divided into subclasses designated by letters of the alphabet (Class 2A, Class 2B and so on), so that each Holder of any Allowed Other Secured Claim against the Debtor is in a Class by itself, except to the extent that there are Other Secured Claims that are substantially similar to each other and may be included within a single Class.

- *Treatment*: The legal, equitable, and contractual rights of the Holders of Other Secured Claims are unaltered by the Plan. With respect to each Allowed Other Secured Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Other Secured Claim is an Allowed Other Secured Claim on the Effective Date, or (ii) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim will receive in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed Other Secured Claim, at the election of the Liquidation Trustee: (A) Cash equal to the amount of such Allowed Other Secured Claim; (B) return of the Collateral securing such Allowed Other Secured Claim; (C) such other less favorable treatment as to which the Liquidation Trustee and the Holder of such Allowed Other Secured Claim will have agreed upon in writing; (D) any defaults shall be cured and shall be paid or satisfied in accordance with and pursuant to the terms of the applicable agreement between the Liquidation Trustee and the Holder of the Allowed Other Secured Claim and such Claim shall be Reinstated; or (E) Reinstatement or such other treatment such that it will not be Impaired.

- *Impairment and Voting*: Class 2 is an Unimpaired Class and the Holders of Other Secured Claims are conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Other Secured Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

3.    Class 3 – SAMC Secured Obligations

- *Classification*: Class 3 consists of SAMC Secured Obligations.

- *Allowance*: The SAMC Secured Obligation shall be allowed in an aggregate principal amount (plus accrued and unpaid interest through January 1, 2024) of $2,323,485 plus unpaid fees and interest that accrue from January 2, 2024 through the Effective Date, which represents the outstanding portion of the SAMC Secured Obligations.

- 20 -

- *Treatment*: On the Effective Date, and in exchange for a waiver and release of any and all claims or Causes of Action asserted or assertable against SAMC by the Debtor, the Estate, the Committee, the Liquidation Trust or the Liquidation Trustee (as further described in Article X.B of this Plan), the SAMC Secured Obligations shall receive a distribution in the amount (the "<u>SAMC Distribution Amount</u>") equal to the sum of: (a) $2,230,546, plus (b) any interest, fees and expenses, accrued between January 2, 2024 and the Effective Date, that remain due and owing as of the Effective Date. On or before the Expense Payment Deadline of each calendar month, a portion of the One Million Deposit shall be released to the Debtor in an amount sufficient to pay certain interest and expenses associated with the Allowed SAMC Secured Obligations that accrued during the prior calendar month and shall be immediately applied by the Debtor solely to pay such interest and expenses (and thereby reducing the SAMC Distribution Amount to the extent paid from the One Million Deposit). The balance of the Allowed SAMC Secured Obligations shall be paid on the Effective Date from Cash on Hand, unless otherwise agreed to by the Holder of such Allowed SAMC Secured Obligation.

- *Impairment and Voting*: Class 3 is an Impaired Class and the Holders of SAMC Secured Obligations are entitled to vote to accept or reject the Plan.

4. Class 4 – General Unsecured Claims

- *Classification*: Class 4 consists of the General Unsecured Claims.

- *Treatment*: As soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed General Unsecured Claim (unless the applicable Holder agrees to a less favorable treatment), its Pro Rata share of Liquidation Trust Interests, which shall entitle such Holder to its Pro Rata Share of the Liquidation Trust Assets. The Liquidation Trust Assets shall initially consist of, *inter alia*: (i) any Cash on Hand (including the $15 million Initial Contribution); (ii) the Estate Personal Assets; (iii) any Excess Professional Fee Trust Amount; (iv) the D&O Liability Insurance Policies; (v) the Retained Causes of Action (including, but not limited to, Tort Claims and D&O Claims); and (vi) the proceeds of the foregoing. Plan Distributions on account of such Liquidation Trust Assets shall be made on or as soon as reasonably practicable after the later of: (i) the Initial Distribution Date if such General Unsecured Claim is Allowed on the Effective Date, or (ii) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim.

- 21 -

10407306

- *Impairment and Voting*: Class 4 is an Impaired Class and the Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

**G.     Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's, the Committee's or the Liquidation Trustee's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to cure any arrears or defaults that may exist with respect to Executory Contracts or Unexpired Leases to be assumed under the Plan.

**H.     Special Provision Governing Cash Paid to SAMC**

Notwithstanding anything to the contrary in the Plan, the Debtor (and the Committee) waive any rights in respect of legal and equitable claims of setoff or recoupment as they relate to any cash payments made to SAMC during the course of the chapter 11 case and any distributions made on account of SAMC Secured Obligations under this Plan.

**I.     Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(a) of the Bankruptcy Code, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor and the Liquidation Trustee reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

**ARTICLE IV.**
**ACCEPTANCE OR REJECTION OF THE PLAN**

**A.     Deemed and Presumed Acceptance of Plan**

Classes 1 and 2 are Unimpaired under the Plan and are therefore conclusively deemed and presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**B.     Reserved**

**C.     Voting Classes**

Subject to the provisions of any order approving the Disclosure Statement, each Holder of an Allowed Claim, as of the applicable Voting Record Date, in the Voting Classes (Classes 3 and 4) will be entitled to vote to accept or reject the Plan.

10407306

**D.    Controversy Concerning Impairment**

In the event of any controversy as to whether any Holder of an Allowed Claim or Class is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

**E.    Acceptance by Impaired Classes of Claims**

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class (or, as applicable sub-class) of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims actually voting in such Class (or, as applicable, sub-class) voted to accept the Plan.  An Impaired Class of Claims for which no Holder votes to accept or reject the Plan shall be deemed to have rejected the Plan.

**F.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

The Plan Proponent shall seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class (or, as applicable, sub-class) that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Plan Proponent reserves the right to amend, revoke, modify, or withdraw the Plan or any amendment, supplement, or Exhibit thereto, or the Plan Supplement in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**ARTICLE V.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.    Overview**

This Plan provides for: (a) the formation of the Liquidation Trust; (b) the disposition of substantially all the Assets of the Debtor and its Estate and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code; (c) the winding down of the Debtor and its affairs by the Liquidation Trustee; and (d) the creation of a mechanism for the Liquidation Trustee to pursue, litigate, waive, settle, and compromise Causes of Action (including, but not limited to, D&O Claims and Tort Claims) to maximize Creditor recoveries.

The Plan also provides that, subject to the occurrence  of the Operation Assumption Date, AAM shall contribute up to $30 million in Cash to fund the Liquidation Trust for the benefit of Holders of Allowed General Unsecured Claims in exchange for the sale to Buyer of: (i) the Real Property Asset (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit B to the MTA), and (ii) at the election of AAM, the transition of the Hospital Assets to Buyer (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit C to the MTA).   To the extent these transactions are terminated, the Plan enables the Committee to pursue and consummate a Liquidation Transaction if, at any time before the Effective Date, it determines in its sole discretion that consummation of such Liquidation Transaction is in the best interests of the Estate and Creditors.

In addition, in the event that AAM terminates the MTA, AAM shall submit to the Debtor (or if the Plan has been confirmed, the Liquidation Trustee) a binding $3 million stalking horse bid for

10407306

the Real Property Asset if requested to do so by the Committee (or if a Plan has been confirmed, the Liquidation Trustee).

**B.**   **The MTA & MSA**

*Purpose*. AAM is dedicated under the MTA to the reopening of Hospital under the terms set forth in the MTA, and upon CDPH's approval. It is AAM's intention to assist Hospital in its reopening and continued operations under the MSA, until the parties can transition the operations and ownership of the Hospital Assets to AAM, by which AAM will continue the delivery of health care for the benefit of communities served by the Debtor.

*Management of the Hospital*. Under the MSA, AAM will act as the Debtor's agent for, among other things: (i) applying for a change of ownership with the CDPH; (ii) applying for funding under the California Distressed Hospital Loan Program pursuant to California Health and Safety Code Sections 129380 *et seq.*; and (iii) applying for the necessary approvals with the California Attorney General's Nonprofit Health Facilities division.

*AAM's Option to Acquire Hospital*. At its election, but no later than thirty-six (36) months after the MTA Execution Date, AAM may elect (in its sole discretion) to submit a CHOW Application for change of ownership or transfer of membership interests to CDPH to effect a change in licensed operator of the Hospital from the Debtor to AAM. The date of CDPH's approval of the CHOW Application shall be the date on which ownership of the Hospital Assets shall be transferred from the Debtor to Manager.

*Transition Period*. During the Transition Period, AAM shall provide the Debtor with certain management and administrative services in support of the Hospital's operations as identified in the MTA and MSA.

*Post-Closing Date*. After the Closing Date, AAM will operate the Hospital pursuant to its own acute care health facility license issued by CDPH pursuant to the approved CHOW Application, and the Debtor will cease to operate the Hospital.

*Transition of Facilities*.

(i)      *Assumption of Financial Responsibility*: Immediately upon the occurrence of the Operation Assumption Date, AAM shall assume all financial responsibility for the Hospital's operations.

(ii)     *Payment of Expenses*: AAM shall provide funding to the Hospital sufficient for the Hospital to pay all OAD Expenses; *provided* that AAM's obligation to fund the OAD Expenses shall not apply to expenses accruing after termination of the MSA.

(iii)    *Retention of Property by Debtor*: All Estate Personal Assets shall remain the property of the Debtor's Estate, available to pay the Claims of all of the Debtor's Creditors and shall not be: (i) subject to the MSA; (ii) transferred or otherwise hypothecated, encumbered (except as such encumbrance existed on the Petition Date) or otherwise affected by the MSA or the transactions contemplated therein or in the MTA; or (iii) impaired, impacted or otherwise affected by AAM or any affiliate thereof.

10407306

(iv)     *Distressed Hospital Loan Program Funds*: Notwithstanding anything to the contrary in this Plan, any DHLP Funds shall be applied solely to fund operation of the Hospital so long as it continues to operate. Any unpaid balance of DHLP Funds remaining on the Closing Date shall be returned to the California Health Facility Financing Authority.

(v)     *Use of Funds by AAM*. For five (5) years from the Operation Assumption Date, AAM shall commit to reinvest Net Funds produced by the Hospital (including its rural clinics) into providing services to the Madera community at the Hospital. As used herein, "Net Funds" means revenues from services furnished at the Hospital, Disproportionate Share Hospital Program funds, and QAF revenue, less (i) expenses of the Hospital, (ii) joint expenses of AAM and the Hospital as allocated to the Hospital in proportion to the services provided, (iii) payment of funds, including QAF and FEMA funds, to the Hospital's pre-petition creditors, in accordance with relevant orders from the Bankruptcy Court, *provided that* annual repayment of any such expenses ("AAM Repayment") shall not exceed 15% of the gross revenues of the Hospital. For avoidance of doubt, DHLP Funds shall not be used to fund any portion of the AAM Repayment.

(vi)     *Accounting Methods*. All calculations shall be made in accordance with AAM's normal accounting practices and capital approval processes provided that those processes shall include practices and processes to effectuate these requirements.

(vii)     *Retention of Benefits by Debtor*. Notwithstanding anything in this Agreement or in the MSA to the contrary, during the term of the MSA or upon the Closing Date, AAM shall not, through direct payments to itself of expenses or funds, or, in the event that the facility is acquired by AAM, through investments in the facility, acquire funds (excluding management fees) in excess of that portion of the AAM Cash Contribution actually contributed to fund the Liquidation Trust.

(viii)     *Contingent Repayment of Funds by AAM*. To the extent that, upon either (i) the Closing Date or (ii) upon termination of the MTA, AAM has acquired funds (excluding management fees), either through direct payments to itself of expenses or funds, or, in the event that the facility is acquired by AAM, through investments in the facility, that are in excess of that portion of the AAM Cash Contribution actually contributed to fund the Liquidation Trust, AAM shall return any such excess funds to the Debtor.

(ix)     *Allowance of AAM GUC*: Subject to the Bankruptcy Court's approval of the MTA, and subject to subparagraphs (vii) and (viii) above, AAM shall be deemed to have an Allowed General Unsecured Claim in an amount equal to the OAD Expenses that are paid by AAM out-of-pocket prior to the Hospital's receipt of DHLP Funds (the "AAM GUC"); *provided*, *however*, that beginning on the DHLP Funds Receipt Date, no further OAD Expenses shall be added to the calculation of the AAM GUC except to the extent that the total OAD Expenses incurred after the DHLP Funds Receipt Date exceeds the total amount of DHLP Funds received by the Hospital and are therefore funded by AAM out-of-pocket. For the avoidance of doubt, the AAM GUC shall be subordinated in all respects to all other Allowed General Unsecured Claims and shall only be payable upon the payment in full (without interest) of all Allowed General

- 25 -

10407306

Unsecured Claims (other than the AAM GUC), except as set forth below in "Treatment of Claims".

*Treatment of Claims.*  The net proceeds from the Estate Personal Assets and the Real Property Asset shall be used to pay Allowed Claims pursuant to the priorities set forth in the Bankruptcy Code and in accordance with the terms of this Plan.  To the extent that the Hospital resumes operations and is sold or otherwise transitioned to a third party as an operating hospital either through a sale motion, a plan of reorganization, a management agreement, or in any other manner, the AAM GUC shall be treated as an Allowed Administrative Expense Claim payable solely from such proceeds of the sale of the Hospital (but shall not be payable from the proceeds of any Estate Personal Assets unless all Allowed General Unsecured Claims have been paid in full, without interest).

*Sale of Real Property Asset and Hospital Assets.*

(i)     *Liquidation Trust*:  Subject to the occurrence of the Operation Assumption Date, AAM shall contribute the AAM Cash Contribution, subject to the terms of the MTA and this Plan, to fund the Liquidation Trust for the benefit of Holders of Allowed General Unsecured Claims in exchange for the sale to Buyer of: (1) the Real Property Asset (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit B to the MTA), and (2) at the election of AAM, the transition of the Hospital Assets to Buyer (memorialized in an asset purchase agreement that is substantially similar to the form attached as Exhibit C to the MTA).

(ii)    *Funding of AAM Cash Contribution*: The AAM Cash Contribution shall be funded as follows:

   a.   Upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order, AAM shall immediately deposit into the Escrow Account the Initial Contribution.

   b.   *Replenishment of Escrow*:  On or before the Effective Date, AAM shall deposit into the Escrow Account an amount sufficient such that, as of the occurrence of the Effective Date, the Initial Contribution held in the Escrow Account is no less than $15 million.

   c.   Immediately upon the Effective Date, the Initial Contribution shall be released from the Escrow Account to be transferred to the Liquidation Trustee.

   d.   The balance of the AAM Cash Contribution shall be paid by AAM to the Liquidation Trust in up to three (3) Supplemental Contributions until such time as AAM has contributed into the Escrow Account or directly to the Liquidation Trust a total amount of Cash (including the Initial Contribution, but excluding any amounts paid by AAM out-of-pocket toward OAD Expenses) equal to the *lesser* of: (i) $30 million, or (ii) an amount sufficient to pay in full all Allowed General Unsecured Claims (other than the subordinated AAM GUC).   The Supplemental Contributions shall be paid by AAM to the Liquidation Trust according to the following schedule:

- 26 -

10407306

| Supplemental Contribution Schedule | Deadline for Payment to Liquidation Trustee |
|---|---|
| 1st $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $15 million has been distributed to Holders of Allowed General Unsecured Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |
| 2nd $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $20 million has been distributed to Holders of Allowed General Unsecured Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |
| 3rd $5 million Supplemental Contribution | Within seven (7) days after written notice from the Liquidation Trustee that at least $25 million has been distributed to Holders of Allowed General Unsecured Claims and/or applied to pay professional or other expenses of the Liquidation Trust. |

(iii) *AAM Contribution Lien*: AAM's obligation to pay the AAM Cash Contribution shall be secured by the AAM Contribution Lien. Upon the Liquidation Trust's receipt of the full amount of the AAM Cash Contribution, the AAM Contribution Lien shall be deemed released and the Liquidation Trustee shall (at AAM's request) execute requisite documentation to evidence release of the AAM Contribution Lien.

(iv) *Surplus Funds*. To the extent that, after paying all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Other Secured Claims, Allowed SAMC Secured Obligations, and Allowed General Unsecured Claims in full, without interest, and the Allowed AAM Subordinated Claim, without interest, the Debtor's estate has remaining Assets, such remaining Assets (including, but not limited to, the Estate Personal Assets) shall be used as follows: (a) *first*, to fund the Wind Up Reserve, (b) *second*, to pay the AAM Refund, (c) *third*, to pay post-petition interest on Allowed General Unsecured Claims at the prevailing Federal Judgment Rate as of the Effective Date, and (d) *fourth*, any remaining balance shall be paid to the Hospital. For avoidance of doubt, notwithstanding anything to the contrary contained in the Plan, the MTA, or otherwise, this provision shall not apply to DHLP Funds.

(v) *Sale of Real Property Asset*: The sale of the Real Property Asset to Buyer shall be, and shall be deemed, effective immediately upon: (a) the Effective Date, and (b) the release of the Initial Contribution from the Escrow Account and the deposit of such funds into the Liquidation Trust. As additional consideration for AAM's purchase of the Real Property Asset, AAM shall contribute the remainder of the AAM Cash Contribution to the Liquidation Trust in accordance with the terms of the Plan and Paragraph 3.b. of the MTA.

- 27 -

10407306

(vi) *CHOW Election*: AAM shall have the option, in its sole discretion, to submit a CHOW Application to CDPH to effect a change in licensed operator of the Hospital from the Debtor to AAM within thirty-six (36) months of the MTA Effective Date.

(vii) *Transfer of Hospital Assets*: Subject to AAM exercising the CHOW Election, the transfer of the Hospital Assets to Buyer shall be, and shall be deemed, effective immediately upon: (a) CDPH's approval of such timely-submitted CHOW Application for the change of ownership; and (b) Buyer's payment to the Debtor of $1.00.[1]

*Additional Payments*. Upon the Bankruptcy Court's approval of the Debtor's entry into the MSA and such order becoming a Final Order, AAM shall (i) assume the liability for the unused portion of the $2 million bridge loan and for any other amounts loaned to the Hospital by HCAI in connection with AB112; and (ii) immediately deposit the One Million Deposit into the Escrow Account for the payment of all interest and related expenses associated with any Allowed SAMC Secured Obligations until (a) the MSA is terminated; (b) all Allowed SAMC Secured Obligations have been paid in full; or (c) the Plan Confirmation Deadline. On or before the Expense Payment Deadline of each calendar month: (a) funds held in the Escrow Account shall be released to the Debtor in an amount sufficient to pay all Undisputed OAD Expenses that were due and unpaid as of the first day of the prior calendar month (and as to which AAM has not provided to the Committee (or, if appointed pursuant to the Plan, the Liquidation Trustee) proof of payment prior to the Expense Payment Deadline) and shall be immediately applied by the Debtor solely to pay such Undisputed OAD Expenses and (b) a portion of the One Million Deposit shall be released to the Debtor in an amount sufficient to pay all interest and related expenses associated with any Allowed SAMC Secured Obligations that accrued during the prior calendar month, and shall be immediately applied by the Debtor solely to pay such interest and related expenses. The consideration due from AAM pursuant to this provision is in addition to the AAM Cash Contribution and shall not be credited against, nor in any way reduce, the AAM Cash Contribution due in accordance with the terms of the MTA or this Plan. Upon payment in full of all Allowed SAMC Secured Obligations, any unused balance of the One Million Deposit shall be applied in the following priority: *first*, to fund the Initial Contribution, *second*, to fund each Supplemental Contribution sequentially, and, *third*, after all of AAM's obligations to fund the Initial Contribution and the Supplemental Contributions have been satisfied in full, to be repaid to AAM.

*Termination of the MSA and MTA*.

(i) *AAM Right to Terminate if Plan Not Timely Confirmed*: If the Bankruptcy Court does not confirm the Plan by the Plan Confirmation Deadline, AAM shall have the option during the seven (7) days immediately following the Plan Confirmation Deadline, exercisable in its sole and absolute discretion, to terminate the MSA and MTA by providing written notice of termination to counsel for the Debtor and the Committee. The Plan Confirmation Deadline may be extended by AAM or by order of the Bankruptcy Court.

(ii) *Debtor Right to Terminate*: Debtor shall have the right to terminate the MSA and MTA, in its sole and absolute discretion, by written notice to AAM, if the Bankruptcy Court does not confirm the Plan on or before the Plan Confirmation Deadline.

---

[1] For the avoidance of doubt, the $1.00 sale price is in addition to consideration provided by AAM to the Debtor under the MSA, payment of the Initial Contribution, and AAM's obligation to fund the remainder of the AAM Cash Contribution.

- 28 -

(iii)    *Termination for Cause*: Either party may terminate the MSA and MTA for Cause upon written notice to the other party specifying the basis for the termination.

    a.    Under the MTA, "Cause" means any of the following: (i) a material breach of any of the terms of the MTA by the other party that is not cured within seven (7) days after written notice of the breach; or (ii) the other party's engaging in any illegal or fraudulent activity that materially affects the other party's ability to perform under the MTA.

    b.    Under the MSA, "Cause" means any of the following: (i) a material breach of any of the terms of the MSA by the other party that is not cured within sixty (60) days after written notice of the breach; or (ii) the other party's engaging in any illegal or fraudulent activity that materially affects the other party's ability to perform under the MSA; or (iii) the MTA having been terminated in accordance with its terms by any party thereto.

(iv)    *Effect of Termination*:

    a.    Upon (a) AAM's termination of the MTA in accordance with subparagraph (i) above, (b) the Debtor's termination of the MTA other than for Cause, or (c) AAM's valid termination of the MTA for Cause (as determined by Final Order of the Bankruptcy Court): any portion of the Initial Contribution or the One Million Deposit remaining in the Escrow Account shall be applied in the following order: *first*, to (i) pay Termination Date Expenses or (ii) deposit with the Liquidation Trustee an amount sufficient to pay all Termination Date Expenses, and, *second*, to refund to AAM any funds remaining in the Escrow Account after all OAD Expenses have been paid in full. This provision shall survive termination of the MTA.

    b.    Upon termination of the MTA by the Debtor for Cause (as determined by Final Order of the Bankruptcy Court): any portion of the Initial Contribution or the One Million Deposit remaining in the Escrow Account shall be released to (a) the Liquidation Trustee or (b) if no Liquidation Trustee has been appointed in this Chapter 11 Case, to the Debtor, in each case for the benefit of creditors of the Debtor's estate.

(v)    *Compliance with California Health and Safety Code*. Following the commencement of the provision of health care services at the Hospital, should Debtor or AAM terminate the MTA resulting in the closure of the Hospital, closure or reduction of emergency medical services, or relocation or elimination of a supplement service by the Hospital, notice shall be given to the public according to the public notice requirements and timelines pursuant to California Health and Safety Code sections 1255.1 through 1255.25.

*Uses of Escrowed Funds.*

(i)    Until the earlier of (a) the Effective Date, or (b) the first date on which (i) the MTA has been terminated and (ii) all OAD Expenses incurred by the Hospital during the Transition Period have been paid in full, the Initial Contribution shall be held in the

- 29 -

Escrow Account as security for AAM's obligations to (a) pay OAD Expenses and (b) pay the first $15 million of the AAM Cash Contribution.

(ii)     The One Million Deposit shall be held in the Escrow Account as security for AAM's obligations to (a) pay OAD Expenses, (b) pay all interest and related expenses associated with the SAMC Secured Obligations, and (c) pay the first $15 million of the AAM Cash Contribution.

*Alternative Proposal.* In the event that AAM terminates the MTA in accordance with the terms thereof, AAM will submit to the Debtor (or, if the Plan has been confirmed, the Liquidation Trustee) a binding $3 million stalking horse bid for the Real Property Asset if requested to do so by the Committee (or, if a Plan has been confirmed, the Liquidation Trustee).

## C.     Pivot to a Liquidation Transaction

In the event that the MTA is terminated in accordance with its terms, the Committee reserves the right, in its sole discretion, at any time prior to the Effective Date, to pursue and consummate a Liquidation Transaction, if it determines in its sole discretion that consummation of such a Liquidation Transaction is in the best interests of the Estate and Creditors; provided that any such Liquidation Transaction shall provide: (a) the same "Treatment" of SAMC Secured Obligations as specified in Article III.F.3 of this Plan, and (b) for the SAMC Secured Obligations to be paid in full in Cash as soon as reasonably practicable after the effective date of such Liquidation Transaction.

## D.     General Settlement of Claims

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims, and is fair, equitable, and reasonable. **Except as otherwise expressly provided in the Plan, any and all claims and Causes of Action of the Debtor and the Estate are preserved under the Plan.**

## E.     Continued Existence of the Debtor and Vesting of Assets in Liquidation Trust

On and after the Effective Date, subject to the requirements of the Plan, the Debtor will continue to exist as a separate corporation, and shall retain all of the powers of a corporation under applicable non-bankruptcy law, and without prejudice to any right to amend its articles of incorporation, dissolve, merge, or convert into another form of business entity, or to alter or terminate its existence. The Liquidation Trustee shall be deemed to have been admitted as the sole director of the Debtor under applicable non-bankruptcy law and shall be authorized to exercise all of the rights and powers of a sole director as provided by the Plan.

Neither the occurrence of the Effective Date, nor the effectiveness of this Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtor, which shall continue as a corporation, under the control of the Liquidation Trustee following the Effective Date subject to the terms of the Plan.

- 30 -

10407306

Except as otherwise provided in this Plan, on and after the Effective Date, all Distributable Assets and property of the Debtor and its Estate, including any Causes of Action (including, but not limited to, Tort Claims and D&O Claims), will vest in the Liquidation Trust free and clear of all Claims, Liens, charges, and other encumbrances. Notwithstanding the foregoing, the Plan Proponent reserves the right to modify the Plan to exclude certain Assets from transfer to the Liquidation Trust as necessary to preserve rights and claims of the Estate and maximize value for Creditors. The Confirmation Order shall constitute a determination that the transfers of the Liquidation Trust Assets to the Liquidation Trust are legal and valid and consistent with applicable law, including applicable state law.

All parties shall execute any documents or other instruments as necessary to cause title to the applicable Assets to be transferred to the Liquidation Trust. The Liquidation Trust Assets will be held in trust for the benefit of all Liquidation Trust Beneficiaries pursuant to the terms of the Plan and the Liquidation Trust Agreement.

**F.**     **Corporate Action**

On the Effective Date, the matters under the Plan involving or requiring corporate action of the Debtor, including but not limited to actions requiring a vote or other approval of the board of directors, managers, members, partners or trustees of the Debtor or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the managers, members, directors, officers or trustees of the Debtor.

Without limiting the generality of the foregoing, except as otherwise provided in the Plan and the MSA and MTA (to the extent such agreements remain in effect), on the Effective Date and automatically and without further action: (i) any existing manager, director, officer, or trustee of the Debtor will be deemed to have resigned on the Effective Date without any further corporate action; (ii) the Liquidation Trustee shall be deemed the sole manager, director, officer, trustee and representative of the Debtor to exercise the rights, power, and authority of the Debtor under applicable provisions of this Plan and bankruptcy and non-bankruptcy law; and (iii) all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order shall act as an order modifying the Debtor's articles of incorporation, such that the provisions of this Plan can be effectuated. The Plan shall be administered by the Liquidation Trustee, and all actions taken thereunder in the name of the Debtor shall be taken through the Liquidation Trustee. All corporate governance activities of the Debtor shall be exercised by the Liquidation Trustee in his or her discretion, subject to the terms of this Plan.

On and after the Effective Date, the Liquidation Trustee may, in the name of the Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan, the Confirmation Order or the Liquidation Trust Agreement. Without limiting the foregoing, the Liquidation Trustee may pay all reasonable Trust Expenses in the ordinary course of business without further notice to Creditors or Holders or approval of the Bankruptcy Court.

**G.**     **Liquidation Trust**

Prior to the Effective Date, the Debtor shall execute the Liquidation Trust Agreement. The Liquidation Trust Agreement shall contain provisions customary to trust agreements utilized in

- 31 -

10407306

comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidation Trust as a grantor trust.

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of maximizing the value of the Liquidation Trust Assets, which shall initially consist of the Distributable Assets, and effectuating Plan Distributions to Creditors consistent with the Plan. The Liquidation Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.

On the Effective Date, the Liquidation Trust Assets shall vest automatically in the Liquidation Trust. The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be made for the benefit and on behalf of the Liquidation Trust Beneficiaries. The assets comprising the Liquidation Trust Assets will be treated for tax purposes as being transferred by the Debtor to the Liquidation Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Liquidation Trust Beneficiaries to the Liquidation Trust in exchange for the Liquidation Trust Interests in the Liquidation Trust. The Liquidation Trust Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust. Upon the transfer of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtor's rights, title, and interest in the Liquidation Trust Assets, and the Debtor will have no further interest in or with respect to the Liquidation Trust Assets.

In pursuing any Causes of Action, the Liquidation Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtor's rights with respect to the periods in which any of the Causes of Action may be brought under section 546 of the Bankruptcy Code. The Liquidation Trust Agreement will require consistent valuation of the Liquidation Trust Assets by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all U.S. federal and other income tax and reporting purposes. The Liquidation Trust will not be permitted to receive or retain Cash in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the Liquidation Trust Assets.

In connection with the prosecution of the Causes of Action, any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity attaching to any prepetition and/or pre-Effective Date documents or communications relating to the Causes of Action shall be transferred to and shall vest in the Liquidation Trust. The Liquidation Trust's receipt of such privileges or immunities associated with the Causes of Action shall not operate as a waiver of those privileges or immunities possessed or retained by the Debtor, nor shall it operate to eliminate the rights of any co-defendant to any applicable joint privilege or immunity. The Liquidation Trust shall also be vested with the Debtor's rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004. The Liquidation Trust, however, shall not be considered a successor of the Debtor and shall not assume any obligations of the Debtor other than expressly provided for by the Plan and the Liquidation Trust Agreement.

Any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity held by the Committee shall be transferred to and shall vest in the Liquidation Trust. The Liquidation Trust shall have access to all discovery obtained by the Committee in the Chapter 11 Case, including discovery obtained pursuant to Bankruptcy Rule 2004.

- 32 -

10407306

Except as otherwise ordered by the Bankruptcy Court, the Trust Expenses on or after the Effective Date shall be paid in the ordinary course of business in accordance with the Liquidation Trust Agreement without further order of the Bankruptcy Court and without notice to any other party.

The Liquidation Trust shall file annual reports regarding the liquidation or other administration of property comprising the Liquidation Trust Assets, the distributions made by it and other matters required to be included in such report in accordance with the Liquidation Trust Agreement. In addition, the Liquidation Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

The Liquidation Trust Interests are not intended to constitute "securities." To the extent the Liquidation Trust Interests are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act or other applicable law. If the Liquidation Trustee determines, with the advice of counsel, that the Liquidation Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act, or other applicable law, then the Liquidation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and to file reports with the SEC to the extent required by applicable law.

The existence of the Liquidation Trust and the authority of the Liquidation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the date on which: (a) all material Liquidation Trust Assets are liquidated and/or monetized in accordance with the Plan; *provided*, *however,* for the avoidance of doubt, that the Liquidation Trustee shall not be required to pursue any Causes of Action or take any other action that the Liquidation Trustee determines, in his discretion, is not likely to yield sufficient additional proceeds to justify further pursuit or action; (b) the funds in the Liquidation Trust have been distributed in accordance with the Plan; and (c) the order closing the Chapter 11 Case is a Final Order.

To the extent that the terms of the Plan with respect to the Liquidation Trust are inconsistent with the terms set forth in the Liquidation Trust Agreement, then the terms of the Plan shall govern.

**This Plan shall be interpreted so as to afford, for the benefit of all Holders of Allowed Claims, the greatest opportunity for maximum recovery by the Liquidation Trustee on the Liquidation Trust Assets and proceeds thereof, Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and proceeds thereof, and rights in and proceeds of any D&O Liability Insurance Policies. The proceeds of Causes of Action (including, but not limited to, D&O Claims and Tort Claims) are material to the implementation of this Plan and the recoveries to Creditors**.

**H.      Liquidation Trustee**

*Appointment of the Liquidation Trustee*. The Liquidation Trustee shall be selected by the Committee, subject to the consent of AAM, such consent not to be unreasonable withheld, and appointed as of the date of the execution of the Liquidation Trust Agreement. The identity of the Liquidation Trustee shall be disclosed prior to the Confirmation Hearing as part of the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code. The Liquidation Trustee will be compensated by the Liquidation Trust, which compensation shall be disclosed in the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.

10407306

*Liquidation Trustee as the Representative of the Debtor's Estate.*  On the Effective Date, the Liquidation Trustee shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidation Trust Agreement and the Plan, including the right to: (1) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Liquidation Trust Agreement and the Plan; (2) administer the Liquidation Trust Assets, including prosecuting, settling, abandoning, or compromising any Causes of Action; and (3) employ and compensate professionals and other agents consistent with this **Article V.H** of the Plan.

For the avoidance of doubt, upon the occurrence of the Effective Date, the Liquidation Trustee shall automatically be granted, have, and be vested with exclusive standing and authority to: (i) bring and prosecute any Cause of Action (including, but not limited to, D&O Claims and Tort Claims) in a court of competent jurisdiction; and (ii) negotiate, settle, waive, or otherwise resolve any Causes of Action (including, but not limited to, D&O Claims and Tort Claims); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Causes of Action that seeks recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement.

For the further avoidance of doubt, upon the Effective Date, the Liquidation Trustee shall automatically be: (a) deemed a representative of the Debtor and the Estate with respect to all applicable Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and any related D&O Liability Insurance Policies; and (b) granted and have the right to control any and all privileges and protections on behalf of the Debtor, the Committee and the Estate with respect to all applicable Causes of Action (including, but not limited to, D&O Claims and Tort Claims).  Nothing in this Plan shall require the Liquidation Trustee to prosecute or pursue any Causes of Action.

*Powers of the Liquidation Trustee.*  The Liquidation Trustee shall be a representative of the Debtor's Estate and shall, subject to the terms of the Liquidation Trust Agreement, have the power to make all decisions with respect to the Liquidation Trust Assets, including prosecution, negotiation, waiver, and/or settlement of any Causes of Action (including, but not limited to, D&O Claims and Tort Claims); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Causes of Action asserted against other Entities that seeks recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement.  Unless otherwise provided in the Plan, the Confirmation Order or the Liquidation Trust Agreement, the duties and powers of the Liquidation Trustee shall include the following (without need of further Court approval):

(i)        To implement this Plan, including any other powers necessary or incidental thereto;

(ii)        To exercise all power and authority that may be exercised, to commence, pursue, abandon, and/or settle all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtor or the Committee prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, manager or trustee of the Debtor with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, managers and trustees, including consummating the Plan and all transfers thereunder on behalf of the Debtor;

- 34 -

10407306

(iii)    To wind-up the affairs of the Debtor to the extent necessary as expeditiously as reasonably possible, including by filing final cost reports and taking such other actions as are necessary after the Effective Date to bring about an orderly wind-down of the Debtor's operations;

(iv)    To take all actions as may be necessary or appropriate to pursue and consummate: (a) the transactions and obligations contemplated by the MTA and the MSA, or the asset purchase agreements attached thereto, (b) enforce the rights of the Debtor, the Committee, and the Liquidation Trustee (as representative of the Debtor and its Estate) pursuant to any Conforming Escrow Agreement, or (c) a Liquidation Transaction;

(v)    To maintain and use the Debtor's existing accounts and/or to close any such accounts and transfer all amounts therein to one or more accounts in, accordance with the Plan, or to invest some or all of the funds that would otherwise be deposited into such accounts in allowed investments under applicable non-bankruptcy law;

(vi)    To make distributions to Holders of Allowed Claims, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Debtor or the Liquidation Trust;

(vii)    To use, manage, sell, lease, license, abandon, convert to Cash, and/or otherwise dispose of the Liquidation Trust Assets for the purpose of making distributions, including distributions of Distributable Assets and Net Distributable Assets, and fully consummating the Plan;

(viii)    To take all steps necessary to terminate the corporate existence of the Debtor and to wind-up and close the Liquidation Trust;

(ix)    To prosecute objections to Claims, including Administrative Expense Claims, and compromise, settle, and/or litigate any such Claims (Disputed or otherwise); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement;

(x)    To investigate and prosecute any and all Causes of Action (including, but not limited to, D&O Claims and Tort Claims) and compromise, settle, waive, and/or litigate any Causes of Action (including, but not limited to, D&O Claims and Tort Claims); *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Causes of Action asserted against other Entities that seeks recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement;

(xi)    To prepare and file tax returns for the Debtor and the Liquidation Trust to the extent required by law;

(xii)    To employ and compensate any and all such professionals and agents as the Liquidation Trustee, in his or her sole discretion, deems reasonably necessary to perform his or her duties under the Plan, without further order of the Bankruptcy Court;

(xiii)    To satisfy and pay all Trust Expenses;

10407306

(xiv)    To obtain, renew, replace, or supplement insurance policies and to pay any associated obligations, including the payment of associated premiums, and to exercise any other power or authority necessary or incidental thereto;

(xv)    To participate in or File any post-Effective Date motion(s) to amend or modify this Plan or the Liquidation Trust Agreement, or any appeal(s) of the Confirmation Order;

(xvi)    To participate in or File any action to enforce or interpret this Plan;

(xvii)    To bind the Liquidation Trust; and

(xviii) To take all other actions not inconsistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable in connection with the administration or implementation of the Plan, including filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Case.

*Liquidation Trustee as Successor in Interest to the Debtor and Committee*.  Upon the Effective Date, the Liquidation Trustee is the successor in interest to the Debtor and the Committee, and thus, as of and after the Effective Date, to the extent this Plan requires an action by the Debtor or the Committee, the action shall be taken by the Liquidation Trustee on behalf of the Debtor and the Committee, as applicable.

## I.    **Liquidation Trust Beneficiaries**

Each of the Liquidation Trust Beneficiaries shall be recorded and set forth in a schedule maintained by the Liquidation Trustee expressly for such purpose based upon its Allowed Claim.

The ownership of Liquidation Trust Interests shall not entitle any Liquidation Trust Beneficiary to any title in or to the Liquidation Trust Assets, any right to call for a partition or division of such Liquidation Trust Assets, or any right to require an accounting, except as may be specifically provided herein.  Ownership of a Liquidation Trust Interest (a) shall be noted in the books and records of the Liquidation Trust and (b) shall not be evidenced by any certificate, note, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee.

As set forth in more detail in the Liquidation Trust Agreement, the Liquidation Trust Interests may not be transferred, sold, assigned, hypothecated, or pledged, except as they may be assigned or transferred by will, intestate succession, or operation of law.

## J.    **Liquidation Trust Oversight Committee**

The Liquidation Trust Oversight Committee shall be comprised of not less than three (3) members, who shall be designated by the Committee, *provided*, *however*, that AAM shall have the right to serve as one of the members of the Liquidation Trust Oversight Committee.  The identity of the members of the Liquidation Trust Oversight Committee shall be disclosed as part of the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.

10407306

The Liquidation Trust Oversight Committee shall oversee the Liquidation Trust and consult with the Liquidation Trustee, as set forth herein and in the Liquidation Trust Agreement.[2] The Liquidation Trustee shall report to the Liquidation Trust Oversight Committee from time to time regarding the performance of his or her duties. The members of the Liquidation Trust Oversight Committee shall be reimbursed for all reasonable expenses incurred in the performance of their duties under the Plan and the Liquidation Trust Agreement.

The duties and powers of the Liquidation Trust Oversight Committee shall terminate upon final resolution of the Liquidation Trust Assets and distribution of the proceeds thereof or as otherwise provided in the Liquidation Trust Agreement.

**K.**     **Source of Funding / Net Distributable Assets**

The source of all distributions and payments under the Plan will be the Distributable Assets and the proceeds thereof. Distributions to the Holders of Liquidation Trust Interests will be funded entirely from Liquidation Trust Assets consisting of Net Distributable Assets.

The Liquidation Trustee, in his or her discretion, shall have the authority to allocate and reallocate Liquidation Trust Assets (including Cash, and including with respect to any reserves provided for under this Plan) as necessary to effectuate the Plan without further notice to any party, action, approval, or order of the Bankruptcy Court, to the extent such allocation or reallocation would not be inconsistent with the terms of this Plan; *provided*, *however*, that the Liquidation Trustee may, but is not required to, apply to the Bankruptcy Court on notice to the parties included on the Post-Effective Date Notice List prior to making any such allocation or reallocation. In the event that the Liquidation Trustee determines that effectuation of the Plan or an equitable distribution to Holders of Allowed Claims requires allocation or reallocation of Liquidation Trust Assets in a manner that would otherwise be inconsistent with any term of this Plan (including for the purposes of distribution under the Plan), the Liquidation Trustee shall have the authority to make such allocation or reallocation with approval of the Bankruptcy Court upon application to the Bankruptcy Court on notice to parties included on the Post-Effective Date Notice List.

**L.**     **Distribution of Liquidation Trust Interests**

Upon the Effective Date, Liquidation Trust Interests shall be distributed to Holders of Allowed General Unsecured Claims.

Certain Liquidation Trust Interests shall be reserved for Holders of Disputed General Unsecured Claims and held by the Liquidation Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Disputed General Unsecured Claims.

**M.**     **Distribution of Net Distributable Assets**

Plan Distributions, if any, to be made to Liquidation Trust Beneficiaries shall be made solely from the Liquidation Trust Assets.

---

[2] For the avoidance of doubt, the Liquidation Trust Oversight Committee's powers shall be limited to supervision and consultation, without any consent or direction rights.

10407306

If the distribution to be received by the Holder of an Allowed General Unsecured Claim would be less than fifty dollars ($50.00) on any distribution date or in the aggregate, at the discretion of the Liquidation Trustee, no such payment will be made to such Holder.

**N.    Disputed Claims Reserve**

The Liquidation Trustee shall maintain a Disputed Claims Reserve pending Allowance or Disallowance of Disputed Claims, and shall withhold such Cash from distributions to Holders of Allowed General Unsecured Claims. In the event that Disputed Claims are pending at the time of a Plan Distribution under the Plan, the Liquidation Trustee shall set aside in the Dispute Claims Reserve sufficient Cash such that the aggregate Cash held in the Disputed Claims Reserve is equal to the amount of Cash that would have been distributed to the Holders of the Disputed Claims on such distribution date(s) had the Disputed Claims been Allowed at the time of such Plan Distribution(s) made to the Holders of Allowed Claims in the same Class or of the same priority as the Disputed Claims *except* that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be Allowed or otherwise determines the amount which would constitute a sufficient reserve for a Disputed Claim (which estimations and determinations may be requested by the Liquidation Trustee), such amount as determined by the Bankruptcy Court shall be used to determine the amount of Cash reserved as to such Claim. If a Disputed Claim ultimately becomes an Allowed Claim, the amount of Cash reserved for that Disputed Claim shall be distributed on the earlier of (a) the next distribution date following the date when the Disputed Claim becomes an Allowed Claim, or (b) sixty (60) days after such Disputed Claim becomes an Allowed Claim. Any reserved Cash not ultimately distributed to the Holder of a Disputed Claim because the Disputed Claim is Disallowed, in whole or in part, or Allowed in a reduced amount, shall become property of the Liquidation Trust and shall be distributed in accordance with the terms of the Plan. Upon the Final Distribution Date, the Liquidation Trustee shall distribute any Cash remaining in the Disputed Claims Reserve to Holders of Allowed General Unsecured Claims in accordance with the allocations set forth in this Plan and the Liquidation Trust Agreement.

**O.    Objections to Claims**

From and after the Effective Date, the Liquidation Trustee shall have the exclusive authority, right, and standing (but shall not be obligated) to: (i) object to and contest the allowance of any and all Claims; (ii) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed, without further notice to any party, or action, approval, or order of the Bankruptcy Court; and (iii) litigate to final resolution objections to Claims; *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement. The failure of any party to object to any Claim in the Chapter 11 Case prior to the occurrence of the Effective Date shall be without prejudice to the right of the Liquidation Trustee to contest, object to, or otherwise defend against such Claim.

**No Plan Distribution shall be made to a Holder of a Claim Disputed or otherwise, unless and until such Claim is or becomes an Allowed Claim.**

All objections to Claims shall be Filed with the Bankruptcy Court, and served upon the Holders of such Claims, on or before the one hundred twentieth (120th) day after the Effective Date. The time period for filing objections to Claims shall automatically renew for successive periods of one hundred

- 38 -

twenty (120) days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Bankruptcy Court upon motion of the Liquidation Trustee or a Holder of a Claim.

Until such time as an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Plan Distributions. The Holder of an unliquidated Claim, contingent Claim, or unliquidated or contingent portion of a Claim will be entitled to a Plan Distribution only when and if such unliquidated or contingent Claim becomes an Allowed Claim.

**P.      Surcharge Under Section 506(c) of the Bankruptcy Code**

All rights of Holders of Secured Claims under this Plan are subject to the rights of the Debtor, the Committee and/or the Liquidation Trustee to surcharge the applicable Collateral pursuant to section 506(c) of the Bankruptcy Code, which rights are expressly preserved.

**Q.      Disallowance of Untimely Claims**

Any Claim for which a Bar Date has been established that is not timely Filed or otherwise asserted as directed on or before the applicable Bar Date shall: (a) be forever Disallowed, barred, and expunged in its entirety; and (b) not be enforceable against the Debtor, the Estate, the Liquidation Trust, and/or the Liquidation Trustee, all without further notice to any party, or action, approval, or order of the Bankruptcy Court, irrespective of whether such Claim was Filed prior to, on, or following the Confirmation Date. Except as otherwise agreed by the Liquidation Trustee, any and all Holders of Claims for which a Bar Date has been established that is not timely Filed or otherwise asserted as directed on or before the applicable Bar Date shall not be treated as Creditors for purposes of voting and distribution pursuant to Bankruptcy Rule 3003(c)(2).

**R.      Claims Paid or Payable by Third Parties and Insured Claims**

**1.      Claims Paid by Third Parties**

A Claim shall be reduced in full, and such Claim shall be Disallowed without a Claim objection having to be Filed and without further notice to any party, or action, approval, or order of the Bankruptcy Court, to the extent that the Holder of such Claim received payment in full on account of such Claim from a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee. To the extent a Holder of a Claim receives a Plan Distribution on account of such Claim and receives payment from a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee on account of such Claim, such Holder shall, within two weeks of such Holder's receipt thereof, repay the distribution to the Debtor or the Liquidation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim determined as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtor or the Liquidation Trustee, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each day after the two-week grace period specified above until the amount is repaid.

**2.      Claims Payable by Third Parties**

10407306

No Plan Distribution shall be made on account of an Allowed Claim that is payable by a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee, including pursuant to any insurance policy, until the Holder of such Allowed Claim has exhausted all remedies with respect to such third party or insurance policy. To the extent that one or more of the Debtor's insurers or another third party agrees to satisfy in full or in part an Allowed Claim, then immediately upon such agreement, the applicable portion of such Claim may be Disallowed and expunged without a Claim objection having to be Filed and without further notice to any party, or action, approval or order of the Bankruptcy Court. Unless and until the Holder of a Claim that is payable by a party that is not the Debtor, the Estate, the Liquidation Trust, or the Liquidation Trustee exhausts all remedies with respect to such third party of insurance policy, such Claim shall be deemed estimated at zero dollars ($0) for all purposes of the Plan and Liquidation Trust Agreement without further notice to any party, or action, approval or order of the Bankruptcy Court.

3.  **Special Issues Regarding Insured Claims**

Under the terms of the Debtor's various insurance policies, the Debtor may owe a deductible amount or self-insured retention obligation on account of Insured Claims. After the Effective Date of the Plan (unless an applicable order modifying the automatic stay has been entered at an earlier date), Holders of Insured Claims shall be enjoined by the injunctions established by the Confirmation Order and this Plan from commencing or continuing any action to assert or collect any alleged Claims relating to any deductible or self-insured retention obligation against the Debtor, its Estate, and the Liquidation Trust.

The Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtor's insurers under their policies, and the Debtor's insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtor, the existence, primacy, and/or scope of available coverage under any alleged applicable policy. The Plan shall not operate as a waiver of any other Claims that the Debtor's insurers have asserted or may assert in any Proof of Claim, or the rights and defenses of the Debtor, the Estate, or the Liquidation Trust to such Claims.

S.  **Preservation of Causes of Action**

Except as provided in **Articles X and XI** hereof, nothing contained in this Plan shall be deemed a waiver or relinquishment of any claims or Causes of Action of the Debtor or the Estate that are not settled with respect to Allowed Claims or specifically waived or relinquished by this Plan, which shall vest in the Liquidation Trust (collectively, along with the proceeds thereof, the "Retained Causes of Action"). The Retained Causes of Action preserved hereunder include, without limitation, the following claims, rights, or other causes of action:

(i)     claims and Causes of Action (including, but not limited to, Tort Claims and D&O Claims), against the Excluded Parties and/or any other party not expressly released or enjoined under this Plan;

(ii)    Avoidance Actions;

(iii)   relating to pending litigation, including, without limitation, the suits, administrative proceedings, executions, garnishments, and attachments listed in the Debtor's Schedules;

- 40 -

10407306

(iv)    against vendors, suppliers of goods or services (including attorneys, accountants, consultants, or other professional service providers), utilities, contract counterparties, and other parties for, including but not limited to: (A) services rendered; (B) over- and under-payments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, setoff, or recoupment; (C) failure to fully perform or to condition performance on additional requirements under contracts with the Debtor; (D) wrongful or improper termination, suspension of services, or supply of goods, or failure to meet other contractual or regulatory obligation; (E) indemnification and/or warranty claims; or (F) turnover Causes of Action arising under §§ 542 or 543;

(v)     against health plans, payors, and other related providers;

(vi)    related to third-party non-Debtor's violations of antitrust, unfair competition, or similar laws;

(vii)   against landlords or lessors, including, without limitation, for erroneous charges, overpayments, returns of security deposits, indemnification, or for environmental claims;

(viii)  arising against current or former tenants or lessees, including, without limitation, for non-payment of rent, damages, and holdover proceedings;

(ix)    arising from damage to the Debtor's property;

(x)     relating to claims, rights, or other Causes of Action the Debtor may have to interplead third parties in actions commenced against the Debtor;

(xi)    for collection of a debt or other amount owed to the Debtor;

(xii)   against insurance carriers, reinsurance carriers, underwriters, surety bond issuers or other related or similar parties relating to coverage, indemnity, contribution, reimbursement, or other matters; and

(xiii)  arising under or relating to the MSA or the MTA, the asset purchase agreements attached thereto, or any Conforming Escrow Agreement, including, but not limited to, enforcement of such agreements and/or any breaches of such agreements.

**Except as otherwise expressly provided in the Plan, any and all claims and Causes of Action of the Debtor and the Estate are preserved under the Plan.**

**T.      Release of Liens, Claims, and Security Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, security interests, mortgages, deeds of trust, or other interests in or against the property of the Estate will be fully released, terminated, extinguished, and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification, or other action by any Entity or any director, stockholder, securityholder, manager, member, trustee or partner (or

- 41 -

10407306

board thereof) of any Entity. Any Entity holding such Liens or interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Liquidation Trustee such instruments of termination, release, satisfaction, and/or assignment (in recordable form) as may be reasonably requested by the Liquidation Trustee. Nothing contained in this Plan shall revive, preserve, or transfer any Claims or Liens that have been released pursuant to any prior order of the Bankruptcy Court.

**U.**     **Cancellation of Securities, Certificates and Instruments**

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, notes, instruments, debentures, certificates, Securities, and other documents evidencing any prepetition Claim against the Debtor and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, inoperative and of no force or effect.

**V.**     **Dissolution of Debtor; Final Decree**

At any time following the Effective Date, the Liquidation Trustee, on behalf of the Debtor, shall be authorized to File a motion for the entry of a final decree closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code. Upon entry of such final decree, the Debtor shall be deemed dissolved without further order of the Bankruptcy Court or action by the Liquidation Trustee, including the filing of any documents with the secretary of state or any other government agency.

**W.**     **Treatment of Vacant Classes**

Any Claim in a Class that is considered vacant under **Article III.C** of this Plan shall receive no Plan Distribution.

<div align="center">

**ARTICLE VI.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

</div>

**A.**     **Assumption and Rejection of Executory Contracts and Unexpired Leases**

On or before the Confirmation Date, Buyer may provide by written notice to the Debtor and the Committee a list of Designated Contracts to be assumed by the Debtor and assigned to the Buyer upon the Effective Date, subject to the Buyer's payment, prior to the Effective Date, to the counterparty to such Designated Contract of the Cure Costs.

Any Designated Contract with respect to which Buyer has not paid the respective Cure Costs directly to its counterparty shall be deemed rejected on the Effective Date.

Buyer's payment of Cure Costs shall not be credited towards, or otherwise reduce or alter in any way, AAM's obligation to pay the Liquidation Trustee the AAM Cash Contribution.

The Debtor shall have no obligation to assume or assign any executory contract or unexpired lease that is not a Designated Contract.

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, *except* for those Executory Contracts and Unexpired Leases that:

1. have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto;

2. have been assumed by order of the Bankruptcy Court;

3. are the subject of a motion to assume or motion to reject pending on the Effective Date;

4. are identified as a Designated Contract in the Plan Supplement, and, with respect to such Designated Contract, Buyer has paid, prior to the Effective Date, to the counterparty to such Designated Contract the Cure Costs thereof; or

5. are explicitly assumed pursuant to the terms of this Plan.

Notwithstanding the foregoing, in the event that (a) the MTA has been terminated and (b) the Committee or the Liquidation Trustee determines in good faith that one or more Executory Contracts or Unexpired Leases of the Debtor are critical to preserving the viability of pursuing and consummating an alternative reopening transaction post-Effective Date, the Committee or the Liquidation Trustee, as applicable, shall have the authority to designate such Executory Contracts or Unexpired Leases as "Reopening Optionality Agreements," in which case the Committee or the Liquidation Trustee, as applicable, shall have until sixty (60) days after the Effective Date to determine whether to assume or reject such Reopening Optionality Agreements.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtor's assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

For the avoidance of doubt, the Debtor shall not assume any prepetition indemnity obligations to their directors, officers, trustees and managers.

**B.** **Claims on Account of the Rejection of Executory Contracts or Unexpired Leases**

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the Effective Date or such other date set by Final Order. The Debtor, the Committee or the Liquidation Trust will provide notice of such rejection (which may be made in the same notice as the occurrence of the Effective Date) and specify the appropriate deadline for the filing of such Proof of Claim.

Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped, and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtor, the Estate, the Liquidation Trustee, or the Liquidation Trust, and the Debtor, the Estate, the Liquidation Trustee, the

- 43 -

Liquidation Trust and all of their property will be forever discharged from any and all indebtedness and liability with respect to such Claim, unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan, without further notice to any party, or action, approval, or order of the Bankruptcy Court.  All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in **Article XI.C** of the Plan.  Notwithstanding the foregoing, to the extent that any such Claim is or was subject to a previously established Bar Date in the Chapter 11 Case, such previously established Bar Date shall be deemed operative and will not be deemed extended by virtue of this **Article VI.B**.  All claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

**C.**     **Preservation and Vesting of D&O Liability Insurance Policies**

Notwithstanding anything to the contrary in the Plan, as of the Effective Date, all rights of the Debtor and its Estate in the D&O Liability Insurance Policies are fully and expressly preserved under the Plan.  Confirmation and effectiveness of the Plan will not discharge, impair, or otherwise modify any rights of the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or any other beneficiary under the D&O Liability Insurance Policies.  On the Effective Date, the D&O Liability Insurance Policies and the proceeds thereof (subject in all cases to the terms of the D&O Liability Insurance Policies or the rights of any other beneficiaries therein) shall automatically vest in the Liquidation Trust and shall be a Liquidation Trust Asset.  For the avoidance of doubt, the D&O Liability Insurance Policies are not Executory Contracts and are neither assumed nor rejected under the Plan.

The Confirmation Order shall constitute a determination that no default by the Debtor exists with respect to any of the D&O Liability Insurance Policies and that nothing in any prior order, any prior agreements, or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the D&O Liability Insurance Policies or any coverage thereunder with regard to any Causes of Action (including, but not limited to, the D&O Claims and Tort Claims), or claims, interests, or rights of the Debtor, the Estate, the Liquidation Trustee, or the Liquidation Trust. The Plan shall be liberally construed to protect the interests of all Creditors in all Causes of Action (including, but not limited to, D&O Claims and Tort Claims), and to limit any Claims against the Estate.

Nothing in this Plan shall diminish, impair, or otherwise affect (i) rights of the Debtor's current or former directors, officers, trustees, managers, or any other Person covered under the D&O Liability Insurance Policies, or (ii) payments from the proceeds or the enforceability of any D&O Liability Insurance Policies that may cover (a) claims by the Debtor, or (b) claims against the Debtor or covered Persons thereunder.

<center>

**ARTICLE VII.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

</center>

**A.**     **Dates of Distributions**

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim), or as soon as reasonably practicable thereafter, each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  In the event that any payment or act under the Plan is required to

<center>- 44 -</center>

be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions provided in the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all debts of the Debtor shall be deemed fixed and adjusted pursuant to the Plan and the Debtor and the Liquidation Trust shall have no liability on account of any Claims except as set forth in the Plan and in the Confirmation Order. All payments and all distributions made by the Liquidation Trustee or the Distribution Agent under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the Debtor.

**B.       Distribution Agent**

Except as provided herein, all Plan Distributions shall be made by the Liquidation Trustee or the Distribution Agent. The Liquidation Trustee or the Distribution Agent shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

The Liquidation Trustee and the Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform their duties under the Plan; (b) make all distributions contemplated hereby; (c) employ transfer agents and registrars to represent them with respect to their responsibilities; and (d) exercise such other powers as may be vested in the Liquidation Trustee and the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Liquidation Trustee and the Distribution Agent to be necessary and proper to implement the provisions hereof.

**C.       Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Liquidation Trustee, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**D.       Rounding of Payments**

Whenever payment or distribution of a fraction of a dollar of value whether in the form of Cash or Securities would otherwise be called for, the actual payment or distribution may, at the discretion of the Liquidation Trustee, reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one-half of one dollar and a rounding up of such fraction to the nearest whole dollar if the amount is one-half or more of one dollar.

**E.       Distributions on Account of Claims Allowed After the Effective Date**

Except as otherwise agreed by the Holder of a particular Claim or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order. Plan Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the

- 45 -

consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**F.      General Distribution Procedures**

The Liquidation Trustee or the Distribution Agent shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise. All Cash and other property held by the Liquidation Trustee for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

**G.      Address for Delivery of Distributions**

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth on any Proofs of Claim Filed by such Holders (to the extent such Proofs of Claim are Filed in the Chapter 11 Case), (2) at the addresses set forth in any written notices of address change delivered to the Liquidation Trustee, or (3) at the addresses in the Debtor's or the Liquidation Trust's books and records.

**H.      Undeliverable Distributions, Unclaimed Property, and De Minimis Distribution**

If the distribution to the Holder of any Allowed Claim is returned to the Debtor or the Liquidation Trust as undeliverable, no further distribution shall be made to such Holder, and the Liquidation Trustee shall have no obligation to make any further distribution to the Holder, unless and until the Liquidation Trustee is notified in writing of such Holder's then-current address. The Liquidation Trustee shall have no independent obligation to check or identify a current mailing address for any Holder of an Allowed Claim. Subject to the terms of this Plan, undeliverable distributions shall remain in the possession of the Liquidation Trustee until such time as a distribution becomes deliverable.

Any Entity that fails to claim any Cash or Securities within ninety (90) days from the date upon which a Plan Distribution is first made to such Entity shall forfeit all rights to any distribution under the Plan. Entities that fail to claim Cash or Securities under the Plan shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or against any Holder of an Allowed Claim to whom Plan Distributions are made by the Liquidation Trustee. Undeliverable Cash or Securities shall not be entitled to any interest, dividends, or other accruals of any kind. Any check that is not cashed or otherwise deposited within ninety (90) days after the check's date shall be deemed an undeliverable distribution under this Plan.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable distribution within ninety (90) days after the first attempted delivery shall have its Claim for such undeliverable distribution expunged and shall be forever barred from asserting any such Claim against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, or their respective property. In such cases, any Cash held for distribution on account of such Claims shall be property of the Liquidation Trust, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan. Nothing contained in the Plan shall require the Liquidation Trustee to attempt to locate any Holder of an Allowed Claim. Similarly, checks or drafts issued pursuant to this Plan to Persons holding Allowed Claims and not presented for payment within ninety (90) days following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter. Any Claim in respect of such distribution shall be

discharged and forever barred from assertion against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, and their property. Any distribution which is deemed nonnegotiable shall re-vest in the Liquidation Trust and be available for distribution consistent with the Plan.

If the distribution to be received by the Holder of an Allowed General Unsecured Claim would be less than fifty dollars ($50.00) on any distribution date or in the aggregate, at the discretion of the Liquidation Trustee, no such payment will be made to such Holder.

**I.     Distributions to be Applied First to Administrative and Priority Claims**

To the extent any Holder of an Allowed Claim receives any Plan Distribution(s) from the Liquidation Trustee or Liquidation Trust on account of Claims with more than one level of priority, such distribution(s) shall be applied by the recipient first to satisfy any Allowed Administrative Expense Claims, Allowed Priority Tax Claims, or Other Priority Claims of the recipient against the Debtor which are entitled to priority under Bankruptcy Code sections 503 or 507 (in accordance with their respective priority under the Bankruptcy Code) and, only after all such priority Claims are fully satisfied, to any Allowed Claims not entitled to such priority.

**J.     Distribution Record Date**

Except as otherwise provided in a Final Order of the Bankruptcy Court or as otherwise stipulated by the Debtor or Liquidation Trustee, as applicable, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date.  The Debtor and Liquidation Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any distribution with respect to any Claim, the Debtor and the Liquidation Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the Proof of Claim Filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are known to the Debtor or the Liquidation Trustee, as applicable, as of the Distribution Record Date.

**K.     Distribution Cap**

In no event shall any Holder of an Allowed Claim receive Plan Distribution(s) of an aggregate value exceeding one hundred percent (100%) of the amount of such Holder's Allowed Claim.

**L.     Withholding Taxes**

In connection with the Plan, to the extent applicable, the Liquidation Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Plan Distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Liquidation Trustee shall be entitled to deduct any U.S. or non-U.S. federal, state, or local withholding taxes from any payments made with respect to Allowed Claims, as appropriate. In the case of a non-Cash distribution that is subject to withholding, the Liquidation Trustee may withhold an appropriate portion of such distributed property and sell such withheld property to generate Cash necessary to pay over the withholding tax.  A Holder of an Allowed Claim entitled to receive a Plan Distribution shall not receive any Plan Distribution unless such Holder has provided to

- 47 -

the Liquidation Trustee such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Liquidation Trustee to comply with applicable tax reporting and withholding laws (including an IRS Form W-9 or (if the Holder is a non-U.S. Person) an appropriate IRS Form W-8 (unless such Person is exempt from information reporting requirements under the Tax Code)) and so notifies the Liquidation Trustee.  If such Holder does not provide such taxpayer identification number and such other information and certification within the time and in the manner set forth in the Liquidation Trust Agreement, such Holder will forfeit its interest in the Liquidation Trust and shall not receive any Plan Distribution.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  In connection with any Plan Distribution, the Liquidation Trustee may take whatever actions are necessary to comply with applicable U.S. federal, state, local and non-U.S. tax withholding obligations.

**Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution; and (b) no Plan Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Liquidation Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution.  Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under this Plan.**

## M.     Setoffs and Recoupment

The Liquidation Trustee may, to the extent permitted under applicable law, setoff or recoup against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights, and Causes of Action of any nature that the Debtor or the Liquidation Trustee may hold against the Holder of such Allowed Claim that are not otherwise waived, released, or compromised in accordance with the Plan; *provided, however*, that neither such a setoff, recoupment, nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trustee of any such claims, rights, and Causes of Action that the Debtor or the Liquidation Trustee possesses against such Holder; *provided*, *further* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trustee of any such Claims, rights, or Causes of Action that the Debtor, the Estate, or the Liquidation Trustee may possess against such Holder. Notwithstanding anything to the contrary in this section, the Plan or the Confirmation Order, the Liquidation Trustee waives any rights to setoff or recoupment against SAMC.  Any Holder of an Allowed Claim subject to such setoff or recoupment reserves the right to challenge any such setoff or recoupment in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

## N.     Distributions Free and Clear

Except as otherwise provided herein, any distributions under the Plan shall be free and clear of any Liens, Claims, and encumbrances, and no Entity, including the Debtor, shall have any interest (legal, beneficial, or otherwise) in any property of any of the Estate distributed pursuant to the Plan.

10407306

**O.**     **Lost, Stolen, Mutilated, or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to the Liquidation Trustee or the Distribution Agent: (x) evidence reasonably satisfactory to the Liquidation Trustee or the Distribution Agent of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be required by the Liquidation Trustee or the Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim. Upon compliance with this **Article VII.O** of the Plan as determined by the Debtor or the Liquidation Trustee by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to the Liquidation Trustee and the Distribution Agent.

<div align="center">

**ARTICLE VIII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

</div>

**A.**     **Disputed Claims**

The Liquidation Trustee may, in his or her discretion, File with the Bankruptcy Court an objection to the allowance of any Claim or any other appropriate motion or adversary proceeding with respect thereto. All such objections, and any objection to the allowance of any Claim Filed by the Debtor or the Committee and not resolved prior to the Effective Date, may be litigated to Final Order by the Liquidation Trustee. The Liquidation Trustee may compromise, settle, withdraw, or resolve any objection to any Claim without further order of the Bankruptcy Court. Unless otherwise provided in the Plan, the Confirmation Order, or the Liquidation Trust Agreement, the Liquidation Trustee is authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan; *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement. Under no circumstances will any distributions be made on account of Disallowed Claims. The Liquidation Trustee is under no obligation to object to the allowance of any Claim. Further, to the extent that there are no Assets available to make a distribution to the Holder of such Claim or such Class of Claims under the Plan or the cost of any objection is reasonably believed by the Liquidation Trustee to exceed the anticipated distribution on such Claim or such Class of Claims, then the Liquidation Trustee is under no obligation to object to the allowance of such Claim or Class of Claims.

**B.**     **Procedures Regarding Disputed Claims**

Notwithstanding any provision in the Plan to the contrary, except as otherwise agreed by the Liquidation Trustee, in the Liquidation Trustee's sole discretion, no partial payments and no partial distributions will be made with respect to a Disputed Claim, even if a portion of the Claim is not Disputed, or any Claim that has otherwise not been Allowed until such disputes are resolved by Final Order or a settlement or stipulation between the Debtor or Liquidation Trustee and the Holder of the Claim, or some portion of the Claim, has been Allowed. In the event there is a Disputed Claim or

<div align="center">- 49 -</div>

Claim that has otherwise not been Allowed requiring adjudication and resolution, the Liquidation Trustee shall establish adequate reserves for potential payment of such Claim in accordance with **Article V.N** of the Plan. To the extent a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan, without any interest to be paid on account of the time period during which such Claim was a Disputed Claim.  No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

**C.    Allowance of Claims**

Following the date on which a Disputed Claim becomes an Allowed Claim after the Initial Distribution Date, the Liquidation Trustee shall pay directly to the Holder of such Allowed Claim, as soon as reasonably practicable, the amount provided for under the Plan, as applicable, and in accordance therewith.

1.    Allowance of Claims

Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Liquidation Trustee will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor or its Estate had with respect to any Claim immediately before the Effective Date, except with respect to any Claim deemed Allowed under the Plan or by orders of the Bankruptcy Court.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim will become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim.

2.    Prosecution of Objections to Claims

From and after the Effective Date, unless otherwise provided in the Plan, the Confirmation Order, or the Liquidation Trust Agreement, the Liquidation Trustee will have the sole authority to File objections to Claims and settle, compromise, withdraw, or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in an Unimpaired Class or otherwise.  From and after the Effective Date, the Liquidation Trustee may settle or compromise any Disputed Claim without any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement.   The Liquidation Trustee will have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Estimation

The Liquidation Trustee may, at any time and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously Filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim,

10407306

including during the pendency of any appeal relating to such objection. Any order of the Bankruptcy Court that estimates a Disputed Claim pursuant to the Plan shall irrevocably constitute and be a conclusive and final determination of the Allowed amount of such Claim or the maximum allowable amount of such Claim, if any, as set forth by the Bankruptcy Court. Accordingly, the Holder of a Disputed Claim that is estimated by the Bankruptcy Court pursuant to the Plan will not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or actual determination of the allowed amount of such Disputed Claim or otherwise, and the Holder of such Claim shall not have recourse to the Liquidation Trustee in the event the allowed amount of the Claim of such Holder is at any time later determined to exceed the estimated maximum allowable amount. The rights and objections of all parties are reserved in connection with any such estimation proceeding.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.**      **Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of **Article IX.B** of the Plan:

a.      The Plan and Plan Supplement and all schedules, documents, supplements, and Exhibits to the Plan will have been Filed by the Plan Proponent;

b.      The Confirmation Order, in form and substance reasonably acceptable to the Plan Proponent shall have been entered and shall be in full force and effect, and shall not have been reversed, stayed, modified, or vacated on appeal;

c.      The Confirmation Order shall contain a finding that the Plan constitutes a "Conforming Plan" within the meaning ascribed to such term in the MTA.

d.      The Liquidation Trustee shall have accepted, in writing, the terms of the Liquidation Trustee's service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

e.      The Liquidation Trust shall have been established;

f.      If the MTA has not been validly terminated, AAM shall have deposited into the Escrow Account an amount sufficient such that the Initial Contribution held in the Escrow Account as of the Effective Date is no less than $15 million;

g.      Unless the MTA was terminated on or before the Plan Confirmation Deadline, the Confirmation Order shall provide that the AAM Contribution Lien was valid and perfected as of the date immediately following the Plan Confirmation Deadline; *provided*, that the AAM Contribution Lien shall be subordinated to any Lien granted to HCAI in connection with any loan of DHLP Funds; and

h.      With respect to all other documents and agreements necessary to implement the Plan: (1) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such

10407306

documents and agreements shall have been tendered for delivery to the required parties and have been approved by any required parties and, to the extent required, filed with and approved by the applicable authorities in the relevant jurisdiction; and (3) such documents and agreements shall have been effected or executed.

**B.    Waiver of Conditions**

The conditions to Consummation of the Plan set forth in this **Article IX** may be waived by Plan Proponent, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.  The failure of the Plan Proponent to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

**C.    Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**D.    Effect of Non-Occurrence of Conditions to Consummation**

If the Consummation of the Plan does not occur, upon the Plan Proponent's filing of a notice on the docket of the Bankruptcy Court, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will:  (a) constitute a waiver or release of any claims by or Claims against the Debtor; (b) prejudice in any manner the rights of the Debtor, the Committee, any Holders, or any other Entity; (c) constitute an allowance of any Claim; or (d) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, the Committee, any Holders, or any other Entity in any respect.

**ARTICLE X.**
**LIMITATION ON LIABILITY AND RELATED PROVISIONS**

**A.    General**

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification, and treatment of all Allowed Claims and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, unless specifically provided otherwise in this Plan or the Liquidation Trust Agreement, after the Effective Date the Liquidation Trustee may, in his or her sole and absolute discretion, (1) compromise and settle Claims against the Debtor, and (2) compromise and settle Causes of Action against other Entities; *provided*, *however*, that so long as the MTA has not been terminated, settlement of any Disputed Claim asserted against the Debtor's Estate where the amount in dispute exceeds $100,000 and settlement of any Causes of Action asserted against other Entities that seeks recovery of more than $500,000 shall require either: (i) AAM's consent, which consent may not be unreasonably withheld, or (ii) an order of the Bankruptcy Court authorizing such settlement.

- 52 -

10407306

**B.     Release of SAMC**

Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, for good and valuable consideration, on and after the Effective Date, SAMC is expressly, unconditionally, generally and individually and collectively released, acquitted and discharged by the Debtor and its Estate from any and all actions, claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims or claims for recharacterization, subordination, or avoidance of the SAMC Secured Obligations, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and SAMC, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by SAMC on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

**C.     Limitation on Liability of Liquidation Trustee**

The Liquidation Trustee, the Liquidation Trust Oversight Committee, and the individual members of the Liquidation Trust Oversight Committee will not be liable for any act they may do or omit to do as in such capacity under the Plan and the Liquidation Trust Agreement, as applicable, while acting in good faith and in the exercise of their reasonable business judgment; nor will any of them be liable in any event except for gross negligence, willful misconduct, or fraud as determined by a Final Order of a court of competent jurisdiction. Subject to the discretion of the Liquidation Trustee, and as memorialized in the Liquidation Trust Agreement, an applicable engagement letter, or other written agreement, the foregoing limitation on liability shall also apply to one or more (or all) Persons or Entities employed by any such party (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such party in the fulfillment of their respective duties hereunder or under the Liquidation Trust Agreement. Also, the Liquidation Trustee, the Liquidation Trust Oversight Committee (and its individual members), and (subject to the discretion of the Liquidation Trustee, and as memorialized in the Liquidation Trust Agreement, an applicable engagement letter, or other written agreement) one or more (or all) Persons or Entities employed by such parties (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such a party shall be entitled to indemnification out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being employed by such party, or for performing any functions incidental to such service.

10407306

**D.**     <u>Reserved</u>

<div align="center">

**ARTICLE XI.**
**<u>EXCULPATION AND INJUNCTION</u>**

</div>

**A.**     <u>No Discharge</u>

Nothing contained in this Plan shall be deemed to constitute a discharge of the Debtor under section 1141(d)(3) of the Bankruptcy Code. However, no Holder of a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Plan other than Assets required to be distributed to that Holder pursuant to the Plan. As of the Confirmation Date, all Persons and Entities are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

**B.**     <u>Exculpation</u>

Except as otherwise specifically provided in the Plan, the Exculpated Parties will neither have nor incur any liability to any Entity or Person for any claims or Causes of Action arising between the Petition Date and the Effective Date for any act taken or omitted to be taken in connection with, or related to the Chapter 11 Case, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, pursuing, or effecting the Consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, pursuing confirmation of the Plan, or soliciting votes on the Plan and the Exculpated Parties shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; *provided, further*, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action, or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

**C.**     <u>Injunction</u>

**Except as otherwise provided in the Plan, from and after the Effective Date, all Entities and Persons who have held, hold, or may hold Claims against the Debtor or its Estate, are permanently enjoined from taking any action in furtherance of such Claim and/or any other cause of action released and/or discharged under the Plan, including, without limitation, the following actions: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets with respect to any such Claim and/or other cause of action, or taking any act to recover such Claim outside of the claims allowance procedures discussed in this Plan, the Bankruptcy Code and Bankruptcy Rules; (ii) creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien, security interest or encumbrance of any kind against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets on account of any such Claim and/or other cause of action; (iii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means,**

<div align="center">- 54 -</div>

whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or other cause of action; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due from or to the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets, or against the property or interests in property of the Debtor, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee or the Liquidation Trust Assets, on account of any such Claim and/or other cause of action; *provided, however,* that any rights of recoupment asserted by the California Department of Health Care Services against the Debtor or the Estate and any rights and defenses of the Debtor, the Estate, the Liquidation Trust and the Liquidation Trustee with respect thereto are fully preserved; *provided, further*, that solely with respect to the Debtor, the Debtor's property, and the Debtor's Estate, the foregoing injunction shall remain in effect only until both (a) the Chapter 11 Case has been closed and (b) all assets of the Debtor's Estate and the Liquidation Trust Assets have been fully administered; *provided further, however*, that such injunction shall be revived and/or remain in effect, as applicable, to the extent that the Chapter 11 Case is reopened for any reason, until the Chapter 11 Case is closed and the other conditions for termination of the injunction set forth in this paragraph have been satisfied. By accepting Plan Distributions, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions in the Plan. Such injunctions shall extend for the benefit of the Liquidation Trustee, any successors of the Debtor, and to property and interests in property subject to this Plan. All injunctions or stays provided for in the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date. The injunction in this paragraph shall apply only to actions against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidation Trust, the Liquidation Trustee, and/or the Liquidation Trust Assets.

From and after the Effective Date, to the extent of the Exculpations and limitations of liability granted in this Plan, all Persons and Entities shall be permanently enjoined from commencing or continuing in any manner against the Exculpated Parties or parties whose liability is limited (collectively, the "<u>Protected Parties</u>"), and their respective assets and properties, as the case may be, any suit, action, or other proceeding on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest, or remedy with respect to which such Protected Parties are exculpated or with respect to which such Protected Parties' liability is otherwise limited.

<div align="center">

**ARTICLE XII.**
**<u>BINDING NATURE OF PLAN</u>**

</div>

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR AND EACH AND EVERY SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASE, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

10407306

# ARTICLE XIII.
## RETENTION OF JURISDICTION

**A.**    **Retention of Jurisdiction**

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, to the maximum extent permitted by applicable law, retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Liquidation Trust, and this Plan, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, unsecured, or subordinated status of any Claim, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance, priority and secured status of any Claim;

2.    except as may otherwise be limited herein, recover all Assets of the Debtor and property of the Debtor's Estate, wherever located;

3.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Liquidation Trustee shall pay professionals in the ordinary course of business for any work expressly authorized by the Liquidation Trustee after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

4.    resolve any matters related to the MSA and the MTA, the asset purchase agreements attached thereto, any Conforming Escrow Agreement and/or any Liquidation Transaction;

5.    resolve any matters related to: (a) the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to this Plan after the Effective Date; (b) any potential contractual obligation arising under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether or not a contract or lease is or was executory or expired;

6.    enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

7.    resolve any issues related to any matters adjudicated in the Chapter 11 Case;

8.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and/or 1146 of the Bankruptcy Code;

9.    ensure that Plan Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising under or related to Plan Distributions;

10407306

10. decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other Causes of Action (including, but not limited to D&O Claims and Tort Claims), or matters that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any motions or applications involving the Debtor that may be pending on the Effective Date or instituted by the Liquidation Trustee after the Effective Date, *provided* that the Liquidation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions, enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures, and other agreements or documents adopted in connection with this Plan, the Plan Supplement, or the Disclosure Statement;

11. resolve any cases, controversies, suits, disputes, or Causes of Action (including, but not limited to, D&O Claims and Tort Claims), that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's or Person's obligations incurred in connection with this Plan;

12. issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the Consummation or enforcement of this Plan, except as otherwise provided in this Plan;

13. enforce the terms and conditions of this Plan, the Confirmation Order, and the Liquidation Trust Agreement;

14. resolve any cases, controversies, suits, or disputes with respect to the Exculpation, limitations of liability, and other provisions contained in **Articles X and XI** hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such exculpations, injunctions, and other provisions;

15. enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, limitations of liability, indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed), including, without limitation, resolving any dispute, case, controversy, or suit with respect to whether or not the Debtor is bankrupt or out of business pursuant to any statute including, without limitation, pursuant to 42 CFR 433.312(b) and/or 42 CFR 433.318(e);

16. approve any settlements or compromises entered into by the Liquidation Trustee;

17. resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, any applicable Bar Date, the hearing on the approval of the Disclosure Statement, the hearing on the confirmation of the Plan, or for any other purpose;

18. enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked, or vacated;

19. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order, including the Confirmation Order;

20. adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code, including without limitation, hearing and determining all disputes involving or relating to any liability arising out of the termination of employment or the termination of any

10407306

employee or retirement benefit program, regardless of whether or not such termination occurred prior to the Effective Date;

      21.     resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document adopted or created in connection with this Plan or the Disclosure Statement and to enter and implement such orders as may be necessary or appropriate to execute, implement or consummate any of the foregoing;

      22.     enter a(n) order(s) or decree(s) concluding or closing the Chapter 11 Case;

      23.     issue any order necessary to administer the Estate or the Liquidation Trust; and

      24.     hear and determine any other matter not inconsistent with the Bankruptcy Code.

## B.    Consent to Jurisdiction

All Creditors who have Filed or otherwise asserted Claims in the Chapter 11 Case shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for purposes of the Causes of Action.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

## A.    Dissolution of the Committee

On the Effective Date, except as provided in the immediately following sentence, the Committee shall dissolve automatically and all members thereof shall be released and discharged from all rights, duties, and responsibilities arising from, or related to, the Chapter 11 Case.  After the Effective Date, the Committee shall continue in existence for the sole purposes of: (i) filing, objecting to, and/or prosecuting fee applications Filed in the Chapter 11 Case; and (ii) prosecuting any pending motions or applications to which the Committee is a party.

## B.    Payment of Statutory Fees

Prior to the Effective Date, the Debtor shall pay, in full in Cash, any fees due and owing pursuant to 28 U.S.C. § 1930 (including interest under 31 U.S.C. § 3717, if applicable) (the "Statutory Fees") on or before the Effective Date.  Notwithstanding anything to the contrary in the Plan, Statutory Fees are not subject to an allowance procedure under 11 U.S.C. § 503(b), nor is the United States Trustee required to file a request for payment of such fees.  On and after the Effective Date, the Liquidation Trustee shall pay the applicable Statutory Fees that accrue after the Effective Date (or remain unpaid from the period prior to the Effective Date) until the earlier of (1) a final decree closing the Chapter 11 Case or (2) conversion or dismissal of the Chapter 11 Case.  The Debtor or the Liquidation Trustee shall pay any Statutory Fees due and payable with respect to any disbursements made to the Liquidation Trust on the Effective Date.  The Liquidation Trust shall not owe any Statutory Fees with respect to any disbursements made from the Liquidation Trust until, and only to the extent that, the total disbursements made from the Liquidation Trust exceed the total amount of disbursements made by the Debtor to the Liquidation Trust.

10407306

The Debtor shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the United States Trustee. After the Effective Date, the Liquidation Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the United States Trustee. The United States Trustee shall not be required to File any Administrative Expense Claim in the case.

## C.    **Modification of Plan**

Effective as of the date hereof and subject to the limitations and rights contained in **Article IX** of this Plan: (a) the Plan Proponent reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan (including the Plan Supplement and any Exhibits to the Plan) prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Plan Proponent, after notice and hearing and entry of an order of the Bankruptcy Court, may amend or modify this Plan, (including the Plan Supplement and any Exhibits to the Plan), in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan (including the Plan Supplement and any Exhibits to the Plan) in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan (including the Plan Supplement and any Exhibits to the Plan), as altered, amended or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of such Claim of such Holder.

Objections with respect to any amendments or modifications to the Plan (as and to the extent permitted hereby) Filed after the deadline for objections to the Plan, as set by the Bankruptcy Court, may be brought at the Confirmation Hearing. The Plan, and any modification or supplement thereof, may be inspected in the Office of the Clerk or its designee during normal business hours. The documents annexed to the Disclosure Statement or contained in any modification or supplement to the Plan or the Disclosure Statement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

## D.    **Adjustment of Claims Register**

The clerk of the Bankruptcy Court or other authorized party is authorized and directed to adjust the Claims Register at the direction of the Liquidation Trustee to reflect the disallowance, reduction, reclassification, modification, or other resolution of any Claim pursuant to the terms of this Plan (whether or not documented in a Final Order, written agreement or otherwise) or any Final Order of the Bankruptcy Court without further notice to any party, or action, approval, or order of the Bankruptcy Court.

## E.    **Extension of Time**

For cause shown, any deadlines herein that are applicable to the Debtor, the Committee, the Liquidation Trustee or the Liquidation Trust and which are not otherwise extendable, may be extended by the Bankruptcy Court.

## F.    **Post-Effective Date Notice List**

Because certain Persons may not desire to continue to receive notices after the Effective Date, this Plan provides for the establishment of a Post-Effective Date Notice List. Persons on such Post-

Effective Date Notice List will be given certain notices and in some cases an opportunity to object to certain matters under this Plan (as described herein). Any Person desiring to be included on the Post-Effective Date Notice List must (i) File a request to be included on the Post-Effective Date Notice List and include thereon its name, contact person, address, telephone number, and email address, within thirty (30) days after the Effective Date, and (ii) concurrently serve a copy of its request to be included on the Post-Effective Date Notice List on the Liquidation Trustee and the Liquidation Trustee's counsel. Those Parties set forth in **Article XIV.N** of the Plan shall be included on the Post-Effective Date Notice List without the necessity of filing a request.

**G.     Revocation of Plan**

The Plan Proponent reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If the Plan Proponent revokes or withdraws this Plan, or if confirmation of this Plan or Consummation of this Plan does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Person or Entity.

**H.     Entire Agreement**

Except as otherwise addressed in any prior order of the Bankruptcy Court in the Chapter 11 Case or described herein, the Plan (and any supplements or amendments hereto) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects (other than the Liquidation Trust Agreement), all of which have become merged and integrated into the Plan.

**I.     Closing of Chapter 11 Case**

The Liquidation Trustee shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

**J.     Successors and Assigns**

From and after the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtor, the Liquidation Trustee, and their respective successors and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

**K.     Reservation of Rights**

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Plan Proponent or any other Entity with respect to this Plan shall be or shall be deemed to be an admission

- 60 -

or waiver of any rights of: (1) the Plan Proponent with respect to the Holders of Claims or other Entity; or (2) any Holder of a Claim or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Plan Proponent of any contract or lease on any Exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, will constitute an admission by the Plan Proponent that any such contract or lease is or is not an Executory Contract or Unexpired Lease or that the Debtor, the Estate or the Liquidation Trust has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtor or the Liquidation Trustee under any Executory Contract or non-Executory Contract or Unexpired Lease or expired lease.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor or the Liquidation Trustee under any Executory Contract or non-Executory Contract or Unexpired Lease or expired lease.

**L.    Further Assurances**

The Plan Proponent, the Liquidation Trustee, all Holders of Claims receiving Plan Distributions, and all other Entities shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order. On or before the Effective Date, the Plan Proponent shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**M.    Nonseverability**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the Plan Proponent's consent, and (3) nonseverable and mutually dependent.

**N.    Service of Documents**

All notices, requests, and demands to or upon the Plan Proponent to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email transmission, when received, addressed as follows:

10407306

Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105
Telephone:  415.344.7000
Facsimile:  415.344.7050
Attn:   Paul S. Jasper (PJasper@perkinscoie.com)

Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:  973.643.7000
Facsimile:  973.643.6500
Attn:   Andrew H. Sherman (ASherman@sillscummis.com)
        Boris I. Mankovetskiy (BMankovetskiy@sillscummis.com)

and the Liquidation Trustee at contact information to be provided.

**O.**     **Filing of Additional Documents**

On or before the Effective Date, the Plan Proponent may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**P.**     **Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code**

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.

**Q.**     **Incorporation of Other Documents**

All Exhibits to the Plan and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in **Article I.B**) and be fully enforceable as if stated in full herein.

**R.**     **Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, or other federal law is applicable, or to the extent that an Exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of California, without giving effect to the principles of conflicts of law of such jurisdiction.

10407306

**S.      Tax Reporting and Compliance**

The Debtor, the Committee and the Liquidation Trustee are hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

**T.      Controlling Document**

In the event of an inconsistency between this Plan, on the one hand, and the Plan Supplement, any other of the Plan Documents, or any other instrument or document created or executed pursuant to this Plan, on the other hand, or between this Plan and the Disclosure Statement, this Plan shall control.  The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern.  For the avoidance of doubt, nothing in the Plan or the Confirmation Order shall be construed to amend, modify, or abrogate any prior order of the Bankruptcy Court in the Chapter 11 Case.

**U.      Confirmation Request**

The Plan Proponent requests that the Bankruptcy Court confirm the Plan and that the Bankruptcy Court do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding any rejection of the Plan by an Impaired Class.

10407306

Dated:  February 27, 2024

By:    /s/ Paul S. Jasper
_____

Paul S. Jasper (CA Bar No. 200138)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105
Telephone:    415.344.7000
Facsimile:    415.344.7050
Email:        PJasper@perkinscoie.com

Andrew H. Sherman (admitted *pro hac vice*)
Boris I. Mankovetskiy (admitted *pro hac vice*)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:    973.643.7000
Facsimile:    973.643.6500
Email:        ASherman@sillscummis.com
              BMankovetskiy@sillscummis.com

*Co-Counsel to the Official Committee of Unsecured Creditors*

/s/ Bruce D. Adams
_____
Bruce D. Adams
*Co-Chair of Committee*

/s/ Ali Rashidian
_____
Dr. Ali Rashidian
*Co-Chair of Committee*

**[Signature Page to Chapter 11 Plan of Liquidation]**

10407306

**Exhibit A**

Excluded Parties

[TBD]

**Exhibit B**

Liquidation Trust Agreement


[TBD]

10407306

## EXHIBIT B

**PLAN RECOVERY ANALYSIS**

10408334

**Madera Community Hospital**
**Plan Recovery Analysis**
**As of 12/31/2023; Effective Date: 5/1/24**

| Chapter 11 - AAM Transaction | Adjusted Amount | |  |
|---|---|---|---|
| | **High** | **Low** | |
| Receipts | | | |
| Cash as of 12/31/23 | $ 9,507,236 | $ 9,507,236 | [a] |
| Funding from County | 1,000,000 | 1,000,000 | [b] |
| QAF Managed Care Receipts | 12,324,844 | 11,092,360 | [c] |
| FEMA Receipts | 5,869,855 | 3,913,237 | [d] |
| Sammons Note | 200,000 | 150,000 | |
| Equipment | - | - | |
| Real Estate | - | - | |
| CHI Shares | - | - | |
| Refunds from prior Medicare cost reports | 180,000 | 90,000 | [e] |
| Causes of Action/Recovery from Litigation | TBD | TBD | |
| Total Receipts | 29,081,935 | 25,752,832 | |
| | | | |
| Disbursements | | | |
| Accrued and Unpaid Expenses | 2,500,000 | 2,750,000 | |
| Record Storage including Medical Records | - | - | |
| Liquidating Expenses | 1,500,000 | 2,000,000 | [f] |
| Professional Fees | 1,381,521 | 1,726,901 | [g] |
| Contingency | 1,000,000 | 1,500,000 | |
| Total Cash Disbursements Post Closing Operations | 6,381,521 | 7,976,901 | |
| Liquidating Trust Funding | 750,000 | 1,050,000 | |
| US Trustee Fees | 232,655 | 206,023 | |
| Total Disbursements | 7,364,176 | 9,232,924 | |
| | | | |
| **Net Available for Creditors** | **21,717,759** | **16,519,909** | |
| | | | |
| Secured Debt | | | |
| St. Agnes Medical Center | 2,239,115 | 2,239,115 | [h] |
| New England Sheet Metal | 1,238,275 | 1,238,275 | |
| Less: Finished Equipment Not Received | - | - | |
| Net New England Sheet Metal | 1,238,275 | 1,238,275 | |
| Patterson Drywall | 18,572 | 18,572 | |
| Equipment Leases | - | - | |
| Less: Leased Equipment Value | - | - | |
| Net Equipment Leases | - | - | |
| Total Secured Debt | 3,495,962 | 3,495,962 | |
| | | | |
| **Remaining Distributable Value** | **18,221,797** | **13,023,947** | |
| | | | |
| Schedule E Priority | 1,017,780 | 1,418,862 | [i] |
| Self-Insured Health Plan (Up to Cap Amount) | 125,000 | 125,000 | |
| | | | |
| **Available for General Unsecured Claims** | **17,079,017** | **11,480,085** | |
| | | | |
| GUC Claims | | | |
| Schedule F for Priority Wage Cap Above Cap | 1,029,500 | 1,057,683 | [i] |
| Schedule F | 8,852,919 | 22,030,237 | [j] |
| Self-Insured Health Plan (Above Cap) | - | 440,000 | |
| Equipment Lease Deficiency Claim | - | - | |
| Rejection Damage Claims | 4,500,000 | 4,500,000 | [k] |
| Total GUC Claims | 14,382,418 | 28,027,920 | |
| | | | |
| **Surplus/(Shortfall) Over Claims - Prior AAM Liquidation Trust Funding** | **$ 2,696,599** | **$ (16,547,835)** | |
| *Recovery Percentage - Prior to AAM Liquidation Trust Funding* | *100.0%* | *41.0%* | |
| | | | |
| AAM Cash Contribution (Up to shortfall of GUC Claims) | - | 16,547,835 | |
| | | | |
| **Surplus/(Shortfall) Over Claims** | **$ 2,696,599** | **$ -** | |
| *Recovery Percentage* | *100.0%* | *100.0%* | |

[a] December 2023 MOR cash balance
[b] County approved funding until 3/23/24, not to exceed $1M.
[c] Debtors expect receipt of payment in March and October 2024.
[d] Timing of receipt for FEMA awards are uncertain.
[e] Debtors expect receipt of $1.1M less fees of approximately $200K. Due to uncertainty in amount and timing,
    high and low are discounted by 80% and 90%.
[f] Assumes average monthly disbursements of $375,000 - $500,000 per month based on cash collateral budget
    filed on 1/3/24.
[g] Includes approximately $131,000 in accrued, unpaid expenses with $250,000 - $312,500 monthly professional
    fees.
[h] Includes $4.5M adequate protection payment from QAF and $726K proceeds from sale of almond farm that was
    directly remitted to St. Agnes.
[i] High recovery includes only scheduled amount while low recovery includes the larger of scheduled or filed
    amount plus any claims filed that were not scheduled.
[j] High recovery includes only scheduled amount while low recovery includes the larger of scheduled or filed
    amount plus any claims filed that were not scheduled. Low includes WARN claims of $2M.
[k] Rejection damage claims number is an estimate and is subject to change.

**Madera Community Hospital**
**Plan Recovery Analysis**
**As of 12/31/2023; Effective Date: 5/1/24**

| Chapter 11 | Adjusted Amount | | |
|---|---|---|---|
| | High | Low | |
| Receipts | | | |
| Cash as of 12/31/23 | $ 9,507,236 | $ 9,507,236 | [a] |
| Funding from County | 1,000,000 | 1,000,000 | [b] |
| QAF Managed Care Receipts | 12,324,844 | 11,092,360 | [c] |
| FEMA Receipts | 5,869,855 | 3,913,237 | [d] |
| Sammons Note | 200,000 | 150,000 | |
| Equipment | 800,000 | 400,000 | [e] |
| Real Estate | 15,000,000 | 9,500,000 | |
| CHI Shares | 80,000 | 80,000 | |
| Refunds from prior Medicare cost reports | 180,000 | 90,000 | [f] |
| Causes of Action/Recovery from Litigation | TBD | TBD | |
| Total Receipts | 44,961,935 | 35,732,832 | |
| | | | |
| Disbursements | | | |
| Accrued and Unpaid Expenses | 2,500,000 | 2,750,000 | |
| Record Storage including Medical Records | 500,000 | 600,000 | |
| Liquidating Expenses | 1,500,000 | 2,000,000 | [g] |
| Professional Fees | 1,381,521 | 1,726,901 | [h] |
| Contingency | 1,000,000 | 1,500,000 | |
| Total Cash Disbursements Post Closing Operations | 6,881,521 | 8,576,901 | |
| Liquidating Trust Funding | 750,000 | 1,050,000 | |
| US Trustee Fees | 359,695 | 285,863 | |
| Total Disbursements | 7,991,216 | 9,912,764 | |
| | | | |
| **Net Available for Creditors** | **36,970,719** | **25,820,069** | |
| | | | |
| Secured Debt | | | |
| St. Agnes Medical Center | 2,239,115 | 2,239,115 | [i] |
| New England Sheet Metal | 1,238,275 | 1,238,275 | |
| Less: Finished Equipment Not Received | (600,000) | (600,000) | |
| Net New England Sheet Metal | 638,275 | 638,275 | |
| Patterson Drywall | 18,572 | 18,572 | |
| Equipment Leases | 2,728,270 | 2,728,270 | |
| Less: Leased Equipment Value | (1,364,135) | (1,364,135) | |
| Net Equipment Leases | 1,364,135 | 1,364,135 | |
| Total Secured Debt | 4,260,097 | 4,260,097 | |
| | | | |
| **Remaining Distributable Value** | **32,710,622** | **21,559,972** | |
| Schedule E Priority | 1,017,780 | 1,418,862 | [j] |
| Self-Insured Health Plan (Up to Cap Amount) | 125,000 | 125,000 | |
| **Available for General Unsecured Claims** | **31,567,842** | **20,016,110** | |
| GUC Claims | | | |
| Schedule F for Priority Wage Cap Above Cap | 1,029,500 | 1,057,683 | [j] |
| Schedule F | 8,852,919 | 22,030,237 | [k] |
| Self-Insured Health Plan (Above Cap) | - | 440,000 | |
| Equipment Lease Deficiency Claim | 1,364,135 | 1,364,135 | |
| Rejection Damage Claims | 4,500,000 | 4,500,000 | [l] |
| Total GUC Claims | 15,746,553 | 29,392,055 | |
| | | | |
| **Surplus/(Shortfall) Over Claims** | $ 15,821,289 | $ (9,375,945) | |
| *Recovery Percentage* | *100.0%* | *68.1%* | |

[a] December 2023 MOR cash balance

[b] County approved funding until 3/23/24, not to exceed $1M.

[c] Debtors expect receipt of payment in March and October 2024.

[d] Timing of receipt for FEMA awards are uncertain.

[e] Equipment value is based on estimated value based on status and state of equipment.

[f] Debtors expect receipt of $1.1M less fees of approximately $200K. Due to uncertainty in amount and timing, high and low are discounted by 80% and 90%.

[g] Assumes average monthly disbursements of $375,000 - $500,000 per month based on cash collateral budget filed on 1/3/24.

[h] Includes approximately $131,000 in accrued, unpaid expenses with $250,000 - $312,500 monthly professional fees.

[i] Includes $4.5M adequate protection payment from QAF and $726K proceeds from sale of almond farm that was directly remitted to St. Agnes.

[j] High recovery includes only scheduled amount while low recovery includes the larger of scheduled or filed amount plus any claims filed that were not scheduled.

[k] High recovery includes only scheduled amount while low recovery includes the larger of scheduled or filed amount plus any claims filed that were not scheduled. Low includes WARN claims of $2M.

[l] Rejection damage claims number is an estimate and is subject to change.

Case 23-10457

**Madera Community Hospital**
**Plan Recovery Analysis**
**As of 12/31/2023; Effective Date: 5/1/24**

| Chapter 7 | | Adjusted Amount | | |
|---|---|---|---|---|
| | | High | Low | |
| **Receipts** | | | | |
| Cash as of 12/31/23 | $ | 9,507,236 | $ 9,507,236 | [a] |
| Funding from County | | 1,000,000 | 1,000,000 | [b] |
| QAF Managed Care Receipts | | 11,092,360 | 9,859,875 | [c] |
| FEMA Receipts | | 4,891,546 | 2,934,928 | [d] |
| Sammons Note | | 200,000 | 150,000 | |
| Equipment | | 800,000 | 400,000 | [e] |
| Real Estate | | 11,370,000 | 7,500,000 | [f] |
| CHI Shares | | 80,000 | 80,000 | |
| Refunds from prior Medicare cost reports | | 180,000 | 90,000 | [g] |
| Causes of Action/Recovery from Litigation | | TBD | TBD | |
| Total Receipts | | 39,121,142 | 31,522,039 | |
| | | | | |
| **Disbursements** | | | | |
| Accrued and Unpaid Expenses | | 2,500,000 | 2,750,000 | |
| Record Storage including Medical Records | | 500,000 | 600,000 | |
| Liquidating Expenses | | 1,500,000 | 2,000,000 | [h] |
| Professional Fees | | 1,381,521 | 1,726,901 | [i] |
| Contingency | | 1,000,000 | 1,500,000 | |
| Total Cash Disbursements Post Closing Operations | | 6,881,521 | 8,576,901 | |
| Chapter 7 Trustee Statutory Fees (3%) | | 937,549 | 667,144 | |
| Chapter 7 Trustee Professional Fees | | 500,000 | 750,000 | [j] |
| US Trustee Fees | | 312,969 | 252,176 | |
| Total Disbursements | | 8,632,039 | 10,246,221 | |
| | | | | |
| **Net Available for Creditors** | | **30,489,103** | **21,275,817** | |
| | | | | |
| **Secured Debt** | | | | |
| St. Agnes Medical Center | | 2,239,115 | 2,239,115 | [k] |
| New England Sheet Metal | | 1,238,275 | 1,238,275 | |
| Less: Finished Equipment Not Received | | (600,000) | (600,000) | |
| Net New England Sheet Metal | | 638,275 | 638,275 | |
| Patterson Drywall | | 18,572 | 18,572 | |
| Equipment Leases | | 2,728,270 | 2,728,270 | |
| Less: Leased Equipment Value | | (1,364,135) | (1,364,135) | |
| Net Equipment Leases | | 1,364,135 | 1,364,135 | |
| Total Secured Debt | | 4,260,097 | 4,260,097 | |
| | | | | |
| **Remaining Distributable Value** | | **26,229,006** | **17,015,720** | |
| | | | | |
| Schedule E Priority | | 1,017,780 | 1,418,862 | [l] |
| Self-Insured Health Plan (Up to Cap Amount) | | 125,000 | 125,000 | |
| | | | | |
| **Available for General Unsecured Claims** | | **25,086,227** | **15,471,859** | |
| | | | | |
| GUC Claims | | | | |
| Schedule F for Priority Wage Cap Above Cap | | 1,029,500 | 1,057,683 | [l] |
| Schedule F | | 8,852,919 | 22,030,237 | [m] |
| Self-Insured Health Plan (Above Cap) | | - | 440,000 | |
| Equipment Lease Deficiency Claim | | 1,364,135 | 1,364,135 | |
| Rejection Damage Claims | | 4,500,000 | 4,500,000 | [n] |
| Total GUC Claims | | 15,746,553 | 29,392,055 | |
| | | | | |
| **Surplus/(Shortfall) Over Claims** | | $ 9,339,673 | $ (13,920,196) | |
| *Recovery Percentage* | | *100.0%* | *52.6%* | |

[a] December 2023 MOR cash balance
[b] County approved funding until 3/23/24, not to exceed $1M.
[c] Debtors expect receipt of payment in March and October 2024. Estimated receipt lower in Ch. 7 due as trustee is more likely to settle for a lower amount to bring funds into the estate.
[d] Timing of receipt for FEMA awards are uncertain. Estimated receipt lower in Ch. 7 due as trustee is more likely to settle for a lower amount to bring funds into the estate.
[e] Equipment value is based on estimated value based on status and state of equipment.
[f] Est. recovery lower compared to Ch. 11 because it is likely Ch. 7 trustee will settle quicker to bring funds into estate.
[g] Debtors expect receipt of $1.1M less fees of approximately $200K. Due to uncertainty in amount and timing, high and low are discounted by 80% and 90%.
[h] Assumes average monthly disbursements of $375,000 - $500,000 per month based on cash collateral budget filed on 1/3/24.
[i] Includes approximately $131,000 in accrued, unpaid expenses with $250,000 - $312,500 monthly professional fees.
[j] Estimate based on Ch. 7 trustee and FA having to get up to speed with no institutional knowledge.
[k] Includes $4.5M adequate protection payment from QAF and $726K proceeds from sale of farmland that went directly to St. Agnes.
[l] High recovery includes only scheduled amount while low recovery includes the larger of scheduled or filed amount plus any claims filed that were not scheduled.
[m] High recovery includes only scheduled amount while low recovery includes the larger of scheduled or filed amount plus any claims filed that were not scheduled. Low includes WARN claims of $2M.
[n] Rejection damage claims number is an estimate and is subject to change.