Patience Milrod #77466
985 North Van Ness Avenue
Fresno, California 93728
Telephone: (559) 246-7239
Email: pm@patiencemilrod.com

Attorney for Madera Coalition for Community Justice

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>MADERA COMMUNITY HOSPITAL,<br><br>   Debtor in Possession.<br><br>Tax ID#:  23-6429117<br>Address:  1250 E. Almond Avenue<br>          Madera, California 93637 | Case No.:  23-10457<br><br>Chapter 11<br><br>DCN:  PSJ-025<br><br>**EXHIBITS TO SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MADERA COALITION FOR COMMUNITY JUSTICE'S OBJECTIONS TO CONFIRMATION OF SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION AND PLAN SUPPLEMENT PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>Hearing Date:   April 16, 2024<br>Time:           9:30 a.m.<br>Place:          2500 Tulare Street<br>                Courtroom 13<br>                Fresno, California  93721<br>Judge:  Hon. René Lastreto II |

# Exhibits to MCCJ's
# SUPPLEMENTAL Request for Judicial Notice

**MCCJ Supplemental Request for Judicial Notice**

**10.      Notice of State Tax Lien for $134,961.00, recorded July 19, 2022 by the San Joaquin County Recorder,** at the request of the State of California Employment Development Department, against Gurpreet Singh, for tax period 04/01/2019 to 09/30/2020; as certified by the Director of the Employment Development Department

RECORDING REQUESTED BY:
**STATE OF CALIFORNIA**
EMPLOYMENT DEVELOPMENT DEPARTMENT
1-888-745-3886

**WHEN RECORDED MAIL TO:**
**STATE OF CALIFORNIA**
**EMPLOYMENT DEVELOPMENT DEPARTMENT**
**LIEN GROUP, MIC 92G**
**PO BOX 826880**
**SACRAMENTO, CA 94280-0001**

Doc #:   2022-087370
07/19/2022 07:32:28 AM
Page 1 of 1    Fee: $0.00
Steve J. Bestolarides
San Joaquin County Recorder
Paid By:

## NOTICE OF STATE TAX LIEN
(Filed pursuant to Section 7171 of the Government Code)

GURPREET SINGH                                          XXX-XX-8680

2750 N LIVERMORE AVE
LIVERMORE CA 94551-9537                                 **SAN JOAQUIN**

Letter ID. L0202457232                     Certificate No. G002719848

| TAX PERIOD | TAX | PENALTY | INTEREST | TOTAL |
|---|---|---|---|---|
| 04/01/2019 to 09/30/2020 | $83,876.52 | $35,146.41 | $15,938.07 | $134,961.00 |

Interest calculated through 07/18/2022

The Director of the Employment Development Department hereby certifies the above is liable to the State of California for amounts due and required to be paid as determined under the provisions of the California Unemployment Insurance Code, the Revenue and Taxation Code, or both.

THE AMOUNT OF DELINQUENCY ABOVE SET FORTH SHALL BE A LIEN UPON ALL REAL OR PERSONAL PROPERTY AND RIGHTS TO SUCH PROPERTY, INCLUDING ALL AFTER-ACQUIRED PROPERTY AND RIGHTS TO PROPERTY BELONGING TO THE ABOVE NAMED.

Date: 07/18/2022
At Sacramento, California



The Director of the Employment Development Department has complied with all provisions of the California Unemployment Insurance Code in the computation and levy of the amount assessed and has caused this notice of lien to be issued by a duly authorized representative.

By _O. Dumanska_

**Authorized Representative**
This agency has adopted the use of a facsimile signature as affixed above.

DE 2181 Rev. 5 (7-12)

**MCCJ Supplemental Request for Judicial Notice**

**11.**      **Stanislaus County Treasurer – Tax Collector record of property tax delinquency in the amount of $43,218.26, for tax year 2019-2020.**

🔍 Quick Search    |    🛒 Cart **(0)($0.00)**

 **ATTENTION!** This is for historical purposes only and is not current data. Please select current roll year for current payment information.

📄 TAXES    ℹ️ ASSESSMENT INFO    ★ TAX CODE INFO

**ASMT**
136-039-003-000
**PARCEL**
136-039-003-000
**YEAR**
2019

## 1st Installment

**Paid Status**
LATE

**Delinq. Date**
12/10/2019

**Total Due**
$21,604.13

**Total Paid**
$0.00

**Balance**
$21,604.13

## 2nd Installment

**Paid Status**
LATE

**Delinq. Date**
4/10/2020

**Total Due**
$21,614.13

**Total Paid**

$0.00

**Balance**

$21,614.13

---

## Totals - 1st and 2nd Installments

**Total Due**

$43,218.26

**Total Paid**

$0.00

**Total Balance**

$43,218.26

## Quick Menu

—

    **SEARCH**                                                                                                     ›

    **CART**                                                                                                                             ›

    **COUNTY HOME**                                                                                              ›

## Last Search

—

---



Filed 04/04/24                    Case 23-10457                    Doc 1639



DONNA RILEY

Treasurer - Tax Collector

📍  1010 10th Street, Suite 2500, Modesto, CA 95354

📞  (209) 525-6388

✉  taxes@stancounty.com

---

© 2024 Megabyte Licensing Corporation. All Rights Reserved.

## MCCJ Supplemental Request for Judicial Notice

12.      Pleadings filed in the Stanislaus County Superior Court in ***Bank of the West v. JUSRAND, LLC, Gurpreet Singh, et al.*, Case No. CV-20-005206**

     A.      **Complaint for Breaches of Promissory Notes, Breaches of Guaranties**, Judicial Foreclosures, Claim and Delivery, Conversion, Appointment of a Limited Purpose Receiver, Monies Lent, Accounts Stated, and Fair Valuations, filed November 23, 2020.

WILLIAM J. SEXTON – SBN 164929
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Boulevard, 12ᵗʰ Floor
Encino, California 91436
Telephone: (818) 501-3800
Facsimile: (818) 501-2985

Attorneys for Plaintiff
BANK OF THE WEST

File No. 4489-20200350-WJS

Electronically Filed
11/23/2020 8:00 AM
Superior Court of California
County of Stanislaus
Clerk of the Court
By: Mouang Saechao, Deputy

$435 PAID

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF STANISLAUS

| | |
|---|---|
| BANK OF THE WEST,<br><br>             Plaintiff,<br><br>vs.<br><br>JUSRAND, LLC, a California limited liability company; GMRAND, LLC, a California limited liability company; SOUTHGATE HOLDINGS, LLC, a California limited liability company; CENTRAL VALLEY GASTROENTEROLOGY ASSOCIATES INC., a California corporation; GURPREET SINGH, an individual; and DOES 1-50, inclusive,<br><br>             Defendants. | CASE NO. CV-20-005206<br><br>**COMPLAINT FOR:**<br><br>**1)  Breach of Promissory Note #1**<br>**2)  Breach of Guaranty #1-A**<br>**3)  Breach of Guaranty #1-B**<br>**4)  Breach of Promissory Note #2**<br>**5)  Breach of Guaranty #2-A**<br>**6)  Breach of Guaranty #2-B**<br>**7)  Breach of Promissory Note #3**<br>**8)  Breach of Guaranty #3-A**<br>**9)  Judicial Foreclosure #1**<br>**10) Judicial Foreclosure #2**<br>**11) Claim and Delivery**<br>**12) Conversion**<br>**13) Appointment of a Limited Purpose Receiver**<br>**14) Money Lent #1**<br>**15) Account Stated #1**<br>**16) Fair Valuation #1**<br>**17) Money Lent #2**<br>**18) Account Stated #2**<br>**19) Fair Valuation #2**<br>**20) Money Lent #3**<br>**21) Account Stated #3**<br>**22) Fair Valuation #3**<br><br>**Unlimited Jurisdiction**<br>**(Demand Amount exceeds $4,705,099.75)** |

This case has been assigned to Judge <u>Speiller, Stacy</u>,
Dept. 22
Department <u>     </u>, for all purposes including Trial.

Plaintiff BANK OF THE WEST complains and alleges as follows:

## INTRODUCTION

1.      This case concerns three unpaid commercial loans, in the aggregate amount of more than $4,705,099.75, inclusive of unpaid principal, interest and fees, plus related security agreements in personal and real property, and personal guaranties.

## GENERAL ALLEGATIONS

2.      At all times mentioned herein, Plaintiff BANK OF THE WEST (hereafter "Plaintiff" and/or "BANK") was, and now is, a corporation duly organized and existing under and by virtue of the laws of the United States of America and at all times herein mentioned was and is duly licensed to conduct business in the State of California. BANK is exempt from the usury provisions of Article XV, Section 1, of the California Constitution.

3.      Plaintiff is informed and believes and thereon alleges that Defendant JUSRAND, LLC ("JUSRAND"), is, and at all times mentioned herein was, a limited liability company duly organized and existing under and by virtue of the laws of the State of California, with its principal place of business in the City of Modesto, County of Stanislaus, California.

4.      Plaintiff is informed and believes and thereon alleges that Defendant GMRAND, LLC ("GMRAND"), is, and at all times mentioned herein was, a limited liability company duly organized and existing under and by virtue of the laws of the State of California, with its principal place of business in the City of Modesto, County of Stanislaus, California.

5.      Plaintiff is informed and believes and thereon alleges that Defendant SOUTHGATE HOLDINGS, LLC ("SOUTHGATE HOLDINGS"), is, and at all times mentioned herein was, a limited liability company duly organized and existing under and by virtue of the laws of the State of California, with its principal place of business in the City of Modesto, County of Stanislaus, California.

6.      Plaintiff is informed and believes and thereon alleges that Defendant CENTRAL

VALLEY GASTROENTEROLOGY ASSOCIATES INC. ("CENTRAL VALLEY"), is, and at all times mentioned herein was, a corporation duly organized and existing under and by virtue of the laws of the State of California, with its principal place of business in the City of Turlock, County of Stanislaus, California.

7.      Plaintiff is informed and believes and thereon alleges that Defendant GURPREET SINGH ("SINGH") is, and at all times mentioned herein was, an individual residing and domiciled in Stanislaus County, State of California.  Plaintiff is informed and believes and thereon alleges that SINGH is a shareholder, director, officer, member, and/or control person of Defendants JUSRAND, GMRAND, SOUTHGATE HOLDINGS, and CENTRAL VALLEY.

8.      The true names and capacities of defendants DOES 1-50, inclusive, are unknown to Plaintiff at this time, who therefore sues said defendants by such fictitious names.  Plaintiff is informed and believes, and thereon alleges, that each defendant named as a DOE is responsible for each and every obligation hereinafter set forth.  Plaintiff will amend this complaint by inserting true names in lieu of the fictitious names, together with apt and proper charging words, when the true names and capacities are ascertained.  All references in this Complaint to defendants shall be deemed to include DOE defendants.

9.      Plaintiff is informed and believes, and thereon alleges, that each Defendant named in this Complaint, including DOES, was at all times herein mentioned, and now is, the agent, servant, subsidiary, partner, member, associate, representative or employee of each of the other Defendants, including DOES, and all of the things alleged to have been done by the defendants were done in the course and scope of agency, employment, service, subsidiary relationship, partnership, membership, association, or representative relationship, with knowledge and consent of their respective principals, employers, masters, parents, partners, members, associates or representatives.  Plaintiff is informed and believes, and thereon alleges, that each defendant named as a DOE is responsible for each and every obligation hereinafter set forth.

10.      The obligation sued upon herein was incurred and payable in the County of Stanislaus, State of California.

11.     Plaintiff alleges that the above-cited Judicial District has jurisdiction over this matter because, without limitation, the claim or controversy arose within the jurisdiction of this Court, and Defendants reside, do business in, or are otherwise connected with the Judicial District. The obligation sued upon is commercial in nature and is not subject to the provisions of Civil Code § 2984.4, nor Civil Code § 1812.10.

**FACTS COMMON TO ALL CLAIMS**

**The Central Valley Note and Security**

12.     On or about August 10, 2016, CENTRAL VALLEY signed a Promissory Note, in favor of BANK, evidencing a loan in principal sum of $311,382.74 ("Central Valley Note"). The Central Valley Note had a maturity date of August 10, 2021, at which time all money borrowed pursuant to the Central Valley Note was due and payable in full. A true and correct copy[1] of the Central Valley Note is attached hereto as Exhibit 1 and is incorporated by this reference.

13.     On or about August 10, 2016; that is, concurrently with the Central Valley Note, CENTRAL VALLEY signed a Business Loan Agreement with BANK concerning additional terms and conditions of the credit relationship between CENTRAL VALLEY and BANK ("Central Valley BLA"). A true and correct copy of the Central Valley BLA is attached hereto as Exhibit 2 and is incorporated by this reference.

14.     On or about August 10, 2016; that is, contemporaneously with the Central Valley Note, CENTRAL VALLEY signed a "Commercial Security Agreement" in favor of BANK, granting to BANK a security interest in essentially all personal property of CENTRAL VALLEY ("Central Valley CSA"). BANK later perfected its security interest by recording a UCC Financing Statement with the California Secretary of State. A true and correct copy of the Central Valley CSA is attached hereto as Exhibit 3 and is incorporated by this reference.

---

[1] Identifying information on all exhibits herein has been redacted to the extent required by California law.

15.     On or about August 10, 2016; that is, contemporaneously with the Central Valley Note, SINGH signed a Commercial Guaranty concerning all obligations of Central Valley owing to BANK ("Singh Central Valley Guaranty").  A true and correct copy of the Singh Central Valley Guaranty is attached hereto as Exhibit 4 and is incorporated by this reference.

**The GMRAND Note and Security**

16.     On or about March 15, 2017, GMRAND signed a Promissory Note, in favor of Bank, evidencing a loan in principal sum of $3,862,500.00 ("GMRAND Note").  The GMRAND Note had a maturity date of March 15, 2027, at which time all money borrowed pursuant to the GMRAND Note was due and payable in full.  A true and correct copy of the GMRAND Note is attached hereto as Exhibit 5 and is incorporated by this reference.

17.     On or about March 15, 2017; that is, concurrently with the GMRAND Note, GMRAND signed a Business Loan Agreement with BANK concerning additional terms and conditions of the credit relationship between GMRAND and Bank ("GMRAND BLA").  A true and correct copy of the GMRAND BLA is attached hereto as Exhibit 6 and is incorporated by this reference.

18.     On or about March 15, 2017; that is, contemporaneously with the GMRAND Note, GMRAND signed a Deed of Trust, granting to BANK a security interest in the real property commonly known as 5260 Pirrone Court, Salida, CA 95368, APN 136-039-003-000 ("the Salida Property"), as security for the GMRAND Note ("the GMRAND Deed of Trust").  BANK recorded the GMRAND Deed of Trust on March 22, 2017, in Stanislaus County.  On or about April 3, 2017, GMRAND signed a Deed of Trust Amendment ("the GMRAND Deed of Trust Amendment").  BANK recorded the GMRAND Deed of Trust Amendment on June 9, 2017, in Stanislaus County.  True and correct copies of the GMRAND Deed of Trust and GMRAND Deed of Trust Amendment are attached hereto as Exhibit 7 and are incorporated by this reference.[2]

---

[2] All subsequent references to the GMRAND Deed of Trust accordingly mean and include the GMRAND Deed of Trust Amendment.

19.     On or about March 15, 2017; that is, contemporaneously with the GMRAND Note, GMRAND signed an Assignment of Rents, granting to BANK a security interest in all income generated by the Salida Property, as additional security for the GMRAND Note ("the GMRAND Assignment of Rents").  BANK recorded the GMRAND Assignment of Rents on March 22, 2017, in Stanislaus County.  A true and correct copy of the GMRAND Assignment of Rents is attached hereto as Exhibit 8 and is incorporated by this reference.

20.     On or about March 15, 2017; that is, contemporaneously with the GMRAND Note, Singh signed a Commercial Guaranty concerning all obligations of GMRAND owing to BANK ("Singh GMRAND Guaranty").  A true and correct copy of the Singh GMRAND Guaranty is attached hereto as Exhibit 9 and is incorporated by this reference.

21.     The GMRAND Note was later amended via several Change in Terms Agreements ("GMRAND CITAs").  True and correct copies of the GMRAND CITAs are attached hereto as Exhibit 10 and areas incorporated by this reference.

22.     Concurrent with the GMRAND CITA dated April 9, 2019, JUSRAND signed a Commercial Guaranty concerning all obligations of GMRAND to BANK ("JUSRAND GMRAND Guaranty").  A true and correct copy of the JUSRAND GMRAND Guaranty is attached hereto as Exhibit 11 and is incorporated by this reference.

**The Southgate Holdings Note and Security**

23.     On or about May 26, 2017, SOUTHGATE HOLDINGS signed a Promissory Note, in favor of BANK, evidencing a loan in principal sum of $1,600,000.00 ("Southgate Holdings Note").  The Southgate Holdings Note had a maturity date of May 26, 2027, at which time all money borrowed pursuant to the Southgate Holdings Note was due and payable in full.  A true and correct copy of the Southgate Holdings Note is attached hereto as Exhibit 12 and is incorporated by this reference.

24.     On or about May 26, 2017; that is, concurrently with the Southgate Holdings Note, SOUTHGATE HOLDINGS signed a Business Loan Agreement with BANK concerning

additional terms and conditions of the credit relationship between SOUTHGATE HOLDINGS and BANK ("Southgate Holdings BLA").  A true and correct copy of the Southgate Holdings BLA is attached hereto as Exhibit 13 and is incorporated by this reference.

25.     On or about May 26, 2017; that is, contemporaneously with the Southgate Holdings Note, SOUTHGATE HOLDINGS signed a Deed of Trust, granting to BANK a security interest in the real property commonly known as 13180 Paramount Blvd., Southgate, CA 90280, APN 6264-006-001 ("the Southgate Property"), as security for the Southgate Holdings Note ("the Southgate Holdings Deed of Trust").  BANK recorded the Southgate Holdings Deed of Trust on May 31, 2017, in Los Angeles County.  A true and correct copy of the Southgate Holdings Deed of Trust is attached hereto as Exhibit 14 and is incorporated by this reference.

26.     On or about May 26, 2017; that is, contemporaneously with the Southgate Holdings Note, SOUTHGATE HOLDINGS signed an Assignment of Rents, granting to BANK a security interest in all income generated by the Southgate Property, as additional security for the Southgate Holdings Note ("the Southgate Holdings Assignment of Rents").  BANK recorded the Southgate Holdings Assignment of Rents on May 31, 2017, in Los Angeles County.  A true and correct copy of the Southgate Holdings Assignment of Rents is attached hereto as Exhibit 15 and is incorporated by this reference.

27.     On or about May 26, 2017; that is, contemporaneously with the Southgate Holdings Note, SINGH signed a Commercial Guaranty concerning all obligations of Southgate Holdings owing to BANK ("Singh Southgate Holdings Guaranty").    A true and correct copy of the SINGH Southgate Holdings Guaranty is attached hereto as Exhibit 16 and is incorporated by this reference.

28.     The Southgate Holdings Note was later amended via a Change in Terms Agreement ("Southgate Holdings CITA").  A true and correct copy of the Southgate Holdings CITA is attached hereto as Exhibit 17 and is incorporated by this reference.

29.     Concurrent with the Southgate Holdings CITA, JUSRAND signed a Commercial Guaranty concerning all obligations of SOUTHGATE HOLDINGS to BANK ("JUSRAND

Southgate Holdings Guaranty"). A true and correct copy of the JUSRAND Southgate Holdings Guaranty is attached hereto as Exhibit 18 and is incorporated by this reference.

**The Loan Defaults, Forbearance Agreement, and Loan Maturity**

30.     The above-referenced Notes, BLAs, CSAs, Deeds of Trust, Assignments of Rents, Guaranties, and all related documents are herein referenced as "the Loan Documents."

31.     Defendants repeatedly defaulted under the terms of the Loan Documents, prompting BANK to send a series of default letters to Defendants. Most recently, by letters dated February 10, 2020, and February 11, 2020, BANK advised Defendants of the existence of Events of Default under the various Loan Documents, specifically the failure to pay property taxes as to the above-referenced Salida Property and Southgate Property. True and correct copies of said letters are attached hereto as Exhibit 19 and is incorporated by this reference. No response was received to these letters.

32.     By letter dated March 25, 2020, BANK (via counsel) advised Defendants of the existence of several Events of Default under the various Loan Documents, specifically the ongoing failure to pay property taxes as to the above-referenced Salida Property and Southgate Property, and insufficient funds as to several checks presented to BANK for payment. Because of such uncured defaults, BANK accelerated the balances due on the Loans, such that the Loans were due and payable in full. A true and correct copy of said letter is attached hereto as Exhibit 20 and is incorporated by this reference.

33.     Following several weeks of negotiations, and in consideration for BANK not immediately enforcing its rights and remedies under the Loan Documents, BANK and Defendants entered into a Loan Modification and Forbearance Agreement ("Forbearance Agreement") dated as of May 20, 2020. A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit 21 and is incorporated by this reference. Among the terms of the Forbearance Agreement was an adjustment of the maturity date of the Central Valley Note, the GMRAND Note, and the Southgate Holdings Note to September 1, 2020 (with an option for a one-month extension to

October 1, 2020).  As it had already been nearly two months since BANK's default letter of March 25, 2020, an additional one-hundred (100) days (May 20, 2020 to September 1, 2020) should have been amply-sufficient for Defendants to refinance the subject Notes with another lender, and the extension option provided a further 30 days just in case.

34.     In the event, it appears that Defendants took no substantial action in furtherance of their own interests, and in particular failed to secure any alternative financing by the new maturity date of September 1, 2020, provided in the Forbearance Agreement.  Indeed, Defendants failed even to exercise the one-month extension option to which BANK had expressly agreed, and thereby waived any right to extend the maturity date to October 1, 2020.

35.     By letter dated September 9, 2020, BANK (via counsel) advised Defendants of the existence of several Events of Default under the various Loan Documents, specifically the failure and refusal to pay the Loans when due on September 1, 2020, the failure to provide financials, and the failure to provide proofs of insurance.  A true and correct copy of said letter is attached hereto as Exhibit 22 and is incorporated by this reference.

36.     Notwithstanding BANK's demand, Defendants have failed and refused to pay the matured Loans.  This action necessarily followed.

### FIRST CAUSE OF ACTION

**(Breach of Promissory Note #1 – as to GMRAND)**

37.     Plaintiff repeats, reiterates and incorporates all allegations set forth in paragraphs 1 through 36, inclusive, as though set forth in full.

38.     The GMRAND Note, as modified, constitutes a valid and binding contract between BANK, on the one hand, and GMRAND, on the other hand.

39.     Plaintiff BANK performed all of the terms and conditions of the GMRAND Note required to be performed by it, unless excused or prevented by the conduct of Defendants.

40.     The loan reflected by the GMRAND Note, as modified, became due and payable in full on September 1, 2020.   However, GMRAND breached its obligations under the GMRAND

Note by failing and refusing to repay to pay the balance due on the GMRAND Note at maturity or at any time thereafter.

41.       Pursuant to the terms of the GMRAND Note, the total amount due, owing and unpaid from GMRAND to Plaintiff BANK is $3,147,619.27 as of October 12, 2020, inclusive of the principal sum of $3,135,583.86, and accrued interest in the amount of $12,035.41. Interest continues to accrue at the daily rate of $905.30258 at the default interest rate of 9.87% from October 13, 2020, to the present.

42.       The GMRAND Note and related documents further provide that GMRAND will pay all of Plaintiff's expenses of any nature, including but not limited to reasonable attorneys' fees and costs incurred in enforcing its terms. Plaintiff has employed the Law Offices of HEMAR, ROUSSO & HEALD, LLP, to enforce the terms of the GMRAND Note and is entitled to reasonable attorney's fees according to proof.

## SECOND CAUSE OF ACTION

### (Breach of Guaranty #1-A -- as to SINGH)

43.       Plaintiff repeats, reiterates and incorporates all allegations set forth in paragraphs 1 through 42, inclusive, as though set forth in full.

44.       The Singh GMRAND Guaranty constitutes a valid and binding contract between BANK, on the one hand, and SINGH, on the other hand.

45.       Plaintiff BANK performed all of the terms and conditions of the Loan Documents, as amended, required to be performed by it, unless excused or prevented by the conduct of Defendants. As detailed above, GMRAND is in default for, among other things, the failure to make full payment of the GMRAND Note at maturity.

46.       BANK has had numerous communications with Defendants to attempt to resolve the foregoing obligations, including the tender of multiple demand letters. Most-recently, by letter dated September 9, 2020, and directed to all Defendants, BANK formally declared the GMRAND Note to be in default, and made payment demand upon both GMRAND and all Guarantors of said

Note (Exhibit 21). To date, despite such demands, SINGH has failed and refused to honor his obligations under the Singh GMRAND Guaranty.

47.     Pursuant to the terms of the GMRAND Note, the total amount due, owing and unpaid from GMRAND to Plaintiff BANK is $3,147,619.27 as of October 12, 2020, inclusive of the principal sum of $3,135,583.86, and accrued interest in the amount of $12,035.41. Interest continues to accrue at the daily rate of $905.30258 at the default interest rate of 9.87% from October 13, 2020, to the present. SINGH is equally-liable for this obligation.

48.     The Singh GMRAND Guaranty further provides that SINGH will pay all of Plaintiff's expenses of any nature, including but not limited to reasonable attorneys' fees and costs incurred in enforcing its terms. Plaintiff has employed the Law Offices of HEMAR, ROUSSO & HEALD, LLP, to enforce the terms of the Singh GMRAND Guaranty and is entitled to reasonable attorney's fees according to proof.

### THIRD CAUSE OF ACTION

#### (Breach of Guaranty #1-B -- as to JUSRAND)

49.     Plaintiff repeats, reiterates and incorporates all allegations set forth in paragraphs 1 through 48, inclusive, as though set forth in full.

50.     The JUSRAND GMRAND Guaranty constitutes a valid and binding contract between BANK, on the one hand, and JUSRAND, on the other hand.

51.     Plaintiff BANK performed all of the terms and conditions of the Loan Documents, as amended, required to be performed by it, unless excused or prevented by the conduct of Defendants. As detailed above, GMRAND is in default for, among other things, the failure to make full payment of the GMRAND Note at maturity.

52.     BANK has had numerous communications with Defendants to attempt to resolve the foregoing obligations, including the tender of multiple demand letters. Most-recently, by letter dated September 9, 2020, and directed to all Defendants, BANK formally declared the GMRAND Note to be in default, and made payment demand upon both GMRAND and all Guarantors of said

Note (Exhibit 21).  To date, despite such demands, JUSRAND has failed and refused to honor its obligations under the JUSRAND GMRAND Guaranty.

53.     Pursuant to the terms of the GMRAND Note, the total amount due, owing and unpaid from GMRAND to Plaintiff BANK is $3,147,619.27 as of October 12, 2020, inclusive of the principal sum of $3,135,583.86, and accrued interest in the amount of $12,035.41.  Interest continues to accrue at the daily rate of $905.30258 at the default interest rate of 9.87% from October 13, 2020, to the present.  JUSRAND is equally-liable for this obligation.

54.     The JUSRAND GMRAND Guaranty further provides that JUSRAND will pay all of Plaintiff's expenses of any nature, including but not limited to reasonable attorneys' fees and costs incurred in enforcing its terms.  Plaintiff has employed the Law Offices of HEMAR, ROUSSO & HEALD, LLP, to enforce the terms of the JUSRAND GMRAND Guaranty and is entitled to reasonable attorney's fees according to proof.

## FOURTH CAUSE OF ACTION

### (Breach of Promissory Note #2 – as to SOUTHGATE HOLDINGS)

55.     Plaintiff repeats, reiterates and incorporates all allegations set forth in paragraphs 1 through 54, inclusive, as though set forth in full.

56.     The Southgate Holdings Note, as modified, constitutes a valid and binding contract between BANK, on the one hand, and SOUTHGATE HOLDINGS, on the other hand.

57.     Plaintiff BANK performed all of the terms and conditions of the Southgate Holdings Note required to be performed by it, unless excused or prevented by the conduct of Defendants.

58.     The loan reflected by the Southgate Holdings Note, as modified, became due and payable in full on September 1, 2020.   However, SOUTHGATE HOLDINGS breached its obligations under the Southgate Holdings Note by failing and refusing to repay to pay the balance due on the Southgate Holdings Note at maturity or at any time thereafter.

59.     Pursuant to the terms of the Southgate Holdings Note, the total amount due, owing

and unpaid from SOUTHGATE HOLDINGS to Plaintiff BANK is $1,488,863.62 as of October 12, 2020, inclusive of the principal sum of $1,483,170.71, and accrued interest in the amount of $5,692.91.  Interest continues to accrue at the daily rate of $406.63597 at the default interest rate of 9.87% from October 13, 2020, to the present.

60.     The Southgate Holdings Note and related documents further provide that SOUTHGATE HOLDINGS will pay all of Plaintiff's expenses of any nature, including but not limited to reasonable attorneys' fees and costs incurred in enforcing its terms.  Plaintiff has employed the Law Offices of HEMAR, ROUSSO & HEALD, LLP, to enforce the terms of the Southgate Holdings Note and is entitled to reasonable attorney's fees according to proof.

## FIFTH CAUSE OF ACTION

### (Breach of Guaranty #2-A -- as to SINGH)

61.     Plaintiff repeats, reiterates and incorporates all allegations set forth in paragraphs 1 through 60, inclusive, as though set forth in full.

62.     The Singh Southgate Holdings Guaranty constitutes a valid and binding contract between BANK, on the one hand, and SINGH, on the other hand.

63.     Plaintiff BANK performed all of the terms and conditions of the Loan Documents, as amended, required to be performed by it, unless excused or prevented by the conduct of Defendants.  As detailed above, SOUTHGATE HOLDINGS is in default for, among other things, the failure to make full payment of the Southgate Holdings Note at maturity.

64.     BANK has had numerous communications with Defendants to attempt to resolve the foregoing obligations, including the tender of multiple demand letters.  Most-recently, by letter dated September 9, 2020, and directed to all Defendants, BANK formally declared the Southgate Holdings Note to be in default, and made payment demand upon both SOUTHGATE HOLDINGS and all Guarantors of said Note (Exhibit 21).  To date, despite such demands, SINGH has failed and refused to honor his obligations under the Singh Southgate Holdings Guaranty.

65.     Pursuant to the terms of the Southgate Holdings Note, the total amount due, owing

and unpaid from SOUTHGATE HOLDINGS to Plaintiff BANK is $1,488,863.62 as of October 12, 2020, inclusive of the principal sum of $1,483,170.71, and accrued interest in the amount of $5,692.91.  Interest continues to accrue at the daily rate of $406.63597 at the default interest rate of 9.87% from October 13, 2020, to the present.  SINGH is equally-liable for this obligation.

66.     The Singh Southgate Holdings Guaranty further provides that SINGH will pay all of Plaintiff's expenses of any nature, including but not limited to reasonable attorneys' fees and costs incurred in enforcing its terms.  Plaintiff has employed the Law Offices of HEMAR, ROUSSO & HEALD, LLP, to enforce the terms of the Singh Southgate Holdings Guaranty and is entitled to reasonable attorney's fees according to proof.

### SIXTH CAUSE OF ACTION
### (Breach of Guaranty #2-B -- as to JUSRAND)

67.     Plaintiff repeats, reiterates and incorporates all allegations set forth in paragraphs 1 through 66, inclusive, as though set forth in full.

68.     The JUSRAND Southgate Holdings Guaranty constitutes a valid and binding contract between BANK, on the one hand, and JUSRAND, on the other hand.

69.     Plaintiff BANK performed all of the terms and conditions of the Loan Documents, as amended, required to be performed by it, unless excused or prevented by the conduct of Defendants.  As detailed above, SOUTHGATE HOLDINGS is in default for, among other things, the failure to make full payment of the Southgate Holdings Note at maturity.

70.     BANK has had numerous communications with Defendants to attempt to resolve the foregoing obligations, including the tender of multiple demand letters.  Most-recently, by letter dated September 9, 2020, and directed to all Defendants, BANK formally declared the Southgate Holdings Note to be in default, and made payment demand upon both SOUTHGATE HOLDINGS and all Guarantors of said Note (Exhibit 21).  To date, despite such demands, JUSRAND has failed and refused to honor its obligations under the JUSRAND Southgate Holdings Guaranty.

71.     Pursuant to the terms of the Southgate Holdings Note, the total amount due, owing

and unpaid from SOUTHGATE HOLDINGS to Plaintiff BANK is $1,488,863.62 as of October 12, 2020, inclusive of the principal sum of $1,483,170.71, and accrued interest in the amount of $5,692.91.  Interest continues to accrue at the daily rate of $406.63597 at the default interest rate of 9.87% from October 13, 2020, to the present.  JUSRAND is equally-liable for this obligation.

72.     The JUSRAND Southgate Holdings Guaranty further provides that JUSRAND will pay all of Plaintiff's expenses of any nature, including but not limited to reasonable attorneys' fees and costs incurred in enforcing its terms.  Plaintiff has employed the Law Offices of HEMAR, ROUSSO & HEALD, LLP, to enforce the terms of the Singh Southgate Holdings Guaranty and is entitled to reasonable attorney's fees according to proof.

## SEVENTH CAUSE OF ACTION

### (Breach of Promissory Note #3 – as to CENTRAL VALLEY)

73.     Plaintiff repeats, reiterates and incorporates all allegations set forth in paragraphs 1 through 72, inclusive, as though set forth in full.

74.     The Central Valley Note, as modified, constitutes a valid and binding contract between BANK, on the one hand, and CENTRAL VALLEY, on the other hand.

75.     Plaintiff BANK performed all of the terms and conditions of the Central Valley Note required to be performed by it, unless excused or prevented by the conduct of Defendants.

76.     The loan reflected by the Central Valley Note, as modified, became due and payable in full on September 1, 2020.   However, CENTRAL VALLEY breached its obligations under the Central Valley Note by failing and refusing to repay to pay the balance due on the Central Valley Note at maturity or at any time thereafter.

77.     Pursuant to the terms of the Central Valley Note, the total amount due, owing and unpaid from CENTRAL VALLEY to Plaintiff BANK is $68,616.86 as of October 12, 2020, inclusive of the principal sum of $68,358.99, and accrued interest in the amount of $257.87. Interest continues to accrue at the daily rate of $18.41895 at the default interest rate of 9.70% from October 13, 2020, to the present.

78.     The Central Valley Note and related documents further provide that CENTRAL VALLEY will pay all of Plaintiff's expenses of any nature, including but not limited to reasonable attorneys' fees and costs incurred in enforcing its terms.  Plaintiff has employed the Law Offices of HEMAR, ROUSSO & HEALD, LLP, to enforce the terms of the Central Valley Note and is entitled to reasonable attorney's fees according to proof.

## EIGHTH CAUSE OF ACTION
### (Breach of Guaranty #3-A -- as to SINGH)

79.     Plaintiff repeats, reiterates and incorporates all allegations set forth in paragraphs 1 through 78, inclusive, as though set forth in full.

80.     The Singh CENTRAL VALLEY Guaranty constitutes a valid and binding contract between BANK, on the one hand, and SINGH, on the other hand.

81.     Plaintiff BANK performed all of the terms and conditions of the Loan Documents, as amended, required to be performed by it, unless excused or prevented by the conduct of Defendants.  As detailed above, CENTRAL VALLEY is in default for, among other things, the failure to make full payment of the Central Valley Note at maturity.

82.     BANK has had numerous communications with Defendants to attempt to resolve the foregoing obligations, including the tender of multiple demand letters.  Most-recently, by letter dated September 9, 2020, and directed to all Defendants, BANK formally declared the Central Valley Note to be in default, and made payment demand upon both CENTRAL VALLEY and all Guarantors of said Note (Exhibit 21).  To date, despite such demands, SINGH has failed and refused to honor his obligations under the Singh Central Valley Guaranty.

83.     Pursuant to the terms of the Central Valley Note, the total amount due, owing and unpaid from CENTRAL VALLEY to Plaintiff BANK is $68,616.86 as of October 12, 2020, inclusive of the principal sum of $68,358.99, and accrued interest in the amount of $257.87. Interest continues to accrue at the daily rate of $18.41895 at the default interest rate of 9.70% from October 13, 2020, to the present.  SINGH is equally-liable for this obligation.

84.     The Singh Central Valley Guaranty further provides that SINGH will pay all of Plaintiff's expenses of any nature, including but not limited to reasonable attorneys' fees and costs incurred in enforcing its terms.  Plaintiff has employed the Law Offices of HEMAR, ROUSSO & HEALD, LLP, to enforce the terms of the Singh Central Valley Guaranty and is entitled to reasonable attorney's fees according to proof.

## NINTH CAUSE OF ACTION

### (Judicial Foreclosure -- as to GMRAND and DOES 1-20)

85.     Plaintiff repeats, reiterates and incorporates herein by this reference the allegations set forth in paragraphs 1 through 84, inclusive, as though set forth at length herein.

86.     Plaintiff is the lawful holder of the GMRAND Note, and is the beneficiary of the GMRAND Deed of Trust with respect to the Salida Property.

87.     The GMRAND Deed of Trust provides that, should default occur in the payment of any obligation secured by the GMRAND Deed of Trust, or in the performance of any obligation arising under the GMRAND Deed of Trust itself, Plaintiff BANK may pursue its remedies as set forth therein, including without limitation foreclosure on the Salida Property.

88.     As detailed above, the GMRAND Note is presently in default, such that Defendant GMRAND is indebted to Plaintiff BANK in the sum of $3,147,619.27 as of October 12, 2020, plus additional interest thereon from October 13, 2020, to the present.  Accordingly, Plaintiff BANK is entitled to judicial foreclosure of the Salida Property.

89.     Plaintiff BANK is informed and believes that GMRAND and DOES 1-20 are the only persons claiming an interest in the Property, and therefore believes that all persons with such an interest are named in this Complaint.  BANK makes no independent claims against DOES 1-20 and such parties are being names herein solely in connection with their interest in the Property.

90.     The GMRAND Deed of Trust further provides that GMRAND will pay all of Plaintiff's expenses of any nature, including but not limited to reasonable attorneys' fees and costs incurred in enforcing their terms.  Plaintiff BANK has employed the Law Offices of HEMAR,

ROUSSO & HEALD, LLP, to enforce the terms of the GMRAND Deed of Trust and is entitled to reasonable attorney's fees according to proof.

## **TENTH CAUSE OF ACTION**

### **(Judicial Foreclosure -- as to SOUTHGATE HOLDINGS and DOES 21-40)**

91.　　Plaintiff repeats, reiterates and incorporates herein by this reference the allegations set forth in paragraphs 1 through 90, inclusive, as though set forth at length herein.

92.　　Plaintiff is the lawful holder of the Southgate Holdings Note, and is the beneficiary of the Southgate Holdings Deed of Trust with respect to the Southgate Property.

93.　　The Southgate Holdings Deed of Trust provides that, should default occur in the payment of any obligation secured by the Southgate Holdings Deed of Trust, or in the performance of any obligation arising under the Southgate Holdings Deed of Trust itself, Plaintiff BANK may pursue its remedies as set forth therein, including without limitation foreclosure on the Southgate Property.

94.　　As detailed above, the Southgate Holdings Note is presently in default, such that Defendant Southgate Holdings is indebted to Plaintiff BANK in the sum of $1,488,863.62 as of October 12, 2020, plus additional interest thereon from October 13, 2020, to the present. Accordingly, Plaintiff BANK is entitled to judicial foreclosure of the Southgate Property.

95.　　Plaintiff BANK is informed and believes that Southgate Holdings and DOES 21-40 are the only persons claiming an interest in the Property, and therefore believes that all persons with such an interest are named in this Complaint.　BANK makes no independent claims against DOES 21-40 and such parties are being names herein solely in connection with their interest in the Property.

96.　　The Southgate Holdings Deed of Trust further provides that SOUTHGATE HOLDINGS will pay all of Plaintiff's expenses of any nature, including but not limited to reasonable attorneys' fees and costs incurred in enforcing their terms.　Plaintiff BANK has employed the Law Offices of HEMAR, ROUSSO & HEALD, LLP, to enforce the terms of the

Southgate Holdings Deed of Trust and is entitled to reasonable attorney's fees according to proof.

## ELEVENTH CAUSE OF ACTION

### (Claim and Delivery -- as to CENTRAL VALLEY and DOES 41-50)

97.     Plaintiff repeats, reiterates and incorporates all allegations set forth in paragraphs 1 through 96, inclusive, as though set forth in full.

98.     Pursuant to the Central Valley CSA, CENTRAL VALLEY granted to Plaintiff BANK a security interest in the collateral therein described, including, but not limited to, all inventory, equipment, and accounts receivable of CENTRAL VALLEY, and all books and records pertaining thereto ("Central Valley Collateral").  Plaintiff's security interest in the Collateral was perfected as detailed above.

99.     CENTRAL VALLEY has defaulted on its obligations under the Central Valley Note, as set forth hereinabove.  The Uniform Commercial Code provides, *inter alia*, that in the event of default, Plaintiff BANK may foreclose upon the Central Valley Collateral.

100.     Plaintiff is entitled to immediate possession of all Central Valley Collateral, whether in the possession of CENTRAL VALLEY or any other Defendant DOES 41-50.

101.     Said Defendants, and each of them, have failed and refused and continue to fail and refuse to surrender possession of the Central Valley Collateral and are presently wrongfully retaining possession thereof in derogation of the rights of Plaintiff.

102.     Accordingly, Plaintiff is entitled to an order of Court directing said Defendants to surrender and turn over the Central Valley Collateral to BANK.

## TWELFTH CAUSE OF ACTION

### (Conversion -- as to CENTRAL VALLEY and DOES 41-50)

103.     Plaintiff repeats, reiterates and incorporates all allegations set forth in paragraphs 1 through 102, inclusive, as though set forth in full.

104.     As detailed above, Plaintiff BANK is entitled to immediate possession of the

Central Valley Collateral wherever it may be found, and from every Defendant who is presently in possession of such Collateral.

105. However, Defendants, and each of them, have refused to surrender the Central Valley Collateral to BANK, and have converted said Central Valley Collateral to their own use and benefit. As the result thereof, Plaintiff has been damaged to the extent of the present value of said Central Valley Collateral and in the amounts expended by Plaintiff in seeking the return of the Central Valley Collateral, all in an amount to be proven at the time of trial.

## THIRTEENTH CAUSE OF ACTION

### (Appointment of Limited Purpose Receiver –
### as to GMRAND, SOUTHGATE HOLDINGS, and CENTRAL VALLEY)

106. Plaintiff repeats, reiterates and incorporates all allegations set forth in paragraphs 1 through 105, inclusive, as though set forth in full.

107. Among other rights, the GMRAND Deed of Trust, the GMRAND Assignment of Rents, the Southgate Holdings Deed of Trust, the Southgate Holdings Assignment of Rents, and the Central Valley CSA all granted to Plaintiff BANK the right to seek appointment of a limited purpose receiver to take control of the real and/or personal property security identified therein, collect rents generated by such property, to assemble all improvements and fixtures associated with such property, and to sell such property as required to repay the indebtedness herein described.

108. By virtue of the defaults by GMRAND, SOUTHGATE HOLDINGS, and CENTRAL VALLEY, and each of them, under the Loan Documents as alleged herein, BANK is at once and immediately entitled to enforce the forgoing rights.

109. A limited purpose receiver therefore is necessary to obtain possession of said property and the proceeds therefrom, to collect the accounts receivable, to obtain and retain possession of the books and records of GMRAND, SOUTHGATE HOLDINGS, and CENTRAL VALLEY, and each of them, to operate such property, to sell such Property, and/or to manage

such property pending foreclosure. Without a limited purpose receiver being appointed, BANK is informed and believes and thereon alleges that GMRAND, SOUTHGATE HOLDINGS, and CENTRAL VALLEY, and each of them, will transfer, convey, liquidate, or otherwise make such property and the books and records pertaining thereto, unavailable to BANK and/or commit waste, thereby depriving BANK of the benefit of the collateral obtained as a result of the GMRAND Deed of Trust, the GMRAND Assignment of Rents, the Southgate Holdings Deed of Trust, the Southgate Holdings Assignment of Rents, and the Central Valley CSA.

## FOURTEENTH CAUSE OF ACTION
### (Money Lent #1 -- as to Defendant GMRAND)

110.    Plaintiff repeats, reiterates and incorporates herein by reference the allegations of paragraphs 1 through 109, inclusive, as though set forth at length herein.

111.    Within the last four years, GMRAND has become indebted to Plaintiff BANK in the principal sum of $3,135,583.86, for monies paid, lent and expended for Defendant GMRAND at its specific request, in connection with the GMRAND Note.

112.    There is now due, owing and unpaid from GMRAND to Plaintiff BANK, the principal sum of $3,135,583.86, together with interest at the statutory ten percent (10%) annum, from and after September 1, 2020, when such principal sum due under the GMRAND Note became due and payable in full.

## FIFTEENTH CAUSE OF ACTION
### (Account Stated #1 -- as to Defendant GMRAND)

113.    Plaintiff repeats, reiterates and incorporates herein by reference the allegations of paragraphs 1 through 112, inclusive, as though set forth at length herein.

114.    Within the last four years, an account was stated in writing by and between Plaintiff BANK, on the one hand, and Defendant GMRAND, on the other hand, wherein and whereby it was agreed that said Defendant was indebted to Plaintiff BANK in the principal sum of

$3,135,583.86, in connection with the GMRAND Note.

115.    There is now due, owing and unpaid from GMRAND to Plaintiff BANK, the principal sum of $3,135,583.86, together with interest at the statutory ten percent (10%) annum, from and after September 1, 2020, when such principal sum due under the GMRAND Note became due and payable in full.

## SIXTEENTH CAUSE OF ACTION

### (Fair Valuation #1 -- as to Defendant GMRAND)

116.    Plaintiff repeats, reiterates and incorporates herein by this reference the allegations set forth in paragraphs 1 through 115, inclusive, as though set forth at length herein.

117.    Defendant GMRAND has received the benefits of Plaintiff's capital as set forth above.

118.    In furnishing said capital as aforesaid, Plaintiff BANK was not acting as a volunteer, and Defendant GMRAND has accepted the benefits that Plaintiff BANK has furnished without paying therefor.

119.    Defendant GMRAND has therefore been unjustly enriched by the continuing use of the capital provided by Plaintiff BANK in connection with the GMRAND Note, and it would be inequitable for said Defendant to be allowed to retain the benefits of Plaintiff BANK's capital without being ordered to pay the principal sum of $3,135,583.86, representing the fair valuation of consideration conferred on said Defendant, together with interest at the statutory ten percent (10%) annum, from and after September 1, 2020, when such principal sum due under the GMRAND Note became due and payable in full.

## SEVENTEENTH CAUSE OF ACTION

### (Money Lent #2 -- as to Defendant SOUTHGATE HOLDINGS)

120.    Plaintiff repeats, reiterates and incorporates herein by reference the allegations of paragraphs 1 through 119, inclusive, as though set forth at length herein.

121.    Within the last four years, SOUTHGATE HOLDINGS has become indebted to Plaintiff BANK in the principal sum of $1,483,170.71, for monies paid, lent and expended for SOUTHGATE HOLDINGS at its specific request, in connection with the Southgate Holdings Note.

122.    There is now due, owing and unpaid from SOUTHGATE HOLDINGS to Plaintiff BANK, the principal sum of $1,483,170.71, together with interest at the statutory ten percent (10%) annum, from and after September 1, 2020, when such principal sum due under the Southgate Holdings Note became due and payable in full.

## EIGHTTEENTH CAUSE OF ACTION

### (Account Stated #2 -- as to Defendant SOUTHGATE HOLDINGS)

123.    Plaintiff repeats, reiterates and incorporates herein by reference the allegations of paragraphs 1 through 122, inclusive, as though set forth at length herein.

124.    Within the last four years, an account was stated in writing by and between Plaintiff BANK, on the one hand, and Defendant SOUTHGATE HOLDINGS, on the other hand, wherein and whereby it was agreed that said Defendant was indebted to Plaintiff BANK in the principal sum of $1,483,170.71, in connection with the Southgate Holdings Note.

125.    There is now due, owing and unpaid from SOUTHGATE HOLDINGS to Plaintiff BANK, the principal sum of $1,483,170.71, together with interest at the statutory ten percent (10%) annum, from and after September 1, 2020, when such principal sum due under the Southgate Holdings Note became due and payable in full.

## NINETEENTH CAUSE OF ACTION

### (Fair Valuation #2 -- as to Defendant SOUTHGATE HOLDINGS)

126.    Plaintiff repeats, reiterates and incorporates herein by this reference the allegations set forth in paragraphs 1 through 125, inclusive, as though set forth at length herein.

127.    Defendant SOUTHGATE HOLDINGS has received the benefits of Plaintiff's

capital as set forth above.

128.      In furnishing said capital as aforesaid, Plaintiff BANK was not acting as a volunteer, and Defendant SOUTHGATE HOLDINGS has accepted the benefits that Plaintiff BANK has furnished without paying therefor.

129.      Defendant SOUTHGATE HOLDINGS has therefore been unjustly enriched by the continuing use of the capital provided by Plaintiff BANK in connection with the Southgate Holdings Note, and it would be inequitable for said Defendant to be allowed to retain the benefits of Plaintiff BANK's capital without being ordered to pay the principal sum of $1,483,170.71, representing the fair valuation of consideration conferred on said Defendant, together with interest at the statutory ten percent (10%) annum, from and after September 1, 2020, when such principal sum due under the Southgate Holdings Note became due and payable in full.

## TWENTIETH CAUSE OF ACTION

### (Money Lent #3 -- as to Defendant CENTRAL VALLEY)

130.      Plaintiff repeats, reiterates and incorporates herein by reference the allegations of paragraphs 1 through 129, inclusive, as though set forth at length herein.

131.      Within the last four years, CENTRAL VALLEY has become indebted to Plaintiff BANK in the principal sum of $68,358.99, for monies paid, lent and expended for SOUTHGATE HOLDINGS at its specific request, in connection with the Central Valley Note.

132.      There is now due, owing and unpaid from CENTRAL VALLEY to Plaintiff BANK, the principal sum of $68,358.99, together with interest at the statutory ten percent (10%) annum, from and after September 1, 2020, when such principal sum due under the Central Valley Note became due and payable in full.

## TWENTY-FIRST CAUSE OF ACTION

### (Account Stated #3 -- as to Defendant CENTRAL VALLEY)

133.      Plaintiff repeats, reiterates and incorporates herein by reference the allegations of

paragraphs 1 through 132, inclusive, as though set forth at length herein.

134.　　Within the last four years, an account was stated in writing by and between Plaintiff BANK, on the one hand, and Defendant CENTRAL VALLEY, on the other hand, wherein and whereby it was agreed that said Defendant was indebted to Plaintiff BANK in the principal sum of $68,358.99, in connection with Central Valley Note.

135.　　There is now due, owing and unpaid from CENTRAL VALLEY to Plaintiff BANK, the principal sum of $68,358.99, together with interest at the statutory ten percent (10%) annum, from and after September 1, 2020, when such principal sum due under the Central Valley Note became due and payable in full.

### TWENTY-SECOND CAUSE OF ACTION

### (Fair Valuation #3 -- as to Defendant CENTRAL VALLEY)

136.　　Plaintiff repeats, reiterates and incorporates herein by this reference the allegations set forth in paragraphs 1 through 135, inclusive, as though set forth at length herein.

137.　　Defendant CENTRAL VALLEY has received the benefits of Plaintiff's capital as set forth above.

138.　　In furnishing said capital as aforesaid, Plaintiff BANK was not acting as a volunteer, and Defendant CENTRAL VALLEY has accepted the benefits that Plaintiff BANK has furnished without paying therefor.

139.　　Defendant CENTRAL VALLEY has therefore been unjustly enriched by the continuing use of the capital provided by Plaintiff BANK in connection with the Central Valley Note, and it would be inequitable for said Defendant to be allowed to retain the benefits of Plaintiff BANK's capital without being ordered to pay the principal sum of $68,358.99, representing the fair valuation of consideration conferred on said Defendant, together with interest at the statutory ten percent (10%) annum, from and after September 1, 2020, when such principal sum due under the Central Valley Note became due and payable in full.

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

### AS TO THE FIRST, SECOND, AND THIRD CAUSES OF ACTION

1.      For principal, accrued interest and late fees, through October 12, 2020, in the aggregate amount of $3,147,619.27;

2.      For interest on principal at the contractual rate of $905.30258 per diem from October 13, 2020, to the present;

3.      For reasonable attorneys' fees.

### AS TO THE FOURTH, FIFTH, AND SIXTH CAUSES OF ACTION

1.      For principal, accrued interest and late fees, through October 12, 2020, in the aggregate amount of $1,488,863.62;

2.      For interest on principal at the contractual rate of $406.63597 per diem from October 13, 2020, to the present;

3.      For reasonable attorneys' fees.

### AS TO THE SEVENTH AND EIGHTH CAUSES OF ACTION

1.      For principal, accrued interest and late fees, through October 12, 2020, in the aggregate amount of $68,358.99;

2.      For interest on principal at the contractual rate of $18.41895 per diem from October 13, 2020, to the present;

3.      For reasonable attorneys' fees.

### AS TO THE NINTH CAUSE OF ACTION

1.      Adjudging that all rights, claims, liens, ownership, titles and demands of

Defendants are subsequent to and subject to the lien of the GMRAND Deed of Trust;

2.      Adjudging that the GMRAND Deed of Trust be foreclosed, that the Salida Property be sold according to law by a levying officer to be appointed by the Court; that the proceeds of the sale be applied in payment of the amounts due to Plaintiff BANK; that each Defendant and all persons claiming under each Defendant, creditor, claimant under a junior trust deed, purchaser, lienholder or otherwise, be barred and foreclosed from all rights, claims, interests or equity of redemption in the Salida Property and every part of the Salida Property when time for redemption has lapsed;

3.      Adjudging that GMRAND is liable for payment of the obligations secured by the GMRAND Deed of Trust, and that a deficiency judgment may be ordered following sale of the Salida Property or proceedings prescribed by law;

4.      Directing the levying officer, after the time for redemption has lapsed, to execute a deed to the purchaser of the Salida Property at the sale, and directing that the purchaser be let into possession of the Salida Property on production of the levying officer's deed;

5.      For administrative fees and costs;

6.      For late charges;

7.      For attorneys' fees.


## AS TO THE TENTH CAUSE OF ACTION

1.      Adjudging that all rights, claims, liens, ownership, titles and demands of Defendants are subsequent to and subject to the lien of the Southgate Holdings Deed of Trust;

2.      Adjudging that the Southgate Holdings Deed of Trust be foreclosed, that the Southgate Property be sold according to law by a levying officer to be appointed by the Court; that the proceeds of the sale be applied in payment of the amounts due to Plaintiff BANK; that each Defendant and all persons claiming under each Defendant, creditor, claimant under a junior trust deed, purchaser, lienholder or otherwise, be barred and foreclosed from all rights, claims, interests or equity of redemption in the Southgate Property and every part of the Southgate Property when

time for redemption has lapsed;

    3.        Adjudging that SOUTHGATE HOLDINGS is liable for payment of the obligations secured by the Southgate Holdings Deed of Trust, and that a deficiency judgment may be ordered following sale of the Southgate Property or proceedings prescribed by law;

    4.        Directing the levying officer, after the time for redemption has lapsed, to execute a deed to the purchaser of the Southgate Property at the sale, and directing that the purchaser be let into possession of the Southgate Property on production of the levying officer's deed;

    5.        For administrative fees and costs;

    6.        For late charges;

    7.        For attorneys' fees.

### AS TO THE ELEVENTH CAUSE OF ACTION

    1.        For immediate possession of the Central Valley Collateral and all books and records pertaining thereto as set forth in the Security Agreement;

    2.        For an order directing DOS AMIGOS to turn over all such Collateral to BANK.

### AS TO THE TWELFTH CAUSE OF ACTION

    1.        For the amount of the present value of the Central Valley Collateral;

    2.        For damages for the use of said Collateral in an amount according to proof;

    3.        For reasonable attorney's fees.

### AS TO THE THIRTEENTH CAUSE OF ACTION

    1.        For appointment of a limited purpose receiver to take possession and control of all the collateral and all books and records pertaining thereto which is in the possession of or under the control of Defendants GMRAND, SOUTHGATE HOLDINGS, and CENTRAL VALLEY, under the provisions of the GMRAND Deed of Trust, the GMRAND Assignment of Rents, the Southgate Holdings Deed of Trust, the Southgate Holdings Assignment of Rents, and the Central

Valley CSA.

    2.     For the limited purpose receiver to inventory all such collateral and books and records and report to the Court accordingly;

    3.     For the limited purpose receiver to ultimately liquidate such collateral for the benefit of Plaintiff and to account for the same;

    4.     For all further duties and activities as is deemed just and appropriate and as ordered by this Court.

### AS TO THE FOURTEENTH, FIFTHEENTH, AND SIXTEENTH CAUSES OF ACTION

    1.     For the principal sum of $3,135,583.86;

    2.     For interest thereon at the statutory rate of ten percent (10%) per annum, from and after September 1, 2020.

### AS TO THE SEVENTEENTH, EIGHTTEENTH, AND NINEEENTH CAUSES OF ACTION

    1.     For the principal sum of $1,483,170.71;

    2.     For interest thereon at the statutory rate of ten percent (10%) per annum, from and after September 1, 2020.

### AS TO THE TWENTYETH, TWENTY-FIRST, AND TWENTY-SECOND CAUSES OF ACTION

    1.     For the principal sum of $68,358.99;

    2.     For interest thereon at the statutory rate of ten percent (10%) per annum, from and after September 1, 2020.

/ / /

/ / /

## **AS TO ALL CAUSES OF ACTION**

1.    For costs of suit incurred herein;

2.    For such other and further relief as the Court may deem just and proper.

DATED: November 20, 2020          HEMAR, ROUSSO & HEALD, LLP

*//s// William J. Sexton*

BY: _____

William J. Sexton
Attorneys for Plaintiff,
BANK OF THE WEST

**MCCJ Supplemental Request for Judicial Notice**

12.     Pleadings filed in the Stanislaus County Superior Court in ***Bank of the West v. JUSRAND, LLC, Gurpreet Singh, et al.*, Case No. CV-20-005206**

    B.     **Declaration of Gurpreet Singh** in Support of Opposition to Bank of the West's Application for Writ of Attachment, filed April 15, 2021

Ian A. Rambarran, Bar No. 227366
Anthony C. Soldato, Bar No. 260794
KLINEDINST PC
801 K Street, Suite 2100
Sacramento, California 95814
(916) 444-7573/FAX (916) 444-7544
irambarran@klinedinstlaw.com
asoldato@klinedinstlaw.com

Attorneys for Defendants JUSRAND, LLC;
GMRAND, LLC; SOUTHGATE HOLDINGS,
LLC; CENTRAL VALLEY
GASTROENTEROLOGY ASSOCIATES, INC.;
and GURPREET SINGH

Electronically Filed
4/15/2021 4:41 PM
Superior Court of California
County of Stanislaus
Clerk of the Court
By: Sonia Krohn, Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF STANISLAUS**

| | |
|---|---|
| BANK OF THE WEST,<br><br>           Plaintiff,<br><br>       v.<br><br>JUSRAND, LLC, a California limited liability company; GMRAND, LLC, a California limited liability company; SOUTHGATE HOLDINGS, LLC, a California limited liability company; CENTRAL VALLEY GASTROENTEROLOGY ASSOCIATES, INC., a California corporation; GURPREET SINGH, an individual; and DOES 1-50, inclusive,<br><br>           Defendants. | Case No. CV-20-005206<br><br>**DECLARATION OF DR. GURPREET SINGH IN SUPPORT OF OPPOSITION TO BANK OF THE WEST'S APPLICATION FOR WRIT OF ATTACHMENT**<br><br>Date: April 22, 2021<br>Time: 8:30 a.m.<br>Dept.: 22<br><br>Hon. Stacy Speiller<br>Dept. 22<br><br>Action Filed: November 23, 2020<br>Trial Date: None Set |

KLINEDINST PC
801 K STREET, SUITE 2100
SACRAMENTO, CALIFORNIA 95814

I, Dr. Gurpreet Singh, do hereby declare as follows:

1.      I am one of the defendants in this action and I submit this declaration in opposition to The Bank of the West's application for a writ of attachment.

2.      I am a licensed physician, and I have been practicing medicine in California since 2008. I completed my residency at both St. Joseph's Regional Medical Center in Paterson, New Jersey, and Mount Sinai School of Medicine in Manhattan, New York, before completing a

1

1  fellowship in gastroenterology at Seton Hall University School of Graduate Medical Education in

2  South Orange, New Jersey.

3      3.    In 2013, I founded the acute care hospital Central Valley Specialty Hospital in

4  Modesto, California.  I subsequently founded American Advanced Management, Inc. ("AAM"),

5  which now operates acute hospitals, skilled nursing facilities, a home health agency, urgent care

6  centers, and a nursing college, all of which are vital to rural and under-served communities in the

7  State of California.  I also assisted in founding Advanced College which is an educational

8  institution, specifically medical programs, that offers hands-on learning in an accelerated

9  timeframe.  Advanced College is primarily comprised of students in the nursing, surgical

10 technology, medical assistant, and dental assistant programs of which a substantial amount of

11 education is hands-on in the lab or at specific medical or clinical sites located throughout the State

12 of California. In early 2020, we started to operate with all approvals and licenses in place for

13 proper operation of our in-person, medical instructional classes.

14     4.    Unfortunately, my businesses, like those throughout the United States, were

15 impacted by the COVID-19 pandemic which led many businesses including Advanced College to

16 see a decrease in overall business.  Advanced College also suffered the loss of a significant

17 amount of student revenues.  As a delayed effect of the COVID-19 pandemic, we saw a pattern of

18 drops in in-person enrollments because our in-person instruction was stopped due to COVID-19

19 health regulations mandated by the State of California. Our students faced challenges such as

20 online classes, loss of jobs, and corresponding delays in completion due to externship restrictions..

21 Furthermore, the State's COVID-19 regulations effected our *future* enrollment and related

22 projections by placing specific in-person limitations and other restrictive guidelines that limited

23 students and the number of personnel in any given classroom or instructional medical facility.

24     5.    Despite the pandemic and related restrictions, Advanced College, like almost all

25 businesses in the COVID-19 era, has adapted to new methods and developed resources to ensure

26 the success of the business with current restrictions and guidelines. We are slowly transitioning

27 back to classrooms and medical facilities with a limited number of students in class per session,

28

KLINEDINST PC
801 K STREET, SUITE 2100
SACRAMENTO, CALIFORNIA 95814

1 and trying to steadily increase the number of class sessions throughout each day to meet business

2 projections.

3     6.     During the last year, I have diligently worked to ensure that my businesses—most

4 importantly the emergency and ICU departments in rural and underserved communities and

5 Advanced College, which trains and prepares front-line healthcare workers—have continued to

6 operate. If any of my businesses were to shutter or have their assets frozen in the manner

7 requested by BOW, I have no doubt that it would do irreparable harm to these companies and

8 force massive shutdowns in an area of this country already ravaged by a struggling healthcare

9 system, and the obvious strain imposed in responding to the pandemic and other emergencies as

10 necessary (e.g., California wildfires in this region as seen in recent years).

11     7.     Moreover, my personal assets, while not directly involved with these businesses,

12 are exempt under the following applicable provisions:

13     •     Earnings - I earn personal income in the total annual amount of $480,000 and those

14        earnings remain subject to earnings exemption.

15     •     Necessary Funds for Support of Family - As of today, my monthly familial

16        expenses, including amounts necessary to provide food and shelter to my family,

17        are $35,327.45 and remain subject to exemption.

18     8.     I understand that The Bank of the West seeks to "attach" to my alleged interests in

19 other assets. However, I do not maintain any of the following assets:

20        a.     Any dividend, distribution, loan repayment, or any other payment or claim
       owing or to be made to Defendant from the following business entity(ies):

22        (A) AJRAND LLC, California LLC No. 201125810148
       (B) GMRAND LLC, California LLC No. 201129010069
23        (C) MGRAND LLC, California LLC No. 201125810139
       (D) Riverbank Real Estate LLC, California LLC No. 201616710106
24        (E) EK ONKAR LLC, California LLC No. 201220110187
       (F) Jadalin LLC, California LLC No. 201216810848
25        (G) Modesto City Center Holdings LLC, California LLC No. 201705210127
       (H) Southgate Holdings LLC, California LLC No. 201704410065
26        (I) Colusa Medical Center, California LLC No. 201623510287
       (J) Pacific Gardens Medical Center, California LLC No. 201713110094
27        (K) Medarts LLC, California LLC No. 201703310372
28        (L) Sonoma Specialty Hospital LLC, California LLC No. 201822110127

KLINEDINST PC
801 K STREET, SUITE 2100
SACRAMENTO, CALIFORNIA 95814

Filed 04/04/24

(M) JUSRAND LLC, California LLC No. 201619310222
(N) Central Valley Specialty Hospital
(O) Progressive Urgent Care Center Inc.
(P) Advanced College
(Q) Progressive Home & Health Hospice
(R) Progressive Specialty Therapy Services
(S) American Specialty Ambulance dba Cal Specialty Ambulance
(T) Central Valley Post Acute — Riverbank
(U) Sonoma Specialty Hospital Glenn Medical Center

b.      Accounts receivable, chattel paper, and general intangibles arising out of the conduct by the defendant of a trade, business, or profession, except any such individual claim with a principal balance of less than one hundred fifty dollars ($150) (C.C.P. §§ 487.010(c)(2)), including but not limited to the following LLC interests, partnership interests, and notes receivable:

(A) AJRAND LLC, California LLC No. 201125810148
(B) GMRAND LLC, California LLC No. 201129010069
(C) MGRAND LLC, California LLC No. 201125810139
(D) Riverbank Real Estate LLC, California LLC No. 201616710106
(E) EK ONKAR LLC, California LLC No. 201220110187
(F) Jadalin LLC, California LLC No. 201216810848
(G) Modesto City Center Holdings LLC, California LLC No. 201705210127
(H) Southgate Holdings LLC, California LLC No. 201704410065
(I) Colusa Medical Center, California LLC No. 201623510287
(J) Pacific Gardens Medical Center, California LLC No. 201713110094
(K) Medarts LLC, California LLC No. 201703310372
(L) Sonoma Specialty Hospital LLC, California LLC No. 201822110127
(M) JUSRAND LLC, California LLC No. 201619310222

c.      Equipment. (C.C.P. §§ 487.010(c)(3))
d.      Farm products. (C.C.P. §§ 487.010(c)(4))
e.      Inventory. (C.C.P. §§ 487.010(c)(5))
f.      Final money judgments
g.      Negotiable documents of title. (C.C.P. §§ 487.010(c)(8).)
h.      Personal bank accounts at Union Bank; Wells Fargo Bank; or Provident Bank.

As to the remainder of any of my personal bank accounts, I request that such personal support and earnings exemptions apply to such accounts.

9.      Additionally, I wanted to assert that The Bank of the West's actions in relation to the Forbearance Agreement and defaults have been, in my opinion, utterly unconscionable. And I fully intend to pursue affirmative defenses related to predatory lending and discriminatory practices as has occurred during the alleged default periods. More specifically, despite the

KLINEDINST PC
801 K STREET, SUITE 2100
SACRAMENTO, CALIFORNIA 95814

4

contentions by The Bank of the West, my companies have been in contact to try to amicably resolve the alleged defaults. And, during that time, The Bank of the West representatives have treated me and my representatives poorly and in an implicitly biased and sometimes overtly biased manner, including but not limited to asking me to repeat myself constantly due to my East Indian accent. For instance, last year, I had a phone call with Robin Oberg from Bank of the West regarding some business matters. Throughout the phone call he made remarks that there was no way the bank will want to do business moving forward, after asking me several times to repeat myself for what I was asking in a very derogatory manner. He made statements such as "I cannot comprehend anything you are saying" and "you are difficult to understand, your Indian accent is very heavy."

   10.  In addition to the discriminatory practices outlined above, I have heard from other The Bank of the West representatives who informed me that they did not know why the upper level management was treating me so poorly in relation to the alleged defaults given that numerous borrowers were provided accommodations due to the financial pressures caused by COVID-19 on businesses, personal borrowers, and residential borrowers. Moreover, The Bank of the West essentially forced me, under the economic duress of losing all of my assets, to sign a Forbearance Agreement which never provided me ample time during 2020 to refinance with either The Bank of the West or any other financial institution when the financial sector was not fully operational on such refinancing processes during the COVID-19 pandemic.

   11.  In 2020, during the time that BOW alleges my companies were in "default," we permitted The Bank of the West to fully appreciate the commercial properties securing the loans relevant herein. Specifically, The Bank of the West actually inspected, appraised, and determined the fair market values of real property commonly known as 5258-5260 Pirrone Court, Salida, California ("Salida Property") and 13180 Paramount Boulevard, South Gate, California ("South Gate Property"). Based upon those appraisals, I am aware and BOW is obviously aware that there remains sufficient real property value as needed to satisfy judgment, even in the worst-case scenario that BOW is entitled to foreclose on the real property secured interests.

5

DECLARATION OF DR. GURPREET SINGH

12. Around May and June of 2020, BOW left me no choice but to sign a "loan modification" which was in fact nothing more than a forbearance of only several months to refinance during a time when they knew it was utterly impossible to do so due to the inability of certain institutions to lend during the COVID-19 pandemic. They gave me no other options, and made clear that they would immediately proceed with foreclosure on the properties, despite the fact that the loans were current. The consequences of a foreclosure would have been disastrous for Advanced College's businesses and its medical students. As part of the forbearance, I placed $500,000 into a separate account. BOW indicated that they would be willing to work with us for a real modification at the end of the forbearance period, but instead BOW took the $500,000 without telling me and to this day I do not know how or if at all the money was applied to any of the loans.

13. Thus, if The Bank of the West truly intends to seize my personal assets via this application, I believe it is unnecessary and being done for an improper purpose to harm me personally and, again, to discriminate against me personally. BOW has more than adequate real property secured to these interests and has not accounted for moneys and assets frozen after the alleged defaults. I am informed and believe that BOW should fully understand that, even if it were hypothetically to obtain all the judicial relief, the secured interests in the real estate of the South Gate and Salida Properties would be more than sufficient to satisfy any judgment as they contend is necessary in this writ, even though I fully intend to defend this action and prove that BOW has continued to discriminate against me and my companies and prove applicable offset to certain loans fully repaid.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed on this 15th day of April, 2021, at Modcit, California.

Dr. Gurpreet Singh

19403659.2

DECLARATION OF DR. GURPREET SINGH

KLINEDINST PC
801 K STREET, SUITE 2100
SACRAMENTO, CALIFORNIA 95814

## PROOF OF SERVICE

**Bank of the West v. JUSRAND, LLC, et al.**
**Case No. CV-20-005206**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 2 Park Plaza, Suite 1250, Irvine, California 92614.

On April 15, 2021, I served true copies of the following document(s) described as **DECLARATION OF DR. GURPREET SINGH IN SUPPORT OF OPPOSITION TO BANK OF THE WEST'S APPLICATION FOR WRIT OF ATTACHMENT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address lsamson@klinedinstlaw.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 15, 2021, at Irvine, California.

/s/ Linda Samson
Linda Samson

KLINEDINST PC
801 K STREET, SUITE 2100
SACRAMENTO, CALIFORNIA 95814

**SERVICE LIST**
***Bank of the West v. JUSRAND, LLC, et al.***
**Case No. CV-20-005206**

William J. Sexton, Esq.
Hemar, Rousso & Heald, LLP
15910 Ventura Blvd., 12th Floor
Encino, CA 91436

Tel:  (818) 501-3800
Email:  wsexton@hrhlaw.com

Counsel for Plaintiff

KLINEDINST PC
801 K STREET, SUITE 2100
SACRAMENTO, CALIFORNIA 95814

DECLARATION OF DR. GURPREET SINGH

**MCCJ Supplemental Request for Judicial Notice**

12.　　　Pleadings filed in the Stanislaus County Superior Court
in ***Bank of the West v. JUSRAND, LLC, Gurpreet Singh, et
al*., Case No. CV-20-005206**

　　　　C.　　**Right to Attach Order and Order for Issuance of
Writ of Attachment After Hearing**, filed May 20,
2021

AT-120

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| William J. Sexton (SNB 164929)<br>HEMAR, ROUSSO & HEALD, LLP<br>15910 Ventura Blvd.<br>12th Floor<br>Encino, CA 91436<br>TELEPHONE NO.: (818) 501-3800     FAX NO. (Optional): (818) 501-2985<br>E-MAIL ADDRESS (Optional): wsexton@hrhlaw.com<br>ATTORNEY FOR (Name): Plaintiff BANK OF THE WEST | Electronically Filed<br>5/20/2021 2:58 PM<br>Superior Court of California<br>County of Stanislaus<br>Clerk of the Court<br>By: Angela Morales, Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** STANISLAUS
STREET ADDRESS: 800 11th Street
MAILING ADDRESS:
CITY AND ZIP CODE: Modesto, CA 95354
BRANCH NAME:

PLAINTIFF: BANK OF THE WEST

DEFENDANT: JUSRAND LLC, et. al.

| [X] **RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT AFTER HEARING**<br>[ ] **ORDER FOR ISSUANCE OF ADDITIONAL WRIT OF ATTACHMENT AFTER HEARING** | CASE NUMBER:<br>CV-20-005206 |
|---|---|

1. a. The application of plaintiff (name): BANK OF THE WEST
   for  [X]  a right to attach order and order for issuance of writ of attachment
        [ ]  an order for issuance of additional writ of attachment
   against the property of defendant (name): GURPREET SINGH, an individual
   came on for hearing as follows:
   (1) Judge (name): Sonny S. Sandhu
   (2) Hearing date: April 22, 2021     Time: 8:30 a.m.  [X] Dept.:24    [ ] Div.:    [ ] Rm.:
   b. The following persons were present at the hearing:
   (1) [ ] Plaintiff (name): BANK OF THE WEST     (3) [X] Plaintiff's attorney (name): William J. Sexton
   (2) [ ] Defendant (name): GURPREET SINGH,     (4) [X] Defendant's attorney (name): Ian Rambarran
       an individual

2. THE COURT FINDS                     **FINDINGS**
   a. Defendant (specify name):  GURPREET SINGH, an individual  is a  [X]  natural person    [ ]  partnership
      [ ] unincorporated association    [ ] corporation    [ ] other (specify):
   b. The claim upon which the application is based is one upon which an attachment may be issued.
   c. Plaintiff has established the probable validity of the claim upon which the attachment is based.
   d. The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
   e. The amount to be secured by the attachment is greater than zero.
   f. [X] Defendant failed to prove that all the property described in plaintiff's application is exempt from attachment.
   g. [ ] The following property of defendant, described in plaintiffs application
      (1) [ ] is exempt from attachment (specify):

      (2) [ ] is not exempt from attachment (specify):

   h. [ ] The following property, not described in plaintiff's application, claimed by defendant to be exempt,
      (1) [ ] is exempt from attachment (specify):

      (2) [ ] is not exempt from attachment (specify):

   i. [X] An undertaking in the amount of: $ 50,000.00     is required before a writ shall issue, and plaintiff
      [ ] has  [X] has not  filed an undertaking in that amount.
   j. A Right to Attach Order was issued on (date):                              pursuant to
      [ ] Code of Civil Procedure section 484.090 (on hearing)    [ ] Code of Civil Procedure section 485.220 (ex parte)
   k. [ ] other (specify):

Form Approved for Optional Use
Judicial Council of California
AT-120 [Rev. July 1, 2010]

**RIGHT TO ATTACH ORDER AFTER HEARING AND ORDER
FOR ISSUANCE OF WRIT OF ATTACHMENT (Attachment)**

Code of Civil Proc., §§ 482.030, 484.090;
Welfare & Institutions Code, § 15657.01



AT-120

| SHORT TITLE: BANK OF THE WEST v. JUSRAND et. al. | CASE NUMBER: CV-20-005206 |
|---|---|

**ORDER**

3. THE COURT ORDERS

   a. Plaintiff has a right to attach property of defendant *(name):* GURPREET SINGH, an individual

     in the amount of: $5,606,423.71

   b. ☐ The property described in items 2g(1) and 2h(1) of the findings is exempt and shall not be attached.

   c. The clerk shall issue   ☒   a writ of attachment   ☐   an additional writ of attachment   in the amount stated in item 3a
     ☐ forthwith   ☒   upon the filing of an undertaking in the amount of: $ 50,000.00

     (1) ☐ for any property of a defendant who is **not** a natural person for which a method of levy is provided.

     (2) ☒ for the property of a defendant who is a natural person that is subject to attachment under Code of Civil
         Procedure section 487.010 described as follows *(specify):* All property described in
         Attachment 9(c) hereto.  However, notwithstanding anything in
         Attachment 9(c), this Order shall not apply to property that is
         automatically exempt under C.C.P. Section 487.020, to include
         "Property which is necessary for the support of a defendant who is
         a natural person or the family of such defendant supported in whole
         or in part by the defendant" (C.C.P. Section 487.020(b)) and
         "'Earnings' as defined by [C.C.P.] Section 706.011" (C.C.P. Section
         487.020(b)).

     (3) ☐ for the property covered by a bulk sales notice with respect to a bulk transfer by defendant or the proceeds of sale
         of such property, described as follows *(specify):*

     (4) ☐ for plaintiff's pro rata share of proceeds from an escrow in which defendant's liquor license is sold. The license
         number is *(specify):*

   d. ☐ Defendant shall transfer to the levying officer possession of
     (1) ☐ any documentary evidence in defendant's possession of title to any property described in item 3c;
     (2) ☐ any documentary evidence in defendant's possession of debt owed to defendant described in item 3c;
     (3) ☐ the following property in defendant's possession *(specify):*

> **NOTICE TO DEFENDANT: FAILURE TO COMPLY WITH THIS ORDER MAY SUBJECT YOU TO ARREST AND PUNISHMENT FOR CONTEMPT OF COURT.**

   e. ☐ Other *(specify):*

   f. Total number of boxes checked in item 3: __3__

Date 4/26/2021

JUDICIAL OFFICER
Sonny S. Sandhu

AT-120 [Rev. July 1, 2010]

**RIGHT TO ATTACH ORDER AFTER HEARING AND ORDER FOR
ISSUANCE OF WRIT OF ATTACHMENT (Attachment)**

Page 2 of 2

### **ATTACHMENT 9(c)**

As to Defendant GURPREET SINGH, an individual ("Defendant"):

1. Any dividend, distribution, loan repayment, or any other payment or claim owing or to be made to Defendant from the following business entity(ies):

   (A)   AJRAND LLC, California LLC No. 201125810148
   (B)   GMRAND LLC, California LLC No. 201129010069
   (C)   MGRAND LLC, California LLC No. 201125810139
   (D)   Riverbank Real Estate LLC, California LLC No. 201616710106
   (E)   EK ONKAR LLC, California LLC No. 201220110187
   (F)   Jadalin LLC, California LLC No. 201216810848
   (G)   Modesto City Center Holdings LLC, California LLC No. 201705210127
   (H)   Southgate Holdings LLC, California LLC No. 201704410065
   (I)   Colusa Medical Center, California LLC No. 201623510287
   (J)   Pacific Gardens Medical Center, California LLC No. 201713110094
   (K)   Medarts LLC, California LLC No. 201703310372
   (L)   Sonoma Specialty Hospital LLC, California LLC No. 201822110127
   (M)   JUSRAND LLC, California LLC No. 201619310222
   (N)   Central Valley Specialty Hospital
   (O)   Progressive Urgent Care Center Inc.
   (P)   Advanced College
   (Q)   Progressive Home & Health Hospice
   (R)   Progressive Specialty Therapy Services
   (S)   American Specialty Ambulance dba Cal Specialty Ambulance
   (T)   Central Valley Post Acute – Riverbank
   (U)   Sonoma Specialty Hospital
   (V)   Glenn Medical Center

2. All real property in which Defendant has an interest, except leasehold estates with unexpired terms of less than one year (C.C.P. §§ 487.010(c)(1)), including but not limited to the following:

   (A)   1505 Rose Garden Court
         Modesto CA 95356-9369
         Stanislaus County APN 046-019-056, legally-described as follows:

         Lot 29 in Block 14515 of Kensington Park No. 2, in the County of Stanislaus, State of California, as per Map filed June 14, 2000 in Volume 39 of Maps, at Page 9, Stanislaus County Records.

3. Accounts receivable, chattel paper, and general intangibles arising out of the conduct by the defendant of a trade, business, or profession, except any such individual claim with a principal balance of less than one hundred fifty dollars ($150) (C.C.P. §§ 487.010(c)(2)), including but not limited to the following LLC interests, partnership interests, and notes receivable:

    (A)    AJRAND LLC, California LLC No. 201125810148
    (B)    GMRAND LLC, California LLC No. 201129010069
    (C)    MGRAND LLC, California LLC No. 201125810139
    (D)    Riverbank Real Estate LLC, California LLC No. 201616710106
    (E)    EK ONKAR LLC, California LLC No. 201220110187
    (F)    Jadalin LLC, California LLC No. 201216810848
    (G)    Modesto City Center Holdings LLC, California LLC No. 201705210127
    (H)    Southgate Holdings LLC, California LLC No. 201704410065
    (I)    Colusa Medical Center, California LLC No. 201623510287
    (J)    Pacific Gardens Medical Center, California LLC No. 201713110094
    (K)    Medarts LLC, California LLC No. 201703310372
    (L)    Sonoma Specialty Hospital LLC, California LLC No. 201822110127
    (M)    JUSRAND LLC, California LLC No. 201619310222

4. Equipment.  (C.C.P. §§ 487.010(c)(3).)

5. Farm products.  (C.C.P. §§ 487.010(c)(4).)

6. Inventory.  (C.C.P. §§ 487.010(c)(5).)

7. Final money judgments arising out of the conduct by the defendant of a trade, business, or profession.  (C.C.P. §§ 487.010(c)(6).)

8. Money on the premises where a trade, business, or profession is conducted by the defendant and, except for the first one thousand dollars ($1,000), money located elsewhere than on such premises and deposit accounts (C.C.P. §§ 487.010(c)(7)), including but not limited to the following:

    (A)    Accounts at Bank of the West
    (B)    Accounts at Union Bank
    (C)    Accounts at Tri Counties Bank
    (D)    Accounts at F&M Bank
    (E)    Accounts at Wells Fargo Bank
    (F)    Accounts at Provident Bank
    (G)    Accounts at Fremont Bank

9. Negotiable documents of title.  (C.C.P. §§ 487.010(c)(8).)

10. Instruments.  (C.C.P. §§ 487.010(c)(9).)

11. Securities (C.C.P. §§ 487.010(c)(10)).

12. Minerals or the like (including oil and gas) to be extracted.  (C.C.P. §§ 487.010(c)(11).)

**MCCJ Supplemental Request for Judicial Notice**

13.     California Department of Health Care Access and Information Records

       **2021 Pivot Data Table** - Hospital Annual Selected Data showing financial performance of each AAM-owned or operated hospital for 2021

       https://data.chhs.ca.gov/dataset/ea0c8ca9-023e-46a3-b95b-b9d4ab8ec195/resource/29bacfe7-a98d-4183-9282-a5803a3d4c6e/download/hafd2021-pivot.xls

    A.     **Central Valley Specialty Hospital: offered to show $7,431,140 in net income for the reporting period**

Date Printed:

## 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

**Report Periods Ended 1-1-2021 through 12-31-2021**

### Data by Type of Care

| | Total | General Acute | Psychiatric | Rehabilitation | Long-term Care | Chem Dep & Other |
|---|---|---|---|---|---|---|
| Licensed Beds | 96 | 0 | 0 | 0 | 96 | 0 |
| Licensed Bed Occ. Rate | 76.80% | 0.00% | 0.00% | 0.00% | 76.80% | 0.00% |
| Available Beds | 96 | | | | 96 | |
| Available Bed Occ. Rate | 76.80% | | | | 76.80% | |
| Patient Days (excl. nursery) | 26,910 | 0 | 0 | 0 | 26,910 | 0 |
| Discharges (excl. nursery) | 762 | 0 | 0 | 0 | 762 | 0 |
| Average Length of Stay (est.) | 35.31 | 0.00 | 0.00 | 0.00 | 35.31 | 0.00 |

### Income Statement

| | Total | Per Adjusted Day |
|---|---|---|
| Gross Patient Revenue | $ 211,917,060 | $ 7,875.03 |
| - Deductions from Revenue | 160,226,938 | 5,954.18 |
| + Capitation Premium Rev. | 0 | 0.00 |
| Net Patient Revenue | $ 51,690,122 | $ 1,920.85 |
| + Other Operating Revenue | 142,102 | 5.28 |
| Total Operating Revenue | $ 51,832,224 | $ 1,926.13 |
| - Operating Expenses | 51,004,395 | 1,895.37 |
| Net from Operations | $ 827,829 | $ 30.76 |
| + Non-Operating Revenue | 6,603,311 | 245.39 |
| - Non-Operating Expense | 0 | 0.00 |
| - Income Taxes | 0 | 0.00 |
| - Extraordinary Items | 0 | 0.00 |
| Net Income | $ 7,431,140 | $ 276.15 |

### Capitation Premium Revenue

| | |
|---|---|
| Medicare | $ 0 |
| Medi-Cal | 0 |
| Co. Indigent Programs | 0 |
| Other Managed Care | 0 |
| Total Capitation Rev. | $ 0 |

### Deductions from Revenue

| | |
|---|---|
| Medicare Cont Adj-Trad | $ 41,275,702 |
| Medicare Cont Adj-Mng Care | 0 |
| Medi-Cal Cont Adj-Trad | 1,476,857 |
| Medi-Cal Cont Adj-Mng Care | 0 |
| DSH (SB 855) Funds Rec'd | 0 |
| Co Indigent Cont Adj | 0 |
| Other 3rd Cont Adj-Trad. | 116,748,007 |
| Other 3rd Cont Adj-Mng Care | 0 |
| Provision for Bad Debts | 726,372 |
| Charity-Hill-Burton | 0 |
| Charity-Other | 0 |
| Gifts & Subs. Indigent Care | 0 |
| All Other Deductions | 0 |
| Total Deductions from Rev. | $ 160,226,938 |

### Other Utilization Statistics

| | |
|---|---|
| ER Visits | 0 |
| Clinic Visits | 0 |
| Home Health Visits | 0 |
| Referred O/P Visits | 0 |
| I/P Surgeries | 0 |
| O/P Surgeries | 0 |
| Purchased I/P Days | 0 |

### Equity Transfers

| | |
|---|---|
| DSH Funds Transferred | $ 0 |
| Nursery Days | 0 |
| Nursery Discharges | 0 |
| Natural Births | 0 |
| Cesarean Sections | 0 |

### Financial Ratios

| | |
|---|---|
| Current Ratio | 1.38 |
| Days in Accounts Receivable | 200.80 |
| Long-Term Debt to Net PPE | 171.89% |
| Long-Term Debt to Equity | 4.30% |
| Equity to Total Assets | 26.91% |
| Net Return on Total Assets | 5.09% |
| Patient Revenue Margin | 1.33% |
| Operating Margin | 1.60% |
| Total Margin | 14.34% |
| Net Income Margin | 12.72% |
| Cost-to-Charge Ratio | 24.00% |
| Net PPE Per Licensed Bed | $ 10,235 |

### Uncompensated Care Costs

| | |
|---|---|
| Charity-Other | $ 0 |
| Charity-Other + Bad Debt | 174,337 |
| Charity-Other + Bad Debt + CIP Cont. Adj. | 174,337 |

### Uncompensated Care Costs % of Operating Expenses

| | |
|---|---|
| Charity % of Operating Expenses | 0.00% |
| Charity + Bad Debt % Operating Expenses | 0.34% |
| Charity+Bad Debt+CIP Cont Adj % of Op. Exp. | 0.34% |

### Profile Characteristics

| | |
|---|---|
| No. of Hospitals | 1 |
| Hospital Name | CENTRAL VALLEY SPECIALTY HOSPITAL |
| County | (All) |
| HSA | (All) |
| HFPA | (All) |
| Type of Control | (All) |
| Type of Care | (All) |
| Health Systems | (All) |
| Teach & Rural Hosp | (All) |
| DSH Hospital? | (All) |
| Licensed Bed Size | (All) |
| LTC Day % | (All) |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| Financial and Utilization Data by Payer Category | Total | Medicare Traditional | Medicare Managed Care | Medi-Cal Traditional | Medi-Cal Managed Care |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 26,910 | 8,062 | 0 | 206 | 0 |
| Discharges (excl. nursery) | 762 | 340 | 0 | 6 | 0 |
| Average Length of Stay (est.) | 35.31 | 23.71 | 0.00 | 34.33 | 0.00 |
| Outpatient Visits | 0 | 0 | 0 | 0 | 0 |
| Gross Inpatient Revenue | $ 211,917,060 | $ 54,840,079 | $ 0 | $ 1,962,195 | $ 0 |
| Gross Outpatient Revenue | 0 | 0 | 0 | 0 | 0 |
| Gross Patient Revenue | $ 211,917,060 | $ 54,840,079 | $ 0 | $ 1,962,195 | $ 0 |
| - Deductions from Rev | 160,226,938 | 41,463,673 | 0 | 1,483,583 | 0 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 51,690,122 | $ 13,376,406 | $ 0 | $ 478,612 | $ 0 |
| Percent of Gross Revenue | 24.39% | 24.39% | 0.00% | 24.39% | 0.00% |
| Expenses (est.) | $ 50,862,293 | $ 13,162,188 | $ 0 | $ 470,947 | $ 0 |
| Payment Shortfall | $ 827,829 | $ 214,218 | $ 0 | $ 7,665 | $ 0 |
| Adjusted Patient Days | 26,910 | 8,062 | 0 | 206 | 0 |
| | | | | | |
| Gross I/P Rev Per Day | $ 7,875 | $ 6,802 | $ 0 | $ 9,525 | $ 0 |
| Gross I/P Rev Per Discharge | 278,106 | 161,294 | $ 0 | 327,033 | $ 0 |
| Gross O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |
| Net I/P Rev Per Day | $ 1,921 | $ 1,659 | $ 0 | $ 2,323 | $ 0 |
| Net I/P Rev Per Discharge | 67,835 | 39,342 | $ 0 | 79,769 | $ 0 |
| Net O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |

| Financial and Utilization Data by Payer Category | County Indigent Programs | Other Third Parties Traditional | Other Third Parties Managed Care | Other Indigent | Other Payers All Other Payers |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 0 | 18,642 | 0 | 0 | 0 |
| Discharges (excl. nursery) | 0 | 416 | 0 | 0 | 0 |
| Average Length of Stay | 0.00 | 44.81 | 0.00 | 0.00 | 0.00 |
| Outpatient Visits | 0 | 0 | 0 | 0 | 0 |
| Gross Inpatient Revenue | $ 0 | $ 155,114,786 | $ 0 | $ 0 | $ 0 |
| Gross Outpatient Revenue | 0 | 0 | 0 | 0 | 0 |
| Gross Patient Revenue | $ 0 | $ 155,114,786 | $ 0 | $ 0 | $ 0 |
| - Deductions from Rev | 0 | 117,279,682 | 0 | 0 | 0 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 0 | $ 37,835,104 | $ 0 | $ 0 | $ 0 |
| Percent of Gross Revenue | 0.00% | 24.39% | 0.00% | 0.00% | 0.00% |
| Expenses (est.) | $ 0 | $ 37,229,158 | $ 0 | $ 0 | $ 0 |
| Payment Shortfall | $ 0 | $ 605,946 | $ 0 | $ 0 | $ 0 |
| Adjusted Patient Days | 0 | 18,642 | 0 | 0 | 0 |
| | | | | | |
| Gross I/P Rev Per Day | $ 0 | $ 8,321 | $ 0 | $ 0 | $ 0 |
| Gross I/P Rev Per Discharge | $ 0 | 372,872 | $ 0 | $ 0 | $ 0 |
| Gross O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |
| Net I/P Rev Per Day | $ 0 | $ 2,030 | $ 0 | $ 0 | $ 0 |
| Net I/P Rev Per Discharge | $ 0 | 90,950 | $ 0 | $ 0 | $ 0 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**　　**2021 HCAI Hospital Annual Financial Data Profile**
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

Net O/P Rev Per Visit

$ 0　　$ 0　　$ 0　　$ 0　　$ 0

Source:  HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**Report Periods Ended 1-1-2021 through 12-31-2021**

# 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

Date Printed:

## BALANCE SHEET - UNRESTRICTED FUND

| Assets | | % of Total |
|---|---:|---:|
| Current Assets | $ 145,048,379 | 99.33% |
| Limited Use Assets | 0 | 0.00% |
| Net PPE | 982,601 | 0.67% |
| Construction-in-Progress | 0 | 0.00% |
| Investments & Other Assets | 0 | 0.00% |
| Intangible Assets | 0 | 0.00% |
| Total Assets | $ 146,030,980 | 100.00% |

| Liabilities and Equity | | % of Total |
|---|---:|---:|
| Current Liabilities | $ 104,814,067 | 71.78% |
| Deferred Credits | 224,005 | 0.15% |
| Net Long-Term Debt | 1,688,978 | 1.16% |
| Total Liabilities | $ 106,727,050 | 73.09% |
| Equity | 39,303,930 | 26.91% |
| Total Liabilities & Equity | $ 146,030,980 | 100.00% |

| | | % of Total |
|---|---:|---:|
| Cash | $ 4,672,587 | 3.20% |
| Total PPE | 3,686,686 | 2.52% |
| Intercompany Receivables | 111,529,595 | 76.37% |

| | | % of Total |
|---|---:|---:|
| Mortgage Notes | $ 0 | 0.00% |
| Bonds Payable | $ 0 | 0.00% |
| Intercompany Payables | $ 71,506,401 | 48.97% |

## Direct Expense by Natural Classification

| | | Per Adjusted Day | % of Total Exp |
|---|---:|---:|---:|
| Salaries & Wages | $ 20,775,910 | $ 772.05 | 40.73% |
| Employee Benefits | 3,802,578 | 141.31 | 7.46% |
| Physician Pro. Fees | 2,185,960 | 81.23 | 4.29% |
| Other Pro. Fees | 124,909 | 4.64 | 0.24% |
| Supplies | 6,133,784 | 227.94 | 12.03% |
| Purchased Services | 5,184,832 | 192.67 | 10.17% |
| Depreciation | 483,795 | 17.98 | 0.95% |
| Leases & Rentals | 4,760,110 | 176.89 | 9.33% |
| Insurance | 1,690,012 | 62.80 | 3.31% |
| Interest | 128,197 | 4.76 | 0.25% |
| All Other Expenses | 5,734,308 | 213.09 | 11.24% |
| Total Operating Expenses | $ 51,004,395 | $ 1,895.37 | 100.00% |

## Direct Expense by Cost Center Group

| | | % of Total Exp |
|---|---:|---:|
| Daily Hospital Svcs. | $ 18,356,322 | 35.99% |
| Ambulatory Services | 0 | 0.00% |
| Ancillary Services | 8,676,219 | 17.01% |
| Purch. I/P & O/P Svcs. | 0 | 0.00% |
| Research | $ 0 | 0.00% |
| Education | 0 | 0.00% |
| General Services | 7,950,756 | 15.59% |
| Fiscal Services | 899,774 | 1.76% |
| Administrative Svcs. | 8,056,557 | 15.80% |
| Unassigned Costs | 7,064,767 | 13.85% |
| Total Operating Exp. | $ 51,004,395 | 100.00% |

## Labor Productivity by Employee Classification

| Employee Classification | Productive Hours | Hours Per Adjusted Day | % of Total Hours | Productive FTEs | FTEs Per Adj. Occupied Bed |
|---|---:|---:|---:|---:|---:|
| Management & Supervision | 55,096 | 2.05 | 8.24% | 26.49 | 0.36 |
| Technical & Specialist | 92,959 | 3.45 | 13.90% | 44.69 | 0.61 |
| Registered Nurses | 169,327 | 6.29 | 25.32% | 81.41 | 1.10 |
| Licensed Voc. Nurses | 68,479 | 2.54 | 10.24% | 32.92 | 0.45 |
| Aides & Orderlies | 43,952 | 1.63 | 6.57% | 21.13 | 0.29 |
| Clerical & Other Admin. | 43,155 | 1.60 | 6.45% | 20.75 | 0.28 |
| Environ. & Food Services | 47,287 | 1.76 | 7.07% | 22.73 | 0.31 |
| All Other Employees | 148,501 | 5.52 | 22.21% | 71.39 | 0.97 |
| Total Productive Hours | 668,756 | 24.85 | 100.00% | 321.52 | 4.36 |
| Total Paid Hours | 819,225 | 30.44 | | 393.86 | 5.34 |

Source:  HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**MCCJ Supplemental Request for Judicial Notice**

13.　　　　California Department of Health Care Access and
　　　　　　Information Records

　　　　　　**2021 Pivot Data Table** - Hospital Annual Selected Data
　　　　　　showing financial performance of each AAM-owned or
　　　　　　operated hospital for 2021

　　　　　　https://data.chhs.ca.gov/dataset/ea0c8ca9-023e-46a3-b95b-
　　　　　　b9d4ab8ec195/resource/29bacfe7-a98d-4183-9282-
　　　　　　a5803a3d4c6e/download/hafd2021-pivot.xls

　　　　B.　　**Coalinga Regional Medical Center: offered to
　　　　　　show a net loss of $10,300,394 for the reporting
　　　　　　period**

Date Printed:

# 2021 HCAI Hospital Annual Financial Data Profile
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

**Report Periods Ended 1-1-2021 through 12-31-2021**

| Data by Type of Care | Total | General Acute | Psychiatric | Rehabilitation | Long-term Care | Chem Dep & Other |
|---|---|---|---|---|---|---|
| Licensed Beds | 48 | 22 | 0 | 0 | 26 | 0 |
| Licensed Bed Occ. Rate | 60.11% | 14.74% | 0.00% | 0.00% | 98.51% | 0.00% |
| Available Beds | 48 | | | | | |
| Available Bed Occ. Rate | 60.11% | 14.74% | 0.00% | 0.00% | 98.51% | 0.00% |
| Patient Days (excl. nursery) | 6,088 | 684 | 0 | 0 | 5,404 | 0 |
| Discharges (excl. nursery) | 263 | 216 | 0 | 0 | 47 | 0 |
| Average Length of Stay (est.) | 23.15 | 3.17 | 0.00 | 0.00 | 114.98 | 0.00 |

## Income Statement

| | | Per Adjusted Day |
|---|---|---|
| Gross Patient Revenue | $ 13,062,096 | $ 644.80 |
| - Deductions from Revenue | 7,142,583 | 352.59 |
| + Capitation Premium Rev. | 0 | 0.00 |
| Net Patient Revenue | $ 5,919,513 | $ 292.21 |
| + Other Operating Revenue | 78,053 | 3.85 |
| Total Operating Revenue | $ 5,997,566 | $ 296.07 |
| - Operating Expenses | 15,373,059 | 758.88 |
| Net from Operations | ($9,375,493) | ($462.82) |
| + Non-Operating Revenue | 121,631 | 6.00 |
| - Non-Operating Expense | 1,046,532 | 51.66 |
| - Income Taxes | 0 | 0.00 |
| - Extraordinary Items | 0 | 0.00 |
| Net Income | ($10,300,394) | ($508.47) |

## Financial Ratios

| | |
|---|---|
| Current Ratio | 0.37 |
| Days in Accounts Receivable | 194.80 |
| Long-Term Debt to Net PPE | 0.00% |
| Long-Term Debt to Equity | 0.00% |
| Equity to Total Assets | (154.30%) |
| Net Return on Total Assets | (153.58%) |
| Patient Revenue Margin | (159.70%) |
| Operating Margin | (156.32%) |
| Total Margin | (171.74%) |
| Net Income Margin | (168.33%) |
| Cost-to-Charge Ratio | 117.09% |
| Net PPE Per Licensed Bed | $ 8,042 |

## Uncompensated Care Costs

| | |
|---|---|
| Charity-Other | $ 0 |
| Charity-Other + Bad Debt | 0 |
| Charity-Other + Bad Debt + CIP Cont. Adj. | 0 |

## Uncompensated Care Costs % of Operating Expenses

| | |
|---|---|
| Charity % of Operating Expenses | 0.00% |
| Charity + Bad Debt % Operating Expenses | 0.00% |
| Charity+Bad Debt+CIP Cont Adj % of Op. Exp. | 0.00% |

## Deductions from Revenue

| | |
|---|---|
| Medicare Cont Adj-Trad | $ 537,048 |
| Medicare Cont Adj-Mng Care | 0 |
| Medi-Cal Cont Adj-Trad | 4,098,250 |
| Medi-Cal Cont Adj-Mng Care | 0 |
| DSH (SB 855) Funds Rec'd | 0 |
| Co Indigent Cont Adj | 0 |
| Other 3rd Cont Adj-Trad. | 0 |
| Other 3rd Cont Adj-Mng Care | 0 |
| Provision for Bad Debts | 1,599,145 |
| Charity-Hill-Burton | 0 |
| Charity-Other | 0 |
| Gifts & Subs. Indigent Care | 0 |
| All Other Deductions | 908,140 |
| Total Deductions from Rev. | $ 7,142,583 |

## Capitation Premium Revenue

| | |
|---|---|
| Medicare | $ 0 |
| Medi-Cal | 0 |
| Co. Indigent Programs | 0 |
| Other Managed Care | 0 |
| Total Capitation Rev. | $ 0 |

## Other Utilization Statistics

| | |
|---|---|
| ER Visits | 2,678 |
| Clinic Visits | 0 |
| Home Health Visits | 0 |
| Referred O/P Visits | 0 |
| I/P Surgeries | 0 |
| O/P Surgeries | 0 |
| Purchased I/P Days | 0 |

## Equity Transfers

| | |
|---|---|
| DSH Funds Transferred | $ 0 |
| Nursery Days | 0 |
| Nursery Discharges | 0 |
| Natural Births | 0 |
| Cesarean Sections | 0 |

## Profile Characteristics

| | |
|---|---|
| No. of Hospitals | 1 |
| Hospital Name | COALINGA REGIONAL MEDICAL CENTER |
| County | (All) |
| HSA | (All) |
| HFPA | (All) |
| Type of Control | (All) |
| Type of Care | (All) |
| Health Systems | (All) |
| Teach & Rural Hosp | (All) |
| DSH Hospital? | (All) |
| Licensed Bed Size | (All) |
| LTC Day % | (All) |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| Financial and Utilization Data by Payer Category | Total | Medicare Traditional | Medicare Managed Care | Medi-Cal Traditional | Medi-Cal Managed Care |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 6,088 | 3,545 | 0 | 2,006 | 0 |
| Discharges (excl. nursery) | 263 | 68 | 0 | 94 | 0 |
| Average Length of Stay (est.) | 23.15 | 52.13 | 0.00 | 21.34 | 0.00 |
| Outpatient Visits | 2,678 | 164 | 0 | 1,393 | 0 |
| Gross Inpatient Revenue | $ 3,925,557 | $ 1,296,805 | $ 0 | $ 1,537,805 | $ 0 |
| Gross Outpatient Revenue | 9,136,539 | 846,133 | 0 | 4,195,379 | 0 |
| Gross Patient Revenue | $ 13,062,096 | $ 2,142,938 | $ 0 | $ 5,733,184 | $ 0 |
| - Deductions from Rev | 7,142,583 | 537,048 | 0 | 4,098,250 | 0 |
| + Capitation Premium Rev | 0 | | 0 | | 0 |
| Net Patient Revenue | $ 5,919,513 | $ 1,605,890 | $ 0 | $ 1,634,934 | $ 0 |
| Percent of Gross Revenue | 45.32% | 74.94% | 0.00% | 28.52% | 0.00% |
| Expenses (est.) | $ 15,295,006 | $ 2,509,264 | $ 0 | $ 6,713,248 | $ 0 |
| Payment Shortfall | ($9,375,493) | ($903,374) | $ 0 | ($5,078,314) | $ 0 |
| Adjusted Patient Days | 20,258 | 5,858 | 0 | 7,479 | 0 |
| | | | | | |
| Gross I/P Rev Per Day | $ 645 | $ 366 | $ 0 | $ 767 | $ 0 |
| Gross I/P Rev Per Discharge | 14,926 | 19,071 | $ 0 | 16,360 | $ 0 |
| Gross O/P Rev Per Visit | 3,412 | 5,159 | $ 0 | 3,012 | $ 0 |
| Net I/P Rev Per Day | $ 292 | $ 274 | $ 0 | $ 219 | $ 0 |
| Net I/P Rev Per Discharge | 6,764 | 14,291 | $ 0 | 4,665 | $ 0 |
| Net O/P Rev Per Visit | 1,546 | 3,866 | $ 0 | 859 | $ 0 |

| Financial and Utilization Data by Payer Category | County Indigent Programs | Other Third Parties Traditional | Other Third Parties Managed Care | Other Payers Other Indigent | Other Payers All Other Payers |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 0 | 403 | 0 | 0 | 134 |
| Discharges (excl. nursery) | 0 | 76 | 0 | 0 | 25 |
| Average Length of Stay | 0.00 | 5.30 | 0.00 | 0.00 | 5.36 |
| Outpatient Visits | 0 | 797 | 0 | 0 | 324 |
| Gross Inpatient Revenue | $ 0 | $ 834,168 | $ 0 | $ 0 | $ 256,779 |
| Gross Outpatient Revenue | 0 | 2,989,768 | 0 | 0 | 1,105,259 |
| Gross Patient Revenue | $ 0 | $ 3,823,936 | $ 0 | $ 0 | $ 1,362,038 |
| - Deductions from Rev | 0 | 1,599,145 | 0 | 0 | 908,140 |
| + Capitation Premium Rev | 0 | | 0 | | 0 |
| Net Patient Revenue | $ 0 | $ 2,224,791 | $ 0 | $ 0 | $ 453,898 |
| Percent of Gross Revenue | 0.00% | 58.18% | 0.00% | 0.00% | 33.32% |
| Expenses (est.) | $ 0 | $ 4,477,622 | $ 0 | $ 0 | $ 1,594,873 |
| Payment Shortfall | $ 0 | ($2,252,831) | $ 0 | $ 0 | ($1,140,975) |
| Adjusted Patient Days | 0 | 1,847 | 0 | 0 | 711 |
| | | | | | |
| Gross I/P Rev Per Day | $ 0 | $ 2,070 | $ 0 | $ 0 | $ 1,916 |
| Gross I/P Rev Per Discharge | 0 | 10,976 | 0 | 0 | 10,271 |
| Gross O/P Rev Per Visit | 0 | 3,751 | 0 | 0 | 3,411 |
| Net I/P Rev Per Day | $ 0 | $ 1,204 | $ 0 | $ 0 | $ 639 |
| Net I/P Rev Per Discharge | 0 | 6,386 | 0 | 0 | 3,423 |

Source: HCAI Hospital Annual Disclosure Reports
(Based on 04-19-2023 data extract)

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

**2021 HCAI Hospital Annual Financial Data Profile**
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

Net O/P Rev Per Visit    $ 0    2,183    $ 0    $ 0    1,137

Source: HCAI Hospital Annual Disclosure Reports
(Based on 04-19-2023 data extract)

**Report Periods Ended 1-1-2021 through 12-31-2021**

# 2021 HCAI Hospital Annual Financial Data Profile
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

## BALANCE SHEET - UNRESTRICTED FUND

| Assets | | % of Total |
|---|---:|---:|
| Current Assets | $ 6,320,714 | 94.24% |
| Limited Use Assets | 0 | 0.00% |
| Net PPE | 386,039 | 5.76% |
| Construction-in-Progress | 0 | 0.00% |
| Investments & Other Assets | 0 | 0.00% |
| Intangible Assets | 0 | 0.00% |
| Total Assets | $ 6,706,753 | 100.00% |

| Liabilities and Equity | | % of Total |
|---|---:|---:|
| Current Liabilities | $ 17,055,422 | 254.30% |
| Deferred Credits | 0 | 0.00% |
| Net Long-Term Debt | 0 | 0.00% |
| Total Liabilities | $ 17,055,422 | 254.30% |
| Equity | (10,348,669) | (154.30%) |
| Total Liabilities & Equity | $ 6,706,753 | 100.00% |

| | | % of Total |
|---|---:|---:|
| Cash | $ 441,588 | 6.58% |
| Total PPE | 412,934 | 6.16% |
| Intercompany Receivables | 414,192 | 6.18% |
| Mortgage Notes | $ 0 | 0.00% |
| Bonds Payable | $ 0 | 0.00% |
| Intercompany Payables | $ 15,632,808 | 233.09% |

## Direct Expense by Natural Classification

| | | Per Adjusted Day | % of Total Exp |
|---|---:|---:|---:|
| Salaries & Wages | $ 4,714,690 | $ 232.74 | 30.67% |
| Employee Benefits | 1,024,422 | 50.57 | 6.66% |
| Physician Pro. Fees | 1,484,233 | 73.27 | 9.65% |
| Other Pro. Fees | 1,678,637 | 82.86 | 10.92% |
| Supplies | 1,569,502 | 77.48 | 10.21% |
| Purchased Services | 339,126 | 16.74 | 2.21% |
| Depreciation | 26,895 | 1.33 | 0.17% |
| Leases & Rentals | 1,153,286 | 56.93 | 7.50% |
| Insurance | 39,240 | 1.94 | 0.26% |
| Interest | 123,806 | 6.11 | 0.81% |
| All Other Expenses | 3,219,222 | 158.91 | 20.94% |
| Total Operating Expenses | $ 15,373,059 | $ 758.88 | 100.00% |

## Direct Expense by Cost Center Group

| | | % of Total Exp |
|---|---:|---:|
| Daily Hospital Svcs. | $ 4,747,240 | 30.88% |
| Ambulatory Services | 2,278,228 | 14.82% |
| Ancillary Services | 1,686,281 | 10.97% |
| Purch. I/P & O/P Svcs. | 0 | 0.00% |
| Research | $ 0 | 0.00% |
| Education | 0 | 0.00% |
| General Services | 4,016,058 | 26.12% |
| Fiscal Services | 298,624 | 1.94% |
| Administrative Svcs. | 1,716,263 | 11.16% |
| Unassigned Costs | 630,365 | 4.10% |
| Total Operating Exp. | $ 15,373,059 | 100.00% |

## Labor Productivity by Employee Classification

| Employee Classification | Productive Hours | Hours Per Adjusted Day | % of Total Hours | Productive FTEs | FTEs Per Adj. Occupied Bed |
|---|---:|---:|---:|---:|---:|
| Management & Supervision | 21,335 | 1.05 | 15.66% | 10.26 | 0.11 |
| Technical & Specialist | 29,353 | 1.45 | 21.54% | 14.11 | 0.15 |
| Registered Nurses | 13,511 | 0.67 | 9.91% | 6.50 | 0.07 |
| Licensed Voc. Nurses | 9,974 | 0.49 | 7.32% | 4.80 | 0.05 |
| Aides & Orderlies | 28,520 | 1.41 | 20.93% | 13.71 | 0.14 |
| Clerical & Other Admin. | 15,192 | 0.75 | 11.15% | 7.30 | 0.08 |
| Environ. & Food Services | 16,440 | 0.81 | 12.06% | 7.90 | 0.08 |
| All Other Employees | 1,945 | 0.10 | 1.43% | 0.94 | 0.01 |
| Total Productive Hours | 136,270 | 6.73 | 100.00% | 65.51 | 0.68 |
| Total Paid Hours | 152,974 | 7.55 | | 73.55 | 0.77 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**MCCJ Supplemental Request for Judicial Notice**

13.      California Department of Health Care Access and Information Records

     **2021 Pivot Data Table -** Hospital Annual Selected Data showing financial performance of each AAM-owned or operated hospital for 2021

     https://data.chhs.ca.gov/dataset/ea0c8ca9-023e-46a3-b95b-b9d4ab8ec195/resource/29bacfe7-a98d-4183-9282-a5803a3d4c6e/download/hafd2021-pivot.xls

C.      **Colusa Medical Center: offered to show a net loss of $951,675 for the reporting period**

# 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

**Report Periods Ended 1-1-2021 through 12-31-2021**

| Data by Type of Care | Total | General Acute | Psychiatric | Rehabilitation | Long-term Care | Chem Dep & Other |
|---|---|---|---|---|---|---|
| Licensed Beds | 48 | 42 | 0 | 0 | 6 | 0 |
| Licensed Bed Occ. Rate | 49.73% | 32.29% | 0.00% | 0.00% | 171.78% | 0.00% |
| Available Beds | 48 | | | | | |
| Available Bed Occ. Rate | 49.73% | | | | | |
| Patient Days (excl. nursery) | 8,712 | 4,950 | 0 | 0 | 3,762 | 0 |
| Discharges (excl. nursery) | 1,025 | 941 | 0 | 0 | 84 | 0 |
| Average Length of Stay (est.) | 8.50 | 5.26 | 0.00 | 0.00 | 44.79 | 0.00 |

## Income Statement

| | | Per Adjusted Day |
|---|---|---|
| Gross Patient Revenue | $ 64,973,788 | $ 3,160.41 |
| - Deductions from Revenue | 39,005,602 | 1,897.28 |
| + Capitation Premium Rev. | 0 | 0.00 |
| Net Patient Revenue | $ 25,968,186 | $ 1,263.13 |
| + Other Operating Revenue | 126,688 | 6.16 |
| Total Operating Revenue | $ 26,094,874 | $ 1,269.29 |
| - Operating Expenses | 29,778,024 | 1,448.44 |
| Net from Operations | ($3,683,150) | ($179.15) |
| + Non-Operating Revenue | 2,731,475 | 132.86 |
| - Non-Operating Expense | 0 | 0.00 |
| - Income Taxes | 0 | 0.00 |
| - Extraordinary Items | 0 | 0.00 |
| Net Income | ($951,675) | ($46.29) |

## Deductions from Revenue

| | |
|---|---|
| Medicare Cont Adj-Trad | $ 18,645,402 |
| Medicare Cont Adj-Mng Care | 0 |
| Medi-Cal Cont Adj-Trad | 15,303,344 |
| Medi-Cal Cont Adj-Mng Care | 0 |
| DSH (SB 855) Funds Rec'd | 0 |
| Co Indigent Cont Adj | 0 |
| Other 3rd Cont Adj-Trad. | 0 |
| Other 3rd Cont Adj-Mng Care | 0 |
| Provision for Bad Debts | 4,744,720 |
| Charity-Hill-Burton | 0 |
| Charity-Other | 267,220 |
| Gifts & Subs. Indigent Care | 44,916 |
| All Other Deductions | 0 |
| Total Deductions from Rev. | $ 39,005,602 |

## Capitation Premium Revenue

| | |
|---|---|
| Medicare | $ 0 |
| Medi-Cal | 0 |
| Co. Indigent Programs | 0 |
| Other Managed Care | 0 |
| Total Capitation Rev. | $ 0 |

## Other Utilization Statistics

| | |
|---|---|
| ER Visits | 4,777 |
| Clinic Visits | 24,816 |
| Home Health Visits | 8,572 |
| Referred O/P Visits | 0 |
| I/P Surgeries | 52 |
| O/P Surgeries | 0 |
| Purchased I/P Days | 0 |

## Equity Transfers

| | |
|---|---|
| DSH Funds Transferred | $ 0 |

| | |
|---|---|
| Nursery Days | 0 |
| Nursery Discharges | 0 |
| Natural Births | 0 |
| Cesarean Sections | 0 |

## Financial Ratios

| | |
|---|---|
| Current Ratio | 0.90 |
| Days in Accounts Receivable | 295.04 |
| Long-Term Debt to Net PPE | 0.00% |
| Long-Term Debt to Equity | 0.00% |
| Equity to Total Assets | (4.54%) |
| Net Return on Total Assets | (1.64%) |
| Patient Revenue Margin | (14.67%) |
| Operating Margin | (14.11%) |
| Total Margin | (3.65%) |
| Net Income Margin | (3.30%) |
| Cost-to-Charge Ratio | 45.64% |
| Net PPE Per Licensed Bed | $ 74,220 |

## Uncompensated Care Costs

| | |
|---|---|
| Charity-Other | $ 20,498 |
| Charity-Other + Bad Debt | 142,446 |
| Charity-Other + Bad Debt + CIP Cont. Adj. | 142,446 |

## Uncompensated Care Costs % of Operating Expenses

| | |
|---|---|
| Charity % of Operating Expenses | 0.07% |
| Charity + Bad Debt % Operating Expenses | 0.48% |
| Charity+Bad Debt+CIP Cont Adj % of Op. Exp. | 0.48% |

## Profile Characteristics

| | |
|---|---|
| No. of Hospitals | 1 |
| Hospital Name | COLUSA MEDICAL CENTER |
| County | (All) |
| HSA | (All) |
| HFPA | (All) |
| Type of Control | (All) |
| Type of Care | (All) |
| Health Systems | (All) |
| Teach & Rural Hosp | (All) |
| DSH Hospital? | (All) |
| Licensed Bed Size | (All) |
| LTC Day % | (All) |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| Financial and Utilization Data by Payer Category | Total | Medicare Traditional | Medicare Managed Care | Medi-Cal Traditional | Medi-Cal Managed Care |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 8,712 | 4,580 | 0 | 3,609 | 0 |
| Discharges (excl. nursery) | 1,025 | 626 | 0 | 258 | 0 |
| Average Length of Stay (est.) | 8.50 | 7.32 | 0.00 | 13.99 | 0.00 |
| Outpatient Visits | 37,943 | 16,612 | 0 | 14,860 | 0 |
| Gross Inpatient Revenue | $ 27,533,475 | $ 12,762,140 | $ 0 | $ 10,633,116 | $ 0 |
| Gross Outpatient Revenue | 37,440,313 | 15,826,412 | 0 | 14,706,738 | 0 |
| Gross Patient Revenue | $ 64,973,788 | $ 28,588,552 | $ 0 | $ 25,339,854 | $ 0 |
| - Deductions from Rev | 39,005,602 | 18,861,785 | 0 | 15,303,344 | 0 |
| + Capitation Premium Rev | 0 | | 0 | | 0 |
| Net Patient Revenue | $ 25,968,186 | $ 9,726,767 | $ 0 | $ 10,036,510 | $ 0 |
| Percent of Gross Revenue | 39.97% | 34.02% | 0.00% | 39.61% | 0.00% |
| Expenses (est.) | $ 29,651,336 | $ 13,046,627 | $ 0 | $ 11,564,056 | $ 0 |
| Payment Shortfall | ($3,683,150) | ($3,319,860) | $ 0 | ($1,527,546) | $ 0 |
| Adjusted Patient Days | 20,559 | 10,260 | 0 | 8,601 | 0 |
| | | | | | |
| Gross I/P Rev Per Day | $ 3,160 | $ 2,786 | $ 0 | $ 2,946 | $ 0 |
| Gross I/P Rev Per Discharge | 26,862 | 20,387 | 0 | 41,214 | 0 |
| Gross O/P Rev Per Visit | 987 | 953 | 0 | 990 | 0 |
| Net I/P Rev Per Day | $ 1,263 | $ 948 | $ 0 | $ 1,167 | $ 0 |
| Net I/P Rev Per Discharge | 10,736 | 6,936 | 0 | 16,324 | 0 |
| Net O/P Rev Per Visit | 394 | 324 | 0 | 392 | 0 |

| Financial and Utilization Data by Payer Category | County Indigent Programs | Other Third Parties Traditional | Other Third Parties Managed Care | Other Payers Other Indigent | Other Payers All Other Payers |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 0 | 480 | 0 | 0 | 43 |
| Discharges (excl. nursery) | 0 | 125 | 0 | 0 | 16 |
| Average Length of Stay | 0.00 | 3.84 | 0.00 | 0.00 | 2.69 |
| Outpatient Visits | 0 | 5,715 | 0 | 0 | 756 |
| Gross Inpatient Revenue | $ 0 | $ 3,677,808 | $ 0 | $ 0 | $ 460,411 |
| Gross Outpatient Revenue | 0 | 6,068,118 | 0 | 0 | 839,045 |
| Gross Patient Revenue | $ 0 | $ 9,745,926 | $ 0 | $ 0 | $ 1,299,456 |
| - Deductions from Rev | 0 | 4,744,720 | 0 | 0 | 95,753 |
| + Capitation Premium Rev | 0 | | 0 | | 0 |
| Net Patient Revenue | $ 0 | $ 5,001,206 | $ 0 | $ 0 | $ 1,203,703 |
| Percent of Gross Revenue | 0.00% | 51.32% | 0.00% | 0.00% | 92.63% |
| Expenses (est.) | $ 0 | $ 4,447,636 | $ 0 | $ 0 | $ 593,018 |
| Payment Shortfall | $ 0 | $ 553,570 | $ 0 | $ 0 | $ 610,685 |
| Adjusted Patient Days | 0 | 1,272 | 0 | 0 | 121 |
| | | | | | |
| Gross I/P Rev Per Day | $ 0 | $ 7,662 | $ 0 | $ 0 | $ 10,707 |
| Gross I/P Rev Per Discharge | $ 0 | 29,422 | $ 0 | $ 0 | 28,776 |
| Gross O/P Rev Per Visit | $ 0 | 1,062 | $ 0 | $ 0 | 1,110 |
| Net I/P Rev Per Day | $ 0 | $ 3,932 | $ 0 | $ 0 | $ 9,918 |
| Net I/P Rev Per Discharge | $ 0 | 15,098 | $ 0 | $ 0 | 26,655 |

Source:  HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

**2021 HCAI Hospital Annual Financial Data Profile**
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| Net O/P Rev Per Visit | $ 0 | 545 | $ 0 | $ 0 | 1,028 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**Report Periods Ended 1-1-2021 through 12-31-2021**

**2021 HCAI Hospital Annual Financial Data Profile**
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

Date Printed:

## BALANCE SHEET - UNRESTRICTED FUND

| Assets | | % of Total |
|---|---:|---:|
| Current Assets | $ 54,374,355 | 93.85% |
| Limited Use Assets | 0 | 0.00% |
| Net PPE | 3,562,541 | 6.15% |
| Construction-in-Progress | 0 | 0.00% |
| Investments & Other Assets | 0 | 0.00% |
| Intangible & Other Assets | 0 | 0.00% |
| Total Assets | $ 57,936,896 | 100.00% |
| | | |
| Cash | $ 3,288,444 | 5.68% |
| Total PPE | 3,562,541 | 6.15% |
| Intercompany Receivables | 28,143,835 | 48.58% |

| Liabilities and Equity | | % of Total |
|---|---:|---:|
| Current Liabilities | $ 60,565,812 | 104.54% |
| Deferred Credits | 0 | 0.00% |
| Net Long-Term Debt | 0 | 0.00% |
| Total Liabilities | $ 60,565,812 | 104.54% |
| Equity | (2,628,916) | (4.54%) |
| Total Liabilities & Equity | $ 57,936,896 | 100.00% |
| | | |
| Mortgage Notes | $ 0 | 0.00% |
| Bonds Payable | $ 0 | 0.00% |
| Intercompany Payables | $ 49,179,130 | 84.88% |

## Direct Expense by Natural Classification

| | | Per Adjusted Day | % of Total Exp |
|---|---:|---:|---:|
| Salaries & Wages | $ 10,863,546 | $ 528.42 | 36.48% |
| Employee Benefits | 3,482,564 | 169.40 | 11.70% |
| Physician Pro. Fees | 1,226,965 | 59.68 | 4.12% |
| Other Pro. Fees | 3,614,551 | 175.82 | 12.14% |
| Supplies | 1,530,564 | 74.45 | 5.14% |
| Purchased Services | 4,890,158 | 237.86 | 16.42% |
| Depreciation | 707,413 | 34.41 | 2.38% |
| Leases & Rentals | 774,510 | 37.67 | 2.60% |
| Insurance | 273,363 | 13.30 | 0.92% |
| Interest | 255,877 | 12.45 | 0.86% |
| All Other Expenses | 2,158,513 | 104.99 | 7.25% |
| Total Operating Expenses | $ 29,778,024 | $ 1,448.44 | 100.00% |

## Direct Expense by Cost Center Group

| | | % of Total Exp |
|---|---:|---:|
| Daily Hospital Svcs. | $ 4,535,557 | 15.23% |
| Ambulatory Services | 10,658,445 | 35.79% |
| Ancillary Services | 2,382,821 | 8.00% |
| Purch. I/P & O/P Svcs. | 0 | 0.00% |
| Research | $ 0 | 0.00% |
| Education | 0 | 0.00% |
| General Services | 2,746,559 | 9.22% |
| Fiscal Services | 401,198 | 1.35% |
| Administrative Svcs. | 8,130,214 | 27.30% |
| Unassigned Costs | 923,230 | 3.10% |
| Total Operating Exp. | $ 29,778,024 | 100.00% |

## Labor Productivity by Employee Classification

| | Productive Hours | Hours Per Adjusted Day | % of Total Hours |
|---|---:|---:|---:|
| Management & Supervision | 32,071 | 1.56 | 10.02% |
| Technical & Specialist | 54,381 | 2.65 | 16.98% |
| Registered Nurses | 69,714 | 3.39 | 21.77% |
| Licensed Voc. Nurses | 21,044 | 1.02 | 6.57% |
| Aides & Orderlies | 54,352 | 2.64 | 16.97% |
| Clerical & Other Admin. | 70,544 | 3.43 | 22.03% |
| Environ. & Food Services | 12,273 | 0.60 | 3.83% |
| All Other Employees | 5,838 | 0.28 | 1.82% |
| Total Productive Hours | 320,217 | 15.58 | 100.00% |
| | | | |
| Total Paid Hours | 349,720 | 17.01 | |

| | Productive FTEs | FTEs Per Adj. Occupied Bed |
|---|---:|---:|
| Management & Supervision | 15.42 | 0.27 |
| Technical & Specialist | 26.14 | 0.46 |
| Registered Nurses | 33.52 | 0.60 |
| Licensed Voc. Nurses | 10.12 | 0.18 |
| Aides & Orderlies | 26.13 | 0.46 |
| Clerical & Other Admin. | 32.92 | 0.60 |
| Environ. & Food Services | 5.90 | 0.10 |
| All Other Employees | 2.81 | 0.05 |
| Total Productive Hours | 153.95 | 2.73 |
| | | |
| Total Paid Hours | 168.13 | 2.99 |

Source:  HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**MCCJ Supplemental Request for Judicial Notice**

13.     California Department of Health Care Access and Information Records

    **2021 Pivot Data Table** - Hospital Annual Selected Data showing financial performance of each AAM-owned or operated hospital for 2021

    https://data.chhs.ca.gov/dataset/ea0c8ca9-023e-46a3-b95b-b9d4ab8ec195/resource/29bacfe7-a98d-4183-9282-a5803a3d4c6e/download/hafd2021-pivot.xls

D.     **Glenn Medical Center:  offered to show a net loss of $8,615,278 for the reporting period**

Date Printed:

# 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

**Report Periods Ended 1-1-2021 through 12-31-2021**

## Data by Type of Care

| Data by Type of Care | Total | General Acute | Psychiatric | Rehabilitation | Long-term Care | Chem Dep & Other |
|---|---|---|---|---|---|---|
| Licensed Beds | 47 | 47 | 0 | 0 | 0 | 0 |
| Licensed Bed Occ. Rate | 53.81% | 53.81% | 0.00% | 0.00% | 0.00% | 0.00% |
| Available Beds | 26 | | | | | |
| Available Bed Occ. Rate | 97.27% | | | | | |
| Patient Days (excl. nursery) | 9,231 | 9,231 | 0 | 0 | 0 | 0 |
| Discharges (excl. nursery) | 111 | 111 | 0 | 0 | 0 | 0 |
| Average Length of Stay (est.) | 83.16 | 83.16 | 0.00 | 0.00 | 0.00 | 0.00 |

## Income Statement

| | | Per Adjusted Day |
|---|---|---|
| Gross Patient Revenue | $ 46,959,194 | $ 1,731.00 |
| - Deductions from Revenue | 21,126,367 | 778.75 |
| + Capitation Premium Rev. | 0 | 0.00 |
| Net Patient Revenue | $ 25,832,827 | $ 952.24 |
| + Other Operating Revenue | 403,998 | 14.89 |
| Total Operating Revenue | $ 26,236,825 | $ 967.13 |
| - Operating Expenses | 34,852,103 | 1,284.71 |
| Net from Operations | ($8,615,278) | ($317.57) |
| + Non-Operating Revenue | 0 | 0.00 |
| - Non-Operating Expense | 0 | 0.00 |
| - Income Taxes | 0 | 0.00 |
| - Extraordinary Items | 0 | 0.00 |
| Net Income | ($8,615,278) | ($317.57) |

## Deductions from Revenue

| | |
|---|---|
| Medicare Cont Adj-Trad | $ 11,797,236 |
| Medicare Cont Adj-Mng Care | |
| Medi-Cal Cont Adj-Trad | 5,653,903 |
| Medi-Cal Cont Adj-Mng Care | |
| DSH (SB 855) Funds Rec'd | |
| Co Indigent Cont Adj | |
| Other 3rd Cont Adj-Trad. | 2,305,775 |
| Other 3rd Cont Adj-Mng Care | |
| Provision for Bad Debts | 1,369,453 |
| Charity-Hill-Burton | |
| Charity-Other | |
| Gifts & Subs. Indigent Care | |
| All Other Deductions | |
| Total Deductions from Rev. | $ 21,126,367 |

## Capitation Premium Revenue

| | |
|---|---|
| Medicare | $ 0 |
| Medi-Cal | 0 |
| Co. Indigent Programs | 0 |
| Other Managed Care | 0 |
| Total Capitation Rev. | $ 0 |

## Other Utilization Statistics

| | |
|---|---|
| ER Visits | 5,049 |
| Clinic Visits | 21,815 |
| Home Health Visits | 0 |
| Referred O/P Visits | 0 |
| I/P Surgeries | 0 |
| O/P Surgeries | 0 |
| Purchased I/P Days | 0 |

| | |
|---|---|
| Nursery Days | 0 |
| Nursery Discharges | 0 |
| Natural Births | 0 |
| Cesarean Sections | 0 |

## Equity Transfers

| | |
|---|---|
| DSH Funds Transferred | $ 0 |

## Financial Ratios

| | |
|---|---|
| Current Ratio | 0.74 |
| Days in Accounts Receivable | 30.92 |
| Long-Term Debt to Net PPE | 1709.09% |
| Long-Term Debt to Equity | (61.01%) |
| Equity to Total Assets | (78.24%) |
| Net Return on Total Assets | (55.90%) |
| Patient Revenue Margin | (34.91%) |
| Operating Margin | (32.84%) |
| Total Margin | (32.84%) |
| Net Income Margin | (32.84%) |
| Cost-to-Charge Ratio | 73.36% |
| Net PPE Per Licensed Bed | $ 9,160 |

## Uncompensated Care Costs

| | |
|---|---|
| Charity-Other | $ 0 |
| Charity-Other + Bad Debt | 1,004,597 |
| Charity-Other + Bad Debt + CIP Cont. Adj. | 1,004,597 |

## Uncompensated Care Costs % of Operating Expenses

| | |
|---|---|
| Charity % of Operating Expenses | 0.00% |
| Charity + Bad Debt % Operating Expenses | 2.92% |
| Charity+Bad Debt+CIP Cont Adj % of Op. Exp. | 2.92% |

## Profile Characteristics

| | |
|---|---|
| No. of Hospitals | 1 |
| Hospital Name | GLENN MEDICAL CENTER |
| County | (All) |
| HSA | (All) |
| HFPA | (All) |
| Type of Control | (All) |
| Type of Care | (All) |
| Health Systems | (All) |
| Teach & Rural Hosp | (All) |
| DSH Hospital? | (All) |
| Licensed Bed Size | (All) |
| LTC Day % | (All) |

Source:  HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| Financial and Utilization Data by Payer Category | Total | Medicare | | Medi-Cal | |
|---|---|---|---|---|---|
| | | Traditional | Managed Care | Traditional | Managed Care |
| Patient Days (excl. nursery) | 9,231 | 7,212 | 0 | 1,032 | 0 |
| Discharges (excl. nursery) | 111 | 85 | 0 | 12 | 0 |
| Average Length of Stay (est.) | 83.16 | 84.85 | 0.00 | 86.00 | 0.00 |
| Outpatient Visits | 26,864 | 10,986 | 0 | 8,445 | 0 |
| Gross Inpatient Revenue | $ 15,978,820 | $ 13,981,755 | $ 0 | $ 1,056,610 | $ 0 |
| Gross Outpatient Revenue | 30,980,374 | 16,607,750 | 0 | 8,133,212 | 0 |
| Gross Patient Revenue | $ 46,959,194 | $ 30,589,505 | $ 0 | $ 9,189,822 | $ 0 |
| - Deductions from Rev | 21,126,367 | 12,689,307 | 0 | 5,921,903 | 0 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 25,832,827 | $ 17,900,198 | $ 0 | $ 3,267,919 | $ 0 |
| Percent of Gross Revenue | 55.01% | 58.52% | 0.00% | 35.56% | 0.00% |
| Expenses (est.) | $ 34,448,105 | $ 22,439,705 | $ 0 | $ 6,741,426 | $ 0 |
| Payment Shortfall | ($8,615,278) | ($4,539,507) | $ 0 | ($3,473,507) | $ 0 |
| Adjusted Patient Days | 27,128 | 15,779 | 0 | 8,976 | 0 |
| | | | | | |
| Gross I/P Rev Per Day | $ 1,731 | $ 1,939 | $ 0 | $ 1,024 | $ 0 |
| Gross I/P Rev Per Discharge | 143,953 | 164,491 | $ 0 | 88,051 | $ 0 |
| Gross O/P Rev Per Visit | 1,153 | 1,512 | $ 0 | 963 | $ 0 |
| Net I/P Rev Per Day | $ 952 | $ 1,134 | $ 0 | $ 364 | $ 0 |
| Net I/P Rev Per Discharge | 79,190 | 96,256 | $ 0 | 31,311 | $ 0 |
| Net O/P Rev Per Visit | 634 | 885 | $ 0 | 342 | $ 0 |

| Financial and Utilization Data by Payer Category | County Indigent Programs | Other Third Parties | | Other Payers | |
|---|---|---|---|---|---|
| | | Traditional | Managed Care | Other Indigent | All Other Payers |
| Patient Days (excl. nursery) | 0 | 983 | 0 | 0 | 4 |
| Discharges (excl. nursery) | 0 | 12 | 0 | 0 | 2 |
| Average Length of Stay | 0.00 | 81.92 | 0.00 | 0.00 | 2.00 |
| Outpatient Visits | 0 | 6,516 | 0 | 0 | 917 |
| Gross Inpatient Revenue | $ 0 | $ 907,767 | $ 0 | $ 0 | $ 32,688 |
| Gross Outpatient Revenue | 0 | 5,328,836 | 0 | 0 | 910,576 |
| Gross Patient Revenue | $ 0 | $ 6,236,603 | $ 0 | $ 0 | $ 943,264 |
| - Deductions from Rev | 0 | 2,487,670 | 0 | 0 | 27,487 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 0 | $ 3,748,933 | $ 0 | $ 0 | $ 915,777 |
| Percent of Gross Revenue | 0.00% | 60.11% | 0.00% | 0.00% | 97.09% |
| Expenses (est.) | $ 0 | $ 4,575,018 | $ 0 | $ 0 | $ 691,955 |
| Payment Shortfall | $ 0 | ($826,085) | $ 0 | $ 0 | $ 223,822 |
| Adjusted Patient Days | 0 | 6,753 | 0 | 0 | 115 |
| | | | | | |
| Gross I/P Rev Per Day | $ 0 | $ 923 | $ 0 | $ 0 | $ 8,172 |
| Gross I/P Rev Per Discharge | $ 0 | 75,647 | $ 0 | $ 0 | 16,344 |
| Gross O/P Rev Per Visit | $ 0 | 818 | $ 0 | $ 0 | 993 |
| Net I/P Rev Per Day | $ 0 | $ 555 | $ 0 | $ 0 | $ 7,934 |
| Net I/P Rev Per Discharge | $ 0 | 45,473 | $ 0 | $ 0 | 15,868 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

0071 - Exhibits to MCCJ SUPPLEMENTAL Request for Judicial Notice

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

**2021 HCAI Hospital Annual Financial Data Profile**
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| | | | | 964 |
|---|---|---|---|---|
| Net O/P Rev Per Visit | $ 0 | 492 | $ 0 | $ 0 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

### BALANCE SHEET - UNRESTRICTED FUND

| Assets | | % of Total |
|---|---:|---:|
| Current Assets | $ 14,982,786 | 97.21% |
| Limited Use Assets | 0 | 0.00% |
| Net PPE | 331,373 | 2.15% |
| Construction-in-Progress | 99,129 | 0.64% |
| Investments & Other Assets | 0 | 0.00% |
| Intangible Assets | 0 | 0.00% |
| Total Assets | $ 15,413,288 | 100.00% |
| | | |
| Cash | $ 12,038,674 | 78.11% |
| Total PPE | 7,257,469 | 47.09% |
| Intercompany Receivables | 0 | 0.00% |

| Liabilities and Equity | | % of Total |
|---|---:|---:|
| Current Liabilities | $ 20,115,181 | 130.51% |
| Deferred Credits | 0 | 0.00% |
| Net Long-Term Debt | 7,357,650 | 47.74% |
| Total Liabilities | $ 27,472,831 | 178.24% |
| Equity | (12,059,543) | (78.24%) |
| Total Liabilities & Equity | $ 15,413,288 | 100.00% |
| | | |
| Mortgage Notes | $ 0 | 0.00% |
| Bonds Payable | $ 0 | 0.00% |
| Intercompany Payables | $ 0 | 0.00% |

### Direct Expense by Natural Classification

| | | Per Adjusted Day | % of Total Exp |
|---|---:|---:|---:|
| Salaries & Wages | $ 11,163,212 | $ 411.49 | 32.03% |
| Employee Benefits | 2,630,205 | 96.95 | 7.55% |
| Physician Pro. Fees | 4,498,621 | 165.83 | 12.91% |
| Other Pro. Fees | 7,624,873 | 281.07 | 21.88% |
| Supplies | 1,091,079 | 40.22 | 3.13% |
| Purchased Services | 5,199,662 | 191.67 | 14.92% |
| Depreciation | 710,906 | 26.21 | 2.04% |
| Leases & Rentals | 0 | 0.00 | 0.00% |
| Insurance | 164,566 | 6.07 | 0.47% |
| Interest | 25,030 | 0.92 | 0.07% |
| All Other Expenses | 1,743,949 | 64.28 | 5.00% |
| Total Operating Expenses | $ 34,852,103 | $ 1,284.71 | 100.00% |

### Direct Expense by Cost Center Group

| | | % of Total Exp |
|---|---:|---:|
| Daily Hospital Svcs. | $ 7,560,880 | 21.69% |
| Ambulatory Services | 4,998,157 | 14.34% |
| Ancillary Services | 6,644,239 | 19.06% |
| Purch. I/P & O/P Svcs. | 0 | 0.00% |
| Research | $ 0 | 0.00% |
| Education | 0 | 0.00% |
| General Services | 4,086,564 | 11.73% |
| Fiscal Services | 1,508,678 | 4.33% |
| Administrative Svcs. | 9,471,821 | 27.18% |
| Unassigned Costs | 581,764 | 1.67% |
| Total Operating Exp. | $ 34,852,103 | 100.00% |

### Labor Productivity by Employee Classification

| | Productive Hours | Hours Per Adjusted Day | % of Total Hours | Productive FTEs | FTEs Per Adj. Occupied Bed |
|---|---:|---:|---:|---:|---:|
| Management & Supervision | 34,246 | 1.26 | 8.12% | 16.46 | 0.22 |
| Technical & Specialist | 73,882 | 2.72 | 17.52% | 35.52 | 0.48 |
| Registered Nurses | 60,432 | 2.23 | 14.33% | 29.05 | 0.39 |
| Licensed Voc. Nurses | 35,281 | 1.30 | 8.37% | 16.96 | 0.23 |
| Aides & Orderlies | 97,389 | 3.59 | 23.10% | 46.82 | 0.63 |
| Clerical & Other Admin. | 71,178 | 2.62 | 16.88% | 34.22 | 0.46 |
| Environ. & Food Services | 49,211 | 1.81 | 11.67% | 23.66 | 0.32 |
| All Other Employees | 0 | 0.00 | 0.00% | 0.00 | 0.00 |
| Total Productive Hours | 421,619 | 15.54 | 100.00% | 202.70 | 2.73 |
| | | | | | |
| Total Paid Hours | 475,678 | 17.53 | | 228.69 | 3.08 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**MCCJ Supplemental Request for Judicial Notice**

13.       California Department of Health Care Access and
          Information Records

          **2021 Pivot Data Table** - Hospital Annual Selected Data
          showing financial performance of each AAM-owned or
          operated hospital for 2021

          https://data.chhs.ca.gov/dataset/ea0c8ca9-023e-46a3-b95b-
          b9d4ab8ec195/resource/29bacfe7-a98d-4183-9282-
          a5803a3d4c6e/download/hafd2021-pivot.xls

     **E.     Sonoma Specialty Hospital:  offered to show
             $1,761,851 in net income for the reporting period**

Date Printed:

# 2021 HCAI Hospital Annual Financial Data Profile
## (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

**Report Periods Ended 1-1-2021 through 12-31-2021**

## Data by Type of Care

| | Total | General Acute | Psychiatric | Rehabilitation | Long-term Care | Chem Dep & Other |
|---|---|---|---|---|---|---|
| Licensed Beds | 37 | 37 | 0 | 0 | 0 | 0 |
| Licensed Bed Occ. Rate | 85.11% | 85.11% | 0.00% | 0.00% | 0.00% | 0.00% |
| Available Beds | 37 | 37 | | | | |
| Available Bed Occ. Rate | 85.11% | 85.11% | | | | |
| Patient Days (excl. nursery) | 11,494 | 11,494 | 0 | 0 | 0 | 0 |
| Discharges (excl. nursery) | 352 | 352 | 0 | 0 | 0 | 0 |
| Average Length of Stay (est.) | 32.65 | 32.65 | 0.00 | 0.00 | 0.00 | 0.00 |

## Income Statement

| | | Per Adjusted Day |
|---|---|---|
| Gross Patient Revenue | $ 76,968,990 | $ 6,696.45 |
| - Deductions from Revenue | 52,663,715 | 4,581.84 |
| + Capitation Premium Rev. | 0 | 0.00 |
| Net Patient Revenue | $ 24,305,275 | $ 2,114.61 |
| + Other Operating Revenue | 50,335 | 4.38 |
| Total Operating Revenue | $ 24,355,610 | $ 2,118.98 |
| - Operating Expenses | 23,646,935 | 2,057.33 |
| Net from Operations | $ 708,675 | $ 61.66 |
| + Non-Operating Revenue | 1,053,176 | 91.63 |
| - Non-Operating Expense | 0 | 0.00 |
| - Income Taxes | 0 | 0.00 |
| - Extraordinary Items | 0 | 0.00 |
| Net Income | $ 1,761,851 | $ 153.28 |

## Deductions from Revenue

| | |
|---|---|
| Medicare Cont Adj-Trad | $ 24,480,610 |
| Medicare Cont Adj-Mng Care | 0 |
| Medi-Cal Cont Adj-Trad | 778,062 |
| Medi-Cal Cont Adj-Mng Care | 0 |
| DSH (SB 855) Funds Rec'd | 0 |
| Co Indigent Cont Adj | 0 |
| Other 3rd Cont Adj-Trad. | 27,335,976 |
| Other 3rd Cont Adj-Mng Care | 69,067 |
| Provision for Bad Debts | 0 |
| Charity-Hill-Burton | 0 |
| Charity-Other | 0 |
| Gifts & Subs. Indigent Care | 0 |
| All Other Deductions | 0 |
| Total Deductions from Rev. | $ 52,663,715 |

## Capitation Premium Revenue

| | |
|---|---|
| Medicare | $ 0 |
| Medi-Cal | 0 |
| Co. Indigent Programs | 0 |
| Other Managed Care | 0 |
| Total Capitation Rev. | $ 0 |

## Other Utilization Statistics

| | |
|---|---|
| ER Visits | 0 |
| Clinic Visits | 0 |
| Home Health Visits | 0 |
| Referred O/P Visits | 0 |
| I/P Surgeries | 0 |
| O/P Surgeries | 0 |
| Purchased I/P Days | 0 |

## Equity Transfers

| | |
|---|---|
| DSH Funds Transferred | $ 0 |
| Nursery Days | 0 |
| Nursery Discharges | 0 |
| Natural Births | 0 |
| Cesarean Sections | 0 |

## Financial Ratios

| | |
|---|---|
| Current Ratio | 0.79 |
| Days in Accounts Receivable | 193.96 |
| Long-Term Debt to Net PPE | 0.00% |
| Long-Term Debt to Equity | 0.00% |
| Equity to Total Assets | (24.94%) |
| Net Return on Total Assets | 7.31% |
| Patient Revenue Margin | 2.71% |
| Operating Margin | 2.91% |
| Total Margin | 7.23% |
| Net Income Margin | 6.93% |
| Cost-to-Charge Ratio | 30.66% |
| Net PPE Per Licensed Bed | $ 12,365 |

## Uncompensated Care Costs

| | |
|---|---|
| Charity-Other | $ 0 |
| Charity-Other + Bad Debt | 21,174 |
| Charity-Other + Bad Debt + CIP Cont. Adj. | 21,174 |

## Uncompensated Care Costs % of Operating Expenses

| | |
|---|---|
| Charity % of Operating Expenses | 0.00% |
| Charity + Bad Debt % Operating Expenses | 0.09% |
| Charity+Bad Debt+CIP Cont Adj % of Op. Exp. | 0.09% |

## Profile Characteristics

| | |
|---|---|
| No. of Hospitals | 1 |
| Hospital Name | SONOMA SPECIALTY HOSPITAL |
| County | (All) |
| HSA | (All) |
| HFPA | (All) |
| Type of Control | (All) |
| Type of Care | (All) |
| Health Systems | (All) |
| Teach & Rural Hosp | (All) |
| DSH Hospital? | (All) |
| Licensed Bed Size | (All) |
| LTC Day % | (All) |

Source:  HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| Financial and Utilization Data by Payer Category | Total | Medicare | | Medi-Cal | |
|---|---|---|---|---|---|
| | | Traditional | Managed Care | Traditional | Managed Care |
| Patient Days (excl. nursery) | 11,494 | 5,282 | 0 | 186 | 0 |
| Discharges (excl. nursery) | 352 | 162 | 0 | 6 | 0 |
| Average Length of Stay (est.) | 32.65 | 32.60 | 0.00 | 31.00 | 0.00 |
| Outpatient Visits | 0 | 0 | 0 | 0 | 0 |
| Gross Inpatient Revenue | $ 76,968,990 | $ 35,825,844 | $ 0 | $ 1,138,646 | $ 0 |
| Gross Outpatient Revenue | 0 | 0 | 0 | 0 | 0 |
| Gross Patient Revenue | $ 76,968,990 | $ 35,825,844 | $ 0 | $ 1,138,646 | $ 0 |
| - Deductions from Rev | 52,663,715 | 24,512,758 | 0 | 779,084 | 0 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 24,305,275 | $ 11,313,086 | $ 0 | $ 359,562 | $ 0 |
| Percent of Gross Revenue | 31.58% | 31.58% | 0.00% | 31.58% | 0.00% |
| Expenses (est.) | $ 23,596,600 | $ 10,983,230 | $ 0 | $ 349,078 | $ 0 |
| Payment Shortfall | $ 708,675 | $ 329,856 | $ 0 | $ 10,484 | $ 0 |
| Adjusted Patient Days | 11,494 | 5,282 | 0 | 186 | 0 |
| Gross I/P Rev Per Day | $ 6,696 | $ 6,783 | $ 0 | $ 6,122 | $ 0 |
| Gross I/P Rev Per Discharge | 218,662 | 221,147 | $ 0 | 189,774 | $ 0 |
| Gross O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |
| Net I/P Rev Per Day | $ 2,115 | $ 2,142 | $ 0 | $ 1,933 | $ 0 |
| Net I/P Rev Per Discharge | 69,049 | 69,834 | $ 0 | 59,927 | $ 0 |
| Net O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |

| Financial and Utilization Data by Payer Category | County Indigent Programs | Other Third Parties | | Other Payers | |
|---|---|---|---|---|---|
| | | Traditional | Managed Care | Other Indigent | All Other Payers |
| Patient Days (excl. nursery) | 0 | 6,026 | 0 | 0 | 0 |
| Discharges (excl. nursery) | 0 | 184 | 0 | 0 | 0 |
| Average Length of Stay | 0.00 | 32.75 | 0.00 | 0.00 | 0.00 |
| Outpatient Visits | 0 | 0 | 0 | 0 | 0 |
| Gross Inpatient Revenue | $ 0 | $ 40,004,500 | $ 0 | $ 0 | $ 0 |
| Gross Outpatient Revenue | 0 | 0 | 0 | 0 | 0 |
| Gross Patient Revenue | $ 0 | $ 40,004,500 | $ 0 | $ 0 | $ 0 |
| - Deductions from Rev | 0 | 27,371,873 | 0 | 0 | 0 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 0 | $ 12,632,627 | $ 0 | $ 0 | $ 0 |
| Percent of Gross Revenue | 0.00% | 31.58% | 0.00% | 0.00% | 0.00% |
| Expenses (est.) | $ 0 | $ 12,264,292 | $ 0 | $ 0 | $ 0 |
| Payment Shortfall | $ 0 | $ 366,335 | $ 0 | $ 0 | $ 0 |
| Adjusted Patient Days | 0 | 6,026 | 0 | 0 | 0 |
| Gross I/P Rev Per Day | $ 0 | $ 6,639 | $ 0 | $ 0 | $ 0 |
| Gross I/P Rev Per Discharge | $ 0 | 217,416 | $ 0 | $ 0 | $ 0 |
| Gross O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |
| Net I/P Rev Per Day | $ 0 | $ 2,096 | $ 0 | $ 0 | $ 0 |
| Net I/P Rev Per Discharge | $ 0 | 68,656 | $ 0 | $ 0 | $ 0 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

**2021 HCAI Hospital Annual Financial Data Profile**
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |
|---|---|---|---|---|---|

Net O/P Rev Per Visit

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

Date Printed:

### BALANCE SHEET - UNRESTRICTED FUND

| Assets | | % of Total | Liabilities and Equity | | % of Total |
|---|---|---|---|---|---|
| Current Assets | $ 23,643,070 | 98.10% | Current Liabilities | $ 30,110,149 | 124.94% |
| Limited Use Assets | 0 | 0.00% | Deferred Credits | 0 | 0.00% |
| Net PPE | 227,177 | 0.94% | Net Long-Term Debt | 0 | 0.00% |
| Construction-in-Progress | 230,340 | 0.96% | Total Liabilities | $ 30,110,149 | 124.94% |
| Investments & Other Assets | 0 | 0.00% | | | |
| Intangible Assets | 0 | 0.00% | Equity | (6,009,562) | (24.94%) |
| Total Assets | $ 24,100,587 | 100.00% | Total Liabilities & Equity | $ 24,100,587 | 100.00% |
| | | | | | |
| Cash | $ 1,719,119 | 7.13% | Mortgage Notes | $ 0 | 0.00% |
| Total PPE | 270,064 | 1.12% | Bonds Payable | $ 0 | 0.00% |
| Intercompany Receivables | 8,521,512 | 35.36% | Intercompany Payables | $ 20,008,191 | 83.02% |

### Direct Expense by Natural Classification

| | | Per Adjusted Day | % of Total Exp |
|---|---|---|---|
| Salaries & Wages | $ 13,316,838 | $ 1,158.59 | 56.32% |
| Employee Benefits | 2,952,499 | 256.87 | 12.49% |
| Physician Pro. Fees | 669,945 | 58.29 | 2.83% |
| Other Pro. Fees | 1,897,852 | 165.12 | 8.03% |
| Supplies | 1,662,849 | 144.67 | 7.03% |
| Purchased Services | 1,057,913 | 92.04 | 4.47% |
| Depreciation | 136,148 | 11.85 | 0.58% |
| Leases & Rentals | 396,542 | 34.50 | 1.68% |
| Insurance | 67,683 | 5.89 | 0.29% |
| Interest | 37,894 | 3.30 | 0.16% |
| All Other Expenses | 1,450,772 | 126.22 | 6.14% |
| Total Operating Expenses | $ 23,646,935 | $ 2,057.33 | 100.00% |

### Direct Expense by Cost Center Group

| | | Productive FTEs | FTEs Per Adj. Occupied Bed | % of Total Exp |
|---|---|---|---|---|
| Daily Hospital Svcs. | $ 12,861,040 | 17.61 | 0.56 | 54.39% |
| Ambulatory Services | 0 | 33.71 | 1.07 | 0.00% |
| Ancillary Services | 4,049,680 | 29.56 | 0.94 | 17.13% |
| Purch. I/P & O/P Svcs. | 0 | 7.30 | 0.23 | 0.00% |
| Research | $ 0 | 8.37 | 0.27 | 0.00% |
| Education | 0 | 29.57 | 0.94 | 0.00% |
| General Services | 3,329,088 | 4.54 | 0.14 | 14.08% |
| Fiscal Services | 480,146 | 1.80 | 0.06 | 2.03% |
| Administrative Svcs. | 2,596,005 | 132.46 | 4.21 | 10.98% |
| Unassigned Costs | 330,976 | | | 1.40% |
| Total Operating Exp. | $ 23,646,935 | 149.87 | 4.76 | 100.00% |

### Labor Productivity by Employee Classification

| | Productive Hours | Hours Per Adjusted Day | % of Total Hours |
|---|---|---|---|
| Management & Supervision | 36,635 | 3.19 | 13.30% |
| Technical & Specialist | 70,120 | 6.10 | 25.45% |
| Registered Nurses | 61,490 | 5.35 | 22.32% |
| Licensed Voc. Nurses | 15,175 | 1.32 | 5.51% |
| Aides & Orderlies | 17,413 | 1.51 | 6.32% |
| Clerical & Other Admin. | 61,514 | 5.35 | 22.33% |
| Environ. & Food Services | 9,442 | 0.82 | 3.43% |
| All Other Employees | 3,734 | 0.32 | 1.36% |
| Total Productive Hours | 275,523 | 23.97 | 100.00% |
| | | | |
| Total Paid Hours | 311,726 | 27.12 | |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

## MCCJ Supplemental Request for Judicial Notice

14.     California Department of Health Care Access and
        Information Records

**2022 Pivot Data Table** - Hospital Annual Selected Data
showing financial performance of each AAM-owned or
operated hospital for 2022

https://data.chhs.ca.gov/dataset/ea0c8ca9-023e-46a3-b95b-
b9d4ab8ec195/resource/e6a7cc46-836f-4437-8ad1-
e485d6ea0514/download/hafd2022-pivot.xls

A.     **Central Valley Specialty Hospital: offered to show
       $2,617,757 in net income for the reporting period**

Date Printed:

# 2021 HCAI Hospital Annual Financial Data Profile
## (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

**Report Periods Ended 1-1-2021 through 12-31-2021**

## Data by Type of Care

| | Total | General Acute | Psychiatric | Rehabilitation | Long-term Care | Chem Dep & Other |
|---|---|---|---|---|---|---|
| Licensed Beds | 96 | 0 | 0 | 0 | 96 | 0 |
| Licensed Bed Occ. Rate | 82.11% | 0.00% | 0.00% | 0.00% | 82.11% | 0.00% |
| Available Beds | 96 | | | | 96 | |
| Available Bed Occ. Rate | 82.11% | | | | 82.11% | |
| Patient Days (excl. nursery) | 28,771 | 0 | 0 | 0 | 28,771 | 0 |
| Discharges (excl. nursery) | 742 | 0 | 0 | 0 | 742 | 0 |
| Average Length of Stay (est.) | 38.77 | 0.00 | 0.00 | 0.00 | 38.77 | 0.00 |

## Income Statement

| | | Per Adjusted Day |
|---|---|---|
| Gross Patient Revenue | $ 187,666,783 | $ 6,522.78 |
| - Deductions from Revenue | 136,044,027 | 4,728.51 |
| + Capitation Premium Rev. | 0 | 0.00 |
| Net Patient Revenue | $ 51,622,756 | $ 1,794.26 |
| + Other Operating Revenue | 2,166,124 | 75.29 |
| Total Operating Revenue | $ 53,788,880 | $ 1,869.55 |
| - Operating Expenses | 51,171,123 | 1,778.57 |
| Net from Operations | $ 2,617,757 | $ 90.99 |
| + Non-Operating Revenue | 0 | 0.00 |
| - Non-Operating Expense | 0 | 0.00 |
| - Income Taxes | 0 | |
| - Extraordinary Items | 0 | 0.00 |
| Net Income | $ 2,617,757 | $ 90.99 |

## Capitation Premium Revenue

| | |
|---|---|
| Medicare | |
| Medi-Cal | |
| Co. Indigent Programs | |
| Other Managed Care | |
| Total Capitation Rev. | 0 |

## Deductions from Revenue

| | |
|---|---|
| Medicare Cont Adj-Trad | $ 41,462,748 |
| Medicare Cont Adj-Mng Care | 1,042,392 |
| Medi-Cal Cont Adj-Trad | |
| Medi-Cal Cont Adj-Mng Care | |
| DSH (SB 855) Funds Rec'd | |
| Co Indigent Cont Adj | |
| Other 3rd Cont Adj-Trad. | 93,538,887 |
| Other 3rd Cont Adj-Mng Care | |
| Provision for Bad Debts | |
| Charity-Hill-Burton | |
| Charity-Other | |
| Gifts & Subs. Indigent Care | |
| All Other Deductions | |
| Total Deductions from Rev. | $ 136,044,027 |

## Other Utilization Statistics

| | |
|---|---|
| ER Visits | 0 |
| Clinic Visits | 0 |
| Home Health Visits | 0 |
| Referred O/P Visits | 0 |
| I/P Surgeries | 0 |
| O/P Surgeries | 0 |
| Purchased I/P Days | 0 |
| Nursery Days | 0 |
| Nursery Discharges | 0 |
| Natural Births | 0 |
| Cesarean Sections | 0 |

## Equity Transfers

| | |
|---|---|
| DSH Funds Transferred | $ 0 |

## Financial Ratios

| | |
|---|---|
| Current Ratio | 1.33 |
| Days in Accounts Receivable | 172.65 |
| Long-Term Debt to Net PPE | 50.91% |
| Long-Term Debt to Equity | 3.76% |
| Equity to Total Assets | 25.21% |
| Net Return on Total Assets | 2.49% |
| Patient Revenue Margin | 0.87% |
| Operating Margin | 4.87% |
| Total Margin | 4.87% |
| Net Income Margin | 4.87% |
| Cost-to-Charge Ratio | 26.11% |
| Net PPE Per Licensed Bed | $ 20,325 |

## Uncompensated Care Costs

| | |
|---|---|
| Charity-Other | $ 0 |
| Charity-Other + Bad Debt | 0 |
| Charity-Other + Bad Debt + CIP Cont. Adj | 0 |

## Uncompensated Care Costs % of Operating Expenses

| | |
|---|---|
| Charity % of Operating Expenses | 0.00% |
| Charity + Bad Debt % Operating Expenses | 0.00% |
| Charity+Bad Debt+CIP Cont Adj % of Op. Exp. | 0.00% |

## Profile Characteristics

| | |
|---|---|
| No. of Hospitals | 1 |
| Hospital Name | CENTRAL VALLEY SPECIALTY HOSPITAL |
| County | (All) |
| HSA | (All) |
| HFPA | (All) |
| Type of Control | (All) |
| Type of Care | (All) |
| Health Systems | (All) |
| Teach & Rural Hosp | (All) |
| DSH Hospital? | (All) |
| Licensed Bed Size | (All) |
| LTC Day % | (All) |

Source:  HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| Financial and Utilization Data by Payer Category | Total | Medicare Traditional | Medicare Managed Care | Medi-Cal Traditional | Medi-Cal Managed Care |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 28,771 | 9,903 | 0 | 378 | 0 |
| Discharges (excl. nursery) | 742 | 379 | 0 | 4 | 0 |
| Average Length of Stay (est.) | 38.77 | 26.13 | 0.00 | 94.50 | 0.00 |
| Outpatient Visits | 0 | 0 | 0 | 0 | 0 |
| Gross Inpatient Revenue | $ 187,666,783 | $ 57,196,048 | $ 0 | $ 1,437,933 | $ 0 |
| Gross Outpatient Revenue | 0 | 0 | 0 | 0 | 0 |
| Gross Patient Revenue | $ 187,666,783 | $ 57,196,048 | $ 0 | $ 1,437,933 | $ 0 |
| - Deductions from Rev | 136,044,027 | 41,462,748 | 0 | 1,042,392 | 0 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 51,622,756 | $ 15,733,300 | $ 0 | $ 395,541 | $ 0 |
| Percent of Gross Revenue | 27.51% | 27.51% | 0.00% | 27.51% | 0.00% |
| Expenses (est.) | $ 49,004,999 | $ 14,935,474 | $ 0 | $ 375,484 | $ 0 |
| Payment Shortfall | $ 2,617,757 | $ 797,826 | $ 0 | $ 20,057 | $ 0 |
| Adjusted Patient Days | 28,771 | 9,903 | 0 | 378 | 0 |
| Gross I/P Rev Per Day | $ 6,523 | $ 5,776 | $ 0 | $ 3,804 | $ 0 |
| Gross I/P Rev Per Discharge | 252,920 | 150,913 | $ 0 | 359,483 | $ 0 |
| Gross O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |
| Net I/P Rev Per Day | $ 1,794 | $ 1,589 | $ 0 | $ 1,046 | $ 0 |
| Net I/P Rev Per Discharge | 69,572 | 41,513 | $ 0 | 98,885 | $ 0 |
| Net O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |

| Financial and Utilization Data by Payer Category | County Indigent Programs | Other Third Parties Traditional | Other Third Parties Managed Care | Other Indigent | Other Payers All Other Payers |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 0 | 18,490 | 0 | 0 | 0 |
| Discharges (excl. nursery) | 0 | 359 | 0 | 0 | 0 |
| Average Length of Stay | 0.00 | 51.50 | 0.00 | 0.00 | 0.00 |
| Outpatient Visits | 0 | 0 | 0 | 0 | 0 |
| Gross Inpatient Revenue | $ 0 | $ 129,032,802 | $ 0 | $ 0 | $ 0 |
| Gross Outpatient Revenue | 0 | 0 | 0 | 0 | 0 |
| Gross Patient Revenue | $ 0 | $ 129,032,802 | $ 0 | $ 0 | $ 0 |
| - Deductions from Rev | 0 | 93,538,887 | 0 | 0 | 0 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 0 | $ 35,493,915 | $ 0 | $ 0 | $ 0 |
| Percent of Gross Revenue | 0.00% | 27.51% | 0.00% | 0.00% | 0.00% |
| Expenses (est.) | $ 0 | $ 33,694,041 | $ 0 | $ 0 | $ 0 |
| Payment Shortfall | $ 0 | $ 1,799,874 | $ 0 | $ 0 | $ 0 |
| Adjusted Patient Days | 0 | 18,490 | 0 | 0 | 0 |
| Gross I/P Rev Per Day | $ 0 | $ 6,979 | $ 0 | $ 0 | $ 0 |
| Gross I/P Rev Per Discharge | $ 0 | 359,423 | $ 0 | $ 0 | $ 0 |
| Gross O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |
| Net I/P Rev Per Day | $ 0 | $ 1,920 | $ 0 | $ 0 | $ 0 |
| Net I/P Rev Per Discharge | $ 0 | 98,869 | $ 0 | $ 0 | $ 0 |
| Net O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |

Source: HCAI Hospital Annual Disclosure Reports
(Based on 04-19-2023 data extract)

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

### BALANCE SHEET - UNRESTRICTED FUND

| Assets | | % of Total | Liabilities and Equity | | % of Total |
|---|---|---|---|---|---|
| Current Assets | $ 102,988,277 | 98.14% | Current Liabilities | $ 77,268,595 | 73.63% |
| Limited Use Assets | 0 | 0.00% | Deferred Credits | 224,005 | 0.21% |
| Net PPE | 1,951,161 | 1.86% | Net Long-Term Debt | 993,421 | 0.95% |
| Construction-in-Progress | 0 | 0.00% | Total Liabilities | $ 78,486,021 | 74.79% |
| Investments & Other Assets | 0 | 0.00% | | | |
| Intangible Assets | 0 | 0.00% | Equity | 26,453,417 | 25.21% |
| Total Assets | $ 104,939,438 | 100.00% | Total Liabilities & Equity | $ 104,939,438 | 100.00% |
| | | | | | |
| Cash | $ 2,273,701 | 2.17% | Mortgage Notes | $ 0 | 0.00% |
| Total PPE | 4,998,829 | 4.76% | Bonds Payable | $ 0 | 0.00% |
| Intercompany Receivables | 74,834,943 | 71.31% | Intercompany Payables | $ 26,132,033 | 24.90% |

### Direct Expense by Natural Classification

| | Productive Hours | Per Adjusted Day | % of Total Exp |
|---|---|---|---|
| Salaries & Wages | $ 22,229,038 | $ 772.62 | 43.44% |
| Employee Benefits | 3,632,597 | 126.26 | 7.10% |
| Physician Pro. Fees | 2,261,577 | 78.61 | 4.42% |
| Other Pro. Fees | 143,727 | 5.00 | 0.28% |
| Supplies | 5,872,532 | 204.11 | 11.48% |
| Purchased Services | 4,909,616 | 170.64 | 9.59% |
| Depreciation | 417,990 | 14.53 | 0.82% |
| Leases & Rentals | 4,317,959 | 150.08 | 8.44% |
| Insurance | 728,182 | 25.31 | 1.42% |
| Interest | 69,652 | 2.42 | 0.14% |
| All Other Expenses | 6,588,253 | 228.99 | 12.87% |
| Total Operating Expenses | $ 51,171,123 | $ 1,778.57 | 100.00% |

### Direct Expense by Cost Center Group

| | | % of Total Exp |
|---|---|---|
| Daily Hospital Svcs. | $ 19,200,672 | 37.52% |
| Ambulatory Services | 0 | 0.00% |
| Ancillary Services | 9,087,196 | 17.76% |
| Purch. I/P & O/P Svcs. | 0 | 0.00% |
| Research | $ 0 | 0.00% |
| Education | 0 | 0.00% |
| General Services | 8,424,566 | 16.46% |
| Fiscal Services | 2,472,435 | 4.83% |
| Administrative Svcs. | 6,340,701 | 12.39% |
| Unassigned Costs | 5,645,553 | 11.03% |
| Total Operating Exp. | $ 51,171,123 | 100.00% |

### Labor Productivity by Employee Classification

| | Productive Hours | Hours Per Adjusted Day | % of Total Hours | Productive FTEs | FTEs Per Adj. Occupied Bed |
|---|---|---|---|---|---|
| Management & Supervision | 54,381 | 1.89 | 9.62% | 26.14 | 0.33 |
| Technical & Specialist | 97,906 | 3.40 | 17.31% | 47.07 | 0.60 |
| Registered Nurses | 129,207 | 4.49 | 22.85% | 62.12 | 0.79 |
| Licensed Voc. Nurses | 73,824 | 2.57 | 13.05% | 35.49 | 0.45 |
| Aides & Orderlies | 62,513 | 2.17 | 11.05% | 30.05 | 0.38 |
| Clerical & Other Admin. | 44,665 | 1.55 | 7.90% | 21.47 | 0.27 |
| Environ. & Food Services | 24,111 | 0.84 | 4.26% | 11.59 | 0.15 |
| All Other Employees | 78,974 | 2.74 | 13.96% | 37.97 | 0.48 |
| Total Productive Hours | 565,581 | 19.66 | 100.00% | 271.91 | 3.45 |
| | | | | | |
| Total Paid Hours | 618,756 | 21.51 | | 297.48 | 3.77 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**MCCJ Supplemental Request for Judicial Notice**

14.      California Department of Health Care Access and Information Records

     **2022 Pivot Data Table** - Hospital Annual Selected Data showing financial performance of each AAM-owned or operated hospital for 2022

     https://data.chhs.ca.gov/dataset/ea0c8ca9-023e-46a3-b95b-b9d4ab8ec195/resource/e6a7cc46-836f-4437-8ad1-e485d6ea0514/download/hafd2022-pivot.xls

     B.     **Coalinga Regional Medical Center:  offered to show a net loss of $5,967.582 for the reporting period**

Date Printed:

# 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

**Report Periods Ended 1-1-2021 through 12-31-2021**

## Data by Type of Care

| | Total | General Acute | Psychiatric | Rehabilitation | Long-term Care | Chem Dep & Other |
|---|---|---|---|---|---|---|
| Licensed Beds | 48 | 12 | 0 | 0 | 36 | 0 |
| Licensed Bed Occ. Rate | 84.17% | 48.72% | 0.00% | 0.00% | 95.98% | 0.00% |
| Available Beds | 48 | | | | | |
| Available Bed Occ. Rate | 84.17% | 48.72% | 0.00% | 0.00% | 95.98% | 0.00% |
| Patient Days (excl. nursery) | 14,746 | 2,134 | 0 | 0 | 12,612 | 0 |
| Discharges (excl. nursery) | 691 | 600 | 0 | 0 | 91 | 0 |
| Average Length of Stay (est.) | 21.34 | 3.56 | 0.00 | 0.00 | 138.59 | 0.00 |

## Income Statement

| | Total | Per Adjusted Day |
|---|---|---|
| Gross Patient Revenue | $ 71,946,061 | $ 2,655.65 |
| - Deductions from Revenue | 46,753,037 | 1,725.73 |
| + Capitation Premium Rev. | 0 | 0.00 |
| Net Patient Revenue | $ 25,193,024 | $ 929.92 |
| + Other Operating Revenue | 21,512 | 0.79 |
| Total Operating Revenue | $ 25,214,536 | $ 930.71 |
| - Operating Expenses | 33,148,872 | 1,223.58 |
| Net from Operations | $ (7,934,336) | $ (292.87) |
| + Non-Operating Revenue | 1,966,754 | 72.60 |
| - Non-Operating Expense | 0 | 0.00 |
| - Income Taxes | 0 | 0.00 |
| - Extraordinary Items | 0 | 0.00 |
| Net Income | $ (5,967,582) | $ (220.27) |

## Capitation Premium Revenue

| | |
|---|---|
| Medicare | $ 0 |
| Medi-Cal | 0 |
| Co. Indigent Programs | 0 |
| Other Managed Care | 0 |
| Total Capitation Rev. | $ 0 |

## Deductions from Revenue

| | |
|---|---|
| Medicare Cont Adj-Trad | $ 13,465,117 |
| Medicare Cont Adj-Mng Care | 0 |
| Medi-Cal Cont Adj-Trad | 23,600,934 |
| Medi-Cal Cont Adj-Mng Care | 0 |
| DSH (SB 855) Funds Rec'd | 0 |
| Co Indigent Cont Adj | 0 |
| Other 3rd Cont Adj-Trad. | 9,417,696 |
| Other 3rd Cont Adj-Mng Care | 0 |
| Provision for Bad Debts | 43,341 |
| Charity-Hill-Burton | 0 |
| Charity-Other | 0 |
| Gifts & Subs. Indigent Care | 0 |
| All Other Deductions | 225,949 |
| Total Deductions from Rev. | $ 46,753,037 |

## Equity Transfers

| | |
|---|---|
| DSH Funds Transferred | $ 0 |

## Other Utilization Statistics

| | |
|---|---|
| ER Visits | 8,362 |
| Clinic Visits | 0 |
| Home Health Visits | 508 |
| Referred O/P Visits | 0 |
| I/P Surgeries | 0 |
| O/P Surgeries | 0 |
| Purchased I/P Days | 0 |
| Nursery Days | 0 |
| Nursery Discharges | 0 |
| Natural Births | 0 |
| Cesarean Sections | 0 |

## Financial Ratios

| | |
|---|---|
| Current Ratio | 0.58 |
| Days in Accounts Receivable | 308.31 |
| Long-Term Debt to Net PPE | 0.00% |
| Long-Term Debt to Equity | 0.00% |
| Equity to Total Assets | (64.38%) |
| Net Return on Total Assets | (22.92%) |
| Patient Revenue Margin | (31.58%) |
| Operating Margin | (31.47%) |
| Total Margin | (23.67%) |
| Net Income Margin | (21.95%) |
| Cost-to-Charge Ratio | 46.04% |
| Net PPE Per Licensed Bed | $ 26,580 |

## Uncompensated Care Costs

| | |
|---|---|
| Charity-Other | $ 0 |
| Charity-Other + Bad Debt | 19,956 |
| Charity-Other + Bad Debt + CIP Cont. Adj. | 19,956 |

## Uncompensated Care Costs % of Operating Expenses

| | |
|---|---|
| Charity % of Operating Expenses | 0.00% |
| Charity + Bad Debt % Operating Expenses | 0.06% |
| Charity+Bad Debt+CIP Cont Adj % of Op. Exp. | 0.06% |

## Profile Characteristics

| | |
|---|---|
| No. of Hospitals | 1 |
| Hospital Name | COALINGA REGIONAL MEDICAL CENTER |
| County | (All) |
| HSA | (All) |
| HFPA | (All) |
| Type of Control | (All) |
| Type of Care | (All) |
| Health Systems | (All) |
| Teach & Rural Hosp | (All) |
| DSH Hospital? | (All) |
| Licensed Bed Size | (All) |
| LTC Day % | (All) |

Source: HCAI Hospital Annual Disclosure Reports
(Based on 04-19-2023 data extract)

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

**2021 HCAI Hospital Annual Financial Data Profile**
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| Financial and Utilization Data by Payer Category | Total | Medicare | | Medi-Cal | |
| --- | --- | --- | --- | --- | --- |
| | | Traditional | Managed Care | Traditional | Managed Care |
| Patient Days (excl. nursery) | 14,746 | 6,582 | 0 | 6,524 | 0 |
| Discharges (excl. nursery) | 691 | 163 | 0 | 284 | 0 |
| Average Length of Stay (est.) | 21.34 | 40.38 | 0.00 | 22.97 | 0.00 |
| Outpatient Visits | 8,569 | 741 | 0 | 4,367 | 0 |
| Gross Inpatient Revenue | $ 39,160,177 | $ 16,038,774 | $ 0 | $ 17,778,741 | $ 0 |
| Gross Outpatient Revenue | 32,785,884 | 4,974,341 | 0 | 14,717,528 | 0 |
| Gross Patient Revenue | $ 71,946,061 | $ 21,013,115 | $ 0 | $ 32,496,269 | $ 0 |
| - Deductions from Rev | 46,753,037 | 13,465,117 | 0 | 23,600,934 | 0 |
| + Capitation Premium Rev | 0 | | 0 | | 0 |
| Net Patient Revenue | $ 25,193,024 | $ 7,547,998 | $ 0 | $ 8,895,335 | $ 0 |
| Percent of Gross Revenue | 35.02% | 35.92% | 0.00% | 27.37% | 0.00% |
| Expenses (est.) | $ 33,127,360 | $ 9,675,429 | $ 0 | $ 14,962,815 | $ 0 |
| Payment Shortfall | ($7,934,336) | ($2,127,431) | $ 0 | ($6,067,480) | $ 0 |
| Adjusted Patient Days | 27,092 | 8,623 | 0 | 11,925 | 0 |
| Gross I/P Rev Per Day | $ 2,656 | $ 2,437 | $ 0 | $ 2,725 | $ 0 |
| Gross I/P Rev Per Discharge | 56,672 | 98,397 | 0 | 62,601 | 0 |
| Gross O/P Rev Per Visit | 3,826 | 6,713 | 0 | 3,370 | 0 |
| Net I/P Rev Per Day | $ 930 | $ 875 | $ 0 | $ 746 | $ 0 |
| Net I/P Rev Per Discharge | 19,844 | 35,345 | 0 | 17,136 | 0 |
| Net O/P Rev Per Visit | 1,340 | 2,411 | 0 | 923 | 0 |

| Financial and Utilization Data by Payer Category | County Indigent Programs | Other Third Parties | | Other Indigent | Other Payers All Other Payers |
| --- | --- | --- | --- | --- | --- |
| | | Traditional | Managed Care | | |
| Patient Days (excl. nursery) | 0 | 1,265 | 0 | 0 | 375 |
| Discharges (excl. nursery) | 0 | 213 | 0 | 0 | 31 |
| Average Length of Stay | 0.00 | 5.94 | 0.00 | 0.00 | 12.10 |
| Outpatient Visits | 0 | 2,778 | 0 | 0 | 683 |
| Gross Inpatient Revenue | $ 0 | $ 4,783,138 | $ 0 | $ 0 | $ 559,524 |
| Gross Outpatient Revenue | 0 | 10,595,973 | 0 | 0 | 2,498,042 |
| Gross Patient Revenue | $ 0 | $ 15,379,111 | $ 0 | $ 0 | $ 3,057,566 |
| - Deductions from Rev | 0 | 9,417,696 | 0 | 0 | 269,290 |
| + Capitation Premium Rev | 0 | | 0 | | |
| Net Patient Revenue | $ 0 | $ 5,961,415 | $ 0 | $ 0 | $ 2,788,276 |
| Percent of Gross Revenue | 0.00% | 38.76% | 0.00% | 0.00% | 91.19% |
| Expenses (est.) | $ 0 | $ 7,081,268 | $ 0 | $ 0 | $ 1,407,848 |
| Payment Shortfall | $ 0 | ($1,119,853) | $ 0 | $ 0 | $ 1,380,428 |
| Adjusted Patient Days | 0 | 4,067 | 0 | 0 | 2,049 |
| Gross I/P Rev Per Day | $ 0 | $ 3,781 | $ 0 | $ 0 | $ 1,492 |
| Gross I/P Rev Per Discharge | 0 | 22,456 | 0 | 0 | 18,049 |
| Gross O/P Rev Per Visit | 0 | 3,814 | 0 | 0 | 3,657 |
| Net I/P Rev Per Day | $ 0 | $ 1,466 | $ 0 | $ 0 | $ 1,361 |
| Net I/P Rev Per Discharge | 0 | 8,705 | 0 | 0 | 16,460 |
| Net O/P Rev Per Visit | 0 | 1,479 | 0 | 0 | 3,335 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**Report Periods Ended 1-1-2021 through 12-31-2021**

**2021 HCAI Hospital Annual Financial Data Profile**
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

Date Printed:

## BALANCE SHEET - UNRESTRICTED FUND

| Assets | | % of Total | Liabilities and Equity | | % of Total |
|---|---|---|---|---|---|
| Current Assets | $ 24,763,049 | 95.10% | Current Liabilities | $ 42,802,468 | 164.38% |
| Limited Use Assets | 0 | 0.00% | Deferred Credits | 0 | 0.00% |
| Net PPE | 1,275,818 | 4.90% | Net Long-Term Debt | 0 | 0.00% |
| Construction-in-Progress | 0 | 0.00% | Total Liabilities | $ 42,802,468 | 164.38% |
| Investments & Other Assets | 0 | 0.00% | | | |
| Intangible Assets | 0 | 0.00% | Equity | (16,763,601) | (64.38%) |
| Total Assets | $ 26,038,867 | 100.00% | Total Liabilities & Equity | $ 26,038,867 | 100.00% |
| | | | | | |
| Cash | $ 529,273 | 2.03% | Mortgage Notes | $ 0 | 0.00% |
| Total PPE | 1,413,100 | 5.43% | Bonds Payable | $ 0 | 0.00% |
| Intercompany Receivables | 2,927,723 | 11.24% | Intercompany Payables | $ 38,067,448 | 146.19% |

## Direct Expense by Natural Classification

| | | Per Adjusted Day | % of Total Exp |
|---|---|---|---|
| Salaries & Wages | $ 11,392,774 | $ 420.53 | 34.37% |
| Employee Benefits | 1,164,580 | 42.99 | 3.51% |
| Physician Pro. Fees | 4,413,812 | 162.92 | 13.32% |
| Other Pro. Fees | 3,562,972 | 131.52 | 10.75% |
| Supplies | 1,881,837 | 69.46 | 5.68% |
| Purchased Services | 1,173,244 | 43.31 | 3.54% |
| Depreciation | 110,386 | 4.07 | 0.33% |
| Leases & Rentals | 3,985,290 | 147.10 | 12.02% |
| Insurance | 76,786 | 2.83 | 0.23% |
| Interest | 1,288,322 | 47.55 | 3.89% |
| All Other Expenses | 4,098,869 | 151.30 | 12.37% |
| Total Operating Expenses | $ 33,148,872 | $ 1,223.58 | 100.00% |

## Direct Expense by Cost Center Group

| | | % of Total Exp |
|---|---|---|
| Daily Hospital Services | $ 8,707,790 | 26.27% |
| Ambulatory Services | 4,684,521 | 14.13% |
| Ancillary Services | 5,387,320 | 16.25% |
| Purch. I/P & O/P Svcs. | 0 | 0.00% |
| Research | $ 0 | 0.00% |
| Education | 0 | 0.00% |
| General Services | 5,298,639 | 15.98% |
| Fiscal Services | 1,182,173 | 3.57% |
| Administrative Svcs. | 5,821,651 | 17.56% |
| Unassigned Costs | 2,066,778 | 6.23% |
| Total Operating Exp. | $ 33,148,872 | 100.00% |

## Labor Productivity by Employee Classification

| | Productive Hours | Hours Per Adjusted Day | % of Total Hours | Productive FTEs | FTEs Per Adj. Occupied Bed |
|---|---|---|---|---|---|
| Management & Supervision | 28,574 | 1.05 | 10.90% | 13.74 | 0.19 |
| Technical & Specialist | 57,669 | 2.13 | 21.99% | 27.73 | 0.37 |
| Registered Nurses | 29,818 | 1.10 | 11.37% | 14.34 | 0.19 |
| Licensed Voc. Nurses | 15,360 | 0.57 | 5.86% | 7.38 | 0.10 |
| Aides & Orderlies | 62,849 | 2.32 | 23.97% | 30.22 | 0.41 |
| Clerical & Other Admin. | 34,751 | 1.28 | 13.25% | 16.71 | 0.23 |
| Environ. & Food Services | 8,311 | 0.31 | 3.17% | 4.00 | 0.05 |
| All Other Employees | 24,904 | 0.92 | 9.50% | 11.97 | 0.16 |
| All Total Productive Hours | 262,236 | 9.68 | 100.00% | 126.08 | 1.70 |
| | | | | | |
| Total Paid Hours | 271,188 | 10.01 | | 130.38 | 1.76 |

Source: HCAI Hospital Annual Disclosure Reports
(Based on 04-19-2023 data extract)

**MCCJ Supplemental Request for Judicial Notice**

14.     California Department of Health Care Access and
        Information Records

        **2022 Pivot Data Table** - Hospital Annual Selected Data
        showing financial performance of each AAM-owned or
        operated hospital for 2022

        https://data.chhs.ca.gov/dataset/ea0c8ca9-023e-46a3-b95b-
        b9d4ab8ec195/resource/e6a7cc46-836f-4437-8ad1-
        e485d6ea0514/download/hafd2022-pivot.xls

C.      **Colusa Medical Center:  offered to show a
        net loss of $2,713,715 for the reporting period**

**Report Periods Ended 1-1-2021 through 12-31-2021**

**2021 HCAI Hospital Annual Financial Data Profile**
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

Date Printed:

## Data by Type of Care

| | Total | General Acute | Psychiatric | Rehabilitation | Long-term Care | Chem Dep & Other |
|---|---|---|---|---|---|---|
| Licensed Beds | 48 | 42 | 0 | 0 | 6 | 0 |
| Licensed Bed Occ. Rate | 44.90% | 40.59% | 0.00% | 0.00% | 75.11% | 0.00% |
| Available Beds | 48 | 42 | 0 | 0 | 6 | 0 |
| Available Bed Occ. Rate | 44.90% | 40.59% | 0.00% | 0.00% | 75.11% | 0.00% |
| Patient Days (excl. nursery) | 7,867 | 6,222 | 0 | 0 | 1,645 | 0 |
| Discharges (excl. nursery) | 920 | 878 | 0 | 0 | 42 | 0 |
| Average Length of Stay (est.) | 8.55 | 7.09 | 0.00 | 0.00 | 39.17 | 0.00 |

## Income Statement

| | | Per Adjusted Day |
|---|---|---|
| Gross Patient Revenue | $ 70,878,704 | $ 3,640.01 |
| - Deductions from Revenue | 44,309,643 | 2,275.54 |
| + Capitation Premium Rev. | 0 | 0.00 |
| = Net Patient Revenue | $ 26,569,061 | $ 1,364.47 |
| + Other Operating Revenue | 87,169 | 4.48 |
| = Total Operating Revenue | $ 26,656,230 | $ 1,368.94 |
| - Operating Expenses | 33,664,666 | 1,728.86 |
| = Net from Operations | ($7,008,436) | ($359.92) |
| + Non-Operating Revenue | 4,294,721 | 220.56 |
| - Non-Operating Expense | 0 | 0.00 |
| - Income Taxes | 0 | 0.00 |
| - Extraordinary Items | 0 | 0.00 |
| = Net Income | ($2,713,715) | ($139.36) |

## Financial Ratios

| | |
|---|---|
| Current Ratio | 2.27 |
| Days in Accounts Receivable | 1,293.09 |
| Long-Term Debt to Net PPE | 0.00% |
| Long-Term Debt to Equity | 0.00% |
| Equity to Total Assets | 57.27% |
| Net Return on Total Assets | (2.35%) |
| Patient Revenue Margin | (26.71%) |
| Operating Margin | (26.29%) |
| Total Margin | (10.18%) |
| Net Income Margin | (8.77%) |
| Cost-to-Charge Ratio | 47.37% |
| Net PPE Per Licensed Bed | $ 74,220 |

## Uncompensated Care Costs

| | |
|---|---|
| Charity-Other | $ 105,685 |
| Charity-Other + Bad Debt | 172,542 |
| Charity-Other + Bad Debt + CIP Cont. Adj. | 172,542 |

## Uncompensated Care Costs % of Operating Expenses

| | |
|---|---|
| Charity % of Operating Expenses | 0.31% |
| Charity + Bad Debt % Operating Expenses | 0.51% |
| Charity+Bad Debt+CIP Cont Adj % of Op. Exp. | 0.51% |

## Profile Characteristics

| | |
|---|---|
| No. of Hospitals | 1 |
| Hospital Name | COLUSA MEDICAL CENTER |
| County | (All) |
| HSA | (All) |
| HFPA | (All) |
| Type of Control | (All) |
| Type of Care | (All) |
| Health Systems | (All) |
| Teach & Rural Hosp | (All) |
| DSH Hospital? | (All) |
| Licensed Bed Size | (All) |
| LTC Day % | (All) |

## Capitation Premium Revenue

| | |
|---|---|
| Medicare | $ 0 |
| Medi-Cal | 0 |
| Co. Indigent Programs | 0 |
| Other Managed Care | 0 |
| Total Capitation Rev. | $ 0 |

## Deductions from Revenue

| | |
|---|---|
| Medicare Cont Adj-Trad | $ 21,463,881 |
| Medicare Cont Adj-Mng Care | 0 |
| Medi-Cal Cont Adj-Trad | 18,467,627 |
| Medi-Cal Cont Adj-Mng Care | 0 |
| Medi-Cal Cont Adj+Mng Care Rec'd | 0 |
| DSH (SB 855) Funds Rec'd | 0 |
| Co Indigent Cont Adj | 0 |
| Other 3rd Cont Adj-Trad. | 4,013,916 |
| Other 3rd Cont Adj-Mng Care | 0 |
| Provision for Bad Debts | 141,128 |
| Charity-Hill-Burton | 0 |
| Charity-Other | 223,091 |
| Gifts & Subs. Indigent Care | 0 |
| All Other Deductions | 0 |
| Total Deductions from Rev. | $ 44,309,643 |

## Other Utilization Statistics

| | |
|---|---|
| ER Visits | 5,292 |
| Clinic Visits | 27,583 |
| Home Health Visits | 8,631 |
| Referred O/P Visits | 0 |
| I/P Surgeries | 46 |
| O/P Surgeries | 0 |
| Purchased I/P Days | 0 |
| Nursery Days | 0 |
| Nursery Discharges | 0 |
| Natural Births | 0 |
| Cesarean Sections | 0 |

## Equity Transfers

| | |
|---|---|
| DSH Funds Transferred | $ 0 |

Source: HCAI Hospital Annual Disclosure Reports
(Based on 04-19-2023 data extract)

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| Financial and Utilization Data by Payer Category | Total | Medicare Traditional | Medicare Managed Care | Medi-Cal Traditional | Medi-Cal Managed Care |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 7,867 | 3,301 | 0 | 3,789 | 0 |
| Discharges (excl. nursery) | 920 | 553 | 0 | 260 | 0 |
| Average Length of Stay (est.) | 8.55 | 5.97 | 0.00 | 14.57 | 0.00 |
| Outpatient Visits | 41,299 | 14,133 | 0 | 18,129 | 0 |
| Gross Inpatient Revenue | $ 28,635,945 | $ 13,431,117 | $ 0 | $ 12,680,058 | $ 0 |
| Gross Outpatient Revenue | 42,242,759 | 14,228,457 | 0 | 18,140,548 | 0 |
| Gross Patient Revenue | $ 70,878,704 | $ 27,659,574 | $ 0 | $ 30,820,606 | $ 0 |
| - Deductions from Rev | 44,309,643 | 21,463,881 | 0 | 18,467,627 | 0 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 26,569,061 | $ 6,195,693 | $ 0 | $ 12,352,979 | $ 0 |
| Percent of Gross Revenue | 37.49% | 22.40% | 0.00% | 40.08% | 0.00% |
| Expenses (est.) | $ 33,577,497 | $ 13,103,220 | $ 0 | $ 14,600,702 | $ 0 |
| Payment Shortfall | ($7,008,436) | ($6,907,527) | $ 0 | ($2,247,723) | $ 0 |
| Adjusted Patient Days | 19,472 | 6,798 | 0 | 9,210 | 0 |
| Gross I/P Rev Per Day | $ 3,640 | $ 4,069 | $ 0 | $ 3,347 | $ 0 |
| Gross I/P Rev Per Discharge | 31,126 | 24,288 | 0 | 48,769 | 0 |
| Gross O/P Rev Per Visit | 1,023 | 1,007 | 0 | 1,001 | 0 |
| Net I/P Rev Per Day | $ 1,364 | $ 911 | $ 0 | $ 1,341 | $ 0 |
| Net I/P Rev Per Discharge | 11,668 | 5,440 | 0 | 19,547 | 0 |
| Net O/P Rev Per Visit | 383 | 226 | 0 | 401 | 0 |

| Financial and Utilization Data by Payer Category | County Indigent Programs | Other Third Parties Traditional | Other Third Parties Managed Care | Other Indigent | Other Payers All Other Payers |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 0 | 746 | 0 | 0 | 31 |
| Discharges (excl. nursery) | 0 | 90 | 0 | 0 | 17 |
| Average Length of Stay | 0.00 | 8.29 | 0.00 | 0.00 | 1.82 |
| Outpatient Visits | 0 | 8,237 | 0 | 0 | 800 |
| Gross Inpatient Revenue | $ 0 | $ 2,341,904 | $ 0 | $ 0 | $ 182,866 |
| Gross Outpatient Revenue | 0 | 8,174,618 | 0 | 0 | 1,699,136 |
| Gross Patient Revenue | $ 0 | $ 10,516,522 | $ 0 | $ 0 | $ 1,882,002 |
| - Deductions from Rev | 0 | 4,013,916 | 0 | 0 | 364,219 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 0 | $ 6,502,606 | $ 0 | $ 0 | $ 1,517,783 |
| Percent of Gross Revenue | 0.00% | 61.83% | 0.00% | 0.00% | 80.65% |
| Expenses (est.) | $ 0 | $ 4,982,011 | $ 0 | $ 0 | $ 891,564 |
| Payment Shortfall | $ 0 | $ 1,520,595 | $ 0 | $ 0 | $ 626,219 |
| Adjusted Patient Days | 0 | 3,350 | 0 | 0 | 319 |
| Gross I/P Rev Per Day | $ 0 | $ 3,139 | $ 0 | $ 0 | $ 5,899 |
| Gross I/P Rev Per Discharge | 0 | 26,021 | 0 | 0 | 10,757 |
| Gross O/P Rev Per Visit | 0 | 992 | 0 | 0 | 2,124 |
| Net I/P Rev Per Day | $ 0 | $ 1,941 | $ 0 | $ 0 | $ 4,757 |
| Net I/P Rev Per Discharge | 0 | 16,089 | 0 | 0 | 8,675 |
| Net O/P Rev Per Visit | 0 | 614 | 0 | 0 | 1,713 |

Source: HCAI Hospital Annual Disclosure Reports
(Based on 04-19-2023 data extract)

**Report Periods Ended 1-1-2021 through 12-31-2021**

# 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

Date Printed:

## BALANCE SHEET - UNRESTRICTED FUND

| Assets | | % of Total |
|---|---:|---:|
| Current Assets | $ 111,740,393 | 96.91% |
| Limited Use Assets | 0 | 0.00% |
| Net PPE | 3,562,541 | 3.09% |
| Construction-in-Progress | 0 | 0.00% |
| Investments & Other Assets | 1,552 | 0.00% |
| Intangible Assets | 0 | 0.00% |
| Total Assets | $ 115,304,486 | 100.00% |
| | | |
| Cash | $ 465,947 | 0.40% |
| Total PPE | 3,562,541 | 3.09% |
| Intercompany Receivables | 15,887,453 | 13.78% |

| Liabilities and Equity | | % of Total |
|---|---:|---:|
| Current Liabilities | $ 49,274,037 | 42.73% |
| Deferred Credits | 0 | 0.00% |
| Net Long-Term Debt | 0 | 0.00% |
| Total Liabilities | $ 49,274,037 | 42.73% |
| Equity | 66,030,449 | 57.27% |
| Total Liabilities & Equity | $ 115,304,486 | 100.00% |
| | | |
| Mortgage Notes | $ 0 | 0.00% |
| Bonds Payable | $ 0 | 0.00% |
| Intercompany Payables | $ 38,986,458 | 33.81% |

## Direct Expense by Natural Classification

| | | Per Adjusted Day | % of Total Exp |
|---|---:|---:|---:|
| Salaries & Wages | $ 13,816,675 | $ 709.56 | 41.04% |
| Employee Benefits | 2,923,798 | 150.15 | 8.69% |
| Physician Pro. Fees | 1,567,775 | 80.51 | 4.66% |
| Other Pro. Fees | 4,737,951 | 243.32 | 14.07% |
| Supplies | 2,239,019 | 114.99 | 6.65% |
| Purchased Services | 3,691,166 | 189.56 | 10.96% |
| Depreciation | 692,789 | 35.58 | 2.06% |
| Leases & Rentals | 795,703 | 40.86 | 2.36% |
| Insurance | 0 | 0.00 | 0.00% |
| Interest | 348,552 | 17.90 | 1.04% |
| All Other Expenses | 2,851,238 | 146.43 | 8.47% |
| Total Operating Expenses | $ 33,664,666 | $ 1,728.86 | 100.00% |

## Direct Expense by Cost Center Group

| | | % of Total Exp |
|---|---:|---:|
| Daily Hospital Svcs. | $ 4,954,857 | 14.72% |
| Ambulatory Services | 11,442,286 | 33.99% |
| Ancillary Services | 2,888,456 | 8.58% |
| Purch. I/P & O/P Svcs. | 0 | 0.00% |
| Research | $ 0 | 0.00% |
| Education | 0 | 0.00% |
| General Services | 3,307,847 | 9.83% |
| Fiscal Services | 487,667 | 1.45% |
| Administrative Svcs. | 10,058,540 | 29.88% |
| Unassigned Costs | 525,013 | 1.56% |
| Total Operating Exp. | $ 33,664,666 | 100.00% |

## Labor Productivity by Employee Classification

| | Productive Hours | Hours Per Adjusted Day | % of Total Hours | Productive FTEs | FTEs Per Adj. Occupied Bed |
|---|---:|---:|---:|---:|---:|
| Management & Supervision | 21,335 | 1.10 | 6.09% | 10.26 | 0.19 |
| Technical & Specialist | 17,055 | 0.88 | 4.87% | 8.20 | 0.15 |
| Registered Nurses | 20,966 | 1.08 | 5.98% | 10.08 | 0.19 |
| Licensed Voc. Nurses | 930 | 0.05 | 0.27% | 0.45 | 0.01 |
| Aides & Orderlies | 125,273 | 6.43 | 35.76% | 60.23 | 1.13 |
| Clerical & Other Admin. | 122,843 | 6.31 | 35.06% | 59.06 | 1.11 |
| Environ. & Food Services | 31,539 | 1.62 | 9.00% | 15.16 | 0.28 |
| All Other Employees | 10,403 | 0.53 | 2.97% | 5.00 | 0.09 |
| Total Productive Hours | 350,344 | 17.99 | 100.00% | 168.43 | 3.16 |
| | | | | | |
| Total Paid Hours | 387,471 | 19.90 | | 186.28 | 3.49 |

Source:　HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**MCCJ Supplemental Request for Judicial Notice**

14.  California Department of Health Care Access and
Information Records

**2022 Pivot Data Table** - Hospital Annual Selected Data
showing financial performance of each AAM-owned or
operated hospital for 2022

https://data.chhs.ca.gov/dataset/ea0c8ca9-023e-46a3-b95b-
b9d4ab8ec195/resource/e6a7cc46-836f-4437-8ad1-
e485d6ea0514/download/hafd2022-pivot.xls

D.  **Glenn Medical Center:  offered to show $161,186 in
net income for the reporting period**

Date Printed:

# 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

**Report Periods Ended 1-1-2021 through 12-31-2021**

## Data by Type of Care

| | Total | General Acute | Psychiatric | Rehabilitation | Long-term Care | Chem Dep & Other |
|---|---|---|---|---|---|---|
| Licensed Beds | 47 | 47 | 0 | 0 | 0 | 0 |
| Licensed Bed Occ. Rate | 42.81% | 42.81% | 0.00% | 0.00% | 0.00% | 0.00% |
| Available Beds | 26 | 26 | | | | |
| Available Bed Occ. Rate | 77.39% | | | | | |
| Patient Days (excl. nursery) | 7,344 | 7,344 | 0 | 0 | 0 | 0 |
| Discharges (excl. nursery) | 284 | 284 | 0 | 0 | 0 | 0 |
| Average Length of Stay (est.) | 25.86 | 25.86 | 0.00 | 0.00 | 0.00 | 0.00 |

## Income Statement

| | Total | Per Adjusted Day |
|---|---|---|
| Gross Patient Revenue | $ 54,078,429 | $ 2,175.77 |
| - Deductions from Revenue | 26,893,117 | 1,082.00 |
| + Capitation Premium Rev. | 0 | 0.00 |
| Net Patient Revenue | $ 27,185,312 | $ 1,093.76 |
| + Other Operating Revenue | 1,952,471 | 78.55 |
| Total Operating Revenue | $ 29,137,783 | $ 1,172.32 |
| - Operating Expenses | 28,976,597 | 1,165.83 |
| Net from Operations | $ 161,186 | $ 6.49 |
| + Non-Operating Revenue | 0 | 0.00 |
| - Non-Operating Expense | 0 | 0.00 |
| - Income Taxes | 0 | 0.00 |
| - Extraordinary Items | 0 | 0.00 |
| Net Income | $ 161,186 | $ 6.49 |

## Deductions from Revenue

| | |
|---|---|
| Medicare Cont Adj-Trad | $ 14,656,526 |
| Medicare Cont Adj-Mng Care | 0 |
| Medi-Cal Cont Adj-Trad | 7,741,120 |
| Medi-Cal Cont Adj-Mng Care | 0 |
| DSH (SB 855) Funds Rec'd | 0 |
| Co Indigent Cont Adj | 0 |
| Other 3rd Cont Adj-Trad. | 2,872,988 |
| Other 3rd Cont Adj-Mng Care | 0 |
| Provision for Bad Debts | 1,622,483 |
| Charity-Hill-Burton | 0 |
| Charity-Other | 0 |
| Gifts & Subs. Indigent Care | 0 |
| All Other Deductions | 0 |
| Total Deductions from Rev. | $ 26,893,117 |

## Capitation Premium Revenue

| | |
|---|---|
| Medicare | $ 0 |
| Medi-Cal | 0 |
| Co. Indigent Programs | 0 |
| Other Managed Care | 0 |
| Total Capitation Rev. | $ 0 |

## Other Utilization Statistics

| | |
|---|---|
| ER Visits | 6,781 |
| Clinic Visits | 16,773 |
| Home Health Visits | 0 |
| Referred O/P Visits | 0 |
| I/P Surgeries | 0 |
| O/P Surgeries | 0 |
| Purchased I/P Days | 0 |
| Nursery Days | 0 |
| Nursery Discharges | 0 |
| Natural Births | 0 |
| Cesarean Sections | 0 |

## Equity Transfers

| | |
|---|---|
| DSH Funds Transferred | $ 0 |

## Financial Ratios

| | |
|---|---|
| Current Ratio | 2.29 |
| Days in Accounts Receivable | 123.47 |
| Long-Term Debt to Net PPE | (185.32%) |
| Long-Term Debt to Equity | (65.03%) |
| Equity to Total Assets | 1.43% |
| Net Return on Total Assets | (6.59%) |
| Patient Revenue Margin | 0.55% |
| Operating Margin | 0.55% |
| Total Margin | 0.55% |
| Net Income Margin | 0.55% |
| Cost-to-Charge Ratio | 49.97% |
| Net PPE Per Licensed Bed | ($4,922) |

## Uncompensated Care Costs

| | |
|---|---|
| Charity-Other | $ 0 |
| Charity-Other + Bad Debt | 810,789 |
| Charity-Other + Bad Debt + CIP Cont. Adj. | 810,789 |

### Uncompensated Care Costs % of Operating Expenses

| | |
|---|---|
| Charity % of Operating Expenses | 0.00% |
| Charity + Bad Debt % Operating Expenses | 3.00% |
| Charity+Bad Debt+CIP Cont Adj % of Op. Exp. | 3.00% |

## Profile Characteristics

| | |
|---|---|
| No. of Hospitals | 1 |
| Hospital Name | GLENN MEDICAL CENTER |
| County | (All) |
| HSA | (All) |
| HFPA | (All) |
| Type of Control | (All) |
| Type of Care | (All) |
| Health Systems | (All) |
| Teach & Rural Hosp | (All) |
| DSH Hospital? | (All) |
| Licensed Bed Size | (All) |
| LTC Day % | (All) |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

**Financial and Utilization Data by Payer Category**

| | Total | Medicare Traditional | Medicare Managed Care | Medi-Cal Traditional | Medi-Cal Managed Care |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 7,344 | 5,737 | 0 | 822 | 0 |
| Discharges (excl. nursery) | 284 | 221 | 0 | 32 | 0 |
| Average Length of Stay (est.) | 25.86 | 25.96 | 0.00 | 25.69 | 0.00 |
| Outpatient Visits | 23,554 | 9,380 | 0 | 7,696 | 0 |
| Gross Inpatient Revenue | $ 15,978,820 | $ 13,981,755 | $ 0 | $ 1,056,610 | $ 0 |
| Gross Outpatient Revenue | 38,099,609 | 23,726,985 | 0 | 8,133,212 | 0 |
| Gross Patient Revenue | $ 54,078,429 | $ 37,708,740 | $ 0 | $ 9,189,822 | $ 0 |
| - Deductions from Rev | 26,893,117 | 15,787,878 | 0 | 8,016,837 | 0 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 27,185,312 | $ 21,920,862 | $ 0 | $ 1,172,985 | $ 0 |
| Percent of Gross Revenue | 50.27% | 58.13% | 0.00% | 12.76% | 0.00% |
| Expenses (est.) | $ 27,024,126 | $ 18,843,849 | $ 0 | $ 4,592,347 | $ 0 |
| Payment Shortfall | $ 161,186 | $ 3,077,013 | $ 0 | ($3,419,362) | $ 0 |
| Adjusted Patient Days | 24,855 | 15,473 | 0 | 7,149 | 0 |
| Gross I/P Rev Per Day | $ 2,176 | $ 2,437 | $ 0 | $ 1,285 | $ 0 |
| Gross I/P Rev Per Discharge | 56,263 | 63,266 | $ 0 | 33,019 | $ 0 |
| Gross O/P Rev Per Visit | 1,618 | 2,530 | $ 0 | 1,057 | $ 0 |
| Net I/P Rev Per Day | $ 1,094 | $ 1,417 | $ 0 | $ 164 | $ 0 |
| Net I/P Rev Per Discharge | 28,284 | 36,778 | $ 0 | 4,215 | $ 0 |
| Net O/P Rev Per Visit | 813 | 1,470 | $ 0 | 135 | $ 0 |

**Financial and Utilization Data by Payer Category**

| | County Indigent Programs | Other Third Parties Traditional | Other Third Parties Managed Care | Other Indigent | Other Payers All Other Payers |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 0 | 782 | 0 | 0 | 3 |
| Discharges (excl. nursery) | 0 | 30 | 0 | 0 | 1 |
| Average Length of Stay | 0.00 | 26.07 | 0.00 | 0.00 | 3.00 |
| Outpatient Visits | 0 | 5,621 | 0 | 0 | 857 |
| Gross Inpatient Revenue | $ 0 | $ 907,767 | $ 0 | $ 0 | $ 32,688 |
| Gross Outpatient Revenue | 0 | 5,328,836 | 0 | 0 | 910,576 |
| Gross Patient Revenue | $ 0 | $ 6,236,603 | $ 0 | $ 0 | $ 943,264 |
| - Deductions from Rev | 0 | 3,060,101 | 0 | 0 | 28,301 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 0 | $ 3,176,502 | $ 0 | $ 0 | $ 914,963 |
| Percent of Gross Revenue | 0.00% | 50.93% | 0.00% | 0.00% | 97.00% |
| Expenses (est.) | $ 0 | $ 3,116,561 | $ 0 | $ 0 | $ 471,369 |
| Payment Shortfall | $ 0 | $ 59,941 | $ 0 | $ 0 | $ 443,594 |
| Adjusted Patient Days | 0 | 5,373 | 0 | 0 | 87 |
| Gross I/P Rev Per Day | $ 0 | $ 1,161 | $ 0 | $ 0 | $ 10,896 |
| Gross I/P Rev Per Discharge | $ 0 | 30,259 | $ 0 | $ 0 | 32,688 |
| Gross O/P Rev Per Visit | $ 0 | 948 | $ 0 | $ 0 | 1,063 |
| Net I/P Rev Per Day | $ 0 | $ 591 | $ 0 | $ 0 | $ 10,569 |
| Net I/P Rev Per Discharge | $ 0 | 15,412 | $ 0 | $ 0 | 31,707 |
| Net O/P Rev Per Visit | $ 0 | 483 | $ 0 | $ 0 | 1,031 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**Report Periods Ended 1-1-2021 through 12-31-2021**

# 2021 HCAI Hospital Annual Financial Data Profile
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

Date Printed:

## BALANCE SHEET - UNRESTRICTED FUND

### Assets

| Assets | | % of Total |
|---|---:|---:|
| Current Assets | $ 11,513,624 | 102.05% |
| Limited Use Assets | 0 | 0.00% |
| Net PPE | (337,880) | (2.99%) |
| Construction-in-Progress | 106,562 | 0.94% |
| Investments & Other Assets | 0 | 0.00% |
| Intangible & Other Assets | 0 | 0.00% |
| Total Assets | $ 11,282,306 | 100.00% |

| | | | |
|---|---:|---:|---:|
| Cash | $ 1,751,027 | 15.52% | |
| Total PPE | 7,188,786 | 63.72% | |
| Intercompany Receivables | 0 | 0.00% | |

### Liabilities and Equity

| Liabilities and Equity | | % of Total |
|---|---:|---:|
| Current Liabilities | $ 5,022,826 | 44.52% |
| Deferred Credits | 0 | 0.00% |
| Net Long-Term Debt | 13,596,023 | 120.51% |
| Total Liabilities | $ 18,618,849 | 165.03% |
| Equity | (7,336,543) | (65.03%) |
| Total Liabilities & Equity | $ 11,282,306 | 100.00% |

| | | |
|---|---:|---:|
| Mortgage Notes | $ 0 | 0.00% |
| Bonds Payable | 0 | 0.00% |
| Intercompany Payables | 0 | 0.00% |

## Direct Expense by Natural Classification

| Natural Classification | Productive Hours | Per Adjusted Day | % of Total Exp |
|---|---:|---:|---:|
| Salaries & Wages | $ 11,990,814 | $ 482.43 | 41.38% |
| Employee Benefits | 2,127,124 | 85.58 | 7.34% |
| Physician Pro. Fees | 3,102,053 | 124.81 | 10.71% |
| Other Pro. Fees | 4,466,876 | 179.72 | 15.42% |
| Supplies | 1,049,523 | 42.23 | 3.62% |
| Purchased Services | 3,130,474 | 125.95 | 10.80% |
| Depreciation | 972,752 | 39.14 | 3.36% |
| Leases & Rentals | 0 | 0.00 | 0.00% |
| Insurance | 276,112 | 11.11 | 0.95% |
| Interest | 379,194 | 15.26 | 1.31% |
| All Other Expenses | 1,481,675 | 59.61 | 5.11% |
| Total Operating Expenses | $ 28,976,597 | $ 1,165.83 | 100.00% |

## Direct Expense by Cost Center Group

| Cost Center Group | | % of Total Exp |
|---|---:|---:|
| Daily Hospital Svcs. | $ 5,956,170 | 20.56% |
| Ambulatory Services | 3,802,360 | 13.12% |
| Ancillary Services | 4,878,130 | 16.83% |
| Purch. I/P & O/P Svcs. | 0 | 0.00% |
| Research | $ 0 | 0.00% |
| Education | 0 | 0.00% |
| General Services | 4,212,979 | 14.54% |
| Fiscal Services | 1,377,396 | 4.75% |
| Administrative Svcs. | 7,977,902 | 27.53% |
| Unassigned Costs | 771,660 | 2.66% |
| Total Operating Exp. | $ 28,976,597 | 100.00% |

## Labor Productivity by Employee Classification

| Employee Classification | Productive Hours | Hours Per Adjusted Day | % of Total Hours | Productive FTEs | FTEs Per Adj. Occupied Bed |
|---|---:|---:|---:|---:|---:|
| Management & Supervision | 46,478 | 1.87 | 10.88% | 22.35 | 0.33 |
| Technical & Specialist | 82,886 | 3.33 | 19.40% | 39.85 | 0.59 |
| Registered Nurses | 58,905 | 2.37 | 13.79% | 28.32 | 0.42 |
| Licensed Voc. Nurses | 26,238 | 1.06 | 6.14% | 12.61 | 0.19 |
| Aides & Orderlies | 84,288 | 3.39 | 19.73% | 40.52 | 0.60 |
| Clerical & Other Admin. | 73,050 | 2.94 | 17.10% | 35.12 | 0.52 |
| Environ. & Food Services | 53,648 | 2.16 | 12.56% | 25.79 | 0.38 |
| All Other Employees | 1,758 | 0.07 | 0.41% | 0.85 | 0.01 |
| Total Productive Hours | 427,251 | 17.19 | 100.00% | 205.41 | 3.02 |
| Total Paid Hours | 487,829 | 19.63 | | 234.53 | 3.44 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

**MCCJ Supplemental Request for Judicial Notice**

14.    California Department of Health Care Access and
       Information Records

       **2022 Pivot Data Table** - Hospital Annual Selected Data
       showing financial performance of each AAM-owned or
       operated hospital for 2022

       https://data.chhs.ca.gov/dataset/ea0c8ca9-023e-46a3-b95b-
       b9d4ab8ec195/resource/e6a7cc46-836f-4437-8ad1-
       e485d6ea0514/download/hafd2022-pivot.xls

**E.    Sonoma Specialty Hospital:  offered to show a
       net loss of $4,654,887 for the reporting period**

**Report Periods Ended 1-1-2021 through 12-31-2021**

## 2021 HCAI Hospital Annual Financial Data Profile
### (excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

Date Printed:

### Data by Type of Care

| | Total | General Acute | Psychiatric | Rehabilitation | Long-term Care | Chem Dep & Other |
|---|---|---|---|---|---|---|
| Licensed Beds | 37 | 37 | 0 | 0 | 0 | 0 |
| Licensed Bed Occ. Rate | 80.19% | 80.19% | 0.00% | 0.00% | 0.00% | 0.00% |
| Available Beds | 37 | 37 | | | | |
| Available Bed Occ. Rate | 80.19% | 80.19% | | | | |
| Patient Days (excl. nursery) | 10,829 | 10,829 | 0 | 0 | 0 | 0 |
| Discharges (excl. nursery) | 322 | 322 | 0 | 0 | 0 | 0 |
| Average Length of Stay (est.) | 33.63 | 33.63 | 0.00 | 0.00 | 0.00 | 0.00 |

### Income Statement

| | | Per Adjusted Day |
|---|---|---|
| Gross Patient Revenue | $ 62,629,164 | $ 5,783.47 |
| - Deductions from Revenue | 35,338,214 | 3,263.29 |
| + Capitation Premium Rev. | 0 | 0.00 |
| = Net Patient Revenue | $ 27,290,950 | $ 2,520.17 |
| + Other Operating Revenue | 63,959 | 5.91 |
| = Total Operating Revenue | $ 27,354,909 | $ 2,526.08 |
| - Operating Expenses | 34,227,235 | 3,160.70 |
| = Net from Operations | ($6,872,326) | ($634.62) |
| + Non-Operating Revenue | 2,217,439 | 204.77 |
| - Non-Operating Expense | 0 | 0.00 |
| - Income Taxes | 0 | 0.00 |
| - Extraordinary Items | 0 | 0.00 |
| = Net Income | ($4,654,887) | ($429.85) |

### Financial Ratios

| | |
|---|---|
| Current Ratio | 0.67 |
| Days in Accounts Receivable | 162.69 |
| Long-Term Debt to Net PPE | 0.00% |
| Long-Term Debt to Equity | 0.00% |
| Equity to Total Assets | (44.53%) |
| Net Return on Total Assets | (19.62%) |
| Patient Revenue Margin | (25.42%) |
| Operating Margin | (25.12%) |
| Total Margin | (17.02%) |
| Net Income Margin | (15.74%) |
| Cost-to-Charge Ratio | 54.55% |
| Net PPE Per Licensed Bed | $ 24,310 |

### Uncompensated Care Costs

| | |
|---|---|
| Charity-Other | $ 0 |
| Charity-Other + Bad Debt | 66,580 |
| Charity-Other + Bad Debt + CIP Cont. Adj. | 66,580 |

### Uncompensated Care Costs % of Operating Expenses

| | |
|---|---|
| Charity % of Operating Expenses | 0.00% |
| Charity + Bad Debt % Operating Expenses | 0.19% |
| Charity+Bad Debt+CIP Cont Adj % of Op. Exp. | 0.19% |

### Profile Characteristics

| | |
|---|---|
| No. of Hospitals | 1 |
| Hospital Name | SONOMA SPECIALTY HOSPITAL |
| County | (All) |
| HSA | (All) |
| HFPA | (All) |
| Type of Control | (All) |
| Type of Care | (All) |
| Health Systems | (All) |
| Teach & Rural Hosp | (All) |
| DSH Hospital? | (All) |
| Licensed Bed Size | (All) |
| LTC Day % | (All) |

### Capitation Premium Revenue

| | |
|---|---|
| Medicare | $ 0 |
| Medi-Cal | 0 |
| Co. Indigent Programs | 0 |
| Other Managed Care | 0 |
| Total Capitation Rev. | $ 0 |

### Deductions from Revenue

| | |
|---|---|
| Medicare Cont Adj-Trad | $ 13,977,289 |
| Medicare Cont Adj+Mng Care | 0 |
| Medi-Cal Cont Adj-Trad | 516,320 |
| Medi-Cal Cont Adj+Mng Care | 0 |
| DSH (SB 855) Funds Rec'd | 0 |
| Co Indigent Cont Adj | 0 |
| Other 3rd Cont Adj-Trad. | 20,722,549 |
| Other 3rd Cont Adj+Mng Care | 0 |
| Provision for Bad Debts | 122,056 |
| Charity-Hill-Burton | 0 |
| Charity-Other | 0 |
| Gifts & Subs. Indigent Care | 0 |
| All Other Deductions | 0 |
| Total Deductions from Rev. | $ 35,338,214 |

### Other Utilization Statistics

| | |
|---|---|
| ER Visits | 0 |
| Clinic Visits | 0 |
| Home Health Visits | 0 |
| Referred O/P Visits | 0 |
| I/P Surgeries | 0 |
| O/P Surgeries | 0 |
| Purchased I/P Days | 0 |
| Nursery Days | 0 |
| Nursery Discharges | 0 |
| Natural Births | 0 |
| Cesarean Sections | 0 |

### Equity Transfers

| | |
|---|---|
| DSH Funds Transferred | $ 0 |

Source: HCAI Hospital Annual Disclosure Reports
**(Based on 04-19-2023 data extract)**

Date Printed:

**Report Periods Ended 1-1-2021 through 12-31-2021**

**2021 HCAI Hospital Annual Financial Data Profile**
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

| Financial and Utilization Data by Payer Category | Total | Medicare Traditional | Medicare Managed Care | Medi-Cal Traditional | Medi-Cal Managed Care |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 10,829 | 4,247 | 0 | 138 | 0 |
| Discharges (excl. nursery) | 322 | 128 | 0 | 5 | 0 |
| Average Length of Stay (est.) | 33.63 | 33.18 | 0.00 | 27.60 | 0.00 |
| Outpatient Visits | 0 | 0 | 0 | 0 | 0 |
| Gross Inpatient Revenue | $ 62,629,164 | $ 24,862,746 | $ 0 | $ 918,429 | $ 0 |
| Gross Outpatient Revenue | 0 | 0 | 0 | 0 | 0 |
| Gross Patient Revenue | $ 62,629,164 | $ 24,862,746 | $ 0 | $ 918,429 | $ 0 |
| - Deductions from Rev | 35,338,214 | 14,025,733 | 0 | 518,110 | 0 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 27,290,950 | $ 10,837,013 | $ 0 | $ 400,319 | $ 0 |
| Percent of Gross Revenue | 43.58% | 43.59% | 0.00% | 43.59% | 0.00% |
| Expenses (est.) | $ 34,163,276 | $ 13,562,258 | $ 0 | $ 500,989 | $ 0 |
| Payment Shortfall | ($36,872,326) | ($2,725,245) | $ 0 | ($100,670) | $ 0 |
| Adjusted Patient Days | 10,829 | 4,247 | 0 | 138 | 0 |
| | | | | | |
| Gross I/P Rev Per Day | $ 5,783 | $ 5,854 | $ 0 | $ 6,655 | $ 0 |
| Gross I/P Rev Per Discharge | 194,501 | 194,240 | $ 0 | 183,686 | $ 0 |
| Gross O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |
| Net I/P Rev Per Day | $ 2,520 | $ 2,552 | $ 0 | $ 2,901 | $ 0 |
| Net I/P Rev Per Discharge | 84,755 | 84,664 | $ 0 | 80,064 | $ 0 |
| Net O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |

| Financial and Utilization Data by Payer Category | County Indigent Programs | Other Third Parties Traditional | Other Third Parties Managed Care | Other Indigent | Other Payers All Other Payers |
|---|---|---|---|---|---|
| Patient Days (excl. nursery) | 0 | 6,262 | 0 | 0 | 182 |
| Discharges (excl. nursery) | 0 | 183 | 0 | 0 | 6 |
| Average Length of Stay | 0.00 | 34.22 | 0.00 | 0.00 | 30.33 |
| Outpatient Visits | 0 | 0 | 0 | 0 | 0 |
| Gross Inpatient Revenue | $ 0 | $ 36,831,096 | $ 0 | $ 0 | $ 16,893 |
| Gross Outpatient Revenue | 0 | 0 | 0 | 0 | 0 |
| Gross Patient Revenue | $ 0 | $ 36,831,096 | $ 0 | $ 0 | $ 16,893 |
| - Deductions from Rev | 0 | 20,794,341 | 0 | 0 | 30 |
| + Capitation Premium Rev | 0 | 0 | 0 | 0 | 0 |
| Net Patient Revenue | $ 0 | $ 16,036,755 | $ 0 | $ 0 | $ 16,863 |
| Percent of Gross Revenue | 0.00% | 43.54% | 0.00% | 0.00% | 99.82% |
| Expenses (est.) | $ 0 | $ 20,090,814 | $ 0 | $ 0 | $ 9,215 |
| Payment Shortfall | $ 0 | ($4,054,059) | $ 0 | $ 0 | $ 7,648 |
| Adjusted Patient Days | 0 | 6,262 | 0 | 0 | 182 |
| | | | | | |
| Gross I/P Rev Per Day | $ 0 | $ 5,882 | $ 0 | $ 0 | $ 93 |
| Gross I/P Rev Per Discharge | $ 0 | 201,263 | $ 0 | $ 0 | 2,816 |
| Gross O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |
| Net I/P Rev Per Day | $ 0 | $ 2,561 | $ 0 | $ 0 | $ 93 |
| Net I/P Rev Per Discharge | $ 0 | 87,633 | $ 0 | $ 0 | 2,811 |
| Net O/P Rev Per Visit | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |

Source: HCAI Hospital Annual Disclosure Reports
(Based on 04-19-2023 data extract)

**Report Periods Ended 1-1-2021 through 12-31-2021**

# 2021 HCAI Hospital Annual Financial Data Profile
(excludes Kaiser, State, Shriners, LTC Emphasis, and PHFs)

Date Printed:

## BALANCE SHEET - UNRESTRICTED FUND

| Assets | | % of Total | Liabilities and Equity | | % of Total |
|---|---|---|---|---|---|
| Current Assets | $ 22,825,547 | 96.21% | Current Liabilities | $ 34,289,464 | 144.53% |
| Limited Use Assets | 0 | 0.00% | Deferred Credits | 0 | 0.00% |
| Net PPE | 185,489 | 0.78% | Net Long-Term Debt | 0 | 0.00% |
| Construction-in-Progress | 713,977 | 3.01% | Total Liabilities | $ 34,289,464 | 144.53% |
| Investments & Other Assets | 0 | 0.00% | | | |
| Intangible Assets | 0 | 0.00% | Equity | (10,564,451) | (44.53%) |
| Total Assets | $ 23,725,013 | 100.00% | Total Liabilities & Equity | $ 23,725,013 | 100.00% |
| | | | | | |
| Cash | $ 1,613,491 | 6.80% | Mortgage Notes | $ 0 | 0.00% |
| Total PPE | 270,064 | 1.14% | Bonds Payable | $ 0 | 0.00% |
| Intercompany Receivables | 8,560,830 | 36.08% | Intercompany Payables | $ 23,066,761 | 97.23% |

## Direct Expense by Natural Classification

| | Productive Hours | Per Adjusted Day | % of Total Exp |
|---|---|---|---|
| Salaries & Wages | $ 12,919,027 | $ 1,193.00 | 37.74% |
| Employee Benefits | 1,200,435 | 110.85 | 3.51% |
| Physician Pro. Fees | 1,912,045 | 176.57 | 5.59% |
| Other Pro. Fees | 6,320 | 0.58 | 0.02% |
| Supplies | 2,885,912 | 266.50 | 8.43% |
| Purchased Services | 8,012,819 | 739.94 | 23.41% |
| Depreciation | 154,898 | 14.30 | 0.45% |
| Leases & Rentals | 3,333,809 | 307.86 | 9.74% |
| Insurance | 85,605 | 7.91 | 0.25% |
| Interest | 41 | 0.00 | 0.00% |
| All Other Expenses | 3,716,324 | 343.18 | 10.86% |
| Total Operating Expenses | $ 34,227,235 | $ 3,160.70 | 100.00% |

## Direct Expense by Cost Center Group

| | | % of Total Exp |
|---|---|---|
| Daily Hospital Services | $ 14,201,210 | 41.49% |
| Ambulatory Services | 0 | 0.00% |
| Ancillary Services | 4,757,256 | 13.90% |
| Purch. I/P & O/P Svcs. | 0 | 0.00% |
| Research | $ 0 | 0.00% |
| Education | 0 | 0.00% |
| General Services | 3,781,219 | 11.05% |
| Fiscal Services | 1,624,374 | 4.75% |
| Administrative Svcs. | 5,044,310 | 14.74% |
| Unassigned Costs | 4,818,866 | 14.08% |
| Total Operating Exp. | $ 34,227,235 | 100.00% |

## Labor Productivity by Employee Classification

| | Productive Hours | Hours Per Adjusted Day | % of Total Hours |
|---|---|---|---|
| Management & Supervision | 27,258 | 2.52 | 10.44% |
| Technical & Specialist | 75,762 | 7.00 | 29.01% |
| Registered Nurses | 66,019 | 6.10 | 25.28% |
| Licensed Voc. Nurses | 30,066 | 2.78 | 11.51% |
| Aides & Orderlies | 25,405 | 2.35 | 9.73% |
| Clerical & Other Admin. | 18,809 | 1.74 | 7.20% |
| Environ. & Food Services | 10,045 | 0.93 | 3.85% |
| All Other Employees | 7,753 | 0.72 | 2.97% |
| Total Productive Hours | 261,117 | 24.11 | 100.00% |
| | | | |
| Total Paid Hours | 292,068 | 26.97 | |

| | Productive FTEs | FTEs Per Adj. Occupied Bed |
|---|---|---|
| | 13.10 | 0.44 |
| | 36.42 | 1.23 |
| | 31.74 | 1.07 |
| | 14.45 | 0.49 |
| | 12.21 | 0.41 |
| | 9.04 | 0.30 |
| | 4.83 | 0.16 |
| | 3.73 | 0.13 |
| | 125.54 | 4.23 |
| | 140.42 | 4.73 |

Source: HCAI Hospital Annual Disclosure Reports
(Based on 04-19-2023 data extract)

**MCCJ Supplemental Request for Judicial Notice**

**15.**     **Sonoma County Superior Court records** reflecting litigation involving Sonoma Specialty Hospital

    A.     **Complaint filed in the Sonoma County Superior Court in *Medely, Inc. v. Sonoma Specialty Hospital, LLC, et al.,* Case No. 24CV01801, filed March 25, 2024, demanding $461,966.93** for goods/services provided, plus interest accruing since June of 2023

ELECTRONICALLY FILED
Superior Court of California
County of Sonoma
3/25/2024 3:02 PM
Robert Oliver, Clerk of the Court
By: Janice Archuleta, Deputy Clerk

1

**GABA LAW**
Rodolfo Gaba, Jr.  (State Bar No. 230475)

2

25 Mauchly • Suite 300

3

Irvine, California  92618
888-391-1228 Phone

4

949-207-7108 Facsimile

5

updates@gaba.law
194126

6

7

ATTORNEY FOR PLAINTIFF,
MEDELY, INC.

8

9

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10

**FOR THE COUNTY OF SONOMA, SONOMA HALL OF JUSTICE**

11

12

13

MEDELY, INC.,

                    Plaintiff,

14

     vs.

15

SONOMA SPECIALTY HOSPITAL, LLC, A
LIMITED LIABILITY COMPANY; and DOES

16

1 to 100, inclusive,

17

Defendants.

18

_____

Case No.:  24CV01801

**COMPLAINT FOR:**

   **1.  OPEN BOOK ACCOUNT**
   **2.  ACCOUNT STATED**
   **3.  REASONABLE VALUE**

DEMAND: $461966.93

UN-LIMITED CIVIL

19

20

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

21

     Plaintiff, MEDELY, INC. (hereinafter referred to as "Plaintiff") alleges the following

22

causes of action against SONOMA SPECIALTY HOSPITAL, LLC, A LIMITED LIABILITY

23

COMPANY; and DOES 1 to 100, INCLUSIVE (hereinafter collectively referred to as

24

"Defendants,") as follows:

25

     1.     Plaintiff is, and at all times relevant was, a corporation, organized and

existing under and by virtue of the laws of the State of its incorporation.

26

     2.     Plaintiff alleges on information and belief that the Defendants, or some of

27

them, maintain their residence within the above-referenced County and Judicial District.

28

3.　　The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 to 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff alleges on information and belief that each of the Defendants designated herein as a fictitiously named Defendant is, in some manner, responsible for the events and happenings referred to, either contractually or tortuously, and/or that such fictitiously named Defendants claim that some right, title or interest to the property described herein below and/or that such fictitiously named Defendants are in some manner liable for the obligation described herein below. When Plaintiff ascertains the true names and capacities of DOES 1 to 100, Plaintiff will amend this Complaint accordingly.

4.　　Plaintiff alleges on information and belief that at all times herein mentioned, all Defendants named herein each acted in concert and conspired with or aided and abetted each other to do the acts complained of in this Complaint, and that each Defendant acted as an agent for the other at all times.

5.　　Plaintiff alleges on information and belief that the obligation sued upon is not subject to the provisions of California <u>Civil Code</u> sections 2984.4 and 1812.10.

## **<u>FIRST CAUSE OF ACTION – OPEN BOOK ACCOUNT</u>**

### (As To All Defendants)

6.　　Plaintiff repeats and realleges paragraphs 1 to 5, above, and incorporates them herein by reference.

7.　　Within four (4) years past, prior to the commencement of this action, Defendant became indebted to Plaintiff on an open book account for a principal balance due in the sum of $461966.93.

8.　　Demand has been made on Defendants for said sum of $461966.93, but they have failed and refused and continue to fail and refuse to pay said sum, and the whole thereof is now due, owing and payable together with interest at the legal rate.

////

////

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND CAUSE OF ACTION – ACCOUNT STATED**

(As To All Defendants)

9.      Plaintiff repeats and realleges paragraphs 1 to 8, above, and incorporates them herein by reference.

10.     Within four (4) years past, prior to the commencement of this action, there was an account stated by and between Plaintiff and Defendants, on which stated account the principal sum of $461966.93 was agreed upon as the principal balance due to said Plaintiff from Defendants, which sum Defendants promised and agreed to pay.

11.     Demand has been made on Defendants for said sum of $461966.93, but they have failed and refused and continue to fail and refuse to pay said sum, and the whole thereof is now due, owing and payable together with interest at the legal rate.

**THIRD CAUSE OF ACTION – REASONABLE VALUE**

(As To All Defendants)

12.     Plaintiff repeats and realleges paragraphs 1 to 11, above, and incorporates them herein by reference.

13.     Within two (2) years past, prior to the commencement of this action, Defendants became indebted to Plaintiff for a balance due in the principal sum of $461966.93, for goods, wares and merchandise, sold, furnished and delivered, and/or for services rendered to Defendants at their special instance and request, and in the reasonable and agreed value of $461966.93, which sum Defendants agreed to pay.

14.     Demand has been made on Defendants for said sum of $461966.93, but they have failed and refused and continue to fail and refuse to pay said sum, and the whole thereof is now due, owing and payable together with interest at the legal rate.

////

////

////

////

////

1  WHEREFORE, Plaintiff prays for Judgment against the Defendants, and each of

2 them, as follows:

3  1. For the principal sum of $461966.93, together with interest thereof at the

4 legal rate of 10.0000 from 06/02/2023;

5  2. For attorney's fees incurred herein pursuant to California <u>Civil Code</u> section

6 1717.5;

7  3. For all costs incurred herein; and

8  4. For such further and other relief as the Court may deem just and proper.

9

10 Dated: March 5, 2024     **GABA LAW**

11

12

13         _____

           RODOLFO GABA, JR.

14          ATTORNEY FOR PLAINTIFF,

           MEDELY, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MCCJ Supplemental Request for Judicial Notice**

**15.** **Sonoma County Superior Court records** reflecting litigation involving Sonoma Specialty Hospital

**B.** **Docket details from small claims court action** ***McElroy v. Sonoma Specialty Hospital, LLC*, Case No. MSC-189949, filed July 19, 2019, uncontested, resulting in a judgment of $8,703.10.**

# Case Information

MSC-189949 | McElroy vs. Sonoma Specialty Hospital, LLC

| | | |
|---|---|---|
| Case Number | Court | |
| MSC-189949 | Civil | |
| File Date | Case Type | Case Status |
| 07/19/2019 | Small Claims $5,001 - $10,000 | Adjudicated |

# Party

Plaintiff
McElroy, David

   Aliases
   *DBA* Advanced Savings Solution

---

Defendant
Sonoma Specialty Hospital, LLC

# Cause of Action

| File Date | Cause of Action | Type | Filed By | Filed Against |
|---|---|---|---|---|
| 07/19/2019 | Plaintiff's Claim - SMCL | Action | McElroy, David | Sonoma Specialty Hospital, LLC |

# Disposition Events

08/19/2019 **Judgment** ▾

Judicial Officer
Levy, Julie

Judgment Type
Small Claims Judgment - Uncontested

Party
Names: McElroy, David

Sonoma Specialty Hospital, LLC

Judgment - Monetary Award

Awarded To:

McElroy, David

Judgment Amount: $8,703.10

Awarded Against:

Sonoma Specialty Hospital, LLC

Amount

Damages: $8,613.10

Costs: $90.00

Total: $8703.10

# Events and Hearings

07/19/2019 Plaintiff's Claim

07/19/2019 To be Served by Certified Mail ▼

Comment
AFS: Gurpreet Singh

07/19/2019 Cause Of Action ▼

| Action | File Date |
|--------|-----------|
| Plaintiff's Claim - SMCL | 07/19/2019 |

07/25/2019 Proof of Service of Small Claim ▼

Comment
Signed

08/19/2019 Small Claims Trial ▾

Judicial Officer
Levy, Julie

Hearing Time
9:00 AM

Result
Trial Commenced

Parties Present ▲
Plaintiff: McElroy, David

08/19/2019 Small Claims Notice of Entry of Judgment

**MCCJ Supplemental Request for Judicial Notice**

**15.　　　Sonoma County Superior Court records** reflecting litigation involving Sonoma Specialty Hospital

　　**C.　　Docket details from *CONMED Corporation v. Sonoma Specialty Hospital, LLC*, Case No. MCV-249637, filed July 15, 2019, resulting in a default judgment of $26,780.19.**

Details

# Case Information

MCV-249637 | CONMED CORPORATION, a corporation vs SONOMA SPECIALTY HOSPITAL LLC, a limited liability company

| Case Number | Court | Judicial Officer |
|---|---|---|
| MCV-249637 | Civil | Broderick, Patrick |
| File Date | Case Type | Case Status |
| 07/15/2019 | 09: Limited Rule 3.740 Collections - 10,000 to 25,000 | Adjudicated |

# Party

**Plaintiff**
CONMED CORPORATION, a corporation

Active Attorneys ▾
Lead Attorney
POLLAK, ROBERT L.
Retained

Attorney
KLADIANOS, DENIS
Retained

**Judgment Creditor**
CONMED CORPORATION, a corporation

Active Attorneys ▾
Lead Attorney
POLLAK, ROBERT L.
Retained

Attorney
KLADIANOS, DENIS
Retained

**Defendant**
SONOMA SPECIALTY HOSPITAL LLC, a limited liability company

Judgment Debtor
SONOMA SPECIALTY HOSPITAL LLC, a limited liability company

# Disposition Events

12/02/2019 Judgment ▾

Judicial Officer
Broderick, Patrick

Judgment Type
Default Judgment by Court

Judgment - Monetary Award

    Awarded To:

        CONMED CORPORATION, a corporation

    Judgment Amount: **$26,780.19**

    Awarded Against:

        SONOMA SPECIALTY HOSPITAL LLC, a limited liability company

Party
    Names: CONMED CORPORATION, a corporation

        SONOMA SPECIALTY HOSPITAL LLC, a limited liability company

# Events and Hearings

| 07/15/2019 Civil Case Cover Sheet |
|---|

07/15/2019 Summons Issued

07/15/2019 Complaint Filed ▾

Comment
Does 1-50

07/15/2019 Notice of Assignment to 1 Judge and Notice of CMC

07/15/2019 Proof of Service - 30 Days Summons and Complaint ▾

Requested By
CONMED CORPORATION, a corporation

Served
07/30/2019

08/05/2019 Proof of Service of Process ▾

Comment
sub service

09/13/2019 Request for Entry of Default

09/13/2019 Request for Dismissal Other ▾

Comment
Request for Dismissal of Does

09/13/2019 Declaration re: ▾

Comment
Declaration In Support Of Pre-Judgment Interest Calculation

09/13/2019 Declaration in Support ▾

Comment
Declaration In Support Of Allowance Of Costs, And Necessary Disbursements

09/13/2019 Declaration in Support ▾

Comment
Declaration In Support Of Attorneys Fees

09/13/2019 Memo of P&A in Support ▾

Comment
Memorandum of Points and Authorities In Support of Default Judgment Package Re Award of Statutory Attorney Fees 1717.5

09/13/2019 Declaration re: ▾

Comment

Declaration Of Denis Klavdianos Regarding Original Creditor's Declaration In Lieu Of Testimony [CCP 585(d)]

---

12/02/2019 Judgment - Entire Action ▾

Comment

$26,780.19

---

01/15/2020 Order for Examination ▾

Comment

(cy mailed 1/22/20)

---

02/13/2020 Order of Examination Served ▾

Comment

Personal

---

02/25/2020 Abstract of Judgment

---

05/20/2020 Notice ▾

Comment

of rescheduled hearing due to emergency closure

---

05/28/2020 Notice ▾

Comment

of rescheduled OEX hearing

---

05/29/2020 Notice ▾

Comment

of Contiued Hearing

---

06/19/2020 Notice ▾

Comment

Notice of Continued Order Of Examination Hearing

---

08/17/2020 Case Management Conference - Collections ▾

Judicial Officer

Wick, Arthur A

Hearing Time

1:30 PM

Cancel Reason

Dropped

---

10/14/2020 Notice ▾

Comment
of Zoom

---

11/04/2020 Acknowledgment of Satisfaction of Judgment - Filed ▾

Comment
Full Satisfaction

---

11/30/2020 Order of Examination ▾

Judicial Officer
Wick, Arthur A

Hearing Time
8:15 AM

Cancel Reason
Dropped

**MCCJ Supplemental Request for Judicial Notice**

**15.** **Sonoma County Superior Court records** reflecting litigation involving Sonoma Specialty Hospital

**D.** **Docket details from *McKesson Medical-Surgical, Inc. v. Sonoma Specialty Hospital, LLC*, Case No. MCV-253222, filed August 25, 2020, resulting in a default judgment of $23,534.87.**

## Case Information

MCV-253222 | McKesson Medical-Surgical, Inc. vs Sonoma Specialty Hospital, LLC

Case Number
MCV-253222
File Date
08/25/2020

Court
Civil
Case Type
09: Limited Rule 3.740 Collections -
10,000 to 25,000

Judicial Officer
Broderick, Patrick
Case Status
Adjudicated

## Disposition Events

01/25/2021 Judgment ▾

Judicial Officer
Broderick, Patrick

Judgment Type
Clerk Default Judgment

Judgment - Monetary Award

Awarded To:

McKesson Medical-Surgical, Inc.

Judgment Amount: $23,534.87

Awarded Against:

Sonoma Specialty Hospital, LLC

Amount

Damages: $18,112.61

Pre-Judgment Interest: $2,232.00

Attorney Fees: $2,711.26

Costs: $479.00

Total: $23534.87

Party
Names: McKesson Medical-Surgical, Inc.

Sonoma Specialty Hospital, LLC

Details

## Events and Hearings

08/25/2020 Complaint Filed ▾

Comment
DOES 1-100

08/25/2020 Civil Case Cover Sheet

08/25/2020 Summons Issued

08/25/2020 Notice of Assignment to 1 Judge and Notice of CMC ▾

Comment
Mailed on 08/25/2020

08/25/2020 Proof of Service - 30 Days Summons and Complaint ▾

Requested By
McKesson Medical-Surgical, Inc.

Served
09/04/2020

08/25/2020 Cause Of Action ▾

| Action | File Date |
|--------|-----------|
| Complaint | 08/25/2020 |

10/28/2020 Proof of Service of Process ▾

Comment
Substituted Service

01/25/2021 Request for Entry of Default

01/25/2021 Request for Clerk's Judgment ▾

Comment
Request for Clerk's Judgment

01/25/2021 Request for Dismissal Other ▾

> Comment
>
> Dismissal Other - Party or Cause of Action

---

01/25/2021 Declaration re: ▾

> Comment
>
> Declaration of Rodolfo Gaba Jr. in Support of Clerk's Judgment

---

01/25/2021 Declaration re: ▾

> Comment
>
> Declaration re: Summary of the Case

---

01/25/2021 Judgment - Entire Action ▾

> Comment
>
> $23,534.87

---

01/25/2021 Proof of Service of Motion/OSC ▾

> Comment
>
> Proof of Service of Motion/OSC

---

04/09/2021 Acknowledgment of Satisfaction of Judgment - Filed ▾

> Comment
>
> Full Satisfaction

---

08/16/2021 Case Management Conference - Collections ▾

Judicial Officer

Wick, Arthur A

Hearing Time

1:30 PM

Cancel Reason

Dropped