1  Patience Milrod #77466
985 North Van Ness Avenue
2  Fresno, California 93728
Telephone: (559) 246-7239
3  Email: pm@patiencemilrod.com

4  Attorney for Madera Coalition for Community Justice

5

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10                    **FRESNO DIVISION**

11  In re:                                    Case No.:   23-10457

12  MADERA COMMUNITY HOSPITAL,                 Chapter 11

13          Debtor in Possession.              DCN:  PSJ-025

14  Tax ID#:   23-6429117                      **REQUEST FOR EVIDENTIARY**
    Address:   1250 E. Almond Avenue          **HEARING**
15             Madera, California 93637
                                               Hearing Date:    April 16, 2024
16                                             Time:            9:30 a.m.
                                               Place:           2500 Tulare Street
17                                                              Courtroom 13
                                                                Fresno, California 93721
18                                             Judge:  Hon. René Lastreto II

19          Comes now Madera Coalition for Community Justice (MCCJ) and respectfully requests

20  that the Court conduct an evidentiary hearing pursuant to 11 U.S.C. § 1128(a) and Federal

21  Rules of Bankruptcy Procedure, Rule 3020(b)(2).  This request is based on MCCJ's

22  understanding of the state of the case, as follows:

23          The Plan must satisfy both the good faith requirement of § 1129(a)(3), and the

24  feasibility standard set out in subsection (a)(11).  These standards overlap to some degree:

1  good faith contemplates "that there exists 'a reasonable likelihood that the plan will achieve a

2  result consistent with the objectives and purposes of the Code.'"  *In re Madison Hotel Assocs*.,

3  749 F2d 410, 425 (7th Cir. 1984) (bankruptcy judge is in the best position to assess good faith)

4  (citation and quotation omitted).  Therefore, as Cieri, Oyer and Birnbryer have noted:  "'the

5  determination as to whether a plan will likely achieve a result consistent with the objectives and

6  purposes of the Code should be made in light of the "totality of the circumstances surrounding

7  confection" of the plan,'[1] and whether the plan will succeed and accomplish goals consistent

8  with the Bankruptcy Code."[2]  As the authors point out, it follows that "a plan proponent must

9  demonstrate that the plan is reasonably likely to succeed and that reorganization is possible,

10  following the rationale underlying the good faith requirement."  *Id*.

11       MCCJ has undertaken to fill a due diligence gap, and to try to shed light on AAM's

12  trustworthiness as the potential steward of the community's safety-net hospital.  We have found

13  that AAM is one of a cluster of corporations under the complete or almost-complete control of

14  Dr. Singh.  The public record discloses, with surprising consistency, administrative incapacity

15  and financial instability in the operation of these businesses, leading to unpaid taxes[3],

---

[1] See, e.g., *Stolrow v. Stolrow's, Inc.* (*In re Stolrow's, Inc*.), 84 BR 167, 172 (Bankr. 9th Cir. 1988) (good faith should be viewed in the totality of the circumstances surrounding confirmation).

[2] Richard M. Cieri & Barbara J. Oyer, Dorothy J. Birnbryer, "The Long and Winding Road": The Standards to Confirm A Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (Part I) (1993) 3 J. Bankr. L. & Prac. 3, 35

[3] Please see MCCJ Exhibits to RJN filed and served March 19, 2024, Exhibit 8 (unpaid federal taxes, penalties, and interest) at pp. 424-435 (Vol. 3, pp 153-163), Also see MCCJ Exhibits to Supplemental RJN filed and served herewith, Exhibits 10 (unpaid state unemployment taxes) pp.2-3, and 11 (unpaid property taxes) pp. 4-7.

penalties[4], litigation[5], and—in the case of Advanced College—emergency regulatory action[6] to shut down the enterprise.

The state of the record evidence creates an open question whether the bankruptcy court can, as it must, make the specific finding that the Plan, as proposed, is feasible within the meaning of § 1129(a)(11). *In re M & S Associates, Ltd*., Bkrtcy.W.D.Tex.1992, 138 B.R. 845. In evaluating feasibility of any proposed Chapter 11 plan, the Court will consider many factors, including the earning power of the debtor, its capital structure, economic conditions of business, managerial efficiency, whether the same management will continue to operate the company, "and any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan." *Id.,* at 849. As the Eighth Circuit has held, "the feasibility test is firmly rooted in predictions based on objective fact. The Second Circuit has declared that the feasibility test contemplates 'the probability of actual performance of the provisions of the plan.'" *In re Clarkson* (8th Cir. 1985) 767 F.2d

---

[4] Please see MCCJ Exhibits 8 and 10, as described in text accompanying footnote 3.

[5] Please see MCCJ Exhibits to RJN filed and served March 19, 2024:
- Exhibit 4 (Memorandum Decision on Threshold Issue, Memorandum Decision re Plaintiff's Damages, and Judgment filed in *In re: Sonoma West Medical Center, Incl, Bankr. N.D.Cal.Ch.7, No. 18-10665; Bankruptcy Trustee vs. Sonoma Specialty Hospital, LLC, American Advanced Medical Group, Inc., and Gurpreet Singh,* A.P. No. 19-1030) pp. 137-194 (Vol. 2, pp. 2-62),
- Exhibit 5 (Complaint for Recoupment, Breach of Contract, Unjust Enrichment and Minute Order granting DHCS's Motion for Summary Judgment filed in *Michelle Baass, Director of the CA Dept of Health Care Services, vs. Sonoma Specialty Hospital, LLC, American Advanced Management Group, Inc., and Gurpreet Singh*, Sonoma County Superior Court Case. No. SCV-270916*)*, pp. 198-233 (Vol. 2, pp. 63-98), and
- Exhibit 9 (Compilation of court cases filed against AAM-affiliated businesses and Gurpreet Singh), pp. 437-442 (Vol. 3, pp. 164-169).

Also see MCCJ Exhibits to Supplemental RJN filed and served herewith:
- Exhibit 12 (Complaint for Breach of Promissory Notes, Breach of Guaranties…, Gurpreet Singh Declaration, and Right to Attach Order filed in *Bank of the West v. JUSRAND, LLC, Gurpreet Singh, et al*., Stanislaus County Superior Court Case No. CV-20-005206), pp. 8-53.

[6] Please see MCCJ Exhibits to RJN filed and served March 19, 2024, Exhibit 6 (Default Decision and Order filed Jan. 20, 2023, *In the Matter of the Accusation Against Advanced College; Jusrand LLC – Gurpreet Singh, Owner*, before the California Department of Consumer Affairs for the Bureau for Private Postsecondary Education, Case No. BPPE22-023), pp. 234-272 (Vol. 2, pp. 99-137).

1    417, 420 [citation omitted].

2           In this case, AAM proposes to fold Madera Community Hospital into its constellation

3    of private for-profit health care businesses[7].  The feasibility test here must thus be rooted in

4    predictions based on a factual—that is, evidentiary—determination of AAM's capacity to

5    actually perform the provisions of the plan.  We understand that the chief purpose of the

6    Chapter 11 process is to get the creditors paid.  AAM has proposed a cash-up-front plan[8] that

7    they perhaps hope will make it unnecessary for the Court to inquire into AAM's capacity to

8    actually operate the hospital.

9           But this interpretation of § 1129's mandates would exclude from the feasibility analysis

10   the other, equally important, components and commitments of the Plan, including the Master

11   Transition Agreement (MTA)[9] and the Management Services Agreement (MSA)[10].  The MTA

12   explicitly asserts that AAM is "dedicated" to reopening the hospital, and transitioning it to a

13   functional health care facility that "will *continue the delivery of health care for the benefit of*

14   *communities served by Owner.*"[11]  The MSA similarly commits to responsive and responsible

15   health care delivery:

16           Manager shall provide day-to-day management and operations support for the Hospital

17

18   _____

19   [7] As AAM explains in its Turnaround Plan, the reasons for an MSA with AAM include:  "Remaining as an independent hospital presented a financial risk scenario which did not promote long-term sustainability."  Docket No. 1415, PDF 143.

20   [8] See, Docket No. 1506, Third Amended Disclosure Plan, Art. IV.J.2, Feasibility, pp. 56-57 (PDF 71-72).

21   [9] On February 21, 2024, the Court authorized the debtor and AAM to enter into a Master Transition Agreement in the form attached to the Order as Exhibit 1.  Docket No. 1454, PDF 5-25.  The MTA is

22   incorporated by reference into the Plan at Art.V.B., pp. 24-30 (PDF 31-37).

23   [10] On February 13, 2024, the Court authorized the debtor and AAM to enter into a Management Services Agreement in the form attached to the Order as Exhibit A to Exhibit 1.  Docket No. 1454, PDF 26-51.  The MSA is incorporated by reference into the Plan at at Art.V.B., pp. 24-30 (PDF 31-37).

24   [11] Docket No. 1415, Exhibit 1, Recitals C. Purpose of this Transition Agreement, PDF 20 [emphasis added].

and shall do so in a fiscally responsible manner seeking *to provide high quality services to the community*.  Manager shall provide its services in a manner that meets the day-to-day requirements of the business, and the operational and administrative needs of the Hospital.[12]

But specifically with respect to the hospitals AAM already owns, three of the five suffered losses approaching $20 million in 2021; Coalinga Regional Medical Center (in operation only seven months during the reporting period) lost over $10 million; Glenn Medical Center and Colusa Medical Center between them lost another $9+ million; only the remaining two facilities—Central Valley and Sonoma Specialty Hospitals—produced net income, totaling about $9.2 million between them, for a net shortfall of about $10 million.  In 2022, the losses were more moderate, totaling a little over $13 million at three of the facilities; total net income at the remaining two (Central Valley and Glen Medical) was less than $3 million—still a net shortfall of $10 million.[13]  Bankruptcy courts commonly consider financial stability as an indicator of § 1129(a)(11) feasibility.  See, e.g., *Matter of Huckabee Auto. Co*., Bkrtcy.M.D.Ga.1981, 33 B.R. 141, 145 fn. 2 [a finding of financial stability "requires testimony about capital structure, earning power, economic conditions, ability of management, and in general, any matter relevant to the prospect of success"].  Based on AAM's performance at the hospitals already under its control, it would be hard to conclude that it is likely to operate Madera Community Hospital successfully if the Plan is confirmed.

Bankruptcy courts also consider the relevant experience that a proposed post-bankruptcy manager brings to the debtor's operations.  See, e.g., *In re Longfellow Properties,*

---

[12]  Docket No. 1415, Exhibit A to Exhibit 1, Art.1, Duties of Manager, ¶ 1.1, PDF 42 [emphasis added].

[13] Please see MCCJ's Exhibits to Supplemental Request for Judicial Notice filed and served herewith, Exhibits 13 and 14, HCAI's reports showing AAM-affiliated hospitals' financial performance for 2021 and 2022, pp. 54-78 and 79-98, respectively.

1   *Inc.*, Bkrtcy.D.N.H.1992, 149 B.R. 12 [debtor did not have similar enough experience that

2   would justify finding of feasibility].  We have already pointed out AAM's lack of experience

3   with acute care hospitals providing safety-net services to impoverished communities.  (See,

4   Objections, Docket No. 1554, pp. 18-19; see also, exhibits 13 and 14 to MCCJ's Supplemental

5   Request for Judicial Notice filed and served herewith, at pp. 54-78 and 79-98).  It would be

6   important for AAM to provide projected income figures, and proposed details of operations, to

7   clarify how it intends to compensate for that lack of experience so as to ensure adequate

8   revenues in a far more challenging context than any it has managed to date.

9        Cash flow is clearly an ongoing issue bedeviling AAM's existing hospitals.[14]  At

10  present, AAM has offered no information on this issue, but this too is an appropriate area of

11  inquiry.  See, e.g., *Pookrum v. Bank of America, N.A*., D.Md.2014, 512 B.R. 781 [upholding

12  bankruptcy court determination that Chapter 11 debtors' negative cash flow, as reflected in

13  their operating reports, coupled with unpersuasive testimony concerning other sources of

14  income, did not demonstrate that their proposed plan had the requisite reasonable assurance of

15  success, and that confirmation of proposed plan should be denied for lack of "feasibility."]

16       MCCJ is respectfully requesting that the Court satisfy itself beyond peradventure that

17  AAM can, and will (or is reasonably likely to), fulfill these commitments as capably as it will

18  presumably make its cash payouts to creditors.  At the moment, the available material evidence

19  gives strong reason for doubt.  The Plan proponent must establish by a preponderance of the

20  evidence that the plan meets all of the requirements of § 1129(a)[15], but as of this writing AAM

21  has provided no countervailing evidence:  even the Plan itself is devoid of a business plan, or

22

23  [14]  Please see footnotes 4, 5, and 6, and accompanying text, *supra*.

24  [15] See, e.g., *In re Paige* (10th Cir. 2012) 685 F.3d 1160, 1188, fn. 15 [plan proponent "had the burden of proving compliance with the applicable provisions of § 1129."]

revenue and cost projections, or a pro forma, or a financial profile that would give comfort as to precisely how AAM will make a going concern out of the failed Madera Community Hospital.

As the Court is well aware, this question of feasibility is a matter of life and death to Madera's families.  We entreat the Court to protect their dwindling access[16] to essential health care by insisting on having all the facts prior to, first, imposing conditions that will ensure safety-net services, and, second, making a Section 1129(a)(11) determination that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan."

DATED:   April 3, 2024                        Respectfully submitted,

                                      ___/s/ Patience Milrod_____
                                         Patience Milrod
                                         Attorney for MCCJ

---

16 See, e.g., "As hospitals close labor wards, large stretches of California are without maternity care," Kristen Hwang, Ana B. Ibarra and Erica Yee, *CalMatters*, published November 15, 2023, https://calmatters.org/health/2023/11/california-hospitals-close-maternity-wards/