Patience Milrod #77466
985 North Van Ness Avenue
Fresno, California 93728
Telephone: (559) 246-7239
Email: pm@patiencemilrod.com

Attorney for Madera Coalition for Community Justice

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**FRESNO DIVISION**

| | |
|---|---|
| In re:<br><br>MADERA COMMUNITY HOSPITAL,<br><br>    Debtor in Possession.<br><br>Tax ID#: 23-6429117<br> Address: 1250 E. Almond Avenue<br>             Madera, California 93637 | Case No.: 23-10457<br><br>Chapter 11<br><br>DCN: PSJ-025<br><br>**MCCJ OPPOSITION TO MOTION TO STRIKE and IN SUPPORT OF REQUEST FOR AMICUS STATUS**<br><br>Hearing Date:     April 11, 2024<br>Time:              9:30a<br>Place:             2500 Tulare Street<br>                     Courtroom 13<br>                     Fresno, California 93721<br>Judge: Hon. René Lastreto II |

**PRELIMINARY STATEMENT**

The Plan Proponents' Motion to Strike MCCJ's Objections to confirmation of the proposed Plan must fail: MCCJ is an interested party in these proceedings in its role as representative of Madera County residents' intense concern about the fate of their hospital. To ensure the Court can make a fact-based, evidentiarily sound, independent determination whether the proposed Plan meets all the criteria of Title 11 U.S.C. § 1129, it has discretion to grant MCCJ third-party standing; absent that, the cases counsel in favor of a grant of amicus standing.

Perhaps most importantly, the Plan Proponents assert they will "address" the evidence raised in the Objections in their Plan Confirmation brief. Docket # 1648, at pp. 8-9. The Plan Proponents will certainly streamline any evidentiary hearing, or possibly eliminate the need, if it is their intent to put into the record such convincing evidence as they may have to rebut the evidence proffered so far, which paints a picture of persistent cash-flow problems, administrative incompetence, regulatory violations, and ethical breaches.[1]

**1. The Court may grant third-party standing to MCCJ.**

The court has discretion to grant third-party standing to Madera Coalition for Community Justice: third-party standing is permitted, and "'the principles animating ... prudential [standing] concerns are not subverted[,] if a third party is hindered from asserting its own rights and shares an identity of interests with the plaintiff.' A court must balance three factors to determine if third-party standing is warranted. These are whether the plaintiff has suffered injury, whether the plaintiff and the third party have a 'close relationship', and whether the third party faces obstacles that prevent it from pursuing its own claims." *In re Zohar III, Corp.* (Bankr. D. Del. 2021) 631 B.R. 133, 188, citing *Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.* (3d Cir. 2002) 280 F.3d 278, 289.

In the *Pennsylvania Psychiatric Society* case, the court found that although the Society itself had not suffered injury, its member psychiatrists had properly asserted their own economic interest and their patients' interest in the possible adverse effect on the capacity to provide quality healthcare. Here, similarly, MCCJ asserts its clients' interests in access to adequate health care.

---

[1] The Motion to Strike also offers a non-serious argument of collateral estoppel, rebutted *infra*.

As in *Pennsylvania Psychiatric Society, id.* at 290, MCCJ's clients face obstacles to pursuing litigation themselves: Here, MCCJ's clients—if they had had the financial resources—could have purchased a debt from one of Madera Community Hospital's creditors, and could have made exactly these same objections and submitted exactly this evidence. However, MCCJ's client base is comprised of low-income Maderans unable to purchase an interest in this case; its lawyers are volunteers; and its own resources are stretched thin in providing its clients needed services. Thus, MCCJ, on behalf of its clients, should be granted third-party standing to raise the Objections now before this Court.

**2. The Court may grant amicus status to MCCJ.**

Federal Rule of Bankruptcy Procedure 8017 allows this Court to grant leave to MCCJ to participate in these proceedings as an amicus curiae. MCCJ fully recognizes that "Whether to permit a nonparty to submit a brief, as amicus curiae, is, with immaterial exceptions, a matter of judicial grace." *Nat'l Org. for Women, Inc. v. Scheidler,* 223 F.3d 615, 616 (7th Cir. 2000)

MCCJ respectfully submits that the court is well within its authority to grant this request to appear as amicus: A district court has broad discretion regarding the appointment of amici. *Foothill Church v. Watanabe* (E.D. Cal. 2022) 623 F.Supp.3d 1079, 1084, citing <u>Hoptowit v. Ray,</u> 682 F.2d 1237, 1260 (9th Cir. 1982) (overruled on other grounds by *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)); <u>In re Roxford Foods Litig.</u>, 790 F. Supp. 987, 997 (E.D. Cal. 1991) ("The privilege of being heard amicus rests solely within the discretion of the court" (citation omitted)). But—"An amicus brief *should normally be allowed*" when, among other considerations, "the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Cmty. Ass'n for Restoration of Env't (CARE) v. DeRuyter Bros. Dairy*, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999) (citing *N. Sec. Co. v. United States*, 191 U.S. 555, 556, 24 S.Ct. 119, 48 L.Ed. 299 (1903)).

[emphasis added.]

Even absent an objection, the plan proponent has the burden of showing, and the bankruptcy court has the duty to ensure, that the requirements of § 1129(a) are met. See, e.g., *In re Union Meeting Partners,* 165 B.R. 553, 574 (Bankr.E.D.Pa.1994), *aff'd,* 52 F.3d 317 (3d Cir.1995); see also, *In re Toy & Sports Warehouse, Inc.,* 37 B.R. 141, 149 (Bankr.S.D.N.Y.1984) (even if no objections are filed, plan must comply with all of the requirements of Chapter 11 as stated in Code § 1129(a)(1).).

This Court thus has an independent duty to make a series of fact-based determinations, assuring itself that the plan proponents have met their burden and that in fact the Plan has met the criteria set forth in 11 U.S.C. § 1129. See, e.g., *Big Shanty Land Corp. v. Comer Properties, Inc.,* N.D.Ga.1985, 61 B.R. 272. (even if unsuccessful bidder did not have standing to object to proposed reorganization plan, bankruptcy court had independent duty to subject it to Chapter 11 safeguards, and determine if plan was submitted in good faith.).

The state agencies and the Attorney General, all tasked here with protecting the public interest, have utterly failed to do the basic due diligence that would ensure Madera Community Hospital is resurrected as a viable going concern, under the stewardship of a reliable, trustworthy, and capable operator. As a result, the record was devoid of evidence with respect to several of the § 1129 criteria, although publicly-available information justifies very strong doubts that the Plan has met those criteria. MCCJ, whose clients are most immediately and critically affected by whatever decision is made as to the hospital's fate, has therefore to the best of its ability provided missing information to the Court. By means of its Objections, and Requests for Judicial Notice, MCCJ gives the Court the opportunity to consider evidence from the Plan proponent that could neutralize the concerns raised by AAM's public record, or to

resolve some of those concerns by imposing appropriate conditions on any confirmation of the present Plan.

It is true that MCCJ is frankly alarmed by the prospect of an AAM-managed Madera Community Hospital. But we have not taken the position that no AAM Plan could legitimately be confirmed. Our request is that the Court require AAM to satisfy it with preponderant evidence that AAM's Plan meets § 1129's requirements, notwithstanding the available evidence of unpaid taxes, unpaid vendors, in-the-red operation of AAM's hospital assets, and other troubling business practices pointing to administrative failures and financial instability. As the *Foothill Church* opinion points out: "While '[h]istorically, amicus curiae is an impartial individual who suggests the interpretation and status of the law, gives information concerning it, and advises the Court in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another[,]' *CARE*, 54 F. Supp. 2d at 975, the Ninth Circuit has said 'there is no rule that amici must be totally disinterested,' *Funbus Sys., Inc. v. State of Cal. Pub. Utilities Comm'n*, 801 F.2d 1120, 1125 (9th Cir. 1986) (citation omitted); *Hoptowit,* 682 F.2d at 1260 (upholding district court's appointment of amicus curiae, even though amicus entirely supported only one party's arguments)." *Foothill Church v. Watanabe*, *id*. at 1084.

Here, MCCJ has offered evidence precisely for the purpose of ensuring that justice may be done; our aim has always been that "the Court scrutinize carefully AAM's representations, and subject them to evidentiary proof, before making this enormously consequential decision." Docket # 1554, MCCJ Objections, p.21. We respectfully request that the Court grant MCCJ amicus or third-party status, and deny the Plan Proponents' motion to strike our Objections and supporting documents.

///

**3. The Plan Proponents' collateral estoppel argument is a red herring.**

As the party asserting collateral estoppel, the Plan Proponents have the burden of establishing all elements required for its application. *In re Cady* (B.A.P. 9th Cir. 2001) 266 B.R. 172, 183, aff'd (9th Cir. 2003) 315 F.3d 1121 (citations omitted).

As the *Cady* court points out, there are four elements the Plan Proponents must meet to succeed in their estoppel argument:

(1) The issue sought to be precluded must be the same as that involved in the prior action;

(2) The issue must have been actually litigated;

(3) It must have been determined by a valid and final judgment; and

(4) The determination must have been essential to the final judgment.

*In re Berr,* 172 B.R. 299, 306 (9th Cir. BAP 1994).

The Plan Proponents' argument fails on issue preclusion: the issue before the Court at the hearings on February 13th and 27th was the Court's authorization for the debtor to enter into the Master Transition Agreement and the Management Services Agreement with AAM. The Plan itself was not before the Court, and compliance with the § 1129 criteria was irrelevant to the MTA/MSA approval question.

The Plan Proponents similarly fail in their assertion that the confirmability of the Plan has been "actually litigated." Given that the Court set a hearing for April 16 precisely for that purpose, and explicitly noted the possibility that some participant may request an evidentiary hearing, it is clear that the Court itself considered the confirmability issue as one not yet decided.

The Plan Proponents' argument also fails on the "valid and final judgment" prong: The Court's February 21, 2024 Order Authorizing the Debtor to Enter into a Master Transition Agreement and a Management Services Agreement with American Advanced Management, Inc.

was not a final and appealable order. For the purposes of an appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989)). That is clearly not the juncture at which the MTA/MSA Order left these proceedings. Since there is no final judgment, the Plan Proponents also fail on prong four.

Fundamentally, the issues MCCJ raises in its Objections must be resolved in the context of the entire Plan, including the Plan Supplement filed on March 22, and in light of the specific mandatory criteria § 1129 imposes for determining the confirmability of the Plan as a whole. This inquiry is the essential purpose of the Confirmation hearing.

**4. Plan Proponents' briefing could resolve the issue, <u>if they proffer credible evidence</u>.**

It may be that the briefing the Plan Proponents promise will be fully responsive to the issues MCCJ has raised in our Objections. If by "addressed" [2] the Plan Proponents mean they intend to submit evidence to rebut that already proffered by MCCJ, it would be a very efficient way to allay their concerns about wasting judicial and estate resources on a lengthy evidentiary hearing. Docket # 1648, p. 8. They must be aware that the Court is empowered to make a confirmation determination based upon the court file, without necessity of taking any additional evidence. *In re Gulfstar Industries, Inc*., M.D.Fla.1999, 236 B.R. 75, 77-78, citing *In re Acequia,* 787 F.2d 1352, 1358 (9th Cir.1986).

One way or another, the Plan Proponents must meet their burdens of proof and of persuasion that the Plan in every respect meets § 1129's requirements. Whether they do it by declaration or by live testimony, they must rebut the evidence already proffered.

For the avoidance of doubt, MCCJ here clarifies its § 1129(a)(3) argument: our concerns

---

[2] Please see, Docket # 1648, Motion to Strike Objections, p. 8 ("The Objectors [sic] Challenges to the Plan…Will be Addressed by the Plan Proponent's Confirmation Brief").

about AAM's actual willingness to reopen the hospital as a safety-net facility, and about AAM's capacity to do so, redound directly to the discredit of the Committee: AAM is the tool the Committee has chosen to execute the Plan. If the tool is unsuited to the job, it is fair to ask whether those who propose to employ it are acting in good faith. The point is the likely success of the Plan as a whole.

But the Plan Proponents seem to disregard that crucial fact. As the Eleventh Circuit has held, "[T]he focus of a court's inquiry [when determining whether to confirm a reorganization plan] is the plan itself, ... and courts must look to the totality of the circumstances surrounding the plan, keeping in mind *the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start*." *McCormick v. Banc One Leasing Corp.,* 49 F.3d 1524, 1526 (11th Cir.1995) (emphasis added; citations omitted).

As a result the Court's inquiry as to both the good faith and the feasibility of the Plan will consider whether the creditors will be fully paid *as well as* whether the Plan's proposed reorganization will indeed result in a going concern rather than another bankruptcy proceeding. Subdivision (11) is explicit about this whole-Plan analysis. The Plan itself promises a reopened hospital that will serve the health care needs of the Madera Community[3], and asserts that one or another Hospital Reopening Plan will be considered prior to any pivot to a Liquidation Plan.[4] It is appropriate to test how likely the Committee's chosen execution partner is to make that

---

[3] See, Docket # 1631, REDLINE OF MODIFIED SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Article V, p. 24, Means for Implementation of the Plan, ¶ A. Overview: "(c) the continued existence of Madera Community Hospital as an operating, not for profit entity after the Effective Date"; and p. 25, ¶ B. MTA & MSA, Purpose: "AAM is dedicated under the MTA to the reopening of Hospital under the terms set forth in the MTA, and upon CDPH's approval. It is AAM's intention to assist Hospital in its reopening and continued operations under the MSA, until the parties can transition the operations and ownership of the Hospital Assets to AAM, by which AAM will continue the delivery of health care for the benefit of communities served by the Debtor."

[4] *Id*., p. 32, ¶ C. Pivot to a Liquidation Transaction or Alternative Hospital-Reopening Transaction.

promise a reality. If the Plan Proponents now admit that the hospital's reopening, let alone its success, is not of equal importance with paying creditors, they intensify rather than assuage MCCJ's concerns about both the good faith and the feasibility of the proposed Plan.

**CONCLUSION**

MCCJ therefore respectfully requests that the Court decline to enter the order proffered by the Plan Proponents as Exhibit A to their Motion to Strike, and defer the determination about the need for an evidentiary hearing until it can determine whether the Proponents' Plan Confirmation brief and supporting evidence adequately rebut the evidence calling into question the good faith and feasibility of the proposed Plan.

Dated: April 9, 2024 　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　/s/ Patience Milrod
　　　　　　　　　　　　　　　　　　　　　　　Attorney for
　　　　　　　　　　　　　　　　　　　　　　　Madera Coalition for Community Justice